Amanda R. Washton (Bar No. 227541)
a.washton@conklelaw.com
Sherron Wiggins (Bar No. 321819)
s.wiggins@conklelaw.com
**CONKLE, KREMER & ENGEL**
**Professional Law Corporation**
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403-2351
Phone: (310) 998-9100
Facsimile: (310) 998-9109

Peter A. Gergely (*Pro Hac Vice*)
PGergely@merchantgould.com
Ryan J. Fletcher, (*Pro Hac Vice*)
RFletcher@merchantgould.com
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

Paige S. Stradley, (*Pro Hac Vice*)
PStradley@merchantgould.com
**MERCHANT & GOULD, P.C.**
150 S. Fifth Street Suite 2200
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Attorneys for Defendants, True Wearables, Inc. and Marcelo Lamego

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

|  |  |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual,<br><br>Defendants. | Case No. 8:18-CV-02001-JVS-JDE<br><br>**JOINT STIPULATION ACCOMPANYING DEFENDANTS' MOTION TO STRIKE PORTIONS OF PLAINTIFFS' INTERROGATORY RESPONSES AND TO COMPEL RE-DESIGNATION OF INTERROGATORY RESPONSES AS CONFIDENTIAL**<br><br>Hearing: December 10, 2020<br>Time: 10:00 a.m.<br>Ctrm: 6A<br><br>[Discovery Document Referred to Hon. Magistrate John D. Early] |

Pursuant to Local Rule 37-2, Defendants True Wearables, Inc. and Marcelo Lamego (collectively, "Defendants"), as movant, and Plaintiffs Masimo Corporation and Cercacor Laboratories, Inc. (collectively, "Plaintiffs"), as respondent, hereby submit this Joint Stipulation to Strike Portions of Plaintiffs' Interrogatory Responses and to Compel Plaintiffs to Re-Designate certain materials as "CONFIDENTIAL." Pursuant to Local Rule 37-1, this Joint Stipulation was prepared following conferences of counsel on October 2, 2020 and October 8, 2020.  *See* Declaration of Zachary D. Kachmer ("Kachmer Decl."), ¶3.

At issue are Plaintiffs' responses to Defendants' Interrogatory Nos. 1 and 11. Plaintiffs have supplemented their Response to Interrogatory No. 1 twice and have supplemented their Response to Interrogatory No. 11 three times. Plaintiffs' most recent supplementations to these interrogatories were both provided October 30, 2020. These most recent supplementations incorporate each of Plaintiffs' prior responses and total a combined 121 pages. Because of their length, these responses are attached as Exhibit A and Exhibit B to the Kachmer Decl. and not included verbatim in this Joint Stipulation. Kachmer Decl., ¶¶4-5, Exs. A, B.

# I.  **INTRODUCTORY STATEMENTS**

## A.    **Defendants' Introduction**

"Presumably [Plaintiffs] had a good idea of what the trade secrets were when the suit was filed." Kachmer Decl., ¶6, Ex. C, p. 6:21-23. It has been over eighteen months since Judge Selna made this statement in the parties' Scheduling Conference. *Id.*, Ex. C, p. 1. Since then, Defendants have repeatedly requested that Plaintiffs provide a more particular description of their alleged trade secrets. At each request, Plaintiffs have followed the same playbook: at first, deny that supplementation is necessary; later, but only when faced with a motion to compel, agree to supplement; then, delay the provision of the supplementation; and finally, provide a supplementation that fails to correct the problems identified in Defendants' original request.

This action has been pending for nearly two years, and Plaintiffs have had access to Defendants' highly confidential source code and technical files for nearly as long. *See Id.*, ¶7, Ex. D. And yet, rather than focusing their allegations through the course of discovery, Plaintiffs have shifted and expanded their claims. Plaintiffs' most recent trade secret identifications hardly bear any resemblance to those provided at the outset of this case. Accordingly, Plaintiffs did *not* have "a good idea of what the trade secrets were when the suit was filed." Defendants have dedicated significant time and resources attempting to get Plaintiffs to provide what they should have provided at the outset of this suit: a stable and particular identification of the alleged trade secrets at issue in this case. Instead, Defendants have dealt with an endless shell game: a constantly shifting and expanding set of trade secret claims. Defendants have suffered and continue to suffer the consequences of Plaintiffs' failure to adequately investigate their claims prior to filing this suit. Defendants should not be made to suffer these consequences any longer. Defendants need a stable set of alleged trade secrets in order to formulate defenses and proceed with depositions.

At the outset of this case, Plaintiffs provided a list of 15 categories of "knowhow," "techniques," and "knowledge" that Plaintiffs identified as the alleged trade secrets that Defendants had allegedly misappropriated (hereinafter the "First Identification"). *Id.*, Ex. A, pp. 5-9. The First Identification specified which of the two Plaintiffs owned each of the alleged trade secrets, and it was designated "Confidential" under the Protective Order. *Id.* The First Identification was followed by a list of over 500 documents, containing a total of nearly 1,500 pages that Plaintiffs alleged to be "representative of" their trade secrets (the "First Document List"). *Id.*, Ex. B, pp. 4-10. Discovery commenced, and, eager to establish that Plaintiffs' claims lacked merit, Defendants produced the source code of their Oxxiom Device, which Lamego had independently developed years after leaving his position with Plaintiffs. *Id.*, ¶7, Ex. D.

Roughly one year after production of these highly confidential materials, Plaintiffs had not provided any greater detail about the alleged trade secrets in their First Identification, despite repeated requests by Defendants that Plaintiffs supplement their interrogatory responses to provide, among other things, a more particular identification of their alleged trade secrets. *See id.*, ¶¶8-9, Exs. E, F. When Plaintiffs repeatedly refused to commit to providing a supplemental response, Defendants prepared a Motion to Compel and provided Plaintiffs with Defendants' portion of a Joint Stipulation. *Id.*, ¶10, Ex. G. Faced with this pending motion, Plaintiffs provided, for the first time, a date certain by which they would supplement their responses. *Id.*, ¶11, Ex. H. Plaintiffs' counsel indicated that the supplementation "should moot the pending Joint Stipulation." *Id.* On July 1, 2020, a little over two weeks before the then-scheduled discovery cut-off, Plaintiffs provided their Supplemental Responses to Interrogatory Nos. 1 and 11 (the "Second Identification" and "Second Document List," respectively). *Id.*, ¶¶4-5, Ex. A, pp. 9-14; Ex. B, pp. 10-35.

Not only did Plaintiffs' Second Identification fail to moot the pending Joint Stipulation, but the supplementation created an entirely new set of problems. Most notably, Plaintiffs seized on Defendants' requests for greater particularity as an opportunity to completely shift course in their trade secret case. Plaintiffs removed 10 of their 15 original trade secret categories and replaced them with (i) 17 entirely new and unrelated categories and (ii) multiple paragraphs of catch-all language asserting trade secret rights in nebulous concepts. Additionally, Plaintiffs removed any indication of which entity owns the alleged trade secret(s) and increased the confidentiality designation to "AEO," thereby preventing Defendant Marcelo Lamego from seeing the new alleged trade secret categories.

Defendants promptly brought each of these issues to Plaintiffs' attention, and the cycle began anew. *Id.*, ¶12, Ex. I. Plaintiffs denied that the supplementation was inadequate and that the inclusion of new trade secrets was

improper. *Id.*, ¶13, Ex. J. Detailed letters were exchanged about the adequacy and propriety of the supplementation. *Id.*, ¶¶12-15, Exs. I, J, K, L. When faced with a motion to compel, Plaintiffs agreed to provide a supplementation, then delayed the supplementation by multiple weeks before providing—over three months after the issues were first raised—a supplementation (the "Third Identification" and the "Third Document List").[1] *Id.*, ¶16, Ex. M; Ex. A, pp. 14-19, Ex. B, pp. 60-82. This most recent supplementation not only retained the newly added trade secrets but also failed to address the other issues raised in Defendants' correspondence, such as the improper designation of the supplementation as "AEO." *Id.*

Now, nearly two years after Plaintiffs filed suit and a little over two months until the discovery deadline, the scope of Plaintiffs' trade secret case is more uncertain than at any other point in the pendency of this action. Returning to Judge Selna's observation at the scheduling conference: "Presumably [Plaintiffs] had a good idea of what the trade secrets were when the suit was filed." To the extent Plaintiffs actually had a good idea of their trade secrets when the suit was filed, they have since, under the guise of "supplementation," completely changed course from the one they originally charted at the outset of this case. Defendants ask the Court to intervene with a much-needed course-correction to return and limit this case to the five original alleged trade secrets that remain from the list Plaintiffs provided at the outset of the case.

**B.** **Plaintiffs' Introduction**

Defendants raise two arguments in this joint stipulation.  Defendants first ask this Court to strike portions of Plaintiffs' supplemental interrogatory responses identifying Defendants' trade secret misappropriation revealed during discovery.

---

[1] Plaintiffs' second supplement to their Response to Interrogatory No. 11 on August 14, 2020 reflected only minor modifications to the Second Document List and is therefore not addressed in this motion.

Defendants rely on California Code of Civil Procedure Section 2019.210 to argue that Plaintiffs' supplemental responses to Interrogatory No. 1 are improper.  But Judge Selna declined to apply Section 2019.210 to this case.  Dkt. 25 at 11; Dkt. 31 at 6:5-6.  Instead, Judge Selna agreed that an answer to an interrogatory pursuant to the Federal Rules sufficed.  *Id.*  Additionally, Defendants ***asked*** Plaintiffs to supplement after Plaintiffs explained that discovery had revealed additional acts of misappropriation.  Plaintiffs' supplement is required under the Federal Rules.

