Amanda R. Washton (Bar No. 227541)
a.washton@conklelaw.com
Sherron Wiggins (Bar No. 321819)
s.wiggins@conklelaw.com
**CONKLE, KREMER & ENGEL**
**Professional Law Corporation**
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403-2351
Phone: (310) 998-9100
Facsimile: (310) 998-9109

Peter A. Gergely (*Pro Hac Vice*)
PGergely@merchantgould.com
Ryan J. Fletcher, (*Pro Hac Vice*)
RFletcher@merchantgould.com
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081
*Attorneys for Defendants,*
*True Wearables, Inc. and*
*Marcelo Lamego*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, <br><br> Defendants. | ) Case No. 8:18-CV-02001-JVS-JDE <br> ) <br> ) **DEFENDANTS' *EX PARTE*** <br> ) **APPLICATION FOR AN** <br> ) **ORDER STRIKING PORTIONS** <br> ) **OF PLAINTIFFS'** <br> ) **INTERROGATORY** <br> ) **RESPONSES; COMPELLING** <br> ) **DISCOVERY RESPONSES;** <br> ) **AND PROTECTING** <br> ) **DEFENDANTS FROM** <br> ) **DISCOVERY** <br> ) <br> ) No Hearing Noticed <br> ) <br> ) Discovery Cutoff: 5/21/2021 <br> ) Pre-Trial Conf.: 12/13/2021 <br> ) Trial: 01/11/2022 <br><br> Hon. James V. Selna <br> Hon. Magistrate John D. Early |

# **Table of Contents**

I. PLAINTIFFS HAVE FAILED TO IDENTIFY THEIR ALLEGED
TRADE SECRETS CONSISTENT WITH COURT
INSTRUCTIONS ............................................................................................. 7

II. PLAINTIFFS' ADDITION OF NEW TRADE SECRETS IS
IMPROPER, AND THOSE NEW TRADE SECRETS SHOULD BE
STRICKEN. .................................................................................................... 13

    A.    Unilateral Expansion Renders Early Identification
           Meaningless. ....................................................................................... 13

    B.    Plaintiffs' Late Expansion Reflects a Lack of Diligence. .................. 18

III. THE COURT SHOULD COMPEL PLAINTIFFS TO PROVIDE A
MORE SPECIFIC IDENTIFICATION OF THE TRADE SECRETS
THIS COURT DETERMINES ARE PROPERLY ASSERTED ................. 22

    A.    Plaintiffs' TS Nos. 1, 3-5, 8-15 are Insufficiently Specific. .............. 24

    B.    Until Plaintiffs Identify their Alleged Trade Secrets with
           Specificity, Defendants are Entitled to a Protective Order
           Preventing Further Trade Secret Discovery ....................................... 26

2

## **Table of Authorities**

*InteliClear, LLC v. ETC Global Holdings, Inc.*
978 F.3d 653, 662 (9th Cir. 2020)……………………..……….…………...3, 19

*AutoMed Techs., Inc. v. Eller*
160 F. Supp. 2d 915, 926 (N.D. Ill. 2001)………………….……………..………9

*Calendar Research LLC v. StubHub, Inc.*
No. 2:17-cv-04062-SVW-SS, 2020 U.S. Dist. LEXIS 112361, at *12 (C.D. Cal.
May 13, 2020)……………………………………………………..…...…………13

*Cinebase Software v. Media Guar. Tr.*
No. C98-1100 FMS, 1998 U.S. Dist. LEXIS 15007, at *32-33 (N.D. Cal. Sep. 21,
1998)…………………………………………………………………….…..13

*Comcast Cable Communs. Corp., LLC v. Finisar Corp.*
No. C 06-04206 WHA, 2007 U.S. Dist. LEXIS 98476, at *5 (N.D. Cal. Mar. 2,
2007)……………………………………………………………..……….15

*Comput. Econ., Inc. v. Gartner Grp., Inc.*
50 F. Supp. 2d 980, 992 (S.D. Cal. 1999)…………………………...……9, 24

*DeRubeis v. Witten Techs., Inc.*
244 F.R.D. 676, 681 (N.D. Ga. 2007)……………………………...……..10

*Givaudan Fragrances Corp. v. Krivda*
No. 08-4409 (PGS), 2013 U.S. Dist. LEXIS 153437, at *11 (D.N.J. Oct. 25,
2013)……………………………………………………………...…..9

*Heller v. Cepia L.L.C.*
No. C 11-1146 MEJ, 2012 U.S. Dist. LEXIS 6452, at *6 (N.D. Cal. Jan. 20,
2012)……………………………………………………………...11

*Hollingsworth Solderless Terminal Co. v. Turley*
622 F.2d 1324, 1330 (9th Cir. 1980)…………………………….…...……..13

*I-Flow Corp. v. Apex Med. Techs.*
No. 07cv1200-DMS(NLS), 2008 U.S. Dist. LEXIS 135162, at *7-8 (S.D. Cal. Feb.
15, 2008)………………………………………………………...……….10, 20

*Koninklijke Philips, N.V. v. Acer Inc.*
No. 18-cv-01885-HSG, 2019 U.S. Dist. LEXIS 25383, at *14-15 (N.D. Cal. Feb.

15, 2019)……………………………………….………………..…………..15

*Loop AI Labs, Inc. v. Gatti*
No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 170349, at *13 (N.D. Cal.
Dec. 21, 2015)……………………………………….………………….…11, 24

*Loop AI Labs Inc. v. Gatti*
195 F. Supp. 3d 1107, 1111-13 (N.D. Cal. 2016)…………………..……………10

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*
No. CV 19-00220-JVS (JDEx), 2019 U.S. Dist. LEXIS 171453, at *3-5 (C.D. Cal.
June 11, 2019)………………………………………………...……….…………10, 13, 23

*Masimo Corp. v. Apple Inc.*
No. 8:20-cv-00048-JVS (JDEx), 2020 U.S. Dist. LEXIS 164850, at *11 (C.D. Cal.
June 15, 2020)………………………………………………….…..………10

*Neothermia Corp. v. Rubicor Med., Inc.*
345 F. Supp. 2d 1042, 1044-45 (N.D. Cal. 2004)…………………..……………11

