Amanda R. Washton (SB# 227541)
*a.washton@conklelaw.com*
Sherron Wiggins (SB# 321819)
*s.wiggins@conklelaw.com*
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403-2351
Phone: (310) 998-9100
Fax: (310) 998-9109

Peter A. Gergely (*Pro Hac Vice*)
*PGergely@merchantgould.com*
Ryan J. Fletcher, (*Pro Hac Vice*)
*RFletcher@merchantgould.com*
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

Paige S. Stradley, (*Pro Hac Vice*)
*PGergely@merchantgould.com*
**MERCHANT & GOULD, P.C.**
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Attorneys for Defendants
*True Wearables, Inc. and Marcelo Lamego*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,, <br><br> Plaintiff, <br><br> v. <br><br> TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, <br><br> Defendant. | CASE No. 8:18-cv-2001-JVS-JDE <br><br> **CORRECTED DECLARATION OF ZACHARY D. KACHMER IN SUPPORT OF DEFENDANTS' *EX PARTE* APPLICATION FOR AN ORDER STRIKING PORTIONS OF PLAINTIFFS' INTERROGATORY RESPONSES; COMPELLING DISCOVERY RESPONSES; AND PROTECTING DEFENDANTS FROM DISCOVERY** <br><br> Hon. James V. Selna <br> Presiding Judge <br> Hon. John D. Early <br> Magistrate Judge <br> Complaint Filed:  November 8, 2018 <br> Trial Date:  March 9. 2021 |

3855.002\9971

DECLARATION OF ZACHARY D. KACHMER IN SUPPORT OF DEFENDANTS' EX PARTE APPLICATION

I, Zachary D. Kachmer, hereby declare as follows:

1.     I am an attorney at Merchant & Gould, and I am counsel of record for Defendants in the above-captioned case. I have personal knowledge of the matters set forth herein, and, if I am called upon to testify, I could testify competently thereto.

2.     I submit this Declaration in support of True Wearables, Inc.'s and Marcelo Lamego's Motion to Strike Portions of Plaintiffs' Interrogatory Responses; to Compel Discovery Responses; and for a Protective Order.

3.     Defendants' counsel met and conferred with Plaintiffs' counsel regarding this motion on February 17, 2021. Counsel had previously met and conferred regarding the substance of Defendants' motion to strike on October 2, 2020 and October 8, 2020, prior to Defendants' brining that motion to Judge Early using a Joint Stipulation pursuant to L.R. 37. Additional correspondence between counsel surrounding this conference of counsel is attached as Exhibit S.

4.     Attached as Exhibit A is a true and correct copy of Plaintiffs' Second Supplemental Response to Defendants' Interrogatory No. 1, served on October 30, 2020 with redactions of information that Plaintiffs have designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY". This Response further includes the text of Plaintiffs' First Supplemental Response, which was served on July 1, 2020, and Plaintiffs' original Response, which was served on March 15, 2019.

5.     Attached as Exhibit B is a true and correct copy of Plaintiffs' Third Supplemental Response to Defendants' Interrogatory No. 11, served on October 30, 2020 with redactions of information that Plaintiffs have designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY". This Response further includes the text of Plaintiffs' Second Supplemental Response, which was served on August 14, 2020, Plaintiffs' First Supplemental Response, which was served on July 1, 2020, and Plaintiffs' original Response, which was served on November 15, 2019.

6.      Attached as Exhibit C is a true and correct copy of the transcript of the Scheduling Conference held on February 25, 2019.

7.      Attached as Exhibit D is a true and correct copy of an email exchange between Plaintiffs' counsel Nick Belair and Defendants' counsel Ryan Fletcher reflecting that Defendants provided secure access to Defendants' source code no later than July 30, 2019.

8.      Attached as Exhibit E is a true and correct copy of email correspondence between counsel for Defendants and counsel for Plaintiffs between May 11, 2020 and June 15, 2020 regarding Plaintiffs' failure to identify their trade secrets with sufficient particularity and Defendants' repeated requests that Plaintiffs fulfill their obligation to do so.

9.      Attached as Exhibit F is a true and correct copy of the letter from Ryan Fletcher to Nick Belair that was attached to Ryan Fletcher's June 5, 2020 email to Nick Belair, which is among the email correspondence in Exhibit E.

10.      Attached as Exhibit G is a true and correct copy of a June 19, 2020 email from myself to Nick Belair containing Defendants' portion of a Joint Stipulation to accompany Defendants' intended Motion to Compel a more particular identification of Plaintiffs' alleged trade secrets. Attached to the email were the Joint Stipulation, a Declaration in Support of the Motion, and Exhibits thereto. Because these documents are voluminous and would likely require redaction, they are not included as attachments to this declaration but can be made available at the Court's request.

11.      Attached as Exhibit H is a true and correct copy of email correspondence from Irfan Lateef to Ryan Fletcher committing to provide supplemental responses to Defendants' interrogatories by July 1, 2020 and indicating that the supplemental responses should moot Defendants' pending Motion to Compel.

12.      Attached as Exhibit I is a true and correct copy of a letter sent via email from Ryan Fletcher to Nick Belair on July 14, 2020 with redactions of information that Plaintiffs have designated as "HIGHLY CONFIDENTIAL – ATTORNEYS'

EYES ONLY" regarding deficiencies in Plaintiffs' First Supplemental Responses to Defendants' Interrogatory Nos. 1 and 11, including Plaintiffs' improper expansion of their trade secret identifications and Plaintiffs' improper confidentiality designations.

13.     Attached as Exhibit J is a true and correct copy of a letter sent via email from Nick Belair to Ryan Fletcher on July 31, 2020 with redactions of information that Plaintiffs have designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" regarding deficiencies in Plaintiffs' First Supplemental Responses to Defendants' Interrogatory Nos. 1 and 11, including Plaintiffs' improper expansion of their trade secret identifications and Plaintiffs' improper confidentiality designations.

14.     Attached as Exhibit K is a true and correct copy of a letter sent via email from myself to Nick Belair on September 14, 2020 with redactions of information that Plaintiffs have designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" regarding deficiencies in Plaintiffs' First Supplemental Responses to Defendants' Interrogatory Nos. 1 and 11, including Plaintiffs' improper expansion of their trade secret identifications and Plaintiffs' improper confidentiality designations.

15.     Attached as Exhibit L is a true and correct copy of a letter sent via email from Nick Belair to myself on October 1, 2020 regarding deficiencies in Plaintiffs' First Supplemental Responses to Defendants' Interrogatory Nos. 1 and 11, including Plaintiffs' improper expansion of their trade secret identifications and Plaintiffs' improper confidentiality designations.

16.     Attached as Exhibit M is a true and correct copy of an email exchange between myself and Brian Claassen regarding Plaintiffs' delays in providing supplemental interrogatory responses.

17.     Attached as Exhibit N is a true and correct copy of pertinent pages of Defendants' Responses to Plaintiffs' Interrogatory Nos. 7 and 8, served on April 4, 2019 with redactions of information that Plaintiffs have designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY".

18.     Attached as Exhibit O is a true and correct copy of Defendants' supplemental response to Plaintiffs' Interrogatory No. 8, served on December 30, 2020 with redactions of information that Plaintiffs have designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY".

19.     Attached as Exhibit P is a true and correct copy of a letter sent by Defendants to Plaintiffs on January 19, 2021 regarding deficiencies in Plaintiffs' identification of trade secrets and the impact of those deficiencies on Defendants' ability to respond to Interrogatory Nos. 7 and 8.

20.     Attached as Exhibit Q is a true and correct copy of a letter sent by Plaintiffs to Defendants on February 4, 2021 with redactions of information that Plaintiffs have designated as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" disputing Defendants' identification of deficiencies in Plaintiffs' identification of trade secrets and requesting supplemental responses to Interrogatory Nos. 7 and 8.

21.     I have reviewed each of the source code printouts identified by the Bates numbers listed below, which have been cited in Plaintiffs' Third Supplemental Response to Defendants' Interrogatory No. 11 under the heading "Documents Representative of Trade Secret use and Misappropriation" for TS Nos. 6-11:

- TRUE019991
- TRUE019995-96
- TRUE020001-06
- TRUE020019
- TRUE020026-27
- TRUE045155
- TRUE045158

22.     I have reviewed Defendants' source code files that were uploaded at least as early as July 30, 2019 to a computer at the offices of Conkle, Kremer & Engel (the "Source Code Computer"). Based on my comparing the printouts bearing the above-

listed Bates numbers to Defendants' source code files uploaded to the Source Code Computer in July of 2019, I have confirmed that each of the source code files listed in paragraph 21, above, was included in the source code files that were uploaded to the Source Code Computer in July of 2019.

23.     Plaintiffs' Response to Interrogatory No. 11 also identifies documents with Bates numbers TRUE028747, TRUE028857, and TRUE028953 as "representative" of "misappropriation" for each of TS Nos. 6-12, 14, and 15. With the exception of the USPTO filing receipts at the beginning of TRUE028747, TRUE028857, and TRUE028953, these documents are each identical to TRUE000332, TRUE000390, and TRUE000449, respectively.

24.     Each of TRUE000332, TRUE000390, and TRUE000449 was produced by Defendants on August 30, 2019. The file name for each of TRUE000332, TRUE000390, and TRUE000449 includes "Specification and Drawings as filed."

25.     Plaintiffs have included TRUE028857 as Exhibit 19 to their motion for preliminary injunction and have, in that motion, cited its contents as alleged evidence of trade secret misappropriation. With the exception of USPTO filing receipts at the beginning of TRUE028857, Exhibit 19 to Plaintiffs' motion is identical to TRUE000390, which was produced by Defendants on August 30, 2019 with a file name "17976.0003USU1 Specification and Drawings as filed.PDF."

26. Plaintiffs first disclosed Dr. James McNames as an expert witness on January 6, 2020 pursuant to the Protective Order.

27.     Attached as Exhibit R is a true and correct copy of a chart prepared by Defendants identifying deficiencies in Plaintiffs' Response to Interrogatory No. 1.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct to the best of my knowledge. Executed on February 22, 2021 at Denver, Colorado.

*/s/ Zachary D. Kachmer*
Zachary D. Kachmer

Exhibit 1

Amanda R. Washton (Bar No. 227541)
a.washton@conklelaw.com
Sherron Wiggins (Bar No. 321819)
s.wiggins@conklelaw.com
**CONKLE, KREMER & ENGEL**
**Professional Law Corporation**
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100
Facsimile: (310) 998-9109

Peter A. Gergely (*Pro Hac Vice*)
PGergely@merchantgould.com
Ryan J. Fletcher, (*Pro Hac Vice*)
RFletcher@merchantgould.com
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081
*Attorneys for Defendants,*
*True Wearables, Inc. and*
*Marcelo Lamego*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, <br><br> Defendants. | Case No. 8:18-CV-02001-JVS-JDE <br><br> **DEFENDANTS' *EX PARTE* APPLICATION FOR AN ORDER STRIKING PORTIONS OF PLAINTIFFS' INTERROGATORY RESPONSES; COMPELLING DISCOVERY RESPONSES; AND PROTECTING DEFENDANTS FROM DISCOVERY** <br><br> No Hearing Noticed <br><br> Discovery Cutoff: 5/21/2021 <br> Pre-Trial Conf.: 12/13/2021 <br> Trial: 01/11/2022 <br><br> Hon. James V. Selna <br> Hon. Magistrate John D. Early |

3855.002\9971

# **Table of Contents**

I. PLAINTIFFS HAVE FAILED TO IDENTIFY THEIR ALLEGED TRADE SECRETS CONSISTENT WITH COURT INSTRUCTIONS ............................................................................... 7

II. PLAINTIFFS' ADDITION OF NEW TRADE SECRETS IS IMPROPER, AND THOSE NEW TRADE SECRETS SHOULD BE STRICKEN. ..................................................................................... 13

    A.    Unilateral Expansion Renders Early Identification Meaningless. ................................................................ 13

    B.    Plaintiffs' Late Expansion Reflects a Lack of Diligence. ................. 18

III. THE COURT SHOULD COMPEL PLAINTIFFS TO PROVIDE A MORE SPECIFIC IDENTIFICATION OF THE TRADE SECRETS THIS COURT DETERMINES ARE PROPERLY ASSERTED ................ 22

    A.    Plaintiffs' TS Nos. 1, 3-5, 8-15 are Insufficiently Specific. ............... 24

    B.    Until Plaintiffs Identify their Alleged Trade Secrets with Specificity, Defendants are Entitled to a Protective Order Preventing Further Trade Secret Discovery ...................................... 26

# **Table of Authorities**

*InteliClear, LLC v. ETC Global Holdings, Inc.*
978 F.3d 653, 662 (9th Cir. 2020)……………………..………..………...3, 19

*AutoMed Techs., Inc. v. Eller*
160 F. Supp. 2d 915, 926 (N.D. Ill. 2001)…………………..……………..……9

*Calendar Research LLC v. StubHub, Inc.*
No. 2:17-cv-04062-SVW-SS, 2020 U.S. Dist. LEXIS 112361, at *12 (C.D. Cal.
May 13, 2020)………………………………………………..…...………13

*Cinebase Software v. Media Guar. Tr.*
No. C98-1100 FMS, 1998 U.S. Dist. LEXIS 15007, at *32-33 (N.D. Cal. Sep. 21,
1998)………………………………………………………………..…..13

*Comcast Cable Communs. Corp., LLC v. Finisar Corp.*
No. C 06-04206 WHA, 2007 U.S. Dist. LEXIS 98476, at *5 (N.D. Cal. Mar. 2,
2007)………………………………………………………………..……..15

*Comput. Econ., Inc. v. Gartner Grp., Inc.*
50 F. Supp. 2d 980, 992 (S.D. Cal. 1999)……………………………...……9, 24

*DeRubeis v. Witten Techs., Inc.*
244 F.R.D. 676, 681 (N.D. Ga. 2007)……………………………..……..10

*Givaudan Fragrances Corp. v. Krivda*
No. 08-4409 (PGS), 2013 U.S. Dist. LEXIS 153437, at *11 (D.N.J. Oct. 25,
2013)………………………………………………………………...…..9

*Heller v. Cepia L.L.C.*
No. C 11-1146 MEJ, 2012 U.S. Dist. LEXIS 6452, at *6 (N.D. Cal. Jan. 20,
2012)……………………………………………………………………...11

*Hollingsworth Solderless Terminal Co. v. Turley*
622 F.2d 1324, 1330 (9th Cir. 1980)………………………………..…..……..13

*I-Flow Corp. v. Apex Med. Techs.*
No. 07cv1200-DMS(NLS), 2008 U.S. Dist. LEXIS 135162, at *7-8 (S.D. Cal. Feb.
15, 2008)………………………………………………………..………10, 20

*Koninklijke Philips, N.V. v. Acer Inc.*
No. 18-cv-01885-HSG, 2019 U.S. Dist. LEXIS 25383, at *14-15 (N.D. Cal. Feb.

15, 2019)……………………………………….……………….…………..15

*Loop AI Labs, Inc. v. Gatti*
No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 170349, at *13 (N.D. Cal.
Dec. 21, 2015)……………………………….……………………….……11, 24

*Loop AI Labs Inc. v. Gatti*
195 F. Supp. 3d 1107, 1111-13 (N.D. Cal. 2016)…………………..………………10

*M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*
No. CV 19-00220-JVS (JDEx), 2019 U.S. Dist. LEXIS 171453, at *3-5 (C.D. Cal.
June 11, 2019)……………………………………….……...………….……10, 13, 23

*Masimo Corp. v. Apple Inc.*
No. 8:20-cv-00048-JVS (JDEx), 2020 U.S. Dist. LEXIS 164850, at *11 (C.D. Cal.
June 15, 2020)……………………………………………………….……..……….10

*Neothermia Corp. v. Rubicor Med., Inc.*
345 F. Supp. 2d 1042, 1044-45 (N.D. Cal. 2004)…………………..……………11

*Newmark Grp., Inc. v. Avison Young (Canada) Inc.*
No. 2:15-cv-00531-RFB-GWF, 2018 WL 5886531, at *4-8 (D. Nev. Nov. 9,
2018)……………………………………………………………..……….23

*O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*
467 F.3d 1355, 1366 (Fed. Cir. 2006)……………………………..……………15

*Optumsoft, Inc. v. Arista Networks, Inc.*
No. 1-14-CV-263257, 2015 Cal. Super. LEXIS 1726, at *7-8 (Apr. 4,
2014)……………………………………………………………….....……..11

*PDC Machs. Inc. v. Nel Hydrogen A/S*
No. 17-5399, 2018 U.S. Dist. LEXIS 100506, at *20-21 (E.D. Pa. June 15,
2018)……………………………………………………………….…..…..11

*Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*
307 F.3d 1206, 1211 (9th Cir. 2002)……………………………………………23
*Positive Techs., Inc. v. Sony Elecs., Inc.*
No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28,
2013)……………………………………………………….……………15

*Seattle Times Co. v. Rhinehart*
467 U.S. 20, 36 (1984)…………………………………………………………..23

*SocialApps, LLC v. Zynga, Inc.*
No. 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 82767, at *4 (N.D. Cal. June 14, 2012)…………………………………………………………10, 11, 19

*Sun Microsystems, Inc. v. Network Appliance, Inc.*
No. 07-05488, 2009 WL 508448, at *1 (N.D. Cal. Feb. 27, 2009)………….....15

*Swarmify, Inc. v. Cloudflare, Inc.*
No. C 17-06957 WHA, 2018 U.S. Dist. LEXIS 91333, at *6-7 (N.D. Cal. May 31, 2018)……………………………………………………………………………12

*Switch Commc'n Group v. Ballard*
No. 2:11-cv-00285, 2012 U.S. Dist. LEXIS 85148, at *5 (D. Nev. June 19, 2012)……………………………………………………..………….20

*Vasudevan Software, Inc. v. IBM*
No. C09-05897 RS (HRL), 2011 U.S. Dist. LEXIS 33132, at *5 (N.D. Cal. Feb. 18, 2011)……………………………………………..…..…………….14

*Vesta Corp. v. AMDOCS Mgmt.*
147 F. Supp. 3d 1147, 1157 (D. Or. 2015)…………………..………………11

**PLEASE TAKE NOTICE** that, pursuant to Local Rule 7-19, pursuant to this Court's instructions on February 25, 2019, and pursuant to Magistrate Judge Early's January 19, 2021 interpretation thereof, Defendants Marcelo Lamego and True Wearables, Inc. ("Defendants") hereby submit this *Ex Parte* Application for an Order striking portions of Plaintiffs' supplemental responses to Defendants' Interrogatory No. 1, which relates to Plaintiffs' identification of their alleged trade secrets.[1] Relatedly, Defendants further move pursuant to Local Rule 7-19, Federal Rule of Civil Procedure 37, and Magistrate Judge Early's instructions to compel Plaintiffs to provide a more particular response Interrogatory No. 1 and under Rule 26 for a protective order.

Interrogatory No. 1 goes to the heart of the lawsuit, seeking identification of each alleged trade secret allegedly misappropriated by Defendants. Plaintiffs' current response contains improperly added material and fails to identify alleged trade secrets with sufficient particularity. Plaintiffs maintain they have the right to continue unilaterally changing the trade secrets at issue in this litigation. Until the scope of Plaintiffs' alleged trade secrets is determined, until the alleged trade secrets are identified with sufficient particularity, and until Defendants receive assurance that Plaintiffs' list of alleged trade secrets is final, Defendants request a protective order, pursuant to Federal Rule of Civil Procedure 26, from this Court protecting Defendants from further trade secret discovery.

---

[1] Plaintiffs served their first response to Interrogatory No. 1 in March 2019. Since then, Plaintiffs have amended their Response to Interrogatory No. 1 twice. Plaintiffs' most recent supplementation to this interrogatory was served by Plaintiffs on October 30, 2020. This most recent supplementation incorporates each of Plaintiffs' prior responses. This response is attached as Exhibit A to the Declaration of Zach Kachmer ("Kachmer Decl.") filed herewith. Kachmer Decl., ¶4, Ex. A.

## I.   PLAINTIFFS HAVE FAILED TO IDENTIFY THEIR ALLEGED TRADE SECRETS CONSISTENT WITH COURT INSTRUCTIONS

Plaintiffs' identification of trade secrets has been and remains a constantly moving target. Plaintiffs have added new alleged trade secrets to the case and removed alleged trade secrets from the case at their unfettered discretion. The trade secrets that have been identified remain inadequate, lacking sufficient particularity. In short, Plaintiffs have failed to and refuse to provide a stable and sufficiently particular identification of allegedly misappropriated trade secrets, preventing Defendants from being able to adequately defend against Plaintiffs' claims.

Defendants served their first set of interrogatories on Plaintiffs two years ago which included Interrogatory No. 1 asking Plaintiffs to "[i]dentify (including, but not limited to with "reasonable particularity" as that term is used in California Civil Procedure Code § 2019.210), each trade secret of each of the Plaintiffs that each of the Plaintiffs contend was misappropriated by Defendants." Kachmer Decl., ¶4, Ex. A, p. 5. Shortly thereafter, at the Scheduling Conference, the parties discussed a topic familiar to this Court: procedures to ensure fairness in a trade secret case. Defendants expressed concerns that Plaintiffs would play a "cat and mouse game" with their trade secret identification. *Id.*, ¶6, Ex. C at 6:15-18. Acknowledging these concerns, the Court ordered Plaintiffs to provide an early identification of their alleged trade secrets and delayed Defendants' discovery obligations until after Plaintiffs had identified their alleged trade secrets. *Id.* at 6:19-7:12. The Court reasoned: "We have got to get that issue out of the way. . . . Presumably [Plaintiffs] had a good idea of what the trade secrets were when the suit was filed. . . . We're going to get that issue out of the way early." *Id.* at 5:19-7:1.

Plaintiffs provided an identification of alleged trade secrets on March 15, 2019 (the "Original Identification"). *Id.*, ¶4, Ex. A, pp. 5-9. This Original

Identification listed 15 categories of "knowhow," "techniques," and "knowledge." *Id.* The Original Identification was sufficient to give Defendants a sense of the type and category of information for which Plaintiffs were claiming trade secret status and to set some boundaries for discovery. Defendants understood that, over time and through the discovery process, the details of the alleged trade secrets would come into better focus. *See, e.g.*, *InteliClear, LLC v. ETC Global Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) ("discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification"). Defendants' primary concern at that early stage was establishing the boundaries within which Plaintiffs' trade secrets would be defined. The 15 categories listed in the Original Identification, though imperfect, would serve that important purpose.

Eager to establish that Plaintiffs' claims lacked merit, Defendants produced, in July of 2019, the entire source code of their Oxxiom Device, which Lamego had independently developed years after leaving his position with Plaintiffs. Kachmer Decl., ¶7, Ex. D.  On August 30, 2019, Defendants further produced True Wearables' confidential patent applications detailing the operations of the Oxxiom. Kachmer Decl., ¶24.

Roughly one year after production of these (and more) highly confidential materials, Plaintiffs had still not yet begun to bring the details of their alleged trade secrets into focus, despite repeated requests from Defendants that they do so. *See id.*, ¶¶8-9, Exs. E, F. When Plaintiffs repeatedly refused to commit to providing a supplemental response to Interrogatory No. 1, Defendants prepared a Motion to Compel and provided Plaintiffs with Defendants' portion of a Joint Stipulation. *Id.*, ¶10, Ex. G. Faced with this pending motion, Plaintiffs provided, for the first time, a date certain by which they would supplement their response. *Id.*, ¶11, Ex. H. Plaintiffs' counsel indicated that the supplementation "should moot the pending Joint Stipulation." *Id.* On July 1, 2020, a little over two weeks

before the then-scheduled discovery cut-off, Plaintiffs provided their Supplemental Responses to Interrogatory No. 1 (the "First Expanded Identification"). *Id.*, ¶4, Ex. A, pp. 9-14.

But rather than supplementing the original 15 categories of trade secrets to add greater particularity, Plaintiffs suddenly shifted their trade secret case and made a near-wholesale replacement of the original list. In this First Expanded Identification, Plaintiffs *removed* 10 of their 15 original trade secret categories and *replaced* them with (i) 17 entirely new and unrelated categories and (ii) multiple paragraphs of catch-all language asserting trade secret rights in nebulous concepts. *Id.* Plaintiffs' unilateral, near-wholesale replacement of alleged trade secrets was in clear defiance of the Court's order that the parties get the identification of trade secrets out of the way early.

Defendants promptly brought their concerns regarding Plaintiffs' expansion, lack of specificity, and catch-all language to Plaintiffs' attention, and the cycle began anew. *Id.*, ¶12, Ex. I. Plaintiffs denied that the supplementation was inadequate and that the inclusion of new trade secrets was improper. *Id.*, ¶13, Ex. J. Detailed letters were exchanged about the adequacy and propriety of the supplementation. *Id.*, ¶¶12-15, Exs. I, J, K, L. When faced with a motion to compel, Plaintiffs agreed to provide a supplementation, then delayed the supplementation by multiple weeks before providing—over three months after the issues were first raised—yet another supplementation (the "Second Expanded Identification"). *Id.*, ¶16, Ex. M; ¶4 Ex. A, pp. 14-19. The Second Expanded Identification retained most of the newly added trade secrets from the First Expanded Identification and again added additional categories of trade secrets. While the Second Expanded Identification identified 3 of the 15 alleged trade secrets with sufficient particularity, the identification of the remaining 12 alleged trade secrets remained insufficiently particular.

Defendants promptly brought a Motion to Strike to Magistrate Judge Early

using a Joint Stipulation pursuant to L.R. 37. (Dkt. 132-134). In this Joint Stipulation, Defendants argued that permitting Plaintiffs to unilaterally expand their alleged trade secrets would undermine and render meaningless this Court's requirement that Plaintiffs identify their trade secrets prior to discovery. Defendants argued that Plaintiffs' unilateral expansion was further improper because Plaintiffs inexplicably waited *a year after accessing Defendants' source code* and technical materials before springing the expansion on Defendants *weeks before what was then set to be the discovery cut-off*. On these bases, Defendants asked Judge Early to strike the newly added trade secrets ("TS Nos. 6-15") to prevent Plaintiffs' attempt to end-run this Court's early identification requirement.

The motion was heard December 10, 2020. (Dkt. 143). On January 19, Judge Early issued an Order refusing to rule on Defendants' motion. (Dkt. 150). Judge Early noted that although discovery-related motions had been referred to him, the referral did not apply to "interrogatories directed to trade secrets," for which this Court had ordered motions to be brought "on an ex parte basis." (*Id.*) Judge Early concluded that because the motion "relates directly to the adequacy of Plaintiffs' trade secret disclosures," he did not have authority to grant Defendants' relief. (*Id.*) He noted, however, that his order did not limit Defendants' ability to "raise [] the issue in the first instance with Judge Selna." (*Id.*)

Accordingly, Defendants now bring the issue to this Court. Because Judge Early did not rule on Defendants' motion and strike Plaintiffs' late addition of trade secrets, Defendants' concerns remain. Indeed, Defendants' concerns are even more pressing than when the motion was brought to Judge Early. The discovery cut-off is rapidly approaching. Defendants intend to conduct depositions of Plaintiffs' technical employees and have already retained three experts specifically to offer technical expertise on Plaintiffs' alleged trade secrets. To fully develop defenses to Plaintiffs' trade secret claims will require extensive discovery

and expenditure of resources.[2] But Defendants cannot proceed with these critical tasks until the Court addresses Plaintiffs' improper expansion and insufficiently particular identification of alleged trade secrets. The Court's determination on this issue has immediate and significant effects on how this case will proceed in the coming weeks and months leading up to the discovery cut-off.

The urgency of this issue is further heightened by Plaintiffs' motion for preliminary injunction, filed days ago. (Dkt. 153). In that motion, Plaintiffs seek to prevent True Wearables' patent application materials from becoming publicly accessible, which would require Defendants to forego valuable intellectual property protection. Plaintiffs claim in this motion that Defendants' patent applications contain an alleged trade secret they refer to as the ███████ ██████ (hereinafter ███████ But the ███████ was neither identified in Plaintiffs' original interrogatory response nor its July 2020 supplement. *See* Kachmer Decl., Ex. A, pp. 5-19. Rather, it was first listed in Plaintiffs' response in October 2020—nineteen months after Plaintiffs provided their original trade secret identification and fourteen months after Defendants first produced *the very patent applications* that Plaintiffs now claim to include the ███████ *Id.* at 17. Defendants' right to protect their intellectual property should not be impeded based on an alleged trade secret that Plaintiffs failed to identify for over a year.

Thus, in addition to this Court's and Judge Early's instructions that motions relating to trade secret identification be brought on an *ex parte* basis, Plaintiffs' motion for preliminary injunction independently creates circumstances warranting

_____

[2] Defendants expressed these concerns to Plaintiffs immediately following Judge Early's Order, but Plaintiffs disagreed, stated that Plaintiffs reserved the right to continue to expand their trade secret identifications, asserted that objections to the particularity of their identification had been resolved by the Court, and requested supplemental responses to trade secret discovery within one week. Kachmer Decl., ¶¶19, 20, Exs. P, Q.

an *ex parte* application because Defendants cannot be expected to defend against Plaintiffs' motion when the motion is based solely on an alleged trade secret that should be stricken from the case altogether.

These are critical issues that Defendants have tried to resolve without court intervention for several months to no avail. Defendants have written countless letters, have met and conferred on these issues *ad nauseum*, have written multiple joint stipulations, and have brought a motion to strike to Judge Early. Despite all of these efforts, Defendants now face a motion for preliminary injunction and a rapidly approaching discovery cut-off at a time when the scope of Plaintiffs' trade secret case is more uncertain than at any other point in the pendency of this action. Defendants ask the Court to intervene with a much-needed course-correction that strikes Plaintiffs' TS Nos. 6-15 and prohibits Plaintiffs from making any further expansion of their trade secret identification.

For the trade secrets that remain, Defendants further ask the Court to compel Plaintiffs to supplement their identification to be more particular and to issue a protective order protecting Defendants from further discovery relating to trade secrets until Plaintiffs do so. Plaintiffs' trade secret identification leaves Defendants without an understanding as to what, exactly, Plaintiffs allege are their trade secrets. The requested information is in the sole possession of Plaintiffs, and there is no excuse for not providing it. The ever-changing trade secret list and the lack of specificity associated therewith unfairly prejudice Defendants' ability to prepare defenses for several reasons. First and foremost, Defendants need to be able to understand what Plaintiffs claim to be trade secret to form their defenses. Ambiguities make this impossible. Even if Defendants were able to understand the trade secrets and form defenses, once Defendants present evidence supporting their defenses, Plaintiffs will simply use ambiguous language or further narrowing amendments to revise their alleged trade secrets in a more favorable light. Or if neither of those works, Plaintiffs will simply discard the trade secrets and replace

them with all-new claims. Defendants should not have to continue on with discovery when it is not even clear what Plaintiffs claim was misappropriated and when Plaintiffs refuse to solidify their trade secret list.

Defendants therefore seek an order that (i) strikes TS Nos. 6-15, (ii) prohibits Plaintiffs from making any further expansion, (iii) compels a more particular identification of the remaining trade secrets, and (iv) protects Defendants from additional trade secret discovery until Plaintiffs provide a sufficiently particular identification.

## II. PLAINTIFFS' ADDITION OF NEW TRADE SECRETS IS IMPROPER, AND THOSE NEW TRADE SECRETS SHOULD BE STRICKEN.

The Court should not permit Plaintiffs' near-complete replacement of their original alleged trade secrets. Allowing such unilateral expansion would undermine the Court's requirement that Plaintiffs provide an early, pre-discovery identification of their alleged trade secrets, would prejudice Defendants' ability to prepare and develop defenses, and would reward Plaintiffs' lack of diligence.

### A. Unilateral Expansion Renders Early Identification Meaningless.

An action for trade secret misappropriation is ripe for abuse. In a patent infringement action, a claimant's rights are set forth in an official, publicly available document. In a breach of contract action, the claimant's rights are found within the four corners of an executed agreement. But in an action for trade secret misappropriation, there is no document setting forth claimant's rights. Rather, the claimant's rights are, by definition, based on what the claimant has *not* previously shared with others. The opportunistic plaintiff, free from any prior declaration of rights, thus has an ability to articulate its trade secrets in a way that is influenced more by litigation strategy than by the plaintiff's preexisting understanding of its trade secrets. *See Comput. Econ., Inc. v. Gartner Grp., Inc.,* 50 F. Supp. 2d 980, 992 (S.D. Cal. 1999) ("Trade secret claims are especially prone to discovery abuse since neither the court nor the defendant can delineate the scope

of permissible discovery without an identification of plaintiff's alleged trade secrets.").

Courts across the country have recognized that requiring plaintiffs to identify their trade secrets at the outset of litigation is the best way to hold plaintiffs accountable and to ensure that the action is being used only as a shield and not as a sword. *See, e.g., Givaudan Fragrances Corp. v. Krivda*, No. 08-4409 (PGS), 2013 U.S. Dist. LEXIS 153437, at *11 (D.N.J. Oct. 25, 2013) ("Generally, a plaintiff in a misappropriation of trade secrets case must identify with precision the trade secrets at issue at the outset of the litigation."); *AutoMed Techs., Inc. v. Eller*, 160 F. Supp. 2d 915, 926 (N.D. Ill. 2001). Indeed, California has codified this requirement in a statute, making a plaintiff's reasonably particular identification of trade secrets a prerequisite to a defendant's obligations to comply with trade secret-related discovery requests. Cal. Civ. Proc. Code § 2019.210.

Federal courts in California routinely apply this statutory requirement in cases where plaintiffs allege misappropriation under the California Uniform Trade Secret Act, as Plaintiffs have here. *E.g., Loop AI Labs Inc. v. Gatti,* 195 F. Supp. 3d 1107, 1111-13 (N.D. Cal. 2016); *SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910 YGR, 2012 U.S. Dist. LEXIS 82767, at *4 (N.D. Cal. June 14, 2012). Other federal courts in California, including this court, have exercised their authority and applied the § 2019.210 framework to improve the fairness or efficiency of the proceedings. *E.g.*, *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, No. CV 19-00220-JVS (JDEx), 2019 U.S. Dist. LEXIS 171453, at *3-5 (C.D. Cal. June 11, 2019) (finding "the procedural requirements of Section 2019.210" to be "warranted and appropriate to assist in the orderly and expeditious handling of discovery"); *Masimo Corp. v. Apple Inc.*, No. 8:20-cv-00048-JVS (JDEx), 2020 U.S. Dist. LEXIS 164850, at *11 (C.D. Cal. June 15, 2020) ("[T]here are good reasons for applying the general procedures of Section 2019.210 as a guide in cases filed in federal court alleging CUTSA claims."). Federal courts outside of

California have taken the same approach. *E.g.*, *DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 681 (N.D. Ga. 2007). The rationales for the requirement are straightforward:

> Section 2019 was intended to protect defendants from baseless claims by preventing plaintiffs from initiating trade secret lawsuits in order to harass or drive competitors out of business. Proponents of section 2019 wanted to prevent plaintiffs from filing trade secret complaints without identifying what trade secrets were allegedly misappropriated and then embarking on an extensive "fishing expedition," thereby forcing the defendant to disclose its own business or trade secrets.

*I-Flow Corp. v. Apex Med. Techs.*, No. 07cv1200-DMS(NLS), 2008 U.S. Dist. LEXIS 135162, at *7-8 (S.D. Cal. Feb. 15, 2008).

But the early identification requirement cannot serve its purpose if a plaintiff is permitted to freely amend to expand the disclosure later in the case. Allowing a plaintiff to shift or expand its trade secret identifications "as the case evolves" frustrates the rule's purposes. *Neothermia Corp. v. Rubicor Med., Inc.*, 345 F. Supp. 2d 1042, 1044-45 (N.D. Cal. 2004). Allowing such amendment undermines the goals of "preventing a plaintiff from using discovery as a means to obtain a defendant's trade secrets and enabling a defendant to form complete and well-reasoned defenses, ensuring that it need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Id.*

There is widespread recognition that the trade secret plaintiff ***should not be permitted to freely amend*** its original, pre-discovery trade secret identification. *SocialApps,* 2012 U.S. Dist. LEXIS 82767, at *14-15 ("The identification of trade secrets should be made without reservation of right to amend."); *Loop AI Labs, Inc. v. Gatti*, No. 15-cv-00798-HSG (DMR), 2015 U.S. Dist. LEXIS 170349, at *13 (N.D. Cal. Dec. 21, 2015) ("Any future amendment to the disclosure will only be permitted upon a showing of good cause."); *Vesta Corp. v. AMDOCS Mgmt.*,

147 F. Supp. 3d 1147, 1157 (D. Or. 2015) ("[T]he Court grants Defendants' motion that Plaintiff be required to show good cause for such supplementation."); *Optumsoft, Inc. v. Arista Networks, Inc.*, No. 1-14-CV-263257, 2015 Cal. Super. LEXIS 1726, at *7-8 (Apr. 4, 2014) (("[Plaintiff] cannot . . . leave[] open the possibility that it may not have identified all of the trade secrets at issue."); *Heller v. Cepia L.L.C.*, No. C 11-1146 MEJ, 2012 U.S. Dist. LEXIS 6452, at *6 (N.D. Cal. Jan. 20, 2012) (before discovery, allowing the plaintiff to amend a trade secret identification up to a specified date, after which plaintiff was "precluded from introducing at trial or at any pretrial proceeding any information about a trade secret that he has not specifically identified previously, unless he can establish good cause for the omission"); *PDC Machs. Inc. v. Nel Hydrogen A/S*, No. 17-5399, 2018 U.S. Dist. LEXIS 100506, at *20-21 (E.D. Pa. June 15, 2018) ("Plaintiff may amend its list of trade secrets only with leave of court upon a showing of good cause.").

The early identification requirement is the court's and the defendant's best tool to hold a trade secret plaintiff accountable and prevent abuse. Allowing a plaintiff to shift their trade secret allegations throughout the case renders the early identification requirement meaningless. Such a shift is particularly concerning when a plaintiff not only adds new trade secrets but also concurrently withdraws the previously identified trade secrets—precisely as Plaintiffs have done here. *See Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 U.S. Dist. LEXIS 91333, at *6-7 (N.D. Cal. May 31, 2018) (describing this as a "bait-and-switch" tactic and explaining, "[Plaintiff] should not be allowed to drag [Defendant] into court based on meritless arguments, only to reboot its alleged trade secrets lineup and try again when the opening skirmish illuminates glaring flaws in [Plaintiff]'s case."). In other words, the early trade secret identification cannot merely be a placeholder for a future identification that comes after the plaintiff is exposed to the defendant's trade secrets in discovery, which is exactly what has happened

here.

Here, Defendants requested that Plaintiffs amend their Original Identification to provide a more *particular* identification of their trade secrets to focus the issues as the discovery deadline approached. Instead, Plaintiffs— unilaterally, without any prior notice to the Court, and without any explanation for the changes—provided a First Expanded Identification that drastically changed and expanded their trade secret allegations by removing 10 of the 15 originally identified categories and replaced them with 17 new trade secret categories. Months later, the Second Expanded Identification shifted the allegations further.

Addition of TS Nos. 6-15 constitutes an effective end-run of the Court's early identification requirement. Additionally, Plaintiffs' expanded identifications include several paragraphs of catch-all or all-inclusive language. Courts that require a particular trade secret identification disfavor the use of open-ended language, such as "including." *See M/A-COM Tech. Sols.*, 2019 U.S. Dist. LEXIS 171453, at *13. Here, Plaintiffs' use of entire catch-all paragraphs goes much further than simply leaving the door cracked open by using the word "including." Plaintiffs' catch-all paragraphs effectively allege that the sum total of Lamego's work for Plaintiffs is trade secret. The following language is representative:



Kachmer Decl., ¶4, Ex. A, p. 18. This catch-all language recites nothing more than "nebulous concepts that . . . encounter the long-standing tension between employment law and the trade secrets doctrine." *Calendar Research LLC v. StubHub, Inc.*, No. 2:17-cv-04062-SVW-SS, 2020 U.S. Dist. LEXIS 112361, at

*12 (C.D. Cal. May 13, 2020); *see also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1330 (9th Cir. 1980) ("Some knowledge gained by an employee is of such a general character that equity will not restrict its later use."); *Cinebase Software v. Media Guar. Tr.*, No. C98-1100 FMS, 1998 U.S. Dist. LEXIS 15007, at *32-33 (N.D. Cal. Sep. 21, 1998) ("[T]echnical know-how regarding what does and does not work in the process of designing [a product] is simply too nebulous a category of information to qualify for trade secret protection."). These newly added paragraphs are not only facially improper, but their inclusion further demonstrates Plaintiffs' false belief that they are entitled to shift, expand, and change their allegations whenever and however they see fit.

If the Court does not intervene and if Plaintiffs are permitted to proceed on TS. Nos. 6-15, it will render the Court's early identification requirement meaningless, it will undermine the policy rationales that supported the early identification requirement, and it will prejudice Defendants, who handed over their most confidential technical materials at the outset of discovery based on what now appears to have been little more than a set of placeholder trade secrets. The Court should therefore strike TS Nos. 6-15 and prohibit Plaintiffs from making any further expansion of their trade secret identification.

## B.    Plaintiffs' Late Expansion Reflects a Lack of Diligence.

Plaintiffs have argued that "at most, good cause is required to amend" and that they had good cause to expand their list in July 2020 (and again in October 2020) because they "could only recently discover that Defendants misappropriated additional trade secrets." (Dkt. 134-1). Plaintiffs are wrong on both points. Because late expansion is an impermissible end-run of the early identification requirement, good cause is the *least* that should be required to amend. Here, even if the Court applied a good cause standard, Plaintiffs' after-the-fact justifications do not hold up to scrutiny because Plaintiffs' *own allegations* reveal that Plaintiffs could have identified the newly added trade secrets much earlier than they did.

Plaintiffs' late addition of trade secrets alters the scope of the case and is therefore similar to an amendment of patent infringement contentions. In the context of patent contentions, "[t]he party seeking to amend its contentions bears the burden of establishing diligence." *Vasudevan Software, Inc. v. IBM*, No. C09-05897 RS (HRL), 2011 U.S. Dist. LEXIS 33132, at *5 (N.D. Cal. Feb. 18, 2011) (applying patent rules adopted for this case).  The moving party must establish diligence in two distinct phases: "(1) diligence in discovering the basis for amendment; and (2) diligence in seeking amendment once the basis for amendment has been discovered." *Positive Techs., Inc. v. Sony Elecs., Inc.*, No. C 11-2226 SI, 2013 WL 322556, at *2 (N.D. Cal. Jan. 28, 2013). The rule is meant to "suppress the 'shifting sands' approach to litigation." *Comcast Cable Communs. Corp., LLC v. Finisar Corp.*, No. C 06-04206 WHA, 2007 U.S. Dist. LEXIS 98476, at *5 (N.D. Cal. Mar. 2, 2007).

The diligence requirements in the patent context are motivated by the same concerns that Defendants express here. *See O2 Micro Int'l, Ltd. v. Monolithic Power Sys.*, 467 F.3d 1355, 1366 (Fed. Cir. 2006) ("If the parties were not required to amend their contentions promptly after discovering new information, *the contentions requirement would be virtually meaningless* as a mechanism for shaping the conduct of discovery"). If anything, trade secret expansion should require *more demanding* inquiry than amendment of patent contentions because of the unique potential for abuse in trade secret cases. However, even if Plaintiffs were merely required to establish diligence, they could not do so here because their delays cannot be explained or justified. *O2 Micro*, 467 F.3d at 1367 (affirming district court's finding of a lack of diligence where plaintiff "waited almost three months" after discovery of new information); *Koninklijke Philips, N.V. v. Acer Inc.*, No. 18-cv-01885-HSG, 2019 U.S. Dist. LEXIS 25383, at *14-15 (N.D. Cal. Feb. 15, 2019) (denying plaintiff's request for leave to amend its infringement contentions in light of newly produced source code because

plaintiff's inability to make amendments within three months of receiving source code production showed a lack of diligence); *Sun Microsystems, Inc. v. Network Appliance, Inc.*, No. 07-05488, 2009 WL 508448, at *1 (N.D. Cal. Feb. 27, 2009) (denying motion to amend infringement contentions where it was undisputed that the plaintiff had access to the source code for over a year prior to filing the motion to amend).

Plaintiffs provided their Original Identification on March 15, 2019. Kachmer Decl., ¶4. Defendants made their source code available to Plaintiffs' counsel no later than July 30, 2019. *Id.*, ¶7, Ex. D. Defendants produced key patent applications on August 30, 2019. *Id.*, ¶24. It was not until July 1, 2020—a little over two weeks before the then-scheduled discovery cut-off—that Plaintiffs provided their First Expanded Identification. *Id.*, ¶4. In other words, Plaintiffs waited **16 months** after providing their Original Identification and nearly **12 months** after first accessing Defendants' source code and patent applications before suddenly springing on Defendants an entirely new trade secret case shortly before the close of discovery.

Plaintiffs will argue that Defendants produced materials between July 2019 and July 2020 that allowed them to identify the newly added trade secrets. But Plaintiffs' own allegations show that this is untrue. For instance, in Plaintiffs' current motion for preliminary injunction, Plaintiffs allege that their ▮▮▮▮ trade secret is disclosed in True Wearables' patent applications. (*See* Dkt. 153-1, Exs. 19, 20). But Defendants produced several of those very patent applications *in August 2019*.[3] Kachmer Decl. ¶¶23-25. And yet, Plaintiffs inexplicably failed to

---

[3] In the Joint Stipulation before Judge Early, Plaintiffs argued that the patent applications that Defendants produced in August 2019 could not have informed them of any misappropriation because they were produced without USPTO filing receipts. This strains credulity for several reasons, one of which being that the patent applications each had a file name of "[Application Number] *Specification and Drawings as filed*.pdf" (emphasis added). Kachmer Decl. ¶¶23-24.

add the ▆ to their trade secret identification until the Second Expanded Identification, which did not come ***until October 2020***. *Id.*, ¶4, Ex. A, p. 17. According to an interrogatory response in which Plaintiffs identify documents that are "Representative of [True Wearables'] Trade Secret Use and Misappropriation," these patent applications have been identified by Plaintiffs as allegedly showing misappropriation not only for the ▆ but also for newly added TS Nos. 6-12, 14, and 15. *Id.*, ¶5, Ex. B, pp. 61-83. These patent applications are not the only documents that Plaintiffs received early in the case and that Plaintiffs now alleged to be evidence of misappropriation for newly added trade secrets. For each of newly added TS Nos. 6-11, Plaintiffs have also identified printouts of True Wearables source code as allegedly showing misappropriation. *Id.*, ¶¶5, 21, Ex. B, pp. 67-74. These source code printouts show ***the same source code*** that was made available ***in July of 2019***. *Id.*, ¶22. In short, Plaintiffs had documents sufficient to identify TS Nos. 6-12, 14, and 15 for at least a full year before Plaintiffs identified them. This delay is unjustified and warrants striking newly added TS Nos. 6-15.

Plaintiffs may complain, as they did before Judge Early, that Defendants' objections to their expert's and to certain counsel's access to "AEO" materials made it impossible for them to identify the trade secrets any early. Even if there were actual evidence that Plaintiffs' review was impeded by these objections (which there is not), there are still many months of delay for which Plaintiffs cannot account. For instance, after receiving Defendants' source code in July 2019, Plaintiffs did not identify a source code expert until January 2020. Kachmer Decl., ¶26. Plaintiffs have provided no explanation for this delay. Relatedly, the objections to Dr. McNames and Mr. Jensen were resolved in March 2020.[4] Thus,

---

[4] Defendants maintained their objection to Mr. Jensen after Judge Early's March order, but Plaintiffs indicated at that time that they believed the issue to have been resolved by the March order. Based on this representation, Defendants have no

even assuming Plaintiffs were utterly handicapped by these objections during the three months January-March 2020, there are ***nine months of unexplained delay*** between the July 2019 source code production and the July 2020 expansion. Even worse, there are ***eleven months of unexplained delay*** for the October 2020 expansion (when the ███ was first listed).

The diligence showing required for amendment of patent infringement contentions is the *bare minimum* that Plaintiffs should have to meet to expand their trade secret allegations. But even under this standard, Plaintiffs cannot establish diligence. To the extent Plaintiffs knew their trade secrets when they filed this action, those trade secrets should have been listed in the Original Identification, which the Court required Plaintiffs to provide at the outset of this case, or should have been identified promptly after receiving Defendants' source code and technical materials. Defendants now ask the Court to prevent Plaintiffs from treating their Original Identification as a mere placeholder for a continuously shifting and expanding set of alleged trade secrets in a way that renders meaningless the Court's early identification requirement. The Court should strike TS Nos. 6-15 and prohibit Plaintiffs from making any further expansion of their trade secret identification.

## III.   THE COURT SHOULD COMPEL PLAINTIFFS TO PROVIDE A MORE SPECIFIC IDENTIFICATION OF THE TRADE SECRETS THIS COURT DETERMINES ARE PROPERLY ASSERTED

Where an interrogatory response is inadequate, Rule 37 provides that the Court may compel a complete answer. Fed. R. Civ. P. 37.

Defendants' Interrogatory No. 1 is simple and straightforward. It seeks an identification of each trade secret that Plaintiffs believe Defendants have misappropriated. The information sought goes to the heart of the lawsuit and is

---

reason to believe that Mr. Jensen did begin accessing "AEO" information at that time.

necessary for this case to move forward and for Defendants to prepare and prove their defenses.

Interrogatory No. 1 specifically refers to the requirement set forth in California Civil Procedure Code § 2019.210 that identification of trade secrets must be "reasonably particular." The reasonable particularity standard requires a disclosure that is fair and proper under the circumstances. *SocialApps,* 2012 U.S. Dist. LEXIS 82767, at *10. Where the alleged trade secrets reside in "a highly specialized technical field, a more exacting level of particularity may be required to distinguish the alleged trade secrets from matters already known to persons skilled in that field." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1346 (2009).

Here, the parties have served and responded to multiple sets of written discovery and long-ago produced documents and source code. While Plaintiffs' initial identification of trade secrets sufficed at the early stages of the case to set the boundaries of relevant discovery, the case is now in the later stages of fact discovery when more specificity is necessary: discovery is set to close in approximately 3 months; 4 depositions of Defendants' witnesses have occurred; the deposition of Dr. Lamego will need to occur in the next couple of months; Defendants will be taking the depositions of Plaintiffs' witnesses as soon as they have a specific and stable set of alleged trade secrets; and Defendants need to solidify their defenses. *See*, *e.g.*, *InteliClear, LLC*, 978 F.3d at 662 (explaining that trade secret identification should be refined through the discovery process). Despite this, Plaintiffs have failed to provide sufficient specificity; instead, the exact trade secrets allegedly misappropriated and the scope of those trade secrets remains unclear. In short, Defendants do not have a sufficient understanding of Plaintiffs' trade secrets—the understanding that is necessary to depose Plaintiffs, to prepare Dr. Lamego for his deposition, and to properly formulate their defenses. Given the stage of the case, the need to develop and solidify Defendants' defenses,

and the highly technical nature of this dispute, more specificity is necessary.

### A.   Plaintiffs' TS Nos. 1, 3-5, 8-15 are Insufficiently Specific.

Plaintiffs' Second Expanded Identification lists fifteen categories of alleged trade secrets; within that identification, TS Nos. 1, 3-5, 8-15 are broad, vague, and/or riddled with ambiguities, all to the prejudice of Defendants.[5] *See, e.g., Switch Commc'n Group v. Ballard*, No. 2:11-cv-00285, 2012 U.S. Dist. LEXIS 85148, at *5 (D. Nev. June 19, 2012) (requiring plaintiff to "specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination"); *I-Flow Corp.*, 2008 U.S. Dist. LEXIS 44551, at *7 (the party alleging misappropriation "must distinguish the party's claimed trade secrets from matters generally known to those skilled in the trade, and must contain a high level of detail in a highly technical field."). For example, Plaintiffs identify the below TS No. 3 as a trade secret:



Kachmer Decl., Ex. A, p. 15. This identification is both broad and vague, providing no real understanding of what is allegedly claimed as a trade secret. Defendants are left to guess, what is the ▬▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

---

[5] As described in Section II, Defendants believe that TS Nos. 6-15 should be stricken. Defendants, however, have addressed these categories in this Section in the event that the Court does not strike those trade secrets.

1  ████████████████████████████████████████████████
2  ████████████████████████████████████████ With such
3  ambiguities, Defendants cannot and do not have a clear understanding of what
4  they allegedly misappropriated.
5      Similarly, Plaintiffs have identified as TS No. 4: ██████████████
6  ████████████████████████████████████████████████████.
7  Kachmer Ex. A, p. 15. Again, this is broad and vague. ██████████████████
8  ████████████████████████████████████████████████████
9  ████████████████████████████████████████████████████
10 ████████████████████████████████████████████████████
11 ██████████████████████

12     TS No. 12—the subject of Plaintiffs' motion for preliminary injunction—
13 contains further ambiguity and illustrates the prejudicial consequences of an
14 insufficiently particular identification. When Defendants notified Plaintiffs that TS
15 No. 12 was insufficiently particular, Plaintiffs responded that "Defendants cannot
16 seriously maintain" that the identification of TS No. 12 is insufficiently particular
17 because, according to Plaintiffs, the alleged trade secret is ██████████████ *Id.*,
18 Ex. Q. However, in Plaintiffs' motion for preliminary injunction, Plaintiffs seem
19 to be attempting to capitalize on impermissible ambiguity to take a contradictory
20 position that TS No. 12 encompasses much more than simply these ██████
21 ██████████ For instance, Plaintiffs' motion alleges that True Wearables discloses
22 ██████████ in its patent applications. To support their allegation, Plaintiffs offer the
23 declaration Dr. James McNames, who provides a lengthy and circuitous
24 explanation of how True Wearables' patent applications allegedly misappropriate

_____

[6] Indeed, it is not even clear if this trade secret is limited to ██████████████
██████████████████████████████████ Even if limited to
████████████████████████████████████████████

the ██████ by (a) ███████████████████████ (b) ████████

████████████████████████ (c) ███████████████████████

(d) █████████████████████████████████████

████████████████████ *Nowhere* in Plaintiffs' motion or Dr. McNames's declaration, however, do Plaintiffs ever assert that the ████████ ██████████ of TS No. 12 are present in any True Wearables patent application. This deliberate attempt to blur the boundaries of their alleged trade secret underscores the importance of providing a trade secret identification that leaves no room for ambiguity about what, *exactly*, Plaintiffs believe to be their trade secret.

The above examples are only illustrative; attached as Exhibit R is a chart describing the shortcomings for each of TS Nos. 1, 3-5, 8-15. Kachmer Decl., ¶27, Ex. R. As the above examples and Exhibit R illustrate, Plaintiffs' TS Nos. 1, 3-5, 8-15 fail to provide sufficient detail and clarity as to what they allege Defendants misappropriated. The Court should compel Plaintiffs to supplement their responses to more specifically describe whatever trade secrets are not stricken (of TS Nos. 1, 3-5, 8-15) and to address the deficiencies identified by Defendants so that Defendants may properly develop their defenses and engage in the deposition process.

**B.    Until Plaintiffs Identify their Alleged Trade Secrets with Specificity, Defendants are Entitled to a Protective Order Preventing Further Trade Secret Discovery.**

Section 2019.210 precludes discovery until the party alleging the misappropriation identifies the trade secrets with reasonable particularity, and Rule 26 permits courts to grant protective orders to prevent discovery upon a showing of good cause. Fed. R. Civ. P. 26; *M/A-COM Tech. Sols., Inc.*, 2019 WL 8108729, at *2 (internal quotations omitted); *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, No. 2:15-cv-00531-RFB-GWF, 2018 WL 5886531, at *4-8 (D. Nev. Nov. 9, 2018); *see also Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*,

307 F.3d 1206, 1211 (9th Cir. 2002) (noting that the Supreme Court has interpreted Rule 26(c) "as conferring 'broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required.'" (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984))). The party seeking the protective order must also establish specific prejudice or harm if the requested protective order is not granted. *Phillips*, 307 F.3d at 1210-11.

Plaintiffs have propounded multiple discovery requests on Defendants directed to their trade secret claims, including contention interrogatories regarding Defendants' defenses that (i) the alleged trade secrets were generally known, readily ascertainable, and/or has no independent economic value (Interrogatory No. 7) and (ii) the alleged trade secret information was independently developed or derived by Defendants or their employees (Interrogatory No. 8). Kachmer Decl., ¶17, Ex. N. Plaintiffs have also indicated that they wish to take Dr. Lamego's deposition soon, presumably questioning him about his and True Wearables' alleged misappropriation. Allowing such discovery would prejudice Defendants who cannot prepare for depositions without an adequate identification of Plaintiffs' alleged trade secrets.

As noted *supra* Section I, one of the goals of early trade secret identification and Section 2019.210 is to "enable[] defendants to form complete and well-reasoned defenses, ensuring that they need not wait until the eve of trial to effectively defend against charges of trade secret misappropriation." *Computer Econs., Inc.*, 50 F. Supp. 2d at 985. A defendant cannot develop its defenses without understanding what trade secrets were allegedly misappropriated.

Defendants' ability to establish that Plaintiffs' alleged trade secrets were generally known, readily ascertainable, and have no independent economic value, as requested in Interrogatory No. 7, necessarily depends on first having a clear understanding of what Plaintiffs allege are their trade secrets. *See Loop AI Labs Inc.*, 195 F. Supp. 3d at 1115. The same is true with respect to Interrogatory No. 8

regarding Defendants' independent development. *Id.* Defendants provided a robust response to Interrogatory No. 8 regarding how Mr. Lamego generally developed the True Wearables Oxxiom device. Kachmer Decl., ¶18, Ex. O. But given Plaintiffs' deficient identification, Defendants are unable to provide additional development details that focus on specific features relevant to the alleged trade secrets. Until Plaintiffs' alleged trade secrets are identified with specificity and stability, Defendants can neither properly respond to Interrogatory Nos. 7 and 8 nor properly prepare their witnesses for depositions.

Moreover, Plaintiffs' refusal to provide certainty as to the list of allegedly misappropriated trade secrets means that Defendants risk wasting resources to present evidence of their defenses, only to have Plaintiffs then narrow the scope of the asserted trade secret as it suits their needs to circumvent Defendants' defenses. Without a solidified and specific list of the trade secrets allegedly misappropriated—one that is specific, one that will not be expanded to cover new trade secrets, and one that will not be narrowed when convenient for Plaintiffs—Defendants should not be required to respond to trade secret discovery. The Court should grant Defendants' request for a protective order preventing further discovery relating to trade secrets until Plaintiffs provide a specific and stable set of alleged trade secrets.

Respectfully submitted,


**MERCHANT & GOULD, P.C.**

Dated: February 22, 2021                 By: */s/* Amanda R. Washton

Peter A. Gergely (*Pro Hac Vice*)
PGergely@merchantgould.com
Ryan J. Fletcher, (*Pro Hac Vice*)
RFletcher@merchantgould.com
Paige S. Stradley (*Pro Hac Vice*)
PStradley@merchantgould.com
Zachary D. Kachmer (*Pro Hac Vice*)
ZKachmer@merchantgould.com
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081
*Attorneys for Defendants,*
*True Wearables, Inc. and*
*Marcelo Lamego*

# Exhibit A

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   Joseph R. Re (Bar No. 134479)
    joseph.re@knobbe.com
2   Stephen C. Jensen (Bar No. 149894)
3   stephen.jensen@knobbe.com
    Irfan A. Lateef (Bar No. 204004)
4   irfan.lateef@knobbe.com
5   Brian C. Claassen (Bar No. 253627)
    brian.claassen@knobbe.com
6   **KNOBBE, MARTENS, OLSON & BEAR, LLP**
7   2040 Main Street, Fourteenth Floor
    Irvine, CA  92614
8   Telephone:  (949)-760-0404
    Facsimile:  (949)-760-9502
9

10  Attorneys for Plaintiffs,
11  Masimo Corporation and
    Cercacor Laboratories, Inc.
12

13              **IN THE UNITED STATES DISTRICT COURT**

14              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15                        **SOUTHERN DIVISION**

16

17  _____  )   Case No. 8:18-CV-02001-JVS-JDE
                                    )
18  MASIMO CORPORATION, a            )   **PLAINTIFFS MASIMO**
    Delaware corporation; and        )   **CORPORATION AND**
19  CERCACOR LABORATORIES, INC.,     )   **CERCACOR LABORATORIES,**
    a Delaware corporation,          )   **INC.'S SECOND**
20                                   )   **SUPPLEMENTAL RESPONSES**
                                    )   **TO DEFENDANTS'**
21        Plaintiffs/Counterdefendants,  )   **INTERROGATORIES (NOS. 1-4)**
                                    )
22                                   )
          v.                         )
23                                   )   Hon. James V. Selna
                                    )   Magistrate Judge John D. Early
24  TRUE WEARABLES, INC., a          )
    Delaware corporation; and        )
25  MARCELO LAMEGO, an individual,   )
                                    )
26                                   )
          Defendants/Counterclaimants.  )
27  _____  )

28         **[UNREDACTED AND HIGHLIGHTED VERSION OF**
        **DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC. ("Cercacor") (collectively "Plaintiffs") hereby supplement their responses to Defendants TRUE WEARABLES, INC. ("True Wearables") and MARCELO LAMEGO's ("Lamego") (collectively, "Defendants") First Set of Interrogatories (Nos. 1-10), served upon Plaintiffs on February 15, 2019.

## GENERAL STATEMENT AND OBJECTIONS

Plaintiffs assert each of the following General Objections to each of the instructions, definitions, and interrogatories. In addition to these General Objections, Plaintiffs state specific objections to these interrogatories where appropriate, including objections that are not generally applicable to all interrogatories. By setting forth such specific objections, Plaintiffs do not intend to limit or restrict these General Objections.

1.    Plaintiffs object generally to the definitions and instructions in Defendants' First Set of Interrogatories to the extent that they fail to comply with, or impose obligations in excess of Rule 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of this Court. Plaintiffs will respond to the interrogatories in compliance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

2.    Plaintiffs object to these interrogatories to the extent that they seek information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case. To the extent that Plaintiffs respond to any request, Plaintiffs do not concede that the information sought by these requests are relevant.

3.    Plaintiffs object to these interrogatories to the extent that they seek information not in the possession, custody, or control of Plaintiffs. Plaintiffs state that their responses to these interrogatories are limited to the information

that is within its possession, custody, or control.

4. Plaintiffs object to these Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege, rule, or immunity. Any specific objections stated on the grounds of attorney-client privilege and/or work product in no way limits the generality of this objection. Nothing contained in Plaintiffs' responses is intended to be or should be considered a waiver of any attorney-client privilege, work product protection, the right of privacy, or any other applicable privilege or doctrine, and, to the extent any interrogatory may be construed as calling for information protected by any such privilege or doctrine, a continuing objection to each and every such interrogatory is hereby stated.

5. Plaintiffs object to Defendants' interrogatories to the extent they seek third-party proprietary information, trade secrets and/or other confidential information and/or protected information that Plaintiffs are obligated not to disclose.

6. Plaintiffs object to these interrogatories to the extent that they are overly broad and unduly burdensome, the burden outweighs their likely benefit, they are unlimited in time, and would require an unreasonably detailed and unreasonably extensive search of all of Plaintiffs' information and files. Plaintiffs will make a reasonable search as required by the Federal Rules of Civil Procedure.

7. Plaintiffs object to Defendants' definition of the term "Masimo" as overly broad and unduly burdensome. As used herein, the term "Masimo" shall means Masimo Corporation only.

8. Plaintiffs object to Defendants' definition of the term "Cercacor" as overly broad and unduly burdensome. As used herein, the term "Cercacor" shall mean Cercacor Laboratories, Inc. only.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

9.     As used herein, the term "Plaintiffs" shall mean Masimo and Cercacor, collectively and/or individually.

10.     Plaintiffs object to Defendants' definitions, instructions, and requests for interrogatories to the extent that they are vague, ambiguous, or unintelligible. Words and terms used in the following responses shall be construed in accordance with their normal meanings and connotations.

11.     Only the express and overt meaning of these responses is intended. No response should be construed to contain implied statements, representations, or admissions of any kind. The fact that Plaintiffs have responded or objected to an interrogatory should not be understood as an admission that Plaintiffs accept or admit the existence of any "fact" set forth in or assumed by the interrogatory.

12.     Plaintiffs' responses are made without, in any way, waiving or intending to waive, but, on the contrary, intending to preserve and preserving:

a.     The right to raise all objections as to competence, authenticity, relevance, materiality, privilege and admissibility with regard to the information and documents identified and/or produced in response to these Interrogatories, which may arise in any subsequent proceeding in, or the trial of, this or any other action;

b.     The right to object to the use of the information and/or documents for any purpose, including without limitation their use in any subsequent proceeding in, or the trial of, this or any other action;

c.     The right to assert or raise, in this action or in any other context, attorney-client privilege, work product protection, the protections afforded by Rule 26(b)(4)(B), the right of privacy, or any other applicable privilege or protective doctrine; and

d.     The right to object on any ground at any time to Interrogatories or other discovery relating to information and/or information or the subject matter thereof.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

13.     Plaintiffs are providing information that was uncovered by means of a reasonable investigation and that is the subject of legitimate discovery. The following responses are based upon information presently available to and located by Plaintiffs after a reasonable search. However, discovery is ongoing in this case, and Plaintiffs have not yet completed its investigation of the facts relating to this case or completed discovery, and have not completed preparation for trial. The responses given herein are without prejudice to Plaintiffs' right to supplement its responses, should additional information be subsequently discovered, and to rely upon any subsequently discovered evidence. Moreover, certain of these interrogatories are premature in that they seek contentions or other information that Plaintiffs cannot provide at this stage of the case. Finally, certain of these interrogatories are subject to specific objections and are therefore not the subject of legitimate discovery.

Without waiving the specific objections set forth below, and subject to the limitations and General Objections set forth above, Plaintiffs provide the following responses to Defendants' First Set of Interrogatories (Nos. 1-10) as follows:

/ / /

/ / /

/ / /

CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

## SECOND SUPPLEMENTAL OBJECTIONS AND RESPONSES TO

2

## DEFENDANTS' FIRST SET OF INTERROGATORIES

3

**INTERROGATORY NO. 1:**

4

Identify (including, but not limited to with "reasonable particularity" as

5

that term is used in California Civil Procedure Code § 2019.210), each trade

6

secret of each of the Plaintiffs that each of the Plaintiffs contend was

7

misappropriated by Defendants.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



## CONFIDENTIAL – ATTORNEYS' EYES ONLY



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



CONFIDENTIAL – ATTORNEYS' EYES ONLY



**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY

1  ████████████████████████████████████████
2  ████████████████████████████████████████
3  ████████████████████████████████████████
4  ████
5   ██████████████████████████████████████
6  ████████████████████████████████████████
7  ████████████████████

8  **SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 1:**

9   ███████████████████████████████████████
10 ████████████████████████████████████████
11 ████████████████████████████████████████
12 ████████████████████████████████████████
13 █████
14      ██████████████████████████████████
15    ███████████████████████████████████████
16    ███████████████████████████████████████
17    ███████████████████████████████████████
18    ███████████████████████████████████████
19    ███████████████████████████████████████
20    ███████████████████████████████████████
21    ████████████████████████████████
22   ████████████████████████████████████████
23    █████████████
24     █████████████████████████████████████
25     ████████████████████
26     ████████████████████████████████████
27     ████████████████████
28     ████████████████████████████████████

CONFIDENTIAL – ATTORNEYS' EYES ONLY





CONFIDENTIAL – ATTORNEYS' EYES ONLY



CONFIDENTIAL – ATTORNEYS' EYES ONLY



## CONFIDENTIAL – ATTORNEYS' EYES ONLY

1

2

3

4

5

6

7

8

9

10

11

12

13 **INTERROGATORY NO. 2:**

14    With respect to the trade secrets requested to be identified in

15 Interrogatory No. 1, please identify separately for each such trade secret:

16    a.    the person who committed the act of misappropriation;

17    b.    what trade secret was misappropriated;

18    c.    where the trade secret was misappropriated;

19    d.    when the trade secret was misappropriated;

20    e.    how the trade secret was misappropriated; and

21    f.    documents supporting your answer.

22 **RESPONSE TO INTERROGATORY NO. 2:**

23    Plaintiffs incorporate their General Statement and Objections.  Plaintiffs

24 object to this interrogatory to the extent it seeks information protected by the

25 attorney-client privilege, work product doctrine, or any other applicable

26 privilege or immunity.  Plaintiffs further object to this interrogatory to the extent

27 it seeks information that is not relevant to any party's claims or defenses nor

28 proportional to the needs of the case.    Plaintiffs further object to this

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

interrogatory as compound and contend that it should be counted as multiple interrogatories because it combines multiple requests for information into a single interrogatory.  Plaintiffs further object to this interrogatory as premature, and on that basis, as unduly burdensome.  Plaintiffs have not completed their investigation and discovery is ongoing.  Further investigation, discovery, and legal research and analysis may yield additional information and documents, add new meaning to known information and documents, or establish entirely new factual or legal conclusions.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

a. Marcelo Lamego and True Wearables committed the acts of misappropriation.  In addition, for at least the trade secrets identified in response to Interrogatory No. 1 as (8) and (14), Tony Allen committed or contributed to the acts of misappropriation by True Wearables.

b. Marcelo Lamego and True Wearables misappropriated each of the trade secrets identified in response to Interrogatory No. 1.  In addition, Tony Allen misappropriated at least the trade secrets identified in response to Interrogatory No. 1 as (8) and (14).

c. Marcelo Lamego and True Wearables misappropriated Plaintiffs' trade secrets at True Wearables principal place of business.

d. Marcelo Lamego misappropriated Plaintiffs' trade secrets through improper use and disclosure at least as early as August, 2014, when he founded True Wearables and directed the development of the Oxxiom product.  True Wearables misappropriated Plaintiffs' trade secrets through improper use, disclosure, and acquisition at least as early as August, 2014, when True Wearables began development of the Oxxiom product.  Tony Allen misappropriated Plaintiffs' trade secrets through improper use, disclosure, and acquisition at least as early as

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

August, 2014, when True Wearables began development of the Oxxiom product.

e. Marcelo Lamego misappropriated Plaintiffs' trade secrets by using Plaintiffs' confidential information in connection with the founding and operation of True Wearables and by choosing the Oxxiom product to develop, by disclosing Plaintiffs' confidential information to True Wearables, True Wearables employees, and True Wearables contractors in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through acquisition by obtaining possession of Plaintiffs' confidential information from Lamego knowing or having reason to know that Lamego used improper means to acquire it, and by using and/or disclosing Plaintiffs' confidential information in connection with the development and commercial release of True Wearables' Oxxiom product.

f. Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or supplement this interrogatory response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving the foregoing objections, based on information currently available, and subject to their right to supplement this

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

response as further information is revealed through discovery, Plaintiffs supplement their response as follows:

    a. Marcelo Lamego and True Wearables committed the acts of misappropriation. In addition, for at least the trade secrets identified in response to Interrogatory No. 1 as (4), Tony Allen committed or contributed to the acts of misappropriation by True Wearables.

    b. Marcelo Lamego and True Wearables misappropriated each of the trade secrets identified in response to Interrogatory No. 1. In addition, Tony Allen misappropriated at least the trade secrets identified in response to Interrogatory No. 1 as (4).

    c. Marcelo Lamego and True Wearables misappropriated Plaintiffs' trade secrets at True Wearables' principal place of business.

    d. Marcelo Lamego misappropriated Plaintiffs' trade secrets through improper use and disclosure at least as early as August, 2014, when he founded True Wearables and directed the development of the Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper use, disclosure, and acquisition at least as early as August, 2014, when True Wearables began development of the Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper disclosure at least as early as December 7, 2014, when True Wearables began filing patent applications containing Plaintiffs' trade secrets. Tony Allen misappropriated Plaintiffs' trade secrets through improper use, disclosure, and acquisition at least as early as August, 2014, when True Wearables began development of the Oxxiom product.

    e. Marcelo Lamego misappropriated Plaintiffs' trade secrets by using Plaintiffs' confidential information in connection with the founding and operation of True Wearables and by choosing the Oxxiom product

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

to develop, by disclosing Plaintiffs' confidential information to True Wearables, True Wearables employees, and True Wearables contractors in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through acquisition by obtaining possession of Plaintiffs' confidential information from Lamego knowing or having reason to know that Lamego used improper means to acquire it, and by using and/or disclosing Plaintiffs' confidential information in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper disclosure, by allowing the USPTO to publish patent applications containing Plaintiffs' trade secrets.

f.  Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Plaintiffs also refer to their responses to Interrogatory Nos. 1 and 11. Pursuant to Fed. R. Civ. P. 33(d), Plaintiffs identify the documents listed in response to Interrogatory No. 11.

Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or supplement this interrogatory response.

/ / /

/ / /

CONFIDENTIAL – ATTORNEYS' EYES ONLY

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

Subject to and without waiving the foregoing objections, based on information currently available, and subject to their right to supplement this response as further information is revealed through discovery, Plaintiffs supplement their response as follows:

a. Marcelo Lamego and True Wearables committed the acts of misappropriation. In addition, for at least the trade secrets identified in response to Interrogatory No. 1 as (4), Tony Allen committed or contributed to the acts of misappropriation by True Wearables.

b. Marcelo Lamego and True Wearables misappropriated each of the trade secrets identified in response to Interrogatory No. 1. In addition, Tony Allen misappropriated at least the trade secrets identified in response to Interrogatory No. 1 as (4).

c. Marcelo Lamego and True Wearables misappropriated Plaintiffs' trade secrets at True Wearables' principal place of business.

d. Marcelo Lamego misappropriated Plaintiffs' trade secrets through improper use and disclosure at least as early as August, 2014, when he founded True Wearables and directed the development of the Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper use, disclosure, and acquisition at least as early as August, 2014, when True Wearables began development of the Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper disclosure at least as early as December 7, 2014, when True Wearables began filing patent applications containing Plaintiffs' trade secrets. Tony Allen misappropriated Plaintiffs' trade secrets through improper use, disclosure, and acquisition at least as early as August, 2014, when True Wearables began development of the Oxxiom product.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

e.  Marcelo Lamego misappropriated Plaintiffs' trade secrets by using Plaintiffs' confidential information in connection with the founding and operation of True Wearables and by choosing the Oxxiom product to develop, by disclosing Plaintiffs' confidential information to True Wearables, True Wearables employees, and True Wearables contractors in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through acquisition by obtaining possession of Plaintiffs' confidential information from Lamego knowing or having reason to know that Lamego used improper means to acquire it, and by using and/or disclosing Plaintiffs' confidential information in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper disclosure, by allowing the USPTO to publish patent applications containing Plaintiffs' trade secrets.

f.  Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Plaintiffs also refer to their responses to Interrogatory Nos. 1 and 11. Pursuant to Fed. R. Civ. P. 33(d), Plaintiffs identify the documents listed in response to Interrogatory No. 11.

Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1    supplement this interrogatory response.

2    **INTERROGATORY NO. 3:**

3           Identify each item of confidential information of each of the Plaintiffs

4    that each of the Plaintiffs contend was taken, used, and/or wrongfully utilized by

5    Defendants.

6    **RESPONSE TO INTERROGATORY NO. 3:**

7           Plaintiffs incorporate their General Statement and Objections.  Plaintiffs

8    object to this interrogatory to the extent it seeks information protected by the

9    attorney-client privilege, work product doctrine, or any other applicable privilege

10   or immunity.  Plaintiffs further object to this interrogatory to the extent it seeks

11   information that is not relevant to any party's claims or defenses nor

12   proportional to the needs of the case.   Plaintiffs further object to this

13   interrogatory as premature, and on that basis, as unduly burdensome.  Plaintiffs

14   have not completed their investigation and discovery is ongoing.   Further

15   investigation, discovery, and legal research and analysis may yield additional

16   information and documents, add new meaning to known information and

17   documents, or establish entirely new factual or legal conclusions.

18          Subject to and without waiving the foregoing objections, Plaintiffs

19   respond as follows: Plaintiffs refer to their response to Interrogatory No. 1.

20          Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the

21   Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or

22   supplement this interrogatory response.

23   **SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

24          Subject to and without waiving the foregoing objections, based on

25   information currently available, and subject to their right to supplement this

26   response as further information is revealed through discovery, Plaintiffs

27   supplement their response as follows:   Plaintiffs refer to their responses to

28   Interrogatory Nos. 1 and 11.  Pursuant to Fed. R. Civ. P. 33(d), Plaintiffs identify

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

the documents listed in response to Interrogatory No. 11.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 3:**

      Subject to and without waiving the foregoing objections, based on information currently available, and subject to their right to supplement this response as further information is revealed through discovery, Plaintiffs supplement their response as follows:   Plaintiffs refer to their responses to Interrogatory Nos. 1 and 11.  Pursuant to Fed. R. Civ. P. 33(d), Plaintiffs identify the documents listed in response to Interrogatory No. 11.

**INTERROGATORY NO. 4:**

      With respect to the confidential information requested to be identified in Interrogatory No. 3, please identify separately for each such item of confidential information:

    a.  the person who took, used, and/or wrongfully utilized the confidential information;

    b.  what item of confidential information was taken, used and/or wrongfully utilized;

    c.  where the item of confidential information was taken, used and/or wrongfully utilized;

    d.  when the item of confidential information was taken, used and/or wrongfully utilized;

    e.  how the item of confidential information was taken, used and/or wrongfully utilized; and

    f.  documents supporting your answer.

**RESPONSE TO INTERROGATORY NO. 4:**

      Plaintiffs incorporate their General Statement and Objections.  Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity.  Plaintiffs further object to this interrogatory to the extent it seeks

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

information that is not relevant to any party's claims or defenses nor proportional to the needs of the case. Plaintiffs further object to this interrogatory as compound and contend that it should be counted as multiple interrogatories because it combines multiple requests for information into a single interrogatory. Plaintiffs further object to this interrogatory as premature, and on that basis, as unduly burdensome. Plaintiffs have not completed their investigation and discovery is ongoing. Further investigation, discovery, and legal research and analysis may yield additional information and documents, add new meaning to known information and documents, or establish entirely new factual or legal conclusions.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

a. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information.

b. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information identified in response to Interrogatory No. 3.

c. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized the confidential information at True Wearables principal place of business.

d. Marcelo Lamego took, used, and/or wrongfully utilized Plaintiffs' confidential information at least as early as August, 2014, and when he founded True Wearables. True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information at least as early as August, 2014, when True Wearables began development of the Oxxiom product.

g. Marcelo Lamego took, used, and/or wrongfully utilized Plaintiffs' confidential information by using Plaintiffs' confidential information

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

in connection with the founding and operation of True Wearables and by disclosing Plaintiffs' confidential information to True Wearables, True Wearables employees, and True Wearables contractors in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information by obtaining possession of Plaintiffs' confidential information from Lamego knowing or having reason to know that Lamego used improper means to acquire it, and by using and/or disclosing Plaintiffs' confidential information in connection with the development and commercial release of True Wearables' Oxxiom product.

Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or supplement this interrogatory response.

**SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:**

Subject to and without waiving the foregoing objections, based on information currently available, and subject to their right to supplement this response as further information is revealed through discovery, Plaintiffs supplement their response as follows:

Plaintiffs respond as follows:

a. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information.

b. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information identified in response to Interrogatory No. 3.

CONFIDENTIAL – ATTORNEYS' EYES ONLY

c. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized the confidential information at True Wearables principal place of business.

d. Marcelo Lamego took, used, and/or wrongfully utilized Plaintiffs' confidential information at least as early as August, 2014, and when he founded True Wearables. True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information at least as early as August, 2014, when True Wearables began development of the Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper disclosure at least as early as December 7, 2014, when True Wearables began filing patent applications containing Plaintiffs' trade secrets.

e. Marcelo Lamego took, used, and/or wrongfully utilized Plaintiffs' confidential information by using Plaintiffs' confidential information in connection with the founding and operation of True Wearables and by disclosing Plaintiffs' confidential information to True Wearables, True Wearables employees, and True Wearables contractors in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information by obtaining possession of Plaintiffs' confidential information from Lamego knowing or having reason to know that Lamego used improper means to acquire it, and by using and/or disclosing Plaintiffs' confidential information in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper disclosure, by allowing the USPTSO to publish patent applications containing Plaintiffs' trade secrets.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Plaintiffs also refer to their responses to Interrogatory Nos. 1 and 11. Pursuant to Fed. R. Civ. P. 33(d), Plaintiffs identify the documents listed in response to Interrogatory No. 11.

Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or supplement this interrogatory response.

## SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 4:

Subject to and without waiving the foregoing objections, based on information currently available, and subject to their right to supplement this response as further information is revealed through discovery, Plaintiffs supplement their response as follows:

Plaintiffs respond as follows:

a. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information.

b. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information identified in response to Interrogatory No. 3.

c. Marcelo Lamego and True Wearables took, used, and/or wrongfully utilized the confidential information at True Wearables principal place of business.

d. Marcelo Lamego took, used, and/or wrongfully utilized Plaintiffs' confidential information at least as early as August, 2014, and when he founded True Wearables.   True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information at least as early as August, 2014, when True Wearables began development of the

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper disclosure at least as early as December 7, 2014, when True Wearables began filing patent applications containing Plaintiffs' trade secrets.

e. Marcelo Lamego took, used, and/or wrongfully utilized Plaintiffs' confidential information by using Plaintiffs' confidential information in connection with the founding and operation of True Wearables and by disclosing Plaintiffs' confidential information to True Wearables, True Wearables employees, and True Wearables contractors in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables took, used, and/or wrongfully utilized Plaintiffs' confidential information by obtaining possession of Plaintiffs' confidential information from Lamego knowing or having reason to know that Lamego used improper means to acquire it, and by using and/or disclosing Plaintiffs' confidential information in connection with the development and commercial release of True Wearables' Oxxiom product. True Wearables misappropriated Plaintiffs' trade secrets through improper disclosure, by allowing the USPTSO to publish patent applications containing Plaintiffs' trade secrets.

Plaintiffs also refer to their responses to Interrogatory Nos. 1 and 11. Pursuant to Fed. R. Civ. P. 33(d), Plaintiffs identify the documents listed in response to Interrogatory No. 11.

Because documents supporting Plaintiffs' contentions are likely in the possession, custody or control of Defendants, Plaintiffs reserve the right to identify supporting documents as discovery in this case progresses.

Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or supplement

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

this interrogatory response.

Respectfully submitted,

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated: October 30, 2020          By: */s/ Brian C. Claassen*
                                         Joseph R. Re
                                         Stephen C. Jensen
                                         Irfan A. Lateef
                                         Brian C. Claassen

                                         Attorneys for Plaintiffs,
                                         Masimo Corporation and
                                         Cercacor Laboratories, Inc.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## PROOF OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California. I am over the age of 18 and not a party to the within action. My business address is 2040 Main Street, Fourteenth Floor, Irvine, California 92614. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On October 30, 2020 I served the within **PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S SECOND SUPPLEMENTAL RESPONSES TO DEFENDANTS' FIRST SET OF INTERROGATORIES (NOS. 1-4)** on the parties or their counsel shown below as follows:

**VIA EMAIL:**
Amanda R. Washton
a.washton@conklelaw.com
Sherron Wiggins
s.wiggins@conklelaw.com
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100
Facsimile: (310) 998-9109

**VIA EMAIL:**
Peter A. Gergely
PGergely@merchantgould.com
Ryan J. Fletcher
RFletcher@merchantgould.com
Zach D. Kachmer
ZKachmer@merchantgould.com
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

**VIA EMAIL:**
Paige S. Stradley
PStradley@merchantgould.com
MERCHANT & GOULD, P.C.
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081
Attorneys for Defendants,
True Wearables, Inc. and Marcelo Lamego

70

-34-

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   I declare, under penalty of perjury, that the foregoing is true and correct.

2   Executed on October 30, 2020 at Irvine, California.

3

4                                    */s/ Claudia Watson*
                                    Claudia Watson
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Exhibit B

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
**KNOBBE, MARTENS, OLSON & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>    Plaintiffs/Counterdefendants,<br><br>    v.<br><br>TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual,<br><br>    Defendants/Counterclaimants. | Case No. 8:18-CV-02001-JVS-JDE<br><br>**PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S THIRD SUPPLEMENTAL RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES (NO. 11)**<br><br>Hon. James V. Selna<br>Magistrate Judge John D. Early |

**[UNREDACTED AND HIGHLIGHTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC. ("Cercacor") (collectively "Plaintiffs") hereby supplement their responses to Defendants TRUE WEARABLES, INC. ("True Wearables") and MARCELO LAMEGO's ("Lamego") (collectively, "Defendants") Second Set of Interrogatories (Nos. 11-12), served upon Plaintiffs on October 16, 2019.

## GENERAL STATEMENT AND OBJECTIONS

Plaintiffs assert each of the following General Objections to each of the instructions, definitions, and interrogatories. In addition to these General Objections, Plaintiffs state specific objections to these interrogatories where appropriate, including objections that are not generally applicable to all interrogatories. By setting forth such specific objections, Plaintiffs do not intend to limit or restrict these General Objections.

1. Plaintiffs object generally to the definitions and instructions in Defendants' Second Set of Interrogatories to the extent that they fail to comply with, or impose obligations in excess of Rule 33 of the Federal Rules of Civil Procedure and the applicable Local Rules of this Court. Plaintiffs will respond to the interrogatories in compliance with the Federal Rules of Civil Procedure and the Local Rules of this Court.

2. Plaintiffs object to these interrogatories to the extent that they seek information that is neither relevant to any claim or defense in this case nor proportional to the needs of the case. To the extent that Plaintiffs respond to any request, Plaintiffs do not concede that the information sought by these requests are relevant.

3. Plaintiffs object to these interrogatories to the extent that they seek information not in the possession, custody, or control of Plaintiffs. Plaintiffs state that their responses to these interrogatories are limited to the information that is

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

within its possession, custody, or control.

4.     Plaintiffs object to these Interrogatories to the extent that they seek information protected from disclosure by the attorney-client privilege, attorney work product doctrine, and/or any other applicable privilege, rule, or immunity. Any specific objections stated on the grounds of attorney-client privilege and/or work product in no way limits the generality of this objection.  Nothing contained in Plaintiffs' responses is intended to be or should be considered a waiver of any attorney-client privilege, work product protection, the right of privacy, or any other applicable privilege or doctrine, and, to the extent any interrogatory may be construed as calling for information protected by any such privilege or doctrine, a continuing objection to each and every such interrogatory is hereby stated.

5.     Plaintiffs object to Defendants' interrogatories to the extent they seek third-party proprietary information, trade secrets and/or other confidential information and/or protected information that Plaintiffs' are obligated not to disclose.

6.     Plaintiffs object to these interrogatories to the extent that they are overly broad and unduly burdensome, the burden outweighs their likely benefit, they are unlimited in time, and would require an unreasonably detailed and unreasonably extensive search of all of Plaintiffs' information and files. Plaintiffs will make a reasonable search as required by the Federal Rules of Civil Procedure.

7.     Plaintiffs object to Defendants' definition of the term "Masimo" as overly broad and unduly burdensome.  As used herein, the term "Masimo" shall means Masimo Corporation only.

8.     Plaintiffs object to Defendants' definition of the term "Cercacor" as overly broad and unduly burdensome.  As used herein, the term "Cercacor" shall mean Cercacor Laboratories, Inc. only.

9.     As used herein, the term "Plaintiffs" shall mean Masimo and

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Cercacor, collectively and/or individually.

10. Plaintiffs object to Defendants' definitions, instructions, and requests for interrogatories to the extent that they are vague, ambiguous, or unintelligible. Words and terms used in the following responses shall be construed in accordance with their normal meanings and connotations.

11. Only the express and overt meaning of these responses is intended. No response should be construed to contain implied statements, representations, or admissions of any kind. The fact that Plaintiffs have responded or objected to an interrogatory should not be understood as an admission that Plaintiffs accept or admit the existence of any "fact" set forth in or assumed by the interrogatory.

12. Plaintiffs' responses are made without, in any way, waiving or intending to waive, but, on the contrary, intending to preserve and preserving:

    a.    The right to raise all objections as to competence, authenticity, relevance, materiality, privilege and admissibility with regard to the information and documents identified and/or produced in response to these Interrogatories, which may arise in any subsequent proceeding in, or the trial of, this or any other action;

    b.    The right to object to the use of the information and/or documents for any purpose, including without limitation their use in any subsequent proceeding in, or the trial of, this or any other action;

    c.    The right to assert or raise, in this action or in any other context, attorney-client privilege, work product protection, the protections afforded by Rule 26(b)(4)(B), the right of privacy, or any other applicable privilege or protective doctrine; and

    d.    The right to object on any ground at any time to Interrogatories or other discovery relating to information and/or information or the subject matter thereof.

13. Plaintiffs are providing information that was uncovered by means of

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

a reasonable investigation and that is the subject of legitimate discovery. The following responses are based upon information presently available to and located by Plaintiffs after a reasonable search. However, discovery is ongoing in this case, and Plaintiffs have not yet completed its investigation of the facts relating to this case or completed discovery, and have not completed preparation for trial. The responses given herein are without prejudice to Plaintiffs' right to supplement its responses, should additional information be subsequently discovered, and to rely upon any subsequently discovered evidence. Moreover, certain of these interrogatories are premature in that they seek contentions or other information that Plaintiffs cannot provide at this stage of the case. Finally, certain of these interrogatories are subject to specific objections and are therefore not the subject of legitimate discovery.

Without waiving the specific objections set forth below, and subject to the limitations and General Objections set forth above, Plaintiffs provide the following supplemental responses to Defendants' Second Set of Interrogatories (No. 11) as follows:

**THIRD SUPPLEMENTAL OBJECTIONS AND RESPONSES TO DEFENDANTS' SECOND SET OF INTERROGATORIES**

**INTERROGATORY NO. 11:**

With respect to the trade secrets requested to be identified in Interrogatory No. 1 in Defendants' First Set of Interrogatories to Plaintiffs (dated February 15, 2019), please identify separately for each such trade secret with as much precision as possible:

    a.    The documents, by bates number, comprising the trade secret. If the trade secret is contained within only a portion of a document, please identify the exact portion of the document that comprises the trade secret.

/ / /

## CONFIDENTIAL – ATTORNEYS' EYES ONLY

b.    Document(s), by bates number, demonstrating that the trade secret was disclosed to Defendants.

c.    If an oral disclosure of the trade secret to Defendants occurred, the identity of the disclosing person(s), the date disclosed to Defendants, and where the disclosure occurred.

d.    Separately for each asserted trade secret, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of Defendants. This identification shall be as specific as possible. Each product, device, and apparatus shall be identified by name or model number, if known. Each process, method or act shall be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the use of the claimed trade secret. Each portion of source code shall be identified by that exact portion of the source code, which when used, allegedly results in the use of the claimed trade secret.

e.    A chart identifying specifically where and how each trade secret is used by each Accused Instrumentality, including an identification of supporting documents and/or source code. If the trade secret misappropriation is contained within only a portion of a document and/or source code, please identify the exact portion of the document and/or source code that comprises the trade secret use.

## RESPONSE TO INTERROGATORY NO. 11:

Plaintiffs incorporate their General Statement and Objections. Plaintiffs object to this interrogatory to the extent it seeks information protected by the attorney-client privilege, work product doctrine, or any other applicable privilege or immunity. Plaintiffs further object that this interrogatory seeks expert opinion testimony. Plaintiffs further object to this interrogatory to the extent it seeks information that is not relevant to any party's claims or defenses nor proportional

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

to the needs of the case. Plaintiffs further object to this interrogatory as overly broad and unduly burdensome. Plaintiffs further object to this interrogatory as compound and contend that it should be counted as multiple interrogatories because it combines multiple requests for information into a single interrogatory. Plaintiffs further object to subparts (d) and (e) as vague and ambiguous to the extent they call for separate identification by "Accused Instrumentality 'of Defendants.'" Plaintiffs' allegations to date are based on the selection, development and marketing of the Oxxiom, including its software. Accordingly, Defendants response includes all "Accused Instrumentalities" of which Defendants are currently aware. Defendants' further object to this Interrogatory as overly broad and unduly burdensome to the extent it calls for "a chart identifying specifically where and how each trade secret is used by each Accused Instrumentality." Plaintiffs have not completed their investigation and discovery is ongoing. Further investigation, discovery, and analysis may yield additional information and documents, add new meaning to known information and documents, or establish entirely new factual or legal conclusions.

Subject to and without waiving the foregoing objections, Plaintiffs respond as follows:

Nearly all fifteen categories of trade secret information Defendants misappropriated from Masimo and/or Cercacor, as detailed in Plaintiffs' response to Interrogatory No. 1, comprise knowhow and/or techniques relating to various aspects of Plaintiffs' research and development processes and business strategies. While some of these trade secrets are reflected in documents maintained by Plaintiffs and shared with and/or accessed by Defendant Lamego during his employment at Masimo and Cercacor, responding to this request would likely require Plaintiffs to collect and produce essentially all of the technical and/or operational documents that Mr. Lamego had access to during his tenure. The burden associated with such a production and identification far

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

outweighs any potential benefit to be derived therefrom. Notwithstanding, Plaintiffs identify the following documents as representative of the trade secrets that Defendant Lamego had access to and/or was involved in the development of, while employed by Masimo and/or Cercacor: MASM0003474; MASM0003482; MASM0017197; MASM0017212; MASM0017221; MASM0017268; MASM0017273; MASM0017426; MASM0017442; MASM0017471; MASM0017480; MASM0017486; MASM0017489; MASM0017626; MASM0017767; MASM0017790; MASM0017826; MASM0017954; MASM0017958; MASM0018239; MASM0018264; MASM0018322; MASM0018370; MASM0041775; MASM0041777; MASM0041778; MASM0041782; MASM0041783; MASM0041787; MASM0041788; MASM0041789; MASM0041793; MASM0041797; MASM0041878; MASM0041883; MASM0018391; MASM0018394; MASM0018418; MASM0018480; MASM0018619; MASM0018910; MASM0018977; MASM0020052; MASM0020471; MASM0020597; MASM0046176; MASM0020673; MASM0020752; MASM0020762; MASM0003674; MASM0046656; MASM0046702; MASM0046788; MASM0046799; MASM0046812; MASM0047017; MASM0047025; MASM0047111; MASM0047176; MASM0006118; MASM0006369; MASM0006406; MASM0048887; MASM0049174; MASM0049205; MASM0049227; MASM0049236; MASM0006900; MASM0006908; MASM0006911; MASM0003685; MASM0049281; MASM0049313; MASM0049317; MASM0049327; MASM0049351; MASM0049355; MASM0049370; MASM0049372; MASM0049469; MASM0049527; MASM0049551; MASM0049584; MASM0049660; MASM0049682; MASM0049698; MASM0006915; MASM0006923; MASM0006929; MASM0006936; MASM0006941; MASM0006945; MASM0006955; MASM0007028; MASM0003707; MASM0003720; MASM0003721; MASM0007412;

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | | |
|---|---|---|---|
| 1 | MASM0007415; | MASM0008518; | MASM0008548; | MASM0026043; |
| 2 | MASM0026047; | MASM0026063; | MASM0026100; | MASM0049999; |
| 3 | MASM0050325; | MASM0026328; | MASM0014819; | MASM0015722; |
| 4 | MASM0028415; | MASM0028538; | MASM0050400; | MASM0050402; |
| 5 | MASM0050420; | MASM0050424; | MASM0050428; | MASM0050434; |
| 6 | MASM0050438; | MASM0050441; | MASM0050457; | MASM0050461; |
| 7 | MASM0050472; | MASM0050474; | MASM0050484; | MASM0050495; |
| 8 | MASM0050497; | MASM0050552; | MASM0050554; | MASM0050584; |
| 9 | MASM0050585; | MASM0016975; | MASM0028996; | MASM0029035; |
| 10 | MASM0029060; | MASM0055597; | MASM0055608; | MASM0055641; |
| 11 | MASM0055651; | MASM0056067; | MASM0056068; | MASM0056096; |
| 12 | MASM0056140; | MASM0056364; | MASM0056586; | MASM0056613; |
| 13 | MASM0056614; | MASM0029577; | MASM0029587; | MASM0029702; |
| 14 | MASM0029861; | MASM0029889; | MASM0029893; | MASM0029897; |
| 15 | MASM0029919; | MASM0029936; | MASM0029953; | MASM0029967; |
| 16 | MASM0029976; | MASM0030007; | MASM0030009; | MASM0030011; |
| 17 | MASM0030014; | MASM0033858; | MASM0034512; | MASM0034538; |
| 18 | MASM0050630; | MASM0050647; | MASM0050677; | MASM0050689; |
| 19 | MASM0050694; | MASM0051798; | MASM0051804; | MASM0051809; |
| 20 | MASM0051811; | MASM0051813; | MASM0051856; | MASM0051862; |
| 21 | MASM0054696; | MASM0054708; | MASM0054727; | MASM0054746; |
| 22 | MASM0054772; | MASM0054786; | MASM0054829; | MASM0055021; |
| 23 | MASM0055199; | MASM0055209; | MASM0055211; | MASM0055214; |
| 24 | MASM0055217; | MASM0055250; | MASM0055308; | MASM0055313; |
| 25 | MASM0055315; | MASM0055319; | MASM0055344; | MASM0055362; |
| 26 | MASM0055363; | MASM0055392; | MASM0055397; | MASM0055406; |
| 27 | MASM0055409; | MASM0055420; | MASM0055581; | MASM0055585; |
| 28 | MASM0056643; | MASM0004241; | MASM0056867; | MASM0057045; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1   MASM0057054;       MASM0057084;       MASM0057103;       MASM0057110;

2   MASM0057113;       MASM0057119;       MASM0057140;       MASM0057142;

3   MASM0057175;       MASM0005406;       MASM0057328;       MASM0057331;

4   MASM0057350;       MASM0057367;       MASM0057434;       MASM0057454;

5   MASM0057493;       MASM0072211;       MASM0057782;       MASM0057783;

6   MASM0057784; MASM0057785; MASM0057786; MASM0057787.

7          As discovery continues, Plaintiffs reserve their right to supplement this

8   response to identify additional documents that contain or otherwise reflect the

9   trade secrets that Defendant Lamego had access to while employed by Masimo

10  and/or Cercacor.

11         In addition, many of the trade secrets identified in Plaintiffs' response to

12  Interrogatory No. 1 are not contained in any particular documents, but instead

13  reflect the specific knowledge that Defendant Lamego gained or developed over

14  the course of his employment at Masimo and Cercacor.  For example, for much

15  of his tenure, Mr. Lamego shared an office with Mohammed Diab, one of the

16  founders of Masimo, who was tasked with teaching Mr. Lamego to become an

17  expert in every aspect of Masimo's technology.  Mr. Lamego had unfettered

18  access to Masimo's personnel, Masimo's information, and Masimo's documents,

19  including technical documents and computer code.  He attended brainstorming

20  sessions at the highest levels and design reviews.  He was comprehensively

21  exposed to Masimo's technology, as well as its business and marketing strategies

22  and plans that were currently being executed and plans that were executed well

23  into the future.

24         In view of the circumstances of Mr. Lamego's employment, it would be

25  virtually impossible to identify every piece of trade secret information that Mr.

26  Diab (or any other Masimo employee) shared with Mr. Lamego, much less the

27  specific dates or locations in which such disclosures occurred.  To the extent

28  Defendants seek an identification of specific individuals from whom Mr.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Lamego received trade secret information through oral disclosure, it would also be virtually impossible to identify all such persons due to Mr. Lamego's extensive and unfettered exposure to Plaintiffs' information and personnel. Indeed, as the Chief Technical Officer at Cercacor, he was responsible for all design, development, and marketing, and was responsible for maintaining procedures to protect all confidential and proprietary information. Mr. Lamego was exposed to trade secrets from virtually all levels of the Plaintiffs' organizations.

With respect to Defendants' request for an identification of Accused Instrumentalities, as Plaintiffs understand that term to be defined in Interrogatory No. 11, Plaintiffs identify True Wearables' Oxxiom device and its software. Plaintiffs specifically identify the source code produced at TRUE000228-260 as indicative of where and how the technical trade secrets are used by each Accused Instrumentality. Furthermore, Plaintiffs specifically identify Defedants' decision to develop the particular Oxxiom product, and to whom and how to position that product in the market as indicative of additional trade secrets used by Defendants. Plaintiffs are continuing to review Defendants' document production, including Defendants' source code, and will supplement their response to identify particular documents and/or code produced by Defendants that support Plaintiffs' contention that Defendants have used Plaintiffs' trade secret information in connection with the selection, design, development and marketing of the Oxxiom device.

Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or supplement this interrogatory response.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving the foregoing objections, based on information currently available, and subject to their right to supplement this

response as further information is revealed through discovery, Plaintiffs supplement their response as follows:

Nearly all twenty-two categories of trade secret information Defendants misappropriated from Masimo and/or Cercacor, as detailed in Plaintiffs' response to Interrogatory No. 1, comprise knowhow and/or techniques relating to various aspects of Plaintiffs' research and development processes and business strategies. While some of these trade secrets are reflected in documents maintained by Plaintiffs and shared with and/or accessed by Defendant Lamego during his employment at Masimo and Cercacor, responding to this request would likely require Plaintiffs to collect and produce essentially all of the technical and/or operational documents that Mr. Lamego had access to during his tenure. The burden associated with such a production and identification far outweighs any potential benefit to be derived therefrom. Notwithstanding, Plaintiffs identify the following documents as representative of the trade secrets that Defendant Lamego had access to and/or was involved in the development of, while employed by Masimo and/or Cercacor:

/ / /

/ / /

/ / /

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 1(a)- (c) | Masimo source code, including at least the following files:<br><br>and associated code.<br><br>Cercacor source code, including at least the following files:<br><br>and associated code.<br><br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58 | TRUE020004<br>lines 1299-1308; 1310-1328; 1332-1339;<br><br>TRUE020006<br>lines 1448-1491;<br><br>TRUE020005<br>lines 1374-1402;<br><br>TRUE020019<br>lines 520-521;<br><br>TRUE020026-27<br>lines 1031-149;<br><br>TRUE029718-19<br>TRUE028857-916<br>TRUE028953-99<br>TRUE029702, Figs 2-3.<br><br>TRUE028719-028720;<br>TRUE028739;<br>TRUE028764-028768;<br>TRUE028796;<br>TRUE028823-028825;<br>TRUE028848;<br>TRUE028875-028879;<br>TRUE028912;<br>TRUE028931-028932;<br>TRUE028946;<br>TRUE028971-028974;<br>TRUE028998;<br>TRUE029018-029021;<br>TRUE029073;<br>TRUE029140-029141;<br>TRUE029177; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| | | TRUE029238-029241;<br>TRUE029293;<br>TRUE029346-029347;<br>TRUE029378;<br>TRUE029424-029425;<br>TRUE029457;<br>TRUE029507-029510;<br>TRUE029566;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |
| 2(a)-(c) | Masimo source code, including at least the following files:<br><br><br><br>and associated code.<br><br>MASM0098279-91 | TRUE019976-77<br>lines 59-109; 112-142;<br><br>TRUE019978<br>lines 104; 126-128; 146-193;<br><br>TRUE020023-24<br>lines 830-877;<br><br>TRUE029366-029368;<br>TRUE029405-029407;<br>TRUE029446-029448;<br>TRUE029484-029486;<br>TRUE029540-029549;<br>TRUE029601-029606;<br>TRUE029649-029654;<br>TRUE029685-029688;<br>TRUE029730-029735;<br>TRUE029779-029782;<br>TRUE029827-029831;<br>TRUE029872-029875;<br>TRUE029921-029925;<br>TRUE029969-029972;<br>TRUE003062-163; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 3(a)-(d) | MASM0078366-67; MASM0078467-70; MASM0078471-74; MASM0078564-77; MASM0079489; MASM0079517; MASM0079518; MASM0080839-46; MASM0085155-60; MASM0133995-98; MASM0087220-21; MASM0089569 MASM0089648-53; MASM0090161-64; MASM0090168-73; MASM0090174-79; MASM0091380-81; MASM0091382; MASM0091658-65; MASM0092005-06; MASM0070250-53; MASM0092944-45; MASM0092946-48; MASM0092949-51 | TRUE000299-000301; TRUE000318-000320; TRUE000323; TRUE028460-028463; TRUE028469; TRUE028511-028513; TRUE028548-028554; TRUE028565-028566; TRUE028622-028626; TRUE028639-028642; TRUE028648; TRUE028691-028693; TRUE029044-029045; TRUE029099; TRUE029154-029155; TRUE029199; TRUE029264-029265; TRUE029319; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807; TRUE003062-163; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 4(a)-(b) | MASM0007191;<br>MASM0014827-52;<br>MASM0017221;<br>MASM0041778-81;<br>MASM0041793-96;<br>MASM0041797;<br>MASM0056369-94;<br>MASM0056522-25;<br>MASM0056526;<br>MASM0056527;<br>MASM0133102;<br>MASM0077704-05;<br>MASM0077928;<br>MASM0092004;<br>MASM0077969;<br>MASM0077971;<br>MASM0078026;<br>MASM0078031;<br>MASM0078032;<br>MASM0078033;<br>MASM0078035;<br>MASM0078036;<br>MASM0078037;<br>MASM0091953;<br>MASM0091988;<br>MASM0092004 | TRUE003062-163;<br>TRUE001146;<br>TRUE001147;<br>TRUE001149;<br>TRUE001160;<br>TRUE001179-86;<br>TRUE001194-1201;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 5(a)-(c) | MASM0105205;<br>MASM0076507,<br>MASM0098252;<br>MASM0079163-164;<br>MASM0087378-404;<br>MAMS0087404;<br>MASM0087407-433;<br>MASM0089648-653;<br>MASM0099973-74;<br>MASM0097338-46;<br>MASM0142341-0142391;<br>MASM0079538-46;<br>MASM0133612-21;<br>MASM0081372-80;<br>MASM0081382-90;<br>MASM0081404-12;<br>MASM0081954-62;<br>MASM0081963-72;<br>MASM0075604-12 | MASM0142460-0142477;<br>MASM0142550;<br>MASM0142552-0142553;<br>MASM0142554-0142555;<br>MASM0142558-0142574;<br>TRUE001219;<br>TRUE003062-163;<br>TRUE000273-331;<br>TRUE025812-833;<br>TRUE004496-500;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| 6 | | Cercacor source code, including at least the following files:<br><br>and associated code.<br><br>MASM0128656-0128665;<br>MASM0127741;<br>MASM0127772-0127906;<br>MASM0127772-<br>MASM0127906<br>(at MASM0127859-870);<br>MASM0127741-71;<br>MASM0140627-812;<br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58 | TRUE019995-96 lines 676-691;<br><br>TRUE020002 lines 1162-1188;<br><br>TRUE020003 lines 1224-1275;<br><br>TRUE029691-798;<br>TRUE029622-029648;<br>TRUE029670-029684;<br>TRUE029703-029729;<br>TRUE029764-029778;<br>TRUE029807-029827;<br>TRUE029857-029871;<br>TRUE029901-029921;<br>TRUE029954-029968;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 7 | Cercacor source code, including at least the following files:<br><br>_[redacted]_<br><br>and associated code.<br><br>MASM0128656-0128665;<br>MASM0127772-0127906;<br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58<br>MASM0142186-0142200;<br>MASM0142210-0142256;<br>MASM0142257-0142259;<br>MASM0142263-0142277;<br>MASM0142278-0142325;<br>MASM0142326-0142328 | TRUE019995-96<br>lines 676-691;<br><br>TRUE020006<br>lines 1478-1486;<br><br>TRUE045155<br>line 45;<br><br>TRUE045158<br>line 227;<br><br>TRUE029712-16;<br>TRUE 029764-78<br><br>TRUE029691-798;<br>TRUE029622-029648;<br>TRUE029670-029684;<br>TRUE029703-029729;<br>TRUE029764-029778;<br>TRUE029807-029827;<br>TRUE029857-029871;<br>TRUE029901-029921;<br>TRUE029954-029968;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| | 8 | Cercacor source code, including at least the following files: <br><br> and associated code. <br><br> MASM0128656-0128665; <br> MASM0127772-0127906; <br> MASM0140917; <br> MASM0140918; <br> MASM0114523-48; <br> MASM0085850-53; <br> MASM0086214-217; <br> MASM0060697-700; <br> MASM0062522-23; <br> MASM0062538-39; <br> MASM0063173; <br> MASM0069985-88; <br> MASM0070056-58; <br> MASM0142186-0142200; <br> MASM0142210-0142256; <br> MASM0142257-0142259; <br> MASM0142263-0142277; <br> MASM0142278-0142325; <br> MASM0142326-0142328 | TRUE019995-96 lines 676-691; <br><br> TRUE020006 lines 1478-1486; <br><br> TRUE045155 line 45; <br><br> TRUE045158 line 227; <br><br> TRUE029712-16; <br> TRUE 029764-78; <br> TRUE029691-798; <br> TRUE029622-029648; <br> TRUE029670-029684; <br> TRUE029703-029729; <br> TRUE029764-029778; <br> TRUE029807-029827; <br> TRUE029857-029871; <br> TRUE029901-029921; <br> TRUE029954-029968; <br> TRUE000273-331; <br> TRUE029610-29690; <br> TRUE028857-28918; <br> TRUE28953-28999; <br> TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|   | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 9 | Cercacor source code, including at least the following files:<br><br>█████████████████<br>█████████████████<br><br>and associated code.<br><br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58 | TRUE019991<br>line 776;<br><br>TRUE020003<br>lines 1254-1256;<br><br>TRUE020001<br> lines 1133-1159;<br><br>TRUE020004<br>lines 1312-1319<br><br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| 10 | | Cercacor source code, including at least the following files: <br><br> [redacted] <br><br> and associated code. <br><br> MASM0128656-0128665; <br> MASM0127772-0127906; <br> MASM0140917; <br> MASM0140918 | TRUE019995-96 lines 676-691; <br><br> TRUE020002 lines 1162-1188; <br><br> TRUE020003 lines 1224-1275; <br><br> TRUE045155 line 45; <br><br> TRUE045158 line 227; <br><br> TRUE029712-16; <br> TRUE 029764-78; <br> TRUE029691-798; <br> TRUE029622-029648; <br> TRUE029670-029684; <br> TRUE029703-029729; <br> TRUE029764-029778; <br> TRUE029807-029827; <br> TRUE029857-029871; <br> TRUE029901-029921; <br> TRUE029954-029968; <br> TRUE000273-331; <br> TRUE029610-29690; <br> TRUE028857-28918; <br> TRUE28953-28999; <br> TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 11 | Cercacor source code, including at least the following files: <br><br> █████████████ <br><br> and associated code. <br><br> MASM0127772-MASM0127906 (at MASM0127859-870); MASM0126888-0127089; MASM0127090-0127155; MASM0114198-0114210; MASM0142329, MASM0142330 | TRUE019995-96 lines 676-691; <br><br> TRUE020006 lines 1478-1486; <br><br> TRUE045155 line 45; <br><br> TRUE045158 line 227; <br><br> TRUE028719-028720; TRUE028739; TRUE028764-028768; TRUE028796; TRUE028823-028825; TRUE028848; TRUE028875-028879; TRUE028912; TRUE028931-028932; TRUE028946; TRUE028971-028974; TRUE028998; TRUE029691-798; TRUE029622-029648; TRUE029670-029684; TRUE029703-029729; TRUE029764-029778; TRUE029807-029827; TRUE029857-029871; TRUE029901-029921; TRUE029954-029968; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 12 | MASM0140398; MASM0077717-18; MASM0078949; MASM0141025-26, 49-51; MASM0141099-101; MASM141425-31 | TRUE020002 lines 1162-1188; <br><br> TRUE028705-028746; TRUE028747-028807; TRUE028808-028856; TRUE028857-028918; TRUE028919-028952; TRUE028953-028999; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 13 | MASM0077717-18; MASM0078949; MASM0141025-26, 49-51; MASM0141099-101; MASM141425-31; | TRUE019995-96 lines 676-691;<br><br>TRUE020002 lines 1162-1188;<br><br>TRUE020003 lines 1224-1275;<br><br>TRUE045155 line 45;<br><br>TRUE045158 line 227;<br><br>TRUE029712-16; TRUE 029764-78; TRUE028705-028746; TRUE028747-028807; TRUE028808-028856; TRUE028857-028918; TRUE028919-028952; TRUE028953-028999; TRUE029622-029648; TRUE029670-029684; TRUE029703-029729; TRUE029764-029778; TRUE029807-029827; TRUE029857-029871; TRUE029901-029921; TRUE029954-029968; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 14 | Cercacor source code, including at least the following files:<br><br><br><br>and associated code.<br><br>MASM0127772-MASM0127906 (at MASM0127859-870);<br>MASM0126888-0127089;<br>MASM0127090-0127155;<br>MASM0114198-0114210;<br>MASM0142329,<br>MASM0142330 | TRUE019995-96 lines 676-691;<br><br>TRUE020002 lines 1162-1188;<br><br>TRUE020003 lines 1224-1275;<br><br>TRUE045155 line 45;<br><br>TRUE045158 line 227;<br><br>TRUE029705-16;<br>TRUE029712-16;<br>TRUE 029764-78;<br>TRUE028705-028746;<br>TRUE028747-028807;<br>TRUE028808-028856;<br>TRUE028857-028918;<br>TRUE028919-028952;<br>TRUE028953-028999;<br>TRUE029622-029648;<br>TRUE029670-029684;<br>TRUE029703-029729;<br>TRUE029764-029778;<br>TRUE029807-029827;<br>TRUE029857-029871;<br>TRUE029901-029921;<br>TRUE029954-029968;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| 15 | | Cercacor source code, including at least the following folders:  and associated code. MASM0126888-0127089; MASM0127090-0127155; MASM0114198-0114210 | TRUE019995-96 lines 676-691; TRUE020002 lines 1162-1188; TRUE020003 lines 1224-1275; TRUE045155 line 45; TRUE045158 line 227; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 16 | MASM0113683;<br>MASM0113836-87;<br>MASM0134975-76;<br>MASM0126888-0127089;<br>MASM0127090-0127155;<br>MASM0114198-0114210;<br>MASM0113530;<br>MASM0113683;<br>MASM0113836-37;<br>MASM0134975-76;<br>MASM0134977-78;<br>MASM0134979-81;<br>MASM0134986-88;<br>MASM0134993-96;<br>MASM0134997;<br>MASM0135150-51;<br>MASM0135414;<br>MASM0113531-692;<br>MASM0113684-835;<br>MASM0134998-5149;<br>MASM0135415-563;<br>MASM0140918-210;<br>MASM0142186-0142200;<br>MASM0142210-0142256;<br>MASM0142257-0142259;<br>MASM0142263-0142277;<br>MASM0142278-0142325;<br>MASM0142326-0142328 | TRUE016662;<br>TRUE016663;<br>TRUE016665;<br>TRUE016666;<br>TRUE016667;<br>TRUE016668;<br>TRUE016671;<br>TRUE016674;<br>TRUE016676;<br>TRUE016677;<br>TRUE016678;<br>TRUE016679;<br>TRUE016680;<br>TRUE016681;<br>TRUE28808-56;<br>TRUE449-492;<br>TRUE28953-99;<br>TRUE332-389;<br>TRUE28747-807;<br>TRUE390-448;<br>TRUE28857-918 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 17 | TRUE016662;<br>TRUE016663;<br>TRUE016664;<br>TRUE016665;<br>TRUE016666;<br>TRUE016667;<br>TRUE016668;<br>TRUE016669;<br>TRUE016670;<br>TRUE016671;<br>TRUE016672-016673;<br>TRUE016674;<br>TRUE016675;<br>TRUE016676;<br>TRUE016677;<br>TRUE016678;<br>TRUE016679;<br>TRUE016680;<br>TRUE016681;<br>TRUE016682-016683;<br>TRUE016694-016696;<br>TRUE016697-016700;<br>TRUE016701-016704;<br>TRUE016705-016708;<br>TRUE016709-016711;<br>TRUE016712;<br>TRUE016713;<br>TRUE016714-016715 | TRUE016662;<br>TRUE016663;<br>TRUE016664;<br>TRUE016665;<br>TRUE016666;<br>TRUE016667;<br>TRUE016668;<br>TRUE016669;<br>TRUE016670;<br>TRUE016671;<br>TRUE016672-016673;<br>TRUE016674;<br>TRUE016675;<br>TRUE016676;<br>TRUE016677;<br>TRUE016678;<br>TRUE016679;<br>TRUE016680;<br>TRUE016681;<br>TRUE016682-016683;<br>TRUE016694-016696;<br>TRUE016697-016700;<br>TRUE016701-016704;<br>TRUE016705-016708;<br>TRUE016709-016711;<br>TRUE016712;<br>TRUE016713;<br>TRUE016714-016715 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 18 | Cercacor source code, including at least the following folders: <br><br> and associated code. | TRUE028705-028746; TRUE028747-028807; TRUE028808-028856; TRUE028857-028918; TRUE028919-028952; TRUE028953-028999; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |
| 19 | MASM0142331 | TRUE029045-029057; TRUE029100-029106; TRUE029157-029168; TRUE029211-029216; TRUE029265-029277; TRUE029320-029326; TRUE029742-029751; TRUE029785-029791; TRUE029836-029843; TRUE029878-029884; TRUE029930-029937; TRUE029975-029981; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| | 20(a)-(c) | Cercacor source code, including at least the following folders:  and associated code. TRUE016697-700; TRUE016701-704; MASM0070595-609; MASM0070610-24; MASM0079288-91; MASM0096593; MAM0084122-23; MASM0100283 MASM0087061-74; MASM0100676-82; MASM0089588-89; MASM0101406-07; MASM0101408-09; MASM0101410-11; | TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807; TRUE029217-326; TRUE029235 TRUE029490-609; TRUE029504; MASM0134406-08; MASM0129171; |

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| | MASM0104843-44; MASM0100284; MASM0114523-48; MASM0098627; MASM0078012-16; MASM0098846; MASM0080899-961; MASM0087378-404; MASM0100723, MASM0087407-433; MASM0101176, MASM0088925-27; MASM0101324, MASM0089068-110; MASM0105206-74; MASM0126548-616; MASM0135588-633; MASM0129800; MASM0097338-46; MASM0073190-202; MASM0073586-95; MASM0073596-605; MASM0073606-896; MASM0073897-4161; MASM0074190-202; MASM0074215-479; MASM0074480-770; MASM0074771-829; MASM0074836-5099; MASM0075105-180; MASM0075184-216; MASM0075217-239; MASM0075240-62; MASM0099160, 161-174; MASM0142392-0142419; MASM0142332; MASM0142333-0142339; MASM0142340 | |

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 21 | Cercacor source code, including at least the following folders: <br><br> ▮▮▮▮ <br><br> and associated code. | TRUE000273-331; <br> TRUE029610-29690; <br> TRUE028857-28918; <br> TRUE28953-28999; <br> TRUE028747-28807 |
| 22 | Masimo source code, including at least the following files: <br><br> ▮▮▮▮ <br><br> and associated code. <br><br> Cercacor source code, including at least the following files: <br><br> ▮▮▮▮ <br><br> and associated code. <br><br> MASM141623-63; <br> MASM142698-702; <br> MASM142737-752; <br> MASM142849-853 | TRUE029654-61; <br> TRUE029689-90; <br> TRUE029735-029742; <br> TRUE029783-029784; <br> TRUE029831-029836; <br> TRUE029876-029877; <br> TRUE029925-029930; <br> TRUE029973-029974 |

As discovery continues, Plaintiffs reserve their right to supplement this response to identify additional documents that contain or otherwise reflect the trade secrets that Defendant Lamego had access to while employed by Masimo and/or Cercacor.

/ / /

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



With respect to Defendants' request for an identification of Accused Instrumentalities, as Plaintiffs understand that term to be defined in Interrogatory No. 11, Plaintiffs identify True Wearables' Oxxiom device and its software.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

Plaintiffs specifically identify the source code produced at TRUE000228-260 as indicative of where and how the technical trade secrets are used by each Accused Instrumentality. Furthermore, Plaintiffs specifically identify Defendants' decision to develop the particular Oxxiom product, and to whom and how to position that product in the market as indicative of additional trade secrets used by Defendants. In addition, Lamego had intimate knowledge of the variety of vendors available in the marketplace and their various strengths and weaknesses based upon participation in those meetings with vendors and selection process at Plaintiffs. Plaintiffs are continuing to review Defendants' document production, including Defendants' source code, and will supplement their response to identify particular documents and/or code produced by Defendants that support Plaintiffs' contention that Defendants have used Plaintiffs' trade secret information in connection with the selection, design, development and marketing of the Oxxiom device.

**SECOND SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

Subject to and without waiving the foregoing objections, based on information currently available, and subject to their right to supplement this response as further information is revealed through discovery, Plaintiffs supplement their response as follows:

Nearly all twenty-two categories of trade secret information Defendants misappropriated from Masimo and/or Cercacor, as detailed in Plaintiffs' response to Interrogatory No. 1, comprise knowhow and/or techniques relating to various aspects of Plaintiffs' research and development processes and business strategies. While some of these trade secrets are reflected in documents maintained by Plaintiffs and shared with and/or accessed by Defendant Lamego during his employment at Masimo and Cercacor, responding to this request would likely require Plaintiffs to collect and produce essentially all of the technical and/or operational documents that Mr. Lamego had access to during his

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

tenure. The burden associated with such a production and identification far outweighs any potential benefit to be derived therefrom. Notwithstanding, Plaintiffs identify the following documents as representative of the trade secrets that Defendant Lamego had access to and/or was involved in the development of, while employed by Masimo and/or Cercacor:

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 1(a)- (c) | Masimo source code, including at least the following files:  and associated code.<br><br>Cercacor source code, including at least the following files:  and associated code.<br><br>MASM0140917;<br>MASM0140918-210;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23; | TRUE020004<br>lines 1299-1308; 1310-1328; 1332-1339;<br><br>TRUE020006<br>lines 1448-1491;<br><br>TRUE020005<br>lines 1374-1402;<br><br>TRUE020019<br>lines 520-521;<br><br>TRUE020026-27<br>lines 1031-149;<br><br>TRUE029718-19;<br>TRUE028857-918;<br>TRUE028953-99;<br>TRUE029702, Figs 2-3.<br>TRUE449-492;<br>TRUE332-389;<br>TRUE390-448;<br><br>TRUE028719-028720;<br>TRUE028739;<br>TRUE028764-028768;<br>TRUE028796;<br>TRUE028808-56; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| | MASM0062538-39; MASM0063173; MASM0069985-88; MASM0070056-58 | TRUE028823-028825; TRUE028848; TRUE028875-028879; TRUE028912; TRUE028931-028932; TRUE028946; TRUE028971-028974; TRUE028998; TRUE029018-029021; TRUE029073; TRUE029140-029141; TRUE029177; TRUE029238-029241; TRUE029293; TRUE029346-029347; TRUE029378; TRUE029424-029425; TRUE029457; TRUE029507-029510; TRUE029566; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| 2(a)-(c) | | Masimo source code, including at least the following files:<br><br>and associated code.<br><br>MASM0098279-91 | TRUE019976-77 lines 59-109; 112-142;<br><br>TRUE019978 lines 104; 126-128; 146-193;<br><br>TRUE020023-24 lines 830-877;<br><br>TRUE029366-029368;<br>TRUE029405-029407;<br>TRUE029446-029448;<br>TRUE029484-029486;<br>TRUE029540-029549;<br>TRUE029601-029606;<br>TRUE029649-029654;<br>TRUE029685-029688;<br>TRUE029730-029735;<br>TRUE029779-029782;<br>TRUE029827-029831;<br>TRUE029872-029875;<br>TRUE029921-029925;<br>TRUE029969-029972;<br>TRUE003062-163; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 3(a)-(d) | MASM0078366-67;<br>MASM0078467-70;<br>MASM0078471-74;<br>MASM0078564-77;<br>MASM0079489;<br>MASM0079517;<br>MASM0079518;<br>MASM0080839-46;<br>MASM0085155-60;<br>MASM0133995-98;<br>MASM0087220-21;<br>MASM0089569<br>MASM0089648-53;<br>MASM0090161-64;<br>MASM0090168-73;<br>MASM0090174-79;<br>MASM0091380-81;<br>MASM0091382;<br>MASM0091658-65;<br>MASM0092005-06;<br>MASM0070250-53;<br>MASM0092944-45;<br>MASM0092946-48;<br>MASM0092949-51 | TRUE000299-000301;<br>TRUE000318-000320;<br>TRUE000323;<br>TRUE028460-028463;<br>TRUE028469;<br>TRUE028511-028513;<br>TRUE028548-028554;<br>TRUE028565-028566;<br>TRUE028622-028626;<br>TRUE028639-028642;<br>TRUE028648;<br>TRUE028691-028693;<br>TRUE029044-029045;<br>TRUE029099;<br>TRUE029154-029155;<br>TRUE029199;<br>TRUE029264-029265;<br>TRUE029319;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807;<br>TRUE003062-163; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 4(a)-(b) | MASM0007191; MASM0014827-52; MASM0017221; MASM0041778-81; MASM0041793-96; MASM0041797; MASM0056369-94; MASM0056522-25; MASM0056526; MASM0056527; MASM0133102; MASM0077704-05; MASM0077928; MASM0092004; MASM0077969; MASM0077971; MASM0078026; MASM0078031; MASM0078032; MASM0078033; MASM0078035; MASM0078036; MASM0078037; MASM0091953; MASM0091988; MASM0092004 | TRUE003062-163; TRUE001146; TRUE001147; TRUE001149; TRUE001160; TRUE001179-86; TRUE001194-1201; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 5(a)-(c) | MASM0105205;<br>MASM0076507,<br>MASM0098252;<br>MASM0079163-164;<br>MASM0087378-404;<br>MAMS0087404;<br>MASM0087407-433;<br>MASM0089648-653;<br>MASM0099973-74;<br>MASM0097338-46;<br>MASM0142341-0142391;<br>MASM0079538-46;<br>MASM0133612-21;<br>MASM0081372-80;<br>MASM0081382-90;<br>MASM0081404-12;<br>MASM0081954-62;<br>MASM0081963-72;<br>MASM0075604-12 | MASM0142460-0142477;<br>MASM0142550;<br>MASM0142552-0142553;<br>MASM0142554-0142555;<br>MASM0142558-0142574;<br>TRUE001219;<br>TRUE003062-163;<br>TRUE000273-331;<br>TRUE025812-833;<br>TRUE004496-500;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| 6 | | Cercacor source code, including at least the following files:   and associated code. MASM0128656-0128665; MASM0127741; MASM0127772-0127906; MASM0127772-MASM0127906 (at MASM0127859-870); MASM0127741-71; MASM0140627-812; MASM0140917; MASM0140918; MASM0114523-48; MASM0085850-53; MASM0086214-217; MASM0060697-700; MASM0062522-23; MASM0062538-39; MASM0063173; MASM0069985-88; MASM0070056-58 | TRUE019995-96 lines 676-691; TRUE020002 lines 1162-1188; TRUE020003 lines 1224-1275; TRUE029691-798; TRUE029622-029648; TRUE029670-029684; TRUE029703-029729; TRUE029764-029778; TRUE029807-029827; TRUE029857-029871; TRUE029901-029921; TRUE029954-029968; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 7 | Cercacor source code, including at least the following files:<br><br>█████████████<br><br>and associated code.<br><br>MASM0128656-0128665;<br>MASM0127772-0127906;<br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58<br>MASM0142186-0142200;<br>MASM0142210-0142256;<br>MASM0142257-0142259;<br>MASM0142263-0142277;<br>MASM0142278-0142325;<br>MASM0142326-0142328 | TRUE019995-96<br>lines 676-691;<br><br>TRUE020006<br>lines 1478-1486;<br><br>TRUE045155<br>line 45;<br><br>TRUE045158<br>line 227;<br><br>TRUE029712-16;<br>TRUE 029764-78<br><br>TRUE029691-798;<br>TRUE029622-029648;<br>TRUE029670-029684;<br>TRUE029703-029729;<br>TRUE029764-029778;<br>TRUE029807-029827;<br>TRUE029857-029871;<br>TRUE029901-029921;<br>TRUE029954-029968;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 8 | Cercacor source code, including at least the following files:<br><br>█████████████████<br>████████████<br><br>and associated code.<br><br>MASM0128656-0128665;<br>MASM0127772-0127906;<br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58;<br>MASM0142186-0142200;<br>MASM0142210-0142256;<br>MASM0142257-0142259;<br>MASM0142263-0142277;<br>MASM0142278-0142325;<br>MASM0142326-0142328 | TRUE019995-96 lines 676-691;<br><br>TRUE020006 lines 1478-1486;<br><br>TRUE045155 line 45;<br><br>TRUE045158 line 227;<br><br>TRUE029712-16;<br>TRUE 029764-78;<br>TRUE029691-798;<br>TRUE029622-029648;<br>TRUE029670-029684;<br>TRUE029703-029729;<br>TRUE029764-029778;<br>TRUE029807-029827;<br>TRUE029857-029871;<br>TRUE029901-029921;<br>TRUE029954-029968;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| | 9 | Cercacor source code, including at least the following files:<br><br>█████████████████<br><br>and associated code.<br><br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58 | TRUE019991 line 776;<br><br>TRUE020003 lines 1254-1256;<br><br>TRUE020001 lines 1133-1159;<br><br>TRUE020004 lines 1312-1319<br><br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 10 | Cercacor source code, including at least the following files:<br><br>████████████<br><br>and associated code.<br><br>MASM0128656-0128665;<br>MASM0127772-0127906;<br>MASM0140917;<br>MASM0140918 | TRUE019995-96<br>lines 676-691;<br><br>TRUE020002<br>lines 1162-1188;<br><br>TRUE020003<br>lines 1224-1275;<br><br>TRUE045155<br>line 45;<br><br>TRUE045158<br>line 227;<br><br>TRUE029712-16;<br>TRUE 029764-78;<br>TRUE029691-798;<br>TRUE029622-029648;<br>TRUE029670-029684;<br>TRUE029703-029729;<br>TRUE029764-029778;<br>TRUE029807-029827;<br>TRUE029857-029871;<br>TRUE029901-029921;<br>TRUE029954-029968;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 11 | Cercacor source code, including at least the following files:  and associated code.<br><br>MASM0127772-MASM0127906 (at MASM0127859-870); MASM0126888-0127089; MASM0127090-0127155; MASM0114198-0114210; MASM0142329, MASM0142330 | TRUE019995-96 lines 676-691;<br><br>TRUE020006 lines 1478-1486;<br><br>TRUE045155 line 45;<br><br>TRUE045158 line 227;<br><br>TRUE028719-028720; TRUE028739; TRUE028764-028768; TRUE028796; TRUE028823-028825; TRUE028848; TRUE028875-028879; TRUE028912; TRUE028931-028932; TRUE028946; TRUE028971-028974; TRUE028998; TRUE029691-798; TRUE029622-029648; TRUE029670-029684; TRUE029703-029729; TRUE029764-029778; TRUE029807-029827; TRUE029857-029871; TRUE029901-029921; TRUE029954-029968; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 12 | MASM0140398; MASM0077717-18; MASM0078949; MASM0141025-26, 49-51; MASM0141099-101; MASM141425-31 | TRUE020002 lines 1162-1188;<br><br>TRUE028705-028746; TRUE028747-028807; TRUE028808-028856; TRUE028857-028918; TRUE028919-028952; TRUE028953-028999; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 13 | MASM0077717-18; MASM0078949; MASM0141025-26, 49-51; MASM0141099-101; MASM141425-31; | TRUE019995-96 lines 676-691; TRUE020002 lines 1162-1188; TRUE020003 lines 1224-1275; TRUE045155 line 45; TRUE045158 line 227; TRUE029712-16; TRUE 029764-78; TRUE028705-028746; TRUE028747-028807; TRUE028808-028856; TRUE028857-028918; TRUE028919-028952; TRUE028953-028999; TRUE029622-029648; TRUE029670-029684; TRUE029703-029729; TRUE029764-029778; TRUE029807-029827; TRUE029857-029871; TRUE029901-029921; TRUE029954-029968; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| | 14 | Cercacor source code, including at least the following files: | TRUE019995-96 lines 676-691; |
| | | | TRUE020002 lines 1162-1188; |
| | | | TRUE020003 lines 1224-1275; |
| | | | TRUE045155 line 45; |
| | | | TRUE045158 line 227; |
| | | | TRUE029705-16; TRUE029712-16; TRUE 029764-78; |
| | | and associated code. | TRUE028705-028746; TRUE028747-028807; |
| | | MASM0127772-MASM0127906 (at MASM0127859-870); MASM0126888-0127089; MASM0127090-0127155; MASM0114198-0114210; MASM0142329, MASM0142330 | TRUE028808-028856; TRUE028857-028918; TRUE028919-028952; TRUE028953-028999; TRUE029622-029648; TRUE029670-029684; TRUE029703-029729; TRUE029764-029778; TRUE029807-029827; TRUE029857-029871; TRUE029901-029921; TRUE029954-029968; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 15 | Cercacor source code, including at least the following folders:  and associated code. MASM0126888-0127089; MASM0127090-0127155; MASM0114198-0114210 | TRUE019995-96 lines 676-691; TRUE020002 lines 1162-1188; TRUE020003 lines 1224-1275; TRUE045155 line 45; TRUE045158 line 227; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 16 | Cercacor source code, including at least the following:<br><br><br><br>and associated code.<br><br>MASM0126888-0127089;<br>MASM0127090-0127155;<br>MASM0114198-0114210;<br>MASM0113530;<br>MASM0113683;<br>MASM0113836-37;<br>MASM0134975-76;<br>MASM0134977-78;<br>MASM0134979-81;<br>MASM0134986-88;<br>MASM0134993-96;<br>MASM0134997;<br>MASM0135150-51;<br>MASM0135414;<br>MASM0113531-692; | TRUE016662;<br>TRUE016663;<br>TRUE016665;<br>TRUE016666;<br>TRUE016667;<br>TRUE016668;<br>TRUE016671;<br>TRUE016674;<br>TRUE016676;<br>TRUE016677;<br>TRUE016678;<br>TRUE016679;<br>TRUE016680;<br>TRUE016681 |

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| | MASM0113684-835; MASM0134998-5149; MASM0135415-563; MASM0142186-0142200; MASM0142210-0142256; MASM0142257-0142259; MASM0142263-0142277; MASM0142278-0142325; MASM0142326-0142328 | |
| 17 | TRUE016662; TRUE016663; TRUE016664; TRUE016665; TRUE016666; TRUE016667; TRUE016668; TRUE016669; TRUE016670; TRUE016671; TRUE016672-016673; TRUE016674; TRUE016675; TRUE016676; TRUE016677; TRUE016678; TRUE016679; TRUE016680; TRUE016681; TRUE016682-016683; TRUE016694-016696; TRUE016697-016700; TRUE016701-016704; TRUE016705-016708; TRUE016709-016711; TRUE016712; TRUE016713; TRUE016714-016715 | TRUE016662; TRUE016663; TRUE016664; TRUE016665; TRUE016666; TRUE016667; TRUE016668; TRUE016669; TRUE016670; TRUE016671; TRUE016672-016673; TRUE016674; TRUE016675; TRUE016676; TRUE016677; TRUE016678; TRUE016679; TRUE016680; TRUE016681; TRUE016682-016683; TRUE016694-016696; TRUE016697-016700; TRUE016701-016704; TRUE016705-016708; TRUE016709-016711; TRUE016712; TRUE016713; TRUE016714-016715 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  | **Documents Representative of Trade Secret** | **Documents Representative of Trade Secret Use and Misappropriation** |
|---|---|---|
| 18 | Cercacor source code, including at least the following folders:<br><br>█████████<br><br>and associated code. | TRUE028705-028746;<br>TRUE028747-028807;<br>TRUE028808-028856;<br>TRUE028857-028918;<br>TRUE028919-028952;<br>TRUE028953-028999;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |
| 19 | MASM0142331 | TRUE029045-029057;<br>TRUE029100-029106;<br>TRUE029157-029168;<br>TRUE029211-029216;<br>TRUE029265-029277;<br>TRUE029320-029326;<br>TRUE029742-029751;<br>TRUE029785-029791;<br>TRUE029836-029843;<br>TRUE029878-029884;<br>TRUE029930-029937;<br>TRUE029975-029981;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |
| 20(a)-(c) | Cercacor source code, including at least the following folders:<br><br>█████████ | TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807;<br>TRUE029217-326;<br>TRUE029235<br>TRUE029490-609;<br>TRUE029504;<br>MASM0134406-08; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| | ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and associated code.<br><br>TRUE016697-700;<br>TRUE016701-704;<br>MASM0070595-609;<br>MASM0070610-24;<br>MASM0079288-91;<br>MASM0096593;<br>MAM0084122-23;<br>MASM0100283<br>MASM0087061-74;<br>MASM0100676-82;<br>MASM0089588-89;<br>MASM0101406-07;<br>MASM0101408-09;<br>MASM0101410-11;<br>MASM0104843-44;<br>MASM0100284;<br>MASM0114523-48;<br>MASM0098627;<br>MASM0078012-16;<br>MASM0098846;<br>MASM0080899-961;<br>MASM0087378-404;<br>MASM0100723,<br>MASM0087407-433; | MASM0129171; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| | MASM0101176, MASM0088925-27; MASM0101324, MASM0089068-110; MASM0105206-74; MASM0126548-616; MASM0135588-633; MASM0129800; MASM0097338-46; MASM0073190-202; MASM0073586-95; MASM0073596-605; MASM0073606-896; MASM0073897-4161; MASM0074190-202; MASM0074215-479; MASM0074480-770; MASM0074771-829; MASM0074836-5099; MASM0075105-180; MASM0075184-216; MASM0075217-239; MASM0075240-62; MASM0099160, 161-174; MASM0142392-0142419; MASM0142332; MASM0142333-0142339; MASM0142340 | |
| 21 | Cercacor source code, including at least the following folders:    and associated code. | TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| 22 | | Masimo source code, including at least the following files:<br><br><br><br>and associated code.<br><br>Cercacor source code, including at least the following files:<br><br>and associated code.<br><br>MASM141623-63;<br>MASM142698-702;<br>MASM142737-752;<br>MASM142849-853 | TRUE029654-61;<br>TRUE029689-90;<br>TRUE029735-029742;<br>TRUE029783-029784;<br>TRUE029831-029836;<br>TRUE029876-029877;<br>TRUE029925-029930;<br>TRUE029973-029974 |

As discovery continues, Plaintiffs reserve their right to supplement this response to identify additional documents that contain or otherwise reflect the trade secrets that Defendant Lamego had access to while employed by Masimo and/or Cercacor.

CONFIDENTIAL – ATTORNEYS' EYES ONLY



**CONFIDENTIAL – ATTORNEYS' EYES ONLY**



20  With respect to Defendants' request for an identification of Accused

21  Instrumentalities, as Plaintiffs understand that term to be defined in Interrogatory

22  No. 11, Plaintiffs identify True Wearables' Oxxiom device and its software.

23  Plaintiffs specifically identify the source code produced at TRUE000228-260 as

24  indicative of where and how the technical trade secrets are used by each Accused

25  Instrumentality.    Furthermore, Plaintiffs specifically identify Defendants'

26  decision to develop the particular Oxxiom product, and to whom and how to

27  position that product in the market as indicative of additional trade secrets used

28  by Defendants.  In addition, Lamego had intimate knowledge of the variety of

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  vendors available in the marketplace and their various strengths and weaknesses

2  based upon participation in those meetings with vendors and selection process at

3  Plaintiffs.  Plaintiffs are continuing to review Defendants' document production,

4  including Defendants' source code, and will supplement their response to

5  identify particular documents and/or code produced by Defendants that support

6  Plaintiffs' contention that Defendants have used Plaintiffs' trade secret

7  information in connection with the selection, design, development and marketing

8  of the Oxxiom device.

9       Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the

10  Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or

11  supplement this interrogatory response.

12  **THIRD SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11:**

13       Subject to and without waiving the foregoing objections, based on

14  information currently available, and subject to their right to supplement this

15  response as further information is revealed through discovery, Plaintiffs

16  supplement their response as follows:

17       Nearly all twenty-two categories of trade secret information Defendants

18  misappropriated from Masimo and/or Cercacor, as detailed in Plaintiffs'

19  response to Interrogatory No. 1, comprise knowhow and/or techniques relating to

20  various aspects of Plaintiffs' research and development processes and business

21  strategies.   While some of these trade secrets are reflected in documents

22  maintained by Plaintiffs and shared with and/or accessed by Defendant Lamego

23  during his employment at Masimo and Cercacor, responding to this request

24  would likely require Plaintiffs to collect and produce essentially all of the

25  technical and/or operational documents that Mr. Lamego had access to during his

26  tenure.   The burden associated with such a production and identification far

27  outweighs any potential benefit to be derived therefrom.   Notwithstanding,

28  Plaintiffs identify the following documents as representative of the trade secrets

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

that Defendant Lamego had access to and/or was involved in the development of, while employed by Masimo and/or Cercacor:

|  | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 1 | Masimo source code, including at least the following files:<br><br><br><br>and associated code.<br><br>Cercacor source code, including at least the following files:<br><br><br><br>and associated code.<br><br>MASM0140627-812 | TRUE019991<br>lines 463-497<br><br>TRUE020000<br>lines 1002-28<br><br>TRUE020004<br>lines 1299-1308; 1310-1328; 1332-1339;<br><br>TRUE020006<br>lines 1448-1491;<br><br>TRUE020005-06<br>lines 1369-1446;<br><br>TRUE020019<br>lines 520-521;<br><br>TRUE020026-27<br>lines 1031-149;<br><br>TRUE28719-20, TRUE028739; TRUE028764-028768, TRUE028796 (and corresponding portions of TRUE332-389); TRUE028823-028825, TRUE028848; TRUE028875-028879, TRUE028912 (and corresponding portions of TRUE390-448; TRUE028931-028932, TRUE028946; TRUE028971-028974, |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| | | TRUE028998 (and corresponding portions of TRUE449-492); TRUE029018-029021, TRUE029073; TRUE029140-029141, TRUE029177; TRUE029238-029241, TRUE029293; TRUE029346-029347, TRUE029378; TRUE029424-029425, TRUE029457; TRUE029507-029510, TRUE029566; TRUE029637-638 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 2(a)-(c) | Masimo source code, including at least the following files:<br><br><br><br>and associated code.<br><br>MASM0098279-91 at MASM0098290. | TRUE019976-77<br>lines 59-109; 112-142;<br><br>TRUE019978<br>lines 104; 126-128; 146-193;<br><br>TRUE020008-09<br>lines 1616-93;<br><br>TRUE2009-10<br>lines 1695-1768;<br><br>TRUE20010-11<br>lines 1773-1811;<br><br>TRUE020023-24<br>lines 830-877;<br><br>TRUE029366-029368,<br>TRUE029404-029407;<br>TRUE029446-029448,<br>TRUE029484-029486;<br>TRUE029540-029543,<br>TRUE029546-029549,<br>TRUE029601-029606;<br>TRUE029649-029652,<br>TRUE029685-029687;<br>TRUE029730-029735,<br>TRUE029779-029782,<br>TRUE029827-029831,<br>TRUE029872-029875;<br>TRUE029921-029925,<br>TRUE029969-029972;<br>TRUE003062-163 at 131, 135, 143, 146, 147; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 3 | MASM0078467-70; MASM0078471-74; MASM0078564-77; MASM0079489; MASM0079517; MASM0079518; MASM0080839-46; MASM0085155-60; MASM0133995-98; MASM0087220-21; MASM0089569 MASM0089648-53; MASM0090161-64; MASM0090168-73; MASM0090174-79; MASM0091380-81; MASM0091382; MASM0091658-65; MASM0092944-45; MASM0092946-48; MASM0092949-51 | TRUE000299-000301; TRUE000318-000320; TRUE000323; TRUE028460-028463; TRUE028469; TRUE028511-028513; TRUE028548-028554; TRUE028565-028566; TRUE028622-028626; TRUE028639-028642; TRUE028648; TRUE028691-028693; TRUE029044-029045; TRUE029099; TRUE029154-029155; TRUE029199; TRUE029264-029265; TRUE029319; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807; TRUE003062-163; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 4 | MASM0007191; MASM0014827-52 at 38-39, 43-45; MASM0017221; MASM0041778-81; MASM0041793-96; MASM0041797; MASM0056369-94; MASM0056522-25; MASM0056526; MASM0056527; MASM0133102; MASM0077704-05; MASM0077928; MASM0092004; MASM0077969; MASM0077971; MASM0078026; MASM0078031; MASM0078032; MASM0078033; MASM0078035; MASM0078036; MASM0078037; MASM0091953; MASM0091988; MASM0092004 | TRUE003062-163; TRUE001146; TRUE001147; TRUE001149; TRUE001160; TRUE001179-86; TRUE001194-1201; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|          | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|----------|------------------------------------------|------------------------------------------------------------------|
| 5(a)-(b) | MASM0105205; MASM0076507, MASM0098252; MASM0079163-164; MAMS0087404; MASM0087433; MASM0089648-653; MASM0099973-74; MASM0097338-46; MASM0142341-0142391; MASM0079538-46; MASM0133612-21; MASM0081372-80; MASM0081382-90; MASM0081404-12; MASM0081954-62; MASM0081963-72; MASM0075604-12 | MASM0142460-0142477; MASM0142550; MASM0142552-0142553; MASM0142554-0142555; MASM0142558-0142574; TRUE001219; TRUE003062-163; TRUE000273-331; TRUE025812-833; TRUE004496-500; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|
| 6 | Cercacor source code, including at least the following files:<br><br>█████████████████<br>████████████<br><br>and associated code.<br><br>MASM0128656-0128665;<br>MASM0127772-0127906;<br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58;<br>MASM0140627-812;<br>MASM0142186-0142200;<br>MASM0142210-0142256;<br>MASM0142257-0142259;<br>MASM0142263-0142277;<br>MASM0142278-0142325;<br>MASM0142326-0142328 | TRUE019995-96 lines 676-691;<br><br>TRUE020006 lines 1478-1486;<br><br>TRUE045155 line 47;<br><br>TRUE045158 line 227;<br><br>TRUE029712-16;<br>TRUE 029764-78;<br>TRUE029691-798;<br>TRUE029622-029648;<br>TRUE029670-029684;<br>TRUE029703-029729;<br>TRUE029764-029778;<br>TRUE029807-029827;<br>TRUE029857-029871;<br>TRUE029901-029921;<br>TRUE029954-029968;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | Documents Representative of Trade Secret | Documents Representative of Trade Secret Use and Misappropriation |
|---|---|---|---|
| | 7 | Cercacor source code, including at least the following files:<br><br><br><br>and associated code.<br><br><br><br><br><br>MASM0140917;<br>MASM0140918;<br>MASM0114523-48;<br>MASM0085850-53;<br>MASM0086214-217;<br>MASM0060697-700;<br>MASM0062522-23;<br>MASM0062538-39;<br>MASM0063173;<br>MASM0069985-88;<br>MASM0070056-58 | TRUE019991<br>line 476;<br><br>TRUE020003<br>lines 1254-1256;<br><br>TRUE020001-02<br> lines 1133-1159;<br><br>TRUE020004<br>lines 1310-1330<br><br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| 8 | Cercacor source code, including at least the following files: | TRUE019995-96 lines 676-691; |
|---|---|---|
|  | [redacted] | TRUE020002 lines 1162-1188; |
|  | and associated code. | TRUE020003 lines 1224-1275; |
|  | [redacted] | TRUE020006 lines 1478-1486; |
|  |  | TRUE045155 line 47; |
|  |  | TRUE045158 line 227; |
|  |  | TRUE029712-16; TRUE 029764-78; TRUE029691-798; TRUE029622-029648; TRUE029670-029684; |
|  | and associated code. | TRUE029703-029729; TRUE029764-029778; |
|  | MASM0127772-MASM0127906 (at MASM0127859-870); MASM0126888-0127089; MASM0127090-0127155; MASM0114198-0114210; MASM0142329, MASM0142330; MASM0128656-0128665; MASM0127772-0127906; MASM0140917; MASM0140918 | TRUE029807-029827; TRUE029857-029871; TRUE029901-029921; TRUE029954-029968; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 TRUE028719-028720; TRUE028739; TRUE028764-028768; TRUE028796; TRUE028823-028825; TRUE028848; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

|  |  |  |
|---|---|---|
|  |  | TRUE028875-028879; TRUE028912 TRUE028931-028932; TRUE028946; TRUE028971-028974; TRUE028998; TRUE029691-798; TRUE029622-029648; TRUE029670-029684; TRUE029703-029729; TRUE029764-029778; TRUE029807-029827; TRUE029857-029871; TRUE029901-029921; TRUE029954-029968; TRUE000273-331; TRUE029610-29690; TRUE028857-28918; TRUE28953-28999; TRUE028747-28807 |
| 9 | Masimo source code, including at least the following files:  and associated code. Cercacor source code, including at least the following files:  | TRUE019995-96 lines 676-691; TRUE020002 lines 1162-1188; TRUE020003 lines 1224-1275; TRUE020003-05 lines 1277-1367 TRUE020005-06 lines 1369-1446 TRUE029691-798; TRUE029622-029648; TRUE029670-029684; TRUE029703-029729; TRUE029764-029778; TRUE029807-029827; |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| | | | |
|---|---|---|---|
| | ▉▉▉▉▉▉▉▉▉▉▉ | TRUE029857-029871; | |
| | ▉▉▉▉▉ | TRUE029901-029921; | |
| | | TRUE029954-029968; | |
| | and associated code. | TRUE000273-331; | |
| | | TRUE029610-29690; | |
| | MASM0128656-0128665; | TRUE028857-28918; | |
| | MASM0127741; | TRUE28953-28999; | |
| | MASM0127772-0127906; | TRUE028747-28807 | |
| | MASM0127772- | | |
| | MASM0127906 | | |
| | (at MASM0127859-870); | | |
| | MASM0127741-71; | | |
| | MASM0140627-812; | | |
| | MASM0140917; | | |
| | MASM0140918; | | |
| | MASM0114523-48; | | |
| | MASM0085850-53; | | |
| | MASM0086214-217; | | |
| | MASM0060697-700; | | |
| | MASM0062522-23; | | |
| | MASM0062538-39; | | |
| | MASM0063173; | | |
| | MASM0069985-88; | | |
| | MASM0070056-58 | | |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| 10 | Masimo source code, including at least the following files: | TRUE019991 lines 463-497 |
|---|---|---|
| |  | TRUE019995-96 lines 676-691; |
| | | TRUE020000 lines 1002-28 |
| | | TRUE020002 lines 1162-1188; |
| | and associated code. | TRUE020003-05 lines 1277-1367 |
| | Cercacor source code, including at least the following files: | TRUE020006 lines 1448-1491; |
| |  | TRUE020005-06 lines 1369-1446; |
| | and associated code. | TRUE020019 lines 520-521; |
| | MASM0127772-MASM0127906 (at MASM0127859-870); MASM0126888-0127089; MASM0127090-0127155; MASM0114198-0114210; MASM0142329, MASM0142330; MASM0128656-0128665; MASM0127772-0127906; MASM0140917; MASM0140918; MASM0140627-812; | TRUE020026-27 lines 1031-149;<br><br>TRUE045155 line 47;<br><br>TRUE045158 line 227;<br><br>TRUE28719-20, TRUE028739; TRUE028764-028768, TRUE028796 (and corresponding portions of TRUE332-389); TRUE028823-028825, TRUE028848; |

| | | TRUE028875-028879, TRUE028912 (and corresponding portions of TRUE390-448; TRUE028931-028932, TRUE028946; TRUE028971-028974, TRUE028998 (and corresponding portions of TRUE449-492); TRUE029018-029021, TRUE029073; TRUE029140-029141, TRUE029177; TRUE029238-029241, TRUE029293; TRUE029346-029347, TRUE029378; TRUE029424-029425, TRUE029457; TRUE029507-029510, TRUE029566; TRUE029637-638 |
|---|---|---|

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| 11 | MASM0140398;<br>MASM0077717-18;<br>MASM0078949;<br>MASM0141025-26, 49-51;<br>MASM0141099-101;<br>MASM141425-31; | TRUE019995-96<br>lines 676-691;<br><br>TRUE020002<br>lines 1162-1188;<br><br>TRUE020003<br>lines 1224-1275;<br><br>TRUE045155<br>line 47;<br><br>TRUE045158<br>line 227;<br><br>TRUE020001<br>lines 1099-1113;<br><br><br>TRUE029712-16;<br>TRUE 029764-78;<br>TRUE028705-028746;<br>TRUE028747-028807;<br>TRUE028808-028856;<br>TRUE028857-028918;<br>TRUE028919-028952;<br>TRUE028953-028999;<br>TRUE029622-029648;<br>TRUE029670-029684;<br>TRUE029703-029729;<br>TRUE029764-029778;<br>TRUE029807-029827;<br>TRUE029857-029871;<br>TRUE029901-029921;<br>TRUE029954-029968;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |
|---|---|---|

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| 12 | Cercacor source code, including at least the following:<br><br><br><br>and associated code.<br><br>MASM0126888-0127089;<br>MASM0127090-0127155;<br>MASM0114198-0114210;<br>MASM0113530;<br>MASM0113683;<br>MASM0113836-37;<br>MASM0134975-76;<br>MASM0134977-78;<br>MASM0134979-81;<br>MASM0134986-88;<br>MASM0134993-96;<br>MASM0134997;<br>MASM0135150-51;<br>MASM0135414;<br>MASM0113531-692;<br>MASM0113684-835;<br>MASM0134998-5149; | TRUE016662;<br>TRUE016663;<br>TRUE016665;<br>TRUE016666;<br>TRUE016667;<br>TRUE016668;<br>TRUE016671;<br>TRUE016674;<br>TRUE016676;<br>TRUE016677;<br>TRUE016678;<br>TRUE016679;<br>TRUE016680;<br>TRUE016681; and<br>TRUE28808-56 at TRUE28824-35, 48-51; and corresponding sections of the following documents:<br>TRUE449-492;<br>TRUE28953-99;<br>TRUE332-389;<br>TRUE28747-807;<br>TRUE390-448;<br>TRUE28857-918. |

| | | MASM0135415-563;<br>MASM0142186-0142200;<br>MASM0142210-0142256;<br>MASM0142257-0142259;<br>MASM0142263-0142277;<br>MASM0142278-0142325;<br>MASM0142326-0142328;<br>MASM0142967-3105;<br>MASM0143106-281 | |
|---|---|---|---|
| | 13 | TRUE016662;<br>TRUE016663;<br>TRUE016664;<br>TRUE016665;<br>TRUE016666;<br>TRUE016667;<br>TRUE016668;<br>TRUE016669;<br>TRUE016670;<br>TRUE016671;<br>TRUE016672-016673;<br>TRUE016674;<br>TRUE016675;<br>TRUE016676;<br>TRUE016677;<br>TRUE016678;<br>TRUE016679;<br>TRUE016680;<br>TRUE016681;<br>TRUE016682-016683;<br>TRUE016694-016696;<br>TRUE016697-016700;<br>TRUE016701-016704;<br>TRUE016705-016708;<br>TRUE016709-016711;<br>TRUE016712;<br>TRUE016713;<br>TRUE016714-016715 | TRUE016662;<br>TRUE016663;<br>TRUE016664;<br>TRUE016665;<br>TRUE016666;<br>TRUE016667;<br>TRUE016668;<br>TRUE016669;<br>TRUE016670;<br>TRUE016671;<br>TRUE016672-016673;<br>TRUE016674;<br>TRUE016675;<br>TRUE016676;<br>TRUE016677;<br>TRUE016678;<br>TRUE016679;<br>TRUE016680;<br>TRUE016681;<br>TRUE016682-016683;<br>TRUE016694-016696;<br>TRUE016697-016700;<br>TRUE016701-016704;<br>TRUE016705-016708;<br>TRUE016709-016711;<br>TRUE016712;<br>TRUE016713;<br>TRUE016714-016715 |

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| 14 | Masimo data files, including at least the following located on the source code review computer:<br><br>████████<br><br>and related files.<br><br>MASM0142331;<br>MASM0140627-812;<br>MASM0143282-392 | TRUE029045-029057;<br>TRUE029100-029106;<br>TRUE029157-029168;<br>TRUE029211-029216;<br>TRUE029265-029277;<br>TRUE029320-029326;<br>TRUE029742-029751;<br>TRUE029785-029791 (TRUE29789 at FIG 22); TRUE029836-029843;<br>TRUE029878-029884;<br>TRUE029930-029937;<br>TRUE029975-029981;<br>TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807 |
|---|---|---|

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

| 15 | Cercacor source code, including at least the following folders: | TRUE000273-331;<br>TRUE029610-29690;<br>TRUE028857-28918;<br>TRUE28953-28999;<br>TRUE028747-28807;<br>TRUE029217-326;<br>TRUE029235<br>TRUE029490-609;<br>TRUE029504;<br>MASM0134406-08;<br>MASM0129171; |
|---|---|---|
| | and associated code.<br><br>TRUE016697-700;<br>TRUE016701-704;<br>MASM0070595-609;<br>MASM0070610-24;<br>MASM0079288-91;<br>MASM0096593;<br>MAM0084122-23;<br>MASM0100283<br>MASM0087061-74;<br>MASM0100676-82;<br>MASM0089588-89;<br>MASM0101406-07;<br>MASM0101408-09;<br>MASM0101410-11;<br>MASM0104843-44;<br>MASM0100284; | |

| | | |
|---|---|---|
| | MASM0114523-48; | |
| | MASM0098627; | |
| | MASM0078012-16; | |
| | MASM0098846; | |
| | MASM0080899-961; | |
| | MASM0087378-404; | |
| | MASM0100723, | |
| | MASM0087407-433; | |
| | MASM0101176, | |
| | MASM0088925-27; | |
| | MASM0101324, | |
| | MASM0089068-110; | |
| | MASM0105206-74; | |
| | MASM0126548-616; | |
| | MASM0135588-633; | |
| | MASM0129800; | |
| | MASM0097338-46; | |
| | MASM0073190-202; | |
| | MASM0073586-95; | |
| | MASM0073596-605; | |
| | MASM0073606-896; | |
| | MASM0073897-4161; | |
| | MASM0074190-202; | |
| | MASM0074215-479; | |
| | MASM0074480-770; | |
| | MASM0074771-829; | |
| | MASM0074836-5099; | |
| | MASM0075105-180; | |
| | MASM0075184-216; | |
| | MASM0075217-239; | |
| | MASM0075240-62; | |
| | MASM0099160, 161-174; | |
| | MASM0142392-0142419; | |
| | MASM0142332; | |
| | MASM0142333-0142339; | |
| | MASM0142340 | |

As discovery continues, Plaintiffs reserve their right to supplement this response to identify additional documents that contain or otherwise reflect the

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1  trade secrets that Defendant Lamego had access to while employed by Masimo

2  and/or Cercacor.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27     With respect to Defendants' request for an identification of Accused

28 Instrumentalities, as Plaintiffs understand that term to be defined in Interrogatory

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

No. 11, Plaintiffs identify True Wearables' Oxxiom device and its software. Plaintiffs specifically identify the source code produced at TRUE000228-260 as indicative of where and how the technical trade secrets are used by each Accused Instrumentality. Furthermore, Plaintiffs specifically identify Defendants' decision to develop the particular Oxxiom product, and to whom and how to position that product in the market as indicative of additional trade secrets used by Defendants. In addition, Lamego was exposed to the variety of vendors available in the marketplace and their various strengths and weaknesses based upon participation in those meetings with vendors and selection process at Plaintiffs. Plaintiffs are continuing to review Defendants' document production, including Defendants' source code, and will supplement their response to identify particular documents and/or code produced by Defendants that support Plaintiffs' contention that Defendants have used Plaintiffs' trade secret information in connection with the selection, design, development and marketing of the Oxxiom device.

Discovery in this matter is ongoing, and pursuant to Rule 26(e)(1) of the Federal Rules of Civil Procedure, Plaintiffs reserve the right to amend and/or supplement this interrogatory response.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: October 30, 2020          By: */s/ Brian C. Claassen*
                                      Joseph R. Re
                                      Stephen C. Jensen
                                      Irfan A. Lateef
                                      Brian C. Claassen

                                      Attorneys for Plaintiffs,
                                      Masimo Corporation and
                                      Cercacor Laboratories, Inc.

**CONFIDENTIAL – ATTORNEYS' EYES ONLY**

## PROOF OF SERVICE

1

2       I am a citizen of the United States of America and I am employed in Irvine,

3  California.  I am over the age of 18 and not a party to the within action.  My

4  business address is 2040 Main Street, Fourteenth Floor, Irvine, California 92614.

5  I am employed in the office of a member of the bar of this Court at whose

6  direction the service was made.

7       On October 30, 2020 I served the within **PLAINTIFFS MASIMO**

8  **CORPORATION AND CERCACOR LABORATORIES, INC.'S THIRD**

9  **SUPPLEMENTAL RESPONSES TO DEFENDANTS' SECOND SET OF**

10 **INTERROGATORIES (NO. 11)** on the parties or their counsel shown below as

11 follows:

12 **VIA EMAIL**:          Amanda R. Washton
                          a.washton@conklelaw.com
13                        Sherron Wiggins
                          s.wiggins@conklelaw.com
14                        **CONKLE, KREMER & ENGEL**
                          **Professional Law Corporation**
15                        3130 Wilshire Boulevard, Suite 500
                          Santa Monica, California  90403-2351
16                        Phone: (310) 998-9100
                          Facsimile: (310) 998-9109
17 **VIA EMAIL**:

18                        Peter A. Gergely
                          PGergely@merchantgould.com
19                        Ryan J. Fletcher
                          RFletcher@merchantgould.com
20                        Zach D. Kachmer
                          ZKachmer@merchantgould.com
21                        **MERCHANT & GOULD, P.C.**
                          1801 California St., Suite 3300
22                        Denver, CO 80202
                          Telephone: (303) 357-1651
                          Facsimile: (612) 332-9081
23 **VIA EMAIL:**

24                        Paige S. Stradley
                          PStradley@merchantgould.com
25                        **MERCHANT & GOULD, P.C.**
                          3200 IDS Center
26                        80 South 8th Street
                          Minneapolis, MN 55402
27                        Telephone: (612) 332-5300
                          Facsimile: (612) 332-9081
                          Attorneys for Defendants,
28                        True Wearables, Inc. and Marcelo Lamego

CONFIDENTIAL – ATTORNEYS' EYES ONLY

I declare, under penalty of perjury, that the foregoing is true and correct. Executed on October 30, 2020 at Irvine, California.

*/s/ Claudia Watson*
Claudia Watson

Exhibit C

```
 1

 2

 3

 4              UNITED STATES DISTRICT COURT

 5             CENTRAL DISTRICT OF CALIFORNIA

 6                   SOUTHERN DIVISION

 7                      - - -

 8      THE HONORABLE JAMES V. SELNA, JUDGE PRESIDING

 9
         MASIMO CORPORATION, et al.,   )
10                        Plaintiffs, )
            vs.                        )
11                                     )  SACV-18-02001-JVS
         TRUE WEARABLES, INC., et al., )
12                        Defendants. )
         -----------------------------)
13

14

15       REPORTER'S TRANSCRIPT OF PROCEEDINGS

16             Santa Ana, California

17             February 25, 2019

18

19                     SHARON A. SEFFENS, RPR
                       United States Courthouse
20                     411 West 4th Street, Suite 1-1053
                       Santa Ana, CA  92701
21                     (714) 543-0870

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit C
Page 1 of 8

2

```
1    APPEARANCES OF COUNSEL:

2    For the Plaintiffs:

3    STEPHEN C. JENSEN
     BRIAN C. CLAASSEN
4    KNOBBE MARTENS
     2040 Main Street, 14th Floor
5    Irvine, CA  92614
     (949) 760-0404
6

7    For the Defendants:

8    AMANDA R. WASHTON
     CONKLE KREMER & ENGEL
9    3130 Wilshire Boulevard, Suite 500
     Santa Monica, CA  90403-2351
10   (310) 998-9100

11   PETER GERGELY
     MERCHANT & GOULD
12   767 Third Avenue, 23rd Floor
     New York, NY  10017
13   (303) 357-1646

14

15

16

17

18

19

20

21

22

23

24

25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit C
Page 2 of 8

3

| | |
|---|---|
| | 1 |

1    SANTA ANA, CALIFORNIA; MONDAY, FEBRUARY 25, 2019; 11:39 A.M.

11:39   2         THE CLERK:  Item No. 11, SACV-18-02001-JVS, Masimo

11:39   3    Corporation, et al., versus True Wearables, Inc., et al.

11:39   4         Counsel, please state your appearances for the

11:39   5    record.

11:39   6         MR. JENSEN:  Good morning, Your Honor.  Steve

11:39   7    Jensen on behalf of plaintiff Masimo, and with me is Brian

11:39   8    Claassen.

11:39   9         MS. WASHINGTON:  Good morning, Your Honor.  Amanda

11:39  10    Washington on behalf of defendant True Wearables, Inc.

11:39  11         MR. GERGELY:  Good morning, Your Honor.  Peter

11:39  12    Gergely on behalf of defendants appearing pro hac vice.

11:39  13         THE COURT:  Good morning.

11:39  14         Thank you for your report.  The timetable I think

11:39  15    for this case that you lay out is appropriate.  So the

11:39  16    matter will proceed to trial on August 18, 2020, at 8:30

11:40  17    a.m.  We will do the final pretrial conference August 3,

11:40  18    2020, at 11:00 a.m.  Last to lodge the pretrial papers will

11:40  19    be July 27, 2020.  Last to hand-serve motions in-limine

11:40  20    July 6, 2020.  Last for hearing regular motions June 29,

11:40  21    2020.  Last for hand-serving regular motions June 1, 2020.

11:40  22    As far as expert discovery goes, initial disclosures

11:40  23    January 20, 2020.  Rebuttal disclosures February 24, 2020.

11:40  24    Expert discovery cutoff April 27, 2020.  Nonexpert discovery

11:41  25    cutoff is going to be November 4, 2019.

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit C
Page 3 of 8

4

11:41   1            I rule within a day or two on the Markman motion,

11:41   2    so there is no reason to not have a date certain.  If you

11:41   3    need relief from that date as things turn out, you're free

11:41   4    to apply for it.

11:41   5            With regard to the other patent specific dates,

11:41   6    I'm going to adopt without reciting your proposed schedule.

11:41   7    We will do the Markman hearing on September 30, 2019, at

11:41   8    3:00 p.m.  I do those following my regular law and motions

11:41   9    calendar.

11:41   10           I like to do a tutorial.  It's most helpful to me

11:42   11   if I do it between the opening briefs and the responding

11:42   12   briefs.  I do them on Saturdays.  I set aside 8:00 to 12:00.

11:42   13   They usually don't take that amount of time, but I just set

11:42   14   that aside.  So why don't you check your calendars and see

11:42   15   if September 7 is convenient.  If it's not, why don't you

11:42   16   come back to me with an alternate date.

11:42   17           The purpose of the tutorial as to educate me and

11:42   18   my clerks.  I'm interested in the technology.  I'm not

11:42   19   interested in claim construction per se or infringement or

11:42   20   invalidity.  Some prior art is usually needed to discuss the

11:42   21   inventions in question.

11:42   22           You indicate that you want to mediate with private

11:42   23   ADR for your settlement procedure, and you indicate that you

11:42   24   can get that done by June 19, 2020.  Whenever you hold your

11:43   25   mediation, would you put in a joint report within seven days

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit C
Page 4 of 8

```
11:43   1    letting me know generally what progress you were able to
11:43   2    make.  If you have not resolved it, would you let me know if
11:43   3    you think the Court could be of any assistance.
11:43   4              Finally, last to amend the pleadings and add
11:43   5    parties June 15, 2019.
11:43   6              Now, with regard to the specifics you have
11:43   7    discussed with regard to discovery, 50 RFAs is fine.  You
11:43   8    propose 70 hours in total for depositions and one day per
11:43   9    expert per report.  That's fine.
11:43  10              Let's discuss how we're going to get a clear
11:43  11    definition of what the trade secrets are in this case.
11:43  12              MR. JENSEN:  Yes, Your Honor.  As you saw in the
11:43  13    papers, the defendants have proposed that there be something
11:44  14    similar to 2019.  We cited a case from down the hall here
11:44  15    about why that violates Rule 26.  We would propose that it
11:44  16    follow the standard process in federal court.  You know,
11:44  17    they will serve some interrogatories.  We will answer those.
11:44  18    That would be the normal process that we would follow.
11:44  19              THE COURT:  We have got to get that issue out of
11:44  20    the way.
11:44  21              Can you serve a set of interrogatories directed to
11:44  22    trade secrets within 15 days?
11:44  23              MR. GERGELY:  Your Honor, we did serve those
11:44  24    interrogatories, and it may moot the issue if they're
11:44  25    properly answered.  The only reason I asked for a disclosure
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit C
Page 5 of 8

6

```
11:44   1   under the Northern District rules is because it would force
11:44   2   the plaintiff to comply with them.  If we can get some
11:44   3   proper answers to those interrogatories, I think the issue
11:44   4   is moot.
11:44   5            THE COURT:  Okay.  Well, let's see if the proper
11:44   6   response to the interrogatories doesn't resolve the issue.
11:45   7            MR. JENSEN:  Okay.  And there is no stay of
11:45   8   overall discovery on that until --
11:45   9            THE COURT:  No.
11:45  10            MR. JENSEN:  Okay.  Thank you.
11:45  11            THE COURT:  But I do believe that the issue should
11:45  12   be resolved promptly.  If there is a dispute as to the
11:45  13   adequacy of the response, I want that brought to me on an
11:45  14   ex parte basis, seven days return.
11:45  15            MR. GERGELY:  Well, we did discuss the issue of
11:45  16   whether there would be a stay.  I guess the issue that my
11:45  17   client is having is he doesn't want to play the
11:45  18   cat-and-mouse game with respect to trade secrets.
11:45  19            THE COURT:  We're not going to do that, sir.  We
11:45  20   are going to have an answer to your interrogatories
11:45  21   preferably without any extension of time.  Presumably they
11:45  22   had a good idea of what the trade secrets were when the suit
11:45  23   was filed.  And if there is any dispute as to the adequacy
11:45  24   of the response, you are free to move this Court on a
11:45  25   seven-day ex parte basis to compel.  We're going to get that
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit C
Page 6 of 8

```
11:46    1    issue out of the way early.

11:46    2              MR. GERGELY:  I appreciate that.  I still have a

11:46    3    little bit of concern about my client producing -- say if

11:46    4    they serve some Rule 34 requests tomorrow, if my client were

11:46    5    required to produce his trade secrets before they answer.

11:46    6              THE COURT:  What's the return date on your

11:46    7    interrogatories?

11:46    8              MR. GERGELY:  Off the top of my head, I don't

11:46    9    know.  We served them within a week or two ago.

11:46   10              MS. WASHINGTON:  We served them on February 15.

11:46   11              THE COURT:  I will delay any responsive discovery

11:46   12    to seven days after the responses are served.

11:46   13              MR. GERGELY:  Thank you.

11:46   14              THE COURT:  Okay, any other matters we ought to

11:47   15    take up?  Any comments?

11:47   16              MR. JENSEN:  No.  Just Mr. Re apologizes for not

11:47   17    being able to be here today, and we thank you for the relief

11:47   18    on that.

11:47   19              THE COURT:  Okay.  Thank you very much.

11:47   20              (Whereupon, the proceedings were concluded.)

11:47   21                          *     *     *

11:47   22

11:47   23

11:47   24

11:47   25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit C
Page 7 of 8

8

```
11:47   1
11:47   2
11:47   3
11:47   4
11:47   5                        CERTIFICATE
11:47   6
11:47   7        I hereby certify that pursuant to Section 753,
11:47   8   Title 28, United States Code, the foregoing is a true and
11:47   9   correct transcript of the stenographically reported
11:47  10   proceedings held in the above-entitled matter and that the
11:47  11   transcript page format is in conformance with the
11:47  12   regulations of the Judicial Conference of the United States.
11:47  13
11:47  14   Date:  March 4, 2019
11:47  15
11:47  16
11:47                        /s/   Sharon A. Seffens  3/4/19
11:47  17                       _____
11:47                          SHARON A. SEFFENS, U.S. COURT REPORTER
11:47  18
11:47  19
       20
       21
       22
       23
       24
       25
```

SHARON A. SEFFENS, U.S. DISTRICT COURT REPORTER

Exhibit C
Page 8 of 8

Exhibit D

| From: | Nick.Belair |
| To: | Ryan James Fletcher, Ph.D. |
| Cc: | Brian.Claassen; Irfan.Lateef; Peter A. Gergely; "Amanda Washton"; Paige Stradley; Perry.Oldham |
| Subject: | RE: Masimo v. True Wearables - Case Schedule |
| Date: | Thursday, July 25, 2019 2:02:06 PM |

CAUTION - External.

Ryan,

Thank you for the update.  Perry Oldham, an attorney in our Irvine office, will be reviewing Defendants' source code.  He is planning to travel to LA on July 30 to begin his review.  Please confirm the source code review computer will be available that day.

Regarding the protective order, please send along your case law as soon as possible.  We would like to begin preparing the joint stipulation next week.

Best,

Nick


**Nick Belair**
Associate
Nick.Belair@knobbe.com
415-217-8399 **Direct**
**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair



**From:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Sent:** Tuesday, July 16, 2019 4:17 PM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Peter A. Gergely <PGergely@merchantgould.com>; 'Amanda Washton' <a.washton@conklelaw.com>; Paige Stradley <PStradley@MerchantGould.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Case Schedule

Nick,
Thank you for the email. The computer will arrive in California and be set up Monday of next week. Subject to our local counsel's availability, I do not see why it will not be available as early as middle of next week at the office of our local counsel.

We agree regarding Local Rule 37-2. I will gather case law and provide it for your consideration.

Exhibit D
Page 1 of 7

Regards,
Ryan


**Ryan James Fletcher, Ph.D.**
Partner
Merchant & Gould P.C.
1801 California Street | Suite 3300
Denver, CO 80202-2654
**Telephone:** 303.357.1651 | **Mobile:** 303.506.4005 | BIO

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Tuesday, July 16, 2019 9:55 AM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Peter A. Gergely <PGergely@merchantgould.com>; 'Amanda Washton' <a.washton@conklaw.com>; Paige Stradley <PStradley@MerchantGould.com>; Perry.Oldham <Perry.Oldham@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Case Schedule

---

**CAUTION - External.**

---

Ryan,

Can you confirm whether the source code review computer has been shipped to California and set up?  We would like to begin our review as soon as possible once the computer is ready.

Regarding the PO, we believe the parties should raise this issue with the Court through a discovery motion/joint stipulation pursuant to Local Rule 37-2.  Let us know if you agree.  In addition, when we last spoke about this issue, you made reference to some case law in support of Defendants' position.  Can you please provide us with the relevant citations so that we may consider those cases?

Best,

Nick


**Nick Belair**
Associate
Nick.Belair@knobbe.com
**415-217-8399 Direct**
**Knobbe** **Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

---

**From:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>

Exhibit D
Page 2 of 7

**Sent:** Monday, July 8, 2019 6:13 AM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Peter A. Gergely <PGergely@merchantgould.com>; 'Amanda Washton' <a.washton@conklelaw.com>; Paige Stradley <PStradley@MerchantGould.com>
**Subject:** Re: Masimo v. True Wearables - Case Schedule

Nick,
I am traveling today so excuse my brevity. The source code computer has been loaded with a complete copy of the source code for Oxxiom and the following software:
Notepad++;
WinMerge; and
X1 (search tool).
I understand that this is sufficient to search and view the source code. We still need to ship the computer to California and will be in touch regarding its availability once set up.

I will give some additional thoughts on PO issue tomorrow.

Ryan

Ryan James Fletcher, Ph.D.
Partner
Merchant & Gould

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Wednesday, July 3, 2019 9:26:39 AM
**To:** Ryan James Fletcher, Ph.D.
**Cc:** Brian.Claassen; Irfan.Lateef; Peter A. Gergely; 'Amanda Washton'; Paige Stradley
**Subject:** RE: Masimo v. True Wearables - Case Schedule

**CAUTION - External.**

---

Ryan,

I'm following up on the my email below.  Regarding review of Defendants' source code, please let us know what licenses you were referring to, and the cost associated with those licenses.  Regarding the draft protective order, please let us know your thoughts on how best to place this issue before the Magistrate Judge.

Best,

Nick

**Nick Belair**

Associate
Nick.Belair@knobbe.com
**415-217-8399 Direct**

**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

---

**From:** Nick.Belair
**Sent:** Thursday, June 20, 2019 4:32 PM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Peter A. Gergely <PGergely@merchantgould.com>; 'Amanda Washton' <a.washton@conklelaw.com>; Paige Stradley <PStradley@MerchantGould.com>
**Subject:** RE: Masimo v. True Wearables - Case Schedule

Ryan,

We would like to get a stipulated amendment to the case schedule on file soon, so please let me know if you have completed your review of our proposal and/or would like to schedule a call to discuss this issue further.

In addition, we want to circle back on a couple of other outstanding issues.

First, regarding source code review, your last email on this issue asked whether Plaintiffs would be willing to cover the costs of any necessary software licenses. Before we can answer that question, we'd like to know what licenses you were referring to, and the cost associated with those licenses. That said, we do not expect to require Matlab to review Defendants' code, but we may need access to Swift. This assumes we will be able to view and search Defendants' Matlab code in one of the tools mentioned in my June 3 email.

Regarding the protective order, we agree that the parties are at an impasse with respect to Paragraphs 8, 9f, and 28. Please let us know your thoughts on how best to place this issue before the Magistrate Judge. In the meantime, however, we agree that this issue should not stall the litigation. Thus, Plaintiffs agree to work under the remaining provisions of the draft protective order until the Court resolves this issue, and Steve Jensen will not be given access to Defendants' AEO information or source code until and unless the Court resolves this issue in Plaintiffs' favor.

Best,

Nick


**Nick Belair**
Associate

Nick.Belair@knobbe.com
415-217-8399 **Direct**

**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

---

**From:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Sent:** Wednesday, June 19, 2019 7:51 AM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Peter A. Gergely <PGergely@merchantgould.com>; 'Amanda Washton' <a.washton@conklelaw.com>; Paige Stradley <PStradley@MerchantGould.com>
**Subject:** RE: Masimo v. True Wearables - Case Schedule

Nick,
We are still reviewing.
Ryan

**Ryan James Fletcher, Ph.D.**
Partner
Merchant & Gould P.C.
1801 California Street | Suite 3300
Denver, CO 80202-2654
**Telephone:** 303.357.1651 | **Mobile:** 303.506.4005 | BIO

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Wednesday, June 19, 2019 8:48 AM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Peter A. Gergely <PGergely@merchantgould.com>; 'Amanda Washton' <a.washton@conklelaw.com>; Paige Stradley <PStradley@MerchantGould.com>
**Subject:** RE: Masimo v. True Wearables - Case Schedule

**CAUTION - External.**

---

Good morning Ryan,

Following up on the below.  Please let me know if you would like to further discuss Plaintiffs' proposed schedule changes.

Thanks,

Nick

**Nick Belair**
Associate
Nick.Belair@knobbe.com
415-217-8399 **Direct**

**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

---

**From:** Nick.Belair
**Sent:** Monday, June 17, 2019 4:20 PM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Peter A. Gergely <PGergely@merchantgould.com>; Amanda Washton <a.washton@conklelaw.com>; Paige Stradley <PStradley@MerchantGould.com>
**Subject:** Masimo v. True Wearables - Case Schedule

Ryan,

Thanks for the call this afternoon.  As we discussed, I have attached a document detailing the parties' respective proposals to amend the schedule in view of Plaintiffs' amended pleading.

As an alternative to Plaintiffs' current proposed dates, we may be able to avoid the 12/23 Markman Hearing date by moving the hearing to 12/9 and shifting all of Defendants' earlier proposed dates up by 2 weeks.  Under this timeline, we would serve Plaintiffs' infringement contentions on 6/28 (given that we filed the First Amended Complaint earlier today), and all subsequent contentions and claim construction dates would shift accordingly.

Feel free to give me a call to discuss.

Best,

Nick

**Nick Belair**
Associate
Nick.Belair@knobbe.com
415-217-8399 **Direct**

**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit E

| | |
|---|---|
| **From:** | Peter A. Gergely |
| **To:** | Nick.Belair |
| **Cc:** | Zach Kachmer; Paige Stradley; Irfan.Lateef; Brian.Claassen; Ryan James Fletcher, Ph.D. |
| **Subject:** | RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel |
| **Date:** | Monday, June 15, 2020 10:15:00 AM |
| **Attachments:** | Kraft Americas LP v Oldcastle Precast Inc.pdf |

Nick,

Ryan, Paige, Zach and myself will be available at that time.

You asked for authority on trade secret mapping i.e. the factual and documentary basis of trade secret misappropriation.

This is no different than patent infringement contentions.

See attached case from C.D. Cal. re trade secret contentions.  There are many similar cases.

Regards,

Peter Gergely

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Monday, June 15, 2020 2:36 AM
**To:** Peter A. Gergely <PGergely@merchantgould.com>; Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

**CAUTION - External.**

---

Peter,

We obviously have not—nor could we—place any condition on your client's access to the courts, and no recording would take place without your permission.  We simply proposed a solution to prevent disagreements about what the parties discuss during future meet and confers.  For our side, we welcome an agreement to be recorded.

In any event, some members of our team are available on Monday at 2pm (PST).  Please confirm you are available at that time.

Best,

Exhibit E
Page 1 of 17

**From:** Peter A. Gergely <PGergely@merchantgould.com>
**Sent:** Friday, June 12, 2020 7:00 AM
**To:** Nick Belair <Nick.Belair@knobbe.com>; Ryan James Fletcher, Ph.D.
<RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Paige Stradley
<PStradley@merchantgould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen
<Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Dear Nick,

We disagree with your characterization of events.  Your attempt to condition my client's First
Amendment right to petition and access the courts through an agreement to tape record phone calls
is illegal.  We refuse to participate in, or agree to such conditions or behavior.

Let us know when you would like to confer on Monday.

Regards,

Peter Gergely

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Thursday, June 11, 2020 6:40 PM
**To:** Peter A. Gergely <PGergely@merchantgould.com>; Ryan James Fletcher, Ph.D.
<RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Paige Stradley
<PStradley@merchantgould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen
<Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

**CAUTION - External.**

---

Peter,

Your rhetoric is not helpful.  Your partner, Ryan, suggested next week for the meet-and-confer on
the trade secret interrogatory responses because he will be out this week.  He never suggested that
others at his firm could handle the meet and confer.  We adjusted our schedules accordingly, but
have conflicts early next week.  Also, we have had numerous calls with Ryan over the past few
weeks, but Ryan never mentioned the need for an urgent meet and confer on these interrogatory
responses.   With this backdrop, we did not understand that True Wearables had an immediate need
for a meet and confer.  Likewise, your demand that we make ourselves available today is not
appreciated.

We suggested Thursday of next week because that was the time we could sync up our schedules to
have a meaningful call with True Wearables.  We did not suggest Thursday for delay.  We are willing

to meet and confer, but at a mutually agreeable time.

Regarding delay, we note that Plaintiffs first identified their trade secrets with reasonable particularity on March 15, 2019, shortly after the Court's scheduling conference.  As you know, and we have pointed out in the email exchange below, during that hearing, Judge Selna afforded Defendants a seven-day window in which to object to Plaintiffs' trade secret identification and seek more specificity in an *ex parte* motion.  Defendants never objected or moved to compel within that time.  Now, more than 15 months later and less than 2 months before the close of fact discovery, Defendants complain that Plaintiffs' trade secret disclosure is inadequate.  Thus, it is clear that True Wearables is the cause of any delay in resolving this issue.

We also note that Defendants have repeatedly delayed other discovery in this case by taking frivolous positions.  For example, shortly after Defendants agreed to produce their Matlab files (see RFP Nos. 144-145), Defendants refused to make them available to any of Plaintiffs' counsel.  Simultaneously, Defendants maintained baseless objections to Plaintiffs' technical expert, thereby precluding any access to Defendants' Matlab files.  Only after the Court rejected Defendants' objections did you make any Matlab files available.  Yet, even then, Defendants waited more than a month to make the files available.

Defendants are now challenging Steve Jensen's access to Designated Materials under the Court's Protective Order again, despite the Court having previously resolved that issue. Also, Defendants delayed bringing this issue up.

Defendants have also injected delay by refusing to produce highly relevant source code.  Indeed, despite repeated requests over the past three months, Defendants had refused to produce any of its source code revision history or corresponding Matlab files.  Finally recognizing the relevance of these documents, Defendants abruptly changed positions earlier this week.  Yet, we still have not had access to these new materials, and thus have not had any opportunity to consider their impact on Plaintiffs' trade secret misappropriation claims.  We also note that due to the ongoing COVID-19 pandemic, Plaintiffs' technical expert remains unable to travel to Southern California to view Defendants' source code.

Moreover, True Wearables has not answered some basic 'Yes' or 'No' questions regarding the versions of Oxxiom source code and Matlab files it intends to produce.  We understood after the meet and confer on Monday that True Wearables would produce all versions of the source code and the Matlab files.  But, True Wearables response indicated that it would be producing only versions 1.0-1.4 of the code.  You have refused to confirm (1) whether these versions constitute the complete revision history of the code, (2) whether True Wearables will be producing all Matlab files relating to these versions, and (3) whether True Wearables will also be producing the more recent versions of the Oxxiom code and related Matlab files (versions 1.6.0 and 1.6.1).  Making matters worse, you have refused to answer those questions despite knowing that we are expending resources on our portion of a joint stipulation on this issue.  Please answer the simple "yes" or "no" questions in advance of our next call.  That information is also necessary for us to prepare for the conference of counsel.  Plaintiffs are preparing a motion to compel but would like to avoid burdening the Court, if possible.

Your further response below conflates the issues with respect to the source code.  The development of the source code and timing are highly relevant to Plaintiffs' trade secret case.  The more recent versions that have been released commercially, including 1.6.0 and 1.6.1 are also relevant to the asserted patent claims.  Your description below indicates that changes to the calculation techniques, at a minimum, may have been made to the code.  We fail to see the burden to True Wearables in making this code available, particularly since your email implies that you have already analyzed it.

Defendants' requirement that Plaintiffs "map" their trade secrets against Defendants' source code and/or accused product finds no support in the law.  If you have some case law or specifics that you would like us to consider, please share them for us to review.

We also note that the parties have now disagreed over what happened during several teleconferences.  To avoid similar disputes, we request that the parties record such teleconferences moving forward.  Please confirm that you agree.  We will, of course, indicate the conference is being recorded during each call that we record.

We are available to meet and confer tomorrow afternoon on a recorded line, if you like.  Otherwise, we can be available for a call with Ryan on Monday albeit without some members of our team.

Best,

Nick

**Nick Belair**
Associate
Nick.Belair@knobbe.com
**415-217-8399** Direct
**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

---

**From:** Peter A. Gergely <PGergely@merchantgould.com>
**Sent:** Thursday, June 11, 2020 2:42 PM
**To:** Nick.Belair <Nick.Belair@knobbe.com>; Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Nick,

Versions 1.6.0 and 1.6.1 are largely the same as the versions Defendants have already agreed to produce to Plaintiffs, with one major difference with respect to functionality—these versions enable continuous monitoring of oxygen saturation (SpO2) values above 100.0%.  Even in Plaintiffs' overly broad identification of alleged trade secrets in Interrogatory No. 1, there is no alleged trade secret that encompasses the concept of continuous monitoring of oxygen saturation (SpO2) values above 100.0%. Accordingly, Versions 1.6.0 and 1.6.1. are irrelevant and/or cumulative of the versions Defendants have already agreed to produce and are disproportionate to the needs of the case. Plaintiffs continually request more and more from Defendants while simultaneously refusing to even meet their basic discovery obligations of identifying trade secrets with particularity, rather than in general, broad strokes.

Could you please identify the relevance of, and proportionate need for Versions 1.6.0 and 1.6.1 based on the list of trade secrets that Plaintiffs have disclosed?

While Defendants have been more than cooperative in providing Plaintiffs with information throughout discovery, Plaintiffs have not done the same. As we have previously stated, Plaintiffs must update their interrogatory responses to identify and map their trade secrets (as well as the specific portions of any documents comprising these trade secrets) and must do so immediately given upcoming depositions and the close of discovery. Because Plaintiffs have not updated their discovery responses and continually refuse to provide a date certain by which they will do so, as stated yesterday, we will be preparing a joint stipulation on this issue. Again, we ask that you make yourself available to confer on this issue.  We asked that you make yourself available today, and you have refused to do so.  Accordingly, we consider our meet and confer obligations on this issue concluded.

Best,

Peter

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Wednesday, June 10, 2020 1:38 PM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

**CAUTION - External.**

---

Ryan,

We can be available to meet and confer on Thursday next week.

Please confirm whether versions 1.0 through 1.5 constitute the complete revision history of the Oxxiom source and Matlab files, and whether Defendants will be producing the more recent versions (1.6.0 & 1.6.1).

As an additional note regarding depositions, we also anticipate serving a third party subpoena on Bernard Widrow.

Best,

Nick


**Nick Belair**
Associate
Nick.Belair@knobbe.com
415-217-8399 **Direct**

**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

---

**From:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Sent:** Tuesday, June 9, 2020 7:42 PM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** Re: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Nick,
Your email is completely silent regarding Plaintiffs' supplemental interrogatory responses and Defendants' request to meet and confer on this issue. Are Plaintiffs available to meet and confer next Monday on this issue as I am out of the office the remainder of the week.
Ryan

Ryan James Fletcher, Ph.D.
Partner
Merchant & Gould

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Tuesday, June 9, 2020 12:24:52 PM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>

**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

**CAUTION - External.**

Ryan,

Thank you for confirming Defendants will be making all versions of the Oxxiom source code available.  If versions 1.0 to 1.5 are not all the prior versions, please let us know.  In addition, as we mentioned below, version 1.6.0 is identified in a recent True Wearables press release.  The Apple app store for the Oxxiom App also indicates that Version 1.6.1 is currently available. Please confirm that Defendants will also be making version 1.6.0 and 1.6.1 available as well.  Finally, please confirm when you expect to have the source code and Matlab documents available for review.

If versions 1.0-1.6 do not constitute the complete revision history of the Oxxiom source code and related Matlab documents, Plaintiffs will pursue a motion to compel.  As I noted during our call yesterday, Plaintiffs are currently preparing their portion of a joint stipulation to accompany the motion.

As for depositions, we will check on scheduling for the deponents you have identified.  We also anticipate re-noticing the deposition notices we served in November 2019. To that end, please provide potential deposition dates for the following deponents:
- Marcelo Lamego
- Tatiana Lamego
- Tony Allan
- 30(b)(6) of True Wearables

In addition, we anticipate sending notices for the following additional deponents.  Please provide potential dates for these individuals as well.
- Larissa Lamego
- Isadora Lamego

We also plan to serve third party subpoenas on the following individuals:
- Tho Tran
- Vaughn Eldstrom

Best,

Nick

**Nick Belair**
Associate
Nick.Belair@knobbe.com
**415-217-8399 Direct**
**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104

[www.knobbe.com/nick-belair](www.knobbe.com/nick-belair)

---

**From:** Ryan James Fletcher, Ph.D. <[RFletcher@merchantgould.com](RFletcher@merchantgould.com)>
**Sent:** Tuesday, June 9, 2020 10:19 AM
**To:** Nick.Belair <[Nick.Belair@knobbe.com](Nick.Belair@knobbe.com)>
**Cc:** Zach Kachmer <[ZKachmer@MerchantGould.com](ZKachmer@MerchantGould.com)>; Peter A. Gergely <[PGergely@merchantgould.com](PGergely@merchantgould.com)>; Paige Stradley <[PStradley@MerchantGould.com](PStradley@MerchantGould.com)>; Irfan.Lateef <[irfan.lateef@knobbe.com](irfan.lateef@knobbe.com)>; Brian.Claassen <[Brian.Claassen@knobbe.com](Brian.Claassen@knobbe.com)>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Nick,
Thank you for the phone call yesterday.

### Source Code

Defendants maintain their positions set forth in our recent correspondence on this issue but as a good faith effort to push this issue forward without burdening the court, Defendants will make versions 1.0 to 1.4 of the Oxxiom® source code available for review on the source code computer along with the related Matlab documents. We have the source code and Matlab documents gathered but we will need to load the files on the source code computer and confirm the source code computer has the necessary programs to view Matlab documents.

### Plaintiffs' Rog Responses

Defendants request Plaintiffs to provide a date certain by when they intend to supplement their interrogatory responses as represented on numerous phone calls and comply with at least Defendants' Interrogatory Nos. 11 and 12, which were served on October 16, 2019. If Defendants cannot/do not wish to provide a date certain then please let me know when you are available to meet and confer.

### Deposition Dates

Please provide potential deposition dates for the following individuals:
1. Joe Kiani
2. Anmmar Al-Ali
3. Abraham Mazda
4. Greg Olson
5. Gerry Hammarth
6. Yongsam Lee
7. Bilal Muhsin

### Third-Party Subpoena

Defendant intend to serve Cristiano Dalvi with a subpoena this week for documents and a deposition.

Regards,

Ryan

---

**From:** Ryan James Fletcher, Ph.D.
**Sent:** Monday, June 8, 2020 10:07 AM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Nick,
We can do 5pm MST/4pm PST.
Thanks,
Ryan

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Monday, June 8, 2020 9:46 AM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

**CAUTION - External.**

Ryan,

We are not available at 1pm MST today, but can be available after 4pm MST (3pm PST).  Let me know if that works and I will circulate a dial-in.

Best,

Nick

---

**From:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Sent:** Friday, June 5, 2020 4:22 PM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Nick,

Thank you for the email. I am confused on why you believe a dispute exists when Plaintiffs said they were updating their interrogatory responses. Regardless, Defendants disagree with any assertion that Defendants have, at any point, waived the right to request that Plaintiffs comply with their obligations under the Federal Rules and/or under any relevant statute. Regarding the Requests for Production identified in your email, Defendants objected to each of these Requests on a number of bases. Of the cited requests, Request No. 176 is the only one specifically seeking prior versions of Oxxiom source code. To that Request, Defendants objected "because Plaintiffs have not fulfilled their obligation under Cal Civ. Proc. Code Section 2019.210 to identify with 'reasonable particularity' the trade secrets alleged to have been misappropriated by Defendants." Defendants responses, which were served via email within the 30-day response deadline, are attached here for reference.

Likewise, Defendants disagree with your interpretation of the cited Hearing Transcript. During that hearing, the court did not establish a "seven-day deadline" to raise any and all issues related to deficiencies in Plaintiffs' trade secret identification. Indeed, such a deadline would be inconsistent with Plaintiffs' ongoing obligations under the Federal Rules to supplement their responses and disclosures. Moreover, any such deadline would have been mooted and/or superseded by Plaintiffs' subsequent discovery responses. For instance, Plaintiffs' response to Interrogatory No. 11 lists over 200 documents allegedly comprising Plaintiffs' trade secrets. Because Plaintiffs' identification of trade secrets uses open-ended language (e.g., repeated use of the word "including..."), Plaintiffs' identification of these 200+ documents has potentially significantly altered the scope of Plaintiffs' trade secret identification.

Defendants provided the source code of the commercially available Oxxiom product in July of 2019, shortly after Plaintiffs identified their trade secrets in March of 2019. Defendants have also continued to produce information relevant to the development and design of the Oxxiom product, including manufacturing documents, Gerber files, Matlab files, customer documents, sales documents, etc. And yet, Plaintiffs have refused repeated requests (starting with Plaintiffs' Interrogatory No. 11 on October 16, 2019) for a "chart identifying where and how each trade secret is used" by Defendants' product(s). Despite refusing this simple request, Plaintiffs' claims and discovery demands have continued to expand since February 2019, when Plaintiffs first provided a broad, open-ended trade secret identification. In other words, the case—and the scope of the parties' discovery obligations—have changed significantly since the parties' first scheduling conference 16 months ago.  It would be unreasonable to require Defendants to now sit idly and blindly comply with Plaintiffs' continuously expanding requests simply because Defendants did not object within seven days of Plaintiffs' initial trade secret identification.

Returning to Plaintiffs' current requests, California Civil Procedure Code § 2019.210 requires that "before commencing discovery relating to the trade secret[s]" a plaintiff must identify those trade secrets with "reasonable particularity." This requirement is applicable not only under the California statute cited above, but also under federal courts' authority to control the timing and sequence of discovery in the interests of justice. *Vesta Corp. v. AMDOCS Mgmt.*, 147 F. Supp. 3d 1147, 1153 (D. Or. 2015). Additionally, under Federal Rule 26(b)(1), the scope of discovery extends only to matter that is "relevant to any party's claim or defense *and proportional to the needs of the case*."

Prior versions of Oxxiom source code are indisputably irrelevant to Plaintiffs' patent infringement

claims at least because the prior versions have not been implemented in any commercial product of True Wearables. Thus, prior versions of Oxxiom source code are only relevant in this action to the extent they are relevant to Plaintiffs' trade secret misappropriation claims. Plaintiffs' Response to Interrogatory No. 1 does not satisfy the "reasonable particularity" standard at least because it uses open-ended language and does not contain any explanation of why each identified category of information is legally protectable as a trade secret. Until this standard is met, Plaintiffs cannot commence discovery relating to the identified trade secrets under at least Cal. Civ. Proc. Code § 2019.210. Moreover, until Plaintiffs more specifically identify the trade secrets alleged to have been misappropriated, Defendants cannot adequately evaluate the relevance of prior versions of Oxxiom, and any discovery regarding these never-commercialized files is not proportional to the needs of the case.

Defendants previously requested that Plaintiffs provide a supplemental disclosure that meets the "reasonable particularity" standard by the end of the day today, June 5. A more specific description of the deficiencies in Plaintiffs' Interrogatory Responses is provided in the attached letter, along with specific requests for how Plaintiffs can remedy these deficiencies. Please confirm that Plaintiffs intend to comply with the requests set forth in this email and in the attached letter and provide a date by which Defendants can expect supplemental responses. Defendants are available to meet and confer Monday afternoon at 1pm MST or another time Monday that works for both parties.

Regards,
Ryan

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Thursday, June 4, 2020 10:04 AM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

---

**CAUTION - External.**

---

Ryan,

Plaintiffs' Request for Production Nos. 8, 144, 145, and 176 collectively seek all versions of Defendants' Oxxiom source code and Matlab files.  Defendants did not object to any of these requests based on the sufficiency of Plaintiffs' trade secret disclosures.  In fact, Defendants waived any objection to the sufficiency of Plaintiffs' trade secret disclosures when Defendants failed to object to the disclosures within the Court's seven-day deadline.  *See* Feb. 25, 2019 Hearing Tr. at 6:11-7:1.

Plaintiffs first raised Defendants' deficient production of source code via letter on March 3, 2020, and Defendants' prior refusal to produce *any* Matlab files was the subject of a prior discovery motion.  At no time have Defendants asserted any specific relevance objection to the production of

such documents.  Moreover, during our meet and confers, we have repeatedly noted that Defendants have not even produced the latest version of Oxxiom source code, version 1.6.0, which is identified in the attached press release.

As an aside, we note that Defendants failed to respond to Plaintiffs' Fifth Set of Requests for Production, which included RFP No. 176, within the 30-day response deadline.  Please let us know when we can expect Defendants' responses to Plaintiffs' Fifth Set of Requests for Production.

Regardless, as we made clear during the parties' May 26 conference, Defendants' new demand that Plaintiffs provide a supplemental trade secret disclosure before Defendants will consider producing additional source code and Matlab files is improper.  Unless Defendants agree to provide the requested source code and Matlab files, with or without a supplemental trade secret disclosure, Plaintiff maintains the parties' are at impasse.

Please confirm you availability for a meet and confer Friday afternoon.

Best,

Nick


**Nick Belair**
Associate
Nick.Belair@knobbe.com
**415-217-8399 Direct**
**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

---

**From:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Sent:** Tuesday, June 2, 2020 10:10 AM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Nick,

Thank you for the email.  Our clients have been demanding that Plaintiffs provide a detailed identification and mapping of trade secrets to the accused products for many months now.  There is simply no excuse for not furnishing this information.

Accordingly, we disagree with your characterization of events. Plaintiffs' May 11 letter disclosed its justification for why versions of source code and Matlab documents beyond what is on the

commercial product are relevant to Plaintiffs' claims and defenses. In response, Defendants' May 26 letter explains: "Defendants are happy to discuss providing source code and Matlab documents for non-commercial versions of the Oxxiom® device if Plaintiffs are willing to identify and map their trade secrets with reasonable particularity before being given access to additional source code and Matlab documents consistent with Cal. Civ. Proc. Code § 2019.210." In other words, Defendants are willing to discuss the production of additional versions of source code and Matlab documents (which are currently not proportional to the needs of the case under Fed. R. Civ. P. 26(b)(1)), so long as Plaintiffs comply with Cal. Civ. Proc. Code § 2019.210. *See M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 U.S. Dist. LEXIS 171453 (C.D. Cal. June 11, 2019). Plaintiffs indicated they would update their interrogatory responses accordingly. I do not believe the parties are at impasse. Cal. Civ. Proc. Code § 2019.210 requires the identification of trade secrets with reasonable particularity. MJ Early has previously adopted Section 2019.210. Defendants are waiting for Plaintiffs' supplemental interrogatory responses. Defendants look forward to receiving Plaintiffs' supplemental interrogatory responses this week. The parties should meet and confer once Plaintiffs provide their supplemental interrogatory responses to determine if we are indeed at an impasse but I do not believe we have reached an impasse yet. As always, I am happy to discuss further.

Regards,
Ryan

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Sunday, May 31, 2020 7:24 PM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

CAUTION - External.

Ryan,

Thank you for the call this past Tuesday, May 26.

During the call, you confirmed Defendants' position that additional versions/revisions of the Oxxiom source code and corresponding Matlab code are not relevant to the case. As we have stated in prior correspondence on these issues, and reiterated during the call, Plaintiffs disagree.

With respect to the Oxxiom source code and Matlab files, your May 26 letter stated that Defendants would consider providing additional source code and Matlab documents, but only if Plaintiffs mapped their trade secrets against the code and files that Defendants have already produced. This was the first time you made Defendants' production of source code and Matlab files contingent on Plaintiffs' further identification of trade secrets. Indeed, before the parties' recent correspondence, Defendants had not even raised a relevance objection to the requested source code and Matlab

files.  Thus, during the call, we noted that while Plaintiffs intend to supplement their interrogatory responses to more specifically identify their trade secrets, Plaintiffs do not see why that process should hold up Defendants' production of additional versions of the Oxxiom source code and Matlab files, given their clear relevance to the case.

Although Plaintiffs would prefer to resolve these issues without Court intervention, in view of the above, it appears the parties are at an impasse.  In accordance with L.R. 37-2, please let me know your availability on Tuesday (6/2) or Wednesday (6/3) afternoon this week to discuss Plaintiffs' intended motion.

Best,

Nick

**Nick Belair**
Associate
Nick.Belair@knobbe.com
415-217-8399 **Direct**
**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

---

**From:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Sent:** Thursday, May 21, 2020 11:50 AM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

That works but I have a hard stop at 2:50 pm PST.
Please circulate a call-in number and calendar invite.
Thanks,
Ryan

---

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Thursday, May 21, 2020 12:39 PM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

CAUTION - External.

Ryan,

How about Tuesday at 2pm (PST)?

-Nick

**From:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Sent:** Wednesday, May 20, 2020 8:20 AM
**To:** Nick.Belair <Nick.Belair@knobbe.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Nick,
Thank you for the email.
We are currently preparing a written response and document production. Both of which should go out this week. I believe a call to discuss will be more meaningful with both in your possession. How about Tuesday next week?
Ryan

**From:** Nick.Belair <Nick.Belair@knobbe.com>
**Sent:** Tuesday, May 19, 2020 3:24 PM
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** RE: Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

CAUTION - External.

Ryan,

Please let me know your availability for a call to discuss all outstanding issues identified in my May 11 letter (and discussed during the parties' April 22 and May 4 conferences of counsel).  We are available tomorrow from 1-2pm (PST) or Thursday from 11-1pm (PST).

Best,

Nick

**From:** Nick.Belair

**Sent:** Monday, May 11, 2020 5:20 PM
**To:** 'Ryan James Fletcher, Ph.D.' <RFletcher@merchantgould.com>
**Cc:** Zach Kachmer <ZKachmer@MerchantGould.com>; Peter A. Gergely <PGergely@merchantgould.com>; Paige Stradley <PStradley@MerchantGould.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Brian.Claassen <Brian.Claassen@knobbe.com>
**Subject:** Masimo v. True Wearables - Follow Up to May 4 Conference of Counsel

Ryan,

Please see the attached letter concerning the parties' May 4 conference of counsel.

Best,

Nick

**Nick Belair**
Associate
Nick.Belair@knobbe.com
415-217-8399 **Direct**
**Knobbe Martens**
333 Bush St., 21st Fl.
San Francisco, CA 94104
www.knobbe.com/nick-belair

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit F



1801 California Street
Suite 3300
Denver, CO 80202

Ryan J. Fletcher, Ph.D.
303.357.1651
RFletcher@merchantgould.com

June 5, 2020

Nick Belair
Knobbe Martens Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

Re: **Masimo Corp. and Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego**
   **Case No. 8:18-cv-2001-JVS-JDE**

Dear Mr. Belair:

I write regarding deficiencies in Plaintiffs' Responses to Defendants' Interrogatories.

## Identification of Trade Secrets and Documents Comprising Trade Secrets

Defendants' Interrogatory No. 1 asked Plaintiffs to "Identify" (as defined in the Instructions accompanying the Interrogatories) "each trade secret of each of the Plaintiffs that each of the Plaintiffs contend was misappropriated by Defendants."

California Civil Procedure Code § 2019.210 requires identification of trade secrets with "reasonable particularity." This requirement is applicable not only under the California statute cited above, but also under federal courts' authority to control the timing and sequence of discovery in the interests of justice. *Vesta Corp. v. AMDOCS Mgmt.*, 147 F. Supp. 3d 1147, 1153 (D. Or. 2015). Reasonable particularity requires a description that is sufficient to "(a) put a defendant on notice of the nature of the plaintiff's claims and (b) enable the defendant to determine the relevancy of any requested discovery concerning its trade secrets." *BioD, LLC v. Amnio Tech., LLC*, 2014 U.S. Dist. LEXIS 109755, at *17 (D. Ariz. Aug. 5, 2014).

Defendants believe that Plaintiffs' response to Interrogatory No. 1 does not satisfy this requirement. Plaintiffs' response included a list of fifteen categories of information or knowledge, identifying these cateogories as Plaintiffs' trade secrets and alleging misappropriation thereof by Defendants. Plaintiffs' use of the open-ended language

"including..." and "relating to..." leaves Defendants guessing as to the outer bounds of the alleged trade secrets. *M/A-COM Tech. Sols., Inc. v. Litrinium, Inc.*, 2019 U.S. Dist. LEXIS 171453 (C.D. Cal. June 11, 2019) ("While there may be instances where a limited use of 'including' may be warranted to identify a trade secret, [repeated use] suggests and creates a far looser description than is required by [the reasonable particularity standard].") Plaintiffs use the term "including" in ten of the fifteen identified categories of information, leaving the exact boundaries of Plaintiffs' alleged trade secrets entirely unknown.

Plaintiffs' list also lacks important details regarding the alleged trade secrets. The mere designation of certain information as a "trade secret" does not make the information legally protectable as such. Rather, the reasonable particularity standard requires "some explanation of why that [method or process] could be considered a legally protectable trade secret." *BioD, LLC v. Amnio Tech., LLC*, 2014 U.S. Dist. LEXIS 109755, at *17 (D. Ariz. Aug. 5, 2014); *see also Switch Commc'n Group v. Ballard*, 2012 U.S. Dist. LEXIS 85148, at *5 (D. Nev. June 19, 2012) (requiring plaintiff to "specifically describe what particular combination of components renders each of its designs novel or unique, how the components are combined, and how they operate in unique combination"). Plaintiffs list of trade secrets contains no explanation of why the identified information could be considered a legally protectable trade secret.

For thse reasons, Plaintiffs' Response to Interrogatory No. 1 does not identify Plaintiffs' trade secrets with reasonable particularity. Plaintiffs have previously informed Defendants that Plaintiffs are preparing to supplement their Response to Interrogatory No. 1. Defendants hereby request that Plaintiffs' supplemental responses contain sufficient information to satisfy the "reasonable particularity" standard described above.

**<u>Identification of Documents Comprising Trade Secrets</u>**

Defendants' Interrogatory No. 11 asked Plaintiffs to identify, among other things, "*separately for each such trade secret* [identified in response to Interrogatory No. 1 . . . documents, by bates number, comprising the trade secret." Defendants' Interrogatory No. 11 further asked Plaintiffs to identify "*separately for each such trade secret* . . . the *exact portion* of the document that comprises the trade secret." Additionally, the same Interrogatory asked Plaintiffs to identify "*separately for each such trade secret . . . [a] chart identifying specifically where and how each trade secret is used* by each Accused Instrumentality, including an identification of supporting documents and/or source code."

Plaintiffs' Response to Interrogatory No. 11 contains a list of over 200 bates numbers. However, a number of these documents are documents titled "MasimoLabs Document Cover Sheet.doc." These "cover sheets" contain what appears to be a description of the contents of a document. These cover sheets do not, however, contain the actual content described. To the extent Plaintiffs believe the described content constitutes Plaintiffs' trade secret information, it is

not clear from the cover sheet or from Plaintiffs' Interrogatory Response where this content can be found in Plaintiffs' document production.

To the extent any documents identified in Plaintiffs' Response to Interrogatory No. 11 are cover sheets referring to a separate non-identified document containing information Plaintiffs believe is trade secret, Defendants hereby request that Plaintiffs supplement their Response to Interrogatory No. 11 to identify, by bates number, any such documents.

Additionally, Plaintiffs' Response to Interrogatory No. 11 identifies documents by bates number but does not identify any specific portions of any of the listed documents alleged to comprise Plaintiffs' trade secret. Certain documents identified by Plaintiffs as comprising trade secrets contain information that Plaintiffs presumably do not view as being a trade secret. For example, MASM0092546 contains a Product Description stating that certain Masimo sensors "will provide continuous invasive detection and measurement of oxygen saturation ($SpO_2$), pulse rate (PR), perfusion index (PI), and pleth variability index (PVI)."

To the extent any documents identified in Plaintiffs' Response to Interrogatory No. 11 contain information that Plaintiffs do not consider to be trade secret information, Defendants hereby request that Plaintiffs supplement their Response to Interrogatory No. 11 to identify, as requested, "the exact portion of the document that comprises the trade secret."

Finally, Plaintiffs' Response to Interrogatory No. 11 neither (a) identifies documents separately for each alleged trade secret nor (b) provides a chart identifying specifically where and how each trade secret is used by Defendants' Oxxiom product, despite Defendants' requests that Plaintiffs' Response do both. Plaintiffs object to these requests by arguing that they are "vague and ambiguous" and that they "would likely require Plaintiffs to collect and produce essentially all of the technical and/or operational documents that Mr. Lamego had access to during his tenure." Neither objection has merit. Even if Plaintiffs' document review is ongoing, Plaintiffs have already identified over 200 documents alleged to contain Plaintiffs' trade secrets. For at least these already identified documents, Plaintiffs should be able to both (a) identify which of Plaintiffs trade secrets are found in the document and (b) provide a chart identifying how each trade secret is allegedly used by Defendants' Oxxiom product. Plaintiffs' failure to do so leaves Defendants unable to adequately evaluate Plaintiffs' claims of misappropriation.

Defendants hereby request that plaintiffs supplement their Response to Interrogatory No. 11 to both (a) identify documents separately for each alleged trade secret and (b) provide provides a chart identifying specifically where and how each trade secret is used by Defedants' Oxxiom product.

Sincerely,

Ryan J. Fletcher

Exhibit G

| | |
|---|---|
| **From:** | Zach Kachmer |
| **To:** | Nick.Belair |
| **Cc:** | Ryan James Fletcher, Ph.D.; Peter A. Gergely; Brian.Claassen; Irfan.Lateef; Paige Stradley |
| **Subject:** | Masimo v. True Wearables - Joint Stipulation |
| **Date:** | Friday, June 19, 2020 4:48:00 PM |
| **Attachments:** | Ex. A to Fletcher Declaration.PDF |
| | Ex. B to Fletcher Declaration.PDF |
| | Ex. C to Fletcher Declaration.PDF |
| | Ex. D to Fletcher Declaration.PDF |
| | Ex. E to Fletcher Declaration.PDF |
| | Ex. F to Fletcher Declaration.PDF |
| | 2020 06 19 - Joint Stipulation re Motion to Compel.DOC |
| | 2020 06 19 - Declaration of Fletcher ISO Joint Stipulation.pdf |
| | 2020 06 19 - [Proposed] Order Granting Defendants Motion to Compel.pdf |

Nick,

As discussed during our June 15 conference, and pursuant to L.R. 37-2, we have attached the following materials in support of Defendants' Motion to Compel:

1. Defendants' portion of the Joint Stipulation accompanying the motion
2. Declaration of Ryan Fletcher and Exhibits A-F
3. Proposed Order Granting Defendants' Motion

Because the Joint Stipulation contains materials designated by Plaintiffs as "Confidential," we have highlighted the portions of the Joint Stipulation that we believe Plaintiffs may wish to be redacted from the public filing. Please confirm that these proposed redactions are acceptable to Plaintiffs and please provide similar highlighting of any redactions Plaintiffs wish to apply to Plaintiffs' portion. Defendants are willing to prepare and submit an Application to File Under Seal. If, given Plaintiffs have designated the information as "Confidential," Plaintiffs wish to prepare the Application, please provide a copy along with Plaintiffs' portion of the joint stipulation.

In accordance with L.R. 37-2, please provide us with Plaintiffs' portion of the Joint Stipulation, and any supporting materials, by Friday, June 26, so that we may compile the documents for filing.

Best,

Zach

**Zach Kachmer**
Merchant & Gould P.C.
1801 California Street
Suite 3300
Denver, CO 80202-2654
USA

**Telephone** (303) 357-1181
**Fax** (612) 332-9081
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Exhibit G
Page 1 of 2

Note: This e-mail message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via e-mail to the sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever.

Please consider the environment before printing this email. Thank you.

194

Exhibit H

| From: | Irfan.Lateef |
|---|---|
| To: | Ryan James Fletcher, Ph.D.; Truewearables |
| Cc: | Brian.Claassen; Joe.Re; Steve.Jensen |
| Subject: | RE: Proposed amended schedule |
| Date: | Thursday, June 25, 2020 6:04:14 PM |

**CAUTION - External.**

Ryan,

Following up on our conversation yesterday, we will provide supplemental responses to Rogs 1 and 11 on Wednesday July 1, 2020.  As we discussed yesterday, the supplemental responses should moot the pending joint stipulation.  Please let us know if you agree and that we do not need to provide our potion of the joint stipulation tomorrow.

Best regards,
Irfan

**From:** Irfan.Lateef
**Sent:** Thursday, June 25, 2020 08:56
**To:** Ryan James Fletcher, Ph.D. <RFletcher@merchantgould.com>; Truewearables <Truewearables@MerchantGould.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Steve.Jensen <Steve.Jensen@knobbe.com>
**Subject:** Proposed amended schedule

Hi Ryan,

I have attached a draft joint stipulation to amend the schedule in light of our discussion yesterday. We moved out the schedule by six months to avoid any difficulties with fitting in expert discovery over the winter holidays.  Please give me a call to discuss.

Thanks,
Irfan

**Irfan Lateef**
Partner
949-721-7672 **Direct**

714-396-3803 **Mobile**

**Knobbe Martens**

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not

Exhibit H
Page 1 of 2

the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit I



1801 California Street
Suite 3300
Denver, CO 80202

Ryan J. Fletcher, Ph.D.
303.357.1651
RFletcher@merchantgould.com

July 14, 2020

Nick Belair
Knobbe Martens Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

Re: **Masimo Corp. and Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego**
    **Case No. 8:18-cv-2001-JVS-JDE**

Dear Mr. Belair:

I write regarding Plaintiffs' Supplemental Responses to Defendants' First Set of Interrogatories.

In light of Plaintiffs' continued failure to supplement their interrogatory responses to include, *inter alia*, a sufficiently particular identification of Plaintiffs' trade secrets, Defendants provided Plaintiffs with Defendant's portion of a Joint Stipulation intended to accompany Defendants' motion to compel discovery. Subsequently, Plaintiffs agreed to provide supplemental responses to at least Defendants' Interrogatories Nos. 1 and 11 and represented that these supplemental responses "should moot the pending joint stipulation." Defendants agreed to postpone filing of the Joint Stipulation pending receipt of Plaintiffs' supplemental responses and further evaluation of the necessity of the Joint Stipulation.

After reviewing Plaintiffs' supplemental interrogatory responses, Defendants have identified several deficiencies with respect to the information requested in Defendants' Interrogatories and in Defendants' portion of the draft Joint Stipulation. Defendants request that Plaintiffs remedy these deficiencies in a timely manner in order to avoid involing the Court.

**Technical Issues**

First, there are several technical issues with Plaintiffs' supplemental responses, at least some of which are issues previously raised by Defendants.

Interrogatory No. 11 requests that Plaintiffs identify, *inter alia*, documents, by bates number, comprising Plaintiffs' trade secrets. Like Plaintiffs' original Response to Interrogatory No. 11, Plaintiffs' Supplemental Response to Interrogatory No. 11 identifies "cover sheet" documents (e.g., MASM0056527). As Defendants have previously explained, these cover sheet documents have little substantive content and, as such, are unlikely to comprise Plaintiffs' trade secrets. Presumably, Plaintiffs' "cover sheets" are associated with one or more separate documents containing substantive content, but Defendants have no way of determining which, if any, document(s) is/are associated with these cover sheets. Defendants reiterate their request that Plaintiffs either remove these cover sheets from any identification of trade secret documents, identify which portion of the coversheet constitutes a trade secret, or provide Defendants with information sufficient to allow Defendants to associate these cover sheet documents with any associated trade secret documents.

Similarly, Plaintiffs' Supplemental Response to Interrogatory No. 11 identifies email exchanges with attachments, but as Defendants have previously informed Plaintiffs, Plaintiffs' production lacks sufficient metadata linking emails with associated attachments. Accordingly, it is impossible for Defendants to determine (a) whether Plaintiffs are identifying email attachments as containing trade secrets and, if so, (b) where to find the email attachments in Plaintiffs' production. Defendants reiterate their request that Plaintiffs provide the information requested in Defendants' letters of June 24, 2020 and July 2, 2020.

Additionally, Plaintiffs' Supplemental Response to Interrogatory No. 11 identifies a number of documents that either do not exist or have not yet been produced. For example, Plaintiffs have not produced documents bearing at least the following bates numbers: 142331, 142392, 142333, 142340, 141623, 142698, 142737, 143849, 142186, 142210, 142257, 142263, 142278, 142326, 143329, 142330, 141025, 141099, and 141425. Defendants request that Plaintiffs produce all documents identified in Plaintiffs' supplemental interrogatory responses, along with any other responsive documents that Plaintiffs have identified.

Plaintiffs' Supplemental Response to Interrogatory No. 11 also includes, for the first time, identification of certain files and folders in Plaintiffs' source code. Plaintiffs' allege that these files comprise Plaintiffs' trade secrets. However, despite Defendants' Request for Production No. 48, which requests production of all documents identified in Interrogatory No. 11, Plaintiffs have not yet produced or provided access to Plaintiffs' source code pursuant to the Protective Order. Defendants therefore request that Plaintiffs promptly produce or make available pursuant to the

Protective Order all of Plaintiffs' source code which contains the files and/or folders cited in Plaintiffs' Supplemental Response to Interrogatory No. 11, so that Defendants can fully understand the nature of Plaintiffs' new allegation that these files contain Plaintiffs' trade secrets.

**Substantive Deficiencies—Supplemental Response to Interrogatory No. 1**

Second, Plaintiffs' supplemental interrogatory responses fall short of providing the full scope of the information requested in Defendants' Interrogatories and in Defendants' portion of the draft Joint Stipulation.

Defendants' Interrogatory No. 1 requested that Plaintiffs "Identify . . . each trade secret of the Plaintiffs that each of the Plaintiffs contend was misappropriated by Defendants."

As an initial matter, Defendants note that Plaintiffs' Supplemental Response to Interrogatory No. 1 fails to specify which of the alleged trade secrets belong to which of Plaintiffs. Masimo and Cercacor purport to be separate and distinct corporate entities. Indeed, Plaintiffs' belief in the separation and independence of these entities is demonstrated by, *inter alia*, Plaintiffs' claim to damages in this case based on the alleged refunding of licensing fees paid to Cercacor by Masimo. For at least this reason, it is critical that Plaintiffs make clear which of the alleged trade secrets belong to which separate entity. Please immediately supplement Plaintiffs' response to Interrogatory No. 1 accordingly.

Additionally, as explained at length in Defendants' portion of the proposed Joint Stipulation, there is a "distinction between describing concepts or ideas versus actual trade secrets." *SocialApps, LLC v. Zynga, Inc.*, No. 4:11-CV-04910, 2012 U.S. Dist. LEXIS 82767, at *12 (N.D. Cal. June 14, 2012). When a trade secret plaintiff identifies its trade secrets in litigation, "listing general concepts or categories of information is plainly insufficient." *W. Air Charter*, at *11-13 (C.D. Cal. Apr. 9, 2018) (quoting *Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1114 (N.D. Cal. 2016)).

Each of the trade secrets identified in Plaintiffs' Response to Interrogatory No. 1 is a general concept or category of information. Defendants raised this issue in the Joint Stipulation and requested that Plaintiffs identify "specific, legally protectable information" associated with these concepts and/or categories. But rather than remedying this issue by providing the requested information, Plaintiffs' Supplemental Response to Interrogatory No. 1 only compounds the problem. Categories 1-5 are nearly identical to categories previously identified and, as such, suffer from the same flaws as outlined in Defendants' portion of the Joint Stipulation. Likewise, categories 6-22  merely identify concepts and categories of information rather than identifying legally protectable trade secret information. Because none of these trade secret categories identifies specific trade secret information, Defendants will presume that

Plaintiffs' alleged trade secrets are limited to and coextensive with the information contained in the documents identified in Plaintiffs' Supplemental Response to Interrogatory No. 11 as the documents comprising each of the trade secrets.

Furthermore, Defendants take issue with Plaintiffs' addition of new trade secret categories in Plaintiffs' Supplemental Response to Interrogatory No. 1. Defendants have consistently requested that Plaintiffs supplement their trade secret identifications to provide a more detailed description of the alleged trade secrets. At no point, however, have Defendants contemplated the addition of new trade secret categories, much less the addition of categories completely unrelated to those identified at the outset of this litigation. The addition of new trade secret categories after Plaintiffs have accessed Defendants' highly confidential source code and engineering documents is inappropriate. *See, e.g., Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 U.S. Dist. LEXIS 91333 (N.D. Cal. May 31, 2018) (finding that plaintiff's attempts to provide new trade secret disclosures after preliminary injunction briefing raised a "concern of abuse" and warranted strict limitations on plaintiff's claims). The new trade secret categories 6-22 do not appear to relate to the original categories 1-15 provided by Plaintiffs. Unless Plaintiffs are able to establish that new trade secret categories 6-22 belong to one of the categories previously identified by Plaintiffs, Defendants will seek relief from the court to prevent the late and prejudicial addition of these claims.

Similarly problematic is Plaintiffs' continued refusal to place definitive (or even semi-definitive) bounds on the trade secrets at issue in this case. Not only have Plaintiffs inappropriately added 16 categories of new trade secrets nearly two years into litigation, but Plaintiffs' responses suggest an intent to broaden their claims even *further* in the coming months. For instance, despite Defendants repeated reminders that the use of open-ended qualifiers is inappropriate in a trade secret identification, Plaintiffs' supplemental response does not address this problem, leaving categories 1-5 open-ended with the use of the catchall term "including . . . ". Even worse, though, is the catchall language that Plaintiffs include at the end of their trade secret list. Apparently believing the 22-category list to be insufficiently comprehensive, Plaintiffs add:



Merchant & Gould     |  1801 California St. • Suite 3300 • Denver, CO 80202

Exhibit I
Page 4 of 8



In other words, Plaintiffs appear to be claiming that the entirety of Lamego's employment by Plaintiffs constitutes one all-inclusive trade secret. Such an assertion flies in the face of the relevant law, which requires particularized identification of specific trade secret information. Unless Plaintiffs agree to the removal of the above-cited language and the removal of any catchall terminology (e.g., "including"), Defendants will seek relief from the court to bring Plaintiffs' responses into compliance with well-established principles of trade secret law.

**<u>Substantive Deficiencies—Supplemental Response to Interrogatory No. 11</u>**

In their Supplemental Response to Interrogatory No. 11, Plaintiffs identify a long list of documents allegedly comprising Plaintiffs' trade secrets. As noted above, Plaintiffs' trade secret list merely identifies concepts or categories of information, forcing Defendants to presume that Plaintiffs' alleged trade secrets are limited to and coextensive with the information contained in the documents identified in Plaintiffs' Supplemental Response to Interrogatory No. 11. But Defendants have also identified several deficiencies in this list of alleged trade secret documents, many of which render the documents insufficient for purposes of trade secret identification.

Critically, many of the documents identified in this supplemental response appear to have been created not only after Lamego departed from Cercacor but, in some cases, after the commencement of this litigation. For example, the document bearing bates number MASM0140917 displays a "Created Date" of June 20, 2020. The document itself does not contain anything indicating creation prior to June 20, 2020. This raises serious concerns that this

document, which Plaintiffs identify as evidence of *at least six* of Plaintiffs' alleged trade secrets, did not exist during Lamego's employment by Plaintiffs and/or was created solely for the purposes of this litigation. As another example, the document bearing bates number MASM0062538 displays a "Created Date" of July 8, 2019. Even looking past this red flag to the contents of the document, though, the header of the document reads "Copyright Cercacor Laboratories, Inc. 2015." As you're aware, Lamego departed Cercacor in 2014. Accordingly, there is no reason to believe that Lamego would have had access to a document created in 2015, let alone in July of 2019. These are only two examples of many. Unless Plaintiffs are able to produce documents with sufficient evidence of creation prior to Lamego's departure from Cercacor, Lamego did not—and, indeed, could not—access any document bearing a "Created Date" after Lamego's departure from Cercacor.

Additionally, Plaintiffs' list of trade secret documents does not address several of the concerns raised in Defendants' Joint Stipulation. As Defendants have explained, trade secret identification requires that a party "distinguish the party's claimed trade secrets from matters generally known to those skilled in the trade, and must contain a high level of detail in a highly technical field." *I-Flow Corp. v. Apex Med. Techs., Inc.*, No. 07cv1200, 2008 U.S. Dist. LEXIS 44551, (S.D. Cal., May 23, 2008). This requirement is consistent with Defendants' request that Plaintiffs "identify the exact portion of the document that comprises the trade secret."

Plaintiffs' Supplemental Response to Interrogatory No. 11 completely fails to comply with these requirements. Nearly every identified document seems to contain at least some information that Plaintiffs could not reasonably claim to be trade secret information. A few examples are particularly egregious. For instance, the document bearing bates number MASM012688 is a 200-slide presentation. The majority of this presentation covers fundamental principles of linear algebra, which are certain to be known to those skilled in the trade. And yet, Plaintiffs identify the entire presentation as comprising Plaintiffs' trade secret information. Likewise, Plaintiffs identify the entirety of the document bearing bates number MASM0080839 as comprising Plaintiffs' trade secret information. Review of this document reveals, however, that the document contains both general background information about Cercacor and summary of Marcelo Lamego's resume, neither of which is likely to be trade secret information. As a final example, MASMO00140627 is a 186-page document with a wide range of information about pulse rate algorithms, at least some of which is highly likely to be generally known to those skilled in the trade. Once again, though, Plaintiffs provide no indication or explanation of (a) which portions of the document comprise trade secret information or (b) how this information is distinct from what is generally known in the field. For these and for all other documents containing both trade secret and non-trade secret information, Plaintiffs must distinguish between the two and, for the trade secret information, distinguish that information from what is generally known. It is not Defendants job to figure out what Plaintiffs consider to be their trade

secrets. And Plaintiffs failure to do so prevent Defendants from fully preparing their defenses
and being able to sufficiently prepare for depositions. Plaintiffs must specifically identify its trade
secrets and the exact portion of its documents that contain those trade secrets.

Finally, Defendants note the questionable relationship between many of the documents
identified in Plaintiffs' Supplemental Response to Interrogatory No. 11 and the trade secret
categories of Plaintiffs' Supplemental Response to Interrogatory No. 1. Plaintiffs state that the
documents identified are "representative" of their alleged trade secrets. For many of these
documents, though, the degree to which they are representative is unclear.

For example, Plaintiffs claim trade secret information relating to the ███████████
significance of light piping reduction. However, a number of the documents identified as
comprising this trade secret knowledge contain little, if any, information that could reasonably
be viewed as ████████████████████████████ For instance,
MASM0078366 and MASM79489 are each PowerPoint slides apparently relating to a design
timeline for a prototype device. One of the slides appears to state that the design team had a
plan to ████████████████████████████████████████
████████████████████████. Therefore, Defendants are left to wonder whether
Plaintiffs believe that the mere intent to conduct experiments on subject to constitutes trade
secret knowledge on that subject. Similar issues can be found in MASM0078467 and
MASM0089569. These documents contain a mention of ████████████ but these documents
merely mention that the Cercacor team █████████████████████████████
████████████████████████████. Again, Defendants must question the
extent to which these documents *comprise* trade secret information versus the extent to which
these documents merely *reference* information that Plaintiffs view as trade secret. Defendants
therefore request that Plaintiffs review the documents identified as containing trade secrets and
distinguish between those documents that comprise trade secret information and those
documents that merely reference potential trade secret information. Again, Plaintiffs must
identify its documents and the specific portions of each document containing its alleged trade
secrets.

## Confidentiality Designation

Finally, Defendants believe that Plaintiffs' confidentiality designation of certain
information in their interrogatory responses is improper. While Defendants recognize the
interest in protecting the confidentiality of certain information, there are countervailing interests,
including due process interests, when the confidentiality designation serves to prevent a party
from defending itself in litigation. Here, Plaintiffs' trade secret list merely identifies concepts and
categories of information. In this circumstance, designating this information as "Attorneys' Eyes
Only" is improper. *See Mitchell Int'l, Inc. v. HealthLift Pharmacy Servs., LLC*, No. 2:19-cv-000637-

RJS-DAO, 2020 U.S. Dist. LEXIS 91747, at *8-9 (D. Utah May 26, 2020) ("Because [plaintiff]'s interrogatory responses merely identify which trade secrets are at issue in their misappropriation claim, maintaining the attorneys'-eyes-only designation for the interrogatory responses would prevent the [] Defendants from defending against the misappropriation claim."). The same is true of the chart provided in response to Interrogatory No. 11, which merely identifies the file names of items containing alleged trade secrets, without containing the actual trade secrets themselves. Accordingly, Defendants request that Plaintiffs remove the "Attorneys' Eyes Only" designation of at least their Supplemental Response to Interrogatory No. 1 and the chart provided in their Supplemental Response to Interrogatory No. 11.

Defendants request that Plaintiffs remedy the above-described technical and substantive deficiencies by July 24, 2020. To the extent Plaintiffs are unable or unwilling to do so, Defendants are available to meet and confer.

Sincerely,

Ryan J. Fletcher

Exhibit J

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

333 Bush St., 21st Fl., San Francisco, CA 94104
**T** (415) 954-4114

Nick Belair
Nick.Belair@knobbe.com

July 31, 2020
**VIA EMAIL:** RFletcher@merchantgould.com

Ryan Fletcher
Merchant & Gould
1801 California Street
Suite 3300
Denver, CO 80202

Re:   *Masimo Corp and Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego*, Case No.
8:18-cv-2001-JVS-JDE

Dear Ryan:

I write in response to your July 14, 2020 letter regarding Plaintiffs' supplemental responses to Interrogatory Nos. 1 and 11.  Plaintiffs disagree with Defendants' characterization of the supplemental responses.  As detailed below, and contrary to your assertions, Plaintiffs' supplemental response to Interrogatory No. 1 identifies the misappropriated trade secrets with reasonable particularity, and Plaintiffs' supplemental response to Interrogatory No. 11 sufficiently identifies documents "representative of the trade secrets that Defendant Lamego had access to and/or was involved in the development of, while employed by Masimo and/or Cercacor," for trade secrets at issue in this litigation. Below, I specifically address the issues claimed in your letter.

## Technical Issues

First, your letter complains that Defendants are unable to determine which technical documents correspond to the "cover sheet" documents Plaintiffs identified in the supplemental response to Interrogatory No. 11.  The source of Defendants' confusion is unclear.  Plaintiffs' supplemental response identified a single "cover sheet" document (MASM0056527).  That document corresponds to the technical drawing produced with the immediately preceding bates stamp (MASM0056526), which Plaintiffs also identified in the supplemental response.

Second, your letter complains that Defendants are unable to identify the attachments that correspond to the emails identified in Plaintiffs' supplemental response to Interrogatory No. 11.  Plaintiffs addressed this issue via letter on July 16, 2020.  In connection with that letter, Plaintiffs also provided an overlay file to enable Defendants to associate produced emails with their corresponding attachments.

Third, your letter claims Plaintiffs did not produce several documents referenced in their supplemental response to Interrogatory No. 11.  This is incorrect.  Plaintiffs first produced the referenced documents as PDFs in conjunction with Plaintiffs' supplemental response to Interrogatory No. 11.  On July 7, 2020, Plaintiffs provided Defendants with load files, OCR, and images for that production volume (MASM016).

Fourth, your letter complains that Plaintiffs supplemental responses identify several of Plaintiffs' source code files as representative of the misappropriated trade secrets.  In accordance with Defendants' Request for Production No. 48, Plaintiffs have made the referenced source code files available for inspection at Knobbe Martens' Irvine, California office.  Please confirm a time for Defendants' intended inspection so that we may coordinate office staff and prepare the room in accordance with applicable COVID-19 guidelines.

## Plaintiffs' Supplemental Response to Interrogatory No. 1

Defendants complain that Plaintiffs' supplemental response to Interrogatory No. 1 fails to specify which of the identified trade secrets belong to which separate entity.  Plaintiffs will supplement their response to identify, with additional specificity, the trade secrets that belong to each entity.

INTELLECTUAL PROPERTY + TECHNOLOGY LAW | **knobbe.com**

# Knobbe Martens

Defendants characterize Plaintiffs' identified trade secrets as comprising "general concept[s] or categor[ies] of information." That is incorrect. The listed trade secrets are not general concepts or categories of information. They are specific to information Lamego learned over the course of his career under Plaintiffs' employ. For example, trade secrets ██████████████████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████████.
Trade secret ██████████████████████████████████████████████████
██████████████

These examples, and the rest of the listed trade secrets in Plaintiffs' supplemental response, are readily distinguishable from the "general concepts" and "categories of information" at issue in the cases cited in your letter. For example, in *Social Apps, LLC v. Zynga, Inc.,* No. 4:11-CV-04910 YGR, 2012 WL 2203063, at *3 (N.D. Cal. June 14, 2012), the plaintiff had generically identified "source code," "[t]echnical aspects of … the myFarm game," and "gameplay items" as its purported trade secrets. *See also, W. Air Charter,* at *11-13 (C.D. Cal. Apr. 9, 2018) (granting motion to compel where plaintiff listed generic "negotiated terms of agreements" and "training procedures and policies" among its asserted trade secrets). Here, by contrast, Plaintiffs have focused their trade secret identification on the specific information Lamego learned at Masimo and/or Cercacor and misappropriated in the development of the Oxxiom device.

Moreover, as Plaintiffs have repeatedly explained, in view of Lamego's unfettered access to Plaintiffs' proprietary information over a decade, the identified trade secrets are not necessarily reflected in only a few specific technical documents or written correspondence. Accordingly, Defendants' "presumption" that the alleged trade secrets "are limited to and coextensive with the information contained in the documents identified in Plaintiffs' Supplemental Response to Interrogatory No. 11," is incorrect, and testimony will also provide evidence at trial.

Defendants also "take issue" with Plaintiffs' identification of additional trade secrets based on Plaintiffs' review of Defendants' source code and technical documents. This is at odds with Defendants' repeated demands that Plaintiffs supplement their trade secret identification in view of Defendants' source code and technical document production. *See, e.g.,* June 5 Letter from Fletcher to Belair and related correspondence. Plaintiffs did what Defendant's demanded, and which was expected as part of the discovery process.

Defendants' reliance on *Swarmify, Inc. v. Cloudflare, Inc.,* No. C 17-06957 WHA, 2018 WL 2445515, at *3 (N.D. Cal. May 31, 2018) to suggest that Plaintiffs' supplemental responses are improper or untimely, is misplaced. There, the plaintiff replaced its original §2019.210 trade secret disclosures with an entirely new set of trade secrets shortly after losing on a motion for preliminary injunction against the defendant. *Swarmify,* 2018 WL 2445515 at *3. The defendant took issue with the plaintiffs' use of the preliminary injunction motion as a mechanism to obtain early discovery, from which it developed its new trade secret list. *Id.* Notwithstanding, the court ***allowed*** the plaintiff to proceed on its amended trade secret disclosures. *Id.*

Furthermore, unlike in *Swarmify,* §2019.210 does not govern the proceedings in this case. That statute requires disclosure of trade secrets "before commencing discovery." Cal. Civ. Code §2019.210. During the February 25, 2019 scheduling conference, Judge Selna did not adopt the §2019.210 standard, but did address the issue of "how we're going to get a clear definition of what the trade secrets are in this case." Feb. 25, 2019 Hearing Tr., 5:10-11. With respect to Defendants' then-pending Interrogatory No. 1, Judge Selna stated: "if there is any dispute as to the adequacy of the response, [Defendants] are free to move this Court on a seven-day ex parte basis to compel. We're going to get that issue out of the way early." *Id.* at 6:23-7:1. Plaintiffs responded to that interrogatory on March 15, 2019. Defendants did not claim any inadequacy or file an ex parte motion to compel, and the parties proceeded with discovery. In view of Defendants' technical document production clarifying misappropriation, Plaintiffs supplemented their trade secret list to clarify the scope of the trade secrets, as demanded by Defendants.

There is also nothing improper about Plaintiffs' identification of trade secrets in the supplemental response, particularly given that Plaintiffs could not have known about certain items of Defendants' misappropriation without reviewing the source code or other technical documents produced in the case. *See Perlan Therapeutics, Inc. v. Superior Court,* 101 Cal.Rptr.3d 211, 226, 178 Cal. App. 4th 1333, 1350–51 (Cal. App. 4 Dist., 2009) ("If, through

knobbe.com
Exhibit J
Page 2 of 4

# Knobbe Martens

discovery, Perlan uncovers information suggesting defendants misappropriated additional trade secrets, it may have good cause to amend its trade secret statement under appropriate circumstances."). Indeed, courts routinely entertain supplemental or amended trade secret disclosures based on information learned through discovery. *See id.*; *see also Vacco Industries, Inc. v. Van Den Berg*, 6 Cal.Rptr.2d 602, 612, 5 Cal. App.4th 34, 51 n.16 (Cal.App. 2 Dist.,1992) (finding "no error" in plaintiff amending §2019.210 disclosures "several times" after discovery had commenced).

Defendants also contend that unless Plaintiffs "establish that new trade secret categories 6-22 belong to one of the categories previously identified," Defendants will seek to strike or otherwise limit Plaintiffs' asserted trade secrets. The law does not support Defendants' position. *See Vacco Industries*, 6 Cal. Rptr. 2d at 612, n.16 (denying defendants' motion *in limine* which sought to limit plaintiffs to the trade secrets described in their original notice). Contrary to Defendants' argument, and like the plaintiff in *Swarmify*, Plaintiffs' supplemental identification of trade secrets is not "unmoored from the core technology" in Plaintiffs' initial response to Interrogatory No. 1. *Swarmify*, 2018 WL 2445515 at *3. Thus, Defendants are not prejudiced by Plaintiffs' supplemental trade secret identification. Indeed, with plenty of time left in discovery, and not a single deposition taken to date, Defendants have ample opportunity to investigate Plaintiffs' trade secrets and develop any appropriate defenses.

Defendants argue that Plaintiffs' use of the word "including" in its supplemental trade secret identification "suggest[s] an intent to broaden" Plaintiffs' claims. As described above, further discovery may reveal the need to supplement the response again. Case law does not limit Plaintiffs' identification of trade secrets in the manner suggested by your letter. Furthermore, as used in trade secrets 1-5, the word "including" introduces a more specific subset of the trade secrets.

Finally, Defendants' complaints regarding Plaintiffs' purported "catchall language" after the trade secret list are similarly unavailing. That language makes clear that Plaintiffs allege Lamego used Plaintiffs' trade secret information to select which techniques to use from the myriad of available options.

## Plaintiffs' Supplemental Response to Interrogatory No. 11

First, for all the reasons discussed above with respect to Interrogatory No. 1, Defendants' presumption that "Plaintiffs' alleged trade secrets are limited to and coextensive with the information contained in the documents identified in Plaintiffs' Supplemental Response to Interrogatory No. 11," is incorrect.

Defendants speculate that some of the documents cited in Interrogatory No. 11 may not have existed during the time of Lamego's employment at Plaintiffs, or were otherwise created for the purpose of this litigation. To Plaintiffs' knowledge, all of Plaintiffs' documents cited in the response were first created while Lamego was employed at Plaintiffs. Although some of the documents show "date created" metadata after Lamego resigned from Cercacor, this appears to be the result of the underlying file being moved or copied within Plaintiffs' document databases or during document collection by counsel. Indeed, nearly all of these documents reflect, on the face of the document, a creation date during the tenure of Lamego's employment. Notwithstanding, we will investigate the documents you specifically identified in your letter (MASM0140917 and MASM0062538) to confirm what we are able to regarding their respective creation dates. We note, however, that the revision history date of MASM0062538 is in 2013, when Lamego was still employed at Cercacor.

Defendants also argue that Plaintiffs' trade secret identification fails to distinguish Plaintiffs' trade secrets from matters generally known and fails to contain a high level of detail in a highly technical field. Defendants' argument is incorrect. The very nature of the listed trade secrets distinguishes them from matters generally known. These trade secrets relate to ███████████████████████. The trade secrets are not described in Plaintiffs' patent filings or published materials, and are also not generally known to those skilled in the trade. The remaining trade secrets, ██████████ ████████████████████████████████████████████ are also not generally known because they are confidential to Masimo and/or Cercacor.

Defendants further complain that several of the documents cited in Plaintiffs' response to Interrogatory No. 11 contain information that does not constitute Plaintiffs' trade secrets. For example, Defendants specifically identify MASM0080839 as "comprising Plaintiffs' trade secret information." However, as called for in Interrogatory No. 11,

knobbe.com
Exhibit J
Page 3 of 4

the document demonstrates that trade secrets were disclosed to Lamego.  It identifies Lamego's integral role in several of Cercacor's technical projects which involved several of the trade secrets identified in response to Interrogatory No. 1.  Defendants also identify MASM0126888 and MASM0140627.  The former is a confidential presentation that Lamego delivered to several of Masimo's key engineers.  The document discloses how Plaintiffs have adapted fundamentals to solve specific technical issues that arise in the context of Plaintiffs' technical development activities.  The latter document is a confidential Masimo design specification that discloses the structure and implementation of one of Masimo's pulse rate algorithms.  If Defendants' contend the solution presented is generally known, Plaintiffs disagree, and that will be an issue for the jury to decide.  Plaintiffs also maintain that the combination of components used to implement the algorithm constitute one of Masimo's highly guarded trade secrets.

Defendants also complain that they are unable to discern the connection between some of the documents listed in Interrogatory No. 11 and the corresponding trade secrets identified in Interrogatory No. 1.  The specific examples Defendants identify reveal a fundamental misunderstanding of the listed documents.  Indeed, Defendants point to MASM0078366 and MASM079489, which are presentation slides that outline the timeline of certain Cercacor projects.  These documents demonstrate that trade secrets were disclosed to Lamego, as called for in the interrogatory.

Finally, regarding Defendants complaints about the confidentiality designations on Plaintiffs' interrogatory responses, Plaintiffs note that at least the information contained in the Supplemental Response to Interrogatory No. 1 constitutes Plaintiff's highly confidential, attorneys' eyes only information.  As for the Supplemental Response to Interrogatory No. 11, Plaintiffs contend that the source code filenames listed in the response constitute Plaintiffs' highly confidential, attorney's eyes only information.  However, Plaintiffs disagree that the confidentiality designations on the responses and/or documents present any due process concerns.

Sincerely,

Nicholas A. Belair

Exhibit K



1801 California Street
Suite 3300
Denver, CO 80202

Zach D. Kachmer
303.357.1181
ZKachmer@merchantgould.com

September 14, 2020

Nick Belair
Knobbe Martens Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

Re: **Masimo Corp. and Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego Case No. 8:18-cv-2001-JVS-JDE**

Dear Nick:

I write in response to your July 31, 2020 letter, in which you responded to Defendants' July 14, 2020 letter. Defendants' July 14, 2020 letter identified several deficiencies in Plaintiffs' supplemental interrogatory responses. For at least the reasons set forth below, Defendants disagree with the positions taken in your letter and maintain that Plaintiffs' Supplemental Responses to Interrogatory Nos. 1 and 11 are deficient in several respects. Defendants request that Plaintiffs reconsider their prior positions and further supplement their Responses to Interrogatory Nos. 1 and 11 to address these deficiencies. If Plaintiffs are unwilling to do so, the parties are at an impasse, and we request your availability to meet and confer regarding Defendants' intention to file a Motion to Compel.

**Trade Secret Ownership**

In your letter, you committed to supplementing your response to identify the owner of each of the trade secrets identified in your Supplemental Response to Interrogatory No. 1. Defendants have not yet received this information from Plaintiffs. Defendants request that Plaintiffs provide such a supplement by September 22, 2020.

**Failure to Identify Legally Protectable Trade Secret Information**

In Defendants' July 14 letter, Defendants explained that there is a "distinction between describing concepts or ideas versus actual trade secrets." In that letter, Defendants noted that each of the

trade secrets identified in Plaintiffs' updated trade secret list is a general concept or category of information.

In your response, Plaintiffs disagreed, stating that "[t]he listed trade secrets are not general concepts or categories of information" but rather "are specific to information Lamego learned over the course of his career under Plaintiffs' employ." Plaintiffs argue that the trade secret identifications in *Social Apps* and *W. Air Charter* were generic, while Plaintiffs' identifications are "focused" on "specific information Lamego learned."

In short, we disagree. First, several of Plaintiffs' alleged trade secres are broad and generic, not specific. As such, the alleged trade secrets do not satisfy the requirement that they "have enough specificity to provide both the Court and defendants with notice of the boundaries of th[e] case." *Citcon USA, LLC v. RiverPay Inc.*, 2018 WL 6813211, at *4 (N.D. Cal. Dec. 27, 2018). For example, alleged trade secret 5 is ███████████████████████████████████████ at least wireless, disposable pulse oximeters and pulse sensors, including: . . . (c) [k]knowledge of Masimo's and Cercacor's competitive analysis and important product gaps in the market." This identification is far from specific. Rather, it leaves one to wonder what specific competitive analysis is being referred to, the product gaps identified, the time period associated with these analyses, etc. As another example, alleged trade secret 15 is █████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████ is hardly helpful in this case, where every patent and trade secret at issue relates to "noninvasive monitoring."

Second, even if Plaintiffs' trade secret descriptions were as "focused" and "specific" as Plaintiffs suggest, the *specificity* of the trade secret identification would not be the only relevant inquiry. Even the most *specific* idea is still an idea and, as such, not legally protectable as a trade secret. *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 220 (2010) ("Trade secret law does not protect ideas as such."). Despite repeated complaints, Plaintiffs still claim ideas as alleged trade secrets.

Under the CUTSA, a trade secret is "*information*" that must "derive[] independent economic value, actual or potential, from not being generally known." Items 1-3 on Plaintiffs' trade secret list each identify "knowhow *relating to*" some topic as being a trade secret. But Defendants' Interrogatory No. 1 asks Plaintiffs to <u>identify</u> their trade secrets, not to merely describe the concepts or topics to which those trade secrets relate. If the trade secret is certain "knowhow," what is it that Plaintiffs know that others do not? If the trade secret is a certain "understanding", what is it that Plaintiffs understand that others do not?

Alleged trade secret 1a is illustrative. Plaintiffs point to this alleged trade secret, claiming that it identifies "specific information Lamego learned." Trade secret item 1a identifies ██████████████

2

██████████████████████████████████████ as being a trade secret. But because ████████████████████████████████ is merely a concept or idea, it is impossible to determine whether Lamego learned ██████████████████████████ If Plaintiffs allege that Lamego learned certain information related to ████████████████████, Plaintiffs must identify this information. It is not sufficient for Plaintiffs to provide conceptual categories of information as a tactic to postpone the actual identification of trade secrets.

Trade secrets 1, 5, and 15 are only offered as examples of these problems that plague Plaintiffs' entire trade secret disclosure. Indeed, each and every one of Plaintiffs' alleged trade secrets is merely a "broad category[y] of information that would be applicable to any business" that is "indistinguishable from matters within the parties' industry." *CleanFish, LLC v. Sims*, No. 19-CV-03663-HSG, 2020 WL 1274991, at *9 (N.D. Cal. Mar. 17, 2020). If Plaintiffs cannot identify the information that constitutes their trade secrets, it is impossible for Defendants—or, for that matter, the court or a jury—to determine either (a) whether these are, in fact, trade secrets of Plaintiffs or (b) whether Lamego ever misappropriated this information. *Id.*

Defendants' identification of alleged trade secrets lack specificity and/or are nothing more than concepts or topics and cannot stand.

**Improper Addition of New Trade Secrets**

Defendants' July 14 letter also noted that Plaintiffs' addition of new trade secrets at this stage of the case is improper.

In your response, Plaintiffs argue that Defendants' objection to new trade secrets is "at odds" with Defendants' repeated requests that Plaintiffs supplement their trade secret identifications "in view of Defendants' source code and technical document production." This mischaracterizes Defendants' requests. In the correspondence you cite, Defendants argued that Plaintiffs' review of Defendants' technical documents should enable them to provide more information about their claims of *misappropriation*. With regard to the *identification* of trade secrets, though, Defendants have consistently asked for a more particular identification of the *existing* trade secrets. *See, e.g.*, June 5 Letter from Fletcher to Belair ("Plaintiffs' [trade secret] list lacks important details regarding *the alleged trade secrets*.") Defendants have never requested that Plaintiffs identify new trade secrets. Indeed, in the correspondence Plaintiffs cite, Defendants argued that Plaintiffs' use of open-ended language had "le[ft] the exact boundaries of Plaintiffs' allege trade secrets entirely unknown." It is hard to understand how Plaintiffs could read this as an invitation to drastically shift those boundaries with an entirely new trade secret list.

Defendants' July 14 letter cited *Swarmify* as an example of an instance where the court found the post-discovery addition of trade secrets to be prejudicial to defendants. There, the court explained that a pre-discovery trade secret identification ensures that a plaintiff cannot "take discovery into

3

Exhibit K
Page 3 of 9

defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Swarmify, Inc. v. Cloudflare, Inc.*, No. C 17-06957 WHA, 2018 U.S. Dist. LEXIS 91333, at *6 (N.D. Cal. May 31, 2018) (quoting *Jobscience, Inc. v. CVPartners, Inc.*, No. C 13-04519 WHA, 2014 U.S. Dist. LEXIS 64350 (N.D. Cal. May 1, 2014)).

Plaintiffs argue that the citation to *Swarmify* is misplaced because (a) the plaintiff in that case replaced its trade secret disclosure with an "entirely new set of trade secrets", (b) the plaintiff updated its trade secret list based on early discovery related to a preliminary injunction motion, and (c) § 2019.210 governed the proceedings in that case. None of these arguments, however, detract from the prejudice to Defendants or justify Plaintiffs' unilateral addition of trade secrets.

First, Plaintiffs' updated trade secret list is, in effect, an entirely new set of trade secrets. Plaintiffs' initial trade secret list contained 15 categories. Plaintiffs' new trade secret list contains 4 of those original 15 categories, along with 18 entirely new categories. The retention of 4 of the original categories in no way reduces the prejudice to Defendants caused by the addition of 18 entirely new categories.

Second, the lack of a preliminary injunction motion does not change the analysis. Plaintiffs expressly state that they added new trade secrets "based on Plaintiffs' review of Defendants' source code and technical documents." The fact that Plaintiffs obtained these documents in the course of normal discovery, instead of in connection with a preliminary injunction motion, does not make the addition of trade secrets any less prejudicial. Again, the concern is that plaintiffs will "take discovery into defendants' files, and then cleverly specify whatever happens to be there as having been trade secrets stolen from plaintiff." *Swarmify*, 2018 U.S. Dist. LEXIS 91333, at *6. The post-discovery addition of trade secrets prejudices defendants whether that discovery is "early discovery," as in *Swarmify*, or is routine discovery, as is the case here. In fact, identification of new trade secrets late in the case and well into discovery is even more prejudicial to Defendants because they have already begun developing and solidifying their defenses and litigation strategies based on the initial trade secret list.  Depositions are underway, and the addition of new trade secrets, 21 months into the case, forces Defendants to have to develop completely new defenses and strategies and to try to defend against an ever moving target.

Finally, although Defendants disagree with Plaintiffs' assertion that § 2019.210 does not apply to this case, the applicability of § 2019.210 is of no consequence. Plaintiffs assert that "Judge Selna did not adopt the §2019.210 standard," citing to the transcript of the February 25, 2019 scheduling conference. However, during that very conference, Plaintiffs' counsel stated that the court should follow procedures "similar to 2019," to which Judge Selna responded: "We have got to get that issue out of the way. . . I do believe that the issue should be resolved promptly." He added: "Presumably [Plaintiffs] had a good idea of what the trade secrets were when the suit was filed." Regardless of Plaintiffs' position on § 2019.210, it was clearly not the court's intention that Plaintiffs

would be able to use an initial trade secret disclosure to gain access to Defendants' technical documents, only to replace that initial disclosure with an entirely new one later in the case.

Plaintiffs also suggest that Defendants' failure to file a motion to compel within seven days of receiving Plaintiffs' initial trade secret list somehow justifies Plaintiffs' near-complete replacement of that initial list. This is incorrect. After receiving Plaintiffs' initial trade secret list, Defendants expected that Plaintiffs would continue to narrow and more specifically identify—within the original categories—their alleged trade secrets with greater particularity as discovery progressed. It gradually became clear, however, that Plaintiffs did not intend to supplement their broad and vague trade secret list before the commencement of depositions and expert reports. At that point, Defendants began to request that Plaintiffs define their trade secrets with greater particularity, referring at times to the "reasonable particularity" standard of § 2019.210 as a guide for the level and type of detail necessary in a trade secret identification. These requests for greater particularity all focused on the *existing* trade secret list. At no point have Defendants contemplated the addition of new trade secret categories. Therefore, there is no basis for Plaintiffs to use Defendants' objections (or the timing thereof) as a justification for their late addition of trade secrets.

Plaintiffs argue that there is nothing improper about unilaterally changing their trade secret allegations at this stage, citing *Perlan Therapeutics* and *Vacco Industries*. But the *Perlan* court rejected this very notion. There, the plaintiff attempted to "reserve the right to unilaterally amend (without leave of the court) its [trade secret] identification so it [could] broaden its lawsuit to include claims it hope[d] to develop in discovery." *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1345, 101 Cal. Rptr. 3d 211, 221 (2009). The district court rejected this attempt, and the appellate court affirmed, stating "*Perlan* is *not entitled to* include broad, 'catch-all' language as a tactic to *preserve an unrestricted, unilateral right to subsequently amend* its trade secret statement." *Id.* at 1350. The court explained that the plaintiff could only amend its trade secret statement "under appropriate circumstances" if it had "good cause" to do so. *Id.* But Plaintiffs have not established (or even attempted to establish) good cause to amend their trade secret disclosure. As the *Perlan* court held, Plaintiffs do not have an unrestricted, unilateral right to amend their trade secrets. Accordingly, it was improper for Plaintiffs to suddenly shift their trade secret allegations by including a completely new trade secret list in their Supplemental Response to Interrogatory No. 1.

### Failure to Place Meaningful Boundaries on Alleged Trade Secrets

In the July 14 letter, Defendants noted that Plaintiffs have refused to place even semi-definitive bounds on the trade secrets at issue in this case. Defendants specifically called out the "catchall language" that Plaintiffs have included at the end of their trade secret list, which effectively asserts that the entirety of Lamego's employment constitutes one all-inclusive trade secret.

Plaintiffs provide only a cursory response, stating that the language "makes clear that Plaintiffs allege Lamego used Plaintiffs' trade secret information to select which techniques to use from the myriad of available options."

This response only confuses the issue and ignores the relevant law. Defendants' Interrogatory No. 1 asks that Plaintiffs identify their trade secrets. If Plaintiffs believe that "Lamego used Plaintiffs' trade secret information to select which techniques to use," Interrogatory No. 1 requires that Plaintiffs identify *what* trade secret information Lamego used, not merely allege that Lamego used trade secret information. As far as identifying what *information* Lamego allegedly used, Plaintiffs identify:

- Information regarding which features and techniques . . . work well

- Information regarding which potential features and techniques . . . work less well

- Knowledge of which features and techniques work better or worse under which conditions

- How to narrow the potential options though application of knowledge of negative information regarding what does not work well under various conditions

- The trade-offs of selecting certain features and techniques, selecting aspects of Plaintiffs' technology compared to other choices

- Knowledge regarding which of the almost limitless potential features, techniques, and combinations thereof that are potentially applicable and could be worth investigating or knowing which techniques or collection of techniques to select

To the extent Plaintiffs are attempting to identify these items as trade secrets, such an identification is contrary to law. These are nothing more than "nebulous concepts that . . . encounter the long-standing tension between employment law and the trade secrets doctrine." *Calendar Research LLC v. StubHub, Inc.*, 2020 U.S. Dist. LEXIS 112361, *12 (C.D. Cal. May 13, 2020); *see also Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1330 (9th Cir. 1980) ("Some knowledge gained by an employee is of such a general character that equity will not restrict its later use."), *Cinebase Software v. Media Guar. Tr.*, No. C98-1100 FMS, 1998 U.S. Dist. LEXIS 15007, at *32-33 (N.D. Cal. Sep. 21, 1998) ("[T]echnical know-how regarding what does and does not work in the process of designing [a product] is simply too nebulous a category of information to qualify for trade secret protection."). Accordingly, Defendants reiterate their request that Plaintiffs completely remove this section and any other catchall, "nebulous" language from their trade secret identification.  This includes removal of language such as "including" from its list of alleged trade secrets.

## Failure to Confirm Document-Creation Dates

Defendants' July 14 letter identified a number of documents identified as "comprising trade secrets" but having a "Created Date" after Lamego's departure from Cercacor. Plaintiffs respond that to their knowledge, all of the cited documents were first created while Lamego was employed at Plaintiffs. Plaintiffs commit to investigate two documents specifically identified in Defendant's letter. This is insufficient. Plaintiffs allege that Defendants misappropriated their trade secrets by "disclosure" and "use." Under both the Federal DTSA and the CUTSA, an individual cannot disclose or use a trade secret unless the individual has "knowledge of the trade secret." *See* 18 U.S.C. § 1839(5)(B). Thus, for any document that Plaintiffs allege comprises a trade secret that was misappropriated by Defendants, Plaintiffs must establish that the document existed while Lamego was employed by Plaintiffs such that Lamego could have gained knowledge of the trade secret. Defendants are entitled to such information now, during the discovery period, not later at trial or when it suits Plaintiffs. If Plaintiffs cannot confirm that a document existed during Lamego's employment, Plaintiffs cannot reasonably allege that Defendants misappropriated the trade secrets included in any such document.

Additionally, the parties have agreed that "[t]o the extent either party believes, on a case by case basis, that . . . metadata should be produced, the parties will meet and confer in good faith concerning such [] production." (Dkt. 25 at 9.) The creation and modification dates of any trade secret documents provide evidence that is critical to Plaintiffs' misappropriation claims and Defendants' ability to defend against this lawsuit. Defendants request that for each and every document identified in Plaintiffs' supplemental response to Interrogatory No. 11, Plaintiffs identify and provide metadata sufficient to identify (i) the date the document was created; (ii) the date of the most recent modification of the document; (iii) the "owner" of the document (as the term is defined in 18 U.S.C. §1839(4)); (iv) the date(s), if any, on which Defendants accessed, viewed, received, or otherwise learned of the document or its contents, including, without limitation, any logs, tracking, or other evidence supporting such access; and (v) all individuals with permission to access the document. If Plaintiffs are unwilling to do so, please affirmatively state as much so that the parties can meet and confer.

## Failure to Identify Specific Portions of Documents

Defendants' July 14 letter pointed out that Plaintiffs had failed to comply with Defendants' request, as stated in Interrogatory No. 11, that Plaintiffs "identify the exact portion of the document that comprises the trade secret." Defendants' letter identified multiple documents that contain information that Plaintiffs could not reasonably claim to be trade secret.

For some of these documents, Plaintiffs respond that the document does not, in fact, contain trade secret information but rather demonstrates that trade secrets were disclosed to Lamego. However,

7

Exhibit K
Page 7 of 9

these documents have been listed under the heading "Documents Representative of Trade Secret." To the extent any document listed under this heading does not comprise one or more of Plaintiffs' trade secrets, Defendants request that Plaintiffs denote as much so that Defendants can understand which documents Plaintiffs believe contain trade secrets and which merely contain alleged evidence of disclosure of trade secrets to Lamego.

For other documents, such as MASM0126888, Plaintiffs explain that the document "discloses how Plaintiffs have adapted fundamentals to solve specific technical issues." However, Plaintiffs do not provide any indication of which portions of this 202-slide presentation contain "fundamentals" and which contain the trade secret application of those fundamentals. If Plaintiffs believe that everything contained in this 202-slide presentation is a confidential trade secret, Plaintiffs should make this position clear. If Plaintiffs believe only some portions of the document are trade secret, Plaintiffs should identify where these trade secrets can be found. Otherwise, Defendants are left to guess which portions of this document (and others like it) Plaintiffs consider trade secret and which they do not. *See Myrio Corp. v. Minerva Network, Inc.,* Case No.: C 00-20996 RMW (PVT), 2001 U.S. Dist. LEXIS 10461 (N.D. Cal. Apr. 4, 2001) (granting motion to compel a more particular identification of trade secrets, stating: "If Plaintiff references a document as setting forth one or more trade secrets, it shall specify precisely which portions of the document describes the trade secret(s).")

### Nature of Plaintiffs' Supplementation

Several aspects of your letter imply that Plaintiffs intend their Supplemental Responses to Interrogatory Nos. 1 and 11 to supersede and replace their originally provided Responses to Interrogatory Nos. 1 and 11. For instance, Plaintiffs dismiss Defendants' concerns about "cover sheet" documents by arguing that "Plaintiffs' supplemental response identified a single 'cover sheet' document," even though the originally provided list of documents identifies over 200 cover sheet documents.

To the extent it is Plaintiffs' intention to supersede and replace their originally provided responses, such an intention is not made clear in the supplemental responses themselves. Therefore, Defendants ask that Plaintiffs confirm that Plaintiffs' Supplemental Responses to Interrogatory Nos. 1 and 11 supersede and replace Plaintiffs' original Responses to Interrogatory Nos. 1 and 11.

### Confidentiality Designations

Finally, Defendants' July 14 letter argued that Plaintiffs had applied improper confidentiality designations to portions of their supplemental responses. Plaintiffs' conclusory response merely states, without any explanation, that the identified portions of Plaintiffs' supplemental responses "constitute[] highly confidential, attorneys' eyes only information."

8

Exhibit K
Page 8 of 9

The Protective Order defines "AEO" information as information "the disclosure of which is likely to cause harm to the competitive position of the Disclosing Party." (Dkt. 100 at 8.) Defendants maintain that Plaintiffs' trade secret list is merely generic. Therefore, the disclosure of this list to Defendants would not cause harm to Plaintiffs' competitive position. Regardless, Defendants reiterate that Defendants have a due process interest in knowing the nature of Plaintiffs' misappropriation claims. If Plaintiffs will not agree to re-designate the identified portions of their supplemental responses, Defendants will apply to the Court for relief pursuant to the Protective Order. (*See* Dkt. 100 at 15.)

By **September 24, 2020**, for each of the above issues, please state whether any of Defendants positions have changed and/or whether Plaintiffs will further supplement their Responses to Interrogatory Nos. 1 and 11 to address the identified deficiencies. As stated above, if Plaintiffs are unwilling to do address these deficiencies, the parties are at an impasse, and we request your availability to meet and confer regarding Defendants' intention to file a Motion to Compel. If necessary, Defendants are available September 25 and 28, 2020 to meet and confer.

Sincerely,

Zach D. Kachmer

Exhibit L

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

333 Bush St., 21st Fl., San Francisco, CA 94104
**T** (415) 954-4114

Nick Belair
Nick.Belair@knobbe.com

October 1, 2020
**VIA EMAIL**: ZKachmer@merchantgould.com

Zach D. Kachmer
Merchant & Gould
1801 California Street
Suite 3300
Denver, CO 80202

Re:   *Masimo Corp and Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego*, Case No. 8:18-cv-2001-JVS-JDE

Dear Zach:

I write in response to your September 14, 2020 letter regarding Plaintiffs' supplemental responses to Interrogatory Nos. 1 and 11.  Plaintiffs disagree with your characterization of Plaintiffs' supplemental responses, and maintain that the responses to each of these interrogatories are sufficient.  However, to avoid a further dispute on this issue, Plaintiffs are willing to provide an additional supplement to address several of the items identified in your letter.  Below I address the numerous inaccuracies in your letter and clarify the scope of Plaintiffs' intended supplement.

**Trade Secret Ownership**

As previously agreed, Plaintiffs supplemental response to Interrogatory No. 1 will identify, with further specificity, which entity or entities own the trade secrets.

**Plaintiffs Have Identified Legally Protectable Trade Secrets**

For the reasons stated in my July 31, 2020 letter, Plaintiffs disagree with Defendants' contention that "each of the trade secrets identified in Plaintiffs' updated trade secret list is a general concept or category of information."  As Plaintiffs explained in that letter, the listed trade secrets are specific information Lamego learned during his tenure at Plaintiffs and that Defendants used in the development of True Wearables' Oxxiom device.

Notwithstanding, to address Defendants' request for additional specificity of Plaintiffs' identified trade secret, Plaintiffs will endeavor to provide further specificity in a further supplemental response to Interrogatory No. 1 with respect to trade secrets 1-3, 5 and 15.

**Plaintiffs' Addition of New Trade Secrets in its July 1 Supplement Was Not Improper**

Defendants again complain that Plaintiffs included additional trade secrets in the supplemental response to Interrogatory No. 1.  Defendants' contend that, after discovery has commenced, a plaintiff may not amend, at any time, a prior trade secret disclosure to identify additional trade secrets and/or to remove previously identified trade secrets.  This makes no sense under the discovery obligations of the Federal Rules, and the caselaw we are aware of holds otherwise.

Indeed, where a plaintiff identifies trade secrets it believes a defendant misappropriated based on its pre-suit investigation and later, through discovery, learns that the defendant in fact misappropriated additional trade secrets, the law allows the plaintiff to identify and assert those trade secrets.  The cases cited in your letter do not support your position, which would allow misappropriation where the Defendant is able to conceal the theft without discovery.

For example, in *Swarmify*, despite the defendants' concerns regarding the amended trade secret disclosure, the court ***allowed*** the plaintiff to proceed on its amended disclosure.   *Swarmify, Inc. v. Cloudflare, Inc.,* No. C 17-

INTELLECTUAL PROPERTY + TECHNOLOGY LAW    |    knobbe.com

Exhibit L
Page 1 of 3

# Knobbe Martens

06957 WHA, 2018 WL 2445515, at *3 (N.D. Cal. May 31, 2018).  This was so even though the plaintiff might have used a preliminary injunction motion as a vehicle to obtain early discovery, after which the plaintiff replaced all of its previously identified trade secrets with a new list.  Here, by contrast, Plaintiffs identified the set of trade secrets it believed Defendants had misappropriated and supplemented that list to identify additional trade secrets identified through discovery, just as demanded by Defendants. Because those secrets were reflected in Defendants' source code, Plaintiffs could not have identified them in the first instance.  Moreover, unlike the *Swarmify* plaintiff, Plaintiffs have not replaced their entire list of secrets.  Instead, as you concede in your letter, Plaintiffs maintained several of the original trade secrets and supplemented the list to identify additional secrets, the theft of which was concealed within the source code.  For several others, Plaintiffs amended the listed secrets to more specifically describe the trade secrets on the original list, just as demanded by Defendants.

Defendants' claim of prejudice based on Plaintiffs' supplemental trade secret identification is without merit.  The close of fact discovery is four months away, the close of expert discovery is seven months away, and Defendants have taken a single deposition—of a third party—unrelated to the merits of the case. Defendants have ample time and opportunity to address the trade secrets.  That Defendants did not "contemplate[] the addition of new trade secret categories" based on information learned through discovery is not a source of prejudice.  The caselaw has always allowed such amendments.

Your reliance on *Perlan Therapeutics, Inc. v. Superior Court,* 101 Cal.Rptr.3d 211, 226, 178 Cal. App. 4th 1333, 1350–51 (Cal. App. 4 Dist., 2009) to argue that it was improper for Plaintiffs to identify additional trade secrets is misplaced.  Plaintiffs cited *Perlan* in the July 31 letter for the proposition that a plaintiff may supplement its trade secret disclosures based on information learned through discovery.  That is precisely what Plaintiffs have done.  Your letter fails to address this aspect of the *Perlan* case.  Instead, you focus on the court's requirement that the plaintiff show good cause to amend its trade secret disclosures.  But, that state-law based procedural requirement does not apply here.  Here, Plaintiffs' have made their trade secret disclosures in response to Defendants' interrogatories.  Indeed, Defendants demanded a supplemental response.  In accordance with applicable Federal Rules of Civil Procedure, Plaintiffs are obligated to supplement their responses as Plaintiffs' learn additional information through discovery.  That is precisely what Plaintiffs did.

## Plaintiffs Have Placed Meaningful Boundaries on their Trade Secrets

Defendants again complain about purported "catchall language" after the trade secret list.  The paragraph identified in your letter is not a "catchall" for trade secrets that are not otherwise identified in Plaintiffs' supplemental interrogatory response.  Rather, the paragraph merely provides context for how Defendants have used Lamego's intimate knowledge of Plaintiffs' technical knowhow and trade secrets to develop the Oxxiom product.  To the extent Defendants' also complain about Plaintiffs' use of the word "including" is some of the listed trade secrets, Plaintiffs' July 31 letter explained that, as used in trade secrets 1-5, the word "including" merely introduces a more specific subset of the trade secrets.

## Confirmation of Document Creation Dates

As we have previously stated, to our knowledge, all of the Masimo and Cercacor documents referenced in Plaintiffs' response to Interrogatory No. 11 were created while Lamego was employed at Plaintiffs.  To the extent the actual creation date is not reflected on the face of the document, Plaintiffs are willing to provide an overlay file containing relevant metadata for documents produced in discovery, to the extent it exists.  However, as noted in Plaintiffs' July 31 letter, our investigation has confirmed that some of the documents show "date created" metadata after Lamego resigned from Cercacor, which appears to be the result of the underlying file being moved or copied within Plaintiffs' document databases or during document collection by counsel.  Thus, for at least some documents, it appears the metadata does not accurately reflect the true creation date.  For these documents, Plaintiffs expect to offer testimony from relevant witnesses regarding dates.

## Identification of Specific Portions of Documents Containing or Constituting Trade Secrets

Defendants also complain that they are unable to discern which portions of the documents identified in Plaintiffs' response to Interrogatory No. 11 constitute or are otherwise representative of the corresponding trade secrets.  In their supplemental response to Interrogatory No. 11, Plaintiffs will endeavor to provide further detail concerning

which portions of the cited documents constitute or otherwise reflect the identified trade secrets.   Likewise, Plaintiffs will endeavor to segregate documents that show Lamego had access or knowledge of particular trade secrets, from documents that constitute the trade secrets themselves.

**<u>Nature of Plaintiffs' Supplemental Responses</u>**

Plaintiffs supplemental responses to Interrogatory Nos. 1 and 11, served on July 1, 2020, were intended to supersede Plaintiffs' original responses.

**<u>Confidentiality Designations</u>**

Defendants again complain that Plaintiffs have designated their trade secret list for "Attorneys' Eyes Only." Defendants' complaints are based on their belief that the listed trade secrets are merely generic concepts.   As discussed above, and in Plaintiffs' July 31 letter, the listed trade secrets are not generic concepts or ideas. Defendants' misplaced belief is no basis to withdraw a confidentiality designation, and Plaintiffs will not do.

Moreover, as stated in our July 31 letter, Plaintiffs disagree that the confidentiality designations present any due process concerns, and Defendants have not provided any case law suggesting otherwise.

Sincerely,

Nicholas A. Belair

Exhibit M

| From: | Zach Kachmer |
|---|---|
| To: | Brian.Claassen; Josepher.Li |
| Cc: | Truewearables; Lit MASIMOL.1085L; Irfan.Lateef |
| Subject: | RE: Masimo v. True Wearables, Case No. 8:18-cv-2001-JVS-JDE |
| Date: | Friday, October 23, 2020 4:26:00 PM |

Brian,

Plaintiffs have now twice pushed back the date by which you will provide your supplemental responses: first, from October 16 to October 23 and now from October 23 to October 30. As you know, Defendants raised the issue of Plaintiffs' deficiencies over three months ago. Defendants look forward to receiving Plaintiffs' forthcoming supplemental interrogatory responses as soon as Plaintiffs are able to provide them, but no later than October 30.

As we have stressed in our previous correspondence and during previous conversations, Defendants need (and are entitled to) a sufficiently particular identification of Plaintiffs' alleged trade secrets. A particular and stable identification is a prerequisite to Defendants' proceeding with several aspects of their case, including certain discovery. Accordingly, it is critical that the parties resolve all outstanding disputes about Plaintiffs' trade secret identifications as soon as possible, including disputes about the propriety of Plaintiffs extensively modifying their trade secret list after accessing, *inter alia*, Defendants' source code. To that end, if Defendants have not received Plaintiffs' supplemental responses by October 30, Defendants will bring the issue to the court's attention.

Regards,
Zach

**Zach Kachmer**
Merchant & Gould P.C.
1801 California Street
Suite 3300
Denver, CO 80202-2654
USA

**Telephone** (303) 357-1181
**Fax** (612) 332-9081
**merchantgould.com**

GUARDIANS OF GREAT IDEAS®

Note: This email message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via email to the sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever.
Please consider the environment before printing this email. Thank you.

**From:** Brian.Claassen <Brian.Claassen@knobbe.com>
**Sent:** Thursday, October 22, 2020 10:55 PM
**To:** Josepher.Li <Josepher.Li@knobbe.com>; Zach Kachmer <ZKachmer@MerchantGould.com>
**Cc:** Truewearables <Truewearables@MerchantGould.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>

**Subject:** RE: Masimo v. True Wearables, Case No. 8:18-cv-2001-JVS-JDE

**CAUTION - External.**

Zach,

I write to follow-up regarding Plaintiffs' forthcoming supplemental interrogatory responses.  Due to unforeseen conflicts, Plaintiffs will provide the supplemental responses by October 30, 2020.

Best regards,

**Brian Claassen**
Partner
Brian.Claassen@knobbe.com
949-721-6362 **Direct**
**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/brian-claassen

---

**From:** Josepher.Li <Josepher.Li@knobbe.com>
**Sent:** Wednesday, October 14, 2020 12:42 PM
**To:** Zach Kachmer <ZKachmer@MerchantGould.com>
**Cc:** Truewearables <Truewearables@MerchantGould.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>
**Subject:** RE: Masimo v. True Wearables, Case No. 8:18-cv-2001-JVS-JDE

Zach,

Please see the attached letter from Irfan Lateef.

Best regards,
Josepher

**Josepher Li**
Associate
949-721-6349 **Direct**
**Knobbe Martens**

---

**From:** Zach Kachmer <ZKachmer@MerchantGould.com>
**Sent:** Friday, October 9, 2020 2:27 PM
**To:** Irfan.Lateef <irfan.lateef@knobbe.com>
**Cc:** Truewearables <Truewearables@MerchantGould.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Josepher.Li <Josepher.Li@knobbe.com>
**Subject:** RE: Masimo v. True Wearables, Case No. 8:18-cv-2001-JVS-JDE

Exhibit M
Page 2 of 4

Irfan,

Please see the attached correspondence.

Best,
Zach

**Zach Kachmer**
Merchant & Gould P.C.
1801 California Street
Suite 3300
Denver, CO 80202-2654
USA

**Telephone** (303) 357-1181
**Fax** (612) 332-9081
**merchantgould.com**

**GUARDIANS OF GREAT IDEAS®**

Note: This email message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via email to the sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever.
Please consider the environment before printing this email. Thank you.

---

**From:** Josepher.Li <Josepher.Li@knobbe.com>
**Sent:** Thursday, October 8, 2020 9:51 PM
**To:** Zach Kachmer <ZKachmer@MerchantGould.com>
**Cc:** Truewearables <Truewearables@MerchantGould.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>
**Subject:** Masimo v. True Wearables, Case No. 8:18-cv-2001-JVS-JDE

---

**CAUTION - External.**

---

Zach,

Please see the attached letter from Irfan Lateef.

Best regards,
Josepher

**Josepher Li**
Associate
Josepher.Li@knobbe.com
949-721-6349 **Direct**
**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/josepher-li

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

Exhibit M
Page 4 of 4

Exhibit N

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

MASIMO CORPORATION, a Delaware
Corporation; and CERCACOR
LABORATORIES, INC., a Delaware
corporation,

                    Plaintiffs,

v.

TRUE WEARABLES, INC., a Delaware
corporation; and MARCELO LAMEGO, an
individual,

                    Defendants.

Case No. 8:18-cv-2001-JVS-JDE

**DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES**

## DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S OBJECTIONS AND RESPONSES TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-10)

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants TRUE WEARABLES, INC. ("True Wearables") and MARCELO LAMEGO ("Lamego") (collectively "Defendants") by and through its undersigned counsel, objects to and answers Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC.'s ("Cercacor") (collectively "Plaintiffs") First Set of Interrogatories, served upon Defendants on March 5, 2019, as follows:

### GENERAL OBJECTIONS

The following General Objections apply to and are incorporated in each individual response, whether or not expressly incorporated by reference in such response:

    1.    Defendants object to each Instruction, Definition, and request to the extent they seek to impose burdens or obligations inconsistent with, or in excess of, those imposed by the (a) Federal Rules of Civil Procedure, (b) the Local Rules of the Central District of California Southern Division, or (c) any Order from this presiding Judge.

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES 1
Case No. 8:18-cv-2001-JVS-JDE

Exhibit N
Page 1 of 14

2.      Defendants object to each Definition, Instruction, and Interrogatory to the extent that it seeks information that is protected from discovery by any applicable privilege or immunity, including the attorney-client privilege, work-product doctrine, the common-interest privilege, the joint-defense privilege, and/or the patent-agent privilege. All Interrogatories have been read to exclude the discovery and/or production of such privileged information and documents. The responses given shall not be deemed to waive any claim of privilege or immunity or any other objection. Any inadvertent disclosure of privileged information and documents shall not constitute a waiver of any applicable privilege or protection.

3.      Defendants object to the Interrogatories, and Instructions and Definitions therein, on the ground and to the extent that they impose burdens on Defendants beyond those contemplated by Rules 26 and 33 of the Federal Rules of Civil Procedure or other applicable law.

4.      Defendants object to the Interrogatories to the extent that they are vague, ambiguous, overly broad, unduly burdensome and oppressive, and seek the identities of "all" or "any" individuals with knowledge of a particular subject matter and "all" or "any" documents relating to a particular subject matter, since it is not feasible to comply. Defendants further object to the Interrogatories to the extent that they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5.      Defendants object to each Definition, Instruction, and Interrogatory to the extent that it seeks information that is unreasonably cumulative, publicly available, already in the possession, custody, or control of Plaintiffs or their counsel, is of no greater burden for Plaintiffs to obtain than Defendants, or that is otherwise more appropriately directed to another party.

6.      Defendants object to each Definition, Instruction, and Interrogatory to the extent it is overly broad, unduly burdensome, oppressive, vague, and/or seeks information that is not relevant to the claim or defense of any party.

DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES
Case No. 8:18-cv-2001-JVS-JDE

226-2

Exhibit N
Page 2 of 14

7.      Defendants objects to each Interrogatory which seeks information that post-dates November 8, 2018, which is the date when litigation was anticipated by Defendants. Any such Interrogatory is overly broad, unduly burdensome, and seeks information immune from discovery under at least the work-product doctrine.

8.      Defendants object to each Definition, Instruction, and Interrogatory to the extent it seeks information that Defendants are under an obligation to maintain in confidence.

9.      Defendants object to each Definition, Instruction, and Interrogatory to the extent it uses language incorporating or calling for an expert opinion, a legal conclusion, making an erroneous statement of law, or is subject to construction or claim construction by the Court at a later date.

10.     Defendants object to each Definition, Instruction, and Interrogatory to the extent that it prematurely seeks information to be provided by expert witnesses or otherwise is premature in light of any applicable rule, order, doctrine, or accepted practice.

11.     In furnishing these responses to the Interrogatories, Defendants do not waive any of the objections set forth herein, or admit or concede the appropriateness of any request or the discoverability, relevancy, materiality, authenticity, or admissibility in evidence of any such Interrogatory. All objections to the use, at trial or otherwise, of any document produced or information provided in response to the Interrogatory are hereby expressly reserved. In addition, these responses are made solely for purposes of this action.

12.     Specific objections are noted in responses, where applicable, without waiver of general objections.

13.     Defendants reserve their right to supplement, alter, or change its objections or responses and to produce additional responsive information and/or documents, if any, that Defendants have in their possession, custody, or control at the time the Interrogatories were propounded. Furthermore, Defendants reserve the right, at trial or during other proceedings in

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES 3
Case No. 8:18-cv-2001-JVS-JDE

this action, to rely on documents, evidence, and other matters in addition to the documents and/or information produced in response to these Interrogatories, whether or not such documents, evidence, or other matters are newly discovered or are not in existence but have not been located despite diligent and good faith efforts. Defendants reserve the right to object on any grounds, at any time, to any other or supplemental Interrogatories as Plaintiffs may propound.

14.     Defendants are willing to meet and confer with Plaintiffs regarding the relevance and scope of any objected-to Interrogatory.

15.     Defendants object to the Definition of "Defendants," "You," and "Your" to the extent that it includes multiple nonparties, and further to the extent it purports to require Defendants to provide information regardless of whether such information is in Defendants' possession, custody, or control.

16.     Defendants object to the definition of "You," "Your," "Defendants," or "True Wearables" as overly broad in that it includes parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, managing agents, designated other persons who consent to testify on behalf of Defendants, and/or other Persons acting for or on behalf of Defendants.  This definition is not commiserate in scope with the definition of "Plaintiffs," "Masimo," or "Cercacor" which is defined more narrowly as Masimo Corporation and Cercacor Laboratories, Inc.  Defendants will treat the terms "You," "Your," "Defendants," "True Wearables," or "Lamego" as meaning True Wearables, Inc. and Marcelo Lamego.

17.     Defendants object to the definition of "Document" to the extent it can be interpreted to include text messages on devices such as cellular telephones and iPads. Defendants will limit the definition of "Document" to exclude text messages.

18.     Defendants' discovery and investigation in connection with this case are continuing. As a result, Defendants' objections and responses are limited to information

DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES
Case No. 8:18-cv-2001-JVS-JDE

224

Exhibit N
Page 4 of 14

As discovery is ongoing, Defendants reserve all rights to supplement and/or amend its response to this Interrogatory.

**INTERROGATORY NO. 7:**

Describe in detail, with reference to any supporting documents, information, and materials, the complete factual and legal basis Your contention set forth in Your Twelfth Defense, that Plaintiffs' claims and/or damages are barred and/or limited because the alleged trade secret information is generally known, readily ascertainable, and/or has no independent economic value.

**ANSWER TO INTERROGATORY NO. 7:**

# ***CONFIDENTIAL – ATTORNEYS' EYES ONLY***

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES 13
Case No. 8:18-cv-2001-JVS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES 14
Case No. 8:18-cv-2001-JVS-JDE

230

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES 1-15
Case No. 8:18-cv-2001-JVS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES 16
Case No. 8:18-cv-2001-JVS-JDE

232

Exhibit N
Page 8 of 14

1 ████████████████████████████████████████████████

2 ████████████████████████████████████

3    ████████████████████████████████████████████

4 ████████████████████████████████████████████████

5 ████████████████████████████████████████████████

6 ████████████████████████████████████████████████

7 ████████████████████████████████████████████████

8 ████████████████████████████████████████████████

9 ████████████████████████████████████████████████

10 ███████████████████████████████████████████████

11 ███████████████████████████████████████████████

12 ███████████████████████████████████████████████

13 ███████████████████████████████████████████████

14 ███████████████████████████████████████████████

15 ███████████████████████████████████████████████

16 ███████████████████████████████████████████████

17 ███████████████████████████████████████████████

18 ███████████████████████████████████████████████

19 ██████████████████████

20    ███████████████████████████████████████████

21 ███████████████████████████████████████████████

22 ████████████████████████████████

23    ████████████████████████████████████████████

24 ██████████████████.

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES 1-17
Case No. 8:18-cv-2001-JVS-JDE

233

Exhibit N
Page 9 of 14

**INTERROGATORY NO. 8:**

Describe in detail, with reference to any supporting documents, information, and materials, the complete factual and legal basis Your contention set forth in Your Thirteenth Defense, that Plaintiffs' claims and/or damages are barred and/or limited because the alleged trade secret information was independently developed or derived by Defendants or their employees.

**ANSWER TO INTERROGATORY NO. 8:**

Defendants incorporate by reference their General Objections above. Defendants object to this Interrogatory to the extent it calls for information protected from discovery by the attorney-client privilege, work product doctrine, or that is otherwise protected from disclosure under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of the Central District of California Southern Division, and/or relevant statutory or case law. Defendants further object to this Interrogatory because it is improperly disproportionate to the needs of this case, overly broad, unduly burdensome, seeks irrelevant information, and seeks information unbounded by any temporal and geographic scope. Defendants further object to this Interrogatory because it is not reasonably calculated to lead to the discovery of admissible evidence. Defendants further object to this Interrogatory to the extent that it is cumulative and duplicative of other discovery sought by Plaintiffs. Defendants further object to this Interrogatory as premature to the extent that it seeks expert discovery. Defendants will serve its expert reports in accordance with the applicable scheduling orders of the Court. Defendants further object to this Interrogatory as vague and ambiguous as to the phrase "alleged trade secret information." Defendants further object to this Interrogatory because it calls for legal conclusions and expert opinions.

Subject to and without waiving its General Objections and Reservation of Rights or specific objections, Defendants respond as follows:

DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES 18
Case No. 8:18-cv-2001-JVS-JDE

234

1   True Wearables independently developed the Oxxiom system. Plaintiffs have not met

2   their burden of showing that True Wearables uses any part of Plaintiffs' purported trade secrets

3   identified in its response to Defendants' Interrogatory No. 1.

4   As discovery is ongoing, Defendants reserve all rights to supplement and/or amend its

5   response to this Interrogatory.

6

7   **INTERROGATORY NO. 9:**

8   Describe in detail, with reference to any supporting documents, information, and

9   materials, the complete factual and legal basis Your contention set forth in Your Fourteenth

10  Defense, that Plaintiffs' claims and/or damages related to the alleged Breach of Fiduciary Duty

11  and Undivided Loyalty are barred and/or limited because of a lack of a fiduciary relationship.

12  **ANSWER TO INTERROGATORY NO. 9:**

13  Defendants incorporate by reference their General Objections above. Defendants object

14  to this Interrogatory to the extent it calls for information protected from discovery by the

15  attorney-client privilege, work product doctrine, or that is otherwise protected from disclosure

16  under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of

17  the Central District of California Southern Division, and/or relevant statutory or case law.

18  Defendants further object to this Interrogatory because it is improperly disproportionate to the

19  needs of this case, overly broad, unduly burdensome, seeks irrelevant information, and seeks

20  information unbounded by any temporal and geographic scope. Defendants further object to this

21  Interrogatory because it is not reasonably calculated to lead to the discovery of admissible

22  evidence. Defendants further object to this Interrogatory as premature to the extent that it seeks

23  expert discovery. Defendants will serve its expert reports in accordance with the applicable

24  scheduling orders of the Court. Defendants further object to this Interrogatory because it calls

25  for legal conclusions and expert opinions.

26  Subject to and without waiving its General Objections and Reservation of Rights or

27  specific objections, Defendants respond as follows:

DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES 1-19
Case No. 8:18-cv-2001-JVS-JDE

235

Exhibit N
Page 11 of 14

DATED: April 4, 2019

MERCHANT & GOULD, P.C.

By: */s/ Ryan J. Fletcher*
Amanda R. Washton (Bar No. 227541)
A.Washton@conklelaw.com
CONKLE, KREMER & ENGEL, PLC
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403

Peter A. Gergely (admitted *pro hac vice*)
PGergely@merchantgould.com
Ryan James Fletcher, Ph.D.
(admitted *pro hac vice*)
RFletcher@merchantgould.com
Roderick O'Dorisio (admitted *pro hac vice*)
RODorisio@MerchantGould.com
MERCHANT & GOULD, P.C.
1801 California St., Suite 3300
Denver, CO 80202

*Attorneys for Defendants*
*True Wearables, Inc. and Marcelo Lamego*

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES 24
Case No. 8:18-cv-2001-JVS-JDE

236

Exhibit N
Page 12 of 14

1

## **VERIFICATION**

2
On behalf of True Wearables, Inc. and in my capacity as Chief Executive Officer of True Wearables, Inc., I have read the foregoing Defendants True Wearables Inc. and Marcelo

3
Lamego's Objections And Responses To Plaintiffs' First Set Of Interrogatories To Defendants True Wearables Inc. and Marcelo Lamego.  The answers are based on the records and

4
information currently available. I reserve the right to make changes in or additions to any of these answers if it appears at any time that errors or omissions have been made or if more

5
accurate or complete information becomes available. To the extent I do not have personal knowledge, I have relied on others to gather the responsive information. I declare under penalty

6
of perjury that the foregoing is true and correct.

7
Signed this 3Rd day of April 2019 in Rancho Santa Margarita, California.

8

9
_____

10
Marcelo Lamego
True Wearables, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES- 25
Case No. 8:18-cv-2001-JVS-JDE

1

**CERTIFICATE OF SERVICE**

2
     The undersigned hereby certifies that a true and accurate copy of **DEFENDANTS TRUE WEARABLES AND MARCELO LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO**

3
**CORPORATION AND CERCACOR LABRATORIES, INC.'S FIRST SET OF INTERROGATORIES** was served via electronic mail of April 4, 2019.

4

5
Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com

6
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com

7
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com

8
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com

9
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor

10
Irvine, CA 92614
Telephone: (949)-760-0404

11
Facsimile: (949)-760-9502
*Attorneys for Plaintiffs,*

12
*Masimo Corporation and Cercacor Laboratories, Inc.*

13

14
                                        _____
                                        */s/ Shannon Maney*

15
                                        Shannon Maney

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S ANSWERS TO PLAINTIFFS MASIMO
CORPORATION AND CERCACOR LABORATORIES,
INC.'S FIRST SET OF INTERROGATORIES -26
Case No. 8:18-cv-2001-JVS-JDE

Exhibit O

**IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION**

| | |
|---|---|
| MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,<br><br>                Plaintiffs,<br><br>v.<br><br>TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual,<br><br>                Defendants. | Case No. 8:18-cv-2001-JVS-JDE<br><br>**DEFENDANTS TRUE WEARABLES INC.'S AND MARCELO LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO PLAINTIFFS MASIMO CORPORATION'S AND CERCACOR LABORATORIES, INC.'S INTERROGATORY NO. 8** |

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendants TRUE WEARABLES, INC. ("True Wearables") and MARCELO LAMEGO ("Lamego") (collectively "Defendants") by and through its undersigned counsel, provides the following Supplemental Answers to Plaintiffs MASIMO CORPORATION ("Masimo") and CERCACOR LABORATORIES, INC.'s ("Cercacor") (collectively "Plaintiffs") Interrogatory No. 8.

## OBJECTIONS

Defendants incorporate herein all if their general and specific objections that were previously set forth in DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S OBJECTIONS AND RESPONSES TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S FIRST SET OF INTERROGATORIES (NOS. 1-10) that were served on April 4, 2019 and DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S RESPONSES TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S SECOND SET OF

DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S INTERROGATORY NO. 8 - 1
Case No. 8:18-cv-2001-JVS-JDE

289

Exhibit O
Page 1 of 17

INTERROGATORIES (NOS. 11-25) that were served on February 6, 2020.

## **GENERAL OBJECTIONS**

The following General Objections apply to and are incorporated in each individual response, whether or not expressly incorporated by reference in such response:

1.      Defendants object to each Instruction, Definition, and request to the extent they seek to impose burdens or obligations inconsistent with, or in excess of, those imposed by the (a) Federal Rules of Civil Procedure, (b) the Local Rules of the Central District of California Southern Division, or (c) any Order from this presiding Judge.

2.      Defendants object to each Definition, Instruction, and Interrogatory to the extent that it seeks information that is protected from discovery by any applicable privilege or immunity, including the attorney-client privilege, work-product doctrine, the common-interest privilege, the joint-defense privilege, and/or the patent-agent privilege. All Interrogatories have been read to exclude the discovery and/or production of such privileged information and documents. The responses given shall not be deemed to waive any claim of privilege or immunity or any other objection. Any inadvertent disclosure of privileged information and/or documents shall not constitute a waiver of any applicable privilege or protection.

3.      Defendants object to the Interrogatories, and Instructions and Definitions therein, on the ground and to the extent that they impose burdens on Defendants beyond those contemplated by Rules 26 and 33 of the Federal Rules of Civil Procedure or other applicable law.

4.      Defendants object to the Interrogatories to the extent that they are vague, ambiguous, overly broad, unduly burdensome and oppressive, and seek the identities of "all" or "any" individuals with knowledge of a particular subject matter and "all" or "any" documents relating to a particular subject matter, since it

DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S INTERROGATORY NO. 8 - 2
Case No. 8:18-cv-2001-JVS-JDE

240

Exhibit O
Page 2 of 17

is not feasible to comply. Defendants further object to the Interrogatories to the extent that they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.

5. Defendants object to each Definition, Instruction, and Interrogatory to the extent that it seeks information that is unreasonably cumulative, publicly available, already in the possession, custody, or control of Plaintiffs or their counsel, is of no greater burden for Plaintiffs to obtain than Defendants, or that is otherwise more appropriately directed to another party.

6. Defendants object to each Definition, Instruction, and Interrogatory to the extent it is overly broad, unduly burdensome, oppressive, vague, and/or seeks information that is not relevant to the claim or defense of any party.

7. Defendants objects to each Interrogatory which seeks information that post-dates November 8, 2018, which is the date when litigation was anticipated by Defendants. Any such Interrogatory is overly broad, unduly burdensome, and seeks information immune from discovery under at least the work-product doctrine.

8. Defendants object to each Definition, Instruction, and Interrogatory to the extent it seeks information that Defendants are under an obligation to maintain in confidence.

9. Defendants object to each Definition, Instruction, and Interrogatory to the extent it uses language incorporating or calling for an expert opinion, a legal conclusion, making an erroneous statement of law, or is subject to construction or claim construction by the Court at a later date.

10. Defendants object to each Definition, Instruction, and Interrogatory to the extent that it prematurely seeks information to be provided by expert

DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S INTERROGATORY NO. 8 - 3
Case No. 8:18-cv-2001-JVS-JDE

241

Exhibit O
Page 3 of 17

witnesses or otherwise is premature in light of any applicable rule, order, doctrine, or accepted practice.

11.     In furnishing these responses to the Interrogatories, Defendants do not waive any of the objections set forth herein, or admit or concede the appropriateness of any request or the discoverability, relevancy, materiality, authenticity, or admissibility in evidence of any such Interrogatory. All objections to the use, at trial or otherwise, of any document produced or information provided in response to the Interrogatory are hereby expressly reserved. In addition, these responses are made solely for purposes of this action.

12.     Specific objections are noted in responses, where applicable, without waiver of general objections.

13.     Defendants reserve their right to supplement, alter, or change its objections or responses and to produce additional responsive information and/or documents, if any, that Defendants have in their possession, custody, or control at the time the Interrogatories were propounded. Furthermore, Defendants reserve the right, at trial or during other proceedings in this action, to rely on documents, evidence, and other matters in addition to the documents and/or information produced in response to these Interrogatories, whether or not such documents, evidence, or other matters are newly discovered or are not in existence but have not been located despite diligent and good faith efforts. Defendants reserve the right to object on any grounds, at any time, to any other or supplemental Interrogatories as Plaintiffs may propound.

14.     Defendants are willing to meet and confer with Plaintiffs regarding the relevance and scope of any objected-to Interrogatory.

15.     Defendants object to the Definition of "Defendants," "You," and

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 4
Case No. 8:18-cv-2001-JVS-JDE

"Your" to the extent that it includes multiple nonparties, and further to the extent it purports to require Defendants to provide information regardless of whether such information is in Defendants' possession, custody, or control.

16.   Defendants object to the definition of "You," "Your," "Defendants," or "True Wearables" as overly broad in that it includes parents, subsidiaries, affiliates, predecessors-in-interest, successors-in-interest, officers, directors, managing agents, designated other persons who consent to testify on behalf of Defendants, and/or other Persons acting for or on behalf of Defendants.  This definition is not commiserate in scope with the definition of "Plaintiffs," "Masimo," or "Cercacor" which is defined more narrowly as Masimo Corporation and Cercacor Laboratories, Inc.  Defendants will treat the terms "You," "Your," "Defendants," "True Wearables," or "Lamego" as meaning True Wearables, Inc. and Marcelo Lamego.

17.   Defendants object to the definition of "Document" to the extent it can be interpreted to include text messages on devices such as cellular telephones and iPads.  Defendants will limit the definition of "Document" to exclude text messages.

18.   Defendants' discovery and investigation in connection with this case are continuing. As a result, Defendants' objections and responses are limited to information obtained and reviewed to date and are given without prejudice to Defendants' right to amend or supplement its objections and responses after considering information obtained or reviewed through further discovery.

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 5
Case No. 8:18-cv-2001-JVS-JDE

283

Exhibit O
Page 5 of 17

1

# **INTERROGATORIES**

2

**INTERROGATORY NO. 8:**

3    Describe in detail, with reference to any supporting documents, information,

4  and materials, the complete factual and legal basis Your contention set forth in

5  Your Thirteenth Defense, that Plaintiffs' claims and/or damages are barred and/or

6  limited because the allege trade secret information was independently developed

7  or derived by Defendants or their employees.

8  **SECOND   SUPPLEMENTAL   OBJECTIONS   AND   ANSWER   TO**

9  **INTERROGATORY NO. 8:**

10    **\*\*\*CONFIDENTIAL – ATTORNEYS' EYES ONLY\*\*\***

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 6
Case No. 8:18-cv-2001-JVS-JDE

244

Exhibit O
Page 6 of 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 7
Case No. 8:18-cv-2001-JVS-JDE

1    In early 2015, Dr. Lamego began the problem-solving and design process
2    with █████████████████████████████████████████████████████████████
3    ████████████████████████████████████████████████████████████████████
4    ████████████████████████████████████████████████████████████████████
5    ████████████████████████████████████████████████████████████████████
6    ████████████████████████████████████████████████████████████████████
7    ████████████████████████████████████████████████████████████████████
8    ████████████████████████████████████████████████████████████████████
9    ████████████████████████████████████████████████████████████████████
10   ████████████████████████████████████████████████████████████████████
11   ████████████████████████████████████████████████████████████████████
12   ████████████████████████████████████████████████████████████████████
13   ████████████████████████████████████████████████████████████████████
14   ████████████████████████████████████████████████████████████████████
15   ████████████████████████████████████████████████████████████████████
16   ████████████████████████████████████████████████████████████████████
17   ████████████████████████████████████████████████████████████████████
18   ████████████████████████████████████████████████████████████████████
19   ████████████████████████████████████████████████████████████████████
20   ████████████████████████████████████████████████████████████████████
21   ████████████████████████████████████████████████████████████████████
22   ████████████████████████████████████████████████████████████████████
23   ████████████████████████████████████████████████████████████████████
24   ████████████████████████████████████████████████████████████████████
25   ████████████████████████████████████████████████████████████████████
26   ████████████████████████████████████████████████████████████████████
27   ████████████████████████

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 8
Case No. 8:18-cv-2001-JVS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 9
Case No. 8:18-cv-2001-JVS-JDE

247

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 10
Case No. 8:18-cv-2001-JVS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 11
Case No. 8:18-cv-2001-JVS-JDE

Exhibit O
Page 11 of 17

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 12
Case No. 8:18-cv-2001-JVS-JDE

280

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 13
Case No. 8:18-cv-2001-JVS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 14
Case No. 8:18-cv-2001-JVS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 15
Case No. 8:18-cv-2001-JVS-JDE

253

Exhibit O
Page 15 of 17

1    DATED: December 30, 2020

2                                    MERCHANT & GOULD, P.C.

3
                                     By: */s/ Ryan J Fletcher*
4                                    Amanda R. Washton (Bar No. 227541)
                                     A.Washton@conklelaw.com
5                                    Sherron Wiggins (Bar No. 321819)
                                     s.wiggins@conklelaw.com
6                                    CONKLE, KREMER & ENGEL, PLC
                                     3130 Wilshire Boulevard, Suite 500
7                                    Santa Monica, California 90403

8                                    Peter A. Gergely (admitted *pro hac vice*)
                                     PGergely@merchantgould.com
9                                    Ryan James Fletcher, Ph.D.
                                     (admitted *pro hac vice*)
10                                   RFletcher@merchantgould.com
                                     Zachary D. Kachmer (admitted *pro hac*
11                                   *vice*)
                                     ZKachmer@merchantgould.com
12                                   MERCHANT & GOULD, P.C.
                                     1801 California St., Suite 3300
13                                   Denver, CO 80202

14                                   Paige S. Stradley, (admitted *pro hac vice*)
                                     PStradley@merchantgould.com
15                                   MERCHANT & GOULD, P.C.
                                     150 S. Fifth Street Suite 2200
16                                   Minneapolis, MN 55402
                                     Telephone: (612) 332-5300
17                                   Facsimile: (612) 332-9081

18                                   *Attorneys for Defendants*
                                     *True Wearables, Inc. and Marcelo Lamego*
19

20

21

22

23

24

25

26

27

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 16          254
Case No. 8:18-cv-2001-JVS-JDE

Exhibit O
Page 16 of 17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of **DEFENDANTS TRUE WEARABLES INC. AND MARCELO LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S INTERROGATORY NO. 8** was served via electronic mail of December 30, 2020.

Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Telephone: (949)-760-0404
Facsimile: (949)-760-9502
*Attorneys for Plaintiffs,*
*Masimo Corporation and Cercacor Laboratories, Inc.*


_____
                    */s/ Shannon Maney*_____
                    Shannon Maney

DEFENDANTS TRUE WEARABLES INC. AND MARCELO
LAMEGO'S SUPPLEMENTAL OBJECTIONS AND ANSWERS
TO PLAINTIFFS MASIMO CORPORATION AND CERCACOR
LABORATORIES, INC.'S INTERROGATORY NO. 8 - 17
Case No. 8:18-cv-2001-JVS-JDE

Exhibit O
Page 17 of 17

Exhibit P



1801 California Street
Suite 3300
Denver, CO 80202

Zach D. Kachmer
303.357.1181
ZKachmer@merchantgould.com

January 19, 2021

Irfan Lateef
Josepher Li
Knobbe Martens Olson & Bear, LLP
2040 Main Street, 14th Floor
Irvine, CA 92614

Re: **Masimo Corp. and Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego**
    **Case No. 8:18-cv-2001-JVS-JDE**

Dear Irfan and Josepher,

I write in response to Irfan's December 14 email, Josepher's December 21 email, and to follow up on related discovery issues.

**Plaintiffs' Discovery Requests**

With respect to Plaintiffs' Interrogatory Nos. 7, Defendants intend to provide a supplemental response but ask for Plaintiffs to first confirm that their current identification of alleged trade secrets will not be amended a fourth time. Throughout the past 18 months of discovery, Plaintiffs have simultaneously narrowed some aspects of their alleged trade secrets while broadening others. Setting aside whether or not these previous amendments were proper, Defendants will be prejudiced if they are forced to supplement their response to Interrogatory No. 7 before Plaintiffs commit to a final, stable set of alleged trade secrets. Without such commitment, Defendants risk the prospect of investing significant resources presenting evidence that Plaintiffs' alleged trade secrets are generally known, have no economic value, etc. only to have Plaintiffs respond by replacing or narrowing the alleged trade secrets in response to Defendants' evidence, at which point the back-and-forth cycle would begin anew. Accordingly, Defendants cannot commit to supplement their response to Interrogatory No. 7 at least until Plaintiffs confirm that their current identification of alleged trade secrets will not be amended a fourth time.

Exhibit P
Page 1 of 4

Regarding your request that Defendants supplement their response to Interrogatory No. 23, Plaintiffs previously objected to Plaintiffs' RFP Nos. 162-167 on the basis that information relating to Lamego's time as an employee of Apple (and, more specifically, information relating to Apple's alleged inducement of trade secret misappropriation) are not relevant to the present action. Defendants disagreed at the time and continue to disagree with Plaintiffs' assertion of irrelevance. Plaintiffs' requests for this information suggests that Plaintiffs' views have changed with respect to the relevance of information related to Apple. In light of this apparent change, do Plaintiffs intend to produce documents responsive to RFP Nos. 162-167? If so, when can Defendants expect to receive such a production? If Plaintiffs continue to refuse to produce documents responsive to RFP Nos. 162-167 on the basis of irrelevance, please explain why the information sought by Interrogatory No. 23 is relevant. Until we understand Plaintiffs' position, we are not able to assess whether supplementation of Interrogatory No. 23 is appropriate.

## Defendants' Requests for Document Metadata

On December 21, 2020, we received an email from Josepher Li to which Mr. Li had attached ".dat files" for Plaintiffs' prior document productions. While we appreciate Plaintiffs' providing this information again, providing data files that Defendants have already received does not address Defendants' concerns about the lack of accurate metadata in Plaintiffs' document production. Defendants' concerns are especially acute because, out of the roughly 230 documents that Plaintiffs' have identified in their response to Interrogatory No. 11 as being "Documents Representative of Trade Secret," **over 140 of those documents** have either no metadata whatsoever or metadata indicating a "Created Date" after Lamego's departure from Cercacor in 2014. Requiring Defendants to ascertain the created date of over 140 documents through witness testimony is "unnecessary and impractical." *See Younes v. 7-Eleven, Inc.*, No. 13-3500 (RMB/JS), 2015 U.S. Dist. LEXIS 33793 (D.N.J. Mar. 18, 2015) Defendants "should not have to use their limited deposition time to question witnesses about basic issues such as when scores of documents were prepared, who prepared them, who received them etc.," particularly where this metadata is unquestionably relevant to important issues in the case. *Id.*

Mr. Li states that the metadata associated with Plaintiffs' document production does not accurately reflect the true creation data because the metadata was affected *either* (a) when the document was "moved or copied within Plaintiffs' document databases" or (b) when the document was moved or copied "during document collection by counsel."

With respect to possibility (a), it is unclear what Plaintiffs contend occurred. Do Plaintiffs contend that such moving or copying within Plaintiffs' document database occurred prior to initiation of this lawsuit as part of Plaintiffs' daily business operations or do Plaintiffs contend that such moving or copying occurred after initiation of this lawsuit, e.g., as part of the collection process? Please clarify this point. With respect to the latter scenario (b), this is unacceptable. Upon initiation of a lawsuit, a party has an affirmative duty to preserve relevant evidence. That relevant evidence includes metadata. Dkt. 25 at 8 ("[M]etadata **shall** be preserved."); *see also* THE SEDONA CONFERENCE, THE SEDONA CONFERENCE GLOSSARY: E-DISCOVERY & DIGITAL INFORMATION MANAGEMENT 48 (2d

ed. 2007) ("Spoliation is the destruction of records or properties, **such as metadata**, that may be relevant to ongoing or anticipated litigation, government investigation or audit."). Counsel appears to admit that, for at least some documents, it did not preserve metadata during document collection. Accordingly, Defendants ask that Plaintiffs attempt to repeat the collection of such documents in a manner that preserves the metadata as it exists within Plaintiffs' document database.  If Plaintiffs cannot do so, Defendants insist counsel provide a detailed description of exactly what was done to preserve metadata, how it performed its document collection, and how metadata was altered "when the document[s] [were] collected by counsel."

As Defendants have previously explained and as Plaintiffs implicitly acknowledge, the creation date of alleged trade secret documents is an essential aspect of Plaintiffs' allegations. Indeed, based on Mr. Li's unequivocal statement that "all of the Masimo and Cercacor documents referenced in Plaintiffs' response to Interrogatory No. 11 were created while Mr. Lamego was employed at Plaintiffs," it seems that Plaintiffs have conducted a document-by-document investigation into the creation date for each of the aforementioned documents.

Thus, to the extent Plaintiffs are unable to provide accurate metadata for their documents, Defendants ask that Plaintiffs provide, to the best of their knowledge, the creation date for each of the documents identified in Plaintiffs' response to Interrogatory No. 11 and how it determined that creation date, including what employee confirmed the creation date. Defendants further ask that Plaintiffs indicate for which of these documents the metadata is *not* accurate. For such documents, Defendants ask that Plaintiffs indicate whether the inaccuracy is a result of the document being "moved or copied within Plaintiffs' document databases" or being moved or copied "during document collection by counsel."

### Defendants' Interrogatory Nos. 5, 6, 14, 15

On November 23, 2020 and December 2, 2020, Defendants wrote asking that Plaintiffs supplement their Responses to Interrogatories 5, 6, 14, and 15. As Defendants explained, Plaintiffs' responses were (and continue to be) insufficient because, generally speaking, Plaintiffs' responses failed to provide facts or documents supporting their claims for damages. When counsel for the parties met and conferred on December 7, 2020, Plaintiffs' counsel Mark Kachner indicated that Plaintiffs' were in the process of preparing supplemental responses and would be providing those supplemental responses shortly. Please provide an update on when Defendants can expect to receive those supplemental responses.

**Defendants' Interrogatory No. 21**

When the parties met and conferred on December 7, Plaintiffs also committed to supplementing their response to Defendants' Interrogatory No. 21. Specifically, Plaintiffs committed to supplement their response to include at least (i) a more detailed identification (e.g., an element-by-element claim chart) of the products that practice Plaintiffs' asserted patents and (ii) an identification of the products that practice (or otherwise utilize) Plaintiffs' alleged trade secrets. On December 29, Plaintiffs provided a supplemental response containing an identification of products that purportedly practice U.S. Patent Nos. 8,983,564; 7,295,866; 7,186,966; and 10,194,847. Please confirm that Plaintiffs intend to provide a similar response for Patent Nos. 8,886,271; 10,194,848 and for each of the alleged trade secrets identified in Plaintiffs' Response to Defendants' Interrogatory No. 1.

Sincerely,

Zach D. Kachmer

Exhibit Q

# Knobbe Martens

KNOBBE, MARTENS, OLSON & BEAR, LLP

2040 Main St., 14th Fl., Irvine, CA 92614
**T** (949) 760-0404

Irfan Lateef
irfan.lateef@knobbe.com

February 4, 2021
**VIA EMAIL**

Zach D. Kachmer
Merchant & Gould P.C.
1801 California Street
Suite 3300
Denver, CO 80202

Re:     *Masimo Corp. and Cercacor Laboratories, Inc. v. True Wearables, Inc. and Marcelo Lamego*
        Case No. 8:18-cv-2001-JVS-JDE
        Our reference:  MASIMOL.1085L

Dear Zach:

I write to address your January 19, 2021 letter.

**Plaintiffs' Discovery Requests**

Interrogatory No. 7:

This interrogatory, served on March 5, 2019—nearly two years ago—asks Defendants to describe the factual and legal basis for Defendants' Twelfth Defense (Information Generally Known or Readily Ascertainable). Instead of actually providing a substantive response, Defendants argue that Plaintiffs have not met their burden and then generally deny that the trade secrets were ever acquired by Defendants, that employees' knowledge gained while working for Plaintiffs cannot be imputed to True Wearables, that the trade secrets were never used or shared with others, and that their software was developed using third-party tools. None of these assertions are relevant to Defendants' defense that the "alleged trade secret information is generally known, readily ascertainable, and/or has no independent economic value." In fact, Defendants have never even specified which, if any, of the trade secrets they believe were "generally known, readily ascertainable, and/or has no independent economic value" as alleged in their Twelfth Defense. Nor have they provided the required "supporting documents, information, or materials."

In your letter, Defendants apparently acknowledge that their current response is deficient and "intend to provide a supplemental response." However, Defendants then say they will not "invest[] significant resources presenting evidence" unless Plaintiffs "confirm" that they will not supplement their response to Defendants' Interrogatory No. 1 (identification of misappropriated trade secrets). This is improper for several reasons.

First, Defendants have not yet expended any "resources presenting evidence" because their current response includes none. Having done no work to provide a substantive response for nearly two years, Defendants cannot now complain about "the prospect of investing significant resources presenting evidence" which may later need to be supplemented.

Second, the main purpose of contention interrogatories is to clarify the issues and narrow the scope of the case. *See, e.g., In re Convergent Technologies Securities Litigation*, 108 F.R.D. 328, at 338–39 (N.D. Cal. 1985). Thus, your request for a commitment to never update contentions as discovery proceeds in this case is contrary to the purpose of discovery and Masimo's obligation to supplement. Masimo will not agree to Defendants proposal to violate the rules requiring supplementation.

Third, Plaintiffs have not yet taken the deposition of Dr. Lamego—the key trade secret misappropriation witness in the case. Until Plaintiffs have had an opportunity to fully explore this topic with Dr. Lamego, they cannot know

# Knobbe Martens

whether their interrogatory responses will require supplementation under the rules. Plaintiffs can confirm that their identification of trade secrets in response to Defendants' Interrogatory No. 1 is current and complete to their knowledge at this stage in the litigation.

With this, please provide Defendants' supplemental response within a week. Plaintiffs reiterate that Defendants' response should identify (by number) which trade secrets they contend were generally known, readily ascertainable, or had no independent economic value—as alleged in their Twelfth Defense—and identify supporting evidence for each trade secret so identified.

Interrogatory No. 8:

While not mentioned in your letter, Plaintiffs' received Defendants' supplemental response to Interrogatory No. 8 on Dec. 30, 2020. Having now reviewed that supplement, Plaintiffs believe that Defendants' response continues to be deficient.

Interrogatory No. 8 asks Defendants to describe the factual and legal bases for Defendants' Thirteenth Defense (Independent Development). In response, Defendants provide a litany of objections and excuses for why they cannot answer.

Defendants' assertion that they are not using any of Plaintiffs' trade secret information is directly contrary to the allegations in their Thirteenth Defense, which states that "the alleged trade secret information was independently developed or derived by Defendants or their employees." If this is Defendants' position, their Thirteenth Defense is baseless and should be withdrawn. *Travelers Indem. Co. v. Goldman*, No. 8:19-cv-01036-PSG (JDEx), 2020 WL 5372108, at *23 (C.D. Cal. May 8, 2020) ("Defendant cannot assert affirmative defenses solely 'to preserve' them. Affirmatives defenses in an answer, just as allegations in a complaint, must be supported by facts or by a good faith belief that such facts exist." (citing *Nat'l Acad. of Recording Arts & Scis., Inc. v. On Point Events, LP*, 256 F.R.D. 678, 682 (C.D. Cal. 2009) ("Requiring a defendant to answer a contention interrogatory and to produce documents that support its affirmative defenses is '[c]onsistent with Rule 11 of the Federal Rules of Civil Procedure,' which requires parties have some factual basis for their claims and allegations."))); *see also Shapiro v. Hasbro Inc.*, No. 15-cv-02964-BRO (AJWx), 2016 WL 9113998, at *2 (C.D. Cal. July 18, 2016) ("independent creation [is] an affirmative defense").

Defendants also object that Plaintiffs' trade secret identification is not sufficiently particular. This objection has already been resolved by the Court against Defendants. Moreover, in addition to providing the list of trade secrets, Plaintiffs also identified specific examples of where each of these trade secrets are represented in Plaintiffs' own source code and documents as well as where they appear in Defendants' code and documents. *See* Plaintiffs' Third Supplemental Response to Interrogatory No. 11. This disclosure is sufficient to allow Defendants to determine whether they independently developed the trade secrets at issue and to collect the relevant evidence. Furthermore, many of the trade secrets at issue involve ███████████████████████ ███████████████ Yet Defendants' response does not answer this interrogatory even for those particular trade secrets for which their "lack of specificity" argument clearly does not apply. For example, Defendants cannot seriously maintain that it is "impossible … to ascertain the bounds" of ███████████████████████████ ██████████████████████████ Nor can Defendants maintain that ███████████████████████ █████████████████████████████████████████████████████—lack specificity. Again, the objections to the specificity of the trade secrets has already been decided against Defendants.

As to the actual narrative response, Defendants provide only a high-level development story for the Oxxiom device, which—by their own admission—includes no "specific reference to alleged trade secret information." Defendants never specify which trade secrets they believe were independently developed, nor do they provide any citations to specific source code or other documentation to show that any particular trade secret "was independently developed or derived by Defendants or their employees," as alleged in their Thirteenth Defense. Instead, Defendants' narrative glosses over the key trade secret issues in the case and fails to provide notice as to the issues in dispute. Defendants also provide no citation to development documents, lab notebooks, source code revisions, or any other evidence that might support their independent development defense. This vague response is insufficient, failing even to provide notice of the issues in dispute. *See, e.g., FootBalance Sys. Inc. v.*

# Knobbe Martens

*Zero Gravity Inside, Inc.*, No. 15-CV-1058-JLS (DHB), 2018 WL 722834, at *1 (S.D. Cal. Feb. 5, 2018) ("The purpose of contention interrogatories is … to narrow the issues."); *id.* (Response to a contention interrogatory must "enable the propounding party to determine the proof required to rebut the respondent's position.")

Please provide Defendants' supplemental response within a week to identify (by number) which trade secrets they contend were independently developed, including the specific supporting evidence for each trade secret so identified.

## Defendants' Requests for Document Metadata

You stated:

> Plaintiffs have identified in their response to Interrogatory No. 11 as being "Documents Representative of Trade Secret," **over 140 of those documents** have either no metadata whatsoever or metadata indicating a "Created Date" after Lamego's departure from Cercacor in 2014.

Plaintiffs investigated but were unable to replicate the metadata issue. From the list of documents cited in response to Interrogatory No. 11, we found 48 documents without a "Created Date," but these were emails that include an "Email Sent Date" field in the metadata. There were also 31 documents with a "Created Date" after 2014. The majority of these had dates on the face of the documents themselves (e.g., scanned lab notebooks). There were a few documents that appear to have inconsistencies that we are still investigating, such as a "Last Modified Date" that is before the "Created Date" or where the internal Microsoft Word metadata does not match the file metadata. We will work to correct those documents, but we are not seeing the widespread (140 documents) metadata issues you cite above.

Could you please provide us a list of documents that you contend have missing/incorrect metadata? For example, if your system shows documents that contain neither a "Created Date" nor an "Email Sent Date," please provide a list of Bates numbers for us to investigate further.

## Defendants' Interrogatory Nos. 5, 6, 14, 15

Plaintiffs are continuing to work on their supplemental responses to these interrogatories.

## Defendants' Interrogatory No. 21

Plaintiffs confirm that they will provide an updated response for Patent Nos. 8,886,271; 10,194,848 and for each of the alleged trade secrets identified in Plaintiffs' Response to Defendants' Interrogatory No. 1.

Sincerely,

Irfan Lateef

34241216

knobbe.com
Exhibit Q
Page 3 of 3

Exhibit R – Filed Under Seal

Exhibit S

## Zach Kachmer

| | |
|---|---|
| **From:** | Zach Kachmer |
| **Sent:** | Saturday, February 20, 2021 3:08 PM |
| **To:** | Mark.Kachner |
| **Cc:** | Brian.Claassen; Irfan.Lateef; Truewearables; Lit MASIMOL.1085L |
| **Subject:** | RE: Masimo v. TW - follow-up from today's meet and confer |

Mark,

Now that Defendants have seen Plaintiffs' motion and have learned of the information plaintiffs previously refused to provide (i.e., that the motion does not address any alleged trade secrets other than the ████████████ ), the exigency surrounding interrogatory number 11 is slightly diminished. However, the exigency that Plaintiffs remove improperly added trade secrets and describe alleged trade secrets with greater particularity remains. Accordingly, the *ex parte* application will address Plaintiffs' improper response to interrogatory number 1 but will not directly relate to interrogatory number 11. As we previously stated, the motion will seek to strike Plaintiffs' improperly added trade secrets, to compel greater specificity of at least trade secret category nos. 1, 3-5, 8-15, and for a protective order preventing discovery relating to trade secrets. As we also previously stated, the *ex parte* application will be filed Monday.

We disagree with a number of other statements in your email (e.g., statements about the untimeliness of Defendants' production of patent application materials), but we have made such disagreement clear over the course of several exchanges and find no need to restate those disagreements here.

Best,
Zach

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Friday, February 19, 2021 10:08 PM
**To:** Zach Kachmer <ZKachmer@MerchantGould.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Truewearables <Truewearables@MerchantGould.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>
**Subject:** RE: Masimo v. TW - follow-up from today's meet and confer

**CAUTION - External.**

Zach,

Defendants requested the February 17th call to discuss their *ex parte* motion and had not suggested that the parties discuss the PI or Plaintiffs' response to Interrogatory No. 11.  During the call, you changed topics to focus on those matters rather than working to resolve the *ex parte*.  The call could have been much more productive if you had informed us in advance that you actually wanted to discuss different topics.

Regarding the PI, TW's position that "Defendants cannot even attempt to assess your request to stop publication of Mr. Lamego's application unless we understand the full scope of trade secrets allegedly disclosed in the relevant application" is nonsensical.  Only two weeks ago, you wrote, "Defendants noted that they disagreed that … any True Wearables patent application contains any trade secret of Defendants and that Plaintiffs therefore have no grounds to seek relief to stop publication of any application."  That representation is not new.  Defendants made their assessment and have made clear that there is no information that Plaintiffs could provide to convince them otherwise.

Defendants have repeatedly demonstrated that the production of documents related to patent applications will be in whatever form and at whatever timing Defendants choose.   This issue has run since Defendants' initial production of documents when, rather than produce TW's patent applications, Defendants provided only portions of the documents.  Defendants have produced other patent applications only months, or even years, after they were filed with the Patent Office.  Even more recently, Defendants produced patent office filings more than four months after they were made.  Thus, Plaintiffs can no longer trust TW's representation now that TW "will produce those materials in a timely manner in compliance with Rule 26."  Notably, as you have represented, "Defendants noted that they had no obligation provide" even 30-days notice before the publication of any new patent application.  TW has made a deliberate decision to continue to allow its patent applications to publish despite Plaintiffs' allegations that those patents disclose Plaintiffs' trade secrets.

Regarding Interrogatory No. 11, during the February 17th call, Plaintiffs explained that they would **again** supplement their response to Interrogatory No. 11 by the end of next week.  Defendants agreed with the timing, as indicated in your email below.  Indeed, Defendants agreed with the timing knowing when Plaintiffs would be filing their PI motion.  It now appears that Defendants may be taking issue with this timing. Now that Defendants have reviewed Plaintiffs' PI motion, please confirm you are not including Interrogatory No. 11 in your *ex parte* motion.  If you are including Interrogatory No. 11, please explain the actual relief that TW seeks.

Lastly, we do not understand your disagreement with Plaintiffs' position that an *ex parte* application is only appropriate when the motion is urgent or there is an emergency.  Judge Selna's procedures state "ex parte applications are for extraordinary relief only."  The Standing Order states *ex parte* applications are "solely for extraordinary relief and should be used with discretion."  EFC. 10 at 3 (citing *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 491–92 (C.D. Cal. 1995). If you nevertheless insist on moving *ex parte*, please confirm the scope of the motion and when you will file.

Best regards, Mark

**Mark Kachner**
Partner
310-407-3472 Direct

**Knobbe** **Martens**
INTELLECTUAL PROPERTY LAW
**five decades. one focus.**

---

**From:** Zach Kachmer [mailto:ZKachmer@MerchantGould.com]
**Sent:** Thursday, February 18, 2021 5:47 PM
**To:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Truewearables <Truewearables@MerchantGould.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>
**Subject:** RE: Masimo v. TW - follow-up from today's meet and confer

Mark,

Thanks for the email. Please inform us if the timing of Plaintiffs' motion for preliminary injunction continues to change. We understand that the basis of Plaintiffs' motion will be at least the ▇▇▇▇▇▇▇▇ alleged trade secret. When we asked yesterday (and in exchanges prior to yesterday) whether there would be any other trade secrets at issue in Plaintiffs' motion for preliminary injunction, Plaintiffs' refused to answer. As we previously stated, Defendants cannot even attempt to assess your request to stop publication of Mr. Lamego's application unless we understand the full scope of trade secrets allegedly disclosed in the relevant application and where each such trade secret is found Defendants do not recall discussing a timeframe for producing patent office correspondence at yesterday's meeting, but, as we previously stated, we will produce those materials in a timely manner in compliance with Rule 26.

We discussed Plaintiffs' Response to Interrogatory No. 11 and the need for supplementation. Defendants stated that they did not have a particular format in mind for the supplementation, as long as Plaintiffs could assure Defendants that the supplementation would specify for each identified document the reason for its inclusion in the response (e.g., specify whether a document shows alleged disclosure of an alleged trade secret, includes/comprises an alleged trade secret, demonstrates Defendants' alleged disclosure of an alleged trade secret, etc.). Plaintiffs committed to making these distinctions. Plaintiffs also committed to providing more specificity with respect to the specific portions (e.g., page ranges, paragraph numbers, line numbers) of documents responsive to the interrogatory. Plaintiffs committed to doing this for each document to the extent possible.

Regarding the timing of Plaintiffs' supplemental response to No. 11, Plaintiffs previously committed to providing a supplemental response this week. During our conversation, Defendants stated that if it would not be possible for Plaintiffs to provide a fully responsive supplement this week, then supplementation next week would be acceptable. This is no longer the case. Plaintiffs now state they will file a PI Motion today. Unless Plaintiffs' motion is strictly limited to the ▮▮▮▮▮▮▮▮▮▮ and to the page ranges specifically identified in connection with the ▮▮▮▮▮▮▮▮ (i.e., MASM0114198-210, MASM0113683, MASM0113836-87, MASM0134975-76 and TRUE28824-35, 48-51), Plaintiffs must provide their supplemental response to Interrogatory No. 11 no later than concurrently with their PI Motion. Plaintiffs cannot, on the one hand, maintain that they have not had sufficient time to identify specific portions of documents supporting their trade secret allegations while, on the other hand, moving for a preliminary injunction based on these same allegations. If Plaintiffs cannot commit to this timeframe, Defendants will add this request back into their ex parte Motion to Compel.

Regarding Defendants' ex parte motion, Defendants agree with your identification of the issues Defendants intend to present. In addition, we specifically identified at least trade secret categories 1, 3-5, 8-15 as trade secret categories that we would be raising as insufficiently specific.  Defendants disagree with your implication that an ex parte motion is only appropriate when the motion is of an "emergency nature." Here, an ex parte motion is appropriate here for multiple reasons, including Judge Selna's specific instruction that motions regarding trade secret identifications be brought ex parte, Judge Early's order suggesting that motions regarding trade secret identifications should be brought ex parte, and the approaching discovery cut-off. While these reasons independently justify an ex parte application, Plaintiffs' intended motion for preliminary injunction provides yet another independent justification. Plaintiffs are seeking to prevent publication of True Wearables' patents based on alleged trade secrets that were improperly added to the case and/or are described with insufficient particularity. This only heightens the need for prompt resolution of Defendants' concerns related to trade secret identification, and an *ex parte* application is an appropriate means to seek this resolution. Plaintiffs can expect Defendants to file this ex parte application Monday.

Best,
Zach

**Zach Kachmer**
Merchant & Gould P.C.
1801 California Street
Suite 3300
Denver, CO 80202-2654
USA

**Telephone** (303) 357-1181
**Fax** (612) 332-9081
merchantgould.com

GUARDIANS OF GREAT IDEAS®

Note: This email message is confidential and may be privileged or otherwise protected by law. If you are not the intended recipient, please: (1) reply via email to the sender; (2) destroy this communication entirely, including deletion of all associated text files from all individual and network storage devices; and (3) refrain from copying or disseminating this communication by any means whatsoever.
Please consider the environment before printing this email. Thank you.

**From:** Mark.Kachner <Mark.Kachner@knobbe.com>
**Sent:** Wednesday, February 17, 2021 11:52 PM
**To:** Zach Kachmer <ZKachmer@MerchantGould.com>
**Cc:** Brian.Claassen <Brian.Claassen@knobbe.com>; Irfan.Lateef <irfan.lateef@knobbe.com>; Truewearables <Truewearables@MerchantGould.com>; Lit MASIMOL.1085L <LitMASIMOL.1085L@knobbe.com>
**Subject:** Masimo v. TW - follow-up from today's meet and confer

CAUTION - External.

Counsel,

During today's meet and confer you asked us about Plaintiffs' PI motion.  Specifically, you asked about the timing of the motion.  After conferring with our team, we plan to file the motion tomorrow.  As you know, the basis for our motion will be the ███████████ trade secret.  As Zach wrote in his email earlier today and we discussed during the meet and confer, the parties have had numerous discussions about the ███████████ and that it is disclosed in █ ████████████████████████████████████████  During our call, Defendants reiterated their position that they will not agree to keep those applications from publishing and would not commit to a timeframe for producing any further correspondence with patent office regarding those patent applications.

We also discussed our supplemental response to Interrogatory No. 11.  We plan to serve that no later than the end of next week.  As we discussed, Plaintiffs' supplemental response will include the sub-parts identified in the interrogatory.

Finally, we discussed Defendants' contemplated ex parte motion.  You identified the following three issues TW intends to move Judge Selna to order on an ex parte basis:
1. To strike unidentified portions of Plaintiffs' trade secret disclosure in response to Interrogatory No. 1;
2. To compel Plaintiffs to provide a more specific response to Interrogatory No. 1; and
3. For a protective order to prevent trade secret discovery until Plaintiffs' address the second item on this list.

Plaintiffs asked for the basis for the emergency nature of the motion, particularly given that Plaintiffs have committed to supplementing their response to Interrogatory No. 11.  In response you stated that you believe Judge Selna and Judge Early ordered these issues to be addressed on an ex parte basis, and that fact discovery closes on May 21, 2021.  Plaintiffs explained that Judge Selna's statement nearly two years does not create the basis for an ex parte filing now, and that the close of fact discovery in more than three months does not present the need for emergency relief now. We reiterated that Judge Early's order did not suggest bringing an ex parte motion before Judge Selna only now.

We also asked about contemplated protective order, more specifically what discovery Defendants sought to prevent, how that issue was appropriate for ex parte relief, and why TW believes that is not a discovery issue that should follow the joint stipulation process before Judge Early.  TW responded that it seeks to prevent any improper inference from TW's decision not to respond substantively to Plaintiffs' Interrogatory Nos. 7 and 8, and that the issue was intertwined with issues (1) and (2), above.  Your response confirms that the responses are inadequate.

Finally, we asked as a matter of professional courtesy that you inform us of when you intend to file the ex parte motion.  You did not respond.  We would appreciate the courtesy of a response to that issue.

Please contact me with any questions.

Regards, Mark

**Mark Kachner**
Partner
Mark.Kachner@knobbe.com
310-407-3472 **Direct**



INTELLECTUAL PROPERTY LAW

**five decades. one focus.**
1925 Century Park East, Suite 600
Los Angeles, CA 90067
www.knobbe.com/mark-kachner

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.