Joseph R. Re (Bar No. 134479)
joseph.re@knobbe.com
Stephen C. Jensen (Bar No. 149894)
stephen.jensen@knobbe.com
Irfan A. Lateef (Bar No. 204004)
irfan.lateef@knobbe.com
Perry D. Oldham (Bar No. 216016)
perry.oldham@knobbe.com
Brian C. Claassen (Bar No. 253627)
brian.claassen@knobbe.com
**KNOBBE, MARTENS, OLSON
 & BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone:  (949)-760-0404
Facsimile:  (949)-760-9502

Attorneys for Plaintiffs,
Masimo Corporation and
Cercacor Laboratories, Inc.

# IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

## SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation, <br><br> Plaintiffs/Counterdefendants, <br><br> v. <br><br> TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, <br><br> Defendants/Counterclaimants. | Case No. 8:18-CV-02001-JVS-JDE <br><br> **PLAINTIFFS MASIMO CORPORATION AND CERCACOR LABORATORIES, INC.'S REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR PRELIMINARY INJUNCTION** <br><br> **Hon. James V. Selna** <br> **Hon. Magistrate John D. Early** <br><br> **Hearing: March 22, 2021** <br> **Time: 1:30 p.m.** <br> **Court: Room: 10C** <br><br> **Discovery Cutoff: 05/21/2021** <br> **Pre-Trial Conf.: 12/13/2021** <br> **Trial: 01/11/2022** <br><br> **[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]** |

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION ................................................................. 1

II.  ARGUMENT ..................................................................... 2

   A.   Defendants Distort The Nature of the Requested Relief ........... 2

   B.   Plaintiffs Identified The ▮ Trade Secret With
        Sufficient Specificity ........................................... 2

   C.   Plaintiffs Are Likely to Succeed on the Merits .................. 5

        1.   Defendants' Ad Hominem Attacks Are Irrelevant ........... 5

        2.   Plaintiffs Are Likely To Show The ▮ is Not
             Generally Known ......................................... 5

             a.   Defendants Misapply The Law To Argue
                  the ▮ is Generally Known ........................... 6

             b.   Defendants Misapply The Law To Argue
                  the ▮ is "Readily Ascertainable" ................... 7

             c.   Defendants Have Not Shown The ▮ Is
                  Generally Known Or Established A
                  "Readily Ascertainable" Defense .................... 11

                  i.    ▮ Does Not Show The ▮ Is
                        Generally Known ............................. 11

                  ii.   ▮ Do Not Show The
                        ▮ Is Generally Known ........................ 13

                  iii.  Defendants' Conduct Confirms the
                        ▮ is Not Generally Known .................... 14

                  iv.   Defendants Did Not Independently
                        Develop the ▮ .............................. 16

        3.   Plaintiffs Are Likely To Show the ▮ has Value ......... 16

        4.   Plaintiffs Took Reasonable Steps To Protect The
             Confidentiality of the ▮ ............................. 18

        5.   Plaintiffs Are Likely To Show Lamego's
             Misappropriation ....................................... 18

# TABLE OF CONTENTS
### (*cont'd*)

**Page No.**

    D.    Plaintiffs Will Suffer Irreparable Harm Absent a
Preliminary Injunction ............................................................. 19

    E.    The Balance of Hardships Weigh In Plaintiffs' Favor ............. 20

    F.    This Preliminary Injunction is in the Public Interest ............... 21

    G.    No Security is Necessary ........................................................... 22

III.    CONCLUSION ..................................................................................... 22

# TABLE OF AUTHORITIES

**Page No(s).**

*A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*,
  73 F.2d 531 (6th Cir. 1934)................................................................7, 12, 14

*Abba Rubber Co. v. Seaquist*,
  235 Cal. App. 3d 1 (Cal. Ct. App. 1991).........................................*passim*

*Action Learning Sys., Inc. v. Crowe*,
  No. CV 14-5112-GW(SHx), 2014 WL 12564011
  (C.D. Cal. Aug. 11, 2014) ...............................................................4

*Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*,
  226 Cal. App. 4th 26 (2014).............................................................6, 11, 13

*Art of Living Found. v. Does*,
  No. 10-CV-05022-LHK, 2011 WL 2441898
  (N.D. Cal. June 15, 2011)................................................................9

*Blindlight, LLC v. Cubbinson*,
  No. LA CV17-03497 JAK (PLAx), 2017 WL 6888498
  (C.D. Cal. May 16, 2017).................................................................20

*Contemporary Servs. Corp. v. Landmark Event Staffing Servs., Inc.*,
  677 F. App'x 314 (9th Cir. 2017).....................................................9

*Convolve, Inc. v. Compaq Comput. Corp.*,
  No. 00 Civ. 5141, 2011 WL 7144803
  (S.D.N.Y. Oct. 6, 2011)..................................................................10

*Diversified Silicone Prods. Corp. v. Elastapro Silicone Sheeting LLC*,
  No. CV 20-2010 PSG, 2020 WL 4390380
  (C.D. Cal. May 19, 2020)................................................................20

*DVD Copy Control Assn., Inc. v. Bunner*,
  116 Cal. App. 4th 241 (2004)..........................................................6, 12, 14

*Extreme Reach, Inc. v. Spotgenie Partners, LLC*,
  Case No. CV 13-07563-DMG, 2013 WL 12081182
  (C.D. Cal. Nov. 22, 2013) ..............................................................22

*Garcia v. Google, Inc.*,
  786 F.3d 733 (9th Cir. 2015)...........................................................2

# TABLE OF AUTHORITIES
## (*cont'd*)

Page No(s).

