Amanda R. Washton (SB# 227541)
*a.washton@conklelaw.com*
Sherron Wiggins (SB# 321819)
*s.wiggins@conklelaw.com*
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403-2351
Phone: (310) 998-9100
Fax: (310) 998-9109

Attorneys for Defendants
*True Wearables, Inc. and Marcelo Lamego*

Peter A. Gergely (*Pro Hac Vice*)
*PGergely@merchantgould.com*
Ryan J. Fletcher, (*Pro Hac Vice*)
*RFletcher@merchantgould.com*
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

Paige S. Stradley, (*Pro Hac Vice*)
*PGergely@merchantgould.com*
**MERCHANT & GOULD, P.C.**
3200 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,, <br><br> Plaintiff, <br><br> v. <br><br> TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual, <br><br> Defendant. | CASE No. 8:18-cv-2001-JVS-JDE <br><br> **MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S ORDER REGARDING EX PARTE APPLICATION** <br><br> **Hearing: April 26, 2021** <br> **Time: 1:30 p.m.** <br> **Ctrm: 10C** <br><br> Hon. James V. Selna <br> Presiding Judge <br> Hon. John D. Early <br> Magistrate Judge <br><br> Complaint Filed:　November 8, 2018 <br> Trial Date:　　　March 9, 2021 |

3855.002\9953

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................ 3

II.     ARGUMENT ..................................................................................... 4

     A.     RECONSIDERATION IS PROPER BECAUSE THE COURT
        FAILED TO CONSIDER MATERIAL FACTS. ................................... 4

          1.    The Court Failed to Consider Evidence that Plaintiffs
             Unduly Delayed in Identifying Trade Secret 10 ......................... 5

          2.    The Court Failed to Consider Evidence that Plaintiffs have
             not Identified Trade Secrets 8 through 11, 14, and 15 with
             Sufficient Specificity ................................................................. 7

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
ORDER REGARDING EX PARTE APPLICATION

# I.     <u>INTRODUCTION</u>

Pursuant to Central District of California Local Rule 7-18, Defendants True Wearables and Marcelo Lamego ("Defendants") move for reconsideration of the Court's Order Regarding Ex Parte Application (Dkt. 188), in which the Court granted in part and denied in part Defendants' Ex Parte Application for an Order Striking Portions of Plaintiffs' Interrogatory Responses; Compelling Discovery Responses; and Protecting Defendants from Discovery (Dkt. 159-1). Defendants request that the Court reconsider its Order and strike Trade Secret 10, compel discovery responses for Trade Secrets 8 through 11, 14, and 15, and enter a protective order.

In its Order, the Court found that Plaintiffs had good cause for their late identification of Trade Secrets 6 through 11, 14, and 15, but the Court struck Trade Secret 12 (referred to as the "TSS") and Trade Secret 13, finding that Plaintiffs had failed to establish good cause for the late addition of these two new trade secrets. In assessing Trade Secret 12, the Court specifically held that Plaintiffs had unduly delayed by waiting until October 2020 to newly add the TSS to their supplemental interrogatory response. Separately, the Court denied Defendants' request for a more specific refinement of Trade Secrets 1, 3, and 5.  Defendants' respectfully request that the Court reconsider two aspects of its Order.

First, the Court should reconsider whether Plaintiffs had good cause and did not unduly delay in adding Trade Secret 10.  Similar to the TSS, Plaintiffs first identified Trade Secret 10 in October 2020.  Indeed, Plaintiffs admit that Trade Secret 10 was first identified in October 2020. Thus, the Court's same rationale for striking Trade Secret 12 applies with equal force to Trade Secret 10, and Trade Secret 10 should be stricken.

