Amanda R. Washton (SB# 227541)
a.washton@conklelaw.com
Sherron Wiggins (SB# 321819)
s.wiggins@conklelaw.com
CONKLE, KREMER & ENGEL
Professional Law Corporation
3130 Wilshire Boulevard, Suite 500
Santa Monica, California  90403-2351
Phone: (310) 998-9100
Fax: (310) 998-9109

Attorneys for Defendants
*True Wearables, Inc. and Marcelo Lamego*

Peter A. Gergely (*Pro Hac Vice*)
PGergely@merchantgould.com
Ryan J. Fletcher, (*Pro Hac Vice*)
RFletcher@merchantgould.com
Zachary D. Kachmer (*Pro Hac Vice*)
ZKachmer@merchantgould.com
**MERCHANT & GOULD, P.C.**
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

Paige S. Stradley, (*Pro Hac Vice*)
PStradley@merchantgould.com
**MERCHANT & GOULD, P.C.**
150 S. Fifth St., Suite 2200
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,,<br><br>Plaintiff,<br><br>v.<br><br>TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual,<br><br>Defendant. | CASE No. 8:18-cv-2001-JVS-JDE<br><br>**JOINT STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO ALLOW FOR REMOTE DEPOSITION OF DR. LAMEGO**<br><br>**Hearing: June 3, 2021**<br>**Time: 10:00 a.m.**<br>**Ctrm: 6A**<br><br>Hon. James V. Selna<br>Presiding Judge<br><br>Hon. John D. Early<br>Magistrate Judge<br><br>[Discovery Document: Referred to Magistrate Judge John D. Early]<br><br>Complaint Filed:    November 8, 2018<br>Trial Date:            January 11, 2022 |

1
2

## TABLE OF CONTENTS

**Page**

I.    INTRODUCTIONS.................................................................................3

    A.    DEFENDANTS' INTRODUCTION..........................................3

    B.    PLAINTIFFS' INTRODUCTION............................................3

II.    PARTIES' CONTENTIONS, SEPARATELY STATED ................................5

    A.    DEFENDANTS' POSITION....................................................5

        1.    An in-person deposition of Dr. Lamego presents unnecessary health risks. ....................................................6

        2.    Plaintiffs will not be prejudiced by conducting Dr. Lamego's deposition remotely. ..........................................8

        3.    Attendees at any in-person deposition would be required to wear a mask, negatively impacting the deposition. ...................10

        4.    Defendants' Motion Should be Resolved in an Expedited Manner ......................................................................11

    B.    PLAINTIFFS' POSITION......................................................12

        1.    The Parties Stipulated to Multiple Case Extensions To Accommodate Lamego's In-Person Deposition......................12

        2.    The Court Should Order Dr. Lamego To Appear In-Person For His Deposition...................................................13

            (a)    Legal Standard.................................................13

            (b)    Dr. Lamego is The Key Witness In This Case and The Parties Agree That Taking Dr. Lamego's Deposition Remotely Would Prejudice Plaintiffs ............13

            (c)    In-Person Depositions Are Safely Possible Now............14

            (d)    An In-Person Deposition Should Not Require Eliminating All Risk from COVID-19............................16

        3.    Conclusion .................................................................18

JOINT STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO ALLOW FOR REMOTE DEPOSITION OF DR. LAMEGO

# I. INTRODUCTIONS

## A. DEFENDANTS' INTRODUCTION

Plaintiffs have requested that Defendant Marcelo Lamego make himself available for an in-person deposition. Because of the health risks associated with the widespread COVID-19 virus, Dr. Lamego, who is at a higher risk of a severe case of COVID-19, is not comfortable with conducting an in-person deposition. Dr. Lamego is prepared and willing to conduct his deposition remotely, in the same way that the parties have conducted all other depositions in this case. However, Plaintiffs have insisted on being physically present when Dr. Lamego is deposed. It is unnecessary to require Dr. Lamego to expose himself to health risks and psychological stress when remote deposition technologies offer an effective and efficient alternative. Moreover, conducting an in-person deposition would, in fact, be less effective as it would require Dr. Lamego wear a mask which is likely to impede the clarity of Dr. Lamego's testimony (in addition to be physically uncomfortable to wear for two full days of depositions). Plaintiffs have identified no real prejudice that they will suffer if a remote deposition is taken. Accordingly, Defendants ask the Court to enter a protective order preventing Plaintiffs from forcing Dr. Lamego to appear in person for his deposition and allowing the deposition to proceed remotely. In light of Dr. Lamego's upcoming deposition and the upcoming close of fact discovery, Defendants will also be filing, concurrently herewith, an *Ex Parte* Application for an Expedited Ruling on Defendants' Motion.

## B. PLAINTIFFS' INTRODUCTION

Plaintiffs have patiently waited for an in-person deposition of named Defendant, Marcelo Lamego, for over 18 months. Marcelo Lamego is also the founder and only employee of Defendant True Wearables. Plaintiffs noticed in-person depositions of both Lamego and a Rule 30(b)(6) deposition of True Wearables on November 27, 2019. True Wearables designated Lamego on all Rule 30(b)(6)

-3-

topics.   Based on the importance of this witness, Plaintiffs have repeatedly accommodated Lamego's travel schedule, and granted schedule extensions due to the pandemic, so Lamego deposition could occur in person.  That deposition will include questions about source code that are central to the patents and trade-secret disputes. And the parties agree that depositions involving source code are considerably more difficult to conduct remotely.

Lamego seeks to prevent an in-person deposition based on COVID-19 concerns.   But COVID-19 community spread in southern California is now at the lowest level since the pandemic began.   Vaccines are widely available.   Pandemic restrictions are being lifted.  Lamego nonetheless alleges he is "not comfortable" with an in-person deposition.  But in just the past few days, Lamego worked outside his home in True Wearables' office, ate out at restaurants, and spent hours at crowded public malls and indoor stores.  He contends that being deposed in-person would lead to "psychological stress."  But Mr. Lamego's public leisure activities demonstrate he is not taking steps to limit the number of strangers with whom he comes in close contact.   Moreover, Lamego explains he does not have "any intention to receive a vaccine in the next 1-2 months."  Lamego's choice to delay obtaining a vaccine should not shield him from appearing in-person for his deposition.   Lamego's behavior seriously undermines his rationale for refusing an in-person deposition.

To accommodate an in-person deposition, Plaintiffs proposed various safety precautions.   Plaintiffs explained that everyone at the deposition (besides Lamego) would be fully vaccinated.  Plaintiffs proposed holding the deposition in a very large conference room that allows for social distancing.   Plaintiffs' counsel specially installed air filters in that room to allow for such in-person meetings.   Plaintiffs alternatively proposed deposing Lamego outdoors.   And Lamego need not travel for his deposition.  Counsel for Plaintiffs and Lamego are both located in Orange County, California.  Despite these safety measures, Lamego remains unsatisfied.  Lamego has

-4-

1   rejected all proposals for an in-person deposition, and he identifies nothing that would
2   satisfy him.

3       The Court should deny Lamego's request for a protective order because (1) a
4   live deposition is justified given the importance of Lamego to the case, (2) Plaintiffs
5   would be prejudiced if they had to take Lamego's deposition remotely, (3) Plaintiffs'
6   proposed safety measures would make Lamego's in-person deposition as safe as
7   possible, and (4) Lamego's purported concern of being in close proximity with
8   strangers is contradicted by his own recent behavior.

9   **II.   PARTIES' CONTENTIONS, SEPARATELY STATED**

10      **A.   DEFENDANTS' POSITION**

11      Over the past year, the parties have, on multiple occasions, stipulated to a
12  modification of the Scheduling Order in light of challenges in conducting certain
13  discovery. Among the challenges faced were travel restrictions imposed by State and
14  Federal governments, which have prevented the parties' experts from traveling to
15  review source code that, pursuant to the Protective Order, had been produced on-site
16  at counsels' offices. The inability of the parties' experts to review source code files
17  central to the case was a primary reason that the parties believed an extension of
18  discovery to be appropriate, and the parties hoped that travel restrictions would ease
19  as the COVID-19 situation improved. When the parties have modified the Scheduling
20  Order, Plaintiffs have also expressed a desire to conduct Dr. Lamego's deposition in
21  person. (*E.g.*, Dkt. 116 ("The parties have discussed remote depositions, but ***Plaintiffs***
22  submit that in-person depositions of certain of Defendants' witnesses and experts are
23  justified, especially because some depositions will include testimony regarding
24  detailed source code and the Defendants themselves.").)  However, Defendants have
25  never committed to conducting Dr. Lamego's deposition in person or indicated that
26  they believed that, when the time came for his deposition, Dr. Lamego would feel
27
28

JOINT STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO ALLOW FOR REMOTE DEPOSITION OF DR. LAMEGO

1 comfortable with an in-person deposition.[1] Here, a remote deposition is the best path

2 forward.

3     **1.**      <u>An in-person deposition of Dr. Lamego presents unnecessary</u>

4             <u>health risks.</u>

5       Since the parties' most recent modification of the scheduling order, there are

6 indications that the prevalence of COVID-19 is declining in some parts of this

7 country. Despite these encouraging signs, Dr. Lamego would like to avoid the

8 unnecessary risks associated with an in-person deposition. There are several

9 _____

10 [1] In correspondence, Plaintiffs have contended that the parties' stipulation to extend
the schedule was, in part, to accommodate in-person depositions. (Declaration of
11 Paige S. Stradley ("Stradley Decl."), ¶ 2, Ex. A.) But Defendants never agreed to in-
person depositions if not appropriate in light of COVID-19. In particular, the parties'
12 stipulation filed March 13, 2020 (Dkt. 78) makes no mention of the need for in-person
depositions and does not support Plaintiffs' contention that the parties' stipulation was
13 to permit in-person depositions. With respect to the parties' stipulation filed July 6,
14 2020 (Dkt. 116), that stipulation again does not support Plaintiffs' position. It states
"the parties have not been able to take depositions in-person in light of the stay-at-
15 home orders and numerous safety concerns. The witnesses reside in California,
16 Connecticut, Illinois, Hawaii, and Oregon. The parties have discussed remote
depositions, but ***Plaintiffs*** submit that in-person depositions of certain of Defendants'
17 witnesses and experts are justified, especially because some depositions will include
18 testimony regarding detailed source code and the Defendants themselves." (*Id.*
(emphasis added).) Indeed, this stipulation makes clear that it is only Plaintiffs, not
19 defendants, who believe that in-person depositions are justified. Finally, with respect
20 to the parties' December 9, 2020 stipulation (Dkt. 140), the stipulation expressly states
that ***"the parties have been unable to agree on in-person depositions in light of the***
21 ***stay-at home orders and numerous safety concerns."*** (*Id.* (emphasis added).) It
22 further explains that in-person depositions of certain witnesses are justified ***"if safely***
***possible"*** and further states that good cause exists to extend the schedule to "allow
23 time to accommodate in-person source code review on stand-alone computers and
24 ***potentially*** at least some in-person depositions . . . ." (*Id.* (emphasis added).) None of
25 these stipulations support that Defendants agreed to in-person depositions if such
26 depositions are not appropriate in light of COVID-19.

27

28

legitimate reasons for Dr. Lamego to want to avoid these unnecessary health risks. First, Dr. Lamego has not received any COVID-19 vaccination. (Declaration of Dr. Marcelo Lamego ("Lamego Decl.") ¶ 4.) Second, Dr. Lamego is at a higher risk of facing a severe case of COVID-19 due to his age and other preexisting conditions. (*Id.*, ¶ 3) Third, a decline in the prevalence of COVID-19 on national level does not mean that community spread is no longer an issue. As of the first week of May, California alone is reporting roughly 2,000 positive cases of COVID-19 on a daily basis. (Stradley Decl., ¶ 3, Ex. B.) Roughly the same number of Californians are currently hospitalized because of COVID-19. (*Id.*) And even vaccinated individuals stand a nonzero risk of contracting the virus. Indeed, for at least some of the vaccines being offered, there is a greater than 30% chance of the vaccine failing to prevent infection and, as a result, of the vaccinated individual standing a chance of spreading the virus to others. (*Id.*, ¶ 4, Ex. C.) Finally, an in-person deposition would require Dr. Lamego wear a mask for approximately 9 hours for two consecutive days. (*Id.*, ¶ 5, Ex. D.) Not only is this physically uncomfortable, as explained below, it will also negatively impact the effectiveness of his deposition. The best place for Dr. Lamego to conduct his deposition is within the confines of his own home.

Defendants do not deny that there is reason to be hopeful that, given sufficient time, the effects of COVID-19 will become an afterthought in many people's lives. But millions of people in this country—including Dr. Lamego—have not yet reached that point. And until they reach a point where they can confidently be assured that there is no or extremely minimal risk of adverse health risks, these individuals should not be forced to return to activities that have the potential to bring about unnecessary health risks and a high likelihood of causing psychological stress and discomfort. In the present case, Dr. Lamego should not be forced to be physically present with several individuals, including at least Plaintiffs' counsel, a court reporter, and a videographer, who he has never met and about whose behaviors he has no information

JOINT STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO ALLOW FOR REMOTE DEPOSITION OF DR. LAMEGO

1  for two straight days of extended contact.[2] This is especially true when there is an

2  equally feasible and effective alternative of conducting the deposition using

3  videoconferencing technology.

4          **2.      <u>Plaintiffs will not be prejudiced by conducting Dr. Lamego's</u>**

5                  **<u>deposition remotely.</u>**

6          Throughout the past year, courts in this district have routinely recognized that

7  remote depositions are an effective alternative to in-person depositions. *Doyel v.*

8  *ATOS IT Sols. & Servs.*, No. 8:18-cv-02181-DOC-KESx, 2020 U.S. Dist. LEXIS

9  209822, at *3 (C.D. Cal. June 15, 2020) (granting motion to conduct remote

10  depositions at a time when COVID-19 daily cases in California were approximately

11  the same as they are currently); *Swenson v. Geico Cas. Co.*, 336 F.R.D. 206, 210 (D.

12  Nev. 2020) ("[C]ourts within the Ninth Circuit routinely highlight remote depositions

13  as an effective and appropriate means to keep cases moving forward notwithstanding

14  pandemic-related restrictions.") And while it is true that Dr. Lamego is an important

15  witness in Plaintiffs' case, Plaintiffs have not offered any legitimate reason why his

16  deposition could not be conducted using this technology in the same way that

17  Plaintiffs have conducted depositions of other of Defendants' witnesses and in the

18  same way that Defendants are conducting the depositions of all of Plaintiffs'

19  witnesses.

20          Plaintiffs have generally asserted that an in-person deposition offers advantages

21  over the remote alternative. But when Defendants asked Plaintiffs to articulate

22  specific advantages, the reasons that Plaintiffs provided are not convincing. First,

23  Plaintiffs have stated that an in-person deposition is preferable because the deposition

24

25  _____

26  [2] Plaintiffs have noted that each of the above-mentioned individuals will be vaccinated. However, the California Department of Public Health still instructs that

27  vaccinated individuals should wear masks when indoors with persons such as Dr. Lamego. (Stradley Decl., ¶ 5, Ex. D.)

28

will involve review of source code. (Stradley Decl., ¶ 2, Ex. A at 5-6.) As Defendants have explained, though, Dr. Lamego can readily access any True Wearables source code just as easily at his home as he would be able to at an in-person deposition. Indeed, Defendants also plan to conduct depositions of Plaintiffs' witnesses involving source code; instead of requesting that these individuals appear in person, though, Defendants have merely asked that the witnesses be provided access to relevant source code during the deposition so that the witness will be able to quickly and easily answer any questions about the source code. Defendants have offered to take a similar approach with Dr. Lamego, ensuring that he has easy access to all of Defendants' source code prior to and during his deposition. In particular, Dr. Lamego will have all of his relevant source code on his computer and readily accessible at any remote deposition facilitating his review of and Plaintiffs' questioning regarding that source code. Plaintiffs have not explained why this approach would be any less effective than Plaintiffs' counsel handing Dr. Lamego the very same printouts at an in-person deposition. This is particularly true because source code files are organized in a structure that will allow Plaintiffs in a remote deposition to direct Dr. Lamego to particular lines of code as they question him. There is simply no reason that Plaintiffs cannot easily and efficiently question Dr. Lamego regarding source code remotely.

During the conference of counsel regarding this issue, Plaintiffs also suggested that remote depositions do not provide the same opportunity to assess witness credibility. (Stradley Decl., ¶ 2, Ex. A at 2.) But Plaintiffs' counsel acknowledged on that call that remote depositions do allow for an assessment of credibility. (*Id.*) In fact, remote depositions have been perfectly adequate for every other witness in this case and, during those depositions, neither party has experienced any challenges assessing the witnesses' credibility. (*Id.*) There is simply no reason to believe that Dr. Lamego's remote deposition would not be equally successful.

1  **3.**     **Attendees at any in-person deposition would be required to**
2  **wear a mask, negatively impacting the deposition.**

3       There are additional benefits of a remote deposition beyond the reduction of
4  health risks. In particular, if Dr. Lamego were to be deposed in the presence of
5  Plaintiffs' counsel, state and federal guidelines dictate that all attendees would be
6  required to wear masks. (Stradley Decl., ¶ 5, Ex. D.) The depositions of Dr. Lamego
7  are expected to last two full days. With seven hours of tape time, breaks, and lunch,
8  this roughly equates to wearing a mask for about 9 hours per day for two consecutive
9  days. Aside from being uncomfortable, this would make it more difficult for Dr.
10 Lamego to understand Plaintiffs' counsel's questions and for Plaintiffs' counsel to
11 understand Dr. Lamego's answers and assess his demeanor. *See Schoonover v. Iovate*
12 *Health Scis. U.S.A., Inc.*, No. CV 20-01487-AB (AGRx), 2020 U.S. Dist. LEXIS
13 229602, at *4 (C.D. Cal. Nov. 9, 2020) ("[I]n a deposition by remote means, Plaintiff
14 could appear without wearing a mask, which would permit a better assessment of her
15 demeanor and better clarity of her voice.")

16      Again, courts in this district and around the country have come to realize that
17 videoconferencing technologies are highly effective tools for conducting depositions.
18 *Richmond v. Reefer Sys.*, No. CV 19-7940-SB (PLAx), 2020 U.S. Dist. LEXIS
19 252789, (C.D. Cal. Dec. 21, 2020) (granting protective order because defendants had
20 failed to make a particularized showing that they would be prejudiced should the
21 depositions be conducted remotely); *Y.M. v. Beaumont Unified Sch. Dist.*, No. ED CV
22 19-1048-FMO (SPx), 2020 U.S. Dist. LEXIS 250406 (C.D. Cal. Dec. 11, 2020)
23 (rejecting defendants' contention of "logistical difficulties in conducting a document-
24 heavy deposition remotely"). Several courts have conducted entire trials, including
25 highly technical patent infringement trials, using video conferencing technologies.
26 Indeed, Defendants' firm just successfully conducted a five-week jury trial all via
27 Zoom. In short, these technologies not only work but work well. A remote deposition
28

-10-

1  of Dr. Lamego offers a comparable—and, in many ways, a superior—opportunity for

2  Plaintiffs to conduct their deposition. The Court should not require Dr. Lamego to

3  face health risks and psychological stress when this alternative is readily available to

4  Plaintiffs.

5          **4.**      **<u>Defendants' Motion Should be Resolved in an Expedited</u>**

6                **<u>Manner</u>**

7       Defendants will be filing an *Ex Parte* Application for an Expedited Ruling on

8  Defendants' Motion concurrently with this Joint Stipulation. The discovery cutoff is

9  approaching in less than three weeks, and Dr. Lamego's depositions are scheduled for

10  the last two days of discovery, May 20 and May 21 (one in his personal capacity and

11  one as a designee under Federal Rule 30(b)(6)). Although Plaintiffs previously

12  indicated a preference for in-person depositions, there has always been an

13  understanding that any such in-person depositions would be conducted only when it

14  was safe to do so. For the reasons explained herein, Defendants do not believe that

15  we have reached that point for unvaccinated individuals such as Dr. Lamego. To date,

16  both of the parties have conducted every one of their depositions remotely in this case,

17  leading Defendants to believe that Plaintiffs shared this view. It was only recently,

18  approximately one month ago (see Stradley Decl., ¶ 2, Ex. A at 7), that Defendants

19  learned that this was not the case and, further, that Plaintiffs would insist upon an in-

20  person deposition of Dr. Lamego even after learning that he has not yet received any

21  vaccination.

22       In light of Plaintiffs' refusal to agree to a remote deposition and as further

23  detailed in Defendants' *Ex Parte* Application, Defendants request that the Court grant

24  Defendants' motion for a protective order in an expedited fashion so that parties can

25  move forward with Dr. Lamego's depositions on May 20 and May 21 and complete

26  his depositions before the May 21 discovery cutoff.

27

28

## B.   **PLAINTIFFS' POSITION**

### 1.   **The Parties Stipulated to Multiple Case Extensions To Accommodate Lamego's In-Person Deposition**

Plaintiffs understood the importance of taking Lamego's deposition in-person at the outset of this case.  Plaintiffs noticed his deposition for an in-person deposition well before the pandemic.  When the pandemic made in-person depositions more difficult, Plaintiffs agreed to several case extensions so that they could take Lamego's deposition in person.

Plaintiffs explained the importance of an in-person deposition in several joint stipulations.  In July 2020, the parties stipulated that they "have not been able to take depositions in-person in light of the stay-at-home orders and numerous safety concerns," and agreed to a schedule extension.  Dkt. 116.  Defendants argue in a footnote that the parties July 2020 stipulation "makes clear that it is only Plaintiffs, not defendants, who believe that in-person depositions are justified."  That argument misses the point.  Plaintiffs agreed to extend the schedule so that it could depose Lamego in person.

In December 2020, while the pandemic continued, both parties stipulated that "depositions involving source code are considerably more difficult to accommodate remotely."  Dkt. 140 at 1.  Accordingly, both parties stipulated that "***in-person depositions***, if safely possible, of certain of witnesses and experts ***are justified***, especially because some depositions will include testimony regarding detailed source code, company representatives, and ***the Defendants themselves***."  *Id.* at 1-2. (emphasis added).  Defendants fail to show why Lamego's deposition is not safely possible now.

1   |   **2.**      **The Court Should Order Dr. Lamego To Appear In-Person**
2   |               **For His Deposition**
3   |          **(a)**      **Legal Standard**
4   |      By default, depositions are taken in-person.  Changing the default to conduct a
5   |  deposition by remote means requires a stipulation by the parties or court order.
6   |  Federal Rule Civil Procedure 30(b)(4).  The party seeking to conduct a deposition
7   |  remotely must identify a legitimate reason for the remote deposition. *Schoonover v.*
8   |  *Iovate Health Sciences U.S.A. Inc.*, Case No. CV 20-01487, 2020 WL 7094061 *1
9   |  (C.D. Cal. Nov. 9 2020).  If the movant makes this showing, "the burden shifts to the
10  |  opposing party to make a particularized showing that conducting the deposition by
11  |  remote means would be prejudicial." *Id.*
12  |          **(b)**      **Dr. Lamego is The Key Witness In This Case and The**
13  |                       **Parties Agree That Taking Dr. Lamego's Deposition**
14  |                       **Remotely Would Prejudice Plaintiffs**
15  |      Defendants argue that a deposition using videoconferencing technology is "an
16  |  equally feasible and effective alternative" to an in-person deposition.  But Defendants
17  |  stipulated that, because Lamego's deposition will involve extensive review of source-
18  |  code, a deposition using videoconferencing technology is ***not*** an equally effective
19  |  alternative to an in-person deposition. *See* Dkt. 140.  The parties also stipulated that
20  |  an in-person deposition of the Defendant himself is justified. *Id.*  Plaintiffs agreed to
21  |  extend the schedule in December 2020 so they could depose Lamego in person.
22  |      Further, for nearly every issue in the case, Marcelo Lamego is Defendants' only
23  |  witness.  Lamego is the founder and only employee of Defendant, True Wearables,
24  |  and is the only individual defendant.  Lamego will be deposed in his individual
25  |  capacity and as Defendants' 30(b)(6) witness for every noticed topic.  Plaintiffs have
26  |  just two days for this deposition.  For Plaintiffs to conduct this deposition in such a
27  |  short amount of time, efficiency is paramount.  For depositions where time and
28  |

1  efficiency are not factors, remote depositions may be an adequate alternative to in-
2  person depositions.  But an in-person deposition is necessary to secure Plaintiffs' right
3  to adequately and completely depose Lamego on all of the numerous issues presented
4  in this case.

5      Defendants ignore the importance of Lamego's testimony. Defendants also
6  ignore their stipulation that source code review justifies Lamego's in-person
7  deposition.

8              **(c)    In-Person Depositions Are Safely Possible Now**

9      In December 2020, the parties agreed that in-person depositions were
10  "justified" and should proceed "if safely possible."  Dkt. 140.  Lamego's in-person
11  deposition is safely possible now for several reasons.

12      First, vaccines are widely available.  On April 1, 2021, California expanded
13  vaccine eligibility to all individuals over 50.  Kachner Decl. Ex. 1.  On April 15, 2021,
14  California further expanded vaccine eligibility to all individuals over 16.  *Id*.  The
15  Center for Disease Control advises that all approved vaccines are safe and effective
16  at preventing COVID-19.  Kachner Decl. Ex. 2.  The Center for Disease Control also
17  recommends that everyone "get a COVID-19 vaccine as soon as one is available to
18  you."  *Id*.  The Center for Disease Control advises that "if you've been fully
19  vaccinated you can gather indoors with fully vaccinated people without wearing a
20  mask."  Kachner Decl. Ex. 3.  And Dr. Anthony Fauci, director of U.S. National
21  Institute of Allergy and Infectious Diseases, recently advised that the time has come
22  to start relaxing indoor mask mandates.  Kachner Decl. Ex. 4.

23      Defendants argue that "Dr. Lamego has not received any COVID-19
24  vaccination."  But Dr. Lamego is not refusing vaccination based on any stated
25  principle or reason.  He merely states he does not "have any intention to receive such
26  a vaccine in the next 1-2 months."  Lamego Decl. ¶ 4. Defendants' personal decision
27  *to delay* vaccination cannot thwart Plaintiffs' ability to take Lamego's deposition in

28

-14-

1  person.  Defendants stipulated that depositions could proceed in-person and were

2  justified "if safely possible."  The wide availability of vaccines means in-person

3  depositions are safely possible.

4  Second, case transmission in Orange County, California is at an all-time low

5  since the start of the pandemic.  Kachner Decl. Ex. 5; 6.  Transmission is now just 1.5

6  cases per day per 100,000 residents, and trending lower.  Ex. 5 (46 positive cases in

7  3.18 million people).  As of May 11, 2021, Orange County is eligible for the yellow

8  and least-restrictive tier in the state's reopening blueprint.  Kachner Decl. Ex. 7.

9  Orange County will officially enter the yellow tier on May 19 so long as case counts

10  do not rise.  *Id*.  It's been nearly a month since the Central District of California

11  announced it was resuming jury trials.  Kachner Decl. Ex. 8.  Defendants acknowledge

12  the declining levels of COVID-19.  Defendants argue that "a decline in the prevalence

13  of COVID-19 on ***a national level*** does not mean that community spread is no longer

14  an issue." (emphasis added).  Defendants' focus on the national level ignores that, in

15  Orange County, the spread is significantly lower than in other parts of the United

16  States.  Defendants' argument that community spread remains "an issue" ignores

17  numerous factors addressed in this stipulation that will make Lamego's in-person

18  deposition safe for all concerned.

19  Third, Plaintiffs explained the safety measures they would employ during

20  Lamego's in-person deposition.  Those safety measures include conducting the

21  deposition in a large conference room with specially installed air filters.  Stradley

22  Decl. Ex. A at April 21, 2021 email Irfan Lateef to Paige Stradley.  Alternatively,

23  Plaintiffs offered to conduct Lamego's deposition outdoors.  *Id*. at May 3, 2021 email

24  Paige Stradley to Mark Kachner.  Plaintiffs further explained they would ensure that

25  all others attending Lamego's deposition are fully vaccinated.  *Id*. at April 21, 2021

26  email Irfan Lateef to Paige Stradley.  Plaintiffs also noticed Lamego's deposition for

27  Orange County, California where Lamego resides, thereby eliminating any need to

28

-15-

1   travel.  Kachner Decl. Exs. 9-10.

2          Defendants identify no additional safety precaution that they believe would

3   facilitate a safe in-person deposition.  Instead, Defendants argue an in-person

4   deposition would necessarily be less effective than a remote deposition because "an

5   in-person deposition would require Lamego wear a mask." But Plaintiffs have offered

6   safety precautions to avoid the need for Lamego to wear a mask.  The Northern

7   District of California recently ordered witnesses to testify in transparent masks or

8   transparent face shields to balance health and safety concerns with the need to

9   evaluate witness credibility.  Kachner Decl. Ex. 11.  Similarly here, the Court should

10  deny Defendants' motion and order Lamego to appear in-person with a transparent

11  mask or face-shield, at Lamego's choosing.

12         Finally, Defendants contend that "the parties have conducted all other

13  depositions in this case" using remote means.  Not so.  Defendants subpoenaed a

14  deposition of third-party, Christiano Dalvi, and on August 13, 2020 that deposition

15  proceeded ***in-person***.  *See* Kachner Decl. Ex. 12, 13.  At that time, community spread

16  of COVID-19 in California was significantly higher than it is now.  *See* Stradley Decl.

17  Ex. B.  And at that time, vaccines were not yet available.  Defendants should not be

18  permitted to refuse an in-person deposition for a party, after a third party sat for

19  Defendants' deposition in-person, when the transmission risk was higher.

20                  **(d)     An   In-Person   Deposition   Should   Not   Require**

21                  **Eliminating All Risk from COVID-19**

22         In December 2020, Defendants stipulated to Lamego's in-person deposition "***if***

23  ***safely possible***."  Now, Defendants argue that "millions of people in this country—

24  including Dr. Lamego—have not yet reached" the point of considering COVID-19

25  "an afterthought."  Defendants argue that "until they reach a point where they can

26  confidently be assured that there is ***no or extremely minimal risk*** of adverse health

27  risks, these individuals should not be forced to return to activities that have the

28

-16-

1    potential to bring about unnecessary health risks."

2           The Central District of California has rejected Lamego's threshold.   The

3    Central District of California published guidelines for safely conducting jury trials.

4    Kachner Decl. Ex. 3.   The Court has resumed holding in-person hearings in this case.

5    Dkt. 239.   The Court is resuming in-person hearings for civil litigation.

6           Defendants' cases do not require a remote deposition now.   Defendants' cases

7    were all decided between June and December 2020, when community spread of

8    COVID-19 was much higher than it is now, and no vaccine was widely available.

9    Indeed, because community spread in December 2020 remained high, the parties

10   stipulated to extend the schedule to accommodate in-person depositions at a later date.

11   The time has come to resume in-person depositions.   This is particularly true here,

12   where (1) the parties stipulated that a remote deposition would cause prejudice, (2)

13   the parties delayed the case schedule to allow for this particular deposition to proceed

14   in-person.

15          Defendants argue an in-person deposition presents "unnecessary risks."   And

16   Lamego declared that: "I have attempted to limit my exposure to COVID-19 by,

17   among other things, attempting to limit the number of people with whom I come into

18   close contact, especially for extended periods of time."[3]   Lamego Decl. ¶ 5.   Plaintiffs

19   investigated Lamego's general statement about his personal activity and learned that

20   Lamego's daily activities suggest he is not taking all steps to avoid unnecessary risk

21   of exposure.   This past Friday and Saturday, Lamego worked at an office that was not

22

23          [3] For an in-person trial currently being conducted in the Northern District of
24   California, the judge warned that she did not want health considerations to be "used
     as an excuse" for witnesses to avoid testifying in person.   Kachner Decl. Ex. 14 at 5.
25   The judge asked the lawyers "to make sure that you investigate the people who are
     telling you that they cannot show up."   *Id.* at 6.   The judge warned: "What I won't
26   allow is for someone to want to avoid the in-person cross-examination by claiming a
27   health concern, and then we find out that that health concern is not genuine."   *Id.*

28

-17-

1  his home, ate at restaurants, and spent hours in crowded public malls and shops.

2  Prince Decl. ¶¶ 2-3.   Lamego's recent activities in large public crowds seriously

3  undermine his claimed rationale for refusing an in-person deposition.   Defendants'

4  rationale for requesting a remote deposition is not sufficient to overcome Plaintiffs'

5  prejudice, that Defendants stipulated would result, if required to take Lamego's

6  deposition remotely.

7         **3.**    <u>**Conclusion**</u>

8       Because of the wide availability of effective vaccines, low community spread

9  of COVID-19, Plaintiffs' proposed safety precautions at any deposition, and

10  Lamego's willingness to mingle among crowds, his conclusory statement that he is

11  not "comfortable" with an in-person deposition should not control here.   Moreover,

12  because of the importance of Lamego's testimony to this case and the stipulated

13  prejudice of taking his deposition remotely, the Court should require Lamego to

14  appear live for his deposition, under any conditions it deems appropriate.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT STIPULATION REGARDING DEFENDANTS' MOTION FOR PROTECTIVE ORDER TO ALLOW FOR REMOTE DEPOSITION OF DR. LAMEGO

1     Respectfully submitted,

2     **KNOBBE, MARTENS, OLSON & BEAR, LLP**

3

4     Dated:  May 11, 2021          By: */s/ Mark D. Kachner*
                                         Mark D. Kachner
5
       Attorneys for Plaintiffs, Masimo Corporation
6       and Cercacor Laboratories, Inc.

7

8

9     **MERCHANT & GOULD, P.C.**

10    Dated: May 11, 2021          By: */s/ Paige S. Stradley*
                                        Paige S. Stradley
11
       Attorneys for Defendants.
12       True Wearables, Inc. and Marcelo Lamego

13

14

15                    **FILER'S ATTESTATION**

16          Pursuant to Local Rule 5-4.3.4 regarding signatures, I hereby attest that

17    concurrence in the filing of this document has been obtained from all signatories

18    above.

19

20    Dated:  May 13, 2021          By: */s/ Amanda R. Washton*
                                         Amanda R. Washton
21

22

23

24

25

26

27

28