# Exhibit L

# To Fletcher Declaration

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | |
|---|---|
| Case No. | SACV 18-02001 JVS (JDEx) |
| Date | 3/27/20 |

| | |
|---|---|
| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |

Present: The Honorable     **James V. Selna, U.S. District Court Judge**

| Lisa Bredahl | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS]** Order Regarding Claim Construction

Plaintiffs Masimo Corporation and Cercacor Laboratories Inc. (collectively, "Masimo") and Defendants True Wearables, Inc. and Marcelo Lamego (collectively, "True Wearables") have submitted proposed claim constructions for claim terms in certain asserted patents in this case. Jt. Stat., ECF No. 50. Both parties have submitted opening and responsive claim construction briefs. Masimo Op. Br. ("MOB"), ECF No. 51; True Wearables Op. Br. ("TOB"), ECF No. 52; Masimo Resp. Br. ("MRB"), ECF No. 55; True Wearables Resp. Br. ("TRB"), ECF No. 56.

The Court construes the claim terms identified herein.

## I. BACKGROUND

The patents raised by the parties as including disputed claim terms in this case are:

- U.S. Patent No. 8,983,564 (the "'564 Patent")
- U.S. Patent No. 8,886,271 (the "'271 Patent")
- U.S. Patent No. 7,295,866 (the "'866 Patent")
- U.S. Patent No. 7,186,966 (the "'966 Patent")
- U.S. Patent No. 10,194,847 (the "'847 Patent")
- U.S. Patent No. 10,194,848 (the "'848 Patent")

<u>See</u> First Amended Complaint ("FAC"), ECF No. 42. These patents disclose inventions related to a pulse oximetry device. <u>See id.</u> The parties now ask the Court to construe ten terms within these six patents.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 18-02001 JVS (JDEx)                    Date    3/27/20

Title     Masimo Corporation, et al., v. True Wearables, Inc, et al.

## II. LEGAL STANDARD

Claim construction is "exclusively within the province of the court." Markman v. W. Instruments, Inc., 517 U.S. 370, 372 (1996). Such construction "must begin and remain centered on" the claim language itself. Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1331 (Fed. Cir. 2001). But extrinsic evidence may also be consulted "if needed to assist in determining the meaning or scope of technical terms in the claims." Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995).

In construing the claim language, the Court begins with the principle that "the words of a claim are generally given their ordinary and customary meaning." Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). This ordinary and customary meaning "is the meaning that the [claim] term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." Id. at 1313. "[T]he person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification." Id.

"In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words. In such circumstances general purpose dictionaries may be helpful." Id. at 1314 (internal citation omitted). In other cases, "determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art." Id. Then "the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Id. (internal quotation marks omitted). These sources include "the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (internal quotation marks omitted).

Case 8:18-cv-02001-JVS-JDE Document 333-15 Filed 03/03/21 Page 4 of 22 Page ID
Case 8:18-cv-02001-JVS-JDE Document 293-1 Filed 03/27/20 Page 3 of 21 Page ID:3749
#:21696

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |
|---|---|---|---|

| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |
|---|---|

But it is improper to read limitations from the specification into the claim. <u>Callicrate</u> <u>v.</u> <u>Wadsworth</u> <u>Mfg.,</u> <u>Inc.</u>, 427 F.3d 1361, 1368 (Fed. Cir. 2005) ("[I]f we once begin to include elements not mentioned in the claim, in order to limit such claim . . . we should never know where to stop.") (quoting <u>Phillips</u>, 415 F.3d at 1312). A court does "not import limitations into claims from examples or embodiments appearing only in a patent's written description, even when a specification describes very specific embodiments of the invention or even describes only a single embodiment, unless the specification makes clear that 'the patentee . . . intends for the claims and the embodiments in the specification to be strictly coextensive.'" <u>JVW</u> <u>Enters.,</u> <u>Inc.</u> <u>v.</u> <u>Interact</u> <u>Accessories,</u> <u>Inc.</u>, 424 F.3d 1324, 1335 (Fed. Cir. 2005) (internal citations omitted) (emphasis added).

### III. DISCUSSION

**1. "caregiver" ('966 Patent)**

| Masimo's Construction | True Wearable's Construction | Court's Construction |
|---|---|---|
| Preamble not limiting. Plain and ordinary meaning (a person who provides care) | "a third party care provider" – preamble is limiting | Preamble not limiting |

The parties dispute whether the preamble of claim 1 limits the claim. Claim 1 of the '966 Patent states:

> 1. A method of tracking an amount of use of electronics of a noninvasive optical probe to **alert a caregiver** when the electronics have expired, the method comprising:
>
>> **determining** a cumulative amount of use of a noninvasive optical probe, the noninvasive optical probe including at least one of a plurality of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |
|---|---|---|---|

| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |
|---|---|

> emitters and a detector capable of detecting light
> attenuated by tissue;
> when the cumulative amount of use is exceeds a
> predetermined amount of use, **activating** one or
> more indications that the noninvasive optical probe
> has expired.

JA, Ex. 1, Claim 1 (emphasis added).

Generally, "the preamble does not limit the claims." Am. Med. Sys., Inc. v. Biolitec, Inc., 618 F.3d 1354, 1358 (Fed. Cir. 2010). "[A] preamble is not limiting where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002) (quotations and citations omitted). But "[i]f the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim." Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305, 51 USPQ2d 1161, 1165-66 (Fed. Cir. 1999). Although there is no "litmus test [that] defines when a preamble limits claim scope," the Federal Circuit has stated as one "guidepost" that "dependence on a particular disputed preamble phrase for antecedent basis may limit claim scope because it indicates a reliance on both the preamble and claim body to define the claimed invention." Catalina, 289 F.3d at 808.

True Wearables argues that the preamble is limiting because it gives the claim its intended life and meaning. TOB, 8. Specifically, it argues that the claim requires "activating one or more indicators" when a sensor expires, but activating an indication alone does not achieve the stated goal of the patent because it could be activated without being readily visible or apparent to the party responsible for replacing the expired component. Id. Therefore, they contend that the preamble which states that it is a "method of tracking ... to alert a caregiver" is required to give the claim its life and meaning. Id. The Court disagrees. The preamble is not required to understand the steps in the claim: (1) determining a cumulative amount of use, and (2) activating one or more indications. The preamble's function is only to state the purpose of the invention and

Case 8:18-cv-02001-JVS-JDE Document 333-15 Filed 03/03/21 Page 6 of 22 Page ID
Case 8:18-cv-02001-JVS-JDE Document 93 Filed 03/27/20 Page 5 of 21 Page ID #:1731
#:21698

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 18-02001 JVS (JDEx)                    Date   3/27/20

Title   Masimo Corporation, et al., v. True Wearables, Inc, et al.

does not affect the structure or steps of the invention.  See Biolitec, 618 F.3d at 1359 ("[T]he preamble has no separate limiting effect if, for example, the preamble merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention" (citations omitted)); see also Catalina, 289 F.3d at 809.  Nor does the descriptor "caregiver" embody an essential component of the invention.

True Wearable also argues that the specification makes clear that the preamble is limiting.  TRB, 7.  The Court disagrees.  It points to the fact that the specification states that the invention is used in medical settings, including by doctors.  See e.g., JA at MASM0000227 (1:35-44) ("For example, when a patient receives an insufficient supply of oxygen in critical care and surgical applications, brain damage and death can result in just a matter of minutes.  Because of this danger, the medical industry developed pulse oximetry, a noninvasive procedure for measuring the oxygen saturation of the blood.  A pulse oximeter interprets signals from a sensor attached to a patient in order to determine that patient's blood oxygen saturation."), MASM0000229 (6:33-38) ("This indication by the LED signals the operator to replace the used sensor with a new one.  The indication advantageously provides multiple people with the knowledge that the sensor should be changed.  For example, doctors, nurses, visitors, and even the patient may perceive the indication that the sensor has expired.").  However, the specification in no way limits the operator to be a "caregiver" as True Wearables argues.  The first example provides merely an example of why pulse oximeters were created and the second instead of limiting who may be alerted to "caregiver" expands it to doctors, nurses, visitors, and even the patient.

True Wearables also argues that the purpose of the invention and the problem solved cited in the specification is consistent with the preamble limitation of "alerting a caregiver."  TRB, 7-8.  The Court disagrees.  The specification states the problem it intends to solve as being generally that a "conventional pulse oximetry sensor is wholly reliant on an operator for timely replacement of soiled, damaged, or otherwise overused sensors. This approach is problematic not only from the standpoint of operator mistake or negligence, but also from the perspective of deliberate misuse for cost saving or other purposes. . . .  Accordingly, a need exists for a pulse oximetry sensor having the ability to monitor its own usable life."  MASM0000227 (2:6-16).  The specification does not limit operator to that of a "alerting a caregiver" third party or lead one to believe that the drafter intended to do so.

Case 8:18-cv-02001-JVS-JDE Document 333 Filed 03/27/20 Page 6 of 21 Page ID:9832

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | |
|---|---|---|
| Case No. | SACV 18-02001 JVS (JDEx) | Date  3/27/20 |
| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. | |

Finally, True Wearable argues that the prosecution history is consistent with the preamble being a limitation because the original title – "Systems and Methods for Indicating an Amount of Use of a Sensor" – was rejected by the examiner and replaced with "Amount of Use Tracking Device and Method for Medical Product."  TRB, 8 (citing to JA at MASM0000519, MASM0000465, and MASM0000456).  While this may be so, it does not follow that because the invention was intended to be tied to a medical product it is a product exclusively used by third-party caregivers on patients.

For the reasons stated above, the preamble of Claim 1 of the '966 Patent is not found limiting.  Because "caregiver" is not part of the claim, the Court does not construe the term.

### 2.    "amount of use" ('966 Patent)

| Masimo's Construction | True Wearable's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "amount of time of use" | Plain and ordinary meaning |

True Wearables argues that "amount of use" is an amount of time of use.  TOB, 10-12.  It argues that each method for tracking an amount of use in the specification either directly or indirectly tracks the duration of the sensor's use as time.  TOB, 10; see JA at MASM0000229 (5:60-67).  Masimo argues that the specification discloses using "the number of drive signals the sensor 200 has received" or measuring the voltage across a capacitor that discharges in a known manner to determine the amount of use for a sensor.  JA at Ex. 1 at 9:38–55; 10:40–48 ("A skilled artisan would recognize that a wide variety of timing schemes may be implemented using the foregoing read/write technique. For example, the oximeter may advantageously decrement from a predetermined threshold stored in the memory device.  On the other hand, the memory device may store the number of times the sensor has been used, the number of drive signals the sensor has received, or other similar methods of determining the amount of use for the particular sensor.").  Taking into account this section of the specification it would appear that the drafter intended to mean that the amount of use could be measured in more ways than just a unit of time.  True Wearables argues that these other methods are directly translated to an amount of time and are used by timers through discharge characteristics that can be modeled into an equation to determine how long a circuit has been in use.  TRB, 13-14

Case 8:18-cv-02001-JVS-JDE Document 333-15 Filed 03/03/21 Page 8 of 22 Page ID
Case 8:18-cv-02001-JVS-JDE Document 133 Filed 03/27/20 Page 7 of 21 Page ID#383
#:21700

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-02001 JVS (JDEx)                     Date    3/27/20

Title    Masimo Corporation, et al., v. True Wearables, Inc., et al.

(referring to MASM0000229 (5:1-14), MASM0000230 (7:9-18), TRUE005133 Fig. 1.30
(an equation found in The Art of Electronics by Paul Horowitz and Winfield Hill). The
Court disagrees with True Wearables characterization that because a method can be
translated into a method of time through an equation it is somehow only an equivalent of
time or a proxy for time.

    True Wearables also argues that the prosecution history of related family member
patents also provides supporting intrinsic evidence for their construction. TOB, 11. For
example, in the parent application for U.S. Patent No. 6,515,273 (the "'273 Patent"), the
patent examiner rejected as indefinite a pending claim reciting "a timer . . . and a sensor
life indicator connected to the timer such that the sensor life indicator is configured to
indicate the expiration of the useful or safe life of a pulse oximetry sensor." See
Declaration of Zach Kachmer, ECF No. 52-1, at TRUE005085, TRUE005073. In
response, the applicant stated "[t]he present invention provides a system and method for
allowing the manufacturer to specify a time, after which, the sensor is deemed to be worn
out, or in other words, the sensor's useful and safe life has expired." Id. at TRUE005080.
The applicant also referred to claim language reciting a "predetermined number of
pulses" to determine when a "predetermined time of use has elapsed." Id. at Ex. C,
TRUE005095. Masimo argues that the use of time in the related family member patent
was appropriate because the claim itself recited "time" unlike the claim at issue here
which uses the more general phrase "amount of use." MRB, 5. Masimo also contends
that the claim at issue there specifically recited to a "timer" unlike the claim at issue here.
Id. Finally, Masimo notes that the statement at TRUE005095 explains that a
"predetermined number of pulses" is not time itself. Thus, Masimo argues that a number
of pulses can serve as a proxy for time, but is not time itself. Id. The Court agrees that
the use of "timer" in the claim itself of the '273 Patent is limiting and does not shed light
on the analysis of "amount of use" in the claim at issue here.

    True Wearables also notes that in the prosecution of a parent patent, U.S. Patent
No. 6,861,639 (the "'639 Patent"), the applicant distinguished its patent that recited
"monitoring with an electricity device an amount of use of a pulse oximeter sensor" from
another patent (referred to as Dahlke). JA at Ex. 15, MASM0002279-MASM0002281,
MASM002266. The applicant explained that Dahlke's "number of usage cycles" was
"determining the number of attachments of the catheter to the monitoring device" but did
not "teach or suggest durational use-based measurements." Id. The applicant explained
that attachments are events and not usages. Id. The applicant then noted that an "event

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-02001 JVS (JDEx)          Date   3/27/20

Title   Masimo Corporation, et al., v. True Wearables, Inc, et al.

count is potentially radically different than the actual amount or duration of use of each product." JA at MASM0002367. True Wearables concludes from this that amount of use means duration of use, or an amount of time of use. TOB, 12. However, just a few sentences up, the applicant used the analogy of a car to explain that the Dahlke patent disclosed measuring "use" as the number of cities passed by a certain automobile, versus the number of miles. JA at MASM002266. Implicitly then, this would indicate that counting miles, could be a "durational use-based requirement" and that it was not necessarily only limited to time.[1] Furthermore, the claim at issue in this prosecution also specifically discussed a timer including steps for resetting a "timer." Id. at MASM0002261. Thus, the prosecution history of the '639 Patent does not appear to suggest that "amount of use" must be limited to a unit of time.

Given that the intrinsic evidence in both the specification of the '966 Patent and the prosecution history of the related patents do not appear to limit the "amount of use" to a measurement in time, the Court declines to construe the term "amount of use" in that manner. The Court finds that the ordinary meaning of "amount of use" is readily apparent and declines to construe the term "amount of use."

### 3.    "medical product" ('966 Patent)

| Masimo's Construction | True Wearable's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "medical device intended for use in the diagnosis of disease or other conditions" | Plain and ordinary meaning |

Claim 15 of the '966 Patent states:

A product use tracking device, comprising:
a noninvasive medical product;
a timer capable of tracking an amount of use of the product; and

---

[1]Consider a car's requirement for an oil change every six months or 3,000 miles.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |
|---|---|---|---|

| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |
|---|---|

> an indicator capable of providing an indication that the
> amount of use exceeded an acceptable amount of    use of the
> noninvasive medical product.

JA, Ex. 1, Claim 15.  True Wearables argues that the term "medical product" should be construed as a "medical device intended for use in the diagnosis of disease or other conditions" for the following reasons.  TOB, 9.

First, it argues that a person having ordinary skill in the art would understand the term accordingly because the U.S. Food and Drug Administration, who regulates medical products, defines medical products as "human and animal drugs, biologics and medical devices."  TOB, 9; TRB, 11.  True Wearables relies on the definition of "medical product" in a guidance document marked as "*Draft – Not for Implementation*" (JA at TRUE005051), a statutory definition within the "Cures Acceleration Network" (42 U.S.C. §287a), and a definition in an FDA guidance document concerning medical product communications (JA at TRUE005112, TRUE005114).  The remainder of True Wearable's proposed construction is derived from a portion of the statutory definition of the term "device" – "an instrument, apparatus, implement, machine, contrivance, implant, in vitro reagent, or other similar or related article, including any component, part, or accessory, which is – . . . (2) intended for use in the diagnosis of disease or other conditions, or in the cure, mitigation, treatment, or prevention of disease, in man or other animals."  21 U.S.C. § 321(h); JA at TRUE005056.

True Wearables argues that FDA guidelines "have been deemed reliable for use in claim construction."  TRB, 11.  While FDA guidelines may be reliable in the same way that a dictionary would be, they remain extrinsic evidence.  See Prometheus Labs., Inc. v. Mayo Collaborative Servs., 2005 U.S. Dist. LEXIS 49741, *24 ("This Court deems the FDA guidelines reliable, in that they can be considered in the same genre as dictionaries and treatises since they do not suffer from the bias expert witness testimony presents.").  True Wearables has not provided sufficient evidence that suggests a person of ordinary skill in the art, would look to the FDA's definition of medical product, and then a portion of the definition of "medical device" to understand the term "medical product."  Furthermore, the definition of "medical device" cited by True Wearables undermines their own proposed construction because it does not limit medical device to only those for diagnosis, but includes also those intended in the cure, mitigation, treatment, or prevention of disease.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  SACV 18-02001 JVS (JDEx)                    Date   3/27/20

Title     Masimo Corporation, et al., v. True Wearables, Inc, et al.

     True Wearables also argues that the specification of the '966 Patent states pulse oximeters are devices developed by the medical industry for use in critical care and surgical operations which is within the FDA's definition of medical device.  TOB, 10. This argument is unconvincing: it relates to the same example considered by this Order in Section III(1) that is merely an example of why pulse oximeters were created, but does not limit the interpretation of claim 15 to be limited to a definition devised by combining FDA guidance documents and part of a statutory definition of a different word.  See Ventana Med. Sys., Inc. v. Biogenex Labs., Inc., 473 F.3d 1173, 1180-81 (Fed. Cir. 2006) (declining to limit claim by interpreting general background section statements as a surrender of all types of methods of "dispensing.").

     Accordingly, the Court finds that no construction is necessary for the term "medical product."

### 4.     "power consumption" ('866 Patent)

| Masimo's Construction | True Wearable's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "level of power used that is greater than zero" | Plain and ordinary meaning |

     Claims 10-12 of the '866 Patent state:

     **10.** A pulse oximeter capable of varying its **power consumption**, comprising:
          an emitter driver which outputs a drive signal capable of driving at least one emitter of a sensor that detects energy attenuated by tissue of a measurement site of a patient; and
          a controller which selects between at least a first duty cycle of the drive signal corresponding to a **first power consumption** and a second duty cycle of the drive signal corresponding to a **second power**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |
|---|---|---|---|

| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |
|---|---|

> **consumption** different than the first power consumption.
>
> **11.** The pulse oximeter of claim **10**, wherein the **first power consumption** corresponds to a **low power consumption** and is associated with a high signal quality of at least one signal received from the sensor.
>
> **12.** The pulse oximeter of claim **10**, **wherein second power consumption** corresponds to a **high power consumption** and is associated with a low signal quality of at least one signal received from the sensor.

JA, Ex. 1, Claims 10-12 (emphasis added).  True Wearables proposes construing "power consumption" as "power used that is greater than zero" on the basis that the plain and ordinary meaning of "consumption" would not include a situation where no power was consumed.  TRB, 15; TOB, 14.  Merrian-Webster's dictionary defines consumption as "the act of consuming or using up" and consume as "to eat up."  TRUE005136.  True Wearables argues that a modifier such as "not" or "nothing" would be required before the term to mean zero power was used.  TRB, 15.

True Wearables also notes that the abstract describes the invention as being a pulse oximeter that "reduces power consumption" and "can lower power consumption."  TRB, 16; JA at MASM0000235.  While True Wearables proffers general-usage dictionary definitions, "the ordinary and customary meaning of a term does not govern if the intrinsic record contains clear lexicography or disavowal of claim scope."  C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 863 (Fed. Cir. 2004).  The abstract undermines True Wearable's position because it also states that "[v]arious sampling mechanisms may be used individually or in combination, including reducing the duty cycle of a drive current to a sensor emitter, intermittently **powering-down** a from-end interface to a sensor detector, or increasing the time shift between processed data blocks. . . In this manner, a pulse oximeter can **lower power consumption** without sacrificing performance during, for example, high noise conditions or oxygen desaturations."  JA at MASM0000235 (emphasis added).  "Powering-down" in its ordinary meaning could also include to where no power is being used.  Additionally, while True Wearables also points to other portions of the specification where power used varies between 3.125% and 25% of full power (Ex. 3 at 2:47-49; 7:6-24; 8:10-52), these all refer to a preferred

Case 8:18-cv-02001-JVS-JDE  Document 333  Filed 03/27/20  Page 12 of 21  Page ID #:21705

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |
| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. | | |

embodiment as illustrated in Figure 4. As to Figure 4, the specification also states that "[i]n conjunction with an intermittently reduced duty cycle or as an independent sampling mechanism, there may be a 'data off' time period longer than one drive current signal where the emitter drivers 480 (FIG. 4) are turned off." Ex. 3 at 7:17-24. The disclosure also calls the "data off" period a "power consumption" level. Id. at 8:18-19. Excluding this part of the specification, despite being part of the discussion of the same embodiment, would be inappropriate.

Accordingly, the specification does not support limiting the claim in the way proposed by True Wearables and Court finds that no construction is necessary for the term "power consumption."

### 5. "calculation technique(s)" ('564 and '847 Patents)

| Masimo's Construction | True Wearable's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "calculation procedure(s)" | Plain and ordinary meaning |

Claims 1-3 of the '564 Patent state:

**1.** A method of determining an indication of perfusion index in a patient monitor, the method comprising:
 receiving pleth data;
 calculating at least two indications of perfusion index
  using at least two different **calculation techniques**; and
 determining a final indication or perfusion index based
  on the at least two indications of perfusion index;
 wherein the final indication of perfusion index is
  determined by selecting the lowest indication of
  perfusion index.
**2.** A method of determining an indication of perfusion index, the method comprising:
 receiving pleth data; and
 determining an indication of perfusion index by utilizing

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    SACV 18-02001 JVS (JDEx)                    Date    3/27/20

Title    Masimo Corporation, et al., v. True Wearables, Inc, et al.

> at least one of a first **calculation technique** and a
> second calculation technique to determine a
> resulting indication of perfusion index:
>
> wherein determining the indication of perfusion index
> comprises choosing the **calculation technique** that
> will result in the lowest perfusion index value.
>
> **3.** An oximeter comprising:
>
> an input capable of receiving intensity signal data
> responsive to intensity signals acquired from a
> detector capable of detecting light attenuated by
> body tissue,
>
> a first calculation calculator configured to calculate a first
> indication of perfusion index using a first
> calculation technique:
>
> a second calculator configured to calculate a second
> indication of perfusion index using a second
> calculation technique; and
>
> a processor confirmed to utilize at least one of the first
> and second calculators to determine a resulting
> indication of perfusion index,
>
> wherein the processor is configured to select the
> calculator which calculates the lowest indication of
> perfusion index.

JA, Ex. 7 (emphasis added). Claims 1-3 of the '847 Patent utilizes similar language. See id. at Ex. 9.

True Wearables asks the Court to construe calculation techniques as calculation procedures. TOB, 26-27. They note for example that claim 1 of the '564 Patent requires using at least "two different calculation techniques" to generate "at least two indications of perfusion index," which they argue means that "the two calculation techniques must be two different calculation procedures." TOB, 27. The Court disagrees with this logic and fails to see why technique must be substituted with procedure. A review of the language in the claims and specification reveals sufficient context for readily understanding the term. For example, the specification provides examples of calculation techniques such as determining a value by use of a formula. JA, Ex. 7 (7:4-10). The specification also states

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |
|---|---|---|---|

| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |
|---|---|

that a "skilled artisan will recognize a number of calculations that can determine values of perfusion, including, for example, the foregoing ratio of the AC signal to the DC signal." Id. at 5:28-30. While True Wearables argues that Figure 7 for example shows that the PI calculators each use a different calculation technique with the same input and then two PI calculators output indications for input into a selector, the specification description notes: "one of the PI calculators determines a Pl value based on pulse by pulse determination of Pl," while the other "determines a PI value based on a fixed or variable interval of pleth data including more than one pulse, in effect calculating a bulk PI." JA, Ex. 7 (6:57-61, 7:4-14). Therefore, the input considered by the calculations is not the same and does not require substitution of the word procedure for technique. While True Wearables expresses concern that Masimo is likely to "stretch the term 'technique' to cover some unidentified sub-step of the Oxxiom's perfusion index calculation," the specification is "the single best guide to the meaning of a disputed term." See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996); TRB, 21.

Accordingly, the Court finds that no construction is necessary for the term "calculation techniques."

### 6. "selecting the lowest indication of perfusion index" ('564 and '847 Patents)

| Masimo's Construction | True Wearable's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning | "selecting the lowest perfusion index number" | "selecting the lowest perfusion index number" |

Claim 3 of the '847 Patent States:

> The oximeter of claim 2, wherein the processor is further configured to select the lowest indication of perfusion index as the resulting indication of perfusion index.

JA, Ex. 9. Similar language is used in Claim 1 of the '564 Patent which is quoted in full in Section III(5) of this Order. JA, Ex. 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |

| | |
|---|---|
| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |

True Wearables asks the Court to construe "indication of perfusion index" to be "perfusion index number."  They argue that an indication of the perfusion index must be a numerical value because there is no way to select a "lowest" of non-numerical terms. TOB, 24-25.

Masimo argues that while the intrinsic evidence contains many references to "PI value" and "PI number," the claim itself recites an indication of the value, but not the value itself.  MOB, 16.  It notes, for example, that the signal amplitude can be an indication of the perfusion index, but is not the index itself.  JA, Ex. 7 at 4:39-47.  It also argues that the specification includes other indicators for PI such as "LEDs or display elements, text, graphic, color, trended data, trace data, textual display, and bar."  MRB, 13; JA at Ex. 7 (1:66-2:10).  It notes that in Figure 3B, the lowest indication of perfusion index in the PI bar (shown below) could refer to the LED closest to the bottom of the scale, and not a number alone.



FIG. 3B

JA at Ex. 7, Fig. 3B.  However, the figure itself shows a numerical value scale to the side of the LED bar.  The specification corresponding to the figure itself states: "[t]he PI bar 324 may advantageously activate LEDs from a bottom toward a top such that the bar 'fills' to a level proportional to the measured value."  Id. at 2:28-30.  While the PI bar may be a reflection of the measured PI, the PI is still necessarily a numerically measured value.

True Wearables argues that the prosecution history of the '564 Patent supports this construction because in response to a prior art rejection, Masimo distinguished the pending claims because the prior art did "not teach specifically selecting the lowest PI number."  JA at MASM0000979.  Masimo argues that this isolated reference did not redefine "indication" and that the applicant did not use the "lowest PI number" to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |
|---|---|---|---|

| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |
|---|---|

distinguish any prior art reference. MOB, 16. It also argues that the statement merely acknowledged that the prior art did not teach the limitation, but did not limit the meaning of any claim term. MRB, 10-11. The statement at issue reads:

> The Office Action appears to admit that Terry does not teach specifically selecting the lowest PI number. Rather, the Office Action relies on the teachings of the present application as a basis for its rejection. Applicants assert that this rejection is improper because it does not cite to any prior teachings in the art. Accordingly, this rejection should be withdrawn.

JA at MASM0000979. By stating that the examiner appeared to admit that the prior invention did "not teach specifically selecting the lowest PI number," Masimo distinguished the prior invention and implicitly stated that the '564 Patent did teach selecting the lowest PI number. It is clear from this statement that Masimo understood that the PI index indication must be a numerical value. "The interested public has the right to rely on the inventor's statements made during prosecution, without attempting to decipher whether the examiner relied on them, or how much weight they were given." Fenner Investments, Ltd. v. Cellco P'ship, 778 F.3d 1320, 1325 (Fed. Cir. 2015).

Accordingly, the Court construes "selecting the lowest indication of perfusion index" as "selecting the lowest perfusion index number."

      **7.**     **"detector" ('848 Patent claims 1, 5, 8, 9, 14, 23, 26) and "sensor"/ "pulse oximeter sensor" ('271 Patent claims 1, 6, 10, 15 and '848 Patent claims 1, 6, 9, 16, 19, 26, 27)**

| Masimo's Construction | True Wearable's Construction | Court's Construction |
|---|---|---|
| Plain and ordinary meaning for "detector" | "monitored detector" | Plain and ordinary meaning |
| Plain and ordinary meaning for "sensor" / "pulse oximeter sensor" | "monitored sensor" / "monitored pulse oximeter sensor" | Plain and ordinary meaning |

Case 8:18-cv-02001-JVS-JDE Document 333-15 Filed 09/03/21 Page 18 of 22 Page ID
Case 8:18-cv-02001-JVS-JDE Document 93 Filed 03/27/20 Page 17 of 21 Page ID #:21783
#:21710

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-02001 JVS (JDEx)                    Date   3/27/20

Title   Masimo Corporation, et al., v. True Wearables, Inc, et al.

        True Wearables proposes that the Court construe the terms "detector," "sensor"
and "pulse oximeter sensor" by adding the modifier "monitored" before them.  TOB, 16.
True Wearables contends that this is consistent with the purpose of the invention and
intrinsic evidence because the specification explains that a "pulse oximetry system
generally includes a patient monitor."  See id.; TRB, 17-78 (referring to JA at
MASM0000272 (1:33-45, 2:8-19), MASM0000261, MASM0000273 (Fig. 1 and 3:17-
21, 31-33, 46-61; 4:19-22), and MASM0000257).  It further argues that the purpose of
the invention at issue, a sensor cover, is to prevent false readings and unwanted alarms,
which would not be needed unless the sensor were attached to a monitor as they would go
unnoticed.  TOB, 16.  This argument requires several assumptions, including that the
sensor cover can only serve a purpose when monitored by someone.  However, the
specification also notes that the a cover could reduce false readings when a sensor is
active, but not in use, and when the sensor is moved.  JA at Ex. 5 at MASM0000257 and
4:20-22.  Furthermore, "sensor" and "detector" are used in their plain and ordinary
meaning in the specification including being described as components of a pulse
oximetry system, along with a monitor.  See e.g., id. at Ex. 11 at 1: 44–56, 3:46–47; Ex. 5
at 1: 33-36 ("A pulse oximetry system generally includes a patient monitor, a
communications medium such as a cable, and a physiological sensor having light emitters
and a detector, such as one or more LEDs and a photodetector.").  Inserting a qualifier
such as monitored does not shed light on the meaning of sensor or detector, but merely
adds a separate component of the device.

        The Court finds that the terms "detector," "sensor," and "pulse oximeter sensor" do
not require construction because they are used in their plain and ordinary way.

8.      **"an opaque portion attachable to the sensor and configured to
        block readings by the sensor" ('271 Patent) / "an opaque portion
        attachable to the sensor and configured to block optical readings
        by the sensor" ('271 Patent)**[2]

---

[2]In their responsive briefs the parties agreed that these phrases should have the same
construction.  See MRB, 14; TRB, 18.

Case 8:18-cv-02001-JVS-JDE   Document 333-15   Filed 03/03/21   Page 19 of 22   Page ID
Case 8:18-cv-02001-JVS-JDE   Document 93   Filed 03/27/20   Page 18 of 21   Page ID #:21711
#:3784

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-02001 JVS (JDEx)                    Date   3/27/20

Title      Masimo Corporation, et al., v. True Wearables, Inc, et al.

| Masimo's Construction | True Wearable's Construction | Court's Construction |
|---|---|---|
| "a portion attachable to the sensor that blocks a range of wavelengths of light sufficient to prevent measurements" | "a light-blocking portion attachable to the sensor and designed to block readings by the monitored sensor" | "a portion attachable to the sensor designed to block a range of wavelengths of light sufficient to prevent measurements" |

Claim 1 of the '271 Patent states:

> A method of blocking readings by a noninvasive optical physiological sensor, the, method comprising:
> > providing a sensor cover comprising:
> > > **an opaque portion attachable to the sensor and configured to block readings by the sensor**; and
> > > a non-adhesive portion that protudes from the sensor to facilitate removal of the sensor cover; and
> > attaching the sensor cover to the sensor, the sensor cover **blocking readings** by the sensor and removable from the sensor,
> > wherein the sensor comprises:
> > > a light source configured to emit light from one or more emitters of the sensor; and
> > > a detector configured to receive at least a portion of the light emitted by the one or more emitters after the light has passed through a tissue site,
> > wherein the sensor cover is **configured to prevent the detector** from receiving light when the sensor is active.

JA, Ex. 5.  The language used in claim 10 is similar to claim 1, but adds the word "optical."  The parties dispute the construction of the term "opaque," the construction of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |
|---|---|---|---|

| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |
|---|---|

the term "configured to," and whether the sensor is monitored.

Masimo proposes that opaque be construed as "blocks a range of wavelengths of light sufficient to prevent measurements." It contends that this construction would be in line with the specification which states that "the opaque material can block all wavelengths of light used by a particular sensor," or "can block different ranges of wavelengths depending on the type of sensor the cover is used for." Id. at 3:54–58. True Wearables in turn proposes that "opaque" be construed as "light-blocking" because the claim itself contains language that it deems to mean "light-blocking" – "configured to prevent the detector from receiving light." See id. at Claim 1; TOB, 17. True Wearables also argues that the specification supports its position because it states: "[t]he opaque cover can prevent or reduce false readings caused by the emitters or the ambient light, even if the sensor is active, by preventing the sensor from receiving light." TOB, 17; JA at MASM0000273 (3:51-54). A full reading of the specification cited by the parties reveals that while in one embodiment the opaque material blocks all wavelengths of light used by one sensor, in another, it can block ranges of wavelengths. It is clear from such that the drafter intended to block a range of wavelengths. Accordingly, the Court construes the term to be that it "blocks a range of wavelengths."

True Wearables also proposes construing "configured to" to "designed to." TOB, 16; TRB, 20. It cites to examples showing where the word "configured to" has been construed as "designed to." See McHugh v. Hillerich & Bradsby Co., 2010 U.S. Dist. LEXIS 16164, *16 (N.D. Cal., 2010); see also Mount Hamilton Partners, LLC v. Groupon, Inc., 2014 U.S. Dist. LEXIS 34556, *20 (N.D. Cal., 2014). Masimo distinguishes these cases by arguing that in Mount Hamilton, the court explained that designed to "does not mean that the module must *only* perform the stated functions and no others." MRB, 19. While this Court agrees that "designed to" does not mean that it must perform only the stated functions, it agrees with the reasoning in Mount Hamilton, that "configured to" implies an element of intentionality or to "achieve a given objective". See Mount Hamilton 2014 U.S. Dist. LEXIS 34556 at *20. Additionally, while the parties in McHugh had agreed to the construction of "designed to," the Court adopted it based in part on the prosecution history, and the decision in Boston Scientific v. Cordis Corp., 2006 U.S. Dist. LEXIS 94329 (N.D. Cal. Dec. 20, 2006). In Boston Scientific, the Court determined that "'configured to' embraces the concept of a device intentionally and specifically made to act in a certain way." Id. at *2. The Court finds such precedent compelling, and agrees that configured to as used in the claims requires an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | SACV 18-02001 JVS (JDEx) | Date | 3/27/20 |

| Title | Masimo Corporation, et al., v. True Wearables, Inc, et al. |

element of intentionality. In turn, Masimo's proposed construction would read out "configured to." Masimo cites no support for this position. As such, the Court adopts the term "designed" in place of "configured."

True Wearables also proposes adding "monitored" to "sensor." TOB, 16. The Court declines to do so in accordance with the reasoning set forth in Section III(8) of this Order.

Accordingly, the terms "an opaque portion attachable to the sensor and configured to block readings by the sensor" and "an opaque portion attachable to the sensor and configured to block optical readings by the sensor" shall be construed as "a portion attachable to the sensor designed to block a range of wavelengths of light sufficient to prevent measurements."

## IV. CONCLUSION

The disputed terms are construed as follows:

| Claim Term | Court's Construction |
| --- | --- |
| "caregiver" ('966 Patent) | Preamble not limiting |
| "amount of use" ('966 Patent) | Plain and ordinary meaning |
| "medical product" ('966 Patent) | Plain and ordinary meaning |
| "power consumption" ('866 Patent) | Plain and ordinary meaning |
| "calculation technique(s)" ('564 and '847 Patents) | Plain and ordinary meaning |
| "selecting the lowest indication of perfusion index" ('564 and '847 Patents) | "selecting the lowest perfusion index number" |
| "detector" ('848 Patent) / "sensor"/ "pulse oximeter sensor" ('271 and '848 Patents) | Plain and ordinary meaning |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   SACV 18-02001 JVS (JDEx)                  Date    3/27/20

Title      Masimo Corporation, et al., v. True Wearables, Inc, et al.

| "an opaque portion attachable to the sensor and configured to block readings by the sensor" ('271 Patent) / "an opaque portion attachable to the sensor and configured to block optical readings by the sensor" ('271 Patent) | "a portion attachable to the sensor designed to block a range of wavelengths of light sufficient to prevent measurements" |
|---|---|

**IT IS SO ORDERED.**

                                                              :        0

                                        Initials of Preparer      lmb