# Exhibit MM
# To Fletcher Declaration

**JUDICIAL COUNCIL OF CALIFORNIA**
**ADMINISTRATIVE OFFICE OF THE COURTS**
455 Golden Gate Avenue
San Francisco, California 94102-3688

**Report**

TO:          Members of the Judicial Council

FROM:        Advisory Committee on Civil Jury Instructions
             Hon. H. Walter Croskey, Chair
             Bruce Greenlee, Attorney, 415-865-7698
             bruce.greenlee@jud.ca.gov

DATE:        November 10, 2009

SUBJECT:     Civil Jury Instructions: Approve Publication of Revisions (Action
             Required)

Issue Statement
The Advisory Committee on Civil Jury Instructions has drafted for approval new and
revised civil jury instructions to include in the *Judicial Council of California Civil Jury
Instructions (CACI).*

Recommendation
The advisory committee recommends that the Judicial Council, effective December 15,
2009, approve for publication under rule 2.1050 of the California Rules of Court the civil
jury instructions prepared by the committee.  On Judicial Council approval, the new and
revised instructions will be officially published in the 2010 edition of the *Judicial
Council of California Civil Jury Instructions (CACI).*

A table of contents and the proposed additions and revisions to the civil jury instructions
are attached at pages 28–163.

Rationale for Recommendation
The Advisory Committee on Civil Jury Instructions is charged with maintaining and
updating *CACI.  CACI* was first published in September 2003. The council approved the
committee's last update at its April 2009 meeting.

The advisory committee drafted the new and revised instructions in this proposal and
circulated them for public comment. The official publisher (LexisNexis Matthew Bender)
is preparing to publish print, HotDocs document assembly, and online versions of the
new and revised instructions approved by the council.

The following 41 instructions and verdict forms are included in this proposal: 100, 405, 406, 407, 422, 426, 457, VF-406, 724, 806, 1006, VF-1002, VF-1204, 1903, 1910, 1923, 1924, VF-1900, VF-1903, 2100, VF-2100, 2540, 2541, 2546, VF-2508, VF-2509, VF-2510, VF-2513, 2904, 3023A, 3023B, VF-3013, 3702, 3905A, 3921, 3922, 3960, 4420, 5000, 5009, and 5012.  Of these, 36 are revised, 3 are newly drafted, and 2 involve a division of CACI No. 3023 into 3023A and 3023B.  Additionally, the Judicial Council's Rules and Projects Committee (RUPRO) has approved additional instructions under a delegation of authority from the council to RUPRO.[1]

The instructions were revised or added based on comments or suggestions from justices, judges, and attorneys, proposals by staff and committee members, and recent developments in the law.

The following instructions and verdict forms were revised or added based primarily on comments received from justices, judges, and attorneys: 422, VF-406, 724, 1903, VF-1900, VF-1903, 3905A, 3921, 3922, 4420, 5000, 5009, and 5012.  Some of these revisions and additions are highlighted below.

CACI No. 422, *Sale of Alcoholic Beverages to Obviously Intoxicated Minors,* and CACI No. VF-406, *Negligence—Sale of Alcoholic Beverages to Obviously Intoxicated Minor,* were revised in response to a comment from an attorney who disagreed with the requirement that the harm must occur while the minor was intoxicated.  The committee agreed that if the minor was obviously intoxicated when he or she purchased the alcohol and the causation element was proved, the degree of the minor's intoxication at the time of the harm was not relevant.

CACI Nos. 1903, VF-1900, and VF-1903 on intentional and negligent misrepresentation were revised in response to a request from a judge who reported confusion when both theories were pled in the same case.  The revisions clarify the committee's conclusion that the two theories can only be pled in the alternative, and give further guidance on how to use the two verdict forms if both theories are at issue.

---

[1]  At its October 20, 2006, meeting, the Judicial Council delegated to RUPRO the final authority to approve nonsubstantive technical changes to jury instructions and corrections and minor substantive changes unlikely to create controversy.  The council also gave RUPRO the authority to delegate to the jury instructions advisory committees the authority to review and approve nonsubstantive grammatical and typographical corrections and other similar changes to the jury instructions, which RUPRO has done.

Under the implementing guidelines that RUPRO approved on December 14, 2006, RUPRO has the final authority to approve (among other things) additional cases and statutes cited in the Sources and Authority and additions or changes to the Directions for Use.  RUPRO has already given final approval to 64 instructions that have only these changes.  Further, under its delegation of authority from RUPRO, the advisory committee staff has made other nonsubstantive grammatical, typographical, and technical corrections.

The changes made to CACI No. 4420, *Affirmative Defense—Information Was Readily Ascertainable by Proper Means,* are discussed more fully below (see *Trade secrets issue*).

The following instructions were revised or added based primarily on suggestions from staff or committee members: 405, 406, 407, 426, 806, 1006, VF-1002, VF-1204, 1923, 1924, 2100, VF-2100, 2540, 2541, 2546, VF-2508, VF-2509, VF-2510, VF-2513, 2904, 3023A, 3023B, VF-3013, 3702, and 3960.  Some of these revisions and additions are highlighted below.

CACI Nos. 405, 406, 407, 806, VF-1002, VF-1204, 2904, 3702, and 3960 were all revised to implement the committee's decision to replace the term "contributory negligence" with "comparative fault" everywhere it appeared in an instruction or title or in the Directions for Use.  This change conforms to currently preferred nomenclature.

In the Civil Rights series (CACI No. 3000 et seq.), the committee recommends dividing CACI No. 3023, *Ralph Act—Essential Factual Elements,* into two separate instructions: CACI. No. 3023A, *Acts of Violence—Ralph Act—Essential Factual Elements,* and CACI No. 3023B, *Threat of Violence—Ralph Act—Essential Factual Elements.*  A trial judge committee member had a trial on a Ralph Act claim involving threats of violence and reported that the current instruction did not adequately address the objective standards of whether a reasonable person would have believed that the defendant intended to carry out the threat and whether a reasonable person would have been intimidated.  The committee agreed, but found the result to be awkward when these elements were added to the current instruction addressing both acts and threats.  Therefore, the committee decided to divide the instruction into A and B instructions.

In the disability discrimination instructions and verdict forms in the Fair Employment and Housing Act series (CACI No. 2500 et seq.), the committee wished to simplify the possible language selections for identifying the source of the employee's limitations.  Currently, the user must select an adjective, either "physical" or "mental," and then a noun, either "condition," "disease," or "disorder."  Alternatively, the user may "describe health condition."  The committee proposed replacing this complex set of options with an option to select one of the three statutory bases for disability discrimination: "physical disability," "mental disability," or "medical condition."[2]  After reviewing comments from organizations representing employees who objected to being limited to the statutory terms, the committee decided not to require any particular term or words.  The current proposed revision allows the user to insert whatever term or words most accurately describe the situation in the case.

---

[2] See Gov. Code, § 12940(a); see also Gov. Code, § 12926(h), (i) & (k).

The committee also recommends adding new instruction 426, *Negligent Hiring, Supervision, or Retention of Employee.* The recent case of *Phillips v. TLC Plumbing, Inc.*[3] suggested to the committee that an instruction was needed on this subject.

The following instructions were added or revised based primarily on recent developments in the law: 100, 457, and 1910.  Some of these revisions and additions are highlighted below.

CACI No. 100, *Preliminary Admonitions,* was modified in response to considerable coverage and debate in the legal media regarding the problem of jurors using the Internet and other electronic technology to access information about the case and to report on the progress of the case.  Widespread juror misconduct has been reported even though jurors receive general instructions not to discuss the case with others or engage in independent investigation.  These reports convinced the committee that more specific language prohibiting the use of electronic technology and devices was necessary.

New CACI No. 457, *Statute of Limitations—Equitable Tolling—Other Prior Proceeding,* is the latest addition to the committee's ongoing initiative to add instructions on statutes of limitation issues.  The 2008 California Supreme Court case of *McDonald v. Antelope Valley Community College Dist.*[4] first drew the committee's attention to the doctrine of equitable tolling.  Since *McDonald,* three more appellate decisions have addressed the subject.[5]  The committee concluded that an instruction on equitable tolling is needed at this time.

*Trade secrets issue*

The most contested issue faced by the committee in this cycle involves a proposal that the committee received from an attorney to revise CACI No. 4420, *Affirmative Defense— Information Was Readily Ascertainable by Proper Means.*[6]

As the attorney points out, in enacting the Uniform Trade Secrets Act in 1984, the California Legislature deviated from the uniform content by removing from the definition of "trade secret" the requirement that a trade secret be something that is not readily ascertainable by proper means.[7]  However, the legislative history notes that "the assertion

---

[3] (2009) 172 Cal.App.4th 1133.

[4] (2008) 45 Cal.4th 88.

[5] *Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494; *Aguilera v. Heiman* (2009) 174 Cal.App.4th 590; *Guevara v. Ventura County Community College Dist.* (2008) 169 Cal.App.4th 167.

[6] In the comments that the attorney submitted, he states that he has the support of the California Chamber of Commerce.  Staff has had several phone conversations with an attorney representing the chamber, and it is clear that the chamber has a particular interest in this subject.  However, the chamber did not submit any comments in support of the attorney's position, nor has it at any time advised the committee that it expressly endorses the attorney's views.

[7] See Civ. Code, § 3426.1(d).

that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation."[8]

The committee understands the attorney's interpretation of this legislative history to be that the information must not have been acquired by improper means; in other words, the plaintiff is unable to prove the "improper means" element of misappropriation.  If a defendant has acquired a trade secret by "improper means," the defendant may not escape liability even if the matter is readily ascertainable by proper means.  The committee and its consultants from the Trade Secrets Standing Committee of the Intellectual Property Section of the State Bar read this language to mean that if the information was readily ascertainable by proper means, then the tort of misappropriation cannot have been committed, regardless of whether the defendant used proper or improper means to obtain it.

The committee and the attorney disagree as to whether "readily ascertainable by proper means" is an affirmative defense.  Both agree that if it is an affirmative defense, then there is no requirement that the defendant have obtained the information by proper means.  An affirmative defense admits the truth of the essential allegations of the complaint.[9]  Thus, the defendant accepts the truth of the allegation that the information was obtained by improper means, but defends on the ground that it was readily ascertainable elsewhere.  But the attorney claims that the Legislature, in calling "readily ascertainable by proper means" a *defense,* did not mean to claim that it was an *affirmative* defense but what he calls a "traverse."  The committee has fully considered and debated this view, and while recognizing that there is some room for uncertainty, does not agree.  The committee believes it is an affirmative defense.

The committee recognizes that a footnote in *ABBA Rubber Co. v. Seaquist*[10] supports the attorney's position that the information must have been acquired by proper means.  There, the court stated:

> While ease of ascertainability is irrelevant to the definition of a trade secret, "the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation." (Legis. committee com., West's Ann. Civ. Code, § 3426.1 (1991 pocket supp.) p. 111.) Therefore, if the defendants can convince the finder of fact at trial (1) that "it is a virtual certainty that anyone who manufactures" certain types of products uses rubber rollers, (2) that the manufacturers of those products are easily identifiable, and (3) *that the defendants' knowledge of the plaintiff's customers resulted from that identification process and not from*

---

[8] See Sen. Com. on Judiciary, Rep. on Assem. Bill 501 (1983–1984 Reg. Sess.).
[9] See 5 Witkin, California Procedure (4th ed. 1996) Pleadings, § 1081 (affirmative defense admits the truth of the essential allegations of the complaint).
[10] (1991) 235 Cal.App.3d 1, 21, fn. 9

*the plaintiff's records*, then the defendants may establish a defense to the misappropriation claim. That defense, however, will be based upon an absence of misappropriation, rather than the absence of a trade secret.[11]

However, the committee does not consider the footnote to be controlling authority. The focus and holding of *ABBA Rubber* was whether to affirm or reverse a preliminary injunction that had been granted by the trial court. The court reversed the preliminary injunction and ruled for the defendant on the ground that an undertaking was required.[12] Because the court's decision to reverse was made only on that ground, the committee does not view footnote 9 as a controlling holding of the case.

In contrast, *San Jose Construction, Inc. v. S.B.C.C., Inc.*[13] supports the committee's view. There, the defendant argued that even if the materials were improperly removed from the plaintiff's control, there was no misappropriation because the contents were readily ascertainable otherwise.  The court held that there was a triable issue of fact as to whether the entire proposal for each project was indeed readily ascertainable—that is, whether the defendant *could have* replicated each offer within the short period it claimed to have needed.[14]  Were the attorney's view the correct one, the only relevant question would be whether the defendant used improper means to obtain the content.  There would be no issue of fact as to what the defendant could have done.[15]

The committee also believes that the language of the legislative history supports its position.  Applying that language, a defendant is not liable for misappropriation of trade secrets if the information allegedly misappropriated is "readily *ascertainable*" as opposed to "readily *ascertained.*"  "Ascertainable" connotes that it is possible, while "ascertained" connotes that it has already happened.  Also, if the attorney's view is correct, the word "readily" would be superfluous.  A defendant would not be liable if it ascertained the information from public sources regardless of whether it did so "readily" or only with great difficulty.

For these reasons, the committee has rejected the revisions proposed by the attorney and instead has included a brief discussion in the Directions for Use on why no requirement that the material have been obtained by proper means is included in the instruction.

<u>Alternative Actions Considered</u>

---

[11] *Id.*, emphasis added.

[12] *Id.* at p. 22.

[13] (2007) 155 Cal. App. 4th 1528.

[14] *Id.* at pp. 1542–1543.

[15] The attorney also cites *Imax Corp. v. Cinema Techs.* (9th Cir. 1998) 152 F.3d 1161, 1168 and *SEIU v. Roselli* (N.D.Cal. 2009) U.S. Dist. LEXIS 40776 in support of his views.  But neither of these cases imposes a requirement that the material actually have been obtained by proper means.  Both merely note that "readily ascertainable by proper means" is a defense based on an absence of misappropriation.

Rule 2.1050 of the California Rules of Court requires that the advisory committee update, amend, and add topics to *CACI* on a regular basis and submit its recommendations to the council for approval.  The proposed new and revised instructions are necessary to ensure that the instructions remain clear, accurate, and complete; therefore, the advisory committee did not consider any alternative actions.

Comments From Interested Parties
All revisions to the civil jury instructions were circulated for public comment. Comments were received on many of the proposed revisions, but no instruction or group of instructions generated a particularly large number of comments.  The committee evaluated all comments and made some changes to the instructions based on them.  A chart summarizing the comments and committee responses is attached at pages 8–27.  A proposed instruction on collusion as an affirmative defense to an insurance bad-faith action was withdrawn from the proposal following circulation for public comment based on the comments received.  The committee will reconsider this instruction in the next cycle.

Implementation Requirements and Costs
There are no implementation costs.  Under the publication agreement, the official publisher, LexisNexis Matthew Bender, will make copies of its 2010 edition available to all judicial officers free of charge in both print and HotDocs document assembly software. With respect to commercial publishers, the AOC will register the copyright in this work and will continue to license its publication of the instructions under provisions that govern accuracy, completeness, attribution, copyright, fees and royalties, and other publication matters.  To continue to make the instructions freely available for use and reproduction by parties, attorneys, and the public, the AOC will provide a broad public license for their noncommercial use and reproduction.

Attachments

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| 100, Preliminary Admonitions | California Judges Association, by Jordan Posamentier, Legislative Counsel | The wording might be improved. The phrase in the first sentence of the proposed new text might be changed to read, "It extends to all forms of electronic communications also" in place of "…all technological communications." | The committee agrees and has made this change. |
| | Disability Rights Legal Center, by Paula D. Pearlman, Executive Director | Add TTY/TDD and video relay system, to the list of prohibited electronic devices. These are other communication devices for people who are deaf and/or hard of hearing. | The instruction says not to use *any* electronic device or media and lists examples. The committee does not think it necessary to list every possible electronic device. |
| | | To "Do not contact anyone to assist you, such as a family accountant, doctor, or lawyer" add "This exclusion does not apply to assistance provided in the courtroom and jury room to individuals with disabilities, such as assistance from a sign language interpreter or a reader for the visually impaired, to the extent that the assistance is limited to the material, instructions, and dialogue being conveyed to the other jurors." | The committee does not believe that this addition is necessary. CACI No. 110 addresses "Service Provider for Juror With Disability." In its next cycle, the committee will consider expanding CACI No. 110 to address permitted and prohibited communications between service provider and juror. |
| | Hon. Harold W. Hopp, Superior Court of Riverside County | To the revision to the proposed new third paragraph of the instruction add "or to receive information from anyone" in the last clause of the second sentence, which would then read: "to communicate any information to anyone or to receive any information from anyone about this case or your experience as a juror until after you have been discharged from your jury duty." | The committee agrees and has made this change. |
| | | Perhaps split last sentence of new paragraph into two sentences: "Do not send or receive any information about this case or your experience as a juror | The commentator's proposed rewrite takes the emphasis of the paragraph off of electronic communication and back onto communications in general. This is a |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | until after you are discharged from your jury duty.  This includes sending or receiving information using any electronic device or media, such as a cell phone or smart phone, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website, including social networking websites or online diaries." | paragraph expressly addressing problems with electronic devices. |
| | Mark Meyer, Attorney at Law (no further information provided) | The rise of portable communication devices and online sharing of information has made compliance with and enforcement of rules against jury communications more troublesome.  However, the proposed instruction misses the point:  the solution is not to bore jurors by listing every problematic communication device or method, but to share with jurors the importance of the rule and the consequences of any one of them failing to abide by the rules.  It would be more effective for the judge to give an example of how a trial was derailed by a gregarious juror and how that impacted the parties, other jurors, and the court.  Social research repeatedly confirms that creating a feeling of empathy is an effective way to modify behavior.  A long, boring instruction is bound to fail. | Although there may be other appropriate ways for a trial court to address the problem of inappropriate juror communications, the committee believes that it is important to address the issue forcefully in a jury instruction.  Recent media reports indicate that this is becoming a huge problem.  While the committee considered including language explaining the effect of violating the prohibition (mistrial), it ultimately decided not to introduce remedies for juror misconduct into the jury instructions. |
| 405, Comparative Fault of Plaintiff | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Orrick supports the revisions to the title and text of this instruction.  These changes accurately reflect the fact that since *Li v. Yellow Cab* (1975) 13 Cal.3d 804, California has adopted the comparative fault, rather than contributory fault, rule of tort law.  In | No response is required. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | recognition of this fact, the proposed changes helpfully eliminate the confusing continued use of the phrase "contributory negligence." The revision also eliminates a problem with the current instruction in using the term "substantial factor" to define the very same term (in element 2 of the two-part test). | |
| | | Orrick disagrees with the continued inclusion of the second sentence in the "Directions for Use" "This instruction should be used only where the defendant claims that plaintiff was negligent, there is only one defendant, and the defendant does not claim that any other factor caused the harm.". This sentence misstates applicable law regarding comparative fault and is entirely lacking in support. Contrary to the direction, CACI 405 should apply *wherever* a plaintiff was negligent, not simply in the limited circumstances where there is one defendant and that defendant does not claim any other factor caused the harm. | The committee agrees with the commentator and has replaced this sentence with a cross-reference to CACI No. 406, *Apportionment of Responsibility*, where the interplay of the plaintiff's comparative fault and the comparative fault of others is addressed. |
| 406, Apportionment of Responsibility | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Orrick supports this proposed revision in its entirety and believes that it accurately reflects the state of California law. | No response is required. |
| 407, Comparative Fault of Decedent | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Orrick supports this proposed revision in its entirety and believes that it accurately reflects the state of California law. | No response is required. |
| 426, Negligent Hiring, Supervision, or Retention of Employee | State Bar of California Committee on Administration of Justice | CAJ recommends that the elements in the instruction be modified to read as follows:

2. That [name of employer defendant] knew | The committee agrees that "created" is a better word that "posed" in this context and has made this change. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | or should have known that [name of employee] was [unfit/ [or] incompetent] and that this [unfitness/ [or] incompetence] ~~posed~~ created a particular risk to others;<br><br>Reason: The proposed instruction provides that the unfitness or incompetence "posed" a particular risk. CAJ believes that "created" a particular risk is more consistent with the language in the cases. | |
| | | CAJ recommends that the elements in the instruction be modified to read as follows:<br><br>3. That because of [*name of employee*]'s [unfitness/ [or] incompetence] that particular risk, [name of plaintiff] was harmed; and<br><br>Reason: The proposed instruction reflects existing California case law that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee. The proposed instruction refers to the employer's knowledge of a "particular risk" but it does not require that the harm be related to that particular risk.<br><br>*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054 states: "Liability is based upon the facts that the employer knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." | The committee believes that it is the employee's unfitness or incompetence that leads to harm, not the risk. The committee has revised element 3 slightly to state: "That [*name of employee*]'s [unfitness/ [or] incompetence] harmed [*name of plaintiff*]." |
| 457, Statute of Limitations— | Reuben Ginsberg (no further information | This instruction does not provide sufficient information for the jury to determine whether | The committee has added a paragraph to the Directions for Use to explain that the period |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| Equitable Tolling—Other Prior Proceeding | provided) | the limitations period, as extended by any tolling, expired before the suit was filed. Regardless of whether the plaintiff acted reasonably and in good faith by filing suit a short time after the tolling ended, the suit must be filed within the limitations period as extended by the tolling.  The duration of the tolling must be calculated and added to the limitations period to determine whether the suit was timely.  That calculation could be explained in a fourth enumerated paragraph after the three listed in this instruction.  I suspect, however, that such an instruction would be unwieldy and that in most cases a special verdict will be required in which the jury finds the facts so as to allow the judge to determine whether the suit was timely. | of tolling must be addressed in the verdict form. |
|  | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Nothing in the body of the proposed instruction actually limits the availability of equitable tolling to circumstances in which there has been a prior proceeding.  Rather, the instruction gives latitude for a party to offer any excuse for why it did not file the lawsuit in question.  This format thus creates the potential for abuse.  For example, a party might seek to use this instruction when it has merely engaged in settlement negotiations with the defendant (since doing so arguably could satisfy the three-part test identified in the instruction).

For this reason, Orrick proposes that the instruction be modified as follows: | The committee believes that any attempt to assert tolling for an illegitimate event would be resolved as a matter of law and never get to jury trial.  Nevertheless, the committee has made a minor change to the first italicized reference to the tolling event to clarify that the prior proceeding must qualify as a tolling event. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | • First sentence: modified such that it ends "… was extended by the time during which [name of plaintiff] was pursuing [his/her/its] claims in another proceeding."<br><br>• The bracketed phrase "[e.g., seeking workers' compensation]" appearing throughout the instruction should be replaced with the phrase "pursuing its claims in [*name of prior proceeding*]."<br><br>• The bracketed phrase "[*e.g., workers' compensation claim*]" appearing throughout the instruction should be replaced with the phrase "[*name of prior proceeding*] claim." | |
| | State Bar of California Committee on Administration of Justice | CAJ recommends that the instruction be modified to read as follows:<br><br>1. That [*name of defendant*] received timely notice that [*name of plaintiff*] ~~was [e.g., seeking~~ ~~workers' compensation]~~ filed a prior claim instead of filing a lawsuit;<br><br>Reasons: The proposed instruction fails to include the specific requirement that plaintiff chose to file an alternative "claim." The fact that the plaintiff might have been "seeking workers' compensation" is too vague, and is inconsistent with that requirement. Moreover, other parts of the instruction refer to the plaintiff's filing of the workers' compensation claim. | The italicized reference to a workers' compensation claim in brackets is just an example of one kind of prior claim that might have been filed. The small change made in response to Orrick, above, should resolve any confusion. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| 1006, Landlord's Duty | Robert B. Kopelson, Attorney at Law, San Jose | I believe the instruction should include "that a landlord has a nondelegable duty to maintain the property in a safe condition, and is vicariously liable for the negligent failure of an independent contractor to put or maintain the premises in reasonably safe condition, no matter how carefully the independent contractor was selected." (See *Srithong Y. Total Investments* (1994) 23 Cal.App.4th 721.) | CACI No. 3713, *Nondelegable Duty,* includes *Srithong* in the Sources and Authority. CACI No. 3713 presents a nondelegable duty arising from statute or regulation; *Srithong* presents a nondelegable duty arising from the landlord-tenant relationship. Whether 3713 should be expanded to include other nondelegable duties and whether 1006 should include the nondelegable duty rule will be considered in the next cycle. |
| VF-1002, Premises Liability—Comparative Fault of Plaintiff at Issue | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Orrick supports this proposed revision in its entirety and believes that it accurately reflects the state of California law. | No response is required. |
| VF-1204, Products Liability—Negligence—Comparative Fault of Plaintiff at Issue | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Orrick supports this proposed revision in its entirety and believes that it accurately reflects the state of California law. | No response is required. |
| 1903, Negligent Misrepresentation | Broderick Law Firm, Palo Alto | Element 3 should say:<br><br>"Although defendant *may have believed* that the representation was true…" (instead of "believed"). Plaintiff should not have to prove what defendant believed. The instruction is trying to distinguish negligent and intentional misrepresentation claims in a faulty manner. | The committee has made this proposed change. |
| 1903, VF-1900, and VF-1903, Negligent and Intentional Misrepresentation | Orange County Bar Association, by Michael G. Yoder, President | Include or exclude the modifier "actually" or "honestly" *consistently* throughout these instructions and verdict forms. *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407–408 quotes a 1998 section of Witkin using | The committee has conformed all the instructions and verdict forms to use "honestly" as that is the word used in *Bily.* |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | "honestly" and one section in which no modifier is used.  The modifier may add little since "believe" means "to take as true, real" (Webster's) without having to be modified by "actually" or "honestly."  But use of "honestly" might distinguish and emphasize the separateness of the required "reasonableness" of the belief that would, in conjunction with the honest/actual existence of the belief, relieve defendant of liability for intentional misrepresentation. | |
| | | Consider adding an example of *specific* suggested language in Directions for Use section at VF-1903 as to how to modify the verdict form if both intentional and negligent misrepresentation are at issue (e.g.,  add a separate, additional question before or after question 2: "Did [*name of defendant*] believe the representation was true when [he/she] made it?" or add the following *emphasized* phrase to existing question 2, making it compound: "2.  Did [*name of defendant*] *believe the representation was true when made and* have reasonable grounds to believe the representation was true when [he/she] made it?"). | The committee has adopted the commentator's first suggestion and added an additional optional question as question 2. |
| 1910, Real Estate Seller's Nondisclosure of Material Facts | Orange County Bar Association, by Michael G. Yoder, President | In the second paragraph of the "Directions for Use," note that the statutory duty applies only to improved residential real property (1 to 4 dwelling units) and mobilehomes (subject to some exceptions in which  the statutory duty does not apply at all). (See Civ. Code, §§ 1102, 1102.2).  Or maybe add to the first | The committee has adopted the commentator's second suggestion to add text to the first paragraph. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | sentence, *"In certain contexts (generally residential),"* before "[t]here is also a statutory duty of disclosure. (See Civ. Code, § 1102 et seq.)." | |
| | | Move element 5 up to make it element 2. That defendant did not disclose the information is, along with element 1, the gravamen of the action.  If 5 is moved up, it seems it would need to be reworded so that the nondisclosure is defined at that point: "That [*name of defendant*] did not disclose to [*name of plaintiff*] that [*specify the information that was not disclosed*]." | The committee has moved element 5 up to make it element 3.  The committee thinks that the instruction flows best if it is first stated that the defendant knew the information (current element 2) and then that he or she failed to disclose it. |
| 2323, Affirmative Defense—Collusion | David B. Goodwin, Covington & Burling, San Francisco | This proposed instruction should include the words "deceitful or fraudulent" before "collusion" in line 2 of the first paragraph, so that it reads: "[*defendant*] claims that it does not have to pay the judgment against [*insured*] because there was *deceitful or fraudulent* collusion between [*insured*] and [*claimant*]," and in the first line of the second paragraph, to read: "In deciding whether there was *deceitful or fraudulent* collusion, you may consider the following factors:"<br><br>Alternatively, the instruction should simply quote the definitions of "collusion" set forth in *Span, Inc. v. Associated Int'l Ins. Co.* (1991) 227 Cal.App.3d 463, 474, which is included in the "Sources and Authority" for the proposed instruction. | The committee has decided to withdraw this proposed instruction at this time for additional work in the next cycle. |
| | Arnold Levinson, Pillsbury & Levinson, San Francisco | The proposed instruction does not give appropriate guidance to the jury in determining what conduct is potentially | The committee shares the commentator's concerns on the first point and has withdrawn this instruction for further |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | collusive.  The instruction suggests that if the insurer denies a defense, a default judgment, covenant not to execute, and assignment of rights against the insurer alone might be collusive.  The law is clearly to the contrary; on the insurer's refusal to defend, the insured has the right to make the best deal possible with the injured third party. (See *Samson v. Transamerica Ins. Co.* (1981) 30  Cal.3d 220, 240–242.)<br><br>Also, the instruction fails to address the fact that judicial consideration of the judgment entered insulates the parties' settlement from any claim of collusion. (See *Pruyn v. Agricultural Ins. Co.* (1995) 36 CaI.App.4th 500, 517.) | consideration in the next cycle. |
| | State Bar of California Committee on Administration of Justice | CAJ recommends that this instruction not be adopted because the issues are so factually driven that a standardized instruction has a high risk of being either too narrow or too broad in scope.  CAJ suggests that this affirmative defense should be supported by a special instruction consistent with the specific facts of the case.  CAJ notes that the concluding sentence in the proposed instruction may eliminate any guidance to the jury that might otherwise exist.  If, as stated, the "presence or absence of any of these factors alone does not determine whether or not there was collusion," there appears to be a benefit to be derived from crafting a special instruction applicable to the facts of the case, rather than a standard instruction. | The committee is not convinced that there is no appropriate pattern instruction on this subject, but agrees that more work is needed and has withdrawn this instruction for further consideration in the next cycle. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| All Disability Discrimination Instructions and Verdict Forms: 2540, 2541, VF-2508, VF-2509, VF-2510, VF-2513 | California Employment Lawyers Association (CELA), by David M. deRubertis | Do not change: "[physical/mental] [condition/disease/disorder/[describe health condition]]" to "[physical disability/mental disability/medical condition]." "Disability" is a legal term of art. Serious unintended consequences will flow from this language change. It will shift the jury's focus away from whether the employer knew of a condition, disease or disorder that limited a major life activity and onto the potentially distinct (and often irrelevant) question of whether the employer knew of the specific "disability" suffered by the employee. The language implies that the employer must know both of the limitations and the independent fact that the underlying condition constitutes a disability. | The committee believes that the current options are too cumbersome, and that one of the statutory terms of "physical disability," "mental disability," or "medical condition" (see Gov. Code, § 12940(a)) may be used. But the committee agrees that the user need not be limited to selecting one of the three statutory terms. It has elected to not require any particular language, but to allow the drafter to select one of the statutory terms, a general term such as "condition," "disease," or "disorder," or a specific health condition such as "diabetes." |
| | Consumer Attorneys of California, by Christopher Dolan, President Elect | The primary problem that would result from the proposed revisions is that they will draw the jury's focus away from the substantive issue of whether the employer knew the plaintiff suffered from a medical condition that limited a major life activity and place it instead on whether the employer knew that the condition met the technical definition of disability. It is not the identity of a plaintiff's "disability" or even whether the employer knew that the medical condition constitutes a "disability" that is important, but rather the physical limitations and restrictions that result from that "disability." | See response to CELA, above. |
| 2540, Disability Discrimination— Disparate | California Employment Lawyers Association (CELA), by David M. | The Sources and Authority should not include this sentence from *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, | Case excerpts are for the use of judges and attorneys, not jurors. The committee thinks that any possible misreading of the excerpt |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| Treatment—Essential Factual Elements | deRubertis | 1008: "While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts." The primary problem with this language is that it suggests that circumstantial proof of disability is somehow treated as inferior to circumstantial proof of other facts or to direct evidence that proves disability. By suggesting that knowledge of disability can only be imputed circumstantially if that interpretation is the "only reasonable interpretation" of the evidence (instead of merely one of the reasonable interpretations), this language misstates the law (and even CACI No. 202). | from *Scotch* is ameliorated by the sentence that follows the one criticized: "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations." The committee believes that this sentence sets parameters on when knowledge cannot be imputed. |
|  | Disability Rights California, by Sean Rashkis, Attorney | The use of the case *Scotch v. Art Institute of California*, (2009) 173 Cal.App.4th 986, as an authority will cause confusion for jurors because the language in the case may be misleading. | See response to CELA, above. |
|  |  | Element 4 on the requirement that the plaintiff be able to perform the essential functions of the job should read "with or without reasonable accommodations" (as opposed to just "with reasonable accommodations). The draft includes a quotation from *Nadaf-Rahrov v. The Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 965, which uses the "with or without" language. This change also applies to VF-2508 at question 4. | The committee does not believe that "without reasonable accommodation" is needed in an instruction on disability discrimination. If the employee asserts that he or she can do the job and does not need accommodation, then reference to accommodation is omitted and element 4 reads: "That [*name of plaintiff*] was able to perform the essential job duties." Adding "without reasonable accommodation" adds an unnecessary and confusing aspect to the language. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | Disability Rights Legal Center, by Paula D. Pearlman, Executive Director | Replace [[[his/her]/a perceived]] with [[[his/her] / a perceived / [his/her] history of]]] in the first paragraph. | The committee agrees and has made this change. |
| 2541, Disability Discrimination—Reasonable Accommodation—Essential Factual Elements | Disability Rights California, by Sean Rashkis, Attorney | For the sentence at the end regarding the consideration of mitigating measures, add "unless the mitigating measure itself limits a major life activity." For example, certain medications taken by individuals with mental illness have side effects that limit major life activities. | The commentator cites no authority for this proposition. The committee will invite the commentator to make a more fully developed proposal for the next cycle. |
| | Disability Rights Legal Center, by Paula D. Pearlman, Executive Director | Add Gov. Code, § 12926(s) to Sources and Authority: Definition of "Undue Hardship." Or alternately, insert: "For a definition of 'undue hardship,' see Government Code section 12926(s)." | Undue hardship is the subject of the affirmative defense in CACI No. 2545, and the statute is quoted there. The committee does not feel that it is necessary to cite it for CACI No. 2541. |
| | | Add to Sources and Authority: "In the Findings and Purposes section of the ADA Amendments Act of 2008 (42 USCS § 12101 note), Congress expressed as a purpose of the Act 'to convey congressional intent that the standard created by the Supreme Court in the case of *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams* (2002) 534 U.S. 184 for 'substantially limits' and applied by lower courts in numerous decisions has created an inappropriately high level of limitation necessary to obtain coverage under the ADA, to convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA | The committee sees no need to add this piece of ADA legislative history to a FEHA instruction. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | should be whether entities covered under the ADA have complied with their obligations, and to convey that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis." | |
| 2540 and 2541 | California Employment Lawyers Association, by David M. deRubertis | Under FEHA, "medical condition," unlike a physical or mental disability, does not need to limit a major life activity to constitute a qualifying disability. (Compare Government Code, §12926(i), (k) with §12926(h).) This is an important distinction because element 3 of Instruction 2540 and elements 3 and 4 of Instruction 2541 incorporate as a default the "limited [insert major life activity]." | The committee agrees with the commentator.  Because "medical condition" will now be an appropriate selection as the basis of the claim, the language about limits on a major life activity has been made optional.  The Directions for Use now explain that it should not be included if "medical condition" is the basis for the claim. |
| | Disability Rights California, by Sean Rashkis, Attorney | California Government Code § 12926(i)(4) and (k)(4) states that a person may qualify as covered by the disability discrimination section of FEHA if they are "regarded or treated by the employer…as having or having had…" a disability.  The proposed revision to CACI 2540 and 2541 (in particular, Element 3 of both instructions) adds language to recognize the "regarded as" clause but ignores the "treated by" language.  "Regarded as" or "thought," as used by CACI, is a subjective standard.  "Treated as" is more of an objective standard and needs to be incorporated into the instruction.  For instance, the language could be changed to read as follows:  "3. That [*name of defendant*] [knew/thought that [*name of plaintiff*]] [or treated [*name of plaintiff*] as though she/he] … ." | The committee believes that this is a point worth exploring, but that it needs further consideration by the full committee.  It will be considered in the next cycle. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| 2546 and VF-2513, Disability Discrimination—Reasonable Accommodation—Failure to Engage in Interactive Process | California Employment Lawyers Association, by David M. deRubertis | The instruction and verdict form misstate the law by requiring -a specific request for accommodation-in all cases to trigger the interactive process. | Gov Code, § 12940(n) specifically requires a request for reasonable accommodation in order to trigger the right to the interactive process even though 12940(m) does not require a specific request to obtain reasonable accommodation.  The instructions follow the statute. |
| VF-2510, Disability Discrimination—Reasonable Accommodation—Affirmative Defense—Undue Hardship | California Employment Lawyers Association, by David M. deRubertis | VF-2510 improperly requires the jury to consider an affirmative defense before it decides liability and could create confusion concerning which side bears the burden of proof on which issues. | CACI verdict forms do not address the burden of proof.  Affirmative defenses and elements are combined in a number of different ways. |
| 3023B, Threat of Violence—Ralph Act—Essential Factual Elements, and VF-3013, Ralph Act | Mark Meyer, Attorney at Law (no further information provided) | CACI No. 3023B element 3 and VF-3013 question 3 ask jurors, "Would a reasonable person in [*name of plaintiff*]'s position have believed that [*name of defendant*] would carry out [his/her] threats?" This element and question are unclear and improperly suggest that a plaintiff must believe the defendant will more likely than not act on a threat of violence. Civil Code section 51.7 is intended to prohibit intimidation by a threat of violence. A person can be intimidated by a threat when he or she reasonably believes that the threat is serious and might be carried out, even if the victim does not believe the threat "will" (more likely than not) be carried out. As stated in the authorities cited, "The test is: 'would a reasonable person, standing in the shoes of the plaintiff, have been *intimidated* by the actions of the defendant and have *perceived a threat* of violence?' (*Winarto v.* | The committee does not believe that any change is needed.   The instruction language simply requires a reasonable person's belief that defendant would carry out the threat. This is what is required by *Winarto*. Combining questions 3 and 4 would not be proper because they address two different matters that must be proved: (1) the reasonable belief that the defendant will carry out the threat; and (2) a reasonable person would be intimidated. |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | *Toshiba America Electronics Components, Inc.* (9th Cir. 2001) 274 F.3d 1276, 1289-1290 internal citation omitted.)" (Emphasis added.) The plaintiff should not be required to prove that a reasonable person would believe that the defendant would, in fact, more likely than not, attempt to carry out the threat. I suggest questions 3 and 4 be combined in the following manner: <u>"Would a reasonable person in [plaintiff]'s position have been intimidated because [he/she] reasonably believed [defendant] might carry out [his/her] threats?"</u> | |
| 3702, Affirmative Defense— Comparative Fault of Plaintiff's Agent | Orange County Bar Association, by Michael G. Yoder, President | Revise the second sentence in the Directions for Use to read, "For example, in an automobile accident <u>lawsuit</u> brought by a corporate plaintiff, the defendant could use this instruction to assert that the negligence of the plaintiff's employee/driver contributed to causing the accident." | The committee has made the proposed change. |
| | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Orrick supports this proposed revision in its entirety and believes that it accurately reflects the state of California law. | No response is required. |
| 3905A, Physical Pain, Mental Suffering, and Emotional Distress (Noneconomic Damage); 3921, Wrongful Death (Death of an Adult); 3922, Wrongful Death (Parents' | Mark Meyer, Attorney at Law (no further information provided) | The first sentence of the last paragraph states the proper rule: a jury should award the present value of any future pain and suffering. The second sentence is confusing and unnecessary. It should be eliminated. It appears to be in response to the trial court's error in *Salgado v. County of L.A.* (1998) 19 Cal.4th 629. In that case, the jury provided an award for the present value of future pain and suffering damages and the trial court ordered | The committee believes it is important to instruct the jury not to reduce noneconomic damages to present value. Members have received reports of jury confusion when there are both future economic and noneconomic damages at issue. Because expert testimony and present-value charts are presented for economic damages, the jury sometimes applies the same mathematical reduction to noneconomic |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| Recovery for Death of a Minor Child) | | that the payments be made over the lifetime of the plaintiff without adjusting the gross award upward to take into account the time-value of money. The jury did not err in *Salgado*; the trial court judge did. There is no need to instruct jurors on this point. However, you may wish to include this sentence in the directions for use. | damages also.  This is contrary to the court's directions in *Salgado*. |
| | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Orrick disagrees with the addition of the phrase "because that reduction should only be performed with respect to economic damages" because it misstates the holding and reasoning of *Salgado v. County of L.A.* (1998) 19 Cal.4th 629, 646–647.  In *Salgado,* the California Supreme Court provided that the jury *should* calculate future noneconomic damages in their present cash value, and indeed that trial courts should expressly instruct the jury to do so.  The court merely held that in the absence of such an instruction, one should nevertheless assume that the jury's award of future noneconomic damages is expressed in present value dollars, such that it need not be reduced further. Here, the proposed additional language incorrectly suggests that it is only economic damages, and not noneconomic damages, that should be calculated in their present cash value.  The current instruction is already accurate and should not be confused with this improper language. | The committee disagrees with the commentator's interpretation of *Salgado*. The court said that the jury must be instructed to award damages for future noneconomic harm in current dollars.  This is not the same thing as "present cash value."  Reduction to "present cash value" is a mathematical function that is usually performed based on expert testimony, tables, and formulas.  It is to be performed only with regard to economic damages. |
| | | Orrick also disagrees with the proposal to move the second sentence of this instruction (beginning "To recover for future ...") to | The current order switches from present to future to present to future (damages).  By switching the order, the two paragraphs on |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | follow the third sentence (beginning "No fixed standard…") because doing so would render the instruction unnecessarily confusing.  Currently, the instruction is laid out in a proper logical sequence: (1) the plaintiff must first prove that he or she is reasonably certain to suffer future harm; (2) if so, the jury must use its judgment to decide the reasonable amount of such damages.  Reversing the order of these sentences would confuse the threshold question of proving certain damages with the proper method of calculating those damages. | present damages, which will always be given, are together, and the two that will be given only if future damages are claimed are together. |
| 3921 and 3922 | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | The phrase "because that reduction should only be performed with respect to economic damages" should not be used for these particular instructions because, as the Judicial Council acknowledges in its Directions for Use, the law is not clear in the context of wrongful death actions.  Because the goal of the instructions is to provide an "explanation of the law" (CACI June 2009 Preface), it is inappropriate to sanction a given instruction regarding a point of law when that law is unclear and unsettled. | When there is a case (here, *Fox v. Pacific Southwest Airlines* (1982) 133 Cal.App.3d 565, 569) that the committee believes is no longer good law because of a later Supreme Court case (here, *Salgado v. County of L.A.* (1998) 19 Cal.4th 629), the committee thinks it is important to call attention to the issue and note it in the Directions for Use. But at times the committee thinks that it is also appropriate to draft an instruction in the way that it believes reflects the law, even though the point is not conclusively settled. Because the committee believes that *Salgado* nullifies *Fox,* it has revised the instructions accordingly. |
| 3960, Comparative Fault of Plaintiff—General Verdict | Orrick, Herrington & Sutcliffe, San Francisco, by L. Christopher Vejnoska | Orrick supports this proposed revision in its entirety and believes that it accurately reflects the state of California law. | No response is required. |
| 4420, Affirmative Defense— | Dylan W. Wiseman, Littler Mendelson, | Contrary to the express terms of CACI 4420, there is absolutely no evidence suggesting | The committee has fully considered the commentator's views, and while recognizing |

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| Information Was Readily Ascertainable by Proper Means | Sacramento | that the Legislature envisioned it was creating an "affirmative defense" by deleting the "ambiguous" and "muddied" language from California's version of the UTSA. A "defense" is not the same as an "affirmative defense." A defense may be asserted in the form of a "traverse," which is "[a] formal denial of a factual allegation made in the opposing party's pleading." (Black's Law Dictionary, traverse.)  On the other hand, an affirmative defense is defined as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." (Black's Law Dictionary, affirmative defense [emphasis added]; see also 5 Witkin, California Procedure (4th Ed. 1996) Pleadings § 1081 [affirmative defense admits the truth of the essential allegations of the complaint].) When the Senate Judiciary Committee voted to delete the "readily ascertainable" language from the UTSA, but kept open the door for it to be asserted by a defendant, it expressly concluded, "However, the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation." This is nothing more than a defense, or a traverse. Certainly it is not an "affirmative defense."  Under case law, the proper scope of the defense must be "based on the absence of misappropriation," meaning that the information was not acquired by improper means. If the defendant | that the law is not completely clear, does not agree with him. A full analysis of the committee's reasons for rejecting this comment is set forth in its report to the council. |

# CACI 09-02
## New and Revised CACI Instructions

All comments are paraphrased unless indicated by quotation marks.

| Instruction | Commentator | Summary of Comment | Committee Response |
|---|---|---|---|
| | | "acquired" the trade secret through theft, bribery, misrepresentation, breach or inducement of a breach of duty to maintain secrecy, or espionage through electronic or other means," then the Legislative defense is not available. (See *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 21, fn. 9; *Imax Corp. v. Cinema Techs.* (9th Cir. 1998) 152 F.3d 1161, 1168; *SEIU v. Roselli* (N.D.Cal. 2009) U.S. Dist. LEXIS 40776.) | |
| | | The Sources and Authority to CACI 4420 may lead to confusion among jurors, do not accurately state the law in California, and invite California businesses to appeal any jury result arising from the issuance of CACI 4420. | The case excerpts in the Sources and Authority are all taken directly from the text of the cases.  Because they are not presented to the jury, there is no possibility of confusion among jurors. |
| | Orange County Bar Association, by Michael G. Yoder, President | Agree with all new and revised instructions except as indicated above. | No response is required. |

# CIVIL JURY INSTRUCTIONS (CACI 09–02)
## WINTER 2009 REVISIONS—TABLE OF CONTENTS

**PRETRIAL SERIES**
    100:    Preliminary Admonitions (*Revised*)    p. 4

**NEGLIGENCE SERIES**
    405:    Comparative Fault of Plaintiff (*Revised*)    p. 8

    406:    Apportionment of Responsibility (*Revised*)    p. 10

    407:    Comparative Fault of Decedent (*Revised*)    p. 13

    422:    Sale of Alcoholic Beverages to Obviously Intoxicated Minors (*Revised*)    p. 15

    426:    Negligent Hiring, Supervision, or Retention of Employee (*New*)    p. 18

    457:    Statute of Limitations—Equitable Tolling—Other Prior Proceeding (*New*)    p. 20

    VF-406: Negligence—Sale of Alcoholic Beverages to Obviously Intoxicated Minor
        (*Revised*)    p. 24

**MOTOR VEHICLES AND HIGHWAY SAFETY SERIES**
    724:    Negligent Entrustment of Motor Vehicle (*Revised*)    p. 27

**RAILROAD CROSSINGS SERIES**
    806:    Comparative Fault—Duty to Approach Crossing With Care (*Revised*)    p. 30

**PREMISES LIABILITY SERIES**
    1006:  Landlord's duty (*Revised*)    p. 33

    VF-1002: Premises Liability—Comparative Fault of Plaintiff at Issue (*Revised*)    p. 37

**PRODUCTS LIABILITY SERIES**
    VF-1204: Products Liability—Negligence—Comparative Fault of Plaintiff at Issue
    (*Revised*)    p. 40

**FRAUD OR DECEIT SERIES**
    1903:  Negligent Misrepresentation (*Revised*)    p. 43

    1910:  Real Estate Seller's Nondisclosure of Material Facts (*New*)    p. 46

    1923:  Damages—"Out of Pocket" Rule (*Revised*)    p. 49

    1924:  Damages—"Benefit of- the- Bargain" Rule (*Revised*)    p. 52

VF-1900: Intentional Misrepresentation (*Revised*)                                   p. 56

VF-1903: Negligent Misrepresentation (*Revised*)                                     p. 59

**CONVERSION SERIES**
2100:   Conversion—Essential Factual Elements (*Revised*)                            p. 62

VF-2100: Conversion (*Revised*)                                                      p. 66

**FAIR EMPLOYMENT AND HOUSING ACT SERIES**
2540:   Disability Discrimination—Disparate Treatment—Essential Factual Elements
        (*Revised*)                                                                  p. 68

2541:   Disability Discrimination—Reasonable Accommodation
        —Essential Factual Elements (*Revised*)                                      p. 72

2546:   Disability Discrimination—Reasonable Accommodation
        —Failure to Engage in Interactive Process (*Revised*)                        p. 77

VF-2508: Disability Discrimination—Disparate Treatment (*Revised*)                   p. 81

VF-2509: Disability Discrimination— Reasonable Accommodation (*Revised*)             p. 85

VF-2510: Disability Discrimination Reasonable Accommodation
        —Affirmative Defense—Undue Hardship (*Revised*)                             p. 88

VF-2513: Disability Discrimination Reasonable Accommodation
        —Failure to Engage in Interactive Process (*Revised*)                        p. 92

**FEDERAL EMPLOYEES LIABILITY ACT SERIES**
2904:   Comparative Fault (*Revised*)                                                p. 96

**CIVIL RIGHTS SERIES**
3023A: Acts of Violence—Ralph Act —Essential Factual Elements
(*Derived from former CACI No. 3023*)                                                p. 98

3023B: Threat of Violence—Ralph Act —Essential Factual Elements
(*Derived from former CACI No. 3023*)                                                p. 101

VF-3013: Ralph Act (*Revised*)                                                       p. 104

**VICARIOUS RESPONSIBILITY SERIES**
3702:   Affirmative Defense—Comparative Fault of Plaintiff's Agent (*Revised*)       p. 107

**DAMAGES SERIES**
3905A: Physical Pain, Mental Suffering, and Emotional Distress (Noneconomic Damage)

(*Revised*)                                                                                    p. 109

   3921:  Wrongful Death (Death of an Adult) (*Revised*)                        p. 112

   3922:  Wrongful Death (Parents' Recovery for Death of a Minor Child) (*Revised*)    p. 118

   3960:  Comparative Fault of Plaintiff—General Verdict (*Revised*)             p. 124

**TRADE SECRETS SERIES**
   4420:  Affirmative Defense--Information Was Readily Ascertainable by Proper Means
       (*Revised*)                                                                p. 125

**CONCLUDING INSTRUCTIONS SERIES**
   5000:  Duties of the Judge and Jury (*Revised*)                              p. 128

   5009:  Predeliberation Instructions (*Revised*)                              p. 131

   5012:  Introduction to Special Verdict Form (*Revised*)                      p. 134

31

Preliminary Draft Only -- Not Approved by Judicial Council

---

### 100.  Preliminary Admonitions

---

You have now been sworn as jurors in this case. I want to impress on you the seriousness and importance of serving on a jury. Trial by jury is a fundamental right in California. The parties have a right to a jury that is selected fairly, that comes to the case without bias, and that will attempt to reach a verdict based on the evidence presented. Before we begin, I need to explain how you must conduct yourselves during the trial.

Do not allow anything that happens outside this courtroom to affect your decision. During the trial do not talk about this case or the people involved in it with anyone, including family and persons living in your household, friends and coworkers, spiritual leaders, advisors, or therapists.

**This prohibition is not limited to face-to-face conversations. It also extends to all forms of electronic communications. Do not use any electronic device or media, such as a cell phone or smart phone, PDA, computer, the Internet, any Internet service, any text or instant--messaging service, any Internet chat room, blog, or Web site, including social networking websites or online diaries, to send or receive any information to or from anyone about this case or your experience as a juror until after you have been discharged from your jury duty.**

~~Do not post any information about the trial or your jury service on the Internet in any form. Do not send or accept any messages, including e-mail or text messages, to or from anyone concerning the trial or your service.~~ You may say you are on a jury and how long the trial may take, but that is all. You must not even talk about the case with the other jurors until after I tell you that it is time for you to decide the case.

During the trial you must not listen to anyone else talk about the case or the people involved in the case. You must avoid any contact with the parties, the lawyers, the witnesses, and anyone else who may have a connection to the case. If anyone tries to talk to you about this case, tell that person that you cannot discuss it because you are a juror. If he or she keeps talking to you, simply walk away and report the incident to the court [attendant/bailiff] as soon as you can.

After the trial is over and I have released you from jury duty, you may discuss the case with anyone, but you are not required to do so.

During the trial, do not read, listen to, or watch any news reports about this case. [I have no information that there will be news reports concerning this case.] **This prohibition extends to the use of the Internet in any way, including reading any blog about the case or about anyone involved with it or using Internet maps or mapping programs or any other program or device to search for or to view any place discussed in the testimony.**

You must decide this case based only on the evidence presented in this trial and the instructions of law that I will provide. Nothing that you see, hear, or learn outside this courtroom is evidence unless I specifically tell you it is. If you receive any information about this case from any source outside of the courtroom, promptly report it to the court [attendant/bailiff]. **It is important that all jurors see and hear the same evidence at the same time.**

Preliminary Draft Only -- Not Approved by Judicial Council

**Do not do any research on your own or as a group. Do not use dictionaries, the Internet, or other reference materials. Do not investigate the case or conduct any experiments. Do not contact anyone to assist you, such as a family accountant, doctor, or lawyer. Do not visit or view the scene of any event involved in this case. If you happen to pass by the scene, do not stop or investigate. All jurors must see or hear the same evidence at the same time. If you do need to view the scene during the trial, you will be taken there as a group under proper supervision.**

**It is important that you keep an open mind throughout this trial. Evidence can only be presented a piece at a time. Do not form or express an opinion about this case while the trial is going on. You must not decide on a verdict until after you have heard all the evidence and have discussed it thoroughly with your fellow jurors in your deliberations.**

**Do not concern yourselves with the reasons for the rulings I will make during the course of the trial. Do not guess what I may think your verdict should be from anything I might say or do.**

**When you begin your deliberations, you may discuss the case only in the jury room and only when all the jurors are present.**

**You must decide what the facts are in this case. And, I repeat, your verdict must be based only on the evidence that you hear or see in this courtroom. Do not let bias, sympathy, prejudice, or public opinion influence your verdict.**

**At the end of the trial, I will explain the law that you must follow to reach your verdict. You must follow the law as I explain it to you, even if you do not agree with the law.**

---

*New September 2003; Revised April 2004, October 2004, February 2005, June 2005, December 2007, December 2009*

### Directions for Use

This instruction should be given at the outset of every case, even as early as when the jury panel enters the courtroom (without the first sentence).

If the jury is allowed to separate, Code of Civil Procedure section 611 requires the judge to admonish the jury that "it is their duty not to converse with, or suffer themselves to be addressed by any other person, on any subject of the trial, and that it is their duty not to form or express an opinion thereon until the case is finally submitted to them."

### Sources and Authority

- Article I, section 16 of the California Constitution provides that "trial by jury is an inviolate right and shall be secured to all."

- Code of Civil Procedure section 608 provides, in part: "In charging the jury the court may state to

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

them all matters of law which it thinks necessary for their information in giving their verdict; and, if it state the testimony of the case, it must inform the jury that they are the exclusive judges of all questions of fact." (See also Evid. Code, § 312; Code Civ. Proc., § 592.)

- Under Code of Civil Procedure section 611, jurors may not "form or express an opinion" prior to deliberations. (See also *City of Pleasant Hill v. First Baptist Church of Pleasant Hill* (1969) 1 Cal.App.3d 384, 429 [82 Cal.Rptr. 1]. It is misconduct for a juror to prejudge the case. (*Deward v. Clough* (1966) 245 Cal.App.2d 439, 443-444 [54 Cal.Rptr. 68].)

- Jurors must not undertake independent investigations of the facts in a case. (*Kritzer v. Citron* (1950) 101 Cal.App.2d 33, 36 [224 P.2d 808]; *Walter v. Ayvazian* (1933) 134 Cal.App. 360, 365 [25 P.2d 526].)

- Jurors are required to avoid discussions with parties, counsel, or witnesses. (*Wright v. Eastlick* (1899) 125 Cal. 517, 520-521 [58 P. 87]; *Garden Grove School Dist. v. Hendler* (1965) 63 Cal.2d 141, 144 [45 Cal.Rptr. 313, 403 P.2d 721].)

- It is misconduct for jurors to engage in experiments that produce new evidence. (*Smoketree-Lake Murray, Ltd. v. Mills Concrete Construction Co.* (1991) 234 Cal.App.3d 1724, 1746 [286 Cal.Rptr. 435].)

- Unauthorized visits to the scene of matters involved in the case are improper. (*Anderson v. Pacific Gas & Electric Co.* (1963) 218 Cal.App.2d 276, 280 [32 Cal.Rptr. 328].)

- It is improper for jurors to receive information from the news media about the case. (*Province v. Center for Women's Health & Family Birth* (1993) 20 Cal.App.4th 1673, 1679 [25 Cal.Rptr.2d 667], disapproved on other grounds in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 41 [32 Cal.Rptr.2d 200, 876 P.2d 999]; *Hilliard v. A. H. Robins Co.* (1983) 148 Cal.App.3d 374, 408 [196 Cal.Rptr. 117].)

- Jurors must avoid bias: " 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the Constitution.' " (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 110 [95 Cal.Rptr. 516, 485 P.2d 1132], internal citations omitted.) Evidence of racial prejudice and bias on the part of jurors amounts to misconduct and may constitute grounds for ordering a new trial. (*Ibid*.)

- An instruction to disregard any appearance of bias on the part of the judge is proper and may cure any error in a judge's comments. (*Gist v. French* (1955) 136 Cal.App.2d 247, 257–259 [288 P.2d 1003], disapproved on other grounds in *Deshotel v. Atchinson, Topeka & Santa Fe Ry. Co.* (1958) 50 Cal.2d 664, 667 [328 P.2d 449] and *West v. City of San Diego* (1960) 54 Cal.2d 469, 478 [6 Cal.Rptr. 289, 353 P.2d 929].) "It is well understood by most trial judges that it is of the utmost importance that the trial judge not communicate in any manner to the jury the judge's opinions on the case submitted to the jury, because juries tend to attach inflated importance to any such communication, even when the judge has no intention whatever of influencing a jury's determination." (*Dorshkind v. Harry N. Koff Agency, Inc.* (1976) 64 Cal.App.3d 302, 307 [134 Cal.Rptr. 344].)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

### *Secondary Sources*

27 California Forms of Pleading and Practice, Ch. 322, *Juries and Jury Selection*, § 322.50 (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 17, *Dealing With the Jury*, 17.05

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

**405**.  **Comparative Fault of** **Plaintiff**'s Contributory Negligence

---

[*Name of defendant*] **claims that** [*name of plaintiff*]**'s** harm was caused in whole or in part by [*name of plaintiff*]'s **own negligence contributed to [his/her] harm. To succeed on this claim,** [*name of defendant*] **must prove both of the following:**

1.      **That** [*name of plaintiff*] **was negligent; and**

2.      **That** [*name of plaintiff*]**'s negligence was a substantial factor in causing [his/her] harm.**

**If** [*name of defendant*] **proves the above,** [*name of plaintiff*]**'s damages are reduced by your determination of the percentage of** [*name of plaintiff*]**'s responsibility. I will calculate the actual reduction.**

---

*New September 2003; Revised December 2009*

### Directions for Use

This instruction should not be given absent substantial evidence that plaintiff was negligent. (*Drust v. Drust* (1980) 113 Cal.App.3d 1, 6 [169 Cal.Rptr. 750].)

If there are multiple defendants or alleged nondefendant torteasors, also give CACI No. 406, *Apportionment of Responsibility.* This instruction should be used only where the defendant claims that plaintiff was negligent, there is only one defendant, and the defendant does not claim that any other factor caused the harm.

### Sources and Authority

• In *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 810 [119 Cal.Rptr. 858, 532 P.2d 1226], the Court court concluded that the "all-or-nothing" rule of contributory negligence should be abandoned in favor of a rule that assesses liability in proportion to fault.

• Restatement Second of Torts, section 463, defines "contributory negligence" as "conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection, and which is a legally contributing cause cooperating with the negligence of the defendant in bringing about the plaintiff's harm."

• It is settled that the issue of contributory negligence must be presented to the jury whenever it is asserted as a defense and there is "some evidence of a substantial character" to support it. (*Hasson v. Ford Motor Co.* (1977) 19 Cal.3d 530, 548 [138 Cal.Rptr. 705, 564 P.2d 857]; *Scott v. Alpha Beta Co.* (1980) 104 Cal.App.3d 305, 310 [163 Cal.Rptr. 544].)

• Courts have found that it is not error to use the phrase "contributory negligence" in a jury instruction

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

on comparative negligence: "The use by the trial court of the phrase 'contributory negligence' in instructing' on the concept of comparative negligence is innocuous. *Li v. Yellow Cab Co.* [citation] abolished the legal doctrine, but not the phrase or the concept of 'contributory negligence.' A claimant's negligence contributing causally to his own injury may be considered now not as a bar to his recovery, but merely as a factor to be considered in measuring the amount thereof." (*Bradfield v. Trans World Airlines, Inc.* (1979) 88 Cal.App.3d 681, 686 [152 Cal.Rptr. 172].)

- The defendant has the burden of proving contributory negligence. (*Drust, supra,* 113 Cal.App.3d at p. 6.)

## *Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 1003, 1295–1303

California Tort Guide (Cont.Ed.Bar 3d ed.) §§ 1.38-1.39

1 Levy et al., California Torts, Ch. 4, *Comparative Negligence, Assumption of the Risk, and Related Defenses*, § 4.04 (Matthew Bender)

4 California Trial Guide, Unit 90, *Closing Argument*, § 90.91 (Matthew Bender)

33 California Forms of Pleading and Practice, Ch. 380, *Negligence* § 380.170 (Matthew Bender)

16 California Points and Authorities, Ch. 165, *Negligence*, § 165.380 (Matthew Bender)

**Preliminary Draft Only -- Not Approved by Judicial Council**

## 406. Apportionment of Responsibility

---

[[*Name of defendant*] **claims that the [negligence/fault] of [**insert name(s) or description(s) of nonparty tortfeasor(s)**]** ~~was~~ **[also]** ~~a substantial factor in causing~~contributed to **[**name of plaintiff**]'s harm. To succeed on this claim, [**name of defendant**] must prove both of the following:**

1. **That [**insert name(s) or description(s) of nonparty tortfeasor(s)**] [was/were] [negligent/at fault]; and**

2. **That the [negligence/fault] of [**insert name(s) or description(s) of nonparty tortfeasor(s)**] was a substantial factor in causing [**name of plaintiff**]'s harm.]**

**If you find that the [negligence/fault] of more than one person including [**name of defendant**] [and] [[**name of plaintiff**]/ [and] [**name(s) or description(s) of nonparty tortfeasor(s)**]] was a substantial factor in causing [**name of plaintiff**]'s harm, you must then decide how much responsibility each has by assigning percentages of responsibility to each person listed on the verdict form. The percentages must total 100 percent.**

**You will make a separate finding of [**name of plaintiff**]'s total damages, if any. In determining an amount of damages, you should not consider any person's assigned percentage of responsibility.**

**["Person" can mean an individual or a business entity.]**

---

*New September 2003; Revised June 2006, December 2007, December 2009*

### Directions for Use

This instruction is designed to assist the jury in completing CACI No. VF-402, *Negligence—Fault of Plaintiff and Others at Issue,* which must be given in a multiple-tortfeasor case to determine comparative fault.  VF-402 is designed to compare the conduct of all defendants, the conduct of the plaintiff, and the conduct of any nonparty tortfeasors.

Throughout, select "fault" if there is a need to allocate responsibility between tortfeasors whose alleged liability is based on conduct other than negligence, e.g., strict products liability.

Include the first paragraph if the defendant has presented evidence that the conduct of one or more nonparties contributed to the plaintiff's harm.  "Nonparties" include the universe of tortfeasors who are not present at trial, including defendants who settled before trial and nonjoined alleged tortfeasors. (*Dafonte v. Up-Right* (1992) 2 Cal.4th 593, 603 [7 Cal.Rptr.2d 238, 828 P.2d 140].)  Include "also" if the defendant concedes some degree of liability.

If the plaintiff's ~~contributory negligence~~comparative fault is also at issue, give CACI No. 405, *Comparative Fault of Plaintiff~~'s Contributory Negligence~~*, in addition to this instruction.

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

Include the last paragraph if any of the defendants or others alleged to have contributed to the plaintiff's harm ~~are~~ is not ~~an~~ individual~~s~~.

### Sources and Authority

- Civil Code section 1431.2(a) (Proposition 51) provides: "In any action for personal injury, property damage, or wrongful death, based upon principles of comparative fault, the liability of each defendant for non-economic damages shall be several only and shall not be joint. Each defendant shall be liable only for the amount of non-economic damages allocated to that defendant in direct proportion to that defendant's percentage of fault, and a separate judgment shall be rendered against that defendant for that amount."

- The Supreme Court has held that the doctrine of joint and several liability survived the adoption of comparative negligence: "[W]e hold that after *Li*, a concurrent tortfeasor whose negligence is a proximate cause of an indivisible injury remains liable for the total amount of damages, diminished only 'in proportion to the amount of negligence attributable to the person recovering.' " (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 590 [146 Cal.Rptr. 182, 578 P.2d 899], citing *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226].)

- The Supreme Court in *American Motorcycle Assn.* also modified the equitable indemnity rule "to permit a concurrent tortfeasor to obtain partial indemnity from other concurrent tortfeasors on a comparative fault basis." (*American Motorcycle Assn., supra,* 20 Cal.3d at p. 591.)

- "[A] 'defendant['s]' liability for noneconomic damages cannot exceed his or her proportionate share of fault *as compared with all fault responsible for the plaintiff's injuries*, not merely that of 'defendant[s]' present in the lawsuit." (*Dafonte, supra,* 2 Cal.4th at p. 603, original italics.)

- "[U]nder Proposition 51, fault will be allocated to an entity that is immune from *paying* for its tortious acts, but will not be allocated to an entity that is not a tortfeasor, that is, one whose actions have been declared not to be tortious." (*Taylor v. John Crane, Inc.* (2003) 113 Cal.App.4th 1063, 1071 [6 Cal.Rptr.3d 695], original italics.)

- "A defendant bears the burden of proving affirmative defenses and indemnity cross-claims. Apportionment of noneconomic damages is a form of equitable indemnity in which a defendant may reduce his or her damages by establishing others are also at fault for the plaintiff's injuries. Placing the burden on defendant to prove fault as to nonparty tortfeasors is not unjustified or unduly onerous." (*Wilson v. Ritto* (2003) 105 Cal.App.4th 361, 370 [129 Cal.Rptr.2d 336].)

- "When a defendant is liable *only* by reason of a derivative nondelegable duty arising from his status as employer or landlord or vehicle owner or coconspirator, or from his role in the chain of distribution of a single product in a products liability action, his liability is *secondary* (vicarious) to that of the actor and he is not entitled to the benefits of Proposition 51." (*Bayer-Bel v. Litovsky* (2008) 159 Cal.App.4th 396, 400 [71 Cal.Rptr.3d 518], original italics, internal citations omitted.)

- Restatement Third of Torts, Apportionment Liability, section 7, comment (g), provides, in part: "Percentages of responsibility are assigned by special verdict to any plaintiff, defendant, settlor,

**Preliminary Draft Only -- Not Approved by Judicial Council**

immune person, or other relevant person … whose negligence or other legally culpable conduct was a legal cause of the plaintiff's injury. The percentages of responsibility must total 100 percent. The factfinder makes a separate finding of the plaintiff's total damages. Those damages are reduced by the percentage of responsibility the factfinder assigns to the plaintiff. The resulting amount constitutes the plaintiff's 'recoverable damages.' "

• Restatement Third of Torts, Apportionment Liability, section 26, comment (h), provides, in part: "A more attractive solution is to place the burden of proof on the party seeking to avoid responsibility for the entire injury, along with relaxing the burden of production. This allows the factfinder to divide damages based on the available evidence. Ultimately, however, the sufficiency of the evidence is determined by applicable procedural rules."

***Secondary Sources***

5 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 50, 52–56, 59, 60, 63, 64, 68

California Tort Guide (Cont.Ed.Bar 3d ed.) §§ 1.52–1.59

1 Levy et al., California Torts, Ch. 4, *Comparative Negligence, Assumption of the Risk, and Related Defenses*, §§ 4.04–4.03, 4.07–4.08 (Matthew Bender)

5 Levy et al., California Torts, Ch. 74, *Resolving Multiparty Tort Litigation*, § 74.03 (Matthew Bender)

4 California Trial Guide, Unit 90, *Closing Argument*, § 90.91 (Matthew Bender)

California Products Liability Actions, Ch. 2, *Liability for Defective Products*, § 2.14A, Ch. 9, *Damages*, § 9.01 (Matthew Bender)

25 California Forms of Pleading and Practice, Ch. 300, *Indemnity and Contribution*, § 300.61 (Matthew Bender)

11 California Points and Authorities, Ch. 115, *Indemnity and Contribution*, § 115.04 et seq. (Matthew Bender)

16 California Points and Authorities, Ch. 165, *Negligence*, §§ 165.284, 165.380 (Matthew Bender)

**Preliminary Draft Only -- Not Approved by Judicial Council**

## 407.  Comparative Fault of Decedent's Contributory Negligence

[*Name of defendant*] **claims that** [*name of decedent*]**'s death was caused in whole or in part by** [*name of decedent*]**'s own negligence contributed to [his/her] death. To succeed on this claim,** [*name of defendant*] **must prove both of the following:**

1.     **That** [*name of decedent*] **was negligent; and**

2.     **That** [*name of decedent*]**'s negligence was a substantial factor in causing [his/her] death.**

**If** [*name of defendant*] **proves the above,** [*name of plaintiff*]**'s damages are reduced by your determination of the percentage of** [*name of decedent*]**'s responsibility. I will calculate the actual reduction.**

*New September 2003; Revised December 2009*

### Directions for Use

This instruction should not be given absent evidence that the decedent was negligent. (*Drust v. Drust* (1980) 113 Cal.App.3d 1, 6 [169 Cal.Rptr. 750].)

### Sources and Authority

- "[P]rinciples of comparative fault and equitable indemnification support an apportionment of liability among those responsible for the loss, including the decedent, whether it be for personal injury or wrongful death." (*Horwich v. Superior Court* (1999) 21 Cal.4th 272, 285 [87 Cal.Rptr.2d 222, 980 P.2d 927].)

- "[I]n wrongful death actions, the fault of the decedent is attributable to the surviving heirs whose recovery must be offset by the same percentage. [Citation.]" (*Atkins v. Strayhorn* (1990) 223 Cal.App.3d 1380, 1395 [273 Cal.Rptr. 231].)

*Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, § 1400

1 Levy et al., California Torts, Ch. 4, *Comparative Negligence, Assumption of the Risk, and Related Defenses*, § 4.07 (Matthew Bender)

4 Levy et al., California Torts, Ch. 55, *Death and Survival Actions*, § 55.05 (Matthew Bender)

15 California Forms of Pleading and Practice, Ch. 181, *Death and Survival Actions § 181.12* (Matthew Bender)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

6 California Points and Authorities, Ch. 66, *Death and Survival Actions* § 66.20 et seq. (Matthew Bender)

Preliminary Draft Only -- Not Approved by Judicial Council

**422. Sale of Alcoholic Beverages to Obviously Intoxicated Minors (Bus. & Prof. Code, § 25602.1)**

---

[*Name of plaintiff*] **claims** [*name of defendant*] **is responsible for [his/her] harm because** [*name of defendant*] **sold or gave alcoholic beverages to** [*name of alleged minor*]**, a minor who was already obviously intoxicated.**

**To establish this claim,** [*name of plaintiff*] **must prove all of the following:**

1. **That** [*name of defendant*] **was [licensed/authorized/required to be licensed or authorized] to sell alcoholic beverages;**

2. **That** [*name of defendant*] **sold or gave alcoholic beverages to** [*name of alleged minor*]**;**

3. **That** [*name of alleged minor*] **was less than 21 years old at the time;**

4. **That when** [*name of defendant*] **provided the alcoholic beverages,** [*name of alleged minor*] **displayed symptoms that would lead a reasonable person to conclude that [he/she] was obviously intoxicated;**

5. **That~~, while intoxicated,~~** [*name of alleged minor*] **harmed ~~[himself/herself/~~[*name of plaintiff*]~~]~~; and**

6. **That** [*name of defendant*]**'s selling or giving alcoholic beverages to** [*name of alleged minor*] **was a substantial factor in causing ~~[his/her/~~[*name of plaintiff*]'s] harm.**

**In deciding whether** [*name of alleged minor*] **was obviously intoxicated, you may consider whether [he/she] displayed one or more of the following symptoms to** [*name of defendant*] **before the alcoholic beverages were provided: impaired judgment; alcoholic breath; incoherent or slurred speech; poor muscular coordination; staggering or unsteady walk or loss of balance; loud, boisterous, or argumentative conduct; flushed face; or other symptoms of intoxication. The mere fact that** [*name of alleged minor*] **had been drinking is not enough.**

---

*New September 2003; Revised December 2009*

### Directions for Use

If the plaintiff is the minor who is suing for his or her own injuries (see *Chalup v. Aspen Mine Co.* (1985) 175 Cal.App.3d 973, 974 [221 Cal.Rptr. 97]), modify the instruction by substituting the appropriate pronoun for "[*name of alleged minor*]" throughout.

For purposes of this instruction, a "minor" is someone under the age of 21. (*Rogers v. Alvas* (1984) 160 Cal.App.3d 997, 1004 [207 Cal.Rptr. 60].)

### Sources and Authority

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

- Business and Professions Code section 25602.1 provides, in relevant part: "[A] cause of action may be brought by or on behalf of any person who has suffered injury or death against any person licensed, or required to be licensed ... or any person authorized by the federal government to sell alcoholic beverages on a military base or other federal enclave, who sells, furnishes, gives or causes to be sold, furnished or sold, any alcoholic beverage, to any obviously intoxicated minor where the furnishing, sale or giving of that beverage to the minor is the proximate cause of the personal injury or death sustained by that person."

- In *Schaffield v. Abboud* (1993) 15 Cal.App.4th 1133, 1140 [19 Cal.Rptr.2d 205], the court cited the following as "the 'proper test' for determining whether a patron is 'obviously intoxicated': " 'The use of intoxicating liquor by the average person in such quantity as to produce intoxication causes many commonly known outward manifestations which are 'plain' 'plain' and 'easily seen or discovered.' " If such outward manifestations exist and the seller still serves the customer so affected, he has violated the law, whether this was because he failed to observe what was plain and easily seen or discovered, or because, having observed, he ignored that which was apparent.' "

- "[T]he standard for determining 'obvious intoxication' is measured by that of a reasonable person." (*Schaffield, supra,* 15 Cal.App.4th at p. 1140.)

- The description of symptoms is derived from an instruction approved in *Jones v. Toyota Motor Co.* (1988) 198 Cal.App.3d 364, 370 [243 Cal.Rptr. 611].

- In *Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1276 [48 Cal.Rptr.2d 229], the court held that the phrase "causes to be sold" "requires an affirmative act directly related to the sale of alcohol which necessarily brings about the resultant action to which the statute is directed, i.e., the furnishing of alcohol to an obviously intoxicated minor."

- "It is our conclusion that the terms of section 25602.1 should be construed strictly, so as to require that the negligence resulting in liability of the alcohol purveyor be that of the very person who purchased the beverage." (In *Salem v. Superior Court* (1989) 211 Cal.App.3d 595, 603 600 [259 Cal.Rptr. 447], the court held that injury resulting from intoxication of a person to whom an intoxicated minor gives liquor is not an injury proximately resulting from the sale to the intoxicated minor.)

- "[O]bviously intoxicated minors who are served alcohol by a licensed purveyor of liquor, may bring a cause of action for negligence against the purveyor for [their own] subsequent injuries." (*Chalup, supra,* 175 Cal.App.3d at p. 979.)

### Secondary Sources

6 Witkin, Summary of California Law (10th ed. 2005) Torts, § 1072

California Tort Guide (Cont.Ed.Bar 3d ed.) § 4.63

3 California Forms of Pleading and Practice, Ch. 19, *Alcoholic Beverages: Civil Liability*, §§ 19.12,

Copyright Judicial Council of California

44

**Preliminary Draft Only -- Not Approved by Judicial Council**

19.52, 19.75 (Matthew Bender)

1 California Points and Authorities, Ch. 15A,*Alcoholic Beverages: Civil Liability for Furnishing* §
15A.21 et seq. (Matthew Bender)

Copyright Judicial Council of California

## 426.  Negligent Hiring, Supervision, or Retention of Employee

---

[*Name of plaintiff*] **claims that [he/she] was harmed by** [*name of employee*] **and that** [*name of employer defendant*] **is responsible for that harm because** [*name of employer defendant*] **negligently [hired/ supervised/ [or] retained]** [*name of employee*]**. To establish this claim,** [*name of plaintiff*] **must prove all of the following:**

1. **That** [*name of employee*] **was [unfit/ [or] incompetent] to perform the work for which [he/she] was hired;**

2. **That** [*name of employer defendant*] **knew or should have known that** [*name of employee*] **was [unfit/ [or] incompetent] and that this [unfitness/ [or] incompetence] created a particular risk to others;**

3. **That** [*name of employee*]**'s [unfitness/ [or] incompetence] harmed** [*name of plaintiff*]**; and**

4. **That** [*name of employer defendant*]**'s negligence in [hiring/ supervising/ [or] retaining]** [*name of employee*] **was a substantial factor in causing** [*name of plaintiff*]**'s harm.**

---

*New December 2009*

### Directions for Use

Give this instruction if the plaintiff alleges that the employer of an employee who caused harm was negligent in the hiring, supervision, or retention of the employee after actual or constructive notice of the employee's unfitness.  For instructions holding the employer vicariously liable (without fault) for the acts of the employee, see the Vicarious Responsibility series, CACI No. 3700 et seq.

It appears that liability may also be imposed on the hirer of an independent contractor for the negligent selection of the contractor. (See *Noble v. Sears, Roebuck & Co.* (1973) 33 Cal.App.3d 654, 662–663 [109 Cal.Rptr. 269].)

### Sources and Authority

- "California case law recognizes the theory that an employer can be liable to a third person for negligently hiring, supervising, or retaining an unfit employee." (*Doe v. Capital Cities* (1996) 50 Cal.App.4th 1038, 1054 [58 Cal.Rptr.2d 122].)

- "Negligence liability will be imposed on an employer if it 'knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes.' " (*Phillips v. TLC Plumbing, Inc.* (2009) 172 Cal.App.4th 1133, 1139 [91 Cal.Rptr.3d 864].)

-  "Liability for negligent supervision and/or retention of an employee is one of direct liability for

Preliminary Draft Only -- Not Approved by Judicial Council

negligence, not vicarious liability." (*Delfino v. Agilent Technologies, Inc.* (2006) 145 Cal.App.4th 790, 815 [52 Cal.Rptr.3d 376].)

- "Liability for negligent hiring and supervision is based upon the reasoning that if an enterprise hires individuals with characteristics which might pose a danger to customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its incompetent or unfit employees. The tort has developed in California in factual settings where the plaintiff's injury occurred in the workplace, or the contact between the plaintiff and the employee was generated by the employment relationship." (*Mendoza v. City of Los Angeles* (1998) 66 Cal.App.4th 1333, 1339–1340 [78 Cal.Rptr.2d 525].)

- "We are cited to no authority, nor have we found any authority basing liability on lack of, or on inadequate, supervision, in the absence of knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." (*Noble, supra,* 33 Cal.App.3d at p. 664.)

- "Apparently, [defendant] had no actual knowledge of [the employee]'s past. But the evidence recounted above presents triable issues of material fact regarding whether the [defendant] had reason to believe [the employee] was unfit or whether the [defendant] failed to use reasonable care in investigating [the employee]." (*Evan F. v. Hughson United Methodist Church* (1992) 8 Cal.App.4th 828, 843 [10 Cal.Rptr.2d 748]; cf. *Flores v. AutoZone West Inc.* (2008) 161 Cal.App.4th 373, 384–386 [74 Cal.Rptr.3d 178] [employer had no duty to investigate and discover that job applicant had a juvenile delinquency record].)

- Restatement Third of Agency, section 7.05(1), states: "A principal who conducts an activity through an agent is subject to liability for harm to a third party caused by the agent's conduct if the harm was caused by the principal's negligence in selecting, training, retaining, supervising, or otherwise controlling the agent."

### *Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, § 1190

Chin et al., California Practice Guide: Employment Litigation (The Rutter Group) ¶ 5:615 et seq.

3 California Torts, Ch. 40B, *Employment Discrimination and Harassment,* § 40B.21 (Matthew Bender)

21 California Forms of Pleading and Practice, Ch. 248, *Employer's Liability for Employee's Torts*, § 248.12 (Matthew Bender)

10 California Points and Authorities, Ch. 100A, *Employer and Employee: Respondeat Superior,* § 100A.22 (Matthew Bender)

**457. Statute of Limitations—Equitable Tolling—Other Prior Proceeding**

---

[*Name of plaintiff*] **claims that even if [his/her/its] lawsuit was not filed by** [*insert date from applicable statute of limitations*]**, [he/she/it] may still proceed because the deadline for filing the lawsuit was extended by the time during which** [*specify prior proceeding that qualifies as the tolling event, e.g., she was seeking workers' compensation benefits*]**.  In order to establish the right to proceed,** [*name of plaintiff*] **must prove all of the following:**

1. **That** [*name of defendant*] **received timely notice that** [*name of plaintiff*] **was** [*e.g., seeking workers' compensation*] **instead of filing a lawsuit;**

2. **That the facts of the two claims were so similar that an investigation of the** [*e.g., workers' compensation claim*] **gave or would have given** [*name of defendant*] **the information needed to defend the lawsuit; and**

3. **That** [*name of plaintiff*] **was acting reasonably and in good faith by** [*e.g., seeking workers' compensation*]**.**

**For** [*name of defendant*] **to have received timely notice,** [*name of plaintiff*] **must have filed the** [*e.g., workers' compensation claim*] **by** [*insert date from applicable statute of limitations*] **and the** [*e.g., claim*] **notified** [*name of defendant*] **of the need to begin investigating the facts that form the basis for the lawsuit.**

**In considering whether** [*name of plaintiff*] **acted reasonably and in good faith, you may consider the amount of time after the** [*e.g., workers' compensation claim*] **was** [**resolved/abandoned**] **before [he/she/it] filed the lawsuit.**

---

*New December 2009*

**Directions for Use**

The verdict form should ask the jury to find the period of time that the limitation period was tolled on account of the other proceeding.  The court can then add the additional time to the limitation period and determine whether the action is timely.

Equitable tolling is not available for legal malpractice (see *Laird v. Blacker* (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691] [statutory tolling provisions of Code Civ Proc., § 340.6 are exclusive for both one-year and four-year limitation periods]; see also CACI No. 610, *Affirmative Defense—Statute of Limitations—Attorney Malpractice—One-Year Limit,* and CACI No. 611, *Affirmative Defense—Statute of Limitations—Attorney Malpractice—Four-Year Limit*) nor for medical malpractice with regard to the three-year limitation period of Code of Civil Procedure section 340.5. (See *Belton v. Bowers Ambulance Serv.* (1999) 20 Cal.4th 928, 934 [86 Cal.Rptr.2d 107, 978 P.2d 591] [statutory tolling provisions of Code Civ. Proc., § 340.5 are exclusive only for three-year period; one-year period may be tolled on other grounds]; see also CACI No. 555, *Affirmative Defense—Statute of Limitations—Medical Malpractice—*

*One-Year Limit,* and CACI No. 556, *Affirmative Defense—Statute of Limitations—Medical Malpractice—Three-Year Limit.*)

## Sources and Authority

- "The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine. It is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.' Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99 [84 Cal.Rptr.3d 734, 194 P.3d 1026], internal citations omitted.)

- "The equitable tolling doctrine rests on the concept that a plaintiff should not be barred by a statute of limitations unless the defendant would be unfairly prejudiced if the plaintiff were allowed to proceed. '[T]he primary purpose of the statute of limitations is normally satisfied when the defendant receives timely notification of the first of two proceedings.' The doctrine has been applied 'where one action stands to lessen the harm that is the subject of the second action; where administrative remedies must be exhausted before a second action can proceed; or where a first action, embarked upon in good faith, is found to be defective for some reason.' " (*Aguilera v. Heiman* (2009) 174 Cal.App.4th 590, 598 [95 Cal.Rptr.3d 18], internal citations omitted.)

- "[T]he effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370–371 [2 Cal.Rptr.3d 655, 73 P.3d 517].)

- "A major reason for applying the doctrine is to avoid 'the hardship of compelling plaintiffs to pursue several duplicative actions simultaneously on the same set of facts.' '[D]isposition of a case filed in one forum may render proceedings in the second unnecessary or easier and less expensive to resolve.' " (*Guevara v. Ventura County Community College Dist.* (2008) 169 Cal.App.4th 167, 174 [87 Cal.Rptr.3d 50], internal citations omitted.)

- "[A]pplication of the doctrine of equitable tolling requires timely notice, and lack of prejudice, to the defendant, and reasonable and good faith conduct on the part of the plaintiff. These elements seemingly are present here. As noted, the federal court, without prejudice, declined to assert jurisdiction over a timely filed state law cause of action and plaintiffs thereafter promptly asserted that cause in the proper state court. Unquestionably, the same set of facts may be the basis for claims under both federal and state law. We discern no reason of policy which would require plaintiffs to file simultaneously two separate actions based upon the same facts in both state and federal courts since 'duplicative proceedings are surely inefficient, awkward and laborious.' " (*Addison v. State* (1978) 21 Cal.3d 313, 319 [146 Cal.Rptr. 224, 578 P.2d 941], internal citations omitted.)

- " ' "The timely notice requirement essentially means that the first claim must have been filed within the statutory period. Furthermore[,] the filing of the first claim must alert the defendant in the second claim of the need to begin investigating the facts which form the basis for the second claim. Generally this means that the defendant in the first claim is the same one being sued in the second." "The second prerequisite essentially translates to a requirement that the facts of the two claims be identical or at least so similar that the defendant's investigation of the first claim will put him in a position to fairly defend the second." "The third prerequisite of good faith and reasonable conduct on the part of the plaintiff is less clearly defined in the cases. But in *Addison v. State of California, supra,* 21 Cal.3d 313[,] the Supreme Court did stress that the plaintiff filed his second claim a short time after tolling ended." ' " (*McDonald, supra,* 45 Cal.4th at p. 102, fn. 2, internal citations omitted.)

- "The third requirement of good faith and reasonable conduct may turn on whether 'a plaintiff delayed filing the second claim until the statute on that claim had nearly run …' or 'whether the plaintiff [took] affirmative actions which … misle[d] the defendant into believing the plaintiff was foregoing his second claim.' " (*Tarkington v. California Unemployment Ins. Appeals Bd.* (2009) 172 Cal.App.4th 1494, 1505 [92 Cal.Rptr.3d 131].)

- "Where exhaustion of an administrative remedy is mandatory prior to filing suit, equitable tolling is automatic: 'It has long been settled in this and other jurisdictions that whenever the exhaustion of administrative remedies is a prerequisite to the initiation of a civil action, the running of the limitations period is tolled during the time consumed by the administrative proceeding.' This rule prevents administrative exhaustion requirements from rendering illusory nonadministrative remedies contingent on exhaustion." (*McDonald, supra,* 45 Cal.4th at p. 101, internal citation omitted.)

- "The trial court rejected equitable tolling on the apparent ground that tolling was unavailable where, as here, the plaintiff was advised the alternate administrative procedure he or she was pursuing was voluntary and need not be exhausted. In reversing summary judgment, the Court of Appeal implicitly concluded equitable tolling is in fact available in such circumstances and explicitly concluded equitable tolling is not foreclosed as a matter of law under the FEHA. The Court of Appeal was correct on each count." (*McDonald, supra,* 45 Cal.4th at p. 114.)

- "Equitable tolling and equitable estoppel [see CACI No. 456] are distinct doctrines. ' "Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. … Equitable estoppel, however, … comes into play only after the limitations period has run and addresses … the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. [Equitable estoppel] is wholly independent of the limitations period itself and takes its life … from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice." ' " (*Lantzy, supra,* 31 Cal.4th at pp. 383–384.)

- "[V]oluntary abandonment [of the first proceeding] does not categorically bar application of equitable tolling, but it may be relevant to whether a plaintiff can satisfy the three criteria for

**Preliminary Draft Only -- Not Approved by Judicial Council**

equitable tolling." (*McDonald, supra,* 45 Cal.4th at p. 111.)

- "Section 340.6, subdivision (a), states that 'in no event' shall the prescriptive period be tolled except under those circumstances specified in the statute. Thus, the Legislature expressly intended to disallow tolling under any circumstances not enumerated in the statute." (*Laird, supra,* 2 Cal.4th at p. 618 [applying rule to one-year limitation period].)

- "We see no reason to apply the second sentence of section 340.5 to the one-year period it does not mention, in addition to the three-year period it does mention. The general purpose of MICRA does not require us to expand that sentence beyond its language." (*Belton, supra,* 20 Cal.4th at p. 934 [rejecting application of rule to one-year limitation period].)

## *Secondary Sources*

Brown et al.,  California Practice Guide: Civil Procedure Before Trial (The Rutter Group) ¶ 1:57.2

3 California Torts, Ch. 32, *Liability of Attorneys,* § 32.60[1][g.1] (Matthew Bender)

30 California Forms of Pleading and Practice, Ch. 345, *Limitation of Actions*, § 345.21 (Matthew Bender)

14 California Points and Authorities, Ch. 143, *Limitation of Actions,* § 143.46 (Matthew Bender)

51

**Preliminary Draft Only -- Not Approved by Judicial Council**

**VF-406**. **Negligence—Sale of Alcoholic Beverages to Obviously Intoxicated Minor**

**We answer the questions submitted to us as follows:**

1.  **Was** [*name of defendant*] **[licensed] [authorized] [required to be licensed or authorized] to sell alcoholic beverages?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.  **Did** [*name of defendant*] **sell or give alcoholic beverages to** [*name of alleged minor*]**?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.  **Was** [*name of alleged minor*] **less than 21 years old at the time?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.  **Did** [*name of alleged minor*] **display symptoms that would lead a reasonable person to conclude that** [*name of alleged minor*] **was <span style="color:red"><u>obviously</u></span> intoxicated?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

5.  **Did** [*name of alleged minor*] **<span style="color:red"><u>later</u></span> harm <span style="color:red">~~[himself/herself/~~</span>[*name of plaintiff*]<span style="color:red">~~]] while [~~*name of alleged minor*~~] was intoxicated~~</span>?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

6.  **Was** [*name of defendant*]**'s selling or giving alcoholic beverages to** [*name of alleged minor*] **a substantial factor in causing <span style="color:red">~~[his/her/~~</span>[*name of plaintiff*]<span style="color:red">~~]]~~</span>'s harm?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

**Preliminary Draft Only -- Not Approved by Judicial Council**

**If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

**7.     What are [*name of plaintiff*]'s damages?**

**[a.     Past economic loss**

| | |
|---|---|
| **[lost earnings** | **$ _____]** |
| **[lost profits** | **$ _____]** |
| **[medical expenses** | **$ _____]** |
| **[other past economic loss** | **$ _____]** |

**Total Past Economic Damages:  $ _____]**

**[b.     Future economic loss**

| | |
|---|---|
| **[lost earnings** | **$ _____]** |
| **[lost profits** | **$ _____]** |
| **[medical expenses** | **$ _____]** |
| **[other future economic loss** | **$ _____]** |

**Total Future Economic Damages:  $ _____]**

**[c.     Past noneconomic loss, including [physical pain/mental suffering:]**

**$ _____]**

**[d.     Future noneconomic loss, including [physical pain/mental suffering:]**

**$ _____]**

**TOTAL $ _____**

**Signed:  _____**
                     **Presiding Juror**

**Dated:  _____**

**[After it has been signed/After all verdict forms have been signed], deliver this verdict form to the [clerk/bailiff/judge].**

*New September 2003; Revised April 2007, December 2009*

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

### Directions for Use

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 422, *Sale of Alcoholic Beverages to Obviously Intoxicated Minors* ~~(Bus. & Prof. Code, § 25602.1)~~.

If specificity is not required, users do not have to itemize all the damages listed in question 7. The breakdown is optional depending on the circumstances.

If there are multiple causes of action, users may wish to combine the individual forms into one form.

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to award prejudgment interest on specific losses that occurred prior to judgment.

If ~~contributory negligence~~the comparative fault of the plaintiff is an issue, this form should be modified. See CACI No. VF-401, *Negligence—Single Defendant—Plaintiff's Negligence at Issue—Fault of Others Not at Issue*, for a model form involving the issue of ~~contributory negligence~~comparative fault.

**Preliminary Draft Only -- Not Approved by Judicial Council**

---

### 724. Negligent Entrustment of Motor Vehicle

---

[*Name of plaintiff*] claims that [he/she] was harmed because [*name of defendant*] negligently permitted [*name of driver*] to use [*name of defendant*]'s vehicle. To establish this claim, [*name of plaintiff*] must prove all of the following:

1.    That [*name of driver*] was negligent in operating the vehicle;

2.    That [*name of defendant*] [~~was an owner of~~**owned** the vehicle operated by [*name of driver*]**/had possession of the vehicle operated by [*name of driver*] with the owner's permission**];

3.    That [*name of defendant*] knew, or should have known, that [*name of driver*] was incompetent or unfit to drive the vehicle;

4.    That [*name of defendant*] permitted [*name of driver*] to ~~use~~ **drive** the vehicle; and

5.    That [*name of driver*]'s incompetence or unfitness to drive was a substantial factor in causing harm to [*name of plaintiff*].

---

*New September 2003; Revised December 2009*

### Directions for Use

For a definition of "negligence," see CACI No. 401, *Basic Standard of Care*.

### Sources and Authority

- Vehicle Code section 14606(a) provides: "No person shall employ or hire any person to drive a motor vehicle nor shall he knowingly permit or authorize the driving of a motor vehicle, owned by him or her or under his or her control, upon the highways by any person unless the person is then licensed for the appropriate class of vehicle to be driven."

- Vehicle Code section 14607 provides: "No person shall cause or knowingly permit his child, ward, or employee under the age of 18 years to drive a motor vehicle upon the highways unless such child, ward, or employee is then licensed under this code."

- Vehicle Code section 14608(a) provides, in part: "No person shall rent a motor vehicle to another unless: [¶] ... [t]he person to whom the vehicle is rented is licensed under this code or is a nonresident who is licensed under the laws of the state or country of his or her residence."

- "A rental car company may be held liable for negligently entrusting one of its cars to a customer. ... In determining whether defendant was negligent in entrusting its car to [the driver], defendant's conduct is to be measured by what an ordinarily prudent person would do in similar circumstances." (*Osborn*

**Preliminary Draft Only -- Not Approved by Judicial Council**

*v. Hertz Corp.* (1988) 205 Cal.App.3d 703, 709 [252 Cal.Rptr. 613], internal citations omitted.)

- Vehicle Code section 14606(a) and its predecessors "make a motor vehicle owner who knowingly entrusts his vehicle to an unlicensed driver liable for a third party's injuries caused by the driver's negligence. ... The cause of action parallels that at common law for negligent entrustment, resting on a demonstration of knowing entrustment to an incompetent or dangerous driver with actual or constructive knowledge of his incompetence." (*Dodge Center v. Superior Court* (1988) 199 Cal.App.3d 332, 338 [244 Cal.Rptr. 789], internal citations omitted.)

- "Liability for negligent entrustment is determined by applying general principles of negligence, and ordinarily it is for the jury to determine whether the owner has exercised the required degree of care." (*Allen v. Toledo* (1980) 109 Cal.App.3d 415, 421 [167 Cal.Rptr. 270], internal citations omitted.)

- " 'It is generally recognized that one who places or entrusts his motor vehicle in the hands of one whom he knows, or from the circumstances is charged with knowing, is incompetent or unfit to drive, may be held liable for an injury inflicted by the use made thereof by that driver, provided the plaintiff can establish that the injury complained of was proximately caused by the driver's disqualification, incompetency, inexperience or recklessness ... .' [¶] ... Under the theory of 'negligent entrustment,' liability is imposed on vehicle owner or permitter because of his own independent negligence and not the negligence of the driver, in the event plaintiff can prove that the injury or death resulting therefrom was proximately caused by the driver's incompetency." (*Syah v. Johnson* (1966) 247 Cal.App.2d 534, 539 [55 Cal.Rptr. 741], internal citations omitted.)

- "[O]rdinarily, in the absence of a special relationship between the parties, there is no duty to control the conduct of a third person so as to prevent him from causing harm to another and ... this rule applies even where the third person's conduct is made possible only because the defendant has relinquished control of his property to the third person, unless the defendant has reason to believe that the third person is incompetent to manage it." (*Grafton v. Mollica* (1965) 231 Cal.App.2d 860, 863 [42 Cal.Rptr. 306].)

- "In its simplest form the question is whether the owner when he permits an incompetent or reckless person, who he knows to be incompetent or reckless, to take and operate his car, acts as an ordinarily prudent person would be expected to act under the circumstances. ... [C]onsideration for the safety of others requires him to withhold his consent and thereby refrain from participating in any accident that is liable to happen from the careless and reckless driving of such a dangerous instrumentality." (*Rocca v. Steinmetz* (1923) 61 Cal.App. 102, 109 [214 P. 257].)

- "[T]he tort requires demonstration of actual knowledge of facts showing or suggesting the driver's incompetence-not merely his lack of a license. ... For liability to exist, knowledge must be shown of the user's incompetence or inability safely to use the [vehicle]." (*Dodge Center*, *supra*, 199 Cal.App.3d at p. 341, internal citations omitted.)

- "Knowledge of possession of a temporary permit allowing a person to drive only if accompanied by a licensed driver is sufficient to put the entrustor 'upon inquiry as to the competency of' the unlicensed driver. ... It is then for the jury to determine under the circumstances whether the entrustor is negligent in permitting the unlicensed driver to operate the vehicle." (*Nault v. Smith* (1961) 194

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

Cal.App.2d 257, 267-268 [14 Cal.Rptr. 889], internal citations omitted.)

- "[E]ntrustment of a vehicle to an intoxicated person is not negligence per se. A plaintiff must prove defendant had knowledge of plaintiff's incompetence when entrusting the vehicle." (*Blake v. Moore* (1984) 162 Cal.App.3d 700, 706 [208 Cal.Rptr. 703].)

- "[T]he mere sale of an automobile to an unlicensed and inexperienced person does not constitute negligence per se." (*Perez v. G & W Chevrolet, Inc.* (1969) 274 Cal.App.2d 766, 768 [79 Cal.Rptr. 287].)

- "One who supplies an automobile for the use of another whom the supplier (1) knows, or (2) from facts known to him should know, to be likely, because of his inexperience (or incompetency), to use it in a manner involving unreasonable risk of bodily harm to others whom the supplier should expect to be in the vicinity of its use is subject to liability for bodily harm caused thereby to them." (*Johnson v. Casetta* (1961) 197 Cal.App.2d 272, 274 [17 Cal.Rptr. 81], internal quotation marks omitted.)

- "It is well-settled that where a company knows that an employee has no operator's license that such knowledge is sufficient to put the employer on inquiry as to his competency; it is for the jury to determine under such circumstances whether the employer was negligent in permitting the employee to drive a vehicle." (*Syah*, *supra*, 247 Cal.App.2d at p. 545.)

- "[I]t has generally been held that the owner of an automobile is under no duty to persons who may be injured by its use to keep it out of the hands of a third person in the absence of facts putting the owner on notice that the third person is incompetent to handle it." (*Richards v. Stanley* (1954) 43 Cal.2d 60, 63 [271 P.2d 23], internal citations omitted.)

- "[T]he mere fact of co-ownership does not prevent one co-owner from controlling use of the vehicle by the other co-owner. Thus, where ... plaintiff alleges that one co-owner had power over the use of the vehicle by the other and that the negligent co-owner drove with the express or implied consent of such controlling co-owner, who knew of the driver's incompetence, the basis for a cause of action for negligent entrustment has been stated." (*Mettelka v. Superior Court* (1985) 173 Cal.App.3d 1245, 1250 [219 Cal.Rptr. 697].)

### *Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 1221–1226

California Tort Guide (Cont.Ed.Bar 3d ed.) Automobiles, § 4.38

2 Levy et al., California Torts, Ch. 20, *Motor Vehicles*, § 20.21 (Matthew Bender)

8 California Forms of Pleading and Practice, Ch. 82, *Automobiles: Causes of Action*, § 82.11 (Matthew Bender)

2 California Civil Practice: Torts (Thomson West) § 25:47 c0076

**Preliminary Draft Only -- Not Approved by Judicial Council**

**806**. ~~Contributory Negligence~~<u>Comparative Fault</u>—Duty to Approach Crossing With Care

---

**A driver approaching a railroad crossing is required to use reasonable care to discover whether a train is approaching. The amount of care that is reasonable will depend on the circumstances. A railroad track is itself a warning of danger. If the driver's view of approaching trains is blocked, he or she must use greater care than when the view is clear.**

**If a bell or signal has been placed to warn drivers of danger, a driver is not required to use as much care as when there are no such warnings. However, even if the warning devices are not activated, a driver must use reasonable care in looking and listening for approaching trains.**

---

*New September 2003<u>; Revised December 2009</u>*

### Directions for Use

For an instruction regarding the prima facie speed limits set by Vehicle Code section 22352, see CACI No. 707, *Speed Limit.* For an instruction on the duty of care of a passenger, see CACI No. 711, *The Passenger's Duty of Care for Own Safety.* For instructions on negligence per se, see CACI Nos. 418 to 421.

### Sources and Authority

- Vehicle Code section 22451 provides:

  (a)     The driver of any vehicle or pedestrian approaching a railroad or rail transit grade crossing shall stop not less than 15 feet from the nearest rail and shall not proceed until he or she can do so safely, whenever the following conditions exist:

  (1)     A clearly visible electric or mechanical signal device or a flagman gives warning of the approach or passage of a train or car.

  (2)     An approaching train or car is plainly visible or is emitting an audible signal and, by reason of its speed or nearness, is an immediate hazard.

  (b)     No driver or pedestrian shall proceed through, around, or under any railroad or rail transit crossing gate while the gate is closed.

  (c)     Whenever a railroad or rail transit crossing is equipped with an automated enforcement system, a notice of a violation of this section is subject to the procedures provided in Section 40518.

- Vehicle Code section 22352(a)(1) provides that the prima facie speed limit is 15 miles per hour under the following circumstances: "(A) When traversing a railway grade crossing, if during the last 100 feet of the approach to the crossing the driver does not have a clear and unobstructed view of the

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

crossing and of any traffic on the railway for a distance of 400 feet in both directions along the railway. This subdivision does not apply in the case of any railway grade crossing where a human flagman is on duty or a clearly visible electrical or mechanical railway crossing signal device is installed but does not then indicate the immediate approach of a railway train or car, and (B) When traversing any intersection of highways if during the last 100 feet of the driver's approach to the intersection the driver does not have a clear and unobstructed view of the intersection and of any traffic upon all of the highways entering the intersection for a distance of 100 feet along all those highways, except at an intersection protected by stop signs or yield right-of-way signs or controlled by official traffic control signals."

- "[T]hat the driver's view is somewhat obstructed does not make him contributorily negligent as a matter of law; whether his failure to stop, the place from which he looks and the character and extent of the obstruction to his view are such that a reasonably prudent person would not have so conducted himself are questions for the jury in determining whether he was guilty of contributory negligence." (*Lucas v. Southern Pacific Co.* (1971) 19 Cal.App.3d 124, 139 [96 Cal.Rptr. 356].)

- "A railroad track is itself a warning of danger and a driver intending to cross must avail himself of every opportunity to look and listen; if there are obstructions to the view, he is required to take greater care." (*Wilkinson v. Southern Pacific Co.* (1964) 224 Cal.App.2d 478, 488 [36 Cal.Rptr. 689], internal citation omitted.)

- "A railroad company will not be permitted to encourage persons to relax their vigil concerning the dangers that lurk in railroad crossings by assuring them, through the erection of safety devices, that the danger has been removed or minimized, and, at the same time, to hold them to the same degree of care as would be required if those devices had not been provided." (*Will v. Southern Pacific Co.* (1941) 18 Cal.2d 468, 474 [116 P.2d 44], internal citation omitted.)

- "[A] driver may not cross tracks in reliance upon the safety appliances installed by the railroad with complete disregard for his own safety and recover damages for injuries sustained by reason of his own failure to use reasonable care." (*Will, supra,* 18 Cal.2d at p. 475.)

- "Violation of the railroad's statutory duty to sound bell and whistle at a highway crossing does not absolve a driver from his failure to look and listen and, if necessitated by circumstances such as obstructed vision, even to stop." (*Wilkinson, supra,* 224 Cal.App.2d at p. 489.)

- "It is settled that a railroad may not encourage persons traveling on highways to rely on safety devices and then hold them to the same degree of care as if the devices were not present." (*Startup v. Pacific Electric Ry. Co.* (1947) 29 Cal.2d 866, 871 [180 P.2d 896].)

- "When a flagman or mechanical warning device has been provided at a railroad crossing, the driver of an automobile is thereby encouraged to relax his vigilance, and, in using other means to discover whether there is danger of approaching trains, he is not required to exercise the same quantum of care as would otherwise be necessary." (*Spendlove v. Pacific Electric Ry. Co.* (1947) 30 Cal.2d 632, 634 [184 P.2d 873], internal citations omitted.)

- An instruction that a driver must stop, look, and listen when his or her view is obstructed was held

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

prejudicially erroneous in *Anello v. Southern Pacific Co.* (1959) 174 Cal.App.2d 317, 322 [344 P.2d 843].

***Secondary Sources***

California Tort Guide (Cont.Ed.Bar 3d ed.) Railroad Crossings, §§ 12.10-12.12

2 Levy et al., California Torts, Ch. 23, *Carriers*, § 23.27 (Matthew Bender)

42 California Forms of Pleading and Practice, Ch. 485, *Railroads* § 485.67 (Matthew Bender)

Preliminary Draft Only -- Not Approved by Judicial Council

## 1006.  Landlord's Duty

---

A landlord must conduct reasonable periodic inspections of rental property whenever the landlord has the legal right of possession.  Before giving possession of leased property to a tenant [or on renewal of a lease] [or after retaking possession from a tenant], a landlord must conduct a reasonable inspection of the property for unsafe conditions and **must take reasonable precautions to prevent injury because of the** ~~correct those~~ **conditions that were** ~~discovered~~ **or reasonably should have been discovered** in the process. The inspection must include common areas under the landlord's control.

After a tenant has taken possession, a landlord must **take reasonable precautions to prevent injury because of any** ~~use reasonable care to correct an~~ **unsafe condition in an area of the premises under the landlord's control if the landlord knows or reasonably should have known about it.**

[After a tenant has taken possession, a landlord must ~~use reasonable care to correct an~~**take reasonable precautions to prevent injury because of any** unsafe condition in an area of the premises under the tenant's control if the landlord has actual knowledge of the condition and the right and ability to correct it.]

---

*New September 2003; Revised April 2008, April 2009* *, December 2009*

### Directions for Use

Give this instruction with CACI No. 1000, *Essential Factual Elements,* CACI No. 1001, *Basic Duty of Care,* and CACI No. 1003, *Unsafe Conditions,* if the injury occurred on rental property and the landlord is alleged to be liable.  Include the last paragraph if the property is not within the landlord's immediate control.

### Sources and Authority

"A landlord owes a duty of care to a tenant to provide and maintain safe conditions on the leased premises. This duty of care also extends to the general public. 'A lessor who leases property for a purpose involving the admission of the public is under a duty to see that it is safe for the purposes intended, and to exercise reasonable care to inspect and repair the premises before possession is transferred so as to prevent any unreasonable risk of harm to the public who may enter. An agreement to renew a lease or relet the premises ... cannot relieve the lessor of his duty to see that the premises are reasonably safe at that time.' [¶] Where there is a duty to exercise reasonable care in the inspection of premises for dangerous conditions, the lack of awareness of the dangerous condition does not generally preclude liability. 'Although liability might easily be found where the landowner has actual knowledge of the dangerous condition "[t]he landowner's lack of knowledge of the dangerous condition is not a defense. He has an affirmative duty to exercise ordinary care to keep the premises in a reasonably safe condition, and therefore must inspect them or take other proper means to ascertain their condition. And if, by the exercise of reasonable care, he would have discovered the dangerous condition, he is liable." ' " (*Portillo v. Aiassa* (1994) 27 Cal.App.4th 1128, 1134 [32 Cal.Rptr.2d 755], internal citations omitted.)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

- "Historically, the public policy of this state generally has precluded a landlord's liability for injuries to his tenant or his tenant's invitees from a dangerous condition on the premises which comes into existence after the tenant has taken possession. This is true even though by the exercise of reasonable diligence the landlord might have discovered the condition. [¶] The rationale for this rule has been that property law regards a lease as equivalent to a sale of the land for the term of the lease. As stated by Prosser: 'In the absence of agreement to the contrary, the lessor surrenders both possession and control of the land to the lessee, retaining only a reversionary interest; and he has no right even to enter without the permission of the lessee. Consequently, it is the general rule that he is under no obligation to anyone to look after the premises or keep them in repair, and is not responsible, either to persons injured on the land or to those outside of it, for conditions which develop or are created by the tenant after possession has been transferred. Neither is he responsible, in general, for the activities which the tenant carries on upon the land after such transfer, even when they create a nuisance.' " (*Uccello v. Laudenslayer* (1975) 44 Cal.App.3d 504, 510–511 [118 Cal.Rptr. 741], internal citations omitted.)

- "To this general rule of nonliability, the law has developed a number of exceptions, such as where the landlord covenants or volunteers to repair a defective condition on the premises, where the landlord has actual knowledge of defects which are unknown and not apparent to the tenant and he fails to disclose them to the tenant, where there is a nuisance existing on the property at the time the lease is made or renewed, when a safety law has been violated, or where the injury occurs on a part of the premises over which the landlord retains control, such as common hallways, stairs, elevators, or roof. [¶] A common element in these exceptions is that either at or after the time possession is given to the tenant the landlord retains or acquires a recognizable degree of control over the dangerous condition with a concomitant right and power to obviate the condition and prevent the injury. In these situations, the law imposes on the landlord a duty to use ordinary care to eliminate the condition with resulting liability for injuries caused by his failure so to act." (*Uccello, supra,* 44 Cal.App.3d at p. 511, internal citations omitted.)

- "[W]here a landlord has relinquished control of property to a tenant, a 'bright line' rule has developed to moderate the landlord's duty of care owed to a third party injured on the property as compared with the tenant who enjoys possession and control. ' "Because a landlord has relinquished possessory interest in the land, his or her duty of care to third parties injured on the land is attenuated as compared with the tenant who enjoys possession and control. Thus, before liability may be thrust on a landlord for a third party's injury due to a dangerous condition on the land, the plaintiff must show that the landlord had actual knowledge of the dangerous condition in question, plus the right and ability to cure the condition." [¶] Limiting a landlord's obligations releases it from needing to engage in potentially intrusive oversight of the property, thus permitting the tenant to enjoy its tenancy unmolested.' " (*Salinas v. Martin* (2008) 166 Cal.App.4th 404, 412 [82 Cal.Rptr.3d 735], internal citations omitted.)

- "[A] commercial landowner cannot totally abrogate its landowner responsibilities merely by signing a lease. As the owner of property, a lessor out of possession must exercise due care and must act reasonably toward the tenant as well as to unknown third persons. At the time the lease is executed and upon renewal a landlord has a right to reenter the property, has control of the property, and must inspect the premises to make the premises reasonably safe from dangerous conditions. Even if the commercial landlord executes a contract which requires the tenant to maintain the property in a

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

certain condition, the landlord is obligated at the time the lease is executed to take reasonable precautions to avoid unnecessary danger." (*Mora v. Baker Commodities, Inc.* (1989) 210 Cal.App.3d 771, 781 [258 Cal.Rptr. 669], internal citations omitted.)

- "[T]he landlord's responsibility to inspect is limited. Like a residential landlord, the duty to inspect charges the lessor 'only with those matters which would have been disclosed by a reasonable inspection.' The burden of reducing or avoiding the risk and the likelihood of injury will affect the determination of what constitutes a reasonable inspection. The landlord's obligation is only to do what is reasonable under the circumstances. The landlord need not take extraordinary measures or make unreasonable expenditures of time and money in trying to discover hazards unless the circumstances so warrant. When there is a potential serious danger, which is foreseeable, a landlord should anticipate the danger and conduct a reasonable inspection before passing possession to the tenant. However, if no such inspection is warranted, the landlord has no such obligation." (*Mora, supra,* 210 Cal.App.3d at p. 782, internal citations and footnote omitted.)

- "It is one thing for a landlord to leave a tenant alone who is complying with its lease. It is entirely different, however, for a landlord to ignore a defaulting tenant's possible neglect of property. Neglected property endangers the public, and a landlord's detachment frustrates the public policy of keeping property in good repair and safe. To strike the right balance between safety and disfavored self-help, we hold that [the landlord]'s duty to inspect attached upon entry of the judgment of possession in the unlawful detainer action and included reasonable periodic inspections thereafter." (*Stone v. Center Trust Retail Properties, Inc.* (2008) 163 Cal.App.4th 608, 613 [77 Cal.Rptr.3d 556].)

- "[I]t is established that a landlord owes a duty of care to its tenants to take reasonable steps to secure the common areas under its control." (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 675 [25 Cal.Rptr.2d 137, 863 P.2d 207].)

- "The reasonableness of a landlord's conduct under all the circumstances is for the jury. A triable issue of fact exists as to whether the defendants' maintenance of a low, open, unguarded window in a common hallway where they knew young children were likely to play constituted a breach of their duty to take reasonable precautions to prevent children falling out of the window." (*Amos v. Alpha Prop. Mgmt.* (1999) 73 Cal.App.4th 895, 904 [87 Cal.Rptr.2d 34], internal citation omitted.)

*Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 1142, 1143

1 Levy et al., California Torts, Ch. 15, *General Premises Liability*, § 15.02 (Matthew Bender)

6 California Real Estate Law and Practice, Ch. 170, *The Premises: Duties and Liabilities*, § 170.03 (Matthew Bender)

29 California Forms of Pleading and Practice, Ch. 334, *Landlord and Tenant: Claims for Damages*, §§ 334.10, 334.53 (Matthew Bender)

36 California Forms of Pleading and Practice, Ch. 421, *Premises Liability*, §§ 421.01–421.121 (Matthew

**Preliminary Draft Only -- Not Approved by Judicial Council**

Bender)

17 California Points and Authorities, Ch. 178, *Premises Liability*, § 178.23 (Matthew Bender)

1 California Civil Practice: Torts (Thomson West) §§ 16:12–16:16

Preliminary Draft Only -- Not Approved by Judicial Council

---

**VF-1002**.  **Premises Liability—~~Contributory Negligence~~<u>Comparative Fault</u> of Plaintiff at Issue**

---

**We answer the questions submitted to us as follows:**

1.    **Did [*name of defendant*] [own/lease/occupy/control] the property?**
        _____ **Yes**  _____ **No**

        **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.    **Was [*name of defendant*] negligent in the use or maintenance of the property?**
        _____ **Yes**  _____ **No**

        **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.    **Was [*name of defendant*]'s negligence a substantial factor in causing harm to [*name of plaintiff*]?**
        _____ **Yes**  _____ **No**

        **If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.    **What are [*name of plaintiff*]'s damages?**

        **[a.    Past economic loss**
                **[lost earnings                  $ _____]**
                **[lost profits                     $ _____]**
                **[medical expenses           $ _____]**
                **[other past economic loss  $ _____]**
                                            **Total Past Economic Damages:  $ _____]**


        **[b.    Future economic loss**
                **[lost earnings                  $ _____]**
                **[lost profits                     $ _____]**
                **[medical expenses           $ _____]**
                **[other future economic loss $ _____]**
                                            **Total Future Economic Damages:  $ _____]**

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

[c.     **Past noneconomic loss, including [physical
pain/mental suffering:]**

$ _____]

[d.     **Future noneconomic loss, including [physical
pain/mental suffering:]**

$ _____]

**TOTAL $ _____**

If [*name of plaintiff*] **has proved any damages, then answer question 5. If** [*name
of plaintiff*] **has not proved any damages, then stop here, answer no further
questions, and have the presiding juror sign and date this form.**

5.    **Was** [*name of plaintiff*] **also negligent?**
    \_\_\_\_ **Yes**   \_\_\_\_ **No**

**If your answer to question 5 is yes, then answer question 6. If you answered no, stop
here, answer no further questions, and have the presiding juror sign and date this
form.**

6.    **Was** [*name of plaintiff*]**'s negligence a substantial factor in causing [his/her] harm?**
    \_\_\_\_ **Yes**   \_\_\_\_ **No**

**If your answer to question 6 is yes, then answer question 7. If you answered no, stop
here, answer no further questions, and have the presiding juror sign and date this
form.**

7.    **What percentage of responsibility for** [*name of plaintiff*]**'s harm do you assign to the
following?**

[*Name of defendant*]**: \_\_\_\_%**
[*Name of plaintiff*]**: \_\_\_\_%**
**TOTAL        100%**

**Signed:** _____
    **Presiding Juror**

**Dated:** _____

**[After it has been signed/After all verdict forms have been signed], deliver this verdict form
to the [clerk/bailiff/judge].**

*New February 2005; Revised April 2007, December 2009*

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

### Directions for Use

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 1000, *Essential Factual Elements*, CACI No. 405, *Comparative Fault of* Plaintiff*'s Contributory Negligence*, and CACI No. 406, *Apportionment of Responsibility*.

If specificity is not required, users do not have to itemize all the damages listed in question 4. The breakdown is optional depending on the circumstances.

If there are multiple causes of action, users may wish to combine the individual forms into one form.

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to award prejudgment interest on specific losses that occurred prior to judgment.

**Preliminary Draft Only -- Not Approved by Judicial Council**

**VF-1204**.  **Products Liability—Negligence—~~Comparative Fault of~~ Plaintiff~~'s Contributory Negligence~~ at Issue**

---

**We answer the questions submitted to us as follows:**

1.　**Did** [*name of defendant*] **[design/manufacture/supply/install/inspect/repair/rent] the** [*product*]**?**
　　____ **Yes** ____ **No**

　　**If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.　**Was** [*name of defendant*] **negligent in [designing/manufacturing/supplying/installing/inspecting/repairing/renting] the** [*product*]**?**
　　____ **Yes** ____ **No**

　　**If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.　**Was** [*name of defendant*]**'s negligence a substantial factor in causing harm to** [*name of plaintiff*]**?**
　　____ **Yes** ____ **No**

　　**If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.　**What are** [*name of plaintiff*]**'s total damages? Do not reduce the damages based on the fault, if any, of** [*name of plaintiff*]**.**

　　**[a.　Past economic loss**
　　　　**[lost earnings　　　 $ _____]**
　　　　**[lost profits　　　　 $ _____]**
　　　　**[medical expenses　 $ _____]**
　　　　**[other past economic loss　 $ _____]**
　　　　　　　　　**Total Past Economic Damages:  $ _____]**

　　**[b.　Future economic loss**
　　　　**[lost earnings　　　 $ _____]**
　　　　**[lost profits　　　　 $ _____]**
　　　　**[medical expenses　 $ _____]**
　　　　**[other future economic loss $ _____]**

**Preliminary Draft Only -- Not Approved by Judicial Council**

**Total Future Economic Damages:  $ _____]**

[c.     **Past noneconomic loss, including [physical
        pain/mental suffering:]**

$ _____]

[d.     **Future noneconomic loss, including [physical
        pain/mental suffering:]**

$ _____]

**TOTAL $ _____**

If [*name of plaintiff*] **has proved any damages, answer question 5. If** [*name of plaintiff*]
**has not proved any damages, then stop here, answer no further questions, and have
the presiding juror sign and date this form.**

5.      **Was [*name of plaintiff*] negligent?**
        **_____ Yes   _____ No**

        **If your answer to question 5 is yes, then answer question 6. If you answered no, stop
        here, answer no further questions, and have the presiding juror sign and date this
        form.**

6.      **Was [*name of plaintiff*]'s negligence a substantial factor in causing [his/her] harm?**
        **_____ Yes   _____ No**

        **If your answer to question 6 is yes, then answer question 7. If you answered no, stop
        here, answer no further questions, and have the presiding juror sign and date this
        form.**

7.      **What percentage of responsibility for [*name of plaintiff*]'s harm do you assign to:**
                                **[*Name of defendant*]:        ____%**
                                **[*Name of plaintiff*]:        ____%**
                                **TOTAL                         100%**

**Signed:** _____
                **Presiding Juror**

**Dated:** _____

**[After it has been signed/After all verdict forms have been signed], deliver this verdict form**

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

to the [clerk/bailiff/judge].

---

*New September 2003; Revised April 2007, December 2009*

**Directions for Use**

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 1220, *Negligence—Essential Factual Elements,* and CACI No. 405, *Comparative Fault of Plaintiff's Contributory Negligence.*

If specificity is not required, users do not have to itemize all the damages listed in question 4. The breakdown is optional depending on the circumstances.

If there are multiple causes of action, users may wish to combine the individual forms into one form.

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to award prejudgment interest on specific losses that occurred prior to judgment.

**Preliminary Draft Only -- Not Approved by Judicial Council**

### 1903.  Negligent Misrepresentation

[*Name of plaintiff*] claims [he/she/it] was harmed because [*name of defendant*] negligently misrepresented an important fact. To establish this claim, [*name of plaintiff*] must prove all of the following:

1.   That [*name of defendant*] represented to [*name of plaintiff*] that an important fact was true;

2.   That [*name of defendant*]'s representation was not true;

3.   That [although [*name of defendant*] may have honestly believed that the representation was true,] [[*name of defendant*]/he/she] had no reasonable grounds for believing the representation was true when [he/she] made it;

4.   That [*name of defendant*] intended that [*name of plaintiff*] rely on this representation;

5.   That [*name of plaintiff*] reasonably relied on [*name of defendant*]'s representation;

6.   That [*name of plaintiff*] was harmed; and

7.   That [*name of plaintiff*]'s reliance on [*name of defendant*]'s representation was a substantial factor in causing [his/her/its] harm.

---

*New September 2003; Revised December 2009*

### Directions for Use

If both negligent misrepresentation and intentional misrepresentation are alleged in the alternative, give both this instruction and CACI No.1900, *Intentional Misrepresentation*.  If only negligent misrepresentation is alleged, the bracketed reference to the defendant's honest belief in the truth of the representation in element 3 may be omitted. (See *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407–408 [11 Cal.Rptr.2d 51, 834 P.2d 745].)

### Sources and Authority

- Civil Code section 1710 specifies four kinds of deceit. This instruction is based on the second one:

   A deceit, within the meaning of [section 1709], is either:

   1.   The suggestion, as a fact, of that which is not true, by one who does not believe it to be true [intentional misrepresentation of fact];

   2.   The assertion, as a fact, of that which is not true, by one who has no reasonable

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

ground for believing it to be true [negligent misrepresentation of fact];

3.    The suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact [concealment or suppression of fact]; or,

4.    A promise, made without any intention of performing it.

- "Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit. 'Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit.' " (*Bily, supra,* 3 Cal.4th at pp. 407, internal citations omitted.)

- "This is not merely a case where the defendants made false representations of matters within their personal knowledge which they had *no reasonable grounds for believing to be true*. Such acts clearly would constitute actual fraud under California law. In such situations the defendant *believes* the representations to be true but is without reasonable grounds for such belief. His liability is based on negligent misrepresentation which has been made a form of actionable deceit. On the contrary, in the instant case, the court found that the defendants *did not believe* in the truth of the statements. Where a person makes statements which he does not believe to be true, in a reckless manner without knowing whether they are true or false, the element of scienter is satisfied and he is liable for intentional misrepresentation." (*Yellow Creek Logging Corp. v. Dare* (1963) 216 Cal.App.2d 50, 57 [30 Cal.Rptr. 629], original italics, internal citations omitted.)

- "Negligent misrepresentation is a form of deceit, the elements of which consist of (1) a misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." (*Fox v. Pollack* (1986) 181 Cal.App.3d 954, 962 [226 Cal.Rptr. 532], internal citation omitted.)

- " 'To be actionable deceit, the representation need not be made with knowledge of actual falsity, but need only be an "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" and made "with intent to induce [the recipient] to alter his position to his injury or his risk. ..." ' The elements of negligent misrepresentation also include justifiable reliance on the representation, and resulting damage." (*B.L.M. v. Sabo & Deitsch* (1997) 55 Cal.App.4th 823, 834 [64 Cal.Rptr.2d 335], internal citations omitted.)

- "As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to the injured person. The determination of whether a duty exists is primarily a question of law." (*Eddy v. Sharp* (1988) 199 Cal.App.3d 858, 864 [245 Cal.Rptr. 211], internal citations omitted.)

- " ' "Where the defendant makes false statements, honestly believing that they are true, but without reasonable ground for such belief, he may be liable for negligent misrepresentation, a form of deceit." ' If defendant's belief 'is both honest and reasonable, the misrepresentation is innocent and there is no

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

tort liability.' " (*Diediker v. Peelle Financial Corp.* (1997) 60 Cal.App.4th 288, 297 [70 Cal.Rptr.2d 442], internal citations omitted.)

- "Parties cannot read something into a neutral statement in order to justify a claim for negligent misrepresentation. The tort requires a 'positive assertion.' 'An "implied" assertion or representation is not enough.' " (*Diediker, supra,* 60 Cal.App.4th at pp. 297-298, internal citations omitted.)

- "Whether a defendant had reasonable ground for believing his or her false statement to be true is ordinarily a question of fact." (*Quality Wash Group V, Ltd. v. Hallak* (1996) 50 Cal.App.4th 1687, 1696 [58 Cal.Rptr.2d 592], internal citations omitted.)

### Secondary Sources

5 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 818–820, 823–826

3 Levy et al., California Torts, Ch. 40, *Fraud and Deceit and Other Business Torts*, § 40.10 (Matthew Bender)

23 California Forms of Pleading and Practice, Ch. 269, *Fraud and Deceit* (Matthew Bender)

10 California Points and Authorities, Ch. 105, *Fraud and Deceit* § 105.270 et seq. (Matthew Bender)

2 California Civil Practice: Torts (Thomson West) §§ 22:13–22:15

## 1910. Real Estate Seller's Nondisclosure of Material Facts

[*Name of plaintiff*] claims that [*name of defendant*] failed to disclose certain information, and that because of this failure to disclose, [*name of plaintiff*] was harmed.  In order to establish this claim, [*name of plaintiff*] must prove all of the following:

1. That [*name of plaintiff*] purchased [*describe real property*] from [*name of defendant*];

2. That [*name of defendant*] knew that [*specify information that was not disclosed*];

3. That [*name of defendant*] did not disclose this information to [*name of plaintiff*];

4. That [*name of plaintiff*] did not know, and could not reasonably have discovered, this information;

5. That [*name of defendant*] knew that [*name of plaintiff*] did not know, and could not reasonably have discovered, this information;

6. That this information significantly affected the value or desirability of the property;

7. That [*name of plaintiff*] was harmed; and

8. That [*name of defendant*]'s failure to disclose the information was a substantial factor in causing [*name of plaintiff*]'s harm.

*New December 2009*

### Directions for Use

This instruction sets forth the common law duty of disclosure that a real estate seller has to his or her buyer. Nondisclosure is tantamount to a misrepresentation. (See *Calemine v. Samuelson* (2009) 171 Cal.App.4th 153, 161 [89 Cal.Rptr.3d 495].)

For certain transfers, there is also a statutory duty of disclosure. (See Civ. Code, § 1102 et seq.)  The scope of the required disclosure is set forth on a statutory form. (See Civ. Code, § 1102.6.)  The common law duty is not preempted by the statutory duty (see Civ. Code, § 1102.1(a)), but breach of the statutory duty can constitute proof of breach of the common law duty if all of the elements are established. (See, e.g., *Calemine, supra,* 171 Cal.App.4th at pp. 164–165 [seller did not disclose earlier lawsuits, as required by statutory form].)

### Sources and Authority

- Civil Code section 1102.13 provides: "No transfer subject to this article shall be invalidated solely

because of the failure of any person to comply with any provision of this article. However, any person who willfully or negligently violates or fails to perform any duty prescribed by any provision of this article shall be liable in the amount of actual damages suffered by a transferee."

- "A real estate seller has both a common law and statutory duty of disclosure. [Under the common law duty]: 'In the context of a real estate transaction, " … where the seller knows of facts materially affecting the value or desirability of the property … and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer. [Citations.]" [Citations.] Undisclosed facts are material if they would have a significant and measurable effect on market value. [Citation.]' A seller's duty of disclosure is limited to material facts; once the essential facts are disclosed a seller is not under a duty to provide details that would merely serve to elaborate on the disclosed facts. Where a seller fails to disclose a material fact, he may be subject to liability 'for mere nondisclosure since his conduct in the transaction amounts to a representation of the nonexistence of the facts which he has failed to disclose [citation].' Generally, whether the undisclosed matter was of sufficient materiality to have affected the value or desirability of the property is a question of fact." (*Calemine, supra,* 171 Cal.App.4th at p. 161, internal citations omitted.)

- "Generally, where one party to a transaction has sole knowledge or access to material facts and knows that such facts are not known or reasonably discoverable by the other party, then a duty to disclose exists." (See *Shapiro v. Sutherland* (1998) 64 Cal.App.4th 1534, 1544 [76 Cal.Rptr.2d 101].)

- "Failure of the seller to fulfill [the] duty of disclosure constitutes actual fraud." (*Lingsch v. Savage* (1963) 213 Cal.App.2d 729, 736 [29 Cal.Rptr. 201].)

- "When and where the action by the purchaser is based on conditions that are visible and that a personal inspection at once discloses and, when it is admitted that such personal inspection was in fact made, then manifestly it cannot be successfully contended that the purchaser relied upon any alleged misrepresentations with regard to such visible conditions. But personal inspection is no defense when and where the conditions are not visible and are known only to the seller, and 'where material facts are accessible to the vendor only and he knows them not to be within the reach of the diligent attention and observation of the vendee, the vendor is bound to disclose such facts to the vendee.' " (*Buist v. C.Dudley De Velbiss Corp.* (1960) 182 Cal.App.2d 325, 331 [6 Cal.Rptr. 259].)

- "In enacting [Civil Code section 1102 et seq.], the Legislature made clear it did not intend to alter a seller's common law duty of disclosure. The purpose of the enactment was instead to make the required disclosures specific and clear. (*Calemine, supra,* 171 Cal.App.4th at pp. 161–162.)

- "The legislation was sponsored by the California Association of Realtors to provide a framework for formal disclosure of facts relevant to a decision to purchase realty. The statute therefore confirms and perhaps clarifies a disclosure obligation that existed previously at common law." (*Shapiro, supra,* 64 Cal.App.4th at p. 1539, fn. 6.)

*Secondary Sources*

75

**Preliminary Draft Only -- Not Approved by Judicial Council**

**Preliminary Draft Only -- Not Approved by Judicial Council**

### 1923.  Damages—"Out of Pocket" Rule

---

**If you decide that [*name of plaintiff*] has proved [his/her/its] claim against [*name of defendant*], you also must decide how much money will reasonably compensate [*name of plaintiff*] for the harm. This compensation is called "damages."**

**The amount of damages must include an award for all harm that [*name of defendant*] was a substantial factor in causing, even if the particular harm could not have been anticipated.**

**[*Name of plaintiff*] must prove the amount of [his/her/its] damages. However, [*name of plaintiff*] does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.**

**To decide the amount of damages you must determine the [fair market] value of what [*name of plaintiff*] gave and subtract from that amount the [fair market] value of what [he/she/it] received.**

**["Fair market value" is the highest price that a willing buyer would have paid on the date of the transaction to a willing seller, assuming:**

> **1.      That there is no pressure on either one to buy or sell; and**

> **2.      That the buyer and seller know all the uses and purposes for which the [*insert item*] is reasonably capable of being used.]**

**[*Name of plaintiff*] may also recover amounts that [he/she/it] reasonably spent in reliance on [*name of defendant*]'s [false representation/failure to disclose/false promise] if those amounts would not otherwise have been spent.**

---

*New September 2003; Revised December 2009*

**Directions for Use**

For discussion of damages if there is both a breach of fiduciary duty and intentional misrepresentation, see the Directions for Use to CACI No. 1924, *Damages—"Benefit-of-the-Bargain" Rule.*

**Sources and Authority**

- Civil Code section 1709 provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

- Civil Code section 3333 provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

**Preliminary Draft Only -- Not Approved by Judicial Council**

- Civil Code section 3343 provides, in part: "One defrauded in the purchase, sale or exchange of property is entitled to recover the difference between the actual value of that with which the defrauded person parted and the actual value of that which he received … ."

- This instruction should be modified in cases involving promissory fraud: "In cases of promissory fraud, the damages are measured by market value as of the date the promise was breached because that is the date when the damage occurred." (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 145-146 [135 Cal.Rptr. 802].)

- "There are two measures of damages for fraud: out of pocket and benefit of the bargain. The 'out-of-pocket' measure of damages 'is directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received. The "benefit-of-the-bargain" measure, on the other hand, is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting him in the position he would have enjoyed if the false representation relied upon had been true; it awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive.' 'In California, a defrauded party is ordinarily limited to recovering his "out-of-pocket" loss ... .' " (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1240 [44 Cal.Rptr.2d 352, 900 P.2d 601], internal citations omitted.)

- "Of the two measures the 'out-of-pocket' rule has been termed more consistent with the logic and purpose of the tort form of action (i.e., compensation for loss sustained rather than satisfaction of contractual expectations) while the 'benefit-of-the-bargain' rule has been observed to be a more effective deterrent (in that it contemplates an award even when the property received has a value equal to what was given for it)." (*Stout v. Turney* (1978) 22 Cal.3d 718, 725 [150 Cal.Rptr. 637, 586 P.2d 1228].)

- "In fraud cases involving the 'purchase, sale or exchange of property,' the Legislature has expressly provided that the 'out-of-pocket' rather than the 'benefit-of-the-bargain' measure of damages should apply. Civil Code section 3343 provides the exclusive measure of damages for fraud in such cases." (*Fragale v. Faulkner* (2003) 110 Cal.App.4th 229, 236 [1 Cal.Rptr.3d 616].)

- "Civil Code section 3343 does not apply, however, 'when a victim is defrauded by its fiduciaries.' Instead, in the case of fraud by a fiduciary, 'the "broader" measure of damages provided by sections 1709 and 3333 applies.' … [¶] In the case of a negligent misrepresentation by a fiduciary, 'a plaintiff is only entitled to its actual or "out-of-pocket" losses suffered because of [the] fiduciary's negligent misrepresentation under section 3333.' [¶] The Supreme Court has not decided whether 'the measure of damages under section 3333 might be greater for a fiduciary's *intentional misrepresentation* ….' " (*Fragale, supra,* 110 Cal.App.4th at pp. 236–237, original italics, internal citations omitted.)

- "We have previously held that a plaintiff is only entitled to its actual or 'out-of-pocket' losses suffered because of fiduciary's negligent misrepresentation under section 3333. While the measure of damages under section 3333 might be greater for a fiduciary's intentional misrepresentation, we need not address that issue here." (*Alliance Mortgage Co., supra,* 10 Cal.4th at pp. 1249–1250.)

- "To recover damages for fraud, a plaintiff must have sustained damages proximately caused by the

**Preliminary Draft Only -- Not Approved by Judicial Council**

misrepresentation. A damage award for fraud will be reversed where the injury is not related to the misrepresentation." (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1252 [1 Cal.Rptr.2d 301], internal citations omitted.)

*Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 1710–1717

3 Levy et al., California Torts, Ch. 40, *Fraud and Deceit and Other Business Torts*, § 40.23 (Matthew Bender)

23 California Forms of Pleading and Practice, Ch. 269, *Fraud and Deceit* § 269.27 (Matthew Bender)

10 California Points and Authorities, Ch. 105, *Fraud and Deceit* § 105.252 (Matthew Bender)

**Preliminary Draft Only -- Not Approved by Judicial Council**

**1924.  Damages—"Benefit- of- the- Bargain" Rule**

---

If you decide that [*name of plaintiff*] has proved [his/her/its] claim against [*name of defendant*], you also must decide how much money will reasonably compensate [*name of plaintiff*] for the harm. This compensation is called ``damages.''

The amount of damages must include an award for all harm that [*name of defendant*] was a substantial factor in causing, even if the particular harm could not have been anticipated.

[*Name of plaintiff*] must prove the amount of [his/her/its] damages. However, [*name of plaintiff*] does not have to prove the exact amount of damages that will provide reasonable compensation for the harm. You must not speculate or guess in awarding damages.

To determine the amount of damages, you must:

    1.    Determine the fair market value that [*name of plaintiff*] would have received if the representations made by [*name of defendant*] had been true; and

    2.    Subtract the fair market value of what [he/she/it] did receive.

The resulting amount is [*name of plaintiff*]'s damages. "Fair market value" is the highest price that a willing buyer would have paid to a willing seller, assuming:

    1.    That there is no pressure on either one to buy or sell; and

    2.    That the buyer and seller know all the uses and purposes for which the [*insert item*] is reasonably capable of being used.

Fair market value must be determined as of the date that [*name of plaintiff*] discovered [*name of defendant*]'s [false representation/failure to disclose].

[*Name of plaintiff*] may also recover amounts that [he/she/it] reasonably spent in reliance on [*name of defendant*]'s [false representation/failure to disclose/false promise] if those amounts would not otherwise have been spent.

---

*New September 2003; Revised December 2009*

**Directions for Use**

There is a split of authority regarding whether benefit-of-the-bargain damages can ever be recovered for intentional misrepresentation in the sale or exchange of property.  It is settled that in a nonfiduciary relationship, damages are limited to the out-of-pocket measure, even if the misrepresentation is intentional. (See *Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1240 [44 Cal.Rptr.2d 352, 900 P.2d 601]; Civ. Code, § 3343.)  However, there is disagreement on the proper measure if there is a

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

fiduciary relationship.

Some courts have held that benefit-of-the-bargain damages are available if there is both a fiduciary relationship and intentional misrepresentation. (See *Fragale v. Faulkner* (2003) 110 Cal.App.4th 229, 235–239 [1 Cal.Rptr.3d 616]; *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 564 [29 Cal.Rptr.2d 463]; see also *Alfaro v. Community Housing Improvement System & Planning Assn., Inc.* (2009) 171 Cal.App.4th 1356, 1383 [89 Cal.Rptr.3d 659].) At least one court has held to the contrary, that only out-of-pocket losses may be recovered. (See *Hensley v. McSweeney* (2001) 90 Cal.App.4th 1081, 1086 [109 Cal.Rptr.2d 489].) ~~are ever appropriate in a fraud case: "The cases are not consistent in their treatment of the measure of damages for breach of fiduciary duties." (~~*Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555, 564 [29 Cal.Rptr.2d 463].) The rule is as follows in the Fifth Appellate District: "[W]e conclude that the appropriate measure of damages on the fiduciary tort actions is the out-of-pocket measure, not the benefit of the bargain measure." (*Hensley v. McSweeney* (2001) 90 Cal.App.4th 1081, 1086 [109 Cal.Rptr.2d 489].) In the First Appellate District, the rule is: "Recognizing a split of authority on the matter, we follow those cases adopting the broader measure of damages under sections 1709 and 3333, a course that is not only consonant with the position we have taken in the past but just." (*Salahutdin, supra,* 24 Cal.App.4th at p. 566.)~~

This instruction should be modified in cases involving promissory fraud: "In cases of promissory fraud, the damages are measured by market value as of the date the promise was breached because that is the date when the damage occurred." (*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 145-146 [135 Cal.Rptr. 802].)

### Sources and Authority

- Civil Code section 1709 provides: "One who willfully deceives another with intent to induce him to alter his position to his injury or risk, is liable for any damage which he thereby suffers."

- Civil Code section 3333 provides: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not."

- "There are two measures of damages for fraud: out of pocket and benefit of the bargain. The 'out-of-pocket' measure of damages 'is directed to restoring the plaintiff to the financial position enjoyed by him prior to the fraudulent transaction, and thus awards the difference in actual value at the time of the transaction between what the plaintiff gave and what he received. The "benefit-of-the-bargain" measure, on the other hand, is concerned with satisfying the expectancy interest of the defrauded plaintiff by putting him in the position he would have enjoyed if the false representation relied upon had been true; it awards the difference in value between what the plaintiff actually received and what he was fraudulently led to believe he would receive.' 'In California, a defrauded party is ordinarily limited to recovering his "out-of-pocket" loss ... .' " (*Alliance Mortgage Co. ~~v. Rothwell, supra, (1995)~~ 10 Cal.4th ~~1226,~~ at p. 1240 ~~[44 Cal.Rptr.2d 352, 900 P.2d 601]~~, internal citations omitted.)

- "Of the two measures the 'out-of-pocket' rule has been termed more consistent with the logic and purpose of the tort form of action (i.e., compensation for loss sustained rather than satisfaction of

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

contractual expectations) while the 'benefit-of-the-bargain' rule has been observed to be a more effective deterrent (in that it contemplates an award even when the property received has a value equal to what was given for it.)" (*Stout v. Turney* (1978) 22 Cal.3d 718, 725 [150 Cal.Rptr. 637, 586 P.2d 1228].)

- "We have previously held that a plaintiff is only entitled to its actual or 'out-of-pocket' losses suffered because of fiduciary's negligent misrepresentation under section 3333. While the measure of damages under section 3333 might be greater for a fiduciary's intentional misrepresentation, we need not address that issue here." (*Alliance Mortgage Co., supra,* 10 Cal.4th at pp. 1249-1250.)

- "The measure of damages for a real estate broker's intentional misrepresentation to a buyer for whom he acts as agent is not limited to the out-of-pocket losses suffered by the buyer. Because the broker is a fiduciary, damages for intentional fraud may be measured by the broader benefit-of-the-bargain rule." (*Fragale, supra,* 110 Cal.App.4th at p. 232.)

- "[T]he measure of damages for fraud by a fiduciary is out-of-pocket damages, not the benefit of the bargain computation normally applicable to contract causes of action." (*Hensley, supra,* 90 Cal.App.4th at p. 1085.)

- "Recognizing a split of authority on the matter, we follow those cases adopting the broader measure of damages under sections 1709 and 3333, a course that is not only consonant with the position we have taken in the past but just. This division has consistently applied the broader measure of damages for fiduciary fraud, refusing to limit damages to the 'out of pocket' measure." (*Salahutdin, supra,* 24 Cal.App.4th at pp. 566–567.)

- "Unlike the 'out of pocket' measure of damages, which are usually calculated at the time of the transaction, 'benefit of the bargain' damages may appropriately be calculated as of the date of discovery of the fraud." (*Salahutdin, supra,* 24 Cal.App.4th at p. 568.)

- "To recover damages for fraud, a plaintiff must have sustained damages proximately caused by the misrepresentation. A damage award for fraud will be reversed where the injury is not related to the misrepresentation." (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1252 [1 Cal.Rptr.2d 301], internal citations omitted.)

- "[O]ne may recover compensation for time and effort expended in reliance on a defendant's misrepresentation." (*Block v. Tobin* (1975) 45 Cal.App.3d 214, 220 [119 Cal.Rptr. 288], internal citations omitted.)

*Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 1710–1717

3 Levy et al., California Torts, Ch. 40, *Fraud and Deceit and Other Business Torts*, § 40.23

23 California Forms of Pleading and Practice, Ch. 269, *Fraud and Deceit* § 269.27 (Matthew Bender)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

10 California Points and Authorities, Ch. 105, *Fraud and Deceit* § 105.131 et seq. (Matthew Bender)

**Preliminary Draft Only -- Not Approved by Judicial Council**

## VF-1900. Intentional Misrepresentation

---

**We answer the questions submitted to us as follows:**

1.    **Did** [*name of defendant*] **make a false representation of an important fact to** [*name of plaintiff*]**?**

       ____ **Yes**   ____ **No**

       **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.    **Did** [*name of defendant*] **know that the representation was false, or did** [*he/she*] **make the representation recklessly and without regard for its truth?**

       ____ **Yes**   ____ **No**

       **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.    **Did** [*name of defendant*] **intend that** [*name of plaintiff*] **rely on the representation?**

       ____ **Yes**   ____ **No**

       **If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.    **Did** [*name of plaintiff*] **reasonably rely on the representation?**

       ____ **Yes**   ____ **No**

       **If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

5.    **Was** [*name of plaintiff*]**'s reliance on** [*name of defendant*]**'s representation a substantial factor in causing harm to** [*name of plaintiff*]**?**

       ____ **Yes**   ____ **No**

       **If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

6.    **What are** [*name of plaintiff*]**'s damages?**

       **[a.**     **Past economic loss**

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

|  |  |  |
|---|---|---|
| [lost earnings | $ _____] | |
| [lost profits | $ _____] | |
| [medical expenses | $ _____] | |
| [other past economic loss | $ _____] | |

**Total Past Economic Damages:  $ _____]**

[b.    **Future economic loss**

|  |  |
|---|---|
| [lost earnings | $ _____] |
| [lost profits | $ _____] |
| [medical expenses | $ _____] |
| [other future economic loss | $ _____] |

**Total Future Economic Damages:  $ _____]**

c.    [Past noneconomic loss, including [physical
        pain/mental suffering:]

$ _____]

d.    [Future noneconomic loss, including [physical
        pain/mental suffering:]

$ _____]

**TOTAL $ _____]**

**Signed:**  _____
             **Presiding Juror**

**Dated:**  _____

**[After it has been signed/After all verdict forms have been signed], deliver this verdict form
to the [clerk/bailiff/judge].**

_New September 2003; Revised April 2007, December 2009_

**Directions for Use**

The special verdict forms in this section are intended only as models. They may need to be modified
depending on the facts of the case.

This verdict form is based on CACI No. 1900, _Intentional Misrepresentation._

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

If specificity is not required, users do not have to itemize all the damages listed in question 6. The breakdown is optional depending on the circumstances.

If there are multiple causes of action, users may wish to combine the individual forms into one form. However, if both intentional misrepresentation and negligent misrepresentation (see CACI No. 1903) are to be presented to the jury in the alternative, the preferred practice would seem to be that this verdict form and VF-1903, *Negligent Misrepresentation*, be kept separate and presented in the alternative.

With respect to the same misrepresentation, question 2 above cannot be answered "yes" and question 3 of VF-1903 cannot also be answered "no."  The jury may continue to answer the next question from one form or the other, but not both.

If both intentional and negligent misrepresentation are before the jury, it is important to distinguish between a statement made recklessly and without regard for the truth (see question 2 above) and one made without reasonable grounds for believing it is true (see CACI No. VF-1903, question 3).  Question 2 of VF-1903 should be included to clarify that the difference is that for negligent misrepresentation, the defendant honestly believes that the statement is true. (See *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407–408 [11 Cal.Rptr.2d 51, 834 P.2d 745].)

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to award prejudgment interest on specific losses that occurred prior to judgment.

86

**Preliminary Draft Only -- Not Approved by Judicial Council**

**VF-1903**.  **Negligent Misrepresentation**

**We answer the questions submitted to us as follows:**

1.    **Did** [*name of defendant*] **make a false representation of an important fact to** [*name of plaintiff*]**?**
      _____ **Yes**  _____ **No**

      **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

**[2.     Did** [*name of defendant*] **honestly believe that the representation was true when [he/she] made it?**
      _____ **Yes**  _____ **No**

      **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.]**

~~2~~3.    **Did** [*name of defendant*] **have reasonable grounds for believing the representation was true when [he/she] made it?**
      _____ **Yes**  _____ **No**

      **If your answer to question 2 is no, then answer question 3. If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form.**

~~3~~4.    **Did** [*name of defendant*] **intend that** [*name of plaintiff*] **rely on the representation?**
      _____ **Yes**  _____ **No**

      **If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

~~4~~5.    **Did** [*name of plaintiff*] **reasonably rely on the representation?**
      _____ **Yes**  _____ **No**

      **If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

~~5~~6.    **Was** [*name of plaintiff*]**'s reliance on** [*name of defendant*]**'s representation a substantial factor in causing harm to** [*name of plaintiff*]**?**
      _____ **Yes**  _____ **No**

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

**If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

**6~~7~~.** **What are [*name of plaintiff*]'s damages?**

    **[a.** **Past economic loss**

        **[lost earnings**         **$ _____]**
        **[lost profits**          **$ _____]**
        **[medical expenses**     **$ _____]**
        **[other past economic loss**   **$ _____]**
                **Total Past Economic Damages:  $ _____]**

    **[b.** **Future economic loss**

        **[lost earnings**         **$ _____]**
        **[lost profits**          **$ _____]**
        **[medical expenses**     **$ _____]**
        **[other future economic loss  $ _____]**
                **Total Future Economic Damages:  $ _____]**

    **[c.** **Past noneconomic loss, including [physical pain/mental suffering:]**

                      **$ _____]**

    **[d.** **Future noneconomic loss, including [physical pain/mental suffering:]**

                      **$ _____]**

                      **TOTAL $ _____**

**Signed:** _____
        **Presiding Juror**

**Dated:** _____

**[After it has been signed/After all verdict forms have been signed], deliver this verdict form to the [clerk/bailiff/judge].**

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

*New September 2003; Revised April 2007, December 2009*

### Directions for Use

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 1903, *Negligent Misrepresentation.*

If specificity is not required, users do not have to itemize all the damages listed in question 7. The breakdown is optional depending on the circumstances.

If there are multiple causes of action, users may wish to combine the individual forms into one form. However, if both negligent misrepresentation and intentional misrepresentation (see CACI No. 1903) are to be presented to the jury in the alternative, the preferred practice would seem to be that this verdict form and VF-1900, *Intentional Misrepresentation,* be kept separate and presented in the alternative.

With respect to the same misrepresentation, question 23 above cannot be answered "no" and question 2 of VF-1900 cannot also be answered "yes."  The jury may continue to answer the next question from one form or the other, but not both.

If both intentional and negligent misrepresentation are before the jury, it is important to distinguish between a statement made without reasonable grounds for believing it is true (see question 3 above) and one made recklessly and without regard for the truth (see CACI No. VF-1900, question 2).   Include question 2 to clarify that the difference is that for negligent misrepresentation, the defendant honestly believes that the statement is true. (See *Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 407–408 [11 Cal.Rptr.2d 51, 834 P.2d 745].)

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to award prejudgment interest on specific losses that occurred prior to judgment.

**Preliminary Draft Only -- Not Approved by Judicial Council**

### 2100. Conversion—Essential Factual Elements

---

[*Name of plaintiff*] **claims that** [*name of defendant*] **wrongfully exercised control over** [**his/her/its**] **personal property. To establish this claim,** [*name of plaintiff*] **must prove all of the following:**

1. **That** [*name of plaintiff*] [**owned/possessed/had a right to possess**] [**a/an**] [*insert item of personal property*]**;**

2. **That** [*name of defendant*] **intentionally** [*insert one or more of the following:*]

   [**took possession of the** [*insert item of personal property*] **for a significant period of time;**] [**or**]

   [**prevented** [*name of plaintiff*] **from having access to the** [*insert item of personal property*] **for a significant period of time;**] [**or**]

   [**destroyed the** [*insert item of personal property*]**;**] [**or**]

   [**refused to return** [*name of plaintiff*]**'s** [*insert item of personal property*] **after** [*name of plaintiff*] **demanded its return.**]

3. **That** [*name of plaintiff*] **did not consent;**

4. **That** [*name of plaintiff*] **was harmed; and**

5. **That** [*name of defendant*]**'s conduct was a substantial factor in causing** [*name of plaintiff*]**'s harm.**

---

*New September 2003; Revised December 2009*

### Directions for Use

The last option for element 2 may be used if the defendant's original possession of the property was not tortious. (See *Atwood v. S. Cal. Ice Co.* (1923) 63 Cal.App. 343, 345 [218 P. 283].)

### Sources and Authority

- "[Cross-Cross-complainant] maintains that he alleged the essential elements of a conversion action, which ' "are the plaintiff's ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages. It is not necessary that there be a manual taking of the property; it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

property to his own use." …' " (*Shopoff & Cavallo LLP v. Hyon* (2008) 167 Cal.App.4th 1489, 1507 [85 Cal.Rptr.3d 268].)

- "Conversion is a strict liability tort. The foundation of the action rests neither in the knowledge nor the intent of the defendant. Instead, the tort consists in the breach of an absolute duty; the act of conversion itself is tortious. Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." (*Burlesci v. Petersen* (1998) 68 Cal.App.4th 1062, 1066 [80 Cal.Rptr.2d 704], internal citations omitted.)

- "[I]t is generally acknowledged that conversion is a tort that may be committed only with relation to personal property and not real property." (*Munger v. Moore* (1970) 11 Cal.App.3d 1, 7 [89 Cal.Rptr. 323], disagreeing with *Katz v. Enos* (1945) 68 Cal.App.2d 266, 269 [156 P.2d 461].)

- "The first element of that cause of action is his ownership or right to possession of the property at the time of the conversion. Once it is determined that [plaintiff] has a right to reinstate the contract, he has a right to possession of the vehicle and standing to bring conversion. Unjustified refusal to turn over possession on demand constitutes conversion even where possession by the withholder was originally obtained lawfully and of course so does an unauthorized sale." (*Cerra v. Blackstone* (1985) 172 Cal.App.3d 604, 609 [218 Cal.Rptr. 15], internal citations omitted.)

- " 'To establish a conversion, plaintiff must establish an actual interference with his ownership or right of possession. … Where plaintiff neither has title to the property alleged to have been converted, nor possession thereof, he cannot maintain an action for conversion.' " (*Moore v. Regents of the Univ. of Cal.* (1990) 51 Cal.3d 120, 136 [271 Cal.Rptr. 146, 793 P.2d 479], internal citations omitted.)

- "In a conversion action the plaintiff need show only that he was entitled to possession at the time of conversion; the fact that plaintiff regained possession of the converted property does not prevent him from suing for damages for the conversion." (*Enterprise Leasing Corp. v. Shugart Corp.* (1991) 231 Cal.App.3d 737, 748 [282 Cal.Rptr. 620], internal citation omitted.)

- "It is clear that legal title to property is not a requisite to maintain an action for damages in conversion. To mandate a conversion action 'it is not essential that plaintiff shall be the absolute owner of the property converted but she must show that she was entitled to immediate possession at the time of conversion.' " (*Hartford Financial Corp. v. Burns* (1979) 96 Cal.App.3d 591, 598 [158 Cal.Rptr. 169], internal citation omitted.)

- "[T]he law is well settled that there can be no conversion where an owner either expressly or impliedly assents to or ratifies the taking, use or disposition of his property." (*Farrington v. A. Teichert & Son, Inc.* (1943) 59 Cal.App.2d 468, 474 [139 P.2d 80], internal citations omitted.)

- "As to intentional invasions of the plaintiff's interests, his consent negatives the wrongful element of the defendant's act, and prevents the existence of a tort. 'The absence of lawful consent,' said Mr. Justice Holmes, 'is part of the definition of an assault.' The same is true of false imprisonment, conversion, and trespass." (*Tavernier v. Maes* (1966) 242 Cal.App.2d 532, 552 [51 Cal.Rptr. 575], internal citations omitted.)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

- " 'Money cannot be the subject of a cause of action for conversion unless there is a specific, identifiable sum involved, such as where an agent accepts a sum of money to be paid to another and fails to make the payment.' A 'generalized claim for money [is] not actionable as conversion.' " (*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 [58 Cal.Rptr.3d 516], internal citations omitted.)

- " 'Conversion is any act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein.' One who buys property in good faith from a party lacking title and the right to sell may be liable for conversion. The remedies for conversion include specific recovery of the property, damages, and a quieting of title." (*State Farm Mut. Auto. Ins. Co. v. Department of Motor Vehicles*  (1997) 53 Cal.App.4th 1076, 1081–1082 [62 Cal.Rptr.2d 178], internal citations omitted.)

- "Conversion is the wrongful exercise of dominion over the personal property of another. The act must be knowingly or intentionally done, but a wrongful intent is not necessary. Because the act must be knowingly done, 'neither negligence, active or passive, nor a breach of contract, even though it result in injury to, or loss of, specific property, constitutes a conversion.' It follows therefore that mistake, good faith, and due care are ordinarily immaterial, and cannot be set up as defenses in an action for conversion." (*Taylor v. Forte Hotels International* (1991) 235 Cal.App.3d 1119, 1124 [1 Cal.Rptr.2d 189], internal citations omitted.)

- "In order to establish a conversion, the plaintiff 'must show an intention or purpose to convert the goods and to exercise ownership over them, or to prevent the owner from taking possession of his property.' Thus, a necessary element of the tort is an intent to exercise ownership over property which belongs to another. For this reason, conversion is considered an intentional tort." (*Collin v. American Empire Insurance Co.* (1994) 21 Cal.App.4th 787, 812 [26 Cal.Rptr.2d 391], internal citations omitted.)

- "A conversion can occur when a willful failure to return property deprives the owner of possession." (*Fearon v. Department of Corrections* (1984) 162 Cal.App.3d 1254, 1257 [209 Cal.Rptr. 309], internal citation omitted.)

- "A demand for return of the property is not a condition precedent to institution of the action when possession was originally acquired by a tort as it was in this case." (*Igauye v. Howard* (1952) 114 Cal.App.2d 122, 127 [249 P.2d 558].)

- " 'Negligence in caring for the goods is not an act of dominion over them such as is necessary to make the bailee liable as a converter.' Thus a warehouseman's negligence in causing a fire which destroyed the plaintiffs' goods will not support a conversion claim." (*Gonzales v. Pers. Storage* (1997) 56 Cal.App.4th 464, 477 [65 Cal.Rptr.2d 473], internal citations omitted.)

- "Although damages for conversion are frequently the equivalent to the damages for negligence, i.e., specific recovery of the property or damages based on the value of the property, negligence is no part of an action for conversion." (*Taylor, supra*, 235 Cal.App.3d at p. 1123, internal citation omitted.)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

- "A person without legal title to property may recover from a converter if the plaintiff is responsible to the true owner, such as in the case of a bailee or pledgee of the property." (*Department of Industrial Relations v. UI Video Stores, Inc.* (1997) 55 Cal.App.4th 1084, 1096 [64 Cal.Rptr.2d 457], internal citation omitted.)

*Secondary Sources*

5 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 699, ~~720~~ 719

3 Levy et al., California Torts, Ch. 40, *Fraud and Deceit and Other Business Torts*, § 40.40 (Matthew Bender)

13 California Forms of Pleading and Practice, Ch. 150, *Conversion*, §§ 150.10, 150.40–150.41 (Matthew Bender)

5 California Points and Authorities, Ch. 51, *Conversion*, § 51.21[3][b] (Matthew Bender)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

---

### VF-2100.  Conversion

---

**We answer the questions submitted to us as follows:**

1.  **Did** [*name of plaintiff*] **[own/possess/have a right to possess] a** [*insert description of personal property*]**?**
    _____ **Yes**  _____ **No**

    **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.  **Did** [*name of defendant*] **intentionally [[take possession of/prevent** [*name of plaintiff*] **from having access to] the** [*insert description of personal property*] **for a significant period of time]/[destroy the** [*insert description of personal property*]/<span style="color:red">**refuse to return** [*name of plaintiff*]**'s** [*insert description of personal property*] **after** [*name of plaintiff*] **demanded its return**</span>**]?**
    _____ **Yes**  _____ **No**

    **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.  **Did** [*name of plaintiff*] **consent?**
    _____ **Yes**  _____ **No**

    **If your answer to question 3 is no, then answer question 4. If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.  **Was** [*name of plaintiff*] **harmed?**
    _____ **Yes**  _____ **No**

    **If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

5.  **Was** [*name of defendant*]**'s conduct a substantial factor in causing** [*name of plaintiff*]**'s harm?**
    _____ **Yes**  _____ **No**

    **If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

6.  **What are** [*name of plaintiff*]**'s damages?**

**Preliminary Draft Only -- Not Approved by Judicial Council**

**TOTAL $ _____**

**Signed:** _____

             **Presiding Juror**

**Dated:** _____

**[After it has been signed/After all verdict forms have been signed], deliver this verdict form to the [clerk/bailiff/judge].**

---

*New December 2005; Revised December 2009*

### Directions for Use

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 2100, *Conversion—Essential Factual Elements.*

If the case involves multiple items of personal property as to which the evidence differs, users may need to modify question 2 to focus the jury on the different items.

If there are multiple causes of action, users may wish to combine the individual forms into one form.

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

### 2540.  Disability Discrimination—Disparate Treatment—Essential Factual Elements

[*Name of plaintiff*] claims that [*name of defendant*] wrongfully discriminated against [him/her] based on [his/her] [perceived] [[history of] [a]] [*select term to describe basis of limitations, e.g., physical condition*][~~physical/mental] disability~~. To establish this claim, [*name of plaintiff*] must prove all of the following:

1. That [*name of defendant*] was [an employer/[*other covered entity*]];

2. That [*name of plaintiff*] [was an employee of [*name of defendant*]/applied to [*name of defendant*] for a job/[*describe other covered relationship to defendant*]];

3. [That [*name of defendant*] [knew/thought] that [*name of plaintiff*] had [a] [*e.g., physical condition*][~~a [physical/mental] [condition/disease/disorder/[~~*describe health condition*~~]]~~ [that limited [*insert major life activity*]];] [or]

   [That [*name of defendant*] [knew/thought] that [*name of plaintiff*] had a history of having [a] [*e.g., physical condition*]~~a [physical/mental] [condition/disease/disorder/[~~*describe health condition*~~]]~~ [that limited [*insert major life activity*]];]

4. That [*name of plaintiff*] was able to perform the essential job duties [with reasonable accommodation for [his/her] [*e.g., physical condition*][~~condition/disease/disorder/[~~*describe health condition*~~]]~~;

5. That [*name of defendant*] [discharged/refused to hire/[*other adverse employment action*]] [*name of plaintiff*];

6. [That [*name of plaintiff*]'s [[history of [a]] [*e.g., physical condition*] [~~physical/mental] [condition/disease/disorder/[~~*describe health condition*~~]]~~ was a motivating reason for the [discharge/refusal to hire/[*other adverse employment action*]];] [or]

   [That [*name of defendant*]'s belief that [*name of plaintiff*] had [[a history of [a]] [*e.g., physical condition*]~~the [physical/mental] [condition/disease/disorder/[~~*describe health condition*~~]]~~ was a motivating reason for the [discharge/refusal to hire/*other adverse employment action*];]

7. That [*name of plaintiff*] was harmed; and

8. That [*name of defendant*]'s [decision/conduct] was a substantial factor in causing [*name of plaintiff*]'s harm.

*New September 2003; Revised June 2006, December 2007, April 2009, December 2009*

**Directions for Use**

*Copyright Judicial Council of California*
95

**Preliminary Draft Only -- Not Approved by Judicial Council**

Select a term to use throughout to describe the source of the plaintiff's limitations.  It may be a statutory term such as "physical disability," "mental disability," or "medical condition." (See Gov. Code, § 12940(a).)  Or it may be a general term such as "condition," "disease," or "disorder."  Or it may be a specific health condition such as "diabetes."

If For element 1 is given, the court may need to instruct the jury on the statutory definition of "employer" under the FEHA. Other covered entities under the FEHA include labor organizations, employment agencies, and apprenticeship training programs. (See Gov. Code, § 12940(a)–(d).)

Under element 3, select the claimed basis of discrimination: an actual disability, a record history of a disability, and/or a perceived disability. If the only claimed basis of discrimination is a perceived disability, then delete element 4. In the introductory paragraph, include "perceived" or "history of" if the claim of discrimination is based on a perceived disability or a history of disability.

If The FEHA also prohibits medical-condition discrimination as defined by statutebut defines "medical condition" narrowly (see Gov. Code, § 12926(h)) is alleged, omit "that limited [*insert major life activity*]" in element 3. (Compare Gov. Code, § 12926(h) with Gov. Code, § 12926(i), (k) [no requirement that medical condition limit major life activity].) This instruction may be modified for use in a medical-condition discrimination claim under the FEHA.

Regarding element 4, it is now settled that the ability to perform the essential duties of the job is an element of the plaintiff's burden of proof. (See *Green v. State of California* (2007) 42 Cal.4th 254 [64 Cal.Rptr.3d 390, 165 P3d 118].)

If the existence of a qualifying disability is disputed, additional instructions defining "physical disability," "mental disability," and "medical condition" may be required. (See Gov. Code, § 12926(h), (i), (k).)the court must tailor an instruction to the evidence in the case.

**Sources and Authority**

- Government Code section 12940(a) provides that it is an unlawful employment practice "[f]or an employer, because of the ... physical disability, mental disability, [or] medical condition ... of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."

- Government Code section 12940(a)(1) also provides that the FEHA "does not prohibit an employer from refusing to hire or discharging an employee with a physical or mental disability ... where the employee, because of his or her physical or mental disability, is unable to perform his or her essential duties even with reasonable accommodations, or cannot perform those duties in a manner that would not endanger his or her health or safety or the health or safety of others even with reasonable accommodations."

- For a definition of "medical condition," see Government Code section 12926(h).

*Copyright Judicial Council of California*

**Preliminary Draft Only -- Not Approved by Judicial Council**

- For a definition of "mental disability," see Government Code section 12926(i).

- For a definition of "physical disability," see Government Code section 12926(k).

- Government Code section 12926.1(c) provides, in part: "[T]he Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a 'substantial limitation.' This distinction is intended to result in broader coverage under the law of this state than under that federal act. Under the law of this state, whether a condition limits a major life activity shall be determined without respect to any mitigating measures, unless the mitigating measure itself limits a major life activity, regardless of federal law under the Americans with Disabilities Act of 1990. Further, under the law of this state, 'working' is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments."

- "[T]he purpose of the 'regarded-as' prong is to protect individuals rejected from a job because of the 'myths, fears and stereotypes' associated with disabilities. In other words, to find a perceived disability, the perception must stem from a false idea about the existence of or the limiting effect of a disability." (*Diffey v. Riverside County Sheriff's Dept.* (2000) 84 Cal.App.4th 1031, 1037 [101 Cal.Rptr.2d 353], internal citation omitted.)

- "Summary adjudication of the section 12940(a) claim … turns on … whether [plaintiff] could perform the essential functions of the relevant job with or without accommodation. [Plaintiff] does not dispute that she was unable to perform the essential functions of her *former* position as a clothes fitter with or without accommodation.  Under federal law, however, when an employee seeks accommodation by being reassigned to a vacant position in the company, the employee satisfies the 'qualified individual with a disability' requirement by showing he or she can perform the essential functions of the *vacant position* with or without accommodation.  The position must exist and be vacant, and the employer need not promote the disabled employee. We apply the same rule here. To prevail on summary adjudication of the section 12940(a) claim, [defendant] must show there is no triable issue of fact about [plaintiff]'s ability, with or without accommodation, to perform the essential functions of an available vacant position that would not be a promotion." (*Nadaf-Rahrov v. The Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 965 [83 Cal.Rptr.3d 190], original italics, internal citations omitted.)

- "[Defendant] asserts the statute's 'regarded as' protection is limited to persons who are denied or who lose jobs based on an employer's reliance on the 'myths, fears or stereotypes' frequently associated with disabilities. … However, the statutory language does not expressly restrict FEHA's protections to the narrow class to whom [defendant] would limit its coverage. To impose such a restriction would exclude from protection a large group of individuals, like [plaintiff], with more mundane long-term medical conditions, the significance of which is exacerbated by an employer's failure to reasonably accommodate. Both the policy and language of the statute offer protection to a person who is not actually disabled, but is wrongly perceived to be. The statute's plain language leads to the conclusion that the 'regarded as' definition casts a broader net and protects *any* individual 'regarded' or 'treated' by an employer 'as having, or having had, any physical condition that makes achievement of a major life activity difficult' or may do so in the future. We agree most individuals who sue exclusively

**Preliminary Draft Only -- Not Approved by Judicial Council**

under this definitional prong likely are and will continue to be victims of an employer's 'mistaken' perception, based on an unfounded fear or stereotypical assumption. Nevertheless, FEHA's protection is nowhere expressly premised on such a factual showing, and we decline the invitation to import such a requirement." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 53 [43 Cal.Rptr.3d 874], internal citations omitted, original italics.)

- " 'An adverse employment decision cannot be made "because of" a disability, when the disability is not known to the employer. Thus, in order to prove [a discrimination] claim, a plaintiff must prove the employer had knowledge of the employee's disability when the adverse employment decision was made. … While knowledge of the disability can be inferred from the circumstances, knowledge will only be imputed to the employer when the fact of disability is the only reasonable interpretation of the known facts. "Vague or conclusory statements revealing an unspecified incapacity are not sufficient to put an employer on notice of its obligations … ." … ' "(*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1008 [93 Cal.Rptr.2d 338].)~~An adverse employment decision cannot be made 'because of' a disability when the disability is not known to the employer. ... [A] plaintiff must prove the employer had knowledge of the employee's disability when the adverse employment decision was made." (*Brundage v. Hahn* (1997) 57 Cal.App.4th 228, 236–237 [66 Cal.Rptr.2d 830].)~~

***Secondary Sources***

8 Witkin, Summary of California Law (10th ed. 2005) Constitutional Law, §§ 936, 937

Chin et al., California Practice Guide: Employment Litigation (The Rutter Group) ¶¶ 9:2160–9:2241

1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, §§ 2.78–2.80

2 Wilcox, California Employment Law, Ch. 41, *Substantive Requirements Under Equal Employment Opportunity Laws*, § 41.32[2][c] (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 115, *Civil Rights: Employment Discrimination*, §§ 115.14, 115.23, 115.34, 115.77[3][a] (Matthew Bender)

California Civil Practice: Employment Litigation (Thomson West) § 2:46

Preliminary Draft Only -- Not Approved by Judicial Council

**2541.  Disability Discrimination—Reasonable Accommodation—Essential Factual Elements (Gov. Code, § 12940(m))**

---

[*Name of plaintiff*] **claims that** [*name of defendant*] **failed to reasonably accommodate** [*his/her*] [*select term to describe basis of limitations, e.g., physical condition*]~~physical/mental~~ ~~[condition/disease/disorder/[~~*describe health condition*~~]~~]. **To establish this claim,** [*name of plaintiff*] **must prove all of the following:**

1. **That** [*name of defendant*] **was** [**an employer/[***other covered entity*]]**;

2. **That** [*name of plaintiff*] [**was an employee of** [*name of defendant*]**/applied to** [*name of defendant*] **for a job/[***describe other covered relationship to defendant*]]**;

3. **That** [[*name of defendant*] **thought that**] [*name of plaintiff*] **had** **[a]** [*e.g., physical condition*]~~a [physical/mental] [condition/disease/disorder]~~ [**that limited** [*insert major life activity*]]**;**

[4. **That** [*name of defendant*] **knew of** [*name of plaintiff*]**'s** ~~[physical/mental]~~ [*e.g., physical condition* ~~condition/disease/disorder/[~~*describe health condition*~~]~~] [**that limited** [*insert major life activity*]]**;**]

5. **That** [*name of plaintiff*] **was able to perform the essential job duties with reasonable accommodation for** [*his/her*] [*e.g., physical condition* ~~condition/disease/disorder/[~~*describe health condition*~~]~~]**;**

6. **That** [*name of defendant*] **failed to provide reasonable accommodation for** [*name of plaintiff*]**'s** ~~[physical/mental]~~ [*e.g., physical condition* ~~condition/disease/disorder/[~~*describe health condition*~~]~~]**;**

7. **That** [*name of plaintiff*] **was harmed; and**

8. **That** [*name of defendant*]**'s failure to provide reasonable accommodation was a substantial factor in causing** [*name of plaintiff*]**'s harm.**

[**In determining whether** [*name of plaintiff*]**'s** [*e.g., physical condition* ~~condition/disease/disorder/[~~*describe health condition*~~]~~] **limits** [*insert major life activity*]**, you must consider the** [*e.g., physical condition* ~~condition/disease/disorder/~~*describe health condition*] [**in its unmedicated state/without assistive devices/[***describe mitigating measures*]]**.**]

---

*New September 2003; Revised April 2007, December 2007, April 2009*, *December 2009*

**Directions for Use**

Select a term to use throughout to describe the source of the plaintiff's limitations.  It may be a statutory

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

term such as "physical disability," "mental disability," or "medical condition." (See Gov. Code, §
12940(a).)  Or it may be a general term such as "condition," "disease," or "disorder."  Or it may be a
specific health condition such as "diabetes."

If For element 1 is given, the court may need to instruct the jury on the statutory definition of "employer"
under the FEHA. Other covered entities under the FEHA include labor organizations, employment
agencies, and apprenticeship training programs. (See Gov. Code, § 12940(a)–(d).)

If medical-condition discrimination as defined by statute (see Gov. Code, § 12926(h)) is alleged, omit
"that limited [*insert major life activity*]" in elements 3 and 4 and do not include the last paragraph.
(Compare Gov. Code, § 12926(h) with Gov. Code, § 12926(i), (k) [no requirement that medical condition
limit major life activity].)

In a case of perceived disability, include "[*name of defendant*] thought that" in element 3, and delete
optional element 4.  In a case of actual disability, do not include "[*name of defendant*] thought that" in
element 3, and give element 4.

If the existence of a qualifying disability is disputed, additional instructions defining "physical
disability," "mental disability," and "medical condition" may be required. (See Gov. Code, § 12926(h),
(i), (k).)

The California Supreme Court has held that under Government Code section 12940(a), the plaintiff is
required to prove that he or she has the ability to perform the essential duties of the job with or without
reasonable accommodation. (See *Green v. State of California* (2007) 42 Cal.4th 254, 260 [64 Cal.Rptr.3d
390, 165 P3d 118].)  There is apparently some divergence of authority as to whether this rule applies to
cases under Government Code section 12940(m), and if so, which party bears the burden of proof. (See
*id.* at p. 265; compare *Nadaf-Rahrov v. The Neiman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952,
973–979 [83 Cal.Rptr.3d 190] with *Bagatti v. Department of Rehabilitation* (2002) 97 Cal.App.4th 344,
360–363 [118 Cal.Rptr.2d 443].)  If the court decides that the plaintiff does not bear the burden of proof,
omit element 5.

If the plaintiff bears the burden of proof, there may also be an issue of how far the employee must go
with regard to whether a reasonable accommodation was possible.  The rule has been that the employer
has an affirmative duty to make known to the employee other suitable job opportunities and to determine
whether the employee is interested in, and qualified for, those positions, if the employer can do so
without undue hardship or if the employer offers similar assistance or benefit to other disabled or
nondisabled employees or has a policy of offering such assistance or benefit to any other employees.
(*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 950–951 [62 Cal.Rptr.2d 142]; see also
*Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 243 [35 Cal.Rptr.3d 837];
*Hanson v. Lucky Stores* (1999) 74 Cal.App.4th 215, 226 [87 Cal.Rptr.2d 487].)  In contrast, one court has
said that it is the employee's burden to prove that a reasonable accommodation could have been made,
i.e., that he or she was qualified for a position in light of the potential accommodation. (*Nadaf-Rahrov,
supra,* 166 Cal.App.4th at p. 978.)  The question of whether the employee has to present evidence of
other suitable job descriptions and prove that a vacancy existed for a position that the employee could do
with reasonable accommodation may not be fully resolved.

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

No element has been included that requires the plaintiff to specifically request reasonable accommodation. Unlike Government Code section 12940(n) on the interactive process (see CACI No. 2546, *Disability Discrimination—Reasonable Accommodation—Failure to Engage in Interactive Process*), section 12940(m) does not specifically require that the employee request reasonable accommodation; it requires only that the employer know of the disability. (See *Prilliman, supra,* 53 Cal.App.4th at pp. 950–951; but see *Avila v. Continental Airlines, Inc.* (2008) 165 Cal.App.4th 1237, 1252 [82 Cal.Rptr.3d 440] [employee must request an accommodation].)

## Sources and Authority

- Government Code section 12940(m) provides that it is an unlawful employment practice "[f]or an employer or other entity covered by this part to fail to make reasonable accommodation for the known physical or mental disability of an applicant or employee. Nothing in this subdivision or in ... subdivision (a) shall be construed to require an accommodation that is demonstrated by the employer or other covered entity to produce undue hardship to its operation."

- "Any employer or other covered entity shall make reasonable accommodation to the disability of any individual with a disability if the employer or other covered entity knows of the disability, unless the employer or other covered entity can demonstrate that the accommodation would impose an undue hardship." (Cal. Code Regs., tit. 2, § 7293.9.)

- Government Code section 12926(n) provides:

    "Reasonable accommodation" may include either of the following:

    (1)     Making existing facilities used by employees readily accessible to, and usable by, individuals with disabilities.

    (2)     Job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

- Government Code section 12940(n) provides that it is an unlawful employment practice "[f]or an employer or other entity covered by this part to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

- For a definition of "medical condition," see Government Code section 12926(h).

- For a definition of "mental disability," see Government Code section 12926(i).

- For a definition of "physical disability," see Government Code section 12926(k).

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

- Government Code section 12926.1(c) provides, in part: "[T]he Legislature has determined that the definitions of 'physical disability' and 'mental disability' under the law of this state require a 'limitation' upon a major life activity, but do not require, as does the Americans with Disabilities Act of 1990, a 'substantial limitation.' This distinction is intended to result in broader coverage under the law of this state than under that federal act. Under the law of this state, whether a condition limits a major life activity shall be determined without respect to any mitigating measures, unless the mitigating measure itself limits a major life activity, regardless of federal law under the Americans with Disabilities Act of 1990. Further, under the law of this state, 'working' is a major life activity, regardless of whether the actual or perceived working limitation implicates a particular employment or a class or broad range of employments."

- "The question now arises whether it is the employees' burden to prove that a reasonable accommodation could have been made, i.e., that they were qualified for a position in light of the potential accommodation, or the employers' burden to prove that no reasonable accommodation was available, i.e., that the employees were not qualified for any position because no reasonable accommodation was available. [¶¶]  Applying *Green's* burden of proof analysis to section 12940(m), we conclude that the burden of proving ability to perform the essential functions of a job with accommodation should be placed on the plaintiff under this statute as well. First, … an employee's ability to perform the essential functions of a job is a prerequisite to liability under section 12940(m). Second, the Legislature modeled section 12940(m) on the federal reasonable accommodation requirement (adopting almost verbatim the federal statutory definition of 'reasonable accommodation' by way of example). Had the Legislature intended the employer to bear the burden of proving ability to perform the essential functions of the job, contrary to the federal allocation of the burden of proof, … it could have expressly provided for that result, but it did not. Finally, general evidentiary principles support allocating the burden of proof on this issue to the plaintiff." (*Nadaf-Rahrov, supra,* 166 Cal.App.4th at pp. 977–978, internal citations omitted.)

- "Although no particular form of request is required, ' '[t]he duty of an employer reasonably to accommodate an employee's handicap does not arise until the employer is 'aware of respondent's disability and physical limitations. … ' ' ' '[T]he employee can't expect the employer to read his mind and know he secretly wanted a particular accommodation and sue the employer for not providing it. Nor is an employer ordinarily liable for failing to accommodate a disability of which it had no knowledge. …" … ' " (*Avila, supra,* 165 Cal.App.4th at pp. 1252–1253, internal citations omitted.)

- "Employers must make reasonable accommodations to the disability of an individual unless the employer can demonstrate that doing so would impose an 'undue hardship.' " (*Prilliman*, *supra,* 53 Cal.App.4th at p. 947.)

- " 'Ordinarily the reasonableness of an accommodation is an issue for the jury.' " (*Prilliman*, *supra*, 53 Cal.App.4th at p. 954, internal citation omitted.)

- "[T]he duty of an employer to provide reasonable accommodation for an employee with a disability is broader under the FEHA than under the ADA." (*Bagatti, supra,* 97 Cal.App.4th at p. 362.)

- "Under the FEHA ... an employer is relieved of the duty to reassign a disabled employee whose

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

limitations cannot be reasonably accommodated in his or her current job only if reassignment would impose an 'undue hardship' on its operations or if there is no vacant position for which the employee is qualified." (*Spitzer v. Good Guys, Inc.* (2000) 80 Cal.App.4th 1376, 1389 [96 Cal.Rptr.2d 236].)

- "On these issues, which are novel to California and on which the federal courts are divided, we conclude that employers must reasonably accommodate individuals falling within any of FEHA's statutorily defined 'disabilities,' including those 'regarded as' disabled, and must engage in an informal, interactive process to determine any effective accommodations." (*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 55 [43 Cal.Rptr.3d 874].)

*Secondary Sources*

8 Witkin, Summary of California Law (10th ed. 2005) Constitutional Law, § 762

Chin et al., California Practice Guide: Employment Litigation (The Rutter Group) ¶¶ 9:2250–9:2285, 9:2345–9:2347

1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, § 2.79

2 Wilcox, California Employment Law, Ch. 41, *Substantive Requirements Under Equal Employment Opportunity Laws*, §§ 41.32[2][c], 41.51[3][a]–[b] (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 115, *Civil Rights: Employment Discrimination*, §§ 115.22, 115.35, 115.92 (Matthew Bender)

California Civil Practice: Employment Litigation (Thomson West) § 2:50

Preliminary Draft Only -- Not Approved by Judicial Council

### 2546.  Disability Discrimination—Reasonable Accommodation—Failure to Engage in Interactive Process (Gov. Code, § 12940(n))

[*Name of plaintiff*] **contends that** [*name of defendant*] **failed to engage in a** ~~good~~ good- **faith, interactive process with** [**him/her**] **to determine whether it would be possible to implement effective reasonable accommodations so that** [*name of plaintiff*] [*insert job requirements requiring accommodation*]. **In order to establish this claim,** [*name of plaintiff*] **must prove the following:**

1.  **That** [*name of defendant*] **was** [**an employer/**[*other covered entity*]**];**

2.  **That** [*name of plaintiff*] [**was an employee of** [*name of defendant*]**/applied to** [*name of defendant*] **for a job/**[*describe other covered relationship to defendant*]**];**

3.  **That** [*name of plaintiff*] **had** [**a**] [*select term to describe basis of limitations, e.g., physical condition***physical disability/mental disability/medical condition**] **that was known to** [*name of defendant*]**;**

4.  **That** [*name of plaintiff*] **requested that** [*name of defendant*] **make reasonable accommodation for** [**his/her**] [*e.g., physical condition***disability/condition**] **so that** [**he/she**] **would be able to perform the essential job requirements;**

5.  **That** [*name of plaintiff*] **was willing to participate in an interactive process to determine whether reasonable accommodation could be made so that** [**he/she**] **would be able to perform the essential job requirements;**

6.  **That** [*name of defendant*] **failed to participate in a timely good-faith interactive process with** [*name of plaintiff*] **to determine whether reasonable accommodation could be made;**

7.  **That** [*name of plaintiff*] **was harmed; and**

8.  **That** [*name of defendant*]**'s failure to engage in a good-faith interactive process was a substantial factor in causing** [*name of plaintiff*]**'s harm.**

*New December 2007; Revised April 2009, December 2009*

### Directions for Use

In elements 3 and 4, select a term to describe the source of the plaintiff's limitations.  It may be a statutory term such as "physical disability," "mental disability," or "medical condition." (See Gov. Code, § 12940(a).)  Or it may be a general term such as "condition," "disease," or "disorder."  Or it may be a specific health condition such as "diabetes."

Modify elements 3 and 4, as necessary, if the employer perceives the employee to have a disability.  (See

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

*Gelfo v. Lockheed Martin Corp.* (2006) 140 Cal.App.4th 34, 61, fn. 21 [43 Cal.Rptr.3d 874].)

In element 4, specify the position at issue and the reason why some reasonable accommodation was needed.  In element 5, you may add the specific accommodation requested, though the focus of this cause of action is on the failure to discuss, not the failure to provide.

For an instruction on a cause of action for failure to make reasonable accommodation, see CACI No. 2541, *Disability Discrimination—Reasonable Accommodation—Essential Factual Elements*.  For an instruction defining "reasonable accommodation," see CACI No. 2542, *Disability Discrimination— "Reasonable Accommodation" Explained*.

There is a split of authority as to whether the employee must also prove that reasonable accommodation was possible before there is a violation for failure to engage in the interactive process. (Compare *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424–425 [69 Cal.Rptr.3d 1] [jury's finding that no reasonable accommodation was possible is not inconsistent with its finding of liability for refusing to engage in interactive process]. ] and *Claudio v. Regents of the University of California* (2005) 134 Cal.App.4th 224, 243 [35 Cal.Rptr.3d 837] with *Nadaf-Rahrov v. The Nieman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 980–985 [83 Cal.Rptr.3d 190] [employee who brings a section 12940(n) claim bears the burden of proving a reasonable accommodation was available before the employer can be held liable under the statute]; see also *Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1018–1019 [93 Cal.Rptr.3d 338] [attempting to reconcile conflict].)

**Sources and Authority**

- Government Code section 12940(n) provides that it is an unlawful employment practice, unless based on a bona fide occupational qualification or on applicable security regulations established by the United States or the State of California, "[f]or an employer or other entity covered by [the FEHA] to fail to engage in a timely, good faith, interactive process with the employee or applicant to determine effective reasonable accommodations, if any, in response to a request for reasonable accommodation by an employee or applicant with a known physical or mental disability or known medical condition."

- Government Code section 12926.1(e) provides that the Legislature affirms the importance of the interactive process between the applicant or employee and the employer in determining a reasonable accommodation, as this requirement has been articulated by the Equal Employment Opportunity Commission in its interpretive guidance of the Americans with Disabilities Act of 1990.

- The Interpretive Guidance on Title title I of the Americans With Disabilities Act, Title title 29 Code of Federal Regulations Part 1630 Appendix, provides, in part:

  When a qualified individual with a disability has requested a reasonable accommodation to assist in the performance of a job, the employer, using a problem solving approach, should:

    (1) Analyze the particular job involved and determine its purpose and essential functions;

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

(2) Consult with the individual with a disability to ascertain the precise job-related limitations imposed by the individual's disability and how those limitations could be overcome with a reasonable accommodation;

(3) In consultation with the individual to be accommodated, identify potential accommodations and assess the effectiveness each would have in enabling the individual to perform the essential functions of the position; and

(4) Consider the preference of the individual to be accommodated and select and implement the accommodation that is most appropriate for both the employee and the employer.

- An employee may file a civil action based on the employer's failure to engage in the interactive process. (*Claudio, supra,* 134 Cal.App.4th  at p. 243.)

- "Two principles underlie a cause of action for failure to provide a reasonable accommodation. First, the employee must request an accommodation.  Second, the parties must engage in an interactive process regarding the requested accommodation and, if the process fails, responsibility for the failure rests with the party who failed to participate in good faith. While a claim of failure to accommodate is independent of a cause of action for failure to engage in an interactive dialogue, each necessarily implicates the other." (*Gelfo, supra,* 140 Cal.App.4th at p. 54, internal citations omitted.)

- "FEHA's reference to a 'known' disability is read to mean a disability of which the employer has become aware, whether because it is obvious, the employee has brought it to the employer's attention, it is based on the employer's own perception—mistaken or not—of the existence of a disabling condition or, perhaps as here, the employer has come upon information indicating the presence of a disability." (*Gelfo, supra,* 140 Cal.App.4th at p. 61, fn. 21.)

- "[Employer] asserts that, if it had a duty to engage in the interactive process, the duty was discharged. 'If anything,' it argues, 'it was [employee] who failed to engage in a good faith interactive process.' [Employee] counters [employer] made up its mind before July 2002 that it would not accommodate [employee]'s limitations, and nothing could cause it reconsider that decision. Because the evidence is conflicting and the issue of the parties' efforts and good faith is factual, the claim is properly left for the jury's consideration." (*Gelfo, supra,* 140 Cal.App.4th at p. 62, fn. 23.)

- "[T]he verdicts on the reasonable accommodations issue and the interactive process claim are not inconsistent. They involve separate causes of action and proof of different facts. Under FEHA, an employer must engage in a good faith interactive process with the disabled employee to explore the alternatives to accommodate the disability. 'An employee may file a civil action based on the employer's failure to engage in the interactive process.' Failure to engage in this process is a separate FEHA violation independent from an employer's failure to provide a reasonable disability accommodation, which is also a FEHA violation. An employer may claim there were no available reasonable accommodations. But if it did not engage in a good faith interactive process,

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

'it cannot be known whether an alternative job would have been found.' The interactive process determines which accommodations are required. Indeed, the interactive process could reveal solutions that neither party envisioned." (*Wysinger, supra,* 157 Cal.App.4th at pp. 424–425, internal citations omitted.)

- "We disagree … with *Wysinger's* construction of section 12940(n). We conclude that the availability of a reasonable accommodation (i.e., a modification or adjustment to the workplace that enables an employee to perform the essential functions of the position held or desired) is necessary to a section 12940(n) claim. [¶] Applying the burden of proof analysis in *Green, supra,* 42 Cal.4th 254, we conclude the burden of proving the availability of a reasonable accommodation rests on the employee." (*Nadaf-Rahrov, supra,* 166 Cal.App.4th at pp. 984–985.)

- "We synthesize *Wysinger, Nadaf-Rahrov,* and *Claudio* with our analysis of the law as follows: To prevail on a claim under section 12940, subdivision (n) for failure to engage in the interactive process, an employee must identify a reasonable accommodation that would have been available at the time the interactive process should have occurred. An employee cannot necessarily be expected to identify and request all possible accommodations during the interactive process itself because ' " '[e]mployees do not have at their disposal the extensive information concerning possible alternative positions or possible accommodations which employers have. …' " ' However, as the *Nadaf-Rahrov* court explained, once the parties have engaged in the litigation process, to prevail, the employee must be able to identify an available accommodation the interactive process should have produced: 'Section 12940[, subdivision ](n), which requires proof of failure to engage in the interactive process, is the appropriate cause of action where the employee is unable to identify a specific, available reasonable accommodation while in the workplace and the employer fails to engage in a good faith interactive process to help identify one, but the employee is able to identify a specific, available reasonable accommodation through the litigation process.' " (*Scotch, supra,* 173 Cal.App.4th at pp. 1018–1019.)

### *Secondary Sources*

8 Witkin, Summary of California Law (10th ed. 2005) Constitutional Law, § 936(2)

Chin, et al., California Practice Guide: Employment Litigation (The Rutter Group) ¶¶ 9:2280–9:2285, 9:2345–9:2347

1 Wrongful Employment Termination Practice (Cont.Ed.Bar 2d ed.) Discrimination Claims, § 2.79

2 Wilcox, California Employment Law, Ch. 41, *Substantive Requirements Under Equal Employment Opportunity Laws*, § 41.51[3][b] (Matthew Bender)

11 California Forms of Pleading and Practice, Ch. 115, *Civil Rights: Employment Discrimination*, § 115.35[1][a] (Matthew Bender)

1 California Civil Practice: Employment Litigation (Thomson West) Discrimination in Employment, § 2:50

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

**VF-2508**.  **Disability Discrimination—Disparate Treatment**

---

**We answer the questions submitted to us as follows:**

1.   **Was** [*name of defendant*] **[an employer/**[*other covered entity*]**]?**
     ____ **Yes**  ____ **No**

     If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

2.   **Was** [*name of plaintiff*] **[an employee of** [*name of defendant*]**/an applicant to** [*name of defendant*] **for a job/**[*other covered relationship to defendant*]**]?**
     ____ **Yes**  ____ **No**

     If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

3.   **[Did** [*name of defendant*] **[know/think] that** [*name of plaintiff*] **had [a]** [*select term to describe basis of limitations, e.g., physical condition*~~condition/disease/disorder/[~~*describe health condition*~~]~~**] [that limited** [*insert major life activity*]**]?**
     ____ **Yes**  ____ **No]**

     **[or]**

     **[Did** [*name of defendant*] **[know/think] that** [*name of plaintiff*] **had a history of having[a]** [*e.g., physical condition*] **[that limited** [*insert major life activity*]**]?**
     _____ **Yes**  _____ **No]**

     If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

4.   **Was** [*name of plaintiff*] **able to perform the essential job duties [with reasonable accommodation for [his/her]** [*e.g., physical* condition]**]?**
     ____ **Yes**  ____ **No**

     If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

5.   **Did** [*name of defendant*] **[discharge/refuse to hire/**[*other adverse employment action*]**] [*name of plaintiff*]?**
     ____ **Yes**  ____ **No**

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

6.  Was [*name of plaintiff*]'s **[perceived] [[history of]** [a]] ~~[physical/mental]~~ ~~[condition/disease/disorder/~~[*describe health condition*]*e.g., physical condition*] a motivating reason for [*name of defendant*]'s decision to [discharge/refuse to hire/[*other adverse employment action*]] [*name of plaintiff*]?
    _____ Yes   _____ No

If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

7.  Was [*name of defendant*]'s [decision/conduct] a substantial factor in causing harm to [*name of plaintiff*]?
    _____ Yes   _____ No

If your answer to question 7 is yes, then answer question 8. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.

8.  What are [*name of plaintiff*]'s damages?

    [a.    Past economic loss
                    [lost earnings            $ _____]
                    [lost profits             $ _____]
                    [medical expenses         $ _____]
                    [other past economic loss $ _____]
                            **Total Past Economic Damages:  $ _____]**


    [b.    Future economic loss
                    [lost earnings            $ _____]
                    [lost profits             $ _____]
                    [medical expenses         $ _____]
                    [other future economic loss $ _____]
                            **Total Future Economic Damages:  $ _____]**


    [c.    Past noneconomic loss, including [physical pain/mental suffering:]

                                              $ _____]

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

 

 

 

> **[d.   Future noneconomic loss, including [physical pain/mental suffering:]**
>
>        **$ _____]**

 

**TOTAL $ _____**

 

 

**Signed:   _____**

             **Presiding Juror**

**Dated:   _____**

      **[After it has been signed/After all verdict forms have been signed], deliver this verdict form to the [clerk/bailiff/judge].**

---

*New September 2003; Revised April 2007, December 2007, December 2009*

### Directions for Use

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 2540, *Disability Discrimination—Disparate Treatment— Essential Factual Elements.*

Select a term to use throughout to describe the source of the plaintiff's limitations.  It may be a statutory term such as "physical disability," "mental disability," or "medical condition." (See Gov. Code, § 12940(a).)  Or it may be a general term such as "condition," "disease," or "disorder."  Or it may be a specific health condition such as "diabetes."

Relationships other than employer/employee can be substituted in question 1, as in element 1 of CACI No. 2540. Depending on the facts of the case, other factual scenarios can be substituted in questions 3 and 6, as in elements 3 and 6 of the instruction.

If medical-condition discrimination as defined by statute (see Gov. Code, § 12926(h)) is alleged, omit "that limited [*insert major life activity*]" in question 3. (Compare Gov. Code, § 12926(h) with Gov. Code, § 12926(i), (k) [no requirement that medical condition limit major life activity].)

If specificity is not required, users do not have to itemize all the damages listed in question 8 and do not have to categorize "economic" and "noneconomic" damages, especially if it is not a Proposition 51 case. The breakdown of damages is optional depending on the circumstances.

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

If there are multiple causes of action, users may wish to combine the individual forms into one form.

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to award prejudgment interest on specific losses that occurred prior to judgment.

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

---

**VF-2509.  Disability Discrimination—Reasonable Accommodation (Gov. Code, § 12940(m))**

---

**We answer the questions submitted to us as follows:**

1.  **Was** [*name of defendant*] **[an employer/**[*other covered entity*]**]?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.  **Was** [*name of plaintiff*] **[an employee of** [*name of defendant*]**/an applicant to** [*name of defendant*] **for a job/**[*other covered relationship to defendant*]**]?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.  **Did** [*name of plaintiff*] **have [a]** [*select term to describe basis of limitations, e.g., physical condition* ~~physical/mental] [condition/disease/disorder/[describe health condition]~~] **[that limited** [*insert major life activity*]**]?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.  **Did** [*name of defendant*] **know of** [*name of plaintiff*]**'s** [*e.g., physical condition* ~~physical/mental] [condition/disease/disorder/[describe health condition]~~] **[that limited** [*insert major life activity*]**]?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

5.  **Was** [*name of plaintiff*] **able to perform the essential job duties with reasonable accommodation for [his/her]** [*e.g., physical condition* ~~condition/disease/disorder/[describe health condition]~~]**?**
    \_\_\_\_ **Yes** \_\_\_\_ **No**

    **If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

**6.** **Did** [*name of defendant*] **fail to provide reasonable accommodation for** [*name of plaintiff*]**'s** [~~*e.g., physical* **condition**~~**physical/mental/ [condition/disease/disorder/**[*describe health condition*]]**?**

    **\_\_\_\_ Yes    \_\_\_\_ No**

**If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

**7.** **Was** [*name of defendant*]**'s failure to provide reasonable accommodation a substantial factor in causing harm to** [*name of plaintiff*]**?**

    **\_\_\_\_ Yes    \_\_\_\_ No**

**If your answer to question 7 is yes, then answer question 8. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

**8.** **What are** [*name of plaintiff*]**'s damages?**

**[a.** **Past economic loss**

       **[lost earnings**      **$ _____]**
       **[lost profits**      **$ _____]**
       **[medical expenses**    **$ _____]**
       **[other past economic loss**   **$ _____]**

                  **Total Past Economic Damages: $ _____]**

**[b.** **Future economic loss**

       **[lost earnings**      **$ _____]**
       **[lost profits**      **$ _____]**
       **[medical expenses**    **$ _____]**
       **[other future economic loss $ _____]**

                 **Total Future Economic Damages: $ _____]**

**[c.** **Past noneconomic loss, including** [**physical pain/mental suffering:**]

                      **$ _____]**

**[d.** **Future noneconomic loss, including** [**physical pain/mental suffering:**]

                      **$ _____]**

                          **TOTAL $ _____**

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

Signed: _____

             **Presiding Juror**

Dated: _____

      **[After it has been signed/After all verdict forms have been signed], deliver this verdict form
to the [clerk/bailiff/judge].**

---

*New September 2003; Revised April 2007, April 2009x, December 2009*

### Directions for Use

The special verdict forms in this section are intended only as models. They may need to be modified
depending on the facts of the case.

This verdict form is based on CACI No. 2541, *Disability Discrimination—Reasonable Accommodation—
Essential Factual Elements*.

Select a term to use throughout to describe the source of the plaintiff's limitations.  It may be a statutory
term such as "physical disability," "mental disability," or "medical condition." (See Gov. Code, §
12940(a).)  Or it may be a general term such as "condition," "disease," or "disorder."  Or it may be a
specific health condition such as "diabetes."

Relationships other than employer/employee can be substituted in question 1, as in element 1 of CACI
No. 2541.

If medical-condition discrimination as defined by statute (see Gov. Code, § 12926(h)) is alleged, omit
"that limited [*insert major life activity*]" in questions 3 and 4. (Compare Gov. Code, § 12926(h) with
Gov. Code, § 12926(i), (k) [no requirement that medical condition limit major life activity].)

If specificity is not required, users do not have to itemize all the damages listed in question 8 and do not
have to categorize "economic" and "noneconomic" damages, especially if it is not a Proposition 51 case.
The breakdown of damages is optional depending on the circumstances.

If there are multiple causes of action, users may wish to combine the individual forms into one form.

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to
award prejudgment interest on specific losses that occurred prior to judgment.

Preliminary Draft Only -- Not Approved by Judicial Council

**VF-2510. Disability Discrimination—Reasonable Accommodation—Affirmative Defense—Undue Hardship (Gov. Code, § 12940(m))**

---

We answer the questions submitted to us as follows:

1.    **Was** [*name of defendant*] [**an employer/**[*other covered entity*]]**?**
      _____ **Yes**  _____ **No**

      **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.    **Was** [*name of plaintiff*] [**an employee of** [*name of defendant*]**/an applicant to** [*name of defendant*] **for a job/**[*other covered relationship to defendant*]]**?**
      _____ **Yes**  _____ **No**

      **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.    **Did** [*name of plaintiff*] **have** [**a**] [*select term to describe basis of limitations, e.g., physical condition*~~**physical/mental] [condition/disease/disorder/**[*describe health condition*~~]] [**that limited** [*insert major life activity*]]**?**
      _____ **Yes**  _____ **No**

      **If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.    **Did** [*name of defendant*] **know of** [*name of plaintiff*]**'s** [*e.g., physical condition*~~**physical/mental] [condition/disease/disorder/**[*describe health condition*~~]] [**that limited** [*insert major life activity*]]**?**
      _____ **Yes**  _____ **No**

      **If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

5.    **Was** [*name of plaintiff*] **able to perform the essential job duties with reasonable accommodation for** [**his/her**] [*e.g., physical condition*~~**condition/disease/disorder/**[*describe health condition*~~]]**?**
      _____ **Yes**  _____ **No**

      **If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this**

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

form.

6.    **Did** [*name of defendant*] **fail to provide reasonable accommodation for** [*name of plaintiff*]**'s** [*e.g., physical condition*~~physical/mental]~~ ~~[condition/disease/disorder/[~~*describe health condition*~~]]~~**?**
          _____ **Yes**   _____ **No**

      **If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

7.    **Would** [*name of plaintiff*]**'s proposed accommodations have created an undue hardship to the operation of** [*name of defendant*]**'s business?**
          _____ **Yes**   _____ **No**

      **If your answer to question 7 is no, then answer question 8. If you answered yes, stop here, answer no further questions, and have the presiding juror sign and date this form.**

8.    **Was** [*name of defendant*]**'s failure to provide a reasonable accommodation a substantial factor in causing harm to** [*name of plaintiff*]**?**
          _____ **Yes**   _____ **No**

      **If your answer to question 8 is yes, then answer question 9. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

9.    **What are** [*name of plaintiff*]**'s damages?**

      **[a.    Past economic loss**
                  **[lost earnings               $ _____]**
                  **[lost profits                $ _____]**
                  **[medical expenses            $ _____]**
                  **[other past economic loss    $ _____]**
                                      **Total Past Economic Damages:  $ _____]**

      **[b.    Future economic loss**
                  **[lost earnings               $ _____]**
                  **[lost profits                $ _____]**
                  **[medical expenses            $ _____]**
                  **[other future economic loss  $ _____]**
                                      **Total Future Economic Damages:  $ _____]**

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

[c.     Past noneconomic loss, including [physical pain/mental suffering:]

$ _____]

[d.     Future noneconomic loss, including [physical pain/mental suffering:]

$ _____]

TOTAL $ _____

Signed:   _____
                    **Presiding Juror**

Dated:   _____

[After it has been signed/After all verdict forms have been signed], deliver this verdict form to the [clerk/bailiff/judge].

---

*New September 2003; Revised April 2007, April 2009, December 2009*

### Directions for Use

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 2541, *Disability Discrimination—Reasonable Accommodation—Essential Factual Elements*, and CACI No. 2545, *Disability Discrimination—Affirmative Defense—Undue Hardship*. If a different affirmative defense is at issue, this form should be tailored accordingly.

Select a term to use throughout to describe the source of the plaintiff's limitations.  It may be a statutory term such as "physical disability," "mental disability," or "medical condition." (See Gov. Code, § 12940(a).)  Or it may be a general term such as "condition," "disease," or "disorder."  Or it may be a specific health condition such as "diabetes."

Relationships other than employer/employee can be substituted in question 1, as in element 1 of CACI No. 2541.

If medical-condition discrimination as defined by statute (see Gov. Code, § 12926(h)) is alleged, omit "that limited [*insert major life activity*]" in questions 3 and 4. (Compare Gov. Code, § 12926(h) with Gov. Code, § 12926(i), (k) [no requirement that medical condition limit major life activity].)

If specificity is not required, users do not have to itemize all the damages listed in question 9 and do not have to categorize "economic" and "noneconomic" damages, especially if it is not a Proposition 51 case. The breakdown of damages is optional depending on the circumstances.

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

If there are multiple causes of action, users may wish to combine the individual forms into one form.

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to award prejudgment interest on specific losses that occurred prior to judgment.

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

**VF-2513.  Disability Discrimination—Reasonable Accommodation—Failure to Engage in Interactive Process (Gov. Code, § 12940(n))**

---

**We answer the questions submitted to us as follows:**

1.  **Was** [*name of defendant*] **[an employer/[***other covered entity***]]?**
    _____ **Yes** _____ **No**

    **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.  **Was** [*name of plaintiff*] **[an employee of** [*name of defendant*]**/an applicant to** [*name of defendant*] **for a job/[***other covered relationship to defendant***]]?**
    _____ **Yes** _____ **No**

    **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

3.  **Did** [*name of plaintiff*] **have [a]** [*select term to describe basis of limitations, e.g., physical condition*] ~~physical/mental] [condition/disease/disorder/[*describe health condition*]~~] **[that limited** [*insert major life activity*]**]?**
    _____ **Yes** _____ **No**

    **If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

4.  **Did** [*name of plaintiff*] **request that** [*name of defendant*] **make reasonable accommodation for [his/her]** [*e.g., physical condition*]~~disability/condition~~] **so that [he/she] would be able to perform the essential job requirements?**
    _____ **Yes** _____ **No**

    **If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

5.  **Was** [*name of plaintiff*] **willing to participate in an interactive process to determine whether reasonable accommodation could be made so that [he/she] would be able to perform the essential job requirements?**
    _____ **Yes** _____ **No**

    **If your answer to question 5 is yes, then answer question 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this**

Preliminary Draft Only -- Not Approved by Judicial Council

form.

6.      Did [*name of defendant*] **fail to participate in a timely, good-faith interactive process with** [*name of plaintiff*] **to determine whether reasonable accommodation could be made?**
        \_\_\_\_ Yes  \_\_\_\_ No

        **If your answer to question 6 is yes, then answer question 7. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

7.      Was [*name of defendant*]'s **failure to participate in a good-faith interactive process a substantial factor in causing harm to** [*name of plaintiff*]?
        \_\_\_\_ Yes  \_\_\_\_ No

        **[If your answer to question 7 is yes, then answer question 8. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

8.      **What are** [*name of plaintiff*]'s **damages?**

        [a.     **Past economic loss**
                [lost earnings        $ _____]
                [lost profits         $ _____]
                [medical expenses     $ _____]
                [other past economic loss   $ _____]
                                **Total Past Economic Damages: $ _____]**

        [b.     **Future economic loss**
                [lost earnings        $ _____]
                [lost profits         $ _____]
                [medical expenses     $ _____]
                [other future economic loss  $ _____]
                                **Total Future Economic Damages: $ _____]**

        [c.     **Past noneconomic loss, including [physical pain/mental suffering:]**
                                                        $ _____]

        [d.     **Future noneconomic loss, including [physical pain/mental suffering:]**
                                                        $ _____]

                                        **TOTAL $ _____]**

**Preliminary Draft Only -- Not Approved by Judicial Council**

**Signed:** _____

                     **Presiding Juror**

**Dated:** _____

      **[After it has been signed/After all verdict forms have been signed], deliver this verdict form to the [clerk/bailiff/judge].**

---

*New April 2009; Revised December 2009*

**Directions for Use**

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 2546, *Disability Discrimination—Reasonable Accommodation—Failure to Engage in Interactive Process.*

Select a term to use throughout to describe the source of the plaintiff's limitations.  It may be a statutory term such as "physical disability," "mental disability," or "medical condition." (See Gov. Code, § 12940(a).)  Or it may be a general term such as "condition," "disease," or "disorder."  Or it may be a specific health condition such as "diabetes."

If medical-condition discrimination as defined by statute (see Gov. Code, § 12926(h)) is alleged, omit "that limited [*insert major life activity*]" in question 3. (Compare Gov. Code, § 12926(h) with Gov. Code, § 12926(i), (k) [no requirement that medical condition limit major life activity].)

Do not include the transitional language following question 7 and question 8 if the only damages claimed are also claimed under Government Code section 12940(m) on reasonable accommodation.  Use CACI No. VF-2509, *Disability Discrimination—Reasonable Accommodation,* or CACI No. VF-2510, *Disability Discrimination—Reasonable Accommodation—Affirmative Defense—Undue Hardship,* to claim these damages.

If specificity is not required, users do not have to itemize all the damages listed in question 8 and do not have to categorize "economic" and "noneconomic" damages, especially if it is not a Proposition 51 case. The breakdown of damages is optional depending on the circumstances.

If there are multiple causes of action, users may wish to combine the individual forms into one form.

This form may be modified if the jury is being given the discretion under Civil Code section 3288 to award prejudgment interest on specific losses that occurred prior to judgment.

There is a split of authority as to whether the employee must also prove that reasonable accommodation

**Preliminary Draft Only -- Not Approved by Judicial Council**

was possible before there is a violation for failure to engage in the interactive process. (Compare *Wysinger v. Automobile Club of Southern California* (2007) 157 Cal.App.4th 413, 424–425 [69 Cal.Rptr.3d 1 [jury's finding that no reasonable accommodation was possible is not inconsistent with its finding of liability for refusing to engage in interactive process] with *Nadaf-Rahrov v. The Nieman Marcus Group, Inc.* (2008) 166 Cal.App.4th 952, 980–985 [83 Cal.Rptr.3d 190] [employee who brings a section 12940(n) claim bears the burden of proving that a reasonable accommodation was available before the employer can be held liable under the statute].)

123

**Preliminary Draft Only -- Not Approved by Judicial Council**

---

**2904**. ~~Contributory Negligence~~Comparative Fault

---

[*Name of defendant*] **claims that** [*name of plaintiff/decedent*] **was negligent and that [his/her] negligence contributed to [his/her] own [harm/death]. To succeed,** [*name of defendant*] **must prove both of the following:**

      1.    **That** [*name of plaintiff/decedent*] **was negligent; and**

      2.    **That** [*name of plaintiff/decedent*]**'s negligence was a cause of [his/her] [harm/death].**

[*Name of plaintiff/decedent*]**'s negligence, if any, was a cause of [his/her] own [harm/death] if it played any part, no matter how small, in bringing about [his/her] [harm/death], even if other factors also contributed to [his/her] [harm/death].**

**If you decide that** [*name of defendant*] **was negligent but also decide that** [*name of plaintiff/decedent*]**'s negligence contributed to the harm, then you must determine the percentage of negligence that you attribute to** [*name of plaintiff/decedent*]**.**

---

*New September 2003; Revised December 2009*

### Directions for Use

This instruction does not apply if the claim is based on a violation of the Federal Safety Appliance Act or the Boiler Inspection Act.

For a definition of the term "negligence," see CACI No. 401, *Basic Standard of Care*.

### Sources and Authority

- Title 45 United States Code section 53 provides, in part: "[T]he fact that the employee may have been guilty of contributory negligence shall not bar a recovery, but the damages shall be diminished by the jury in proportion to the amount of negligence attributable to such employee: Provided, that no such employee who may be injured or killed shall be held to have been guilty of contributory negligence in any case where the violation by such common carrier of any statute enacted for the safety of employees contributed to the injury or death of such employee."

- "The FELA provides that defense of contributory negligence is not available to an employer to defeat an employee's claim for injury, but only to diminish the amount of damages in proportion to the amount of negligence attributable to the employee. The burden of proving contributory negligence is on the defendant." (*Torres v. Southern Pacific Co.* (1968) 260 Cal.App.2d 757, 763 [67 Cal.Rptr. 428], internal citations omitted.)

- "We conclude that FELA does not abrogate the common-law approach, and that the same standard of causation applies to railroad negligence under Section 1 as to plaintiff contributory negligence under

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

Section 3." (*Norfolk Southern Ry. v. Sorrell* (2007) 549 U.S. 158, 171— [127 S.Ct. 799, 166 L.Ed.2d 638, 2007 U.S. LEXIS 1006, *24].)

- "Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." (*Rogers v. Missouri Pacific Railroad Co.* (1957) 352 U.S. 500, 506 [77 S.Ct. 443, 1 L.Ed.2d 493] ; but see *Norfolk Southern Ry., supra*, 549 U.S. at pp. 172–177— [2007 U.S. LEXIS 1006, *26], conc.urring opn. of Souter, J. [arguing that above language has been misconstrued as holding that proximate cause is not an element under FELA].)

- "The common law concept of proximate cause ... has not been adopted as the causation test in F.E.L.A. cases. Causation in an F.E.L.A. case exists even if there is a plurality of causes, including the negligence of the defendant or of a third person. The negligence of the employer need not be the sole cause or even a substantial cause of the ensuing injury." (*Parker v. Atchison, Topeka and Santa Fe Ry. Co.* (1968) 263 Cal.App.2d 675, 678 [70 Cal.Rptr. 8]; but see *Norfolk Southern Ry., supra*, 549 U.S. at pp. 172–177— [2007 U.S. LEXIS 1006, *26], conc. opinion of Souter, J.)

***Secondary Sources***

2 Witkin, Summary of California Law (10th ed. 2005) Workers' Compensation, § 123

42 California Forms of Pleading and Practice, Ch. 485, *Railroads*, § 485.42 (Matthew Bender)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

**3023A. Acts of Violence—Ralph Act (Civ. Code, § 51.7)—Essential Factual Elements (Civ. Code, § 51.7)**

---

[*Name of plaintiff*] **claims that** [*name of defendant*] **subjected [him/her] tocommitted an act of violence against [him/her] because of or threat of violence based on** [his/her] **[sex/race/color/religion/ancestry/national origin/political affiliation/sex/sexual orientation/age/disability/position in a labor dispute/[***insert other actionable characteristic***]]. To establish this claim,** [*name of plaintiff*] **must prove all of the following:**

1. **That** [*name of defendant*] **threatened or committed a violent acts against** [*name of plaintiff*] **[or [his/her] property];**

2. **That a motivating reason for** [*name of defendant*]**'s conduct was [[his/her] perception of]** [*name of plaintiff*]**'s [sex/race/color/religion/ancestry/national origin/political affiliation/sex/sexual orientation/age/disability/position in a labor dispute/[***insert other actionable characteristic***]];**

3. **That** [*name of plaintiff*] **was harmed; and**

4. **That** [*name of defendant*]**'s conduct was a substantial factor in causing** [*name of plaintiff*]**'s harm.**

---

*New September 2003Derived from former CACI No. 3023 December 2009*

### Directions for Use

Use this instruction for a cause of action under the Ralph Act involving actual acts of violence alleged to have been committed by the defendant against the plaintiff.  For an instruction involving only threats of violence, see CACI No. 3023B, *Threat of Violence—Ralph Act—Essential Factual Elements.*

Note that this instruction uses the standard of "a motivating reason." The causation standard is still an open issue under this statute.

Liability may also be found where if a defendant "aids, incites, or conspires" in the denial of a right protected under Civil Code section 51.7. (Civil Civ. Code. § section 52(b).) provides, in part: "Whoever denies the right provided by Section 51.7 ... or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right ... ." This instruction should be modified if aiding, inciting, or conspiring is asserted as theories of liability. See also instructions in the Conspiracy series (CACI No. 3600 et seq.).

### Sources and Authority

- Civil Code section 51.7 provides:

     (a)     All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive. This section does not apply to statements concerning positions in a labor dispute which are made during otherwise lawful labor picketing.

(b)     As used in this section, "sexual orientation" means heterosexuality, homosexuality, or bisexuality.

- Civil Code section 52(b) provides:

  Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

  (1)     An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

  (2)     A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney.

  (3)     Attorney's fees as may be determined by the court.

- "The unambiguous language of this section gives rise to a cause of action in favor of a person against whom violence or intimidation has been committed or threatened." (*Coon v. Joseph* (1987) 192 Cal.App.3d 1269, 1277 [237 Cal.Rptr. 873].)

- ~~"The test is: 'would a reasonable person, standing in the shoes of the plaintiff, have been intimidated by the actions of the defendant and have perceived a threat of violence?' " (*Winarto v. Toshiba America Electronics Components, Inc.* (9th Cir. 2001) 274 F.3d 1276, 1289-1290, internal citation omitted.)~~

- "Section 51 by its express language applies only within California. It cannot (with its companion penalty provisions in § 52) be extended into the Hawaiian jurisdiction. A state cannot regulate or proscribe activities conducted in another state or supervise the internal affairs of another state in any way, even though the welfare or health of its citizens may be affected when they travel to that state." (*Archibald v. Cinerama Hawaiian Hotels, Inc.* (1977) 73 Cal.App.3d 152, 159 [140 Cal.Rptr. 599], internal citations omitted, disapproved on other grounds in *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24 [219 Cal.Rptr. 133, 707 P.2d 195].)

*Secondary Sources*

**Preliminary Draft Only -- Not Approved by Judicial Council**

11 California Forms of Pleading and Practice, Ch. 116, *Civil Rights: Discrimination in Business Establishments*, § 116.80 (Matthew Bender)

California Civil Practice: Civil Rights Litigation (Thomson West) §§ 3:1–3:15

### 3023B.  Threat of Violence—Ralph Act—Essential Factual Elements (Civ. Code, § 51.7)

[*Name of plaintiff*] claims that [*name of defendant*] intimidated [him/her] by threat of violence because of [his/her] [race/color/religion/ancestry/national origin/political affiliation/sex/sexual orientation/age/disability/position in a labor dispute/[*insert other actionable characteristic*]]. To establish this claim, [*name of plaintiff*] must prove all of the following:

1. That [*name of defendant*] intentionally threatened violence against [*name of plaintiff*] [or [his/her] property], [whether or not [*name of defendant*] actually intended to carry out the threat];

2. That a motivating reason for [*name of defendant*]'s conduct was [[his/her] perception of] [*name of plaintiff*]'s [race/color/religion/ancestry/national origin/political affiliation/sex/sexual orientation/age/disability/position in a labor dispute/[*insert other actionable characteristic*]];

3. That a reasonable person in [*name of plaintiff*]'s position would have believed that [*name of defendant*] would carry out [his/her] threat;

4. That a reasonable person in [*name of plaintiff*]'s position would have been intimidated by [*name of defendant*]'s conduct;

5. That [*name of plaintiff*] was harmed; and

6. That [*name of defendant*]'s conduct was a substantial factor in causing [*name of plaintiff*]'s harm.

*Derived from former CACI No. 3023 December 2009*

### Directions for Use

Use this instruction for a cause of action under the Ralph Act involving threats of violence alleged to have been directed by the defendant toward the plaintiff.  For an instruction involving actual acts of violence, see CACI No. 3023A, *Acts of Violence—Ralph Act—Essential Factual Elements*.

No published California appellate opinion establishes elements 3 and 4.  However the Ninth Circuit Court of Appeals and the California Fair Employment and Housing Commission have held that a reasonable person in the plaintiff's position must have been intimidated by the actions of the defendant and have perceived a threat of violence. (See *Winarto v. Toshiba America Electronics Components, Inc.* (9th Cir. 2001) 274 F.3d 1276, 1289-1290; *Dept. Fair Empl. & Hous. v. Lake Co. Dept. of Health Serv.* (July 22, 1998) 1998 CAFEHC LEXIS 16, 55–56.)

Note that this instruction uses the standard of "a motivating reason." The causation standard is still an open issue under this statute.

Liability may also be found if a defendant "aids, incites, or conspires" in the denial of a right protected under Civil Code section 51.7. (Civ. Code, § 52(b).) This instruction should be modified if aiding, inciting, or conspiring is asserted as theories of liability. See also instructions in the Conspiracy series (CACI No. 3600 et seq.).

## Sources and Authority

- Civil Code section 51.7 provides:

    (a)   All persons within the jurisdiction of this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of their race, color, religion, ancestry, national origin, political affiliation, sex, sexual orientation, age, disability, or position in a labor dispute, or because another person perceives them to have one or more of those characteristics. The identification in this subdivision of particular bases of discrimination is illustrative rather than restrictive. This section does not apply to statements concerning positions in a labor dispute which are made during otherwise lawful labor picketing.

    (b)   As used in this section, "sexual orientation" means heterosexuality, homosexuality, or bisexuality.

- Civil Code section 52(b) provides:

    Whoever denies the right provided by Section 51.7 or 51.9, or aids, incites, or conspires in that denial, is liable for each and every offense for the actual damages suffered by any person denied that right and, in addition, the following:

    (1)   An amount to be determined by a jury, or a court sitting without a jury, for exemplary damages.

    (2)   A civil penalty of twenty-five thousand dollars ($25,000) to be awarded to the person denied the right provided by Section 51.7 in any action brought by the person denied the right, or by the Attorney General, a district attorney, or a city attorney.

    (3)   Attorney's fees as may be determined by the court.

- "The unambiguous language of this section gives rise to a cause of action in favor of a person against whom violence or intimidation has been committed or threatened." (*Coon v. Joseph* (1987) 192 Cal.App.3d 1269, 1277 [237 Cal.Rptr. 873].)

- "The test is: 'would a reasonable person, standing in the shoes of the plaintiff, have been intimidated by the actions of the defendant and have perceived a threat of violence?' " (*Winarto, supra,* 274 F.3d at pp. 1289-1290, internal citation omitted.)

**Preliminary Draft Only -- Not Approved by Judicial Council**

- "When a threat of violence would lead a reasonable person to believe that the threat will be carried out, in light of the 'entire factual context,' including the surrounding circumstances and the listeners' reactions, then the threat does not receive First Amendment protection, and may be actionable under the Ralph Act. The only intent requirement is that respondent 'intentionally or knowingly communicates his [or her] threat, not that he intended or was able to carry out his threat.' A threat exists if the 'target of the speaker reasonably believes that the speaker has the ability to act him or herself or to influence others. . . . It is the perception of a reasonable person that is dispositive, not the actual intent of the speaker.' " (*Dept. Fair Empl. & Hous., supra,* 1998 CAFEHC LEXIS at pp. 55–56, internal citations omitted.)

- "Section 51 by its express language applies only within California. It cannot (with its companion penalty provisions in § 52) be extended into the Hawaiian jurisdiction. A state cannot regulate or proscribe activities conducted in another state or supervise the internal affairs of another state in any way, even though the welfare or health of its citizens may be affected when they travel to that state." (*Archibald v. Cinerama Hawaiian Hotels, Inc.* (1977) 73 Cal.App.3d 152, 159 [140 Cal.Rptr. 599], internal citations omitted, disapproved on other grounds in *Koire v. Metro Car Wash* (1985) 40 Cal.3d 24 [219 Cal.Rptr. 133, 707 P.2d 195].)

*Secondary Sources*

Chin et al., California Practice Guide: Employment Litigation (The Rutter Group) ¶ 5:892.11, ¶¶ 7:1528–7:1529

11 California Forms of Pleading and Practice, Ch. 116, *Civil Rights: Discrimination in Business Establishments*, § 116.80 (Matthew Bender)

California Civil Practice: Civil Rights Litigation (Thomson West) §§ 3:1–3:15

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

**VF-3013**.  **Ralph Act (Civ. Code, § 51.7)**

---

**We answer the questions submitted to us as follows:**

1.  **Did** [*name of defendant*] **[threaten/ or commit] violent acts against** [*name of plaintiff*] **[or [his/her] property]?**
    ____ **Yes**   ____ **No**

    **If your answer to question 1 is yes, then answer question 2. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

2.  **Was [[**[*name of defendant*]**'s perception of] [**[*name of plaintiff*]**'s [sex/race/color/religion/ancestry/national origin/political affiliation/sex/sexual orientation/age/disability/position in a labor dispute/[**[*insert other actionable characteristic*]**]] a motivating reason for [**[*name of defendant*]**'s conduct?**
    ____ **Yes**   ____ **No**

    **If your answer to question 2 is yes, then answer question 3. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

**[3.   Would a reasonable person in [**[*name of plaintiff*]**'s position have believed that [**[*name of defendant*]**] would carry out [his/her] threats?**
    ____ **Yes**   ____ **No**

    **If your answer to question 3 is yes, then answer question 4. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.]**

**[4.   Would a reasonable person in [**[*name of plaintiff*]**'s position have been intimidated by [**[*name of defendant*]**'s conduct?**
    ____ **Yes**   ____ **No**

    **If your answer to question 4 is yes, then answer question 5. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.]**

3**5**.  **Was [**[*name of defendant*]**'s conduct a substantial factor in causing harm to [**[*name of plaintiff*]**?**
    ____ **Yes**   ____ **No**

    **If your answer to question 3 5 is yes, then answer question 4 6. If you answered no, stop here, answer no further questions, and have the presiding juror sign and date this form.**

Copyright Judicial Council of California
131

**Preliminary Draft Only -- Not Approved by Judicial Council**

**46.**      **What are [*name of plaintiff*]'s damages?**

     **[a.      Past economic loss**

        **[lost earnings**         **$ _____]**

        **[lost profits**           **$ _____]**

        **[medical expenses**     **$ _____]**

        **[other past economic loss**  **$ _____]**

                **Total Past Economic Damages: $ _____]**

     **[b.      Future economic loss**

        **[lost earnings**         **$ _____]**

        **[lost profits**            **$ _____]**

        **[medical expenses**     **$ _____]**

        **[other future economic loss $ _____]**

              **Total Future Economic Damages: $ _____]**

     **[c.      Past noneconomic loss, including [physical pain/mental suffering:]**

                    **$ _____]**

     **[d.      Future noneconomic loss, including [physical pain/mental suffering:]**

                    **$ _____]**

                      **TOTAL $ _____**

**[Answer question 5.**

**57.**      **What amount do you award as punitive damages?**

                    **$ _____]**

**Signed:** _____

        **Presiding Juror**

**Dated:** _____

**[After it has been signed/After all verdict forms have been signed], deliver this verdict form to the [clerk/bailiff/judge].**

*New September 2003; Revised April 2007, December 2009*

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

### Directions for Use

The special verdict forms in this section are intended only as models. They may need to be modified depending on the facts of the case.

This verdict form is based on CACI No. 3023A, *Acts of Violence—Ralph Act—Essential Factual Elements,* and CACI No. 3023B, *Threat of Violence—Ralph Act—Essential Factual Elements.* Punitive damages are authorized by Civil Code section 52(b)(2).and CACI No. 3027, *Unruh Civil Rights Act—Civil Penalty.* For instructions on punitive damages, see instructions in the Damages series (CACI No. 3900 et seq.).

Include questions 3 and 4 in a case of threats of violence.

If specificity is not required, users do not have to itemize all the damages listed in question 4 6 and do not have to categorize "economic" and "noneconomic" damages, especially if it is not a Proposition 51 case. The breakdown of damages is optional depending on the circumstances.

If there are multiple causes of action, users may wish to combine the individual forms into one form.

**Preliminary Draft Only -- Not Approved by Judicial Council**

**3702.  Affirmative Defense—Comparative Fault of Plaintiff's Agent's Contributory Negligence**

[*Name of defendant*] **claims that [*name of plaintiff principal*]'s harm was caused, in whole or in part, by the negligence of** [*name of plaintiff's agent*] **contributed to** [*name of plaintiff principal*]**'s harm. To succeed on this claim, [*name of defendant*] must prove all of the following:**

1.  **That** [*name of plaintiff's agent*] **was acting as** [*name of plaintiff principal*]**'s [agent/employee/[*insert other relationship, e.g., "partner"*]];**

2.  **That** [*name of plaintiff's agent*] **was acting within the scope of [his/her] [agency/employment/[*insert other relationship*]] when the incident occurred; and**

3.  **That the negligence of** [*name of plaintiff's agent*] **was a substantial factor in causing caused all or part of** [*name of plaintiff principal*]**'s harm.**

**If** [*name of defendant*] **proves the above, [*name of plaintiff principal*]'s claim is reduced by your determination of the percentage of** [*name of plaintiff's agent*]**'s responsibility. I will calculate the actual reduction.**

*New September 2003; Revised December 2009*

### Directions for Use

This instruction could*may* be used by a defendant against a principal/employer to assert the contributory negligence*comparative fault* of an agent/employee. For example, in an automobile accident *lawsuit* brought by a corporate plaintiff, the defendant *may*could use this instruction to assert that the negligence of the plaintiff's employee/driver contributed to causing the accident.

### Sources and Authority

-   The doctrine of respondeat superior is not limited to the principal's responsibility for injuries to third parties. A defendant also can use the doctrine to support a claim of contributory negligence against a plaintiff principal if the plaintiff's agent was contributorily negligent. (See 6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1324.)

***Secondary Sources***

6 Witkin, Summary of California Law (10th ed. 2005) Torts, § 1324

2 California Employment Law, Ch. 30, *Employers' Tort Liability to Third Parties for Conduct of Employees*, § 30.08 (Matthew Bender)

21 California Forms of Pleading and Practice, Ch. 248, *Employer's Liability for Employee's Torts*, § 248.19 (Matthew Bender)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

37 California Forms of Pleading and Practice, Ch. 427, *Principal and Agent*, § 427.23 (Matthew Bender)

10 California Points and Authorities, Ch. 100A, *Employer and Employee: Respondeat Superior*, § 100A.43 (Matthew Bender)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

**3905A.  Physical Pain, Mental Suffering, and Emotional Distress (Noneconomic Damage)**

---

[*Insert number, e.g.,* "1."] **[Past] [and] [future] [physical pain/mental suffering/loss of enjoyment of life/disfigurement/physical impairment/inconvenience/grief/anxiety/humiliation/emotional distress** [*insert other damages*]**].**

~~**[To recover for future** [*insert item of pain and suffering*]**,** [*name of plaintiff*] **must prove that [he/she] is reasonably certain to suffer that harm.]**~~

**No fixed standard exists for deciding the amount of these <u>noneconomic</u> damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.**

<u>**[To recover for future** [*insert item of pain and suffering*]**,** [*name of plaintiff*] **must prove that [he/she] is reasonably certain to suffer that harm.**</u>

**[For future** [*insert item of pain and suffering*]**, determine the amount in current dollars paid at the time of judgment that will compensate** [*name of plaintiff*] **for future** [*insert item of pain and suffering*]**. [This amount <u>of</u> <u>noneconomic damages</u> should not be further reduced to present cash value <u>because that reduction should only be performed with respect to economic damages.</u>]]**

---

*New September 2003; Revised April 2008<u>, December 2009</u>*

**Directions for Use**

Insert the bracketed terms that best describe the damages claimed by the plaintiff. ~~The final bracketed sentence should be used if the plaintiff is claiming both economic and noneconomic damages.~~

If future noneconomic damages are sought, ~~give the second and fourth optional~~<u>include the last two</u> paragraphs.  Do not instruct the jury to further reduce the award to present cash value. (See CACI No. 3904, *Present Cash Value*.)  The amount that the jury is to award should already encompass the idea of today's dollars for tomorrow's loss. (See *Salgado v. County of L.A.* (1998) 19 Cal.4th 629, 646–647 [80 Cal.Rptr.2d 46, 967 P.2d 585].)  <u>Include the last sentence only if the plaintiff is claiming both future economic and noneconomic damages.</u>

**Sources and Authority**

- "In general, courts have not attempted to draw distinctions between the elements of 'pain' on the one hand, and 'suffering' on the other; rather, the unitary concept of 'pain and suffering' has served as a convenient label under which a plaintiff may recover not only for physical pain but for fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation, indignity, embarrassment, apprehension, terror or ordeal. Admittedly these terms refer to subjective states, representing a detriment which can be translated into monetary loss only with great difficulty. But the detriment, nevertheless, is a genuine one that requires compensation, and the issue generally must be resolved by the 'impartial conscience and judgment of jurors who may be expected to act reasonably, intelligently

Preliminary Draft Only -- Not Approved by Judicial Council

and in harmony with the evidence.' " (*Capelouto v. Kaiser Foundation Hospitals* (1972) 7 Cal.3d
889, 892–893 [103 Cal.Rptr. 856, 500 P.2d 880], internal citations and footnote omitted.)

- "Compensatory damages may be awarded for bodily harm without proof of pecuniary loss. The fact
  that there is no market price calculus available to measure the amount of appropriate compensation
  does not render such a tortious injury noncompensable. 'For harm to body, feelings or reputation,
  compensatory damages reasonably proportioned to the intensity and duration of the harm can be
  awarded without proof of amount other than evidence of the nature of the harm. There is no direct
  correspondence between money and harm to the body, feelings or reputation. There is no market price
  for a scar or for loss of hearing since the damages are not measured by the amount for which one
  would be willing to suffer the harm. The discretion of the judge or jury determines the amount of
  recovery, the only standard being such an amount as a reasonable person would estimate as fair
  compensation.' " (*Duarte v. Zachariah* (1994) 22 Cal.App.4th 1652, 1664–1665 [28 Cal.Rptr.2d 88],
  internal citations omitted.)

- "The general rule of damages in tort is that the injured party may recover for all detriment caused
  whether it could have been anticipated or not. In accordance with the general rule, it is settled in this
  state that mental suffering constitutes an aggravation of damages when it naturally ensues from the
  act complained of, and in this connection mental suffering includes nervousness, grief, anxiety,
  worry, shock, humiliation and indignity as well as physical pain." (*Crisci v. The Security Insurance
  Co. of New Haven, Connecticut* (1967) 66 Cal.2d 425, 433 [58 Cal.Rptr. 13, 426 P.2d 173], internal
  citations omitted.)

- "[W]here a plaintiff has undergone surgery in which a herniated disc is removed and a metallic plate
  inserted, and the jury has expressly found that defendant's negligence was a cause of plaintiff's injury,
  the failure to award any damages for pain and suffering results in a damage award that is inadequate
  as a matter of law." (*Dodson v. J. Pacific, Inc.* (2007) 154 Cal.App.4th 931, 933 [64 Cal.Rptr.3d
  920].)

- " 'To entitle a plaintiff to recover present damages for apprehended future consequences, there must
  be evidence to show such a degree of probability of their occurring as amounts to a reasonable
  certainty that they will result from the original injury.' " (*Bellman v. San Francisco High School Dist.*
  (1938) 11 Cal.2d 576, 588 [81 P.2d 894], internal citation omitted.)

- "To avoid confusion regarding the jury's task in future cases, we conclude that when future
  noneconomic damages are sought, the jury should be instructed expressly that they are to assume that
  an award of future damages is a present value sum, i.e., they are to determine the amount in current
  dollars paid at the time of judgment that will compensate a plaintiff for future pain and suffering. In
  the absence of such instruction, unless the record clearly establishes otherwise, awards of future
  damages will be considered to be stated in terms of their present or current value." (*Salgado, supra,*
  19 Cal.4th at pp. 646–647.)

*Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 1671–1675

Copyright 2007 Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

California Tort Damages (Cont.Ed.Bar) Bodily Injury, §§ 1.68–1.74

4 Levy et al., California Torts, Ch. 51, *Pain and Suffering*, §§ 51.01–51.14 (Matthew Bender)

15 California Forms of Pleading and Practice, Ch. 177, *Damages*, § 177.44 (Matthew Bender)

6 California Points and Authorities, Ch. 65, *Damages*, § 65.40 et seq. (Matthew Bender)

1 California Civil Practice (Thomson West) Torts, § 5:10

Copyright 2007 Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

### 3921.  Wrongful Death (Death of an Adult)

---

If you decide that [*name of plaintiff*] has proved [his/her] claim against [*name of defendant*] for the death of [*name of decedent*], you also must decide how much money will reasonably compensate [*name of plaintiff*] for the death of [*name of decedent*]. This compensation is called "damages."

[*Name of plaintiff*] does not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

The damages claimed by [*name of plaintiff*] fall into two categories called economic damages and noneconomic damages. You will be asked to state the two categories of damages separately on the verdict form.

[*Name of plaintiff*] claims the following economic damages:

1.    The financial support, if any, that [*name of decedent*] would have contributed to the family during either the life expectancy that [*name of decedent*] had before [his/her] death or the life expectancy of [*name of plaintiff*], whichever is shorter;

2.    The loss of gifts or benefits that [*name of plaintiff*] would have expected to receive from [*name of decedent*];

3.    Funeral and burial expenses; and

4.    The reasonable value of household services that [*name of decedent*] would have provided.

Your award of any future economic damages must be reduced to present cash value.

[*Name of plaintiff*] also claims the following noneconomic damages:

1.    The loss of [*name of decedent*]'s love, companionship, comfort, care, assistance, protection, affection, society, moral support; [and]

[2.    The loss of the enjoyment of sexual relations.]

[2.    The loss of [*name of decedent*]'s training and guidance.]

No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

–[For noneconomic damages, determine the amount in current dollars paid at the time of

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

judgment that will compensate [*name of plaintiff*] for those damages~~, and do not reduce them further to present cash value~~.[This amount of noneconomic damages should not be further reduced to present cash value because that reduction should only be performed with respect to economic damages.]]

In determining [*name of plaintiff*]'s loss, do not consider:

1.     [*Name of plaintiff*]'s grief, sorrow, or mental anguish;

2.     [*Name of decedent*]'s pain and suffering; or

3.     The poverty or wealth of [*name of plaintiff*].

In deciding a person's life expectancy, you may consider, among other factors, the average life expectancy of a person of that age, as well as that person's health, habits, activities, lifestyle, and occupation. According to [*insert source of information*], the average life expectancy of a [*insert number*]-year-old [male/female] is [*insert number*] years, and the average life expectancy of a [*insert number*]-year-old [male/female] is [*insert number*] years. This published information is evidence of how long a person is likely to live but is not conclusive. Some people live longer and others die sooner.

[In computing these damages, consider the losses suffered by all plaintiffs and return a verdict of a single amount for all plaintiffs. I will divide the amount [among/between] the plaintiffs.]

---

*New September 2003; Revised December 2005, February 2007, April 2008, December 2009*

### Directions for Use

One of the life-expectancy subjects in the second sentence of the second-to-last paragraph should be the decedent, and the other should be the plaintiff. This definition is intended to apply to the element of damages pertaining to the financial support that the decedent would have provided to the plaintiff.

Use of the life tables in *Vital Statistics of the United States*, published by the National Center for Health Statistics, is recommended. (See Life Expectancy Table—Male and Life Expectancy Table—Female, following the Damages series.)  The first column shows the age interval between the two exact ages indicated.  For example, 50–51 means the one-year interval between the fiftieth and fifty-first birthdays.

The ~~sentence~~ paragraph concerning not reducing noneconomic damages to present cash value is bracketed because the law is not clear.  It has been held that all damages, pecuniary and nonpecuniary, must be reduced to present value. (See *Fox v. Pacific Southwest Airlines* (1982) 133 Cal.App.3d 565, 569 [184 Cal.Rptr. 87]; cf. Restat 2d of Torts, § 913A [future *pecuniary* losses must be reduced to present value].)  The view of the court in *Fox* was that damages for

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

lost value of society, comfort, care, protection and companionship must be monetarily quantified, and thus become pecuniary and subject to reduction to present value. However, the California Supreme Court subsequently held that with regard to future pain and suffering, the amount that the jury is to award should already encompass the idea of today's dollars for tomorrow's loss (See *Salgado v. County of L.A.* (1998) 19 Cal.4th 629, 646–647 [80 Cal.Rptr.2d 46, 967 P.2d 585]), so there is no further reduction to present value. (See CACI No. 3904, *Present Cash Value*.) While it seems reasonable that *Salgado* should apply to wrongful death actions, no court has expressly so held.  *Include the last sentence only if both future economic and noneconomic damages are sought.*  Note that if only economic damages are to be reduced to present value, the jury must find separate amounts for economic and noneconomic damages. (See CACI No. VF-3905, *Damages for Wrongful Death (Death of an Adult)*.)

## Sources and Authority

- Code of Civil Procedure section 377.60 provides:
  A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:

  (a) The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

  (b) Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, "putative spouse" means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

  (c) A minor, whether or not qualified under subdivision (a) or (b), if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of the minor's support.

  (d) This section applies to any cause of action arising on or after January 1, 1993.

  (e) The addition of this section by Chapter 178 of the Statutes of 1992 was not intended to adversely affect the standing of any party having standing under prior law, and the standing of parties governed by that version of this section as added by Chapter 178 of the Statutes of 1992 shall be the same as specified herein as amended by Chapter 563 of the Statutes of 1996.

  (f) For the purpose of this section, "domestic partner" has the meaning provided in Section 297 of the Family Code.

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

- Code of Civil Procedure section 377.61 provides: "In an action under this article, damages may be awarded that, under all the circumstances of the case, may be just, but may not include damages recoverable under Section 377.34. The court shall determine the respective rights in an award of the persons entitled to assert the cause of action."

- "A cause of action for wrongful death is purely statutory in nature, and therefore 'exists only so far and in favor of such person as the legislative power may declare.' " (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1184 [272 Cal.Rptr. 304], internal citations omitted.)

- "There are three distinct public policy considerations involved in the legislative creation of a cause of action for wrongful death: '(1) compensation for survivors, (2) deterrence of conduct and (3) limitation, or lack thereof, upon the damages recoverable.' " (*Barrett, supra,* 222 Cal.App.3d at p. 1185, internal citation omitted.)

- "We therefore conclude, on this basis as well, that 'wrongful act' as used in section 377 means any kind of tortious act, including the tortious act of placing defective products into the stream of commerce." (*Barrett, supra,* 222 Cal.App.3d at p. 1191.)

- "In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence." (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 105 [11 Cal.Rptr.2d 468], internal citation omitted.)

- "Damages for wrongful death are not limited to compensation for losses with 'ascertainable economic value.' Rather, the measure of damages is the value of the benefits the heirs could reasonably expect to receive from the deceased if she had lived." (*Allen v. Toledo* (1980) 109 Cal.App.3d 415, 423 [167 Cal.Rptr. 270], internal citations omitted.)

- "The death of a father may also cause a special loss to the children." (*Syah v. Johnson* (1966) 247 Cal.App.2d 534, 547 [55 Cal.Rptr. 741], internal citation omitted.)

- "These benefits include the personal services, advice, and training the heirs would have received from the deceased, and the value of her society and companionship. 'The services of children, elderly parents, or nonworking spouses often do not result in measurable net income to the family unit, yet unquestionably the death of such a person represents a substantial "injury" to the family for which just compensation should be paid.' " (*Allen, supra,* 109 Cal.App.3d at p. 423, internal citations omitted.)

- The wrongful death statute "has long allowed the recovery of funeral expenses in California wrongful death actions." (*Vander Lind v. Superior Court* (1983) 146 Cal.App.3d 358, 364 [194 Cal.Rptr. 209].)

- "Where, as here, decedent was a husband and father, a significant element of damages is the loss of financial benefits he was contributing to his family by way of support at the time of his death and that support reasonably expected in the future. The total future lost support

**Preliminary Draft Only -- Not Approved by Judicial Council**

must be reduced by appropriate formula to a present lump sum which, when invested to yield the highest rate of return consistent with reasonable security, will pay the equivalent of lost future benefits at the times, in the amounts and for the period such future benefits would have been received." (*Canavin v. Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 52–521 [196 Cal.Rptr. 82], internal citations omitted.)

- "To avoid confusion regarding the jury's task in future cases, we conclude that when future noneconomic damages are sought, the jury should be instructed expressly that they are to assume that an award of future damages is a present value sum, i.e., they are to determine the amount *in current dollars paid at the time of judgment* that will compensate a plaintiff for future pain and suffering. In the absence of such instruction, unless the record clearly establishes otherwise, awards of future damages will be considered to be stated in terms of their present or current value." (*Salgado, supra,* 19 Cal.4th at pp. 646–647, original italics.)

- "The California statutes and decisions ... have been interpreted to bar the recovery of punitive damages in a wrongful death action." (*Tarasoff v. Regents of the University of California* (1976) 17 Cal.3d 425, 450 [131 Cal.Rptr. 14, 551 P.2d 334], internal citation omitted.) There is an exception to this rule for death by felony homicide for which the defendant has been convicted. (Civ. Code, § 3294(d).)

- "Punitive damages are awardable to the decedent's estate in an action by the estate representative based on the cause of action the decedent would have had if he or she had survived." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 616 [103 Cal.Rptr.2d 492], internal citation omitted.)

- "California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action." (*Krouse v. Graham* (1977) 19 Cal.3d 59, 72 [137 Cal.Rptr. 863, 562 P.2d 1022], internal citations omitted.)

- "[A] simple instruction excluding considerations of grief and sorrow in wrongful death actions will normally suffice." (*Krouse, supra,* 19 Cal.3d at p. 69.)

- "[T]he competing and conflicting interests of the respective heirs, the difficulty in ascertaining individual shares of lost economic support when dealing with minors, the lack of any reason under most circumstances to apportion the lump-sum award attributable to loss of monetary support where minors are involved, the irrelevance of the heirs' respective interests in that portion of the award pertaining to lost economic support in determining the aggregate award, and the more efficient nature of court proceedings without a jury, cumulatively establish apportionment by the court, rather than the jury, is consistent with the efficient administration of justice." (*Canavin, supra,* 148 Cal.App.3d at pp. 535–536.)

- "[W]here all statutory plaintiffs properly represented by legal counsel waive judicial apportionment, the trial court should instruct the jury to return separate verdicts unless the remaining considerations enumerated above mandate refusal." (*Canavin, supra,* 148 Cal.App.3d at p. 536.)

**Preliminary Draft Only -- Not Approved by Judicial Council**

- "We note that the court instructed the jury that in determining pecuniary loss they should consider inter alia the age, state of health and respective life expectancies of the deceased and each plaintiff but should be concerned only with 'the shorter of the life expectancies, that of one of the plaintiffs or that of the deceased. ...' This was a correct statement of the law." (*Francis v. Sauve* (1963) 222 Cal.App.2d 102, 120–121 [34 Cal.Rptr. 754], internal citation omitted.)

- "It is the shorter expectancy of life that is to be taken into consideration; for example, if, as in the case here, the expectancy of life of the parents is shorter than that of the son, the benefits to be considered are those only which might accrue during the life of the surviving parents." (*Parsons v. Easton* (1921) 184 Cal. 764, 770–771 [195 P. 419], internal citation omitted.)

- "The life expectancy of the deceased is a question of fact for the jury to decide, considering all relevant factors including the deceased's health, lifestyle and occupation. Life expectancy figures from mortality tables are admissible but are not conclusive." (*Allen, supra,* 109 Cal.App.3d at p. 424, internal citations omitted.)

### Secondary Sources

6 Witkin, Summary of California Law (10th ed. 2005) Torts, §§ 1690–1697

California Tort Damages (Cont.Ed.Bar 2d ed.) Wrongful Death, §§ 3.1–3.58

4 Levy et al., California Torts, Ch. 55, *Death and Survival Actions*, §§ 55.10–55.13 (Matthew Bender)

15 California Forms of Pleading and Practice, Ch. 177, *Damages*, §§ 177.162–177.167 (Matthew Bender)

6 California Points and Authorities, Ch. 64*, Damages: Tort*, § 64.25 (Matthew Bender)

California Civil Practice (Thomson West) Torts, §§ 23:8–23:8.2

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

### 3922.  Wrongful Death (Parents' Recovery for Death of a Minor Child)

---

If you decide that [*name of plaintiff*] has proved [his/her] claim against [*name of defendant*] for the death of [*name of minor*], you also must decide how much money will reasonably compensate [*name of plaintiff*] for the death of [*name of minor*]. This compensation is called "damages."

[*Name of plaintiff*] does not have to prove the exact amount of these damages. However, you must not speculate or guess in awarding damages.

The damages claimed by [*name of plaintiff*] fall into two categories called economic damages and noneconomic damages. You will be asked to state the two categories of damages separately on the verdict form.

[*Name of plaintiff*] claims the following economic damages:

1.  The value of the financial support, if any, that [*name of minor*] would have contributed to the family during either the life expectancy that [*name of minor*] had before [his/her] death or the life expectancy of [*name of plaintiff*], whichever is shorter;

2.  The loss of gifts or benefits that [*name of plaintiff*] could have expected to receive from [*name of minor*];

3.  Funeral and burial expenses; and

4.  The reasonable value of household services that [*name of minor*] would have provided.

Your award of any future economic damages must be reduced to present cash value.

[*Name of plaintiff*] also claims the following noneconomic damages: The loss of [*name of minor*]'s love, companionship, comfort, care, assistance, protection, affection, society, and moral support.

No fixed standard exists for deciding the amount of noneconomic damages. You must use your judgment to decide a reasonable amount based on the evidence and your common sense.

[For noneconomic damages, determine the amount in current dollars paid at the time of judgment that will compensate [*name of plaintiff*] for those damages, ~~and do not reduce them further to present cash value~~. [This amount of noneconomic damages should not be further reduced to present cash value because that reduction should only be performed with respect to economic damages.]]

Do not include in your award any compensation for the following:

1.  [*Name of plaintiff*]'s grief, sorrow, or mental anguish; or

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

**2.        [*Name of minor*]'s pain and suffering.**

**In computing these damages, you should deduct the present cash value of the probable costs of [*name of minor*]'s support and education.**

**In deciding a person's life expectancy, consider, among other factors, that person's health, habits, activities, lifestyle, and occupation. Life expectancy tables are evidence of a person's life expectancy but are not conclusive.**

**[In computing these damages, consider the losses suffered by all plaintiffs and return a verdict of a single amount for all plaintiffs. I will divide the amount [among/between] the plaintiffs.]**

*New September 2003; Revised December 2005, April 2008, December 2009*

### Directions for Use

Use of the life tables in *Vital Statistics of the United States*, published by the National Center for Health Statistics, is recommended. (See Life Expectancy Table—Male and Life Expectancy Table—Female, following the Damages series.)  The first column shows the age interval between the two exact ages indicated.  For example, 50–51 means the one-year interval between the fiftieth and fifty-first birthdays.

The sentence paragraph concerning not reducing noneconomic damages to present cash value is bracketed because the law is not clear.  It has been held that all damages, pecuniary and nonpecuniary, must be reduced to present value. (See *Fox v. Pacific Southwest Airlines* (1982) 133 Cal.App.3d 565, 569 [184 Cal.Rptr. 87]; cf. Restat 2d of Torts, § 913A [future *pecuniary* losses must be reduced to present value].)  The view of the court in *Fox* was that damages for lost value of society, comfort, care, protection and companionship must be monetarily quantified, and thus become pecuniary and subject to reduction to present value.  However, the California Supreme Court subsequently held that with regard to future pain and suffering, the amount that the jury is to award should already encompass the idea of today's dollars for tomorrow's loss (See *Salgado v. County of L.A.* (1998) 19 Cal.4th 629, 646–647 [80 Cal.Rptr.2d 46, 967 P.2d 585]), so there is no further reduction to present value. (See CACI No. 3904, *Present Cash Value.*) While it seems reasonable that *Salgado* should apply to wrongful death actions, no court has expressly so held.  Include the last sentence only if both future economic and noneconomic damages are sought.  Note that if only economic damages are to be reduced to present value, the jury must find separate amounts for economic and noneconomic damages. (See CACI No. VF-3906, *Damages for Wrongful Death (Parents' Recovery for Death of a Minor Child)*.)

### Sources and Authority

- Code of Civil Procedure section 377.60 provides:

     A cause of action for the death of a person caused by the wrongful act or neglect of another may be asserted by any of the following persons or by the decedent's personal representative on their behalf:

**Preliminary Draft Only -- Not Approved by Judicial Council**

    (a)    The decedent's surviving spouse, domestic partner, children, and issue of deceased children, or, if there is no surviving issue of the decedent, the persons, including the surviving spouse or domestic partner, who would be entitled to the property of the decedent by intestate succession.

    (b)    Whether or not qualified under subdivision (a), if they were dependent on the decedent, the putative spouse, children of the putative spouse, stepchildren, or parents. As used in this subdivision, 'putative spouse' means the surviving spouse of a void or voidable marriage who is found by the court to have believed in good faith that the marriage to the decedent was valid.

    (c)    A minor, whether or not qualified under subdivision (a) or (b), if, at the time of the decedent's death, the minor resided for the previous 180 days in the decedent's household and was dependent on the decedent for one-half or more of the minor's support.

    (d)    This section applies to any cause of action arising on or after January 1, 1993.

    (e)    The addition of this section by Chapter 178 of the Statutes of 1992 was not intended to adversely affect the standing of any party having standing under prior law, and the standing of parties governed by that version of this section as added by Chapter 178 of the Statutes of 1992 shall be the same as specified herein as amended by Chapter 563 of the Statutes of 1996.

    (f)    For the purpose of this section, "domestic partner" has the meaning provided in Section 297 of the Family Code.

- Code of Civil Procedure section 377.61 provides: "In an action under this article, damages may be awarded that, under all the circumstances of the case, may be just, but may not include damages recoverable under Section 377.34. The court shall determine the respective rights in an award of the persons entitled to assert the cause of action."

- "A cause of action for wrongful death is purely statutory in nature, and therefore 'exists only so far and in favor of such person as the legislative power may declare.' " (*Barrett v. Superior Court* (1990) 222 Cal.App.3d 1176, 1184 [272 Cal.Rptr. 304], internal citations omitted.)

- "Where the deceased was a minor child, recovery is based on the present value of reasonably probable future services and contributions, deducting the probable cost of rearing the child." (6 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 1695.)

- "There is authority in such cases for deducting from the loss factors-including the pecuniary loss a parent suffers by being deprived of the comfort, protection and society of a child-the prospective cost to the parent of the child's support and education. [¶] Although neither the loss factors nor such offsets are readily measurable in a particular case—nor need they be measured in precise terms of dollars and cents—in the case at bench the jury had before it for consideration a court order subject

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

to mathematical computation which required plaintiff to pay support for his child in the sum of $125 monthly. The jury was entitled and required to take into consideration the prospective cost to plaintiff of the boy's maintenance and rearing, and they may well have offset their reasonable appraisal of such costs, under the general verdict, against any pecuniary loss which they found that plaintiff suffered." (*Fields v. Riley* (1969) 1 Cal.App.3d 308, 315 [81 Cal.Rptr. 671], internal citations omitted.)

- "There are three distinct public policy considerations involved in the legislative creation of a cause of action for wrongful death: '(1) compensation for survivors, (2) deterrence of conduct and (3) limitation, or lack thereof, upon the damages recoverable.' " (*Barrett, supra,* 222 Cal.App.3d at p. 1185, internal citation omitted.)

- "We therefore conclude, on this basis as well, that 'wrongful act' as used in section 377 means any kind of tortious act, including the tortious act of placing defective products into the stream of commerce." (*Barrett, supra,* 222 Cal.App.3d at p. 1191.)

- "In any action for wrongful death resulting from negligence, the complaint must contain allegations as to all the elements of actionable negligence." (*Jacoves v. United Merchandising Corp.* (1992) 9 Cal.App.4th 88, 105 [11 Cal.Rptr.2d 468], internal citation omitted.)

- "Damages for wrongful death are not limited to compensation for losses with 'ascertainable economic value.' Rather, the measure of damages is the value of the benefits the heirs could reasonably expect to receive from the deceased if she had lived." (*Allen v. Toledo* (1980) 109 Cal.App.3d 415, 423 [167 Cal.Rptr. 270], internal citations omitted.)

- The wrongful death statute "has long allowed the recovery of funeral expenses in California wrongful death actions." (*Vander Lind v. Superior Court* (1983) 146 Cal.App.3d 358, 364 [194 Cal.Rptr. 209].)

- "The California statutes and decisions ... have been interpreted to bar the recovery of punitive damages in a wrongful death action." (*Tarasoff v. Regents of Univ. of Cal.* (1976) 17 Cal.3d 425, 450 [131 Cal.Rptr. 14, 551 P.2d 334], internal citation omitted.) There is an exception to this rule for death by felony homicide for which the defendant has been convicted. (Civ. Code, § 3294(d).)

- "Punitive damages are awardable to the decedent's estate in an action by the estate representative based on the cause of action the decedent would have had if he or she had survived." (*Rufo v. Simpson* (2001) 86 Cal.App.4th 573, 616 [103 Cal.Rptr.2d 492], internal citation omitted.)

- "California cases have uniformly held that damages for mental and emotional distress, including grief and sorrow, are not recoverable in a wrongful death action." (*Krouse v. Graham* (1977) 19 Cal.3d 59, 72 [137 Cal.Rptr. 863, 562 P.2d 1022], internal citations omitted.)

- "[A] simple instruction excluding considerations of grief and sorrow in wrongful death actions will normally suffice." (*Krouse, supra,* 19 Cal.3d at p. 69.)

- "To avoid confusion regarding the jury's task in future cases, we conclude that when future noneconomic damages are sought, the jury should be instructed expressly that they are to assume that

**Preliminary Draft Only -- Not Approved by Judicial Council**

an award of future damages is a present value sum, i.e., they are to determine the amount *in current dollars paid at the time of judgment* that will compensate a plaintiff for future pain and suffering. In the absence of such instruction, unless the record clearly establishes otherwise, awards of future damages will be considered to be stated in terms of their present or current value." (*Salgado, supra,* 19 Cal.4th at pp. 646–647, original italics.)

- "[T]he competing and conflicting interests of the respective heirs, the difficulty in ascertaining individual shares of lost economic support when dealing with minors, the lack of any reason under most circumstances to apportion the lump-sum award attributable to loss of monetary support where minors are involved, the irrelevance of the heirs' respective interests in that portion of the award pertaining to lost economic support in determining the aggregate award, and the more efficient nature of court proceedings without a jury, cumulatively establish [that] apportionment by the court, rather than the jury, is consistent with the efficient administration of justice." (*Canavin v. Pacific Southwest Airlines* (1983) 148 Cal.App.3d 512, 535–536 [196 Cal.Rptr. 82].)

- "[W]here all statutory plaintiffs properly represented by legal counsel waive judicial apportionment, the trial court should instruct the jury to return separate verdicts unless the remaining considerations enumerated above mandate refusal." (*Canavin, supra,* 148 Cal.App.3d at p. 536.)

- "We note that the court instructed the jury that in determining pecuniary loss they should consider inter alia the age, state of health and respective life expectancies of the deceased and each plaintiff but should be concerned only with 'the shorter of the life expectancies, that of one of the plaintiffs or that of the deceased. …' This was a correct statement of the law." (*Francis v. Sauve* (1963) 222 Cal.App.2d 102, 120–121 [34 Cal.Rptr. 754], internal citation omitted.)

- "It is the shorter expectancy of life that is to be taken into consideration; for example, if, as in the case here, the expectancy of life of the parents is shorter than that of the son, the benefits to be considered are those only which might accrue during the life of the surviving parents." (*Parsons v. Easton* (1921) 184 Cal. 764, 770–771 [195 P. 419], internal citation omitted.)

- "The life expectancy of the deceased is a question of fact for the jury to decide, considering all relevant factors including the deceased's health, lifestyle and occupation. Life expectancy figures from mortality tables are admissible but are not conclusive." (*Allen ~~v. Toledo, supra,~~ ~~(1980)~~* 109 Cal.App.3d ~~415,~~at p. 424 ~~[167 Cal.Rptr. 270]~~, internal citations omitted.)

### *Secondary Sources*

6 Witkin, Summary of California Law (10th ed. 2005) Torts, § 1695

California Tort Damages (Cont.Ed.Bar) Wrongful Death, §§ 3.1–3.52

4 Levy et al., California Torts, Ch. 55, *Death and Survival Actions*, §§ 55.10–55.13 (Matthew Bender)

15 California Forms of Pleading and Practice, Ch. 177, *Damages*, §§ 177.162–177.167 (Matthew Bender)

6 California Points and Authorities, Ch. 64, *Damages: Tort*, § 64.25 (Matthew Bender)

**Preliminary Draft Only -- Not Approved by Judicial Council**

2 California Civil Practice: Torts (Thomson West) §§ 23:8–23:8.2

151

**Preliminary Draft Only -- Not Approved by Judicial Council**

**3960.** ~~Contributory Negligence~~<u>Comparative Fault of Plaintiff</u>—**General Verdict**

---

**If you decide that [*name of plaintiff*]'s negligence combined with [*name of defendant*]'s [negligence/conduct/product] in causing [*name of plaintiff*]'s harm, then you must decide the percentage of responsibility for the harm that you attribute to each of them.**

**First, decide the total amount of [*name of plaintiff*]'s damages. Then decide the percentage of responsibility that [*name of plaintiff*] and [*name of defendant*] have for the damages. Then reduce the total damages by the percentage of responsibility that you attribute to [*name of plaintiff*].**

**After you make these calculations, state the reduced damage award in your verdict.**

---

*New September 2003<u>; Revised December 2009</u>*

**Sources and Authority**

- "In determining to what degree the injury was due to the fault of the plaintiff, it is logically essential that the plaintiff's negligence be weighed against the combined total of all other causative negligence; moreover, inasmuch as a plaintiff's actual damages do not vary by virtue of the particular defendants who happen to be before the court, we do not think that the damages which a plaintiff may recover against defendants who are joint and severally liable should fluctuate in such a manner." (*American Motorcycle Assn. v. Superior Court* (1978) 20 Cal.3d 578, 590, fn. 2 [146 Cal.Rptr. 182, 578 P.2d 899].)

- "Proposition 51 ... retains the joint liability of all tortfeasors, regardless of their respective shares of fault, with respect to all objectively provable expenses and monetary losses. On the other hand, the more intangible and subjective categories of damage were limited by Proposition 51 to a rule of strict proportionate liability. With respect to these noneconomic damages, the plaintiff alone now assumes the risk that a proportionate contribution cannot be obtained from each person responsible for the injury." (*DaFonte v. Up-Right, Inc.* (1992) 2 Cal.4th 593, 600 [7 Cal.Rptr.2d 238, 828 P.2d 140].)

***Secondary Sources***

15 California Forms of Pleading and Practice, Ch. 177, *Damages* <u>§ 177.45 </u>(Matthew Bender)

<u>1</u>6 California Points and Authorities, Ch. <u>1</u>65, *~~Damages~~*<u>Negligence</u> § 165.380 (Matthew Bender)

Preliminary Draft Only -- Not Approved by Judicial Council

### 4420.  Affirmative Defense--Information Was Readily Ascertainable by Proper Means

---

[*Name of defendant*] **did not misappropriate** [*name of plaintiff*]**'s trade secret[s] if** [*name of defendant*] **proves that the** [*select short term to describe, e.g., information*] **[was/were] readily ascertainable by proper means at the time of the alleged [acquisition/use/ [or] disclosure].**

**There is no fixed standard for determining what is "readily ascertainable by proper means."  In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials.  On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.**

---

*New December 2007; Revised December 2009*

### Directions for Use

Give also CACI No. 4408, *Improper Means of Acquiring Trade Secret*.

One case has suggested in a footnote that in order for the defense to apply, the defendant must have actually obtained plaintiff's secrets through readily ascertainable means rather than improperly. (See *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 21–22, fn. 9 [286 Cal.Rptr. 518].)  Such a requirement would not constitute an affirmative defense but rather would be a denial of the improper-means element of the plaintiff's claim. (See 5 Witkin, California Procedure (4th ed. 1996) Pleadings, § 1081 [affirmative defense admits the truth of the essential allegations of the complaint].)  Because the advisory committee believes that this is an affirmative defense, no such requirement has been included in this instruction. (See *San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1542–1543 [67 Cal.Rptr.3d 54] [triable issue of fact as to whether information was readily ascertainable, that is, whether defendant *could have* replicated it within short period of time].)

### Sources and Authority

- Civil Code section 3426.1(d)(1) provides:

  (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

    (1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use;

- "The Legislative Committee Comment [to Civ. Code, § 3426.1] further explains the original draft defined a trade secret in part as 'not being readily ascertainable by proper means' and that 'the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation. Information is readily ascertainable if it is available in trade journals, reference books, or published materials.' " (*DVD Copy Control Ass'n v. Bunner* (2003) 31 Cal.4th

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

864, 899 [4 Cal.Rptr.3d 69, 75 P.3d 1], conc. opn. of ~~Moreno~~Werdegar, J.; see Legis. Comm.
Comment (Senate), 1984 Addition.)

- "The focus of the first part of the statutory definition is on whether the information is generally
  known to or readily ascertainable by business competitors or others to whom the information
  would have some economic value.  Information that is readily ascertainable by a business
  competitor derives no independent value from not being generally known." (*Syngenta Crop
  Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1172 [42 Cal.Rptr.3d 191], internal
  citations omitted.)

- "With respect to the general availability of customer information, courts are reluctant to protect
  customer lists to the extent they embody information which is 'readily ascertainable' through
  public sources, such as business directories. On the other hand, where the employer has expended
  time and effort identifying customers with particular needs or characteristics, courts will prohibit
  former employees from using this information to capture a share of the market. Such lists are to
  be distinguished from mere identities and locations of customers where anyone could easily
  identify the entities as potential customers. As a general principle, the more difficult information
  is to obtain, and the more time and resources expended by an employer in gathering it, the more
  likely a court will find such information constitutes a trade secret." (*Morlife, Inc. v. Perry* (1997)
  56 Cal.App.4th 1514, 1521–1522 [66 Cal.Rptr.2d 731], internal citations omitted.)

- "[Defendant] argues that even if reverse engineering … did not actually occur, the binder contents
  were not trade secrets because they could have been reverse engineered—that is, they were
  readily ascertainable. … Considering the length of time that each proposal took to create and
  finalize and the urgency with which four of the project owners impressed upon the prospective
  contractors to begin the work, we cannot overlook the possibility that the information was not
  readily ascertainable in the circumstances presented. … Thus, a triable issue of fact exists as to
  whether the entire proposal for each project was indeed readily ascertainable—that is, whether
  [defendant] could have replicated each offer within the short period it claimed to have needed."
  (*San Jose Construction, Inc., supra,* 155 Cal.App.4th at pp. 1542–1543, footnote omitted.)

- "While ease of ascertainability is irrelevant to the definition of a trade secret, 'the assertion that a
  matter is readily ascertainable by proper means remains available as a defense to a claim of
  misappropriation.' Therefore, if the defendants can convince the finder of fact at trial (1) that 'it is
  a virtual certainty that anyone who manufactures' certain types of products uses rubber rollers, (2)
  that the manufacturers of those products are easily identifiable, and (3) that the defendants'
  knowledge of the plaintiff's customers resulted from that identification process and not from the
  plaintiff's records, then the defendants may establish a defense to the misappropriation claim. That
  defense, however, will be based upon an absence of misappropriation, rather than the absence of a
  trade secret." (*A~~ABBA~~ Rubber Co.*, *supra,* ~~v. Seaquist~~ ~~(1991)~~ 235 Cal.App.3d at pp.~~1~~, 21–22, fn.
  9 ~~[286 Cal.Rptr. 518]~~, internal citations omitted.)

- "[T]he evidence established that [plaintiff's] customer list and related information was the product
  of a substantial amount of time, expense and effort on the part of [plaintiff]. Moreover, the nature
  and character of the subject customer information, i.e., billing rates, key contacts, specialized
  requirements and markup rates, is sophisticated information and irrefutably of commercial value
  and not readily ascertainable to other competitors. Thus, [plaintiff's] customer list and related

**Preliminary Draft Only -- Not Approved by Judicial Council**

proprietary information satisfy the first prong of the definition of 'trade secret' under section 3426.1." (*Courtesy Temporary Serv., Inc. v. Camacho* (1990) 222 Cal.App.3d 1278, 1288 [272 Cal.Rptr. 352].)

- "In viewing the evidence presented in the light most favorable to the prevailing party, it is difficult to find a protectable trade secret as that term exists under Civil Code section 3426.1, subdivision (d). While the information sought to be protected here, that is lists of customers who operate manufacturing concerns and who need shipping supplies to ship their products to market, may not be generally known to the public, they certainly would be known or readily ascertainable to other persons in the shipping business. The compilation process in this case is neither sophisticated nor difficult nor particularly time consuming. The evidence presented shows that the shipping business is very competitive and that manufacturers will often deal with more than one company at a time. There is no evidence that all of appellant's competition comes from respondents' new employer. Obviously, all the competitors have secured the same information that appellant claims and, in all likelihood, did so in the same manner as appellant -- a process described herein by respondents." (*American Paper & Packaging Prods., Inc. v. Kirgan* (1986) 183 Cal.App.3d 1318, 1326 [228 Cal.Rptr. 713].)

*Secondary Sources*

1 Milgrim on Trade Secrets, Ch. 1, *Definitional Aspects*, § 1.07[1] (Matthew Bender)

3 Levy et al., California Torts, Ch. 40, *Fraud and Deceit and Other Business Torts*, §§ 40.52[1], 40.53[1][b] (Matthew Bender)

49 California Forms of Pleading and Practice, Ch. 565, *Unfair Competition*, § 565.103[4][a] (Matthew Bender)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

## 5000.  Duties of the Judge and Jury

---

Members of the jury, you have now heard all the evidence [and the closing arguments of the attorneys]. [The attorneys will have one last chance to talk to you in closing argument. But before they do, it] [It] is my duty to instruct you on the law that applies to this case. You must follow these instructions [as well as those that I previously gave you]. You will have a copy of my instructions with you when you go to the jury room to deliberate. [I have provided each of you with your own copy of the instructions.] [I will display each instruction on the screen.]

You must decide what the facts are. You must consider all the evidence and then decide what you think happened. You must decide the facts based on the evidence admitted in this trial. Do not do any research on your own or as a group. Do not use dictionaries, the Internet, or other reference materials. Do not investigate the case or conduct any experiments. Do not contact anyone to assist you, such as a family accountant, doctor, or lawyer. Do not visit or view the scene of any event involved in this case. If you happen to pass by the scene, do not stop or investigate. All jurors must see or hear the same evidence at the same time. [Do not read, listen to, or watch any news accounts of this trial.] You must not let bias, sympathy, prejudice, or public opinion influence your decision.

I will now tell you the law that you must follow to reach your verdict. You must follow the law exactly as I give it to you, even if you disagree with it. If the attorneys [have said/say] anything different about what the law means, you must follow what I say.

In reaching your verdict, do not guess what I think your verdict should be from something I may have said or done.

Pay careful attention to all the instructions that I give you. All the instructions are important because together they state the law that you will use in this case. You must consider all of the instructions together.

After you have decided what the facts are, you may find that some instructions do not apply. In that case, follow the instructions that do apply and use them together with the facts to reach your verdict.

If I repeat any ideas or rules of law during my instructions, that does not mean that these ideas or rules are more important than the others are. In addition, the order in which the instructions are given does not make any difference.

[Most of the instructions are typed. However, some handwritten or typewritten words may have been added, and some words may have been deleted. Do not discuss or consider why words may have been added or deleted. Please treat all the words the same, no matter what their format. Simply accept the instruction in its final form.]

---

*New September 2003; Revised April 2004, October 2004, February 2005, December 2009*

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

### Directions for Use

As indicated by the brackets in the first paragraph, this instruction can be read either before or after closing arguments. The advisory committee recommends that this instruction be read to the jury before reading instructions on the substantive law.

### Sources and Authority

- Code of Civil Procedure section 608 provides that "[i]n charging the jury the court may state to them all matters of law which it thinks necessary for their information in giving their verdict." It also provides that the court "must inform the jury that they are the exclusive judges of all questions of fact." (See also Code Civ. Proc., § 592.)

- Evidence Code section 312(a) provides that "[e]xcept as otherwise provided by law, where the trial is by jury [a]ll questions of fact are to be decided by the jury."

- An instruction to disregard any appearance of bias on the part of the judge is proper. (*Gist v. French* (1955) 136 Cal.App.2d 247, 257-259 [288 P.2d 1003], disapproved on other grounds in *Deshotel v. Atchinson, Topeka & Santa Fe Ry. Co.* (1958) 50 Cal.2d 664, 667 [328 P.2d 449] and *West v. City of San Diego* (1960) 54 Cal.2d 469, 478-479 [6 Cal.Rptr. 289, 353 P.2d 929].)

- Jurors must avoid bias: " 'The right to unbiased and unprejudiced jurors is an inseparable and inalienable part of the right to trial by jury guaranteed by the constitution.' " (*Weathers v. Kaiser Foundation Hospitals* (1971) 5 Cal.3d 98, 110 [95 Cal.Rptr. 516, 485 P.2d 1132], internal citations omitted.) Evidence of racial prejudice and bias on the part of jurors amounts to misconduct and may constitute grounds for ordering a new trial. (*Ibid*.)

- An instruction to consider all the instructions together can help avoid instructional errors of conflict, omission, and undue emphasis. (*Escamilla v. Marshburn Brothers* (1975) 48 Cal.App.3d 472, 484 [121 Cal.Rptr. 891].)

- Providing an instruction stating that, depending on what the jury finds to be the facts, some of the instructions may not apply can help avoid reversal on the grounds of misleading jury instructions. (See *Rodgers v. Kemper Construction Co.* (1975) 50 Cal.App.3d 608, 629–630 [124 Cal.Rptr. 143].)

- In *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 57–59 [118 Cal.Rptr. 184, 529 P.2d 608], the Supreme Court held that the giving of cautionary instructions stating that no undue emphasis was intended by repetition and that the judge did not intend to imply how any issue should be decided, ought to be considered in weighing the net effect of the instructions on the jury.

### *Secondary Sources*

7 Witkin, California Procedure (4th ed. 1997) Trial, § 268

4 California Trial Guide, Unit 91, *Jury Deliberations and Rendition of Verdict*, § 91.20 (Matthew Bender)

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

28 California Forms of Pleading and Practice, Ch. 326, *Jury Instructions*, § 326.21 (Matthew Bender)

Preliminary Draft Only -- Not Approved by Judicial Council

### 5009.  Predeliberation Instructions

When you go to the jury room, the first thing you should do is choose a presiding juror. The presiding juror should see to it that your discussions are orderly and that everyone has a fair chance to be heard.

It is your duty to talk with one another in the jury room and to consider the views of all the jurors. Each of you must decide the case for yourself, but only after you have considered the evidence with the other members of the jury. Feel free to change your mind if you are convinced that your position should be different. You should all try to agree. But do not give up your honest beliefs just because the others think differently.

Please do not state your opinions too strongly at the beginning of your deliberations **or immediately announce how you plan to vote as it may interfere with an open discussion**. ~~Also, do not immediately announce how you plan to vote.~~ Keep an open mind so that you and your fellow jurors can easily share ideas about the case.

You should use your common sense, but do not use or consider any special training or unique personal experience that any of you have in matters involved in this case. Your training or experience is not a part of the evidence received in this case.

Sometimes jurors disagree or have questions about the evidence or about what the witnesses said in their testimony. If that happens, you may ask to have testimony read back to you **[**or ask to see any exhibits admitted into evidence that have not already been provided to you**]**. Also, jurors may need further explanation about the laws that apply to the case. If this happens during your discussions, write down your questions and give them to the [clerk/bailiff/court attendant]. **I will talk with the attorneys before I answer so it may take some time. You should continue your deliberations while you wait for my answer.** I will do my best to answer them. When you write me a note, do not tell me how you voted on an issue until I ask for this information in open court.

~~[At least nine jurors must agree on each verdict and on each question that you are asked to answer. However, the same jurors do not have to agree on each verdict or each question. Any nine jurors is sufficient. As soon as you have agreed on a verdict and answered all the questions as instructed, the presiding juror must date and sign the form(s) and notify the [clerk/ bailiff/court attendant].~~

~~[*or*]~~

**[**At least nine jurors must agree on a verdict. **When you have finished filling out the form, your presiding juror must write the date and sign it at the bottom and then notify the [bailiff/clerk/court attendant] that you are ready to present your verdict in the courtroom.**~~As soon as you have agreed on a verdict, the presiding juror must date and sign the form and notify the [clerk/bailiff/court attendant].~~**]**

Your decision must be based on your personal evaluation of the evidence presented in the

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

case. Each of you may be asked in open court how you voted on each question.

While I know you would not do this, I am required to advise you that you must not base your decision on chance, such as a flip of a coin. If you decide to award damages, you may not agree in advance to simply add up the amounts each juror thinks is right and then make the average your verdict.

You may take breaks, but do not discuss this case with anyone, including each other, until all of you are back in the jury room.

---

*New September 2003; Revised April 2004, October 2004, February 2007; December 2009*

## Directions for Use

The advisory committee recommends that this instruction be read to the jury after closing arguments and after reading instructions on the substantive law.

For the sixth paragraph, read the first option if a special verdict form is to be used and the special verdict instruction (CACI No. 5012, *Introduction to Special Verdict Form*) is not also being read. Read the sixth paragraphsecond option if a general verdict form is to be used.  If a special verdict will be used, give CACI No. 5012, *Introduction to Special Verdict Form.*

Judges may want to provide each juror with a copy of the verdict form so that the jurors can use it to keep track of how they vote. Jurors can be instructed that this copy is for their personal use only and that the presiding juror will be given the official verdict form to record the jury's decision. Judges may also want to advise jurors that they may be polled in open court regarding their individual verdicts.

Delete the reference to reading back testimony if the proceedings are not being recorded.

## Sources and Authority

- Code of Civil Procedure section 613 provides, in part: "When the case is finally submitted to the jury, they may decide in court or retire for deliberation; if they retire, they must be kept together, in some convenient place, under charge of an officer, until at least three-fourths of them agree upon a verdict or are discharged by the court."

- Code of Civil Procedure section 614 provides: "After the jury have retired for deliberation, if there be a disagreement between them as to any part of the testimony, or if they desire to be informed of any point of law arising in the cause, they may require the officer to conduct them into court. Upon their being brought into court, the information required must be given in the presence of, or after notice to, the parties or counsel."

- Code of Civil Procedure section 618 and article I, section 16, of the California Constitution provide that three-fourths of the jurors must agree to a verdict in a civil case.

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

- The prohibition on chance or quotient verdict is stated in Code of Civil Procedure section 657, which provides that a verdict may be vacated and a new trial ordered "whenever any one or more of the jurors have been induced to assent to any general or special verdict, or to a finding on any question submitted to them by the court, by a resort to the determination of chance." (See also *Chronakis v. Windsor* (1993) 14 Cal.App.4th 1058, 1064–1065 [18 Cal.Rptr.2d 106].)

- Jurors should be encouraged to deliberate on the case. (*Vomaska v. City of San Diego* (1997) 55 Cal.App.4th 905, 911 [64 Cal.Rptr.2d 492].)

- The jurors may properly be advised of the duty to hear and consider each other's arguments with open minds, rather than preventing agreement by stubbornly sticking to their first impressions. (*Cook v. Los Angeles Ry. Corp.* (1939) 13 Cal.2d 591, 594 [91 P.2d 118].)

- "The trial court properly denied the motion for new trial on the ground that [the plaintiff] did not demonstrate the jury reached a chance or quotient verdict.  The jury agreed on a high and a low figure and, before calculating an average, they further agreed to adjust downward the high figure and to adjust upward the low figure.  There is no evidence that this average was adopted without further consideration or that the jury agreed at any time to adopt an average and abide by the agreement without further discussion or deliberation." (*Lara v. Nevitt* (2004) 123 Cal.App.4th 454, 462–463 [19 Cal.Rptr.3d 865].)

***Secondary Sources***

7 Witkin, California Procedure (4th ed. 1997) Trial, §§ 330, 336

4 California Trial Guide, Unit 91, *Jury Deliberations and Rendition of Verdict*, § 91.01 (Matthew Bender)

28 California Forms of Pleading and Practice, Ch. 326, *Jury Instructions*, § 326.32, Ch. 326A, *Jury Verdicts*, § 326A.14 (Matthew Bender)

**Preliminary Draft Only -- Not Approved by Judicial Council**

## 5012.  Introduction to Special Verdict Form

I will give you [a] verdict form[s] with questions you must answer. I have already instructed you on the law that you are to use in answering these questions. You must follow my instructions and the form[s] carefully. You must consider each question separately. Although you may discuss the evidence and the issues to be decided in any order, you must answer the questions on the verdict form[s] in the order they appear. After you answer a question, the form tells you what to do next. All 12 of you must deliberate on and answer each question.  At least 9 of you must agree on an answer before all of you can move on to the next question. However, the same 9 or more people do not have to agree on each answer.

When you have finished filling out the form[s], your presiding juror must write the date and sign it at the bottom [of the last page]. ~~Return the form[s] to~~and then notify the [~~me/the~~ bailiff/~~the~~ clerk/~~the~~ court attendant] that you are ready to present your verdict in the courtroom~~when you have finished~~.

*New September 2003; Revised April 2004, October 2008, December 2009*

### Directions for Use

If this instruction is read, do not read the sixth paragraph of CACI No. 5009, *Predeliberation Instructions*.

### Sources and Authority

- Code of Civil Procedure section 624 provides: "The verdict of a jury is either general or special. A general verdict is that by which they pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant; a special verdict is that by which the jury find the facts only, leaving the judgment to the Court. The special verdict must present the conclusions of fact as established by the evidence, and not the evidence to prove them; and those conclusions of fact must be so presented as that nothing shall remain to the Court but to draw from them conclusions of law."

- Code of Civil Procedure section 625 provides: "In all cases the court may direct the jury to find a special verdict in writing, upon all, or any of the issues, and in all cases may instruct them, if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon. In all cases in which the issue of punitive damages is presented to the jury the court shall direct the jury to find a special verdict in writing separating punitive damages from compensatory damages. The special verdict or finding must be filed with the clerk and entered upon the minutes. Where a special finding of facts is inconsistent with the general verdict, the former controls the latter, and the court must give judgment accordingly."

- "A special verdict presents to the jury each ultimate fact in the case, so that 'nothing shall remain to the Court but to draw from them conclusions of law.' This procedure presents certain problems: ' "The requirement that the jury must resolve every controverted issue is one of the recognized pitfalls

Copyright Judicial Council of California

Preliminary Draft Only -- Not Approved by Judicial Council

of special verdicts. '[T]he possibility of a defective or incomplete special verdict, or possibly no verdict at all, is much greater than with a general verdict that is tested by special findings ... .' " ' With a special verdict, we do not imply findings on all issues in favor of the prevailing party, as with a general verdict. The verdict's correctness must be analyzed as a matter of law." (*Trujillo v. North County Transit Dist.* (1998) 63 Cal.App.4th 280, 285 [73 Cal.Rptr.2d 596], internal citations omitted.)

- "When a jury is composed of 12 persons, it is sufficient if *any* nine jurors arrive at each special verdict, regardless of the jurors' votes on other special verdict questions." (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 255 [92 Cal.Rptr.3d 862, 206 P.3d 403], original italics.)

- "Appellate courts differ concerning the use of special verdicts. In one case the court said, 'we should utilize opportunities to force counsel into requesting special verdicts.' In contrast, a more recent decision included the negative view: 'Toward this end we advise that special findings be requested of juries only when there is a compelling need to do so. Absent strong reason to the contrary their use should be discouraged.' Obviously, it is easier to tell after the fact, rather than before, whether the special verdict is helpful in disclosing the jury conclusions leading to the end result." (*All-West Design, Inc. v. Boozer* (1986) 183 Cal.App.3d 1212, 1221 [228 Cal.Rptr. 736], internal citations omitted.)

- "[W]e begin with the requirement that at least nine of twelve jurors agree that each element of a cause of action has been proved by a preponderance of the evidence. The elements of a cause of action constitute the essential or ultimate facts in a civil case comparable to the elements of a single, discrete criminal offense in a criminal case. Analogizing a civil 'cause of action' to a single, discrete criminal offense, and applying the criminal law jury agreement principles to civil law, we conclude that jurors need not agree from among a number of alternative acts which act is proved, so long as the jurors agree that each element of the cause of action is proved." (*Stoner v. Williams* (1996) 46 Cal.App.4th 986, 1002 [54 Cal.Rptr.2d 243, footnote omitted.])

- "In civil cases in which there exist multiple causes of action for which multiple or alternative acts could support elements of more than one cause of action, possible jury confusion could result as to whether a specific cause of action is proved. In those cases, … we presume that jury instructions may be appropriate to inform the jury that it must agree on specific elements of each specific cause of action. Yet, this still does not require that the jurors agree on exactly how each particular element of a particular cause of action is proved." (*Stoner, supra,* 46 Cal.App.4th at p. 1002.)

- "[A] juror who dissented from a special verdict finding negligence should not be disqualified from fully participating in the jury's further deliberations, including the determination of proximate cause. The jury is to determine all questions submitted to it, and when the jury is composed of twelve persons, each should participate as to each verdict submitted to it. To hold that a juror may be disqualified by a special verdict on negligence from participation in the next special verdict would deny the parties of 'the right to a jury of 12 persons deliberating on all issues.' Permitting any nine jurors to arrive at each special verdict best serves the purpose of less-than-unanimous verdicts, overcoming minor disagreements and avoiding costly mistrials. Once nine jurors have found a party negligent, dissenting jurors can accept the finding and participate in determining proximate cause just as they may participate in apportioning liability, and we may not assume that the dissenting jurors will violate their oaths to deliberate honestly and conscientiously on the proximate cause issue."

Copyright Judicial Council of California

**Preliminary Draft Only -- Not Approved by Judicial Council**

(*Resch v. Volkswagen of America, Inc.* (1984) 36 Cal.3d 676, 682 [205 Cal.Rptr. 827, 685 P.2d 1178], internal citations omitted.)

***Secondary Sources***

7 Witkin, California Procedure (4th ed. 1997) Trial, §§ 352–355

4 California Trial Guide, Unit 91, Jury Deliberations and Rendition of Verdict, § 91.21 (Matthew Bender)

27 California Forms of Pleading and Practice, Ch. 318, *Judgments*, § 318.49 (Matthew Bender)

28 California Forms of Pleading and Practice, Ch. 326A, *Jury Verdicts*, § 326A.11 et seq. (Matthew Bender)

1 Matthew Bender Practice Guide: California Trial and Post-Trial Civil Procedure, Ch. 18, *Jury Verdicts*, 18.11 et seq.