# Exhibit NN
# To Fletcher Declaration

# 4412. "Independent Economic Value" Explained

[*Select short term to describe, e.g., Information*] **has independent economic value if it gives the owner an actual or potential business advantage over others who do not know the** [*e.g., information*] **and who could obtain economic value from its disclosure or use.**

**In determining whether** [*e.g., information*] **had actual or potential independent economic value because it was secret, you may consider the following:**

  (a) **The extent to which** [*name of plaintiff*] **obtained or could obtain economic value from the** [*e.g., information*] **in keeping [it/them] secret;**

  (b) **The extent to which others could obtain economic value from the** [*e.g., information*] **if [it were/they were] not secret;**

  (c) **The amount of time, money, or labor that** [*name of plaintiff*] **expended in developing the** [*e.g.*, *information*]**;**

  (d) **The amount of time, money, or labor that [would be/was] saved by a competitor who used the** [*e.g.*, *information*]**;**

  [(e) [*Insert other applicable factors*].]

**The presence or absence of any one or more of these factors is not necessarily determinative.**

*New April 2008*

## Directions for Use

Give this instruction to further explain element 2 of CACI No. 4402, *"Trade Secret" Defined.* Inapplicable factors may be omitted.

## Sources and Authority

- "Trade Secret" Defined. Civil Code section 3426.1(d).
- "[I]t is not true that evidence of 'some' helpfulness or usefulness, if credited, would compel a finding of independent economic value. The Restatement defines trade secret as business or technical information 'that is sufficiently valuable and secret to afford an actual or potential economic advantage over others.' (Rest.3d, Unfair Competition, § 39.) The advantage 'need not be great,' but must be 'more than trivial.' (Rest.3d, Unfair Competition, § 39, com. e, p. 430.) Merely stating that information was helpful or useful to another person in carrying out a specific activity, or that information of that type may save someone time, does not compel a factfinder to conclude that the particular information at issue was 'sufficiently valuable . . . to afford an . . . economic advantage over others.'

1190

Copyright Judicial Council of California

(Rest.3d, Unfair Competition, § 39.) The factfinder is entitled to expect evidence from which it can form some solid sense of *how* useful the information is, e.g., *how much* time, money, or labor it would save, or at least that these savings would be 'more than trivial.' (Rest.3d., Unfair Competition, § 39, com. e.)" (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 564–565 [66 Cal.Rptr.3d 1], original italics.)

- "[T]he focus of the inquiry regarding the independent economic value element is 'on whether the information is generally known to or readily ascertainable by business competitors or others to whom the information would have some economic value. [Citations.] Information that is readily ascertainable by a business competitor derives no independent value from not being generally known. [Citation.]' " (*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc.* (2014) 226 Cal.App.4th 26, 62 [171 Cal.Rptr.3d 714].)

- "Moreover, it seems inherent in the requirement of value, as codified, that it is relevant to ask to *whom* the information may be valuable. The statute does not speak of value in the abstract, but of the value that is '[d]eriv[ed] . . . *from not being generally known to the public or to other persons who can obtain economic value* from its disclosure or use . . . .' In other words, the core inquiry is the value to the owner in *keeping the information secret* from persons who could *exploit it to the relative disadvantage of the original owner.*" (*Yield Dynamics, Inc., supra,* 154 Cal.App.4th at p. 568, original italics, internal citation omitted.)

- " '[C]ourts are reluctant to protect customer lists to the extent they embody information which is "readily ascertainable" through public sources, such as business directories. . . . . On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market. Such lists are to be distinguished from mere identities and locations of customers where anyone could easily identify the entities as potential customers. . . . . As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret.' " (*San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1539–1540 [67 Cal.Rptr.3d 54], internal citation omitted.)

- "The requirement that a customer list must have economic value to qualify as a trade secret has been interpreted to mean that the secrecy of this information provides a business with a 'substantial business advantage.' In this respect, a customer list can be found to have economic value because its disclosure would allow a competitor to direct its sales efforts to those customers who have already shown a willingness to use a unique type of service or product as opposed to a list of people who only might be interested." (*Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1522 [66 Cal.Rptr. 2d 731], internal citations omitted.)

- " 'The value of information claimed as a trade secret may be established by direct or circumstantial evidence. Direct evidence relating to the content of the

1191

Copyright Judicial Council of California

secret and its impact on business operations is clearly relevant. Circumstantial evidence of value is also relevant, including the amount of resources invested by the plaintiff in the production of the information, the precautions taken by the plaintiff to protect the secrecy of the information . . . , and the willingness of others to pay for access to the information.' " (Altavion, Inc., supra, 226 Cal.App.4th at p. 62.)

*Secondary Sources*

1 Milgrim on Trade Secrets, Ch. 1, *Definitional Aspects*, § 1.01 (Matthew Bender)

49 California Forms of Pleading and Practice, Ch. 565, *Unfair Competition*, §§ 565.103–565.105 (Matthew Bender)

Edelson & Kay, eds., Trade Secret Litigation and Protection in California (State Bar of California 2009) Ch. 1

## 4413–4419. Reserved for Future Use

Copyright Judicial Council of California

## 4420. Affirmative Defense—Information Was Readily Ascertainable by Proper Means

**[*Name of defendant*] did not misappropriate [*name of plaintiff*]'s trade secret[s] if [*name of defendant*] proves that the [*select short term to describe, e.g., information*] [was/were] readily ascertainable by proper means at the time of the alleged [acquisition/use/ [or] disclosure].**

**There is no fixed standard for determining what is "readily ascertainable by proper means." In general, information is readily ascertainable if it can be obtained, discovered, developed, or compiled without significant difficulty, effort, or expense. For example, information is readily ascertainable if it is available in trade journals, reference books, or published materials. On the other hand, the more difficult information is to obtain, and the more time and resources that must be expended in gathering it, the less likely it is that the information is readily ascertainable by proper means.**

*New December 2007; Revised December 2009*

### Directions for Use

Give also CACI No. 4408, *Improper Means of Acquiring Trade Secret*.

One case has suggested in a footnote that in order for the defense to apply, the defendant must have actually obtained plaintiff's secrets through readily ascertainable means rather than improperly. (See *ABBA Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 21–22, fn. 9 [286 Cal.Rptr. 518].) Such a requirement would not constitute an affirmative defense but rather would be a denial of the improper-means element of the plaintiff's claim. (See 5 Witkin, California Procedure (4th ed. 1996) Pleadings, § 1081 [affirmative defense admits the truth of the essential allegations of the complaint].) Because the advisory committee believes that this is an affirmative defense, no such requirement has been included in this instruction. (See *San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1542–1543 [67 Cal.Rptr.3d 54] [triable issue of fact as to whether information was readily ascertainable, that is, whether defendant *could have* replicated it within short period of time].)

### Sources and Authority

- "Trade Secret" Defined. Civil Code section 3426.1(d)(1).
- "The Legislative Committee Comment [to Civ. Code, § 3426.1] further explains the original draft defined a trade secret in part as 'not being readily ascertainable by proper means' and that 'the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation. Information is readily ascertainable if it is available in trade journals, reference

1193

Copyright Judicial Council of California

- books, or published materials.' " (*DVD Copy Control Assn., Inc. v. Bunner* (2003) 31 Cal.4th 864, 899], conc. opn. of Werdegar, J.; see Legis. Comm. Comment (Senate), 1984 Addition.)

- "The focus of the first part of the statutory definition is on whether the information is generally known to or readily ascertainable by business competitors or others to whom the information would have some economic value. Information that is readily ascertainable by a business competitor derives no independent value from not being generally known." (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1172 [42 Cal.Rptr.3d 191], internal citations omitted.)

- "With respect to the general availability of customer information, courts are reluctant to protect customer lists to the extent they embody information which is 'readily ascertainable' through public sources, such as business directories. On the other hand, where the employer has expended time and effort identifying customers with particular needs or characteristics, courts will prohibit former employees from using this information to capture a share of the market. Such lists are to be distinguished from mere identities and locations of customers where anyone could easily identify the entities as potential customers. As a general principle, the more difficult information is to obtain, and the more time and resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret." (*Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th 1514, 1521–1522 [66 Cal.Rptr.2d 731], internal citations omitted.)

- "[Defendant] argues that even if reverse engineering . . . did not actually occur, the binder contents were not trade secrets because they could have been reverse engineered—that is, they were readily ascertainable. . . . Considering the length of time that each proposal took to create and finalize and the urgency with which four of the project owners impressed upon the prospective contractors to begin the work, we cannot overlook the possibility that the information was not readily ascertainable in the circumstances presented. . . . Thus, a triable issue of fact exists as to whether the entire proposal for each project was indeed readily ascertainable—that is, whether [defendant] could have replicated each offer within the short period it claimed to have needed." (*San Jose Construction, Inc., supra,* 155 Cal.App.4th at pp. 1542–1543, footnote omitted.)

- "While ease of ascertainability is irrelevant to the definition of a trade secret, 'the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation.' Therefore, if the defendants can convince the finder of fact at trial (1) that 'it is a virtual certainty that anyone who manufactures' certain types of products uses rubber rollers, (2) that the manufacturers of those products are easily identifiable, and (3) that the defendants' knowledge of the plaintiff's customers resulted from that identification process and not from the plaintiff's records, then the defendants may establish a defense to the misappropriation claim. That defense, however, will be based upon an absence of misappropriation, rather than the absence of a

1194

Copyright Judicial Council of California

trade secret." (*ABBA Rubber Co., supra,* 235 Cal.App.3d at pp. 21–22, fn. 9, internal citations omitted.)

- "[T]he evidence established that [plaintiff]'s customer list and related information was the product of a substantial amount of time, expense and effort on the part of [plaintiff]. Moreover, the nature and character of the subject customer information, i.e., billing rates, key contacts, specialized requirements and markup rates, is sophisticated information and irrefutably of commercial value and not readily ascertainable to other competitors. Thus, [plaintiff's] customer list and related proprietary information satisfy the first prong of the definition of 'trade secret' under section 3426.1." (*Courtesy Temporary Serv., Inc. v. Camacho* (1990) 222 Cal.App.3d 1278, 1288 [272 Cal.Rptr. 352].)

- "In viewing the evidence presented in the light most favorable to the prevailing party, it is difficult to find a protectable trade secret as that term exists under Civil Code section 3426.1, subdivision (d). While the information sought to be protected here, that is lists of customers who operate manufacturing concerns and who need shipping supplies to ship their products to market, may not be generally known to the public, they certainly would be known or readily ascertainable to other persons in the shipping business. The compilation process in this case is neither sophisticated nor difficult nor particularly time consuming. The evidence presented shows that the shipping business is very competitive and that manufacturers will often deal with more than one company at a time. There is no evidence that all of appellant's competition comes from respondents' new employer. Obviously, all the competitors have secured the same information that appellant claims and, in all likelihood, did so in the same manner as appellant—a process described herein by respondents." (*American Paper & Packaging Prods., Inc. v. Kirgan* (1986) 183 Cal.App.3d 1318, 1326 [228 Cal.Rptr. 713].)

## Secondary Sources

1 Milgrim on Trade Secrets, Ch. 1, *Definitional Aspects*, § 1.07[1] (Matthew Bender)

3 Levy et al., California Torts, Ch. 40, *Fraud and Deceit and Other Business Torts*, §§ 40.52[1], 40.53[1][b] (Matthew Bender)

49 California Forms of Pleading and Practice, Ch. 565, *Unfair Competition*, § 565.103[4][a] (Matthew Bender)

Copyright Judicial Council of California