Moreover, Plaintiffs' supplemental responses would be proper even under Section 2019.210.  Numerous cases have permitted amendments without any special showing.  At most, some courts require a showing of good cause, which Plaintiffs establish in this briefing.  Plaintiffs timely supplemented their interrogatory responses after discovery revealed Lamego had used not only the trade secrets that Plaintiffs initially suspected, but also additional confidential algorithms.  Discovery revealed that Lamego had filed patent applications containing Plaintiffs' trade secrets.  Discovery further revealed that Lamego kept Plaintiffs' confidential documents after he resigned.   Plaintiffs could not have learned of those facts earlier because Defendants did not produce all of their source code and technical documents until May-June of 2020.  Additionally, Defendants' objections to both Plaintiffs' expert, Dr. James McNames, and Plaintiffs' trusted outside counsel, Stephen Jensen, delayed Plaintiffs' analysis of documents Defendants produced earlier.  Plaintiffs' supplemental interrogatory responses are appropriate.

Defendants next challenge Plaintiffs' designation of the supplemental interrogatory responses as "AEO" under the Protective Order.  After months of arguing that competitive decision-makers should not have any access to highly confidential "AEO" materials, Defendants now argue that their ***sole*** competitive decision-maker, Defendant Lamego himself, should be granted access to "AEO"

material.  Defendants rely solely on attorney argument. Testimony from Plaintiffs' employees establishes that Plaintiffs maintain this technical information as highly confidential and would be harmed if the information was disclosed to competitors.

## II.  PARTY'S CONTENTIONS, SEPARATELY STATED

### 1.  DEFENDANTS' POSITION

Defendants ask the Court to decide two issues related to Plaintiffs' Plaintiffs' identification of alleged trade secrets in their Response to Interrogatory No. 1. **First,** Defendants ask the Court to decide whether a trade secret plaintiff that has been required to provide an early identification of their trade secrets can later unilaterally amend their identification to add trade secrets after viewing Defendants' source code and attorney's eyes only materials. To the extent the Court concludes that such an expansion is *ever* permissible, Defendants ask the Court to decide whether Plaintiffs' addition of trade secrets is permissible in this case, where the addition occurred over one year after commencement of discovery and two weeks before the then-scheduled discovery cut-off. The Court's determination on this first issue will, in effect, be a determination of which of Plaintiffs' alleged trade secrets are properly at issue in this suit. **Second,** for the alleged trade secrets that the Court determines are properly at issue, Defendants ask the Court to decide whether Plaintiffs have met their burden of establishing that their list of categories of alleged trade secrets warrants a designation of "ATTORNEYS' EYES ONLY."

For the reasons set forth herein, the Court should disallow Plaintiffs' near-complete replacement of their original alleged trade secrets because allowing such unilateral expansion would undermine the Court's requirement that Plaintiffs provide an early, pre-discovery identification of their alleged trade secrets. Additionally, the Court should order Plaintiffs to withdraw their "AEO" designation of their interrogatory responses because a lesser designation of "CONFIDENTIAL" presents minimal risk of competitive harm and because the

current "AEO" designation significantly impairs Defendants' abilities to defend against Plaintiffs' allegations.

A.   **Plaintiffs Do Not Have a Unilateral Right to Add Trade Secrets and Should Be Precluded from Adding Trade Secrets Well After the Start of Discovery**

An action for trade secret misappropriation is ripe for abuse. In a patent infringement action, a claimant's rights are set forth in an official, publicly available document. In a breach of contract action, the claimant's rights are found within the four corners of an executed agreement. In trademark, the claimant's rights stem from that party's public use and/or official registration of a mark. But in an action for trade secret misappropriation, there is no issued patent, no official agreement, and no public trademark use. Rather, the claimant's rights are, by definition, based on what the claimant has *not* previously shared with others. The opportunistic plaintiff, free from any prior declaration of rights, thus has an ability to articulate its trade secrets in a way that is more influenced by litigation strategy than it is by the plaintiff's preexisting understanding of its trade secrets. *See Comput. Econ., Inc. v. Gartner Grp., Inc.,* 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999) ("Trade secret claims are especially prone to discovery abuse since neither the court nor the defendant can delineate the scope of permissible discovery without an identification of plaintiff's alleged trade secrets."). The risk for abuse is particularly acute when a trade secret plaintiff treats their misappropriation action not only as a shield that can be used to protect intellectual property rights but also as a sword that can be used to stifle healthy competition and restrict former employees' ability to add value to future employers and the public.

Courts across the country have recognized that requiring plaintiffs to identify their trade secrets at the outset of litigation is the best way to hold plaintiffs accountable and to ensure that the action is being used only as a shield and not as a sword. *See, e.g., Givaudan Fragrances Corp. v. Krivda*, Civil Action

No. 08-4409 (PGS), 2013 U.S. Dist. LEXIS 153437, at *11 (D.N.J. Oct. 25, 2013) ("Generally, a plaintiff in a misappropriation of trade secrets case must identify with precision the trade secrets at issue at the outset of the litigation."); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001) ("[A] plaintiff will normally be required first to identify with reasonable particularity the matter which it claims constitutes a trade secret, before it will be allowed (given a proper showing of need) to compel discovery of its adversary's trade secrets."). Indeed, California has codified this requirement in a statute, making a plaintiff's reasonably particular identification of trade secrets a prerequisite to a defendant's obligations to comply with trade secret-related discovery requests. Cal. Civ. Proc. Code § 2019.210.

Federal courts in California routinely apply this statutory rule in cases where plaintiffs allege misappropriation under the California Uniform Trade Secret Act, as Plaintiffs have here. *E.g., Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107 (N.D. Cal. 2016); *SocialApps, LLC v. Zynga, Inc.*, 2012 U.S. Dist. LEXIS 82767, *4 (N.D. Cal. June 14, 2012). Other federal courts in California have exercised their authority and applied the § 2019.210 framework to improve the fairness or efficiency of the proceedings. *E.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. CV 19-00220-JVS (JDEx), 2019 U.S. Dist. LEXIS 171453, *3-5 (C.D. Cal. June 11, 2019) (in trade secret action, finding "the procedural requirements of Section 2019.210" to be "warranted and appropriate to assist in the orderly and expeditious handling of discovery"); *Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 U.S. Dist. LEXIS 86334 (N.D. Cal Nov. 21, 2006); *Excelligence Learning Corp. v. Oriental Trading Co.*, No. 5:03-cv-4947 JF (RS), 2004 U.S. Dist. LEXIS 28125 (N.D. Cal. June 14, 2004). Federal courts outside of California have taken the same approach. *E.g.*, *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007).

Regardless of whether the early identification is required by rule or ordered

by the court as a means of ensuring orderly and expeditious discovery, as the Court has done here, the rationales for the rule are straightforward:

> Section 2019 was intended to protect defendants from baseless claims by preventing plaintiffs from initiating trade secret lawsuits in order to harass or drive competitors out of business. Proponents of section 2019 wanted to prevent plaintiffs from filing trade secret complaints without identifying what trade secrets were allegedly misappropriated and then embarking on an extensive "fishing expedition," thereby forcing the defendant to disclose its own business or trade secrets. In sum, section 2019 serves the following purposes: (1) it promotes well-investigated claims and dissuades the filing of meritless trade secret complaints; (2) it prevents plaintiffs from using the discovery process to obtain and misuse a competitor's trade secrets; (3) it assists courts in framing the scope of discovery; and (4) it enables defendants to prepare an effective defense.

*I-Flow Corp. v. Apex Med. Techs.*, No. 07cv1200-DMS(NLS), 2008 U.S. Dist. LEXIS 135162, at *7-8 (S.D. Cal. Feb. 15, 2008).

But the early identification requirement can only achieve the above-identified goals if a plaintiff is not permitted to freely amend the disclosure later in the case. As the Northern District of California explained, allowing a trade secret plaintiff to amend its trade secret identifications "as the case evolves" would frustrate the purposes of an early disclosure requirement. *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044-45 (N.D. Cal. 2004). Allowing such amendment would undermine the goals of "preventing a plaintiff from using discovery as a means to obtain a defendant's trade secrets and enabling a defendant to form complete and well-reasoned defenses, ensuring that it need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Id.* at 1044-45.

-9-

Among courts that require an early identification of trade secrets, there is widespread recognition that the trade secret plaintiff should not be permitted to freely amend its original, pre-discovery trade secret identification. *SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 82767, at *14-15 (N.D. Cal. June 14, 2012) ("The identification of trade secrets should be made without reservation of right to amend."); *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 170349, at *13 (N.D. Cal. Dec. 21, 2015) ("Any future amendment to the disclosure will only be permitted upon a showing of good cause.") (citing *Neothermia*, 345 F. Supp. 2d 1042.); *Vesta Corp. v. AMDOCS Mgmt.*, 147 F. Supp. 3d 1147, 1157 (D. Or. 2015) ("[T]he Court grants Defendants' motion that Plaintiff be required to show good cause for such supplementation [to a trade secret identification]."); *Optumsoft, Inc. v. Arista Networks, Inc.*, 2015 Cal. Super. LEXIS 1726, *7-8 ("[Plaintiff] cannot include language in the identification that leaves open the possibility that it may not have identified all of the trade secrets at issue."); *Heller v. Cepia L.L.C.*, No. C 11-1146 MEJ, 2012 U.S. Dist. LEXIS 6452, at *6 (N.D. Cal. Jan. 20, 2012) (prior to commencement of discovery, allowing the plaintiff to amend a trade secret identification up to a specified date, after which plaintiff was "precluded from introducing at trial or at any pretrial proceeding any information about a trade secret that he has not specifically identified previously, unless he can establish good cause for the omission"); *PDC Machs. Inc. v. Nel Hydrogen A/S*, No. 17-5399, 2018 U.S. Dist. LEXIS 100506, at *20-21 (E.D. Pa. June 15, 2018) ("Plaintiff may amend its list of trade secrets only with leave of court upon a showing of good cause.").

The early identification requirement is the court's and the defendant's best tool to hold a trade secret plaintiff accountable and prevent abuse. It is only by requiring an early identification and holding the plaintiff to that early identification that the court can ensure that the plaintiff is using the action as a

shield to protect preexisting rights and not as a sword to harass a former employee or drive a competitor out of business. The early trade secret identification is to the trade secret claimant what the issued patent is to the patent infringement plaintiff, what the executed contract is to the breach of contract plaintiff, and what the prior use/registration is to the trademark infringement plaintiff. Just as the patent infringement plaintiff cannot assert a patent monopoly on an invention never claimed and just as the breach of contract plaintiff can't seek damages for a defendant's failure to deliver a product never promised, the trade secret plaintiff should not be able to assert misappropriation of information that was only identified as an alleged trade secret years into the misappropriation suit. If a plaintiff is permitted to "amend" its original trade secret identification by discarding the originally identified trade secrets and replacing them with newly identified trade secrets, the early identification requirement is meaningless and any accountability is completely lost.

For purposes of this motion, it is important to distinguish between two types of amendment. The first is an amendment to describe a previously identified trade secret with greater particularity. This first type of amendment is far less likely to implicate any of the concerns articulated above because such an amendment is almost always a *narrowing* amendment. Indeed, this is the type of amendment that is to be expected in the early stages of a trade secret misappropriation action; a claimant brings an action based on a belief that a specific set of trade secrets have been misappropriated and, based on facts revealed in discovery that support or contradict these initial beliefs, the claimant narrows the initial allegations based on the specific evidence discovered. Even if a plaintiff is permitted to narrow their trade secret identifications, though, the plaintiff must eventually arrive at a stable trade secret identification early enough in the action to give the defendant a full and fair opportunity to seek discovery into potential defenses to the misappropriation claims.

The second type of amendment is one that introduces a new trade secret that has not been previously identified. This second type of amendment is almost certain to implicate the concerns described above because the addition of any new trade secret fundamentally shifts and/or expands the scope of the plaintiff's claims. A particularly concerning form of this second type of amendment is one where a plaintiff not only adds new, never-before-seen trade secrets to their trade secret identification but also concurrently withdraws the previously identified trade secrets provided in the original trade secret identification. *See Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 U.S. Dist. LEXIS 91333 (N.D. Cal. May 31, 2018) (describing this as a "bait-and-switch" tactic and explaining, "[Plaintiff] should not be allowed to drag [Defendant] into court based on meritless arguments, only to reboot its alleged trade secrets lineup and try again when the opening skirmish illuminates glaring flaws in [Plaintiff]'s case."). In other words, the early trade secret identification cannot merely be a placeholder for a future identification that comes after the plaintiff is exposed to the defendant's trade secrets in discovery.

Here, Defendants requested that Plaintiffs make the first type of amendment and provide a more *particular* identification of their trade secrets to focus the issues as the discovery deadline approached. Instead, Plaintiffs made—unilaterally and without any prior notice to either the Court or Defendants—the second type of amendment, suddenly shifting and expanding their trade secret allegations. Plaintiffs' First Identification included 15 categories of alleged trade secret information. In their Second Identification, they removed 10 of the 15 originally identified categories and replaced them with 17 new trade secret categories bearing no apparent relationship to the 15 original categories. In their Third Identification, Plaintiffs have brought the list of alleged trade secrets from 22 categories back down to 15, but still only five of these alleged trade secrets can be traced back to the First Identification, leaving 10 that were added either in the

Second Identification or in the Third.[2]

These 10 newly added trade secrets—specifically, category numbers 6-15 in the Third Identification—have no apparent connection or relationship to any of the 15 original categories. Thus, their addition would constitute an effective end-run of the Court's early identification requirement in this case. Additionally, Plaintiffs' Second Identification and Third Identification each include several paragraphs of what can only be described as catch-all or all-inclusive language. Courts that require a particular trade secret identification disfavor the use of open-ended language, like the word "including." *See M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. SA CV 19-00220-JVS (JDEx), 2019 U.S. Dist. LEXIS 171453, at *13 (C.D. Cal. June 11, 2019). But Plaintiffs' use of entire catch-all paragraphs goes much further than simply leaving the door cracked open by using the word "including." Plaintiffs' catch-all paragraphs effectively allege that the sum total of Lamego's work for Plaintiffs is trade secret, leaving Plaintiffs a clear path to expanding, shifting, or otherwise changing their alleged trade secrets *even later* in this case. The following language is representative:



_____

[2] The 10 categories in the Third Identification that cannot be traced back to the First Identification generally originated in the Second Identification, with the exception of category 10, which seems to be yet another newly identified category altogether.



Kachmer Decl., Ex. A, pp. 18-19. This catch-all language recites nothing more than "nebulous concepts that . . . encounter the long-standing tension between employment law and the trade secrets doctrine." *Calendar Research LLC v. StubHub, Inc.*, 2020 U.S. Dist. LEXIS 112361, *12 (C.D. Cal. May 13, 2020); *see also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1330 (9th Cir. 1980) ("Some knowledge gained by an employee is of such a general character that equity will not restrict its later use."), *Cinebase Software v. Media Guar. Tr.*, No. C98-1100 FMS, 1998 U.S. Dist. LEXIS 15007, at *32-33 (N.D. Cal. Sep. 21, 1998) ("[T]echnical know-how regarding what does and does not work in the process of designing [a product] is simply too nebulous a category of information to qualify for trade secret protection."). These newly added paragraphs are facially improper and their inclusion demonstrates Plaintiffs' false belief that they are entitled to shift, expand, and change their allegations whenever and however they see fit.

If the Court does not intervene and if Plaintiffs are permitted to proceed on trade secrets that cannot be traced back to their First Identification, it will render

the Court's early identification requirement meaningless. It will undermine the policy rationales that supported the early identification requirement and will prejudice Defendants, who handed over their most confidential technical materials at the outset of discovery based on what now appears to have been nothing more than a set of placeholder trade secrets that have since been discarded and replaced with new allegations bearing no apparent resemblance to Plaintiffs' pre-discovery allegations. The Court should therefore hold that Plaintiffs are precluded from proceeding on any alleged trade secrets that cannot be traced back to their First Identification.

Plaintiffs have argued that their near-complete replacement of their original trade secret list is proper because it is based on information learned in discovery and because they have a right to supplement interrogatory responses under Federal Rule 26(e). To the extent the Court finds that Plaintiffs ever had a right to expand or shift their trade secret identifications, the Court should find that Plaintiffs forfeited that right by failing to do so for over eleven months. Plaintiffs filed the present action on November 8, 2018. Plaintiffs provided their First Identification on March 15, 2019. Kachmer Decl., ¶4. Defendants made their source code available to Plaintiffs' counsel no later than July 30, 2019. Kachmer Decl., ¶7, Ex. D. By the time the parties moved for a *fourth* modification of the schedule on March 16, 2020, though, Plaintiffs had not given Defendants any indication whatsoever that they had any intention to shift or expand their original trade secret list. The discovery cut-off was moved to July 20, 2020. All through April, May, and June, Plaintiffs did not provide any new trade secret list. It was not until July 1—a little over two weeks before the then-scheduled discovery cut-off—that Plaintiffs provided their Second Identification. Kachmer Decl., ¶4. In other words, Plaintiffs waited *20 months* after filing the suit, *16 months* after providing their First Identification, and nearly *12 months* after first accessing Defendants' source code, only to suddenly spring on Defendants an entirely new trade secret case

shortly before the close of discovery.

There is no excuse for Plaintiffs' unreasonable delay. If Plaintiffs contend that their expansion of their trade secret list was based on information learned in discovery, that information was available to Plaintiffs long before Plaintiffs unilaterally expanded their claims in their Second Identification. Indeed, Plaintiffs admit as much in their own Third Document List. Plaintiffs' Third Document List lists what Plaintiffs believe to be "Documents Representative of Trade Secret Use and Misappropriation" for each of their alleged trade secrets. Kachmer Decl., Ex. B, pp. 61-83. For each of the 10 alleged trade secrets that was newly added on or after July 1, 2020, Plaintiffs list at least one document that was available to Plaintiffs at least as early as March 15, 2019, when Plaintiffs provided their First Identification. For example, for each of categories 6, 7, 8, 9, 11, 14, and 15, Plaintiffs identify TRUE000273-331 as a document allegedly representative of trade secret misappropriation. *Id.* But this document is a patent application that published on April 26, 2018—months before Plaintiffs even filed this action. Similarly, categories 10 and 12 each identify TRUE449-492, which is a patent application that was produced to Plaintiffs on August 30, 2019. And several of the newly added categories list, as purported evidence of misappropriation, line numbers from Defendants' source code—that is, the source code to which Plaintiffs have had access since July of 2019. By Plaintiffs' own admission, Plaintiffs had what they now claim to be evidence of misappropriation for new trade secrets 6-15 either before they provided their First Identification or shortly thereafter. And yet, Plaintiffs did not provide any indication whatsoever that they intended to expand their trade secret identifications until they suddenly and unilaterally did so on July 1, 2020. To the extent Plaintiffs ever had a right to expand their trade secret allegations, Plaintiffs forfeited this right long ago because they failed to act with diligence and because there is no excuse for Plaintiffs' unreasonable and prejudicial delay.

A Plaintiff alleging trade secret misappropriation "knows or should know its own trade secrets." *Opal labs, Inc. v. Sprinklr, Inc.*, No. 3:18-cv-01192, 2019 U.S. Dist. LEXIS 208870, at *9 (D. Or. Dec. 4, 2019). To the extent Plaintiffs knew its trade secrets when it filed this action, those trade secrets should have been listed in the First Identification, which the Court required Plaintiffs to provide at the outset of this case. Defendants now ask the Court to prevent Plaintiffs from rendering that early identification meaningless by treating their First Identification as a mere placeholder for a continuously shifting and expanding set of alleged trade secrets. The Court should hold that Plaintiffs are precluded from proceeding on any alleged trade secrets that were not included in their First Identification.

## B. Plaintiffs have Improperly Designated their Interrogatory Responses "AEO," Preventing Defendants from Participating in their Own Defense

Defendants additionally move the Court to compel Plaintiffs to remove their "ATTORNEYS' EYES ONLY" ("AEO") designation of their Second Identification and Third Identification.[3] Plaintiffs have over-designated their interrogatory responses, and, despite repeated requests, Plaintiffs have provided no

---

[3] An earlier version of this Joint Stipulation asserted that Plaintiffs had improperly designated their Second and Third Document List as "AEO." Defendants had repeatedly made this position clear to Plaintiffs prior to preparing that earlier version, and Plaintiffs had nonetheless refused to withdraw their "AEO" designation. *See* Kachmer Decl., ¶¶12-15, Exs. I, J, K, L. Only after Defendants provided that earlier version of the Joint Stipulation did Plaintiffs finally withdraw their "AEO" designation of the Second and Third Document Lists. *Id.*, ¶17, Ex. N. Plaintiffs' failure to act until faced with a pending Joint Stipulation is consistent with the playbook they have followed throughout this litigation, a playbook that has repeatedly forced Defendants to waste time and resources preparing Joint Stipulations to address meritless positions taken by Plaintiffs.. *See also id.*, ¶11, Ex. H (Plaintiffs agreeing to supplement interrogatory responses only after receiving Defendants' portion of a Motion to Compel).

basis for their designation of these materials as "AEO." There is none; the Second and Third Identifications merely describe, at a high level, what Plaintiffs allege to be their trade secrets, but do not include the trade secrets themselves. None of these meets the definition of materials warranting an "AEO" designation. Additionally, Plaintiffs' over-designation of their Third Identification will negatively impact Defendants' ability to fully assess the allegations levelled against them and to formulate their defenses thereto. For these reasons, Plaintiffs' responses should be de-designated to no greater than "CONFIDENTIAL," which provides adequate protection under the Protective Order.

Plaintiffs provided their First Identification under a "CONFIDENTIAL" designation.[4] When Plaintiffs provided their Second Identification, Plaintiffs increased the designation of their responses from "CONFIDENTIAL" to "AEO." Upon receipt of the Second Identification, Defendants promptly requested in writing that Plaintiffs withdraw their "AEO" designation of these materials, pursuant to paragraph 17 of the Protective Order. (Dkt. 100 at 15.) Plaintiffs refused but provided no basis for their position. Despite Defendants' repeated requests that Plaintiffs withdraw their "AEO" designation of these materials, Plaintiffs have given the same "AEO" designation to the Third Identification.

The burden is on Plaintiffs to establish that their "AEO" designation is proper. (Dkt. 100 at 15.)  Yet, to date, Plaintiffs have failed to provide any explanation of why their "AEO" designation is warranted, especially in light of the "CONFIDENTIAL" designation given to the First Identification, which includes some of the very same material as the Second Identification and Third Identification. Instead, Plaintiffs have merely provided conclusory assertions, stating, e.g., "the information contained in the Supplemental Response to

_____

[4] All of the arguments made in this section would apply equally to the First Identification if Plaintiffs were ever to designate it as "AEO."

Interrogatory No. 1 constitutes Plaintiff's highly confidential, attorneys' eyes only information." Kachmer Decl., Ex. I, p. 13.

Plaintiffs have failed to satisfy their burden of establishing good cause to designate the Interrogatory Responses as "AEO" material. Pursuant to Section 8 of the Protective Order, an "AEO" designation is only appropriate for material that "constitutes or contains trade secrets or other non-public, highly confidential research, development, technical, business, and/or financial information that has not become public, the disclosure of which is likely to cause harm to the competitive position of the Disclosing Party." (Dkt. 100 at 7-8.) Even where there is a possibility of competitive harm, though, the court must balance any such risk against the risk that the restrictions that the Protective Order places on "AEO" materials would "impair prosecution or defense of the claims" in this action. *Nutratech, Inc. v. Syntech Int'l, Inc.*, 242 F.R.D. 552, 555 (C.D. Cal. March 20, 2007) (citing *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465 (9th Cir. 1992)).

The court should compel Plaintiffs to withdraw their "AEO" designation because (1) there is little, if any, risk that disclosure of their Response to Interrogatory No. 1 would cause harm to their competitive position and (2) to the extent there is any risk of competitive harm, the risk is outweighed by the likelihood that the "AEO" designation will impair Defendants' ability to defend against Plaintiffs' misappropriation claims.

### i.  Plaintiffs Cannot Establish that Disclosure of their Interrogatory Responses would Cause Harm to their Competitive Position

Plaintiffs have made the conclusory assertion that their Second Identification and Third Identification meets the definition of "AEO" material because they "constitute[] or contain[] trade secrets." This is an oversimplification. Plaintiffs' Second Identification and Third Identification

-19-

purport to "identify" alleged trade secrets. But they do not "identify" the alleged trade secrets by providing, in the response, the trade secret information itself. Rather, Plaintiffs' responses "identify" their alleged trade secrets by describing the concepts that underlie the alleged trade secrets and/or by identifying categories within which their trade secrets allegedly fall. Thus, the Second and Third Identification themselves do not "constitute or contain trade secrets."

For example, item number 4 of the Third Identification identifies "█████████████████████████████████████████." But the description never identifies any specific "█████████████" or provides any details about *how* to "████████████████████████████████████████████." Similarly, item number 1 identifies "████████████████" and proceeds to identify some characteristics of the "█████████████," such as that it "████████████████████████████████████████████████████." But the description never identifies what this "████████████" entails or what the "████████████" are. And item number 3 identifies "████████████████████████████████████████████████" as an alleged trade secret. But the description never specifies what the "████████████████" or the "████████████" are with respect to this information. These examples illustrate what is characteristic of the entire Second and Third Identification: The interrogatory responses themselves do not "constitute or contain trade secrets" but rather describe categories of Information that Plaintiffs believe to be trade secret. The Response to Interrogatory No. 1 does not "constitute[s] or contain[s]" trade secrets and, thus, does not fall under the "trade secrets" prong of the Protective Order's "AEO" definition.

Because Plaintiffs' Second and Third Identifications merely describe categories of alleged trade secrets, these materials only warrant an "AEO"

designation if they contain material "that has not become public, the disclosure of which is likely to cause harm to the competitive position of [Plaintiffs]." These materials do not. Thus, a "CONFIDENTIAL" designation is more than adequate for these materials. With respect to the Second and Third Identifications, the categories are simply too vague and open-ended to cause any competitive harm. Additionally, the categories themselves do not represent competitively sensitive information because each category lists a type of information a competitor would fully expect a noninvasive monitoring company to possess. For the information in Plaintiffs' Response to Interrogatory No. 1, there is little, if any, risk that the disclosure of this information would cause competitive harm to Plaintiffs.

The court in *Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC* reached precisely this conclusion in near-identical circumstances. No. 2:19-cv-000637, 2020 U.S. Dist. LEXIS 91747, at *5-6 (D. Utah May 26, 2020), *aff'd* No. 2:19-cv-000637, 2020 U.S. Dist. LEXIS 174373 (D. Utah Sep. 22, 2020). There, a trade secret plaintiff, Mitchell, sought an "AEO" designation of its interrogatory responses identifying allegedly misappropriated trade secrets. The court held that Mitchell had not met its burden of establishing that the responses warranted an "AEO" designation in part because the court was not convinced that Mitchell's interrogatory responses actually contained any trade secret information:

> Mitchell's interrogatory responses contain nothing akin to technical or financial data, algorithms, or software codes. Instead, **the responses merely identify broad categories of information** and processes that Mitchell considers to be trade secrets. Although the underlying processes and information referred to may well constitute trade secrets (an issue the Court need not decide in this Order), **the Court is not persuaded the interrogatory responses themselves constitute trade secrets** warranting an attorneys'-eyes-only designation.

*Mitchell*, 2020 U.S. Dist. LEXIS 91747, at *5-6 (emphasis added).

As in *Mitchell*, Plaintiffs' Interrogatory Responses do not contain information that would cause Plaintiffs competitive harm if disclosed to Plaintiffs. Because there is no risk of competitive harm, the court should compel Plaintiffs to withdraw their "AEO" designation.

>   **ii.     There is an Overwhelming Likelihood that Plaintiffs' "AEO" Designation will Impair Defendants' Ability to Defend Against Plaintiffs' Misappropriation Claims**

Even if Plaintiffs were to establish that the disclosure of their Responses would create some risk of competitive harm (which they cannot), this risk is outweighed by the likelihood that maintaining an "AEO" designation will impair Defendants' ability to defend against Plaintiffs' misappropriation claims. In *Mitchell*, the court held that restricting the defendants' access to Mitchell's interrogatory responses "would significantly impair [the defendants'] ability to defend against the misappropriation claim." *Mitchell*, 2020 U.S. Dist. LEXIS 91747, at *8. As the court explained:

>   **The [Defendants] must know broadly what trade secrets are at issue** in order to address whether they had access to that information while employed at Mitchell, whether that information was treated as confidential, and whether their knowledge of that information came from Mitchell or some other source. Those issues can be addressed **only by the parties themselves, not by retained experts**, as Mitchell contends.

*Id.* (emphasis added); *see also irth Sols., LLC v. Apex Data Sols. & Servs., LLC*, No. 18-CV-6884-FPG-MJP, 2020 U.S. Dist. LEXIS 68040 (W.D.N.Y. Apr. 17, 2020) (granting defendant's motion to compel disclosure of plaintiff's trade secret identifications to defendants based on argument that plaintiff's "AEO" designation prevented defendants from being able to assist in their defense), *DeRubeis v.*

1   *Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007) ("[I]t is difficult, if not
2   impossible, for the defendant to mount a defense until it has some indication to the
3   trade secrets allegedly misappropriated.").

4          Plaintiffs' Trade Secret Identifications should not be designated "AEO"
5   because this information is essential for Defendants to understand Plaintiffs'
6   misappropriation claims. *Profil Institut fur Stoffwechselforschung GmbH v.*
7   *ProSciento, Inc.*, No. 16cv1549-LAB (BLM), 2017 U.S. Dist. LEXIS 102954
8   (S.D. Cal. July 3, 2017) (in trade secret action, ordering that allegedly
9   misappropriated information and data "should not be designated [AEO]" in part
10  "because it would prevent Defendant from accessing the case's most essential
11  information"). Two years into this case, Defendants know that they have been
12  accused of misappropriating trade secrets, but they have no idea what those
13  alleged trade secrets are or even into which category of information the alleged
14  trade secrets fall. Nor do Defendants know the way(s) in which Plaintiffs are
15  alleging the misappropriation took place. Defendants' attorneys can access some
16  of this information and can seek the guidance of third-party experts on certain
17  technical aspects of these allegations (e.g., interpretation of source code). But as
18  the court explained in *Mitchell*, there are certain aspects of Defendants' defense
19  that, even with the guidance of third-party experts, Defendants' attorneys cannot
20  adequately address without consulting their clients.

21          Until Defendants are able to access Plaintiffs' Trade Secret Identifications,
22  Defendants' attorneys will be unable to consult Defendants about important
23  aspects of the case. If Lamego has no idea what trade secrets Plaintiffs accuse him
24  of misappropriating, Defendants' attorneys cannot consult him about important
25  questions such as, for example, (i) whether he had access to the alleged trade
26  secrets while employed by Plaintiffs, (ii) whether Plaintiffs treated the alleged
27  trade secrets as confidential, (iii) whether his knowledge of the alleged trade
28  secrets comes from Plaintiffs or from some other source, and (iv) whether

Defendants use any of the alleged trade secrets in their Oxxiom device. A third-party expert may be able to answer questions about a mathematical formula or scientific principle, but he or she cannot answer a question about Lamego's first-hand knowledge and experience. Only Lamego can. Put simply, Plaintiffs' "AEO" designations are acting as a blindfold on Defendants, leaving Defendants completely in the dark about the accusations against them. Defendants will be unable to adequately prosecute their defense until this blindfold is removed. Indeed, the restrictions have already impaired Defendants' ability to defend against Plaintiffs' misappropriation claims, and the harm to Defendants will only worsen from here. The court should compel Plaintiffs' to withdraw their "AEO" designation, which is the only way to allow Defendants to access information that goes to the very heart of Plaintiffs' misappropriation claims.

Additionally, Plaintiffs' refusal to withdraw their "AEO" designation is in tension with their misappropriation allegations against Lamego. Plaintiffs allege that Lamego has already had knowledge of each of the alleged trade secrets identified in Plaintiffs' Interrogatory Responses. Indeed, Plaintiffs would have no basis to claim misappropriation if they did not believe Lamego has had knowledge of the alleged trade secrets. If, as Plaintiffs allege, Lamego has already been exposed to the alleged trade secret categories in Plaintiffs' Interrogatory Responses, disclosure of the Responses to Lamego would not cause any further competitive harm.

When previously confronted with this fact, Plaintiffs suggested that "re-exposure" of Lamego to Plaintiffs' alleged trade secrets would create a risk of competitive harm. But Plaintiffs' "re-exposure" theory is misplaced. Again, Plaintiffs' Second and Third Identifications do not themselves constitute or contain any alleged trade secrets. They are merely interrogatory responses prepared for the purposes of litigation. These descriptions of categories of alleged trade secrets did not even *exist* when Lamego was employed by Plaintiffs.

Allowing Lamego to access these Identifications would enable Lamego to understand the types of information that Plaintiffs are accusing him of misappropriating. But Lamego accessing these descriptions of categories of alleged trade secrets would not, in any meaningful sense, constitute a "re-exposure" to that alleged trade secret information itself.

Moreover, Plaintiffs have requested production of source code for products that Defendants developed and released well after the commencement of this litigation. Similarly, Plaintiffs have requested that Defendants prevent publication of all of their currently pending patent applications, regardless of the applications' filing dates. To justify these requests, Plaintiffs have theorized—incorrectly—that Lamego continues to misappropriate their alleged trade secrets with each new product release and each new patent application. And yet, Plaintiffs are actively preventing Lamego from understanding what Plaintiffs believe to be their trade secrets. It seems that Plaintiffs may be more interested in handicapping Defendants' ability to litigate than in protecting their alleged trade secrets. Regardless, Plaintiffs' Second and Third Identifications do not contain information that warrants an "AEO" designation, and the court should compel Plaintiffs to withdraw their "AEO" designation of these interrogatory responses.

## 2.   **PLAINTIFFS' POSITION**

### A.   **Plaintiffs Properly Supplemented Interrogatory No. 1**

At the onset of this case, Defendants asked Judge Selna to apply California Civil Code Section 2019.210.  Dkt. 25 at 11.  Instead, Judge Selna decided that an answer to an interrogatory pursuant to the Federal Rules sufficed.  Dkt. 31 at 6:5-6.  He also directed Defendants to move *ex parte* within seven days if they believed Plaintiffs' response was inadequate.  *Id*. at 6:11-14, 23-25.  Judge Selna made clear he wanted any issue resolved early in the case.  *Id.*  Plaintiffs promptly served their interrogatory response on March 15, 2019 without any extension and before Defendants had provided their technical documents (Dkt. 31 at 7:2-12).

Defendants said nothing for months.  Defendants now—twenty months later—ask this Court to both apply Section 2019.210 and prevent Plaintiffs from supplementing their interrogatory answer as required under the Federal Rules. Defendants' argument fails for many reasons.

### i.        Section 2019.210 Does Not Apply To This Case

Defendants' argument relies on the requirements of Section 2019.210. Federal courts disagree on whether Section 2019.210 applies in federal cases. Some courts have applied Section 2019.210 by relying on the courts' inherent power to manage discovery.  *See M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 WL 4284523, at *2 (C.D. Cal. June 11, 2019).  Other courts have declined to apply Section 2019.210 on the basis that it conflicts with Rule 26 under the *Erie* doctrine.  *See SMC Networks, Inc. v. Hitron Techs., Inc.*, 2013 WL 12136372, at *3 (C.D. Cal. Mar. 15, 2013) (concluding Section 2019.210 conflicts with Rule 26); *Funcat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 2007 WL 273949, at *2 (E.D. Cal. Jan. 29, 2007) (same).[5]

However, Judge Selna already declined to apply Section 2019.210 to this case.  Similar to the *M/A-COM* decision, Defendants asked Judge Selna to require a "trade secret disclosure" pursuant to the "inherent authority of the Court." Dkt. 25 at 11.  Plaintiffs argued that Defendants were essentially demanding a Section 2019.210 disclosure, which "violates rule 26."  Dkt. 31 at 5:12-15. Plaintiffs suggested that they instead answer an interrogatory pursuant to the

---

[5] Defendants rely on policy set forth in *Computer Econ., Inc. v. Gartner Grp., Inc.*, 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999).  Section II.1.A., *supra*.  Courts in this District have "disagree[d] with that ruling" as "§ 2019.210 clearly conflicts with Rule 26, and is not applicable in federal courts."  *SMC Networks*, 2013 WL 12136372, at *3.  Other courts similarly rejected *Computer Econ.* as inconsistent with Rule 26.  *See Hilderman v. Enea TekSci, Inc.*, 2010 WL 143440, at *3 (S.D. Cal. Jan. 8, 2010); *Freeman Inv. Mgmt. Co., LLC v. Frank Russell Co.*, 2015 WL 13828591, at *3 (S.D. Cal. July 30, 2015).

Federal Rules.  *Id.* at 5:15-18.  Judge Selna agreed with Plaintiffs' approach and told Defendants to return ***to him*** on an *ex parte* basis within seven days if there was a "dispute as to the adequacy of the response."  *Id.* at 6:5-14.  Defendants never asked Judge Selna to reconsider application of Section 2019.210.  Accordingly, Section 2019.210 does not apply to this case.

Therefore, Defendants' arguments and citations to cases applying Section 2019.210 are irrelevant.  *See* Section II.1.A., *supra*.  Likewise, Defendants arguments and cases describing when a Section 2019.210 disclosure can be amended are also irrelevant.  *Id.*  Instead, the Federal Rules apply.  Those rules not only permit supplementation, they require it.  *See* Fed. R. Civ. P. 26(e)(1)(A).  Plaintiffs properly supplemented their interrogatory responses in accordance with the Federal Rules.  *See StoneEagle Servs., Inc. v. Valentine*, 2013 WL 9554563, at *5 (N.D. Tex. June 5, 2013) (requiring a disclosure of trade secrets with "reasonable particularity" but stating "this Order will not prevent Plaintiffs from seeking to amend or supplement their list in the future, should the circumstances warrant doing so.  *See* Fed. R. Civ. P. 26(e)").  And as further explained below, in Section iii, Plaintiffs amended their interrogatory response based on discovery in the case.

### ii.  Defendants Demanded That Plaintiffs Amend Their Interrogatory Response

Defendants' request to strike Plaintiffs' supplemental responses also lacks merit because Defendants demanded that Plaintiffs supplement their response.  Plaintiffs provided their response to Interrogatory No. 1 on March 15, 2019.  Claassen Decl., ¶ 2.  Defendants did not bring any motion regarding the sufficiency of this response within seven days, as Judge Selna required.  *See* Dkt. 31 at 6:5-14.  Defendants waited six months before asserting that Plaintiffs' description of trade secrets was "generic" in October of 2019.  Claassen Decl., ¶ 18, Ex. 11.  At that time, Defendants sought an identification of "precise Bates

numbers of documents for each category of trade secret identified." *Id.* The parties met and conferred and Plaintiffs provided Bates numbers on November 15, 2019. *Id.*, ¶ 5.

Defendants again waited months before requesting more information on April 3, 2020. *Id.*, ¶ 22, Ex. 15. The parties met and conferred on several occasions and Plaintiffs agreed to supplement their response to Interrogatory No. 1. *Id.*, ¶¶ 28-30, Exs. 21-23. Plaintiffs did so on July 1, 2020. *Id.*, ¶ 12. On July 14, 2020, Defendants again complained that Plaintiffs' Interrogatory No. 1 was insufficient and asked Plaintiffs to "further supplement their Responses." *Id.*, ¶ 32, Ex. 25 at 9. The parties continued to discuss the issue to resolve the issue, and Plaintiffs again, in an attempt to avoid a dispute, agreed to supplement as demanded by Defendants. *Id.*, ¶¶ 16, 31-37, Exs. 9, 24-30. Plaintiffs did so on October 30, 2020. *Id.*, ¶ 38.

After Plaintiffs provided the requested supplement, Defendants now complain that ten trade secrets are "new" and were not at issue in Plaintiffs' original interrogatory response. Section II.1.A., *supra.* But Defendants admit that Plaintiffs included ***nine*** of those trade secrets in a supplemental answer ***more than four months ago*** on July 1, 2020. Sections I.A. & II.1.A., *supra.*

Defendants argue their request for supplementation is immaterial because they asked Plaintiffs to add detail about existing trade secrets, not identify new trade secrets. Section II.1.A., *supra.* Defendants cite a single decision from the Northern District of California to support that distinction. *See id.* (citing *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 2445515 (N.D. Cal. May 31, 2018)). But *Swarmify* made no such distinction. In fact, *Swarmify* addressed a plaintiff that amended its disclosure to "reboot its alleged trade secrets" based on "glaring flaws"—not a plaintiff that supplemented pursuant to the defendant's request or its obligations under the Federal Rules. 2018 WL 2445515, at *3. Regardless, the *Swarmify* court expressly ***allowed*** the

-28-

plaintiff to amend its Section 2019.210 disclosure to include entirely new trade secrets. *Id.*

### iii.    Amendment Is Proper Even Under Section 2019.210

Although Section 2019.210 does not apply in this case, Plaintiffs' supplemental responses would be proper even under that section. Defendants argue that a plaintiff should be required to identify its trade secrets before discovery begins and should not be permitted to amend the disclosure during discovery. Section II.1.A., *supra*. Specifically, Defendants seek an order holding that "Plaintiffs are precluded from proceeding on any alleged trade secrets that cannot be traced back to their First Identification" served before discovery began. *Id.*

Even if Section 2019.210 applied to this case, which it does not, just last month, the Ninth Circuit rejected that argument. *See InteliClear, LLC v. ETC Glob. Holdings, Inc.*, No. 19-55862, __ F.3d __, 2020 WL 6072880 (9th Cir. Oct. 15, 2020). In *InteliClear*, the Ninth Circuit held that a plaintiff need only identify "at least one trade secret" prior to commencing discovery. *Id.* at *5.[6] The court explained that "discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *Id.* As the Ninth Circuit explained, "[r]efining trade secret identifications through discovery makes good sense" because there are "valid reasons to avoid being overly specific at the outset in defining [the plaintiff's] intellectual property." *Id.* at *8. The court imposed no conditions or requirements on amendments, instead characterizing amendments as a common "iterative" process that "makes good sense." *See id.* at *7-8.

---

[6] *InteliClear* addressed a motion for summary judgment filed before discovery began. *Id.* at *2-3. However, the ruling broadly explains why it is common and permissible for plaintiffs to revise their trade secret disclosure during discovery.

Defendants cite only pre-*InteliClear* cases.  But even those cases do not bar all amendments to Section 2019.210 disclosures.  To the contrary, many of those cases allowed amendments late in the case without any showing of good cause.  For example, in *Givaudan Fragrances Corp. v. Krivda*, 2013 WL 5781183 (D.N.J. Oct. 25, 2013), the court allowed the plaintiff to pursue 34 trade secrets that were disclosed "sporadically" during discovery up to **five years** after filing suit and just months before trial.  *Id.* at *2-3.  The court required no showing of good cause for the late disclosure and granted summary judgment only on trade secrets that were **never** disclosed during discovery.  *Id.* at *7; *see also Advante Int'l Corp. v. Mintel Learning Tech.*, 2006 WL 3371576, at *3-4 (N.D. Cal. Nov. 21, 2006) (compelling discovery on trade secrets identified on the last day of discovery without a showing of good cause); *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 WL 2445515, *3 (N.D. Cal. May 31, 2018) (permitting numerous amendments to trade secret disclosure without any showing of good cause); *Calendar Research LLC v. StubHub, Inc.*, 2020 WL 4390391, *4 (C.D. Cal. May 13, 2020) (considering whether new trade secrets first identified in summary judgment briefing were sufficiently described).

Defendants' own quotations from other cases expressly recognize that, at most, good cause is required to amend a Section 2019.210 disclosure after receiving discovery.  *See, e.g.*, *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015) (permitting further amendment during discovery "upon a showing of good cause"); *Vesta Corp. v. AMDOCS Mgmt.*, 147 F. Supp. 3d 1147, 1157 (D. Or. 2015) (same); *Heller v. Cepia L.L.C.*, 2012 U.S. Dist. LEXIS 6452, at *6 (N.D. Cal. Jan. 20, 2012) (same); *PDC Machs. Inc. v. Nel Hydrogen A/S*, No. 17-5399, 2018 U.S. Dist. LEXIS 100506, at *20-21 (E.D. Pa. June 15, 2018) (same); *Soc. Apps, LLC v. Zynga, Inc.*, 2012 WL 2203063, at *5 (N.D. Cal. June 14, 2012) (same); *Loop AI*

*Labs Inc. v. Gatti,* 195 F. Supp. 3d 1107 (N.D. Cal. 2016) (same).[7]   As the
California Court of Appeals explained, "[i]f, through discovery, [the plaintiff]
uncovers information suggesting defendants misappropriated additional trade
secrets, it may have good cause to amend its trade secret statement under
appropriate circumstances." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal.
App. 4th 1333, 1350 (2009).

Here, even if good cause were required, Plaintiffs' amendment is proper
because Plaintiffs could only recently discover that Defendants misappropriated
additional trade secrets.   In late July 2019, Defendants made available only
portions of source code.  Claassen Decl., ¶ 3, Ex. 1.  In August 2019, Defendants
produced what appeared to be six draft patent applications without any
information showing whether the applications had ever been filed.   *Id.*, ¶ 4.[8]
Plaintiffs repeatedly requested that Defendants produce copies of their pending
non-published patent applications so that Plaintiffs could identify any of Plaintiffs'
trade secret information contained in those applications before they published.  *Id.*,
¶¶ 6-7, 20, Exs. 2-3, 13.  In April 2020, Defendants produced unpublished patent
applications after Plaintiffs confronted Defendants with evidence that there were
patent applications that Defendants had not produced.   Claassen Decl., ¶ 8.
Defendants did not produce Matlab files describing the functionality of the source
code (the subject of a motion to compel) until May 2020.   *Id.*, ¶ 9, Ex. 4.

---

[7] Defendants cite *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042,
1044-45 (N.D. Cal. 2004) as supposedly holding that a plaintiff should not be
permitted to amend "as the case evolves."  That case actually held that a plaintiff
should not have "complete freedom" to amend but permitted amendment upon a
showing of "good cause."  *Id.*

[8] Defendants also complain about Plaintiffs' citation of a patent that published on
April 26, 2018.  However, Plaintiffs identified this application in their complaint
as part of the evidence of Defendants' trade secret misappropriation and with their
first interrogatory responses.

Defendants produced additional printed source code in June 2020.  *Id.*, ¶¶ 10, 30, Exs. 5, 23.  Thus, Plaintiffs did not have access to the relevant documents and source code until May-June 2020.

Defendants' objections to Plaintiffs' expert (Dr. McNames) ***and*** Plaintiffs' outside counsel (Stephen Jensen) also frustrated Plaintiffs' analysis.  This Court overruled Defendants' objection to Plaintiffs' expert on March 30, 2020.  Dkt. 98.  On April 2, 2020, the Court rejected Defendants' proposed protective order, which would have barred Mr. Jensen.  Dkt. 100.  However, Defendants continued to object to access by Mr. Jensen, which required Plaintiffs to file a motion to overrule Defendants' objections.  Dkt. 108.  The Court did so in June 2020.  Dkt. 111.  Defendants then filed a motion for reconsideration, which this Court denied just one week ago on November 10, 2020.  Dkt. 130.  Defendants' repeated objections to Plaintiffs' expert and counsel slowed Plaintiffs' analysis of Defendants' technical documents.  Defendants do not cite a single case striking an interrogatory response in such circumstances.[9]

Accordingly, Plaintiffs' supplementation was proper because Plaintiffs could not have learned that Defendants misappropriated additional trade secrets until they had the ability to fully review and analyze Defendants' documents and source code.  *See Perlan*, 178 Cal. App. 4th at 1350 ("If, through discovery, [plaintiff] uncovers information suggesting defendants misappropriated additional trade secrets, it may have good cause to amend its trade secret statement under appropriate circumstances.").

───────────────

[9] Defendants' other cases not addressed above required a trade secret disclosure without addressing the standards for amending such a disclosure during discovery. *See Excelligence Learning Corp. v. Oriental Trading Co.*, 2004 WL 2452834, at *4 (N.D. Cal. June 14, 2004); *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007); *I-Flow Corp. v. Apex Med. Techs.*, 2008 U.S. Dist. LEXIS 135162, at *7-8 (S.D. Cal. Feb. 15, 2008); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001); *M/A-COM*, 2019 WL 4284523, at *2.

Defendants tacitly acknowledge that Plaintiffs could not have provided the information with their original response, but argue that Plaintiffs "forfeited" their right to supplement by not doing so in August of 2019.  Section II.1.A., *supra*.  As explained above, Defendants objection to Plaintiffs' expert was not resolved until March 30, 2020 and Plaintiffs did not have access to all of Defendants' source code and technical documents until June 2020.  There is no dispute that Plaintiffs identified all but **one** trade secret at issue by July 1, 2020, less than a month after Defendants produced additional source code and technical files.  Plaintiffs continued reviewing Defendants' information and identified just one additional trade secret with their most recent supplement on October 30, 2020.

Defendants also argue that some of the documents on which Plaintiffs rely were available prior to Plaintiffs' interrogatory response.  *Id.*  While Plaintiffs rely on some of those documents as part of the evidence of misappropriation, Defendants have not identified in such documents any trade secret first presented in the supplemental responses.  Defendants did not produce additional information about those documents, including the patent applications described above, until much later in the case.

Defendants complain that Plaintiffs "discarded and replaced" their original trade secret allegations.  Section II.1.A., *supra*.  That is not true.  Defendants acknowledge that Plaintiffs' most recent supplemental interrogatory response includes five of Plaintiffs' originally identified trade secrets.  Plaintiffs' streamlining this case is an appropriate result of the discovery process.

Defendants also argue, quoting *Opal*, that supplementation was improper because "[a] Plaintiff alleging trade secret misappropriation 'should know its own trade secrets.'"  Section II.1.A., *supra* (quoting *Opal Labs, Inc. v. Sprinklr, Inc.*, 2019 WL 6528589, at *4 (D. Or. Dec. 4, 2019)).  But a plaintiff is not required to identify all of its trade secrets in the abstract; the plaintiff is required to identify trade secrets ***that it contends the defendant misappropriated***.  While a plaintiff

can often identify some trade secrets before filing suit, others may require discovery. Indeed, in the very next sentence of *Opal,* the court explained that the plaintiff had already "examined Defendant's current content marketing and planning platform and should be able to identify which of its trade secrets Defendants may have misappropriated." *Opal*, 2019 WL 6528589, at *4 (granting plaintiff 30 days to supplement its answer). Thus, the *Opal* court properly allowed the plaintiff to identify trade secrets ***allegedly misappropriated by defendant*** after receiving documents from the defendant.

Here, Defendants' interrogatory did not ask Plaintiffs to identify all of their trade secrets in the abstract. Defendants sought identification of each trade secret that "Plaintiffs contend was ***misappropriated by Defendants***." (Kachmer Decl., Ex. A at 5, emphasis added). Plaintiffs properly identified misappropriated trade secrets of which Plaintiffs were aware at the time. Discovery has revealed additional misappropriation and Plaintiffs have properly supplemented their interrogatory response under the Federal Rules. Defendants should not be allowed to avoid liability by successfully hiding that misappropriation from public view.

Finally, Defendants allege they will suffer "prejudice," but do not identify any actual prejudice that they would suffer by Plaintiffs' supplementation. There are over two months remaining in fact discovery and trial is not until January of 2022. Dkt. 117. Defendants have taken only one deposition, which was solely to solicit testimony to support a motion for reconsideration on Mr. Jensen. Dkt. 120-1. Defendants have yet to take a single deposition on the substance of any of Plaintiffs' identified trade secrets. Defendants do not show what additional discovery is necessary due to Plaintiffs' supplement or how they would be prejudiced.

/ / /

/ / /

iv.     **Defendants' Challenges To The Specificity Of Plaintiffs' Interrogatory Response Lack Merit**

Defendants also argue that Plaintiffs' interrogatory response is insufficient for two reasons.  First, Defendants criticize Plaintiffs' interrogatory responses because they use "open-ended language, like the word 'including.'"  Section II.1.A., *supra*.   But Plaintiffs used the same language in their ***original*** interrogatory responses and Defendants raised no issue.  As explained above, Judge Selna specifically instructed Defendants to return to him within seven days on an *ex parte* basis if they believed the identification was insufficient.  Defendants did not do so.

Second, Defendants include three bullet points as examples of Plaintiffs supposedly alleging "the sum total of Lamego's work for Plaintiffs is a trade secret."  *Id.*  But Defendants quoted portions of sentences that are ***not*** listed in Plaintiffs' identification of trade secrets that Defendants misappropriated.  Kachmer Decl., Ex. A at 18-19.  Defendants took those quotations from Plaintiffs' separate description of *how* Lamego was exposed to Plaintiffs' trade secrets (*id.*)—*not* Plaintiffs' list of alleged trade secrets (*id.* at 14-18).  The trade secrets that Plaintiffs actually allege Defendants misappropriated are more specific.  *See, e.g.*, *id.* at 15 ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

Plaintiffs' initial identification of trade secrets was sufficiently clear that Defendants did not bring the matter to Judge Selna's attention as instructed.  Since then, Plaintiffs supplemented their interrogatory response as requested by Defendants, which coincided with Plaintiffs learning more about Defendants' misappropriation.  Plaintiffs' supplements are proper as part of the "iterative

1   process" of discovery that leads to a "refined and sufficiently particularized trade

2   secret identification." *See InteliClear*, __ F.3d __, 2020 WL 6072880, *5.

3        **B.**    **Plaintiffs Properly Designated Their Interrogatory Responses**

4                 **"AEO"**

5           **i.**    **The Protective Order Allows Plaintiffs to Protect Their**

6                 **Trade Secret Information from Disclosure under an**

7                 **"AEO" Designation**

8        The Protective Order provides that discovery materials may be designated

9   "CONFIDENTIAL," "AEO," or "RESTRICTED CONFIDENTIAL SOURCE

10   CODE." Dkt. 100 at 3. The Protective Order specifically contemplates that

11   "AEO" information includes "confidential information or items that the

12   designating party has a good faith belief constitutes trade secrets or other non-

13   public, highly confidential research, development, technical, business, and/or

14   financial information that has not become public, the disclosure of which is likely

15   to cause harm to the competitive position of the Disclosing Party." *Id.* at 7-8.

16   Plaintiffs properly designated their first and second supplemental responses to

17   Defendants' Interrogatory No. 1, identifying Plaintiffs' trade secrets, "AEO"

18   pursuant to the Protective Order. These trade secrets are described in technical

19   documents or source code that Plaintiffs keep confidential. For example, item 12

20   in the second supplemental response identifies and describes Plaintiffs' ▮▮▮▮

21   ▮▮▮▮▮▮▮▮. Kachmer Decl., Ex. A at 17. The description includes the

22   equations reproduced below:

23

24

25

26

27

28



*Id.*  Plaintiffs' ██████████████ and the relevant equations are not generally known in the industry.  Chen Decl., ¶¶ 7-8.  Similarly, item 6 includes a specific ratio and detailed explanation of its relevance:

Kachmer Decl., Ex. A at 15.  The knowledge of that specific ratio and its relevance is not generally known in the industry.  Chen Decl., ¶ 4.

Knowledge of which particular values ***Plaintiffs*** analyze in their algorithms also constitute Plaintiffs' trade secrets.  For example, item 7 recites:  ██████

Kachmer Decl., Ex. A at 16.  The

knowledge that Plaintiffs use a ███████████████████ is not generally
known in the industry.  Chen Decl., ¶ 5.

Knowledge of which particular techniques ***Plaintiffs*** use also constitute
Plaintiffs' trade secrets.  For example, item 1 recites as follows:



Kachmer Decl., Ex. A at 10.  And item 10 provides the following: ████████

████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
███████████████████ *Id.*  The knowledge of Plaintiffs' selection of algorithms is
not generally known in the industry.  Diab Decl., ¶¶ 7-10.

Despite these detailed descriptions, Defendants complain that a few of
Plaintiffs' identification of trade secrets are merely categories of information that
do not "constitute or contain trade secrets."  Section II.1.B.i., *supra*.  As explained
below, Plaintiffs do in fact identify their trade secrets in response to Defendants'
Interrogatory No. 1.

For example, item 4 of Plaintiffs' second supplemental response recites the
following: ███████████████████████████████████████████████
████████████████████████ Kachmer Decl., Ex. A at 15.  Defendants argue
that item 4 does not identify any specific ███████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████ ███████████████████████████████

3 ███████████████████████████████████████████████

4 ████████████████████. *Id.*; *see also* Claassen Decl., ¶ 39, Ex. 31.

5       Similarly, Defendants refer to cropped portions of item numbers 1 and 3

6 and allege that the quoted portions in isolation do not constitute trade secrets.

7 Section II.1.B.i., *supra*.  Viewed as a whole, items 1 and 3 constitute Plaintiffs'

8 technical information that Plaintiffs maintain as confidential.  Diab Decl., ¶¶ 7, 13.

9 That justifies Plaintiffs' designation of items 1 and 3 as "AEO" under the

10 Protective Order.  Defendants provide no explanation why these identified trade

11 secrets do not warrant an "AEO" designation.  Defendants' apparent contention

12 that some of these items are not trade secrets is an ultimate issue to be determined

13 at trial.

14       Plaintiffs and Defendants are competitors, and Defendants are continuing to

15 refine their product and develop new products.  Claassen Decl., ¶¶ 24-25,

16 Exs. 17-18.  The identification of what Plaintiffs consider to be trade secrets,

17 including the particular techniques and values Plaintiffs use, would reinforce

18 Defendants' selection of techniques and values.  In addition, Defendants' counsel

19 disputes Lamego's access to the trade secrets.  Thus, under Defendants' view of

20 the case, Plaintiffs would be harmed if this information were disclosed to

21 Defendants.

22       Defendants also argue that Plaintiffs' list of trade secrets "are simply too

23 vague and open-ended to cause any competitive harm."  Section II.1.B.i., *supra*.

24 Additionally, they allege that the categories themselves do not represent

25 competitively sensitive information because each category lists a type of

26 information a competitor would fully expect a noninvasive monitoring company to

27 possess.  *Id.*  Defendants' allegations are attorney argument without factual

28 support.

Defendants' reliance on *Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, No. 2:19-cv-000637-RJS-DAO, 2020 WL 2736094 (D. Utah May 26, 2020) to support their access argument is misplaced.  In *Mitchell*, the Court found the interrogatory responses were not trade secrets warranting an AEO designation, where the responses merely identified "broad categories of data and processes that Mitchell claims were misappropriated."  2020 WL 2736094, at *2.  Defendants argue that *Mitchell* involved "near-identical circumstances."  But the interrogatory responses at issue in *Mitchell* were filed under seal and are not publicly available.  Thus, it is not possible to draw such a comparison.

Moreover, Plaintiffs' interrogatory responses do not merely identify "broad categories of data and processes."   Instead, as described above, Plaintiffs specifically identify detailed equations, as well as particular techniques and values Plaintiffs use.  Courts in this district have found such an identification sufficiently identifies a party's trade secrets.  *See, e.g.*, *Bal Seal Eng'g, Inc. v. Nelson Prods., Inc.*, No. 8:13-cv-01880-JLS-KESx, 2018 WL 4697255, at *4 (C.D. Cal. Aug. 3, 2018) (plaintiff sufficiently identified its trade secrets where the "trade secret is the combination of the '(i) **selection** by Bal Seal personnel of a general design solution for the customer **from a variety of possible solutions**; and (ii) the **specific engineering and design parameters** and specifications that are recommended and developed by Bal Seal.'").

Plaintiffs properly designated their interrogatory responses, identifying their trade secrets, "AEO" pursuant to the Protective Order.

> ### ii.     Defendants Have Not Met Their Burden to Show that Lamego Should Have Access to Plaintiffs' AEO Information

Once a protective order has been entered, a party seeking to modify the protective order carries the initial burden of showing "good cause."  *CytoSport, Inc. v. Vital Pharms., Inc.*, No. CIV S-08-2632 FCD/GGH, 2010 WL 1904840,

at *2 (E.D. Cal. May 10, 2010). Defendants would like Lamego to access Plaintiffs' AEO information but fail to meet their burden to show why the Protective Order in its current form prejudices their ability to litigate this case. *See CytoSport*, 2010 WL 1904840, at *2 (party moving to modify protective order must "demonstrative actual prejudice").

Courts routinely reject arguments that AEO designations unfairly inhibit parties' ability to participate in litigation. *See Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470-71 (9th Cir. 1992); *Gaymar Indus. v. Cloud Nine*, 2007 WL 582948, at *3 (D. Utah Feb. 20, 2007) (denying party's principals access to AEO information because, "as is typical in cases between competitors and alleged infringers, retained experts" would evaluate the information); *Nutratech, Inc. v. Syntech Int'l*, 242 F.R.D. 552, 555 (C.D. Cal. 2007) (noting if a party's ability to defend was impaired by AEO designation, "courts would never issue [AEO] protective orders"); *Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.*, 682 F. Supp. 20, 22 (D. Del. 1988) (citing cases concluding AEO information may be limited to counsel and experts). Indeed, Defendants' own cited authority allowed a party to designate its trade secret disclosure as "attorneys' eyes only." *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007).[10]

In *Gentex Corp. v. Sutter*, No. 3:07-CV-1269, 2009 WL 959832, at *1 (M.D. Pa. April 6, 2009), the court declined to evaluate defendants' argument that

---

[10] Defendants' reliance on *Profil Institut fur Stoffwechselforschung GmbH v. ProSciento, Inc.*, No. 16cv1549-LAB (BLM), 2017 U.S. Dist. LEXIS 102954 (S.D. Cal. July 3, 2017) is also misplaced. *Profil* did not involve a motion seeking withdrawal of the "AEO" designation of another party's trade secrets. In *Profil*, the court issued an order resolving the parties' dispute regarding a *proposed* protective order. In contrast, here, Defendants willingly negotiated a Protective Order that provides for an "AEO" designation and specifically identifies who can access "AEO" material. Dkt. 100 at 7-8.

it was "necessary for various of its officers and employees to review the discovery responses to mount a defense." The court denied defendants' motion to reclassify plaintiff's trade secret interrogatory responses as "Confidential" rather than AEO. *Id.* Indeed, "[t]he disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets." *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1202 (10th Cir. 2014) (citation omitted). In this case, Lamego is not only the engineer for the product, but also the sole competitive decision-maker for True Wearables. Defendants have repeatedly argued to this Court the particular risk of harm of disclosure to a competitive decision-maker in this case. Dkts. 82-1, 108-1, 120-1. Lamego should not be given access.

Courts have found that "[r]equiring a party to rely on its competent outside counsel does not create an 'undue and unnecessary burden.'" *Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 529 (N.D. Cal. 2000); *see also CytoSport, Inc. v. Vital Pharm., Inc.*, 2010 WL 1904840, at *2 (E.D. Cal. May 10, 2010). Lamego is represented by competent lead counsel at Merchant & Gould, which markets its technical acumen. *See* https://www.merchantgould.com/About-MG (accessed November 11, 2020).

Finally, Defendants argue that Lamego needs access to Plaintiffs' trade secrets to understand the information Plaintiffs accuse him of misappropriating. But Defendants ignore that Plaintiffs face a similar complexity with respect to identifying Defendants' misappropriation. Plaintiffs have developed a vast number of proprietary techniques and amassed a large amount of proprietary research over the decades. Plaintiffs' lawyers had to sift through that large amount of information to identify the misappropriated trade secrets without the benefit of Plaintiffs' engineers who are best equipped to identify the theft of their trade secrets. Claassen Decl., ¶ 23, Ex. 16.

### iii.  Defendants Have Been Unwilling to Consider a Substantive Proposal That Would Address Both Sides' Concerns

Plaintiffs have indicated that they would consider a substantive proposal from Defendants that would address both sides' concerns regarding Plaintiffs' designation of their interrogatory responses.  Claassen Decl., ¶ 16, Ex. 9.  Indeed, even after Defendants provided their portion of this Joint Stipulation, Plaintiffs asked Defendants again if they were amenable to further discussion of the issue. *Id.*, ¶ 17, Ex. 10.  But Defendants expressed no interest.  *Id.*  Defendants have pursued an all-or-nothing approach, seeking de-designation of all of Plaintiffs' trade secrets from "AEO" to "CONFIDENTIAL."  *Id.* ("Defendants cannot envision a solution, short of re-designation, that would mitigate Defendants' concerns.").

Defendants argue that Plaintiffs' refusal to withdraw their "AEO" designation is in tension with Plaintiffs' misappropriation allegations.  *See* Section II.1.B.ii., *supra*.  While Plaintiffs allege that Lamego has already had knowledge of each of the alleged trade secrets identified in Plaintiffs' interrogatory responses, Defendants contest liability and argue that Lamego was never previously exposed to Plaintiffs' trade secrets.  If, as Defendants argue, Lamego was never exposed to Plaintiffs' trade secrets or has forgotten them, then Plaintiffs risk refreshing Lamego's knowledge.

Moreover, as Defendants acknowledge, Plaintiffs have focused their case such that there are certain trade secrets identified in Plaintiffs' first supplemental response that are no longer identified in Plaintiffs' second supplemental response. *See* Section II.1.A., *supra*; Kachmer Decl., Ex. A.  Plaintiffs are no longer asserting them.  Defendants all-or-nothing approach would disclose to Defendants trade secrets that are no longer at issue in this case.  Defendants fail to explain why such expansive disclosure is necessary or justified.

iv.   **Plaintiffs Have Consistently Protected the Confidentiality of Their Trade Secrets**

Defendants argue that Plaintiffs designated their first response to Interrogatory No. 1 as "CONFIDENTIAL." Section II.1.B., *supra*. Defendants suggestion that Plaintiffs have changed their designation is wrong. Plaintiffs provided that response to Defendants' counsel before the Protective Order was entered in this case ***and*** with specific instructions that it would not be shared with Lamego. In fact, counsel met and conferred on that specific issue and Plaintiffs provided a redacted version of that response. Claassen Decl., ¶ 26-27, Exs. 19-20. The parties agreed that Lamego could access that redacted version ***only***. *Id.*, ¶ 26, Ex. 19. Thus, Plaintiffs made clear that the response was for outside counsel only.

Respectfully submitted,

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated: November 18, 2020    By: */s/ Brian C. Claassen*
                                     Brian C. Claassen

Attorneys for Plaintiffs, Masimo Corporation and Cercacor Laboratories, Inc.

**MERCHANT & GOULD, P.C.**

Dated: November 18, 2020    By: */s/ Ryan J. Fletcher*
                                     Ryan J. Fletcher

Attorneys for Defendants.
True Wearables, Inc. and Marcelo Lamego

**FILER'S ATTESTATION**

Pursuant to Local Rule 5-4.3.4 regarding signatures, I hereby attest that concurrence in the filing of this document has been obtained from all signatories above.

Dated: _November 18, 2020_        By: _/s/ Ryan J. Fletcher_
                                   Ryan J. Fletcher