*Newmark Grp., Inc. v. Avison Young (Canada) Inc.*
No. 2:15-cv-00531-RFB-GWF, 2018 WL 5886531, at *4-8 (D. Nev. Nov. 9,
2018)………………………………………………………………...……….23

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*
467 F.3d 1355, 1366 (Fed. Cir. 2006)…………………………..……………15

*Optumsoft, Inc. v. Arista Networks, Inc.*
No. 1-14-CV-263257, 2015 Cal. Super. LEXIS 1726, at *7-8 (Apr. 4,
2014)………………………………………………………………....…..11

*PDC Machs. Inc. v. Nel Hydrogen A/S*
No. 17-5399, 2018 U.S. Dist. LEXIS 100506, at *20-21 (E.D. Pa. June 15,
2018)…………………………………………………………….…..11

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*
307 F.3d 1206, 1211 (9th Cir. 2002)…………………………………………23

*Positive Techs., Inc. v. Sony Elecs., Inc.*
No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28,
2013)………………………………………………………….………15

*Seattle Times Co. v. Rhinehart*
467 U.S. 20, 36 (1984)……………………………………………………………..23

*SocialApps, LLC v. Zynga, Inc.*
No. 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 82767, at *4 (N.D. Cal. June
14, 2012)……………………………………………………………10, 11, 19

*Sun Microsystems, Inc. v. Network Appliance, Inc.*
No. 07-05488, 2009 WL 508448, at *1 (N.D. Cal. Feb. 27, 2009)…………....…15

*Swarmify, Inc. v. Cloudflare, Inc.*
No. C 17-06957 WHA, 2018 U.S. Dist. LEXIS 91333, at *6-7 (N.D. Cal. May 31,
2018)……………………………………………………………………12

*Switch Commc'n Group v. Ballard*
No. 2:11-cv-00285, 2012 U.S. Dist. LEXIS 85148, at *5 (D. Nev. June 19,
2012)…………………………………………………………..………20

*Vasudevan Software, Inc. v. IBM*
No. C09-05897 RS (HRL), 2011 U.S. Dist. LEXIS 33132, at *5 (N.D. Cal. Feb.
18, 2011)……………………………………………………..…..…………..14

*Vesta Corp. v. AMDOCS Mgmt.*
147 F. Supp. 3d 1147, 1157 (D. Or. 2015)……………….…………………11

**PLEASE TAKE NOTICE** that, pursuant to Local Rule 7-19, pursuant to this Court's instructions on February 25, 2019, and pursuant to Magistrate Judge Early's January 19, 2021 interpretation thereof, Defendants Marcelo Lamego and True Wearables, Inc. ("Defendants") hereby submit this *Ex Parte* Application for an Order striking portions of Plaintiffs' supplemental responses to Defendants' Interrogatory No. 1, which relates to Plaintiffs' identification of their alleged trade secrets.[1] Relatedly, Defendants further move pursuant to Local Rule 7-19, Federal Rule of Civil Procedure 37, and Magistrate Judge Early's instructions to compel Plaintiffs to provide a more particular response Interrogatory No. 1 and under Rule 26 for a protective order.

Interrogatory No. 1 goes to the heart of the lawsuit, seeking identification of each alleged trade secret allegedly misappropriated by Defendants. Plaintiffs' current response contains improperly added material and fails to identify alleged trade secrets with sufficient particularity. Plaintiffs maintain they have the right to continue unilaterally changing the trade secrets at issue in this litigation. Until the scope of Plaintiffs' alleged trade secrets is determined, until the alleged trade secrets are identified with sufficient particularity, and until Defendants receive assurance that Plaintiffs' list of alleged trade secrets is final, Defendants request a protective order, pursuant to Federal Rule of Civil Procedure 26, from this Court protecting Defendants from further trade secret discovery.

---

[1] Plaintiffs served their first response to Interrogatory No. 1 in March 2019. Since then, Plaintiffs have amended their Response to Interrogatory No. 1 twice. Plaintiffs' most recent supplementation to this interrogatory was served by Plaintiffs on October 30, 2020. This most recent supplementation incorporates each of Plaintiffs' prior responses. This response is attached as Exhibit A to the Declaration of Zach Kachmer ("Kachmer Decl.") filed herewith. Kachmer Decl., ¶4, Ex. A.

**I.     PLAINTIFFS HAVE FAILED TO IDENTIFY THEIR ALLEGED TRADE SECRETS CONSISTENT WITH COURT INSTRUCTIONS**

Plaintiffs' identification of trade secrets has been and remains a constantly moving target. Plaintiffs have added new alleged trade secrets to the case and removed alleged trade secrets from the case at their unfettered discretion. The trade secrets that have been identified remain inadequate, lacking sufficient particularity. In short, Plaintiffs have failed to and refuse to provide a stable and sufficiently particular identification of allegedly misappropriated trade secrets, preventing Defendants from being able to adequately defend against Plaintiffs' claims.

Defendants served their first set of interrogatories on Plaintiffs two years ago which included Interrogatory No. 1 asking Plaintiffs to "[i]dentify (including, but not limited to with "reasonable particularity" as that term is used in California Civil Procedure Code § 2019.210), each trade secret of each of the Plaintiffs that each of the Plaintiffs contend was misappropriated by Defendants." Kachmer Decl., ¶4, Ex. A, p. 5. Shortly thereafter, at the Scheduling Conference, the parties discussed a topic familiar to this Court: procedures to ensure fairness in a trade secret case. Defendants expressed concerns that Plaintiffs would play a "cat and mouse game" with their trade secret identification. *Id.*, ¶6, Ex. C at 6:15-18. Acknowledging these concerns, the Court ordered Plaintiffs to provide an early identification of their alleged trade secrets and delayed Defendants' discovery obligations until after Plaintiffs had identified their alleged trade secrets. *Id.* at 6:19-7:12. The Court reasoned: "We have got to get that issue out of the way. . . . Presumably [Plaintiffs] had a good idea of what the trade secrets were when the suit was filed. . . . We're going to get that issue out of the way early.*" Id*. at 5:19-7:1.

Plaintiffs provided an identification of alleged trade secrets on March 15, 2019 (the "Original Identification"). *Id.*, ¶4, Ex. A, pp. 5-9. This Original

Identification listed 15 categories of "knowhow," "techniques," and "knowledge." *Id.* The Original Identification was sufficient to give Defendants a sense of the type and category of information for which Plaintiffs were claiming trade secret status and to set some boundaries for discovery. Defendants understood that, over time and through the discovery process, the details of the alleged trade secrets would come into better focus. *See, e.g.*, *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) ("discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification"). Defendants' primary concern at that early stage was establishing the boundaries within which Plaintiffs' trade secrets would be defined. The 15 categories listed in the Original Identification, though imperfect, would serve that important purpose.

Eager to establish that Plaintiffs' claims lacked merit, Defendants produced, in July of 2019, the entire source code of their Oxxiom Device, which Lamego had independently developed years after leaving his position with Plaintiffs. Kachmer Decl., ¶7, Ex. D.  On August 30, 2019, Defendants further produced True Wearables' confidential patent applications detailing the operations of the Oxxiom. Kachmer Decl., ¶24.

Roughly one year after production of these (and more) highly confidential materials, Plaintiffs had still not yet begun to bring the details of their alleged trade secrets into focus, despite repeated requests from Defendants that they do so. *See id.*, ¶¶8-9, Exs. E, F. When Plaintiffs repeatedly refused to commit to providing a supplemental response to Interrogatory No. 1, Defendants prepared a Motion to Compel and provided Plaintiffs with Defendants' portion of a Joint Stipulation. *Id.*, ¶10, Ex. G. Faced with this pending motion, Plaintiffs provided, for the first time, a date certain by which they would supplement their response. *Id.*, ¶11, Ex. H. Plaintiffs' counsel indicated that the supplementation "should moot the pending Joint Stipulation." *Id.* On July 1, 2020, a little over two weeks

before the then-scheduled discovery cut-off, Plaintiffs provided their Supplemental Responses to Interrogatory No. 1 (the "First Expanded Identification"). *Id*., ¶4, Ex. A, pp. 9-14.

But rather than supplementing the original 15 categories of trade secrets to add greater particularity, Plaintiffs suddenly shifted their trade secret case and made a near-wholesale replacement of the original list. In this First Expanded Identification, Plaintiffs *removed* 10 of their 15 original trade secret categories and *replaced* them with (i) 17 entirely new and unrelated categories and (ii) multiple paragraphs of catch-all language asserting trade secret rights in nebulous concepts. *Id.* Plaintiffs' unilateral, near-wholesale replacement of alleged trade secrets was in clear defiance of the Court's order that the parties get the identification of trade secrets out of the way early.

Defendants promptly brought their concerns regarding Plaintiffs' expansion, lack of specificity, and catch-all language to Plaintiffs' attention, and the cycle began anew. *Id.*, ¶12, Ex. I. Plaintiffs denied that the supplementation was inadequate and that the inclusion of new trade secrets was improper. *Id.*, ¶13, Ex. J. Detailed letters were exchanged about the adequacy and propriety of the supplementation. *Id.*, ¶¶12-15, Exs. I, J, K, L. When faced with a motion to compel, Plaintiffs agreed to provide a supplementation, then delayed the supplementation by multiple weeks before providing—over three months after the issues were first raised—yet another supplementation (the "Second Expanded Identification"). *Id.*, ¶16, Ex. M; ¶4 Ex. A, pp. 14-19. The Second Expanded Identification retained most of the newly added trade secrets from the First Expanded Identification and again added additional categories of trade secrets. While the Second Expanded Identification identified 3 of the 15 alleged trade secrets with sufficient particularity, the identification of the remaining 12 alleged trade secrets remained insufficiently particular.

Defendants promptly brought a Motion to Strike to Magistrate Judge Early

using a Joint Stipulation pursuant to L.R. 37. (Dkt. 132-134). In this Joint Stipulation, Defendants argued that permitting Plaintiffs to unilaterally expand their alleged trade secrets would undermine and render meaningless this Court's requirement that Plaintiffs identify their trade secrets prior to discovery. Defendants argued that Plaintiffs' unilateral expansion was further improper because Plaintiffs inexplicably waited *a year after accessing Defendants' source code* and technical materials before springing the expansion on Defendants *weeks before what was then set to be the discovery cut-off*. On these bases, Defendants asked Judge Early to strike the newly added trade secrets ("TS Nos. 6-15") to prevent Plaintiffs' attempt to end-run this Court's early identification requirement.

The motion was heard December 10, 2020. (Dkt. 143). On January 19, Judge Early issued an Order refusing to rule on Defendants' motion. (Dkt. 150). Judge Early noted that although discovery-related motions had been referred to him, the referral did not apply to "interrogatories directed to trade secrets," for which this Court had ordered motions to be brought "on an ex parte basis." (*Id.*) Judge Early concluded that because the motion "relates directly to the adequacy of Plaintiffs' trade secret disclosures," he did not have authority to grant Defendants' relief. (*Id.*) He noted, however, that his order did not limit Defendants' ability to "raise [] the issue in the first instance with Judge Selna." (*Id.*)

Accordingly, Defendants now bring the issue to this Court. Because Judge Early did not rule on Defendants' motion and strike Plaintiffs' late addition of trade secrets, Defendants' concerns remain. Indeed, Defendants' concerns are even more pressing than when the motion was brought to Judge Early. The discovery cut-off is rapidly approaching. Defendants intend to conduct depositions of Plaintiffs' technical employees and have already retained three experts specifically to offer technical expertise on Plaintiffs' alleged trade secrets. To fully develop defenses to Plaintiffs' trade secret claims will require extensive discovery

and expenditure of resources.[2] But Defendants cannot proceed with these critical tasks until the Court addresses Plaintiffs' improper expansion and insufficiently particular identification of alleged trade secrets. The Court's determination on this issue has immediate and significant effects on how this case will proceed in the coming weeks and months leading up to the discovery cut-off.

The urgency of this issue is further heightened by Plaintiffs' motion for preliminary injunction, filed days ago. (Dkt. 153). In that motion, Plaintiffs seek to prevent True Wearables' patent application materials from becoming publicly accessible, which would require Defendants to forego valuable intellectual property protection. Plaintiffs claim in this motion that Defendants' patent applications contain an alleged trade secret they refer to as the ███████ ████ (hereinafter ████ But the ████ was neither identified in Plaintiffs' original interrogatory response nor its July 2020 supplement. *See* Kachmer Decl., Ex. A, pp. 5-19. Rather, it was first listed in Plaintiffs' response in October 2020—nineteen months after Plaintiffs provided their original trade secret identification and fourteen months after Defendants first produced *the very patent applications* that Plaintiffs now claim to include the ████ *Id.* at 17. Defendants' right to protect their intellectual property should not be impeded based on an alleged trade secret that Plaintiffs failed to identify for over a year.

Thus, in addition to this Court's and Judge Early's instructions that motions relating to trade secret identification be brought on an *ex parte* basis, Plaintiffs' motion for preliminary injunction independently creates circumstances warranting

---

[2] Defendants expressed these concerns to Plaintiffs immediately following Judge Early's Order, but Plaintiffs disagreed, stated that Plaintiffs reserved the right to continue to expand their trade secret identifications, asserted that objections to the particularity of their identification had been resolved by the Court, and requested supplemental responses to trade secret discovery within one week. Kachmer Decl., ¶¶19, 20, Exs. P, Q.

an *ex parte* application because Defendants cannot be expected to defend against Plaintiffs' motion when the motion is based solely on an alleged trade secret that should be stricken from the case altogether.

These are critical issues that Defendants have tried to resolve without court intervention for several months to no avail. Defendants have written countless letters, have met and conferred on these issues *ad nauseum*, have written multiple joint stipulations, and have brought a motion to strike to Judge Early. Despite all of these efforts, Defendants now face a motion for preliminary injunction and a rapidly approaching discovery cut-off at a time when the scope of Plaintiffs' trade secret case is more uncertain than at any other point in the pendency of this action. Defendants ask the Court to intervene with a much-needed course-correction that strikes Plaintiffs' TS Nos. 6-15 and prohibits Plaintiffs from making any further expansion of their trade secret identification.

For the trade secrets that remain, Defendants further ask the Court to compel Plaintiffs to supplement their identification to be more particular and to issue a protective order protecting Defendants from further discovery relating to trade secrets until Plaintiffs do so. Plaintiffs' trade secret identification leaves Defendants without an understanding as to what, exactly, Plaintiffs allege are their trade secrets. The requested information is in the sole possession of Plaintiffs, and there is no excuse for not providing it. The ever-changing trade secret list and the lack of specificity associated therewith unfairly prejudice Defendants' ability to prepare defenses for several reasons. First and foremost, Defendants need to be able to understand what Plaintiffs claim to be trade secret to form their defenses. Ambiguities make this impossible. Even if Defendants were able to understand the trade secrets and form defenses, once Defendants present evidence supporting their defenses, Plaintiffs will simply use ambiguous language or further narrowing amendments to revise their alleged trade secrets in a more favorable light. Or if neither of those works, Plaintiffs will simply discard the trade secrets and replace

them with all-new claims. Defendants should not have to continue on with discovery when it is not even clear what Plaintiffs claim was misappropriated and when Plaintiffs refuse to solidify their trade secret list.

Defendants therefore seek an order that (i) strikes TS Nos. 6-15, (ii) prohibits Plaintiffs from making any further expansion, (iii) compels a more particular identification of the remaining trade secrets, and (iv) protects Defendants from additional trade secret discovery until Plaintiffs provide a sufficiently particular identification.

## II.   PLAINTIFFS' ADDITION OF NEW TRADE SECRETS IS IMPROPER, AND THOSE NEW TRADE SECRETS SHOULD BE STRICKEN.

The Court should not permit Plaintiffs' near-complete replacement of their original alleged trade secrets. Allowing such unilateral expansion would undermine the Court's requirement that Plaintiffs provide an early, pre-discovery identification of their alleged trade secrets, would prejudice Defendants' ability to prepare and develop defenses, and would reward Plaintiffs' lack of diligence.

### A.   Unilateral Expansion Renders Early Identification Meaningless.

An action for trade secret misappropriation is ripe for abuse. In a patent infringement action, a claimant's rights are set forth in an official, publicly available document. In a breach of contract action, the claimant's rights are found within the four corners of an executed agreement. But in an action for trade secret misappropriation, there is no document setting forth claimant's rights. Rather, the claimant's rights are, by definition, based on what the claimant has *not* previously shared with others. The opportunistic plaintiff, free from any prior declaration of rights, thus has an ability to articulate its trade secrets in a way that is influenced more by litigation strategy than by the plaintiff's preexisting understanding of its trade secrets. *See Comput. Econ., Inc. v. Gartner Grp., Inc.,* 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999) ("Trade secret claims are especially prone to discovery abuse since neither the court nor the defendant can delineate the scope

of permissible discovery without an identification of plaintiff's alleged trade secrets.").

Courts across the country have recognized that requiring plaintiffs to identify their trade secrets at the outset of litigation is the best way to hold plaintiffs accountable and to ensure that the action is being used only as a shield and not as a sword. *See, e.g., Givaudan Fragrances Corp. v. Krivda*, No. 08-4409 (PGS), 2013 U.S. Dist. LEXIS 153437, at *11 (D.N.J. Oct. 25, 2013) ("Generally, a plaintiff in a misappropriation of trade secrets case must identify with precision the trade secrets at issue at the outset of the litigation."); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001). Indeed, California has codified this requirement in a statute, making a plaintiff's reasonably particular identification of trade secrets a prerequisite to a defendant's obligations to comply with trade secret-related discovery requests. Cal. Civ. Proc. Code § 2019.210.

Federal courts in California routinely apply this statutory requirement in cases where plaintiffs allege misappropriation under the California Uniform Trade Secret Act, as Plaintiffs have here. *E.g., Loop AI Labs Inc. v. Gatti,* 195 F. Supp. 3d 1107, 1111-13 (N.D. Cal. 2016); *SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 82767, at *4 (N.D. Cal. June 14, 2012). Other federal courts in California, including this court, have exercised their authority and applied the § 2019.210 framework to improve the fairness or efficiency of the proceedings. *E.g., M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. CV 19-00220-JVS (JDEx), 2019 U.S. Dist. LEXIS 171453, at *3-5 (C.D. Cal. June 11, 2019) (finding "the procedural requirements of Section 2019.210" to be "warranted and appropriate to assist in the orderly and expeditious handling of discovery"); *Masimo Corp. v. Apple Inc.*, No. 8:20-cv-00048-JVS (JDEx), 2020 U.S. Dist. LEXIS 164850, at *11 (C.D. Cal. June 15, 2020) ("[T]here are good reasons for applying the general procedures of Section 2019.210 as a guide in cases filed in federal court alleging CUTSA claims."). Federal courts outside of

California have taken the same approach. *E.g.*, *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007). The rationales for the requirement are straightforward:

> Section 2019 was intended to protect defendants from baseless claims by preventing plaintiffs from initiating trade secret lawsuits in order to harass or drive competitors out of business. Proponents of section 2019 wanted to prevent plaintiffs from filing trade secret complaints without identifying what trade secrets were allegedly misappropriated and then embarking on an extensive "fishing expedition," thereby forcing the defendant to disclose its own business or trade secrets.

*I-Flow Corp. v. Apex Med. Techs.*, No. 07cv1200-DMS(NLS), 2008 U.S. Dist. LEXIS 135162, at *7-8 (S.D. Cal. Feb. 15, 2008).

But the early identification requirement cannot serve its purpose if a plaintiff is permitted to freely amend to expand the disclosure later in the case. Allowing a plaintiff to shift or expand its trade secret identifications "as the case evolves" frustrates the rule's purposes. *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044-45 (N.D. Cal. 2004). Allowing such amendment undermines the goals of "preventing a plaintiff from using discovery as a means to obtain a defendant's trade secrets and enabling a defendant to form complete and well-reasoned defenses, ensuring that it need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Id.*

There is widespread recognition that the trade secret plaintiff ***should not be permitted to freely amend*** its original, pre-discovery trade secret identification. *SocialApps,* 2012 U.S. Dist. LEXIS 82767, at *14-15 ("The identification of trade secrets should be made without reservation of right to amend."); *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 170349, at *13 (N.D. Cal. Dec. 21, 2015) ("Any future amendment to the disclosure will only be permitted upon a showing of good cause."); *Vesta Corp. v. AMDOCS Mgmt.*,

147 F. Supp. 3d 1147, 1157 (D. Or. 2015) ("[T]he Court grants Defendants' motion that Plaintiff be required to show good cause for such supplementation."); *Optumsoft, Inc. v. Arista Networks, Inc.*, No. 1-14-CV-263257, 2015 Cal. Super. LEXIS 1726, at *7-8 (Apr. 4, 2014) (("[Plaintiff] cannot . . . leave[] open the possibility that it may not have identified all of the trade secrets at issue."); *Heller v. Cepia L.L.C.*, No. C 11-1146 MEJ, 2012 U.S. Dist. LEXIS 6452, at *6 (N.D. Cal. Jan. 20, 2012) (before discovery, allowing the plaintiff to amend a trade secret identification up to a specified date, after which plaintiff was "precluded from introducing at trial or at any pretrial proceeding any information about a trade secret that he has not specifically identified previously, unless he can establish good cause for the omission"); *PDC Machs. Inc. v. Nel Hydrogen A/S*, No. 17-5399, 2018 U.S. Dist. LEXIS 100506, at *20-21 (E.D. Pa. June 15, 2018) ("Plaintiff may amend its list of trade secrets only with leave of court upon a showing of good cause.").

The early identification requirement is the court's and the defendant's best tool to hold a trade secret plaintiff accountable and prevent abuse. Allowing a plaintiff to shift their trade secret allegations throughout the case renders the early identification requirement meaningless. Such a shift is particularly concerning when a plaintiff not only adds new trade secrets but also concurrently withdraws the previously identified trade secrets—precisely as Plaintiffs have done here. *See Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 U.S. Dist. LEXIS 91333, at *6-7 (N.D. Cal. May 31, 2018) (describing this as a "bait-and-switch" tactic and explaining, "[Plaintiff] should not be allowed to drag [Defendant] into court based on meritless arguments, only to reboot its alleged trade secrets lineup and try again when the opening skirmish illuminates glaring flaws in [Plaintiff]'s case."). In other words, the early trade secret identification cannot merely be a placeholder for a future identification that comes after the plaintiff is exposed to the defendant's trade secrets in discovery, which is exactly what has happened

here.

Here, Defendants requested that Plaintiffs amend their Original Identification to provide a more *particular* identification of their trade secrets to focus the issues as the discovery deadline approached. Instead, Plaintiffs— unilaterally, without any prior notice to the Court, and without any explanation for the changes—provided a First Expanded Identification that drastically changed and expanded their trade secret allegations by removing 10 of the 15 originally identified categories and replaced them with 17 new trade secret categories. Months later, the Second Expanded Identification shifted the allegations further.

Addition of TS Nos. 6-15 constitutes an effective end-run of the Court's early identification requirement. Additionally, Plaintiffs' expanded identifications include several paragraphs of catch-all or all-inclusive language. Courts that require a particular trade secret identification disfavor the use of open-ended language, such as "including." *See M/A-COM Tech. Sols.*, 2019 U.S. Dist. LEXIS 171453, at *13. Here, Plaintiffs' use of entire catch-all paragraphs goes much further than simply leaving the door cracked open by using the word "including." Plaintiffs' catch-all paragraphs effectively allege that the sum total of Lamego's work for Plaintiffs is trade secret. The following language is representative:



Kachmer Decl., ¶4, Ex. A, p. 18. This catch-all language recites nothing more than "nebulous concepts that . . . encounter the long-standing tension between employment law and the trade secrets doctrine." *Calendar Research LLC v. StubHub, Inc.*, No. 2:17-cv-04062-SVW-SS, 2020 U.S. Dist. LEXIS 112361, at

*12 (C.D. Cal. May 13, 2020); *see also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1330 (9th Cir. 1980) ("Some knowledge gained by an employee is of such a general character that equity will not restrict its later use."); *Cinebase Software v. Media Guar. Tr.*, No. C98-1100 FMS, 1998 U.S. Dist. LEXIS 15007, at *32-33 (N.D. Cal. Sep. 21, 1998) ("[T]echnical know-how regarding what does and does not work in the process of designing [a product] is simply too nebulous a category of information to qualify for trade secret protection."). These newly added paragraphs are not only facially improper, but their inclusion further demonstrates Plaintiffs' false belief that they are entitled to shift, expand, and change their allegations whenever and however they see fit.

If the Court does not intervene and if Plaintiffs are permitted to proceed on TS. Nos. 6-15, it will render the Court's early identification requirement meaningless, it will undermine the policy rationales that supported the early identification requirement, and it will prejudice Defendants, who handed over their most confidential technical materials at the outset of discovery based on what now appears to have been little more than a set of placeholder trade secrets. The Court should therefore strike TS Nos. 6-15 and prohibit Plaintiffs from making any further expansion of their trade secret identification.

## B.     Plaintiffs' Late Expansion Reflects a Lack of Diligence.

Plaintiffs have argued that "at most, good cause is required to amend" and that they had good cause to expand their list in July 2020 (and again in October 2020) because they "could only recently discover that Defendants misappropriated additional trade secrets." (Dkt. 134-1). Plaintiffs are wrong on both points. Because late expansion is an impermissible end-run of the early identification requirement, good cause is the *least* that should be required to amend. Here, even if the Court applied a good cause standard, Plaintiffs' after-the-fact justifications do not hold up to scrutiny because Plaintiffs' *own allegations* reveal that Plaintiffs could have identified the newly added trade secrets much earlier than they did.

Plaintiffs' late addition of trade secrets alters the scope of the case and is therefore similar to an amendment of patent infringement contentions. In the context of patent contentions, "[t]he party seeking to amend its contentions bears the burden of establishing diligence." *Vasudevan Software, Inc. v. IBM*, No. C09-05897 RS (HRL), 2011 U.S. Dist. LEXIS 33132, at *5 (N.D. Cal. Feb. 18, 2011) (applying patent rules adopted for this case). The moving party must establish diligence in two distinct phases: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). The rule is meant to "suppress the 'shifting sands' approach to litigation." *Comcast Cable Communs. Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 U.S. Dist. LEXIS 98476, at *5 (N.D. Cal. Mar. 2, 2007).

The diligence requirements in the patent context are motivated by the same concerns that Defendants express here. *See O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("If the parties were not required to amend their contentions promptly after discovering new information, *the contentions requirement would be virtually meaningless* as a mechanism for shaping the conduct of discovery"). If anything, trade secret expansion should require *more demanding* inquiry than amendment of patent contentions because of the unique potential for abuse in trade secret cases. However, even if Plaintiffs were merely required to establish diligence, they could not do so here because their delays cannot be explained or justified. *O2 Micro*, 467 F.3d at 1367 (affirming district court's finding of a lack of diligence where plaintiff "waited almost three months" after discovery of new information); *Koninklijke Philips, N.V. v. Acer Inc.*, No. 18-cv-01885-HSG, 2019 U.S. Dist. LEXIS 25383, at *14-15 (N.D. Cal. Feb. 15, 2019) (denying plaintiff's request for leave to amend its infringement contentions in light of newly produced source code because

plaintiff's inability to make amendments within three months of receiving source code production showed a lack of diligence); *Sun Microsystems, Inc. v. Network Appliance, Inc.*, No. 07-05488, 2009 WL 508448, at *1 (N.D. Cal. Feb. 27, 2009) (denying motion to amend infringement contentions where it was undisputed that the plaintiff had access to the source code for over a year prior to filing the motion to amend).

Plaintiffs provided their Original Identification on March 15, 2019. Kachmer Decl., ¶4. Defendants made their source code available to Plaintiffs' counsel no later than July 30, 2019. *Id.*, ¶7, Ex. D. Defendants produced key patent applications on August 30, 2019. *Id.*, ¶24. It was not until July 1, 2020—a little over two weeks before the then-scheduled discovery cut-off—that Plaintiffs provided their First Expanded Identification. *Id.*, ¶4. In other words, Plaintiffs waited *16 months* after providing their Original Identification and nearly *12 months* after first accessing Defendants' source code and patent applications before suddenly springing on Defendants an entirely new trade secret case shortly before the close of discovery.

Plaintiffs will argue that Defendants produced materials between July 2019 and July 2020 that allowed them to identify the newly added trade secrets. But Plaintiffs' own allegations show that this is untrue. For instance, in Plaintiffs' current motion for preliminary injunction, Plaintiffs allege that their ▮▮▮ trade secret is disclosed in True Wearables' patent applications. (*See* Dkt. 153-1, Exs. 19, 20). But Defendants produced several of those very patent applications *in August 2019*.[3] Kachmer Decl. ¶¶23-25. And yet, Plaintiffs inexplicably failed to

---

[3] In the Joint Stipulation before Judge Early, Plaintiffs argued that the patent applications that Defendants produced in August 2019 could not have informed them of any misappropriation because they were produced without USPTO filing receipts. This strains credulity for several reasons, one of which being that the patent applications each had a file name of "[Application Number] *Specification and Drawings as filed*.pdf" (emphasis added). Kachmer Decl. ¶¶23-24.

add the ▮ to their trade secret identification until the Second Expanded Identification, which did not come ***until October 2020***. *Id.*, ¶4, Ex. A, p. 17. According to an interrogatory response in which Plaintiffs identify documents that are "Representative of [True Wearables'] Trade Secret Use and Misappropriation," these patent applications have been identified by Plaintiffs as allegedly showing misappropriation not only for the ▮ but also for newly added TS Nos. 6-12, 14, and 15. *Id.*, ¶5, Ex. B, pp. 61-83. These patent applications are not the only documents that Plaintiffs received early in the case and that Plaintiffs now alleged to be evidence of misappropriation for newly added trade secrets. For each of newly added TS Nos. 6-11, Plaintiffs have also identified printouts of True Wearables source code as allegedly showing misappropriation. *Id.*, ¶¶5, 21, Ex. B, pp. 67-74. These source code printouts show ***the same source code*** that was made available ***in July of 2019***. *Id.*, ¶22. In short, Plaintiffs had documents sufficient to identify TS Nos. 6-12, 14, and 15 for at least a full year before Plaintiffs identified them. This delay is unjustified and warrants striking newly added TS Nos. 6-15.

Plaintiffs may complain, as they did before Judge Early, that Defendants' objections to their expert's and to certain counsel's access to "AEO" materials made it impossible for them to identify the trade secrets any early. Even if there were actual evidence that Plaintiffs' review was impeded by these objections (which there is not), there are still many months of delay for which Plaintiffs cannot account. For instance, after receiving Defendants' source code in July 2019, Plaintiffs did not identify a source code expert until January 2020. Kachmer Decl., ¶26. Plaintiffs have provided no explanation for this delay. Relatedly, the objections to Dr. McNames and Mr. Jensen were resolved in March 2020.[4] Thus,

---

[4] Defendants maintained their objection to Mr. Jensen after Judge Early's March order, but Plaintiffs indicated at that time that they believed the issue to have been resolved by the March order. Based on this representation, Defendants have no

even assuming Plaintiffs were utterly handicapped by these objections during the three months January-March 2020, there are *nine months of unexplained delay* between the July 2019 source code production and the July 2020 expansion. Even worse, there are *eleven months of unexplained delay* for the October 2020 expansion (when the ████ was first listed).

The diligence showing required for amendment of patent infringement contentions is the *bare minimum* that Plaintiffs should have to meet to expand their trade secret allegations. But even under this standard, Plaintiffs cannot establish diligence. To the extent Plaintiffs knew their trade secrets when they filed this action, those trade secrets should have been listed in the Original Identification, which the Court required Plaintiffs to provide at the outset of this case, or should have been identified promptly after receiving Defendants' source code and technical materials. Defendants now ask the Court to prevent Plaintiffs from treating their Original Identification as a mere placeholder for a continuously shifting and expanding set of alleged trade secrets in a way that renders meaningless the Court's early identification requirement. The Court should strike TS Nos. 6-15 and prohibit Plaintiffs from making any further expansion of their trade secret identification.

## III.  THE COURT SHOULD COMPEL PLAINTIFFS TO PROVIDE A MORE SPECIFIC IDENTIFICATION OF THE TRADE SECRETS THIS COURT DETERMINES ARE PROPERLY ASSERTED

Where an interrogatory response is inadequate, Rule 37 provides that the Court may compel a complete answer. Fed. R. Civ. P. 37.

Defendants' Interrogatory No. 1 is simple and straightforward. It seeks an identification of each trade secret that Plaintiffs believe Defendants have misappropriated. The information sought goes to the heart of the lawsuit and is

---

reason to believe that Mr. Jensen did begin accessing "AEO" information at that time.

necessary for this case to move forward and for Defendants to prepare and prove their defenses.

Interrogatory No. 1 specifically refers to the requirement set forth in California Civil Procedure Code § 2019.210 that identification of trade secrets must be "reasonably particular." The reasonable particularity standard requires a disclosure that is fair and proper under the circumstances. *SocialApps,* 2012 U.S. Dist. LEXIS 82767, at *10. Where the alleged trade secrets reside in "a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1346 (2009).

Here, the parties have served and responded to multiple sets of written discovery and long-ago produced documents and source code. While Plaintiffs' initial identification of trade secrets sufficed at the early stages of the case to set the boundaries of relevant discovery, the case is now in the later stages of fact discovery when more specificity is necessary: discovery is set to close in approximately 3 months; 4 depositions of Defendants' witnesses have occurred; the deposition of Dr. Lamego will need to occur in the next couple of months; Defendants will be taking the depositions of Plaintiffs' witnesses as soon as they have a specific and stable set of alleged trade secrets; and Defendants need to solidify their defenses. *See*, *e.g.*, *InteliClear, LLC*, 978 F.3d at 662 (explaining that trade secret identification should be refined through the discovery process). Despite this, Plaintiffs have failed to provide sufficient specificity; instead, the exact trade secrets allegedly misappropriated and the scope of those trade secrets remains unclear. In short, Defendants do not have a sufficient understanding of Plaintiffs' trade secrets—the understanding that is necessary to depose Plaintiffs, to prepare Dr. Lamego for his deposition, and to properly formulate their defenses. Given the stage of the case, the need to develop and solidify Defendants' defenses,

1    and the highly technical nature of this dispute, more specificity is necessary.

2         **A.    Plaintiffs' TS Nos. 1, 3-5, 8-15 are Insufficiently Specific.**

3         Plaintiffs' Second Expanded Identification lists fifteen categories of alleged

4    trade secrets; within that identification, TS Nos. 1, 3-5, 8-15 are broad, vague,

5    and/or riddled with ambiguities, all to the prejudice of Defendants.[5] *See, e.g.,*

6    *Switch Commc'n Group v. Ballard*, No. 2:11-cv-00285, 2012 U.S. Dist. LEXIS

7    85148, at *5 (D. Nev. June 19, 2012) (requiring plaintiff to "specifically describe

8    what particular combination of components renders each of its designs novel or

9    unique, how the components are combined, and how they operate in unique

10   combination"); *I-Flow Corp.*, 2008 U.S. Dist. LEXIS 44551, at *7 (the party

11   alleging misappropriation "must distinguish the party's claimed trade secrets from

12   matters generally known to those skilled in the trade, and must contain a high

13   level of detail in a highly technical field."). For example, Plaintiffs identify the

14   below TS No. 3 as a trade secret:



21   Kachmer Decl., Ex. A, p. 15. This identification is both broad and vague,

22   providing no real understanding of what is allegedly claimed as a trade secret.

23   Defendants are left to guess, what is the ███████████████████

24   ████████████████████████████████████████

25

26   _____

27   [5] As described in Section II, Defendants believe that TS Nos. 6-15 should be
     stricken. Defendants, however, have addressed these categories in this Section in
28   the event that the Court does not strike those trade secrets.

1 ██████████████████████████████████████████████████████

2 ████████████████████████████████████████████ With such

3 ambiguities, Defendants cannot and do not have a clear understanding of what

4 they allegedly misappropriated.

5       Similarly, Plaintiffs have identified as TS No. 4: ████████████

6 ██████████████████████████████████████████████████████.

7 Kachmer Ex. A, p. 15. Again, this is broad and vague. ████████████

8 ██████████████████████████████████████████████████████

9 ██████████████████████████████████████████████████████

10 ██████████████████████████████████████████████████████

11 █████████████████████████

12       TS No. 12—the subject of Plaintiffs' motion for preliminary injunction—

13 contains further ambiguity and illustrates the prejudicial consequences of an

14 insufficiently particular identification. When Defendants notified Plaintiffs that TS

15 No. 12 was insufficiently particular, Plaintiffs responded that "Defendants cannot

16 seriously maintain" that the identification of TS No. 12 is insufficiently particular

17 because, according to Plaintiffs, the alleged trade secret is ████████████ *Id.*,

18 Ex. Q. However, in Plaintiffs' motion for preliminary injunction, Plaintiffs seem

19 to be attempting to capitalize on impermissible ambiguity to take a contradictory

20 position that TS No. 12 encompasses much more than simply these ████████

21 ████████████ For instance, Plaintiffs' motion alleges that True Wearables discloses

22 ████████████ in its patent applications. To support their allegation, Plaintiffs offer the

23 declaration Dr. James McNames, who provides a lengthy and circuitous

24 explanation of how True Wearables' patent applications allegedly misappropriate

---

[6] Indeed, it is not even clear if this trade secret is limited to ████████████

████████████████████████████████████████████ Even if limited to

████████████████████████████████████████████████

the ▓▓ by  (a) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (b) ▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (c) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
(d) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *Nowhere* in Plaintiffs' motion or Dr. McNames's declaration, however, do Plaintiffs ever assert that the ▓▓▓▓ ▓▓▓▓▓▓ of TS No. 12 are present in any True Wearables patent application. This deliberate attempt to blur the boundaries of their alleged trade secret underscores the importance of providing a trade secret identification that leaves no room for ambiguity about what, *exactly*, Plaintiffs believe to be their trade secret.

The above examples are only illustrative; attached as Exhibit R is a chart describing the shortcomings for each of TS Nos. 1, 3-5, 8-15. Kachmer Decl., ¶27, Ex. R. As the above examples and Exhibit R illustrate, Plaintiffs' TS Nos. 1, 3-5, 8-15 fail to provide sufficient detail and clarity as to what they allege Defendants misappropriated. The Court should compel Plaintiffs to supplement their responses to more specifically describe whatever trade secrets are not stricken (of TS Nos. 1, 3-5, 8-15) and to address the deficiencies identified by Defendants so that Defendants may properly develop their defenses and engage in the deposition process.

**B.     Until Plaintiffs Identify their Alleged Trade Secrets with Specificity, Defendants are Entitled to a Protective Order Preventing Further Trade Secret Discovery.**

Section 2019.210 precludes discovery until the party alleging the misappropriation identifies the trade secrets with reasonable particularity, and Rule 26 permits courts to grant protective orders to prevent discovery upon a showing of good cause. Fed. R. Civ. P. 26; *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (internal quotations omitted); *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, No. 2:15-cv-00531-RFB-GWF, 2018 WL 5886531, at *4-8 (D. Nev. Nov. 9, 2018); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,

307 F.3d 1206, 1211 (9th Cir. 2002) (noting that the Supreme Court has interpreted Rule 26(c) "as conferring 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984))). The party seeking the protective order must also establish specific prejudice or harm if the requested protective order is not granted. *Phillips*, 307 F.3d at 1210-11.

Plaintiffs have propounded multiple discovery requests on Defendants directed to their trade secret claims, including contention interrogatories regarding Defendants' defenses that (i) the alleged trade secrets were generally known, readily ascertainable, and/or has no independent economic value (Interrogatory No. 7) and (ii) the alleged trade secret information was independently developed or derived by Defendants or their employees (Interrogatory No. 8). Kachmer Decl., ¶17, Ex. N. Plaintiffs have also indicated that they wish to take Dr. Lamego's deposition soon, presumably questioning him about his and True Wearables' alleged misappropriation. Allowing such discovery would prejudice Defendants who cannot prepare for depositions without an adequate identification of Plaintiffs' alleged trade secrets.

As noted *supra* Section I, one of the goals of early trade secret identification and Section 2019.210 is to "enable[] defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Computer Econs., Inc.*, 50 F. Supp. 2d at 985. A defendant cannot develop its defenses without understanding what trade secrets were allegedly misappropriated.

Defendants' ability to establish that Plaintiffs' alleged trade secrets were generally known, readily ascertainable, and have no independent economic value, as requested in Interrogatory No. 7, necessarily depends on first having a clear understanding of what Plaintiffs allege are their trade secrets. *See Loop AI Labs Inc.*, 195 F. Supp. 3d at 1115. The same is true with respect to Interrogatory No. 8

regarding Defendants' independent development. *Id*. Defendants provided a robust response to Interrogatory No. 8 regarding how Mr. Lamego generally developed the True Wearables Oxxiom device. Kachmer Decl., ¶18, Ex. O. But given Plaintiffs' deficient identification, Defendants are unable to provide additional development details that focus on specific features relevant to the alleged trade secrets. Until Plaintiffs' alleged trade secrets are identified with specificity and stability, Defendants can neither properly respond to Interrogatory Nos. 7 and 8 nor properly prepare their witnesses for depositions.

Moreover, Plaintiffs' refusal to provide certainty as to the list of allegedly misappropriated trade secrets means that Defendants risk wasting resources to present evidence of their defenses, only to have Plaintiffs then narrow the scope of the asserted trade secret as it suits their needs to circumvent Defendants' defenses. Without a solidified and specific list of the trade secrets allegedly misappropriated—one that is specific, one that will not be expanded to cover new trade secrets, and one that will not be narrowed when convenient for Plaintiffs—Defendants should not be required to respond to trade secret discovery. The Court should grant Defendants' request for a protective order preventing further discovery relating to trade secrets until Plaintiffs provide a specific and stable set of alleged trade secrets.

Respectfully submitted,


**MERCHANT & GOULD, P.C.**

Dated: February 22, 2021          By: */s/* Amanda R. Washton

Peter A. Gergely (*Pro Hac Vice*)
PGergely@merchantgould.com
Ryan J. Fletcher, (*Pro Hac Vice*)
RFletcher@merchantgould.com
Paige S. Stradley (*Pro Hac Vice*)
PStradley@merchantgould.com
Zachary D. Kachmer (*Pro Hac Vice*)
ZKachmer@merchantgould.com
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081
*Attorneys for Defendants,*
*True Wearables, Inc. and*
*Marcelo Lamego*