*Glob. Med. Techs., Inc. v. Jackson*,
Nos. C048438, C049490, 2006 WL 3735581
(Cal. Ct. App. Dec. 20, 2006).................................................................9

*Head Ski Co. v. Kam Ski Co.*,
158 F. Supp. 919 (D. Md. 1958) .....................................................7, 11, 13

*Imax Corp. v. Cinema Techs., Inc.*,
152 F.3d 1161 (9th Cir. 1998)...........................................................9, 10

*Imi-Tech Corp. v. Gagliani*,
691 F. Supp. 214 (S.D. Cal. 1986) ............................................6, 9, 10, 15

*Javo Beverage Co., Inc. v. Cal. Extraction Ventures, Inc.*,
Case No.: 19-CV-1895-CAB-WVG, 2020 WL 886527
(S.D. Cal. Feb. 24, 2020)....................................................................20

*JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*,
No. 2:20-CV02250-CAS, 2020 U.S. Dist. LEXIS 246878
(C.D. Cal. Dec. 30, 2020)...................................................................16

*Marlyn Nutraceutials, Inc. v. Mucos Pharma GmbH & Co.*,
571 F.3d 873 (9th Cir. 2009) .................................................................2

*Masimo Corp. v. Apple Inc.*,
Case No. SACV 20-00048, 2020 WL 6036324
(C.D. Cal. Sept. 16, 2020) ....................................................................3

*Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*,
Case No.: CV-08-00788 SJO, 2009 WL 10672947
(C.D. Cal. Aug. 14, 2009).................................................................9, 10

*Nelson Bros. Prof'l Real Estate LLC v. Jaussi*,
Case No. SA CV 17-0158-DOC, 2017 WL 8220703
(C.D. Cal. Mar. 23, 2017)....................................................................9

*O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*,
420 F. Supp. 2d 1070 (N.D. Cal. 2006) .......................................7, 12, 13

*Oren Enters., Inc. v. Stefanie Cove & Co.*,
Case No. CV17-3619 PA, 2017 WL 8220230
(C.D. Cal. June 2, 2017)....................................................................20

*Prolifiq Software Inc. v. Veeva Sys. Inc.*,
No. C 13-03644 SI, 2014 WL 2527148 (N.D. Cal. June 4, 2014).............3

# TABLE OF AUTHORITIES
*(cont'd)*

**Page No(s).**

*Rivendell Forest Products v. Georgia–Pacific,*
    28 F.3d 1042 (10th Cir. 1994).................................................................7

*SkinMedica, Inc. v. Histogen Inc.,*
    869 F. Supp. 2d 1176 (S.D. Cal. 2012) ....................................................9

*Spring Design, Inc. v. Barnesandnoble.com, LLC,*
    No. 09-05185 JW, 2010 WL 5422556 (N.D. Cal. Dec. 27, 2010) ...........9

## OTHER AUTHORITIES

18 U.S.C. § 1839 .....................................................................................8

Cal. Civ. Code § 3426.1 ......................................................................6, 8

California Uniform Trade Secrets Act ...................................................8, 9

Senate Comm. On Judiciary, Cal. A.B. 501,
    1983-84 Ref. Sess. 5-6, Selected Bill Analyses (1984) ............................8

West's Ann. Cal. Civ. Code § 3426.1 .................................................8, 10

# I. **INTRODUCTION**

Defendants mischaracterize the modest relief Plaintiffs seek.  Plaintiffs do not seek to stop Defendants' product sales or business activities.  Plaintiffs do not seek to stop Defendants' ongoing patent prosecution efforts.  Plaintiffs merely seek to stop publication of certain patent applications until after trial.

Defendants' opposition is remarkable for what it lacks.  Dr. Lamego submitted no declaration to oppose this motion, and thus many of the facts stand unrebutted.  For example, Defendants do not dispute that: a) Cercacor made a significant investment in the ██, b) Cercacor created the ██ while developing its one-of-a-kind noninvasive hemoglobin monitor, c) Lamego always treated the ██ as trade secret, and d) Lamego took the ██ from Plaintiffs.

Defendants argue the ██ is not a trade secret because of other published and purportedly similar math operations.  But Defendants offer no evidence those other math operations were "generally known," much less to anyone in the biosensing field.  At best, Defendants have shown that other math operations were known to a limited community of math scholars.  Defendants offer no evidence that a third party ever used these other math operations for biosensing applications.  That these other math operations exist, in the abstract, does not undermine the trade secret status of the ██.

Because Plaintiffs narrowly tailored the requested relief to delay publication of the particular patent applications only, the equities tip in favor of an injunction.  Plaintiffs' irreparable harm is not undercut by any alleged delay in bringing this motion.  No publication has occurred, and Plaintiffs did not delay.  Defendants filed all of the relevant patent applications confidentially.  Plaintiffs filed this motion as soon as they learned Defendants had received a Notice of Allowance.  Until such notice, publication before trial was speculative.  But publication is now an imminent threat.  Defendants do not dispute that the publication by the Patent Office would be irreversible.

Defendants show no hardship in delaying publication of their patent applications that disclose the ███.  Defendants offer no explanation how the injunction would affect their business at all.  Accordingly, the Court should grant the limited injunction.

## II. <u>ARGUMENT</u>

### A.   <u>Defendants Distort The Nature of the Requested Relief</u>

Defendants argue that the requested relief seeks to "suspend their patent prosecution efforts."  Opp. at 13.  That is not correct.  Defendants would be free to continue to prosecute their applications, in a confidential manner as they are currently doing.

Defendants argue that Plaintiffs are subject to a higher burden because the requested relief "goes beyond maintaining the status quo" and thus "is mandatory, not prohibitory."  Opp. at 14.  But the patents will not publish absent Defendants taking further action.  *See* Ex. 35 at 836 ███████████████████ ████████████████████████████████████████████████████████ ████████████   Thus, the requested relief merely maintains the status quo.

Defendants' reliance on *Marlyn Nutraceutials, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878-79 (9th Cir. 2009) is misplaced.  There, the requested injunction would have required Marlyn to recall already distributed products and provide restitution to its customers, thereby changing the status quo.  *Id*.  Defendants' reliance on *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) fails for the same reason.  There, the requested injunction would have required Google to remove (and keep removing) a film whenever anyone uploaded it.  *Id*.

### B.   <u>Plaintiffs Identified The ███ Trade Secret With Sufficient Specificity</u>

Defendants contend "Plaintiffs blur the lines as to what they claim is the alleged trade secret."  Opp. at 9.  But by arguing the ███ trade secret is generally known, Defendants demonstrate they understand it.   Dr. Goldstein also demonstrated his understanding of the ████████████████████████████

███████████████████████. Goldstein Decl. ¶ 70. As this Court explained, a defendant's ability to provide "detailed analysis about whether Plaintiffs' trade secret was in fact already public knowledge" shows that "Plaintiffs have defined their trade secret with sufficient particularity." *Masimo Corp. v. Apple Inc.*, Case No. SACV 20-00048, 2020 WL 6036324, *5 (C.D. Cal. Sept. 16, 2020); *see also Prolifiq Software Inc. v. Veeva Sys. Inc.*, No. C 13-03644 SI, 2014 WL 2527148, at *3 (N.D. Cal. June 4, 2014) ("Indeed, the fact that [defendant] is able to craft detailed arguments for why [plaintiff's] information does not constitute trade secrets means that [plaintiff] has sufficiently identified that information to [defendant] so that it may investigate the merits of [plaintiff's] claim.")

Defendants also contend they cannot determine which part of the ████ is the alleged trade secret. Opp. at 11, 20. Defendants argue as if the trade secret is limited to only ██████████████████████████████████████████████████████ ████. Opp. at 11, n.3. They justify this limitation by arguing that "Plaintiffs do not address ████████████████████████████ and their expert did not even consider them in his opinion." Opp. at 10. By focusing on only parts of ██████ ████ Defendants argue that any similarities between the ████ and the ████ ██████████ "are red herrings and are simply irrelevant." *Id*. at 12, *see id*. at 20.

But Plaintiffs and Dr. McNames explicitly relied on evidence from more of ██████████████████████████████████. *See* Br. 8-9; Ex. 9 at 286; McNames Decl. ¶ 43, 96-97, 111. Dr. McNames explained ████████████████ ███████████████████████████████████████████████ McNames Decl. ¶ 43. Both of the cited pages are in █████████. *See* Ex. 6 at 226, 240. McNames also explained that ███████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████. McNames Decl. ¶ 96-97. ██████████████ ████████████████████████████████████████████████ Ex. 6



at 226.  Defendants cannot be excused for failing to address similarities between the ███████████████████████████████████

Defendants argue that the trade secret should be limited to ████████ ████████  Opp. at 20.  Defendants justify this position by arguing that Plaintiffs claim value only to the ███████████████████████████████ ███████  *Id.* at 12.  But Defendants acknowledge that the ████ also includes

██████████  Defendants offer no basis to limit the trade secret to just ████████ ████████

Defendants' reliance on *Action Learning Sys., Inc. v. Crowe*, No. CV 14-5112-GW(SHx), 2014 WL 12564011 (C.D. Cal. Aug. 11, 2014), is misplaced. Action Learning described its "supposed trade secrets at an almost-meaningless level of abstraction" with words like "training," "professional development,"

-4-

"research-based    strategy    instruction,"    "data    driven    decision    making,"
"assessment," "administrative leadership," and "course design."  *Id*. *5.  Here
Plaintiffs identified the ███████████████████████████████████
█████████████████████████████████████████████████████████
████████████████.  Defendants then hired an expert with a PhD in Mathematics
with a thesis on █████████████████████   ████████████████
████████████████████████████.  The ████ was sufficiently
described.

        Defendants also argue that the Lamego notebooks are irrelevant because
Plaintiffs do not request relief related to them.  Opp. at 21.  But Defendants
maintain the notebooks confidentially and agree they "are not being published."
*Id*.  Thus, Plaintiffs are not seeking preliminary injunctive relief to keep the
notebooks confidential.  But, they are highly relevant.  First, Lamego himself
labelled the ████ as TW's trade secret, showing he understood the ████ was not
generally known while at TW.  Second, the notebooks document Lamego's
misappropriation of the ████.  Dr. Lamego's labelling them as trade secrets
confirms he did not ascertain the ████ from some other source and shows they were
not generally known.

**C.**     **Plaintiffs Are Likely to Succeed on the Merits**

        **1.**     **Defendants' Ad Hominem Attacks Are Irrelevant**

        Defendants argue "Plaintiffs' allegations are based not on merit, but on their
CEO's promise to harass and destroy Dr. Lamego."  Opp. at 8.  Plaintiffs
emphatically deny those accusations.  Regardless, they are irrelevant to this motion
and Dr. Lamego has not supported them.  Thus, Plaintiffs have refrained from
rebutting each of these baseless accusations.  Should the Court have any interest in
them, Plaintiffs would welcome live examination of Mr. Kiani.

        **2.**     **Plaintiffs Are Likely To Show The ████ is Not Generally Known**

        Defendants argue the ████ is "generally known" and "readily ascertainable."

Opp. at 15.  As addressed below, neither assertion has merit.

a.  **Defendants Misapply The Law To Argue the ▮▮ is**
**Generally Known**

Defendants attempt to show that bits and pieces of the ▮▮ trade secret were disclosed in various publications, applying a patent-like analysis to show obviousness or lack of novelty.  That type of analysis fails.  "[I]t is *not* required that a trade secret be patentably nonobvious or novel." *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 231 (S.D. Cal. 1986) (emphasis added).  Instead, the relevant inquiry is whether a trade secret is "generally known to the public or to other persons who can obtain economic value from its disclosure or use." Cal. Civ. Code § 3426.1(d)(1).

As the California Court of Appeal explained, even "[p]ublication on the Internet does not necessarily destroy the secret if the publication is sufficiently obscure or transient or otherwise limited so that it does not become generally known to the relevant people, i.e., potential competitors or other persons to whom the information would have some economic value." *DVD Copy Control Assn., Inc. v. Bunner*, 116 Cal. App. 4th 241, 251 (2004).[2]  Additionally, "even if some or all of the elements of [plaintiff's] design were in the public domain and thus unprotectable, the *combination* was a protectable trade secret if it was secret and had independent economic value." *Altavion, Inc. v. Konica Minolta Sys. Lab., Inc.*, 226 Cal. App. 4th 26, 47 (2014) (emphasis in original).  Courts may not examine trade secrets "bit by bit" and require the plaintiff "demonstrate protectability of its elements or some of them rather than protectability of the software system as a

---

[2] The court in *DVD Copy* explained its finding that information was generally known was *not* based on the information being "published on the internet."  116 Cal. App. 4th at 253.  Rather, the information was generally known because it "was quickly and widely republished to an eager audience so that [the trade secrets] it contained rapidly became available to anyone interested in obtaining them."  *Id.*

whole." *Id.* (quoting *Rivendell Forest Products v. Georgia–Pacific*, 28 F.3d 1042, 1043 (10th Cir. 1994)).

Courts routinely protect the knowledge that a particular technique or process works in particular circumstances.  *See Head Ski Co. v. Kam Ski Co.*, 158 F. Supp. 919, 923 (D. Md. 1958) ("knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret"); *O2 Micro Int'l Ltd. v. Monolithic Power Sys. Inc.*, 420 F. Supp. 2d 1070, 1089 (N.D. Cal. 2006) (knowledge of the "optimal" configuration of known elements was a trade secret).  As the Sixth Circuit explained: "Facts of great value may, like the lost purse upon the highway, lie long unnoticed upon the public commons.  Hundreds pass them by, till one more observant than the rest makes discovery."  *A.O. Smith Corp. v. Petroleum Iron Works Co. of Ohio*, 73 F.2d 531, 539 (6th Cir. 1934) (affirming trade secret finding).

Accordingly, Defendants need to show that Plaintiffs' entire trade secret, ***as a whole*** is "generally known."  Establishing that some portion of the trade secret, or even the entirety of the trade secret, can be found somewhere in an article does not disqualify the subject matter from trade secret protection. That Defendants were able to find some math equations they deem similar to the ██, does not destroy their protection as a trade secret. Further, Defendants cannot show that academic articles show the trade secrets are known for use in ████████ ████████.  Defendants point to nothing showing use of the math operations located by Dr. Goldstein to assist in this area.  Defendants provide no evidence that the ██ trade secrets are "***generally known***."

> **b.**   **Defendants Misapply The Law To Argue the ██ is "Readily Ascertainable"**

Defendants also argue they ***could have*** learned about the ██ because it is "readily ascertainable." Opp. at 14.  First, that Defendants' expert found academic articles unrelated to ████████████, once knowing the trade secret, does

-7-

not show the trade secret is readily ascertainable.  Defendants provided no evidence that ████████████████████ would have looked for and found Goldstein's articles to solve their problem.  Second, even if the articles showed the trade secrets for use in █████████████, that would not help Defendants. "[U]nder California law, information can be a trade secret even though it is readily ascertainable, so long as it has not yet been ascertained by others in the industry." *Abba Rubber Co. v. Seaquist*, 235 Cal. App. 3d 1, 21 (Cal. Ct. App. 1991).

Only the Federal statute mentions "readily ascertainable" as a trade secret requirement—***not*** the California Uniform Trade Secrets Act ("CUTSA").[3] *Compare* 18 U.S.C. § 1839(3) *with* Cal. Civ. Code § 3426.1(d).  Indeed, the legislative history for CUTSA shows the California legislature deliberately chose ***not*** to include a "readily ascertainable" requirement.  *See* West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments).  The legislature explained the "readily ascertainable" requirement was originally proposed and then deliberately "removed" because it was "ambiguous in the definition of a trade secret."  *Id.*  The legislature was concerned that a "readily ascertainable" requirement may allow a defendant to escape liability for ***actually*** stealing confidential information by arguing it ***could*** have discovered the information "through reverse engineering or a literature search."  Senate Comm. On Judiciary, Cal. A.B. 501, 1983-84 Ref. Sess. 5-6, Selected Bill Analyses (1984).  Thus, rather than focusing on where the defendant actually obtained the information, a "readily ascertainable" requirement would improperly "invite[] the various parties to speculate on the time needed to discover a trade secret."  *Id.*

---

[3] Plaintiffs allege Defendants misappropriated trade secrets under both the California and Federal trade secret statutes.  Dkt. 42 at 19, 23 (Third and Fourth Causes of Action).  The Court can conclude Plaintiffs demonstrated a likelihood of success on their California trade secret claims without addressing the Federal claims.

-8-

As the California Court of Appeal explained, "our Legislature chose to exclude from the definition only that information which the industry already knows, as opposed to that which the industry could easily discover." *Abba Rubber*, 235 Cal. App. 3d at 21; *see also Glob. Med. Techs., Inc. v. Jackson*, Nos. C048438, C049490, 2006 WL 3735581, at *6 (Cal. Ct. App. Dec. 20, 2006) (citing *Abba* and reversing because "[t]he trial court's reliance on the information's availability from other sources as a basis for not qualifying as a trade secret is misplaced").  The Ninth Circuit has similarly concluded that "whether information is 'readily ascertainable' is not part of the definition of a trade secret in California." *Imax Corp. v. Cinema Techs., Inc.*, 152 F.3d 1161, 1168 n.10 (9th Cir. 1998) (quoting *Abba*, 235 Cal. App. 3d at 21); *see also Contemporary Servs. Corp. v. Landmark Event Staffing Servs., Inc.*, 677 F. App'x 314, 315 (9th Cir. 2017) (quoting Abba, 235 Cal. App. 3d at 21) (the "ease of ascertainability is irrelevant to the definition of a trade secret").

District courts throughout California routinely follow *Abba Rubber* to reject "readily ascertainable" as a requirement under CUTSA.  *See, e.g., Nelson Bros. Prof'l Real Estate LLC v. Jaussi*, Case No. SA CV 17-0158-DOC (JCGx), 2017 WL 8220703, at *5 (C.D. Cal. Mar. 23, 2017) ("information can still constitute a trade secret if it is readily ascertainable, as long as it is not ascertained by others in the industry"); *Medtronic MiniMed, Inc. v. Nova Biomedical Corp.*, Case No.: CV-08-00788 SJO (PJWx), 2009 WL 10672947, at *1 (C.D. Cal. Aug. 14, 2009) ("Defendant may not use evidence that Plaintiffs' technology was readily ascertainable to negate the existence of a trade secret"); *Spring Design, Inc. v. Barnesandnoble.com, LLC,* No. 09-05185 JW, 2010 WL 5422556, at *4 n.6 (N.D. Cal. Dec. 27, 2010) ("ease of ascertainability is irrelevant to the definition of a trade secret"); *SkinMedica, Inc. v. Histogen Inc.*, 869 F. Supp. 2d 1176, 1193 (S.D. Cal. 2012); *Imi-Tech, .* 691 F. Supp. at 231; *Art of Living Found. v. Does*, No. 10-

CV-05022-LHK, 2011 WL 2441898, at *11 (N.D. Cal. June 15, 2011).[4]

At most, "readily ascertainable" remains "a **defense** to a claim of misappropriation."  *See* West's Ann. Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments).  However, showing that information **could** have been obtained from a readily ascertainable source is not enough when the Defendant **actually** obtained the information unlawfully.  *Abba Rubber*, 235 Cal. App. 3d at 21 n.9 (emphasis added).  *Abba Rubber* explains that readily ascertainable is available as a defense "based upon an **absence of misappropriation**, rather than the absence of a trade secret." 235 Cal. App. 3d at 21 n.9 (emphasis added).  Thus, if defendants show that the information is "easily identifiable" and "the defendants' knowledge of [the information] **resulted from** that identification process and **not** from the plaintiff's records, then the defendants may establish a defense to the misappropriation claim." *Id.*

For example, in *Imax*, 152 F.3d at 1168 n.10, the defendant argued that it "built its projector relying 'only on information about projectors … [known] to be in the public domain."  The Ninth Circuit criticized that assertion because "the district court did not endeavor to determine whether CTI actually relied only on the 'public domain' sources in creating its own projector." *Id.*  In *Medtronic MiniMed*, 2009 WL 10672947, at *1-2, this Court excluded evidence that information was "readily ascertainable" because defendant only alleged it "**could have** used reverse engineering to obtain Plaintiffs' technology, not that it actually did so."  This rule makes sense because "California law emphasizes punishing the wrongful acquisition of information, even if it could have been obtained legally." *Imi-Tech*, 691 F. Supp. at 231.

---

[4] Courts outside California also recognize that California has no "readily ascertainable" requirement. *See Convolve, Inc. v. Compaq Comput. Corp.*, No. 00 Civ. 5141, 2011 WL 7144803, at *9 (S.D.N.Y. Oct. 6, 2011) ("Unlike California law, under New York law there is no trade secret protection when the 'alleged information is readily ascertainable from nonconfidential sources.'").

-10-

Accordingly, Defendants' arguments that the ██████ is "readily ascertainable" are irrelevant to the issue of whether the ██████ qualifies as a trade secret. "Readily ascertainable" can be a defense **to misappropriation**, but only if Defendants can show that they **actually** obtained the trade secret only from a public source and **not** from Plaintiffs.

### c.   **Defendants Have Not Shown The ██████ Is Generally Known Or Established A "Readily Ascertainable" Defense**

Defendants argue ██████████████████" were generally known or "readily ascertainable" based on two different publications. First, Defendants' argument depends on improperly narrowing the trade secret to just ██████ ██████ Second, the two ████████████ are not generally known or "readily ascertainable."

### i.   ██████ **Does Not Show The ████ Is Generally Known**

Defendants first argue the ██████████████████████████ ████████████████████████████████ and is "commonplace." Opp. at 15-16. Defendants then contend this ████████████████████ ████████████████████ Opp. at 15-17.

Defendants do not attempt to show it was generally known to use even this piece of ████████████████. Defendants offer no evidence that anyone has publicly suggested using ██████████████ to solve any problem related to ██████████████████.

Thus, even if ████ disclosed the same ████████████████ ████████████ does not show that Plaintiffs' trade secret is "generally known." *See Altavion*, 226 Cal. App. 4th at 47. (explaining that even a showing that "some or all of the elements" of a trade secret are publicly disclosed does not show the entire trade secret is generally known). Knowledge of the effectiveness and desirability of ████████████████████████ ██████ was also not generally known. *See Head Ski*, 158 F. Supp. at 923

-11-

("knowledge of the particular process, method or material which is most appropriate to achieve the desired result may itself be a trade secret"); *O2 Micro*, 420 F. Supp. 2d at 1089; *A.O. Smith*, 73 F.2d at 539.

Defendants also have not shown that ███████████████████ was "generally known" or known to persons who could obtain economic value from its use. As discussed, publication alone does not make something "generally known." *DVD Copy*, 116 Cal. App. 4th at 251. Defendants' expert, Dr. Goldstein, ███ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ███████████ Opp. at 16; Goldstein ¶ 29. According to Dr. Goldstein, ███████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████ Goldstein at ¶ 27 (emphasis added). But in 2010, Lamego— who also holds a Ph.D—developed ████████████████████████ ████████████████████████ Many of the Cercacor engineers hold advanced degrees, including Mr. Chen (MS in Electrical Engineering from Stanford University). Chen at ¶ 3. If the technique in ███████████████ ████████████████████████ was generally known, Goldstein, Lamego, or one of the Cercacor engineers, or others in the field, would have known about it. At most Defendants have shown █████ is like a lost purse on the highway, but is not "generally known." *See A.O. Smith Corp.*, 73 F.2d at 539

Failing to establish the █████████████████████████ is generally known, Defendants argue that it is "readily ascertainable" based on █████. As discussed, California expressly excluded "readily ascertainable" from the definition of a trade secret. *Abba Rubber*, 235 Cal. App. 3d at 21. While "readily ascertainable" remains a defense to misappropriation, Defendants do not even attempt to meet the elements of that defense. In particular, Defendants do not show

-12-

1  that (1) the ████████████████████████ is "easily identifiable," much

2  less for use in biosensing, and (2) the Defendants' knowledge of ███ actually

3  "***resulted from***" Defendants' analysis of ████ and "***not*** from the plaintiff's

4  records."  *See id.* at 21 n.9 (emphasis added).  Defendants do not include ***any***

5  evidence they were ***aware*** of ██████████, much less that they obtained the trade

6  secret at issue from ███████████ and not from Plaintiffs.  Defendants do not

7  dispute that they obtained the ███ from Plaintiffs. And Goldstein testifies that he,

8  not Defendants, found ████.

9      Accordingly, Defendants have failed to show that ██████████ render the

10  ██████████████████████ generally known.  Likewise, Defendants

11  failed to establish a "readily ascertainable" defense based on ██████████.

12      **ii.**      ██████████    **Do Not Show The** ███ **Is**

13      **Generally Known**

14      Defendants also argue the ████████████████████████

15  ████████████████████████ Opp. at 17-19.

16  ██████████ does not render the ███ generally known.

17      As discussed above, Defendants do not attempt to show it was ***generally***

18  ***known*** to use the ██████████████████ at all, much less in

19  ██████████.  Again, Defendants offer no evidence anyone suggested

20  using the ████████████████████████

21  ████████████████████

22      Thus, even if ██████████████████████

23  ████████████████████ does not show that

24  Plaintiffs' trade secret is "generally known."  *See Altavion*, 226 Cal. App. 4th at 47

25  (explaining that publication of "some or all" of the elements of a trade secret is not

26  enough to show the trade secret is generally known); *Head Ski*, 158 F. Supp. at 923

27  ("knowledge of the particular process, method or material which is most

28  appropriate to achieve the desired result may itself be a trade secret"); *O2 Micro*,

420 F. Supp. 2d at 1089; *A.O. Smith*, 73 F.2d at 539.

Defendants have not shown that ███████████ was "generally known" or known to persons who could obtain economic value from its use. As discussed, publication alone does not make something "generally known." *DVD Copy*, 116 Cal. App. 4th at 251. Novelty is not the issue. It took Dr. Goldstein hours to find ██████████████████ description to guide his search. Opp. at 17. After explaining his belief that ████████████████████ ████████ Goldstein then observes that ████████████████ ██████████████████████████████████. Goldstein ¶ 69. Thus, Goldstein acknowledges that the ██████████████ ███████████████████—was *not* generally known.

Failing to establish the ███ is generally known, Defendants argue it is "readily ascertainable" based on ████████████. As discussed, California excluded "readily ascertainable" from the definition of a trade secret. *Abba Rubber*, 235 Cal. App. 3d at 21. Moreover, Defendants do not attempt to show the ███ is "easily identifiable" and their knowledge of ███ actually "***resulted from***" Defendants' analysis of ██████████ and *not* from the plaintiffs. *See id.* at 21 n.9. Defendants do not include *any* evidence they were even *aware* of ████ ████, much less that they actually obtained the trade secret at issue from ████████ and not from Plaintiffs. Rather, Goldstein testifies that he, not Defendants, found ██████████.

Accordingly, Defendants failed to show that the ███ is generally known. Likewise, Defendants failed to establish a "readily ascertainable" defense.

### iii.   **Defendants' Conduct Confirms the ███ is Not Generally Known**

Lamego described the ███ as "not available elsewhere" at Cercacor. Ex. 1 at MASM0114201-202. He later labelled his TW notebooks with the ███ as a trade secret. Ex. 16 at TRUE0522893. Thus, Lamego understood ███ was not

-14-

"generally known."  Defendants argue this evidence "does not speak to whether the ███████████████ constitute a trade secret under the law," because Lamego is "not an attorney."  Opp. at 19.  But Plaintiffs do not rely on Lamego's legal opinion.  Rather, Plaintiffs rely on Lamego's technical expertise in recognizing that the ███ is not generally known.  Lamego offers no contrary evidence.

Defendants' lawyers also recently argued to the Patent Office that the ███ is not generally known.  Defendants' do not dispute that their ███████████ ████████████████████████████████████████.  Opp. at 23, n. 8; McNames ¶ 66. ███████████████████████████████████

███████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████

Ex. 26 at TRUE049688-89.  Dr. McNames explained, that Lamego's workshops ████████████████████████████████████████████

████████████████████████████████████████████

████████.  Accordingly, just two months ago Defendants argued to the Patent Office that ██████████████████████████  Instead they argued the ███ is novel, nonobvious, and patent eligible.[5]

---

[5] While the trade secret and patentability standards differ, the patent standards are more demanding in that mere knowledge in the prior art may bar patentability.  *See Imi-Tech,* 691 F. Supp. at 231 (explaining that showing information is "known in the prior art" is not enough to defeat a trade secret).

-15-

### iv.  **Defendants Did Not Independently Develop the** ██

Defendants seek an inference that they independently developed the ██ by arguing Lamego ████████████████████████████████ long after leaving Cercacor.  Opp. at 6-7 (citing *JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*, No. 2:20-CV02250-CAS (SKx), 2020 U.S. Dist. LEXIS 246878, at *69-70 (C.D. Cal. Dec. 30, 2020)).  Defendants seek this inference because Lamego submitted no declaration and they have no direct evidence to support any independent development.  But as *JBF* explained, "the party seeking to demonstrate independent development must provide evidence supporting that contention." *Id*. at *63.  Moreover, in *JBF*, the court denied a preliminary injunction because plaintiff offered no evidence defendant's founder could have taken the trade secret, even if he had been exposed to the trade secret. *Id*. at *69-70. Here it is undisputed that Lamego himself developed ████ trade secret while serving as Cercacor's CTO.

### 3.  **Plaintiffs Are Likely To Show the** ██ **has Value**

Defendants argue the ██ derives no economic value from its secrecy.  Opp. at 5.  Defendants contend that ████████████████████████████ ████████.  Opp. at 21-23.  Because Dr. Goldstein's ████████ are not generally known, *see supra* at Sec. II(C)(2)(c), they cannot diminish the value of the ██.  But, even if the ████████████████ and generally known, ████ ████████ does not eliminate the value of the ██.  The ██, developed by Dr. Lamego  provided ████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████, demonstrating they also believe it has value.  *See* Exs. 2, 19.

-16-



Defendants also ignore that the trade secret is use of the

. Ex. 9 at 246.  Plaintiffs demonstrated the value of the         by using

it

Defendants also ignore the

Defendants complain that Dr. McNames compared the

1 ████████████████████████████████████████████████████████

2 ████████████████████████████████████████████████████████

3 ██████████████

4    **4.    Plaintiffs Took Reasonable Steps To Protect The Confidentiality**

5    **of the ███**

6    Defendants appear to concede that Plaintiffs' took reasonable steps to protect

7 the ████.   Defendants do not dispute that Lamego signed four agreements with

8 Plaintiffs, requiring him to preserve the secrecy of the ████.   Defendants also do

9 not dispute that Lamego protected the ████ while at Cercacor, and ████████

10 ████████████████████████████████████

11    Defendants admit Lamego took steps to keep the ████ confidential.  Rather,

12 they dismiss those efforts as irrelevant, arguing Lamego was mistaken because he

13 is not an attorney.  Opp. at 19.  This is beside the point.  The point is that Lamego

14 himself protected the confidentiality of the ████.

15    **5.    Plaintiffs Are Likely To Show Lamego's Misappropriation**

16    Defendants do not dispute that ████████████████████████████

17 ███████████████.  Instead, Defendants argue the █████████████

18 █████████████████████ Opp. at 23.

19    Defendants' argument seeks to limit the scope of the ████ trade secret to ██

20 █████████████████████████ Thus the Defendants dismiss

21 the fact that ████████████████████████████████████

22 ████████████████ Defendants argue that the other two examples from

23 ████████████████████████████████████████████

24 ███████████████ Opp. at 23.  That is not true.

25    ████████████████████████████████████████████

26 ████████████████████████████████████████████████

27 ████████████████████████████████████████████████

28 ████████████████████████████████████████████████

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████████████████████████████

4  Dr. Goldstein opines that the ██████████████████████████

5  ████████████████████████████████████████████████████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ████████████████████████████████████████████████████

9  ████████████████████

10  **D.    Plaintiffs Will Suffer Irreparable Harm Absent a Preliminary**

11        **Injunction**

12        Defendants argue Plaintiffs delayed bringing this motion after learning

13  Defendants' patent applications included the ███. Opp. at 24.  Around July 2020,

14  Plaintiffs first learned Defendants' confidential pending patent applications

15  included the ███.  At that time, Plaintiffs requested Defendants' assurance that

16  they would not allow a patent application disclosing the ███ to publish.  Ex. E at

17  1-2.  Plaintiffs filed this motion as soon as they █████████████████████████

18  ███████████████████████████████ publication before trial was speculative.

19  But publication is now an imminent threat.

20        Defendants recently represented that ███████████████████████████

21  ████████████████████████.  *See* Ex. 35 at 836.  By this representation,

22  Defendants suggest that Plaintiffs need not file this motion now.  Defendants

23  reiterate this position in their opposition, claiming that "there is no exigent need

24  for injunctive relief."  Opp. at 25.  These positions undercut Defendants' argument

25  that the timing of this motion suggests Plaintiffs' lack of irreparable harm.

26        The irreparable harm Plaintiffs seek to prevent has not yet occurred.

27  Because Defendants' patent applications have not published, there has not yet been

28  a public disclosure of Plaintiffs' ███.  Defendants nevertheless argue Plaintiffs'

-19-

"delay" between knowledge of the *use* of the trade secret and filing this motion warrants denial.  Opp. at 25.  But the requested relief is to prevent *public disclosure*.  In all of Defendants' cases, the Plaintiff sought to enjoin *use* of a trade secret long after the *use* was discovered.  *Diversified Silicone Prods. Corp. v. Elastapro Silicone Sheeting LLC*, No. CV 20-2010 PSG (PJWx), 2020 WL 4390380, at *2 (C.D. Cal. May 19, 2020) ("seeking to bar Defendant from using" the trade secret several months after use was discovered); *Javo Beverage Co., Inc. v. Cal. Extraction Ventures, Inc.*, Case No.: 19-CV-1895-CAB-WVG, 2020 WL 886527, at *1 (S.D. Cal. Feb. 24, 2020)("Javo seeks to prohibit Defendants from further using Javo's trade secrets" months after Defendants had already published their misappropriation); *Oren Enters., Inc. v. Stefanie Cove & Co.*, Case No. CV17-3619 PA (AFMx), 2017 WL 8220230, at *5 (C.D. Cal. June 2, 2017)(denying request to retain jurisdiction over a potential future motion to stop defendants from using trade secrets to compete months after that use was discovered); *Blindlight, LLC v. Cubbinson*, No. LA CV17-03497 JAK (PLAx), 2017 WL 6888498, at *1 (C.D. Cal. May 16, 2017)(denying injunction requiring defendants "refrain from using" "trade secrets" because of Plaintiff's unexplained delay in moving after discovering the use).  Here Plaintiffs seek to enjoin activity that has not yet occurred.  Thus any alleged delay says nothing about Plaintiffs' irreparable harm.[6]

## E.  The Balance of Hardships Weigh In Plaintiffs' Favor

Once again, Defendants exaggerate the nature of the relief requested.  Delaying publication of certain patent applications does not cause Defendants to "essentially suspend the prosecution of their patent applications."  Opp. at 26; *see id*. at 27 ("suspension of Defendants' prosecution activities").  Defendants would

---

[6] Defendants also argue there can be no irreparable harm from publishing the ▮▮▮, by repeating their argument that the ▮▮▮ lacks value.  Opp. at 26.  This argument fails for the reasons discussed about value.

be free to continue to prosecute all applications, albeit in a confidential manner as they are currently doing.

Defendants argue that the requested relief "would be a significant blow to Defendants as they would lose their ability to protect their ideas and inventions and further their business endeavors." Opp. at 26. But Defendants never explain why. First, regardless of the requested relief, Defendants would be free to file new patent applications whenever they please. Second, the requested relief is unrelated to Defendants' business of selling their product.

Defendants offer no reason why they need a patent to issue now. Defendants offered no response to Plaintiffs' argument that TW has no possible infringer against whom it would assert any patent. Br. at 15. Defendants identify no hardship caused by any delay (whether another 10 months or longer) in the publication or issuance of the patent applications at issue.

Defendants complain that the requested relief would prevent publication of the ████████████████████████████████. Opp. at 27. But Defendants' admit that if the ████████████████████████████ would also be publicly accessible. Opp. at 27 n.10. For the requested relief to be meaningful, it must prevent publication of both applications, and any other application causing the publication of the ██.

**F.** **This Preliminary Injunction is in the Public Interest**

Defendants do not dispute that the public has an interest in protecting trade secrets from unlawful misappropriation. *See* Br. at 16. Instead, Defendants again misstate Plaintiffs' requested relief.

Defendants argue that restricting "Defendants' ability to use their own knowledge base and intelligence to create innovative new ideas" is "not the purpose of trade secret law." Opp. at 27. Plaintiffs seek only to delay publication of patent applications that would disclose the ██. Defendants would remain free to innovate. The requested preliminary relief does not prohibit Defendants from

-21-

1   using the ▓▓, so long as the ▓▓ remains confidential.  Defendants would also be

2   able to continue selling their products, pending trial.

3          Defendants argue "[t]rade secret law is not and should not be a vehicle by

4   which employers can harass former employees and stifle competition by

5   unlawfully claiming trade secret rights in well-known, publicly available

6   information."  *Id.*  This argument presumes Defendants are correct and there are

7   no trade secrets at issue.  It also is directed to Defendants characterization of the

8   litigation in general, and not to the narrow relief at issue.  Delaying patent

9   publication until after trial is hardly harassing or anti-competitive conduct.

10         Finally, Defendants argue that the "proposed injunction is against the public

11  interest" because "True Wearables['] device is an FDA-approved medical device."

12  Opp. at 28.  But the requested relief does not seek to enjoin sales of any device.

13  **G.     No Security is Necessary**

14         "The burden of establishing the amount of bond necessary to secure against

15  the wrongful issuance of an injunction rests with the defendant."  *Extreme Reach,*

16  *Inc. v. Spotgenie Partners, LLC*, Case No. CV 13-07563-DMG (JCGx), 2013 WL

17  12081182, at *9 (C.D. Cal. Nov. 22, 2013) (citations omitted).  Defendants made

18  no attempt to satisfy their burden, thus conceding that no bond is needed.

19                        **III.  CONCLUSION**

20         For the foregoing reasons, Plaintiffs respectfully request the court enter a

21  preliminary injunction to preserve the status quo and prevent Defendants from

22  allowing patent applications to publish that disclose Plaintiffs' ▓▓ trade secrets.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Respectfully submitted,

**KNOBBE, MARTENS, OLSON & BEAR, LLP**

Dated: March 8, 2021          By: */s/ Brian C. Claassen*
                                 Joseph R. Re
                                 Stephen C. Jensen
                                 Irfan A. Lateef
                                 Perry D. Oldham
                                 Brian C. Claassen

                                 Attorneys for Plaintiffs,
                                 Masimo Corporation and
                                 Cercacor Laboratories, Inc.