Second, the Court should reconsider its decision not to compel a more particular identification of Trade Secrets 8 through 11, 14, and 15. In their Ex Parte Application, Defendants argued that Plaintiffs failed to identify Trade Secrets 1, 3

through 5, and 8 through 15 with sufficient particularity.  Defendants also presented evidence that Trade Secrets 8 through 15 are not (and have never been) identified with sufficient particularity. In its Order, the Court held that Plaintiffs' identification of Trade Secrets 1 and 3 through 5 was sufficient, but the Court did not address the arguments or evidence presented regarding Trade Secrets 8 through 15. That evidence shows that the Court should compel a more specific identification of Trade Secrets 8 through 11, 14, and 15[1] and should protect Defendants from trade secret discovery pending a sufficiently specific identification of the same.

## II.    ARGUMENT

### A.    RECONSIDERATION IS PROPER BECAUSE THE COURT FAILED TO CONSIDER MATERIAL FACTS.

Local Rule 7-18 sets forth grounds for reconsideration:

> A motion for reconsideration of the decision on any motion may be made only on the grounds of (a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision.

L.R. 7-18. Because the Court failed to consider evidence that Plaintiffs unduly delayed in identifying Trade Secret 10 and failed to consider evidence that Plaintiffs'

---

[1] Because the Court has stricken Trade Secrets 12 and 13, there is currently no need for the Court to reconsider its Order regarding the specificity of those two trade secrets. Defendants understand that Plaintiffs intend to seek reconsideration of the Court's decision to strike Trade Secret 12. Defendants intend to oppose this motion and believe that Trade Secret 12 was properly stricken. However, should the Court reconsider its striking of Trade Secret 12 and reintroduce Trade Secret 12 to the case, the Court should reconsider its decision not to compel a more particular identification of Trade Secret 12 for the same reasons as Trade Secrets 8 through 11, 14, and 15.

1  current identifications of Trade Secrets 8 through 11, 14, and 15 are insufficiently

2  specific, reconsideration is proper.

3      **1.**  **The Court Failed to Consider Evidence that Plaintiffs Unduly**

4        **Delayed in Identifying Trade Secret 10**

5      In assessing Defendants' request that the Court strike new trade secrets added

6  by Plaintiffs, the Court held that it is proper to require a showing of good cause and a

7  lack of undue delay for an addition of new trade secrets. (Dkt. 188 at 2-3)[2]. The Court

8  explained this good cause requirement is consistent with the Federal Rules, is

9  consistent with California Code of Civil Procedure § 2019.210, and, in the Court's

10  words, "makes logical sense." (*Id*.) Applying the good cause standard with respect to

11  the Trade Secret 12, the Court found that "Plaintiffs did not have good cause to newly

12  add the TSS to their interrogatory response in October 2020." (*Id.* at 3). The

13  Defendants agree with this finding, but the TSS was not the only newly added material

14  in Plaintiffs' October 2020 interrogatory response.[3] Trade Secret 10, which Plaintiffs

15  admit was first identified in October 2020, should also have been stricken for the same

16  reason as Trade Secret 12.

17      When the Court considered whether Plaintiffs had established good cause for

18  their late addition of Trade Secrets 6 through 11 and 14 through 15, the Court stated:

19  "Trade Secrets 6 through 11, 14, and 15 were added in July 2020." (Dkt. 188 at 4).

20  The Order then explains that because "[July 2020] is only a little over three months

21  after the objections to Plaintiffs' technical expert were rejected by Judge Early, . . .

22  [t]he Court therefore concludes that there was no undue delay in adding these trade

23

24  ────────────────

25    [2] As in the Court's Order, all citations herein are made to the page numbers

26  found at the bottom of the cited documents.

27    [3] Defendants also agree that Plaintiffs failed to establish good cause with

28  respect to Trade Secret 13 and that the Court properly struck Trade Secret 13.

1  secrets, and Plaintiffs had good cause to add Trade Secrets 6 through 11, 14, and 15."

2  (Dkt. 188 at 4).

3      Defendants do not challenge the Court's conclusion that Plaintiffs' three-month

4  delay between the Court's approval of their expert in March 2020 and their

5  identification of additional trade secrets in July 2020 does not constitute undue delay.

6  If Plaintiffs had, in fact, added each of Trade Secrets 6-11, 14, and 15 in July 2020,

7  Defendants would not have reason to request reconsideration of the Court's decision

8  not to strike those trade secrets. But Trade Secrets 6 through 11, 14, and 15 were ***not***

9  each added in July of 2020. Trade Secret 10 was indisputably added in October 2020

10  and, as such, should have been stricken along with Trade Secrets 12 and 13.

11      For the proposition that Trade Secrets 6 through 11, 14, and 15 were added in

12  July, the Court's Order cites to page 8 of Plaintiffs' Opposition. (Dkt. 188 at 4).

13  Presumably, the Court is referring specifically to Plaintiffs' assertion that "[t]here is

14  no dispute that Plaintiffs identified all but ***one*** trade secret at issue by July 1, 2020."

15  (Dkt. 163 at 8 (emphasis original)). But as Defendants argued in their Ex Parte

16  Application, "[t]he Second Expanded Identification [in October 2020] retained most

17  of the newly added trade secrets from the First Expanded Identification [in July 2020]

18  and again ***added additional categories of trade secrets***." (Dkt. 159-1 at 9-10

19  (emphasis added)).  Defendants' Application focused specifically on the late addition

20  of the TSS as an example, in part because the TSS was the subject of Plaintiffs' then-

21  pending motion for preliminary injunction. But as the evidence submitted with

22  Defendants' Application shows, the TSS is not the only trade secret that was not

23  included in Plaintiffs' July 2020 interrogatory response. Rather, like the TSS, Trade

24  Secret 10 was first added to Plaintiffs' interrogatory response in October 2020 and

25  should be stricken for the same reasons.

26      It is undisputed that Trade Secret 10 was not included in Plaintiffs' July

27  identification and was first included in Plaintiffs' October 2020 supplementation.

28

1  Indeed, when the parties met and conferred regarding Defendants' intention to file
2  this Motion for Reconsideration, Plaintiffs' counsel **admitted that Trade Secret 10**
3  **was first identified in October 2020**. Declaration of Paige Stradley in Support of
4  Defendants' Motion for Reconsideration ("Stradley Decl."), ¶ 3, Ex. A at 2. Evidence
5  that Defendants submitted in support of their Ex Parte Application—specifically,
6  Exhibit A to the Declaration of Zachary Kachmer (Dkt. 134-2)—confirms that Trade
7  Secret 10 was **not** included in either Plaintiffs' Original Response (March 2019) or
8  Plaintiffs' First Expanded Identification (July 2020). (*Compare* Dkt. 134-2 at 5-12
9  *with* Dkt. 134-2 at 14-18.) Instead, Trade Secret 10 was, like the TSS, first included
10 in the October 2020 supplemental response. (*Id.*)

11      In its Order, the Court struck Trade Secret 12 because Plaintiffs "did not have
12 good cause to newly add the TSS in their interrogatory response in October 2020."
13 (Dkt. 188 at 3). The Court, believing that Trade Secret 10 had been identified in July
14 2020, held that Plaintiffs had good cause to add Trade Secret 10. But Defendants
15 submitted evidence that *multiple* trade secrets were first identified by Plaintiffs in their
16 October 2020 supplemental response. Because Plaintiffs admit that Trade Secret 10
17 was not added until October 2020 and because Defendants' Ex Parte Application
18 demonstrated the same, the Court should reconsider its Order and strike Trade Secret
19 10, which the parties agree was first identified in October 2020.

20          **2.    The Court Failed to Consider Evidence that Plaintiffs have not**
21                  **Identified Trade Secrets 8 through 11, 14, and 15 with**
22                  **Sufficient Specificity**

23      The portion of the Court's Order regarding Defendants' Motion to Compel
24 "address[ed] Defendants' arguments that Trade Secrets 1 and 3 through 5 are
25 insufficiently specific, requiring refinement." (Dkt. 188 at 4.) The Court concluded
26 that Defendants are not entitled to a more specific identification of trade secrets with
27 respect to Trade Secrets 1 and 3 through 5. The Court specifically cited Defendants'
28

statement, in their Ex Parte Application, that "Plaintiffs' initial identification of trade secrets sufficed at the early stages of the case to set the boundaries of relevant discovery." (*Id*.) According to the Court, if Plaintiffs' initial identification sufficed at the early stages of the case, "the initial identification of trade secrets can also suffice for later stages of discovery." (*Id*.)

As an initial matter, the Court's Order only purports to address Defendants' request for more specificity for "Trade Secrets 1 and 3 through 5." (*Id*.) This does not reflect the full scope of the issues presented in Defendants' Ex Parte Application, in which Defendants argued not only that Trade Secrets 1 and 3 through 5 were insufficiently specific but that the same was also true of Trade Secrets 8 through 15. (*See* Dkt. 159-1 at 25-27, Dkt. 159-10.) For example, Defendants specifically stated, "TS Nos. 1, 3-5, 8-15 are broad, vague, and/or riddled with ambiguities" and included as an exhibit "a chart describing the shortcomings for each of TS Nos. 1, 3-5, 8-15." (*Id*. at 25, 27; chart at Dkt. 159-10.) Defendants further explained that, while "Defendants believe TS 6-15 should be stricken[,] Defendants, however, have addressed these categories in this Section in the event the Court does not strike those trade secrets." (Dkt. 159-1 at n.5.)

It is not clear whether the Court's reference to "Trade Secrets 1 and 3 through 5" reflects the Court's failure to consider the full scope of Defendants' arguments or if it was an inadvertent error for the Court to not also refer to Trade Secrets 8 through 15. Regardless, reconsideration is justified. If the Court did not consider Defendants' arguments and evidence regarding Trade Secrets 8 through 15, the Court should reconsider its order to address the full scope of Defendants' Ex Parte Application. (Dkt. 159-1 at § III(A).)

Even if the Court's failure to refer to Trade Secrets 8 through 15 in its Order was merely inadvertent, reconsideration is warranted because the rationale offered by the Court reflects a failure to consider material facts presented to the Court. The Court

1  correctly notes that Defendants have acknowledged that Plaintiffs' "initial
2  identification sufficed at the early stages of the case." (*See* Dkt. 159-1 at 24).
3  However, as Defendants explained in the section of the brief regarding their Motion
4  to Strike, Plaintiffs made a near-wholesale replacement of that *initial* identification
5  over a year later. (*Id.* at 9). Accordingly, any belief that Defendants have expressed
6  about the sufficiency of Plaintiffs' "***initial*** identification" says nothing about
7  Defendants' beliefs about the sufficiency of Plaintiffs' *later* identifications of
8  additional, all-new trade secrets.

9       It is undisputed that Plaintiffs did not include Trade Secrets 6 through 15 in
10  their initial identification but, instead, added Trade Secrets 6 through 15 "based on
11  discovery." (Dkt. 188 at 2). Thus, Trade Secrets 6 through 15 were not merely
12  refinements of Plaintiffs' initial identification of trade secrets. Importantly, with the
13  exception of Trade Secrets 6 and 7, Defendants have *never* believed or asserted that
14  the newly identified trade secrets in Plaintiffs' July 2020 identification—or the newly
15  identified trade secrets identified in October 2020—were identified with sufficient
16  particularity. To the contrary, Defendants' Ex Parte Application explained that after
17  Plaintiffs provided an expanded trade secret identification in July 2020, "Defendants
18  promptly brought their concerns regarding Plaintiffs' expansion, ***lack of specificity***,
19  and catch-all language to Plaintiffs' attention." (Dkt. 159-1 at 9 (citing Dkts. 159-4,
20  159-6) (emphasis added).)

21       In particular, the Ex Parte Application refers to and cites correspondence that
22  Defendants sent to Plaintiffs' counsel two weeks after Plaintiffs served their July 2020
23  identification, in which Defendants asserted that "[e]ach of the trade secrets identified
24  in Plaintiffs' [trade secret identification] is a general concept or category of
25  information." More specifically, Defendants noted that Trade Secrets 6 through 22
26  (which Plaintiffs had newly added) "merely identify concepts and categories of
27  information rather than identifying legally protectable trade secret information." (Dkt.
28

MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION OF THE COURT'S
ORDER REGARDING EX PARTE APPLICATION

159-4 at 174). In follow-up correspondence, Defendants elaborated on the inadequacies of the newly added trade secrets, writing that "several of Plaintiffs' alleged trade secrets are broad and generic, not specific," that "[i]t is not sufficient for Plaintiffs to provide conceptual categories of information as a tactic to postpone the actual identification of trade secrets," and that "each and every one of Plaintiffs' alleged trade secrets is merely a broad category of information that would be applicable to any business [and] that is indistinguishable from matters within the parties' industry." (Dkt. 159-6 at 181-182).

In other words, Defendants objected to the lack of specificity in Plaintiffs' newly added trade secrets from the moment Plaintiffs made their first attempt to expand (not merely "refine") their trade secret identification in July 2020. And, with the exception of Trade Secrets 6 and 7, Defendants have maintained their objection to the lack of specificity from July 2020 all the way through their filing of the Ex Parte Application before this Court.[4] Defendants have never stated or suggested that any of newly added Trade Secrets 8 through 15 have been identified with a level of particularity that would suffice at any stage of discovery.

To the extent the Court's Order was intended to address Defendants' arguments regarding Trade Secrets 8 through 15, the Court's reasoning overlooks material facts that Defendants presented to the Court. Namely, the Court overlooks the fact that Trade Secrets 8 through 15 were *not* identified at the early stages of the case and that

_____

[4] Following Plaintiffs' identification of new trade secrets in July, the parties had numerous communications regarding Plaintiffs' identification of new trade secrets and the lack of sufficient specificity associated with the same. Ultimately, Plaintiffs agreed to provide another supplemental response with additional specificity. However, this response (the October 2020 supplement) added more new categories of trade secrets and remained insufficiently specific. Defendants then brought a motion to Judge Early seeking to strike the Plaintiffs' newly added Trade Secrets 6 through 15. Judge Early found that such a motion was more properly brought before this Court, and, accordingly, Defendants filed their Ex Parte Application before this Court.

Defendants have **never** believed nor asserted the identifications of Trade Secrets 8 through 15 to be sufficiently specific. Instead, Defendants consistently maintained that Trade Secrets 8 through 15 were not sufficiently specific. Therefore, with respect to these trade secrets, Defendants' request for specificity should not be denied based on Defendants' statement that "Plaintiffs' initial identification sufficed at the early stages of the case." (Dkt. 188 at 4). Defendants request that the Court reconsider the portion of its order denying their request for a more specific identification of Trade Secrets 8 through 11, 14, and 15[5] and denying Defendants' request for a protective order that protects Defendants from trade secret discovery pending a sufficiently specific identification of *all* trade secrets.[6]

Dated:  March 24, 2021

Amanda R. Washton
Sherron Wiggins, members of
CONKLE, KREMER & ENGEL
Professional Law Corporation

By:  */s/Amanda R. Washton*
Amanda R. Washton
Attorneys for Defendants
True Wearables, Inc. and Marcelo Lamego

---

[5] *See* note 1, *supra*.

[6] The Court's Order does not directly address Defendants' arguments relating to the need for a protective order, presumably because the Court rejected Defendants' request for a more specific identification of trade secrets. Should the court reconsider its Order and require Plaintiffs to provide a more specific identification of any one or more of Trade Secrets 8 through 11, 14, or 15, the Court should also enter a protective order protecting Defendants from trade secret discovery for the reasons presented in Defendants' Ex Parte Application.