Samuel G. Brooks, State Bar No. 272107
sbrooks@calljensen.com
CALL & JENSEN
A Professional Corporation
610 Newport Center Drive, Suite 700
Newport Beach, CA  92660
Tel:   (949) 717-3000
Fax:   (949) 717-3100

Amanda R. Washton (Bar No. 227541)
 A.Washton@conklelaw.com
CONKLE, KREMER & ENGEL, PLC
3130 Wilshire Boulevard, Suite 500
Santa Monica, California 90403-2351
Phone: (310) 998-9100
Facsimile: (310) 998-9109

Peter A. Gergely (Pro Hac Vice)
PGergely@merchantgould.com
Ryan James Fletcher, Ph.D. (Pro Hac Vice)
RFletcher@merchantgould.com
Zachary D. Kachmer (Pro Hac Vice)
ZKachmer@merchantgould.com
MERCHANT & GOULD P.C.
1801 California St., Suite 3300
Denver, CO 80202
Telephone: (303) 357-1651
Facsimile: (612) 332-9081

Paige S. Stradley (Pro Hac Vice)
PStradley@merchantgould.com
Eric R. Chad (Pro Hac Vice)
EChad@merchantgould.com
MERCHANT & GOULD P.C.
150 South Fifth Street, Suite 2200
Minneapolis, MN 55402
Telephone: (612) 332-5300
Facsimile: (612) 332-9081

Attorneys for Defendants True Wearables, Inc.
and Marcelo Lamego

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CALL &
JENSEN

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

MASIMO CORPORATION, a Delaware Corporation; and CERCACOR LABORATORIES, INC., a Delaware corporation,

        Plaintiffs,

        vs.

TRUE WEARABLES, INC., a Delaware corporation; and MARCELO LAMEGO, an individual,

        Defendants.

Case No. 8:18-cv-02001-JVS-JDE

**DEFENDANTS TRUE WEARABLES, INC.'S AND MARCELO LAMEGO'S REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT**

Hon. James V. Selna
Hon. Magistrate John D. Early

Date:  October 4, 2021
Time:  1:30 p.m.
Place: 10C

Complaint Filed:  November 8, 2018
Trial Date:        January 11, 2020

**[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]**

DEFENDANTS TRUE WEARABLES, INC.'S AND MARCELO LAMEGO'S REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF CONTENTS

Page

I.   Noninfringement of the '271 and '848 Patents ........................................... 1

    A.   True Wearables does not Infringe any claim of the '271
        Patent Because the Oxxiom's Alleged Cover is not
        "Designed to Block a Range of Wavelengths of Light
        Sufficient to Prevent Measurement" ........................................ 1

    B.   The Oxxiom is not "Active" in Standby Mode ................................. 5

    C.   The Oxxiom® Device's "Cover" does the Opposite of
        "Blocking" Light .................................................................. 6

    D.   True Wearables does not Directly Infringe Claims 1-2 and
        7-9 of the '271 Patent and Claims 1-5, 9-15, and 18-26 of
        the '848 Patent ................................................................... 7

        1.   The Claims Require Action ................................................ 7

        2.   Plaintiffs are Precluded from Asserting Direct
             Infringement by True Wearables ................................... 7

    E.   Plaintiffs have not Shown Direct Infringement of '271
        Patent Claim 6 .................................................................... 9

II.   Fiduciary Duty ..................................................................................... 11

    A.   Plaintiffs' Theories of Accrual are Inconsistent with the
        Law ................................................................................. 11

        1.   ███████████████ does not Delay Accrual ......................... 12

        2.   Dr. Lamego's Founding True Wearables is Irrelevant
             to Accrual ..................................................................... 13

    B.   The Three-Year Statute Applies Because Plaintiffs Allege
        Fraud ............................................................................... 15

**TABLE OF CONTENTS (con't)**

Page

C.  Plaintiffs' Allegations that ██████████ are
Preempted ................................................................................................ 16

III.  Trade Secrets .......................................................................................................... 17

A.  Plaintiffs' Allegations of Misappropriation are ██████████
██████████ for TS1, TS6, TS9, TS12,
and TS14 .................................................................................................... 17

  1.  The Parties Agree regarding TS1, TS12, and TS14 ...................... 17

  2.  The Alleged Misappropriation of TS6 and TS9 by the
  Oxxiom® System is ██████████
  ████ .......................................................................................... 17

  3.  Summary Judgment is Appropriate on TS6 because
  there is No Evidence that ██████████ is
  Misappropriation of ██████████
  ████ ............................................................................................. 19

  4.  TS12 is Readily Ascertainable ...................................................... 20

  5.  Summary Judgment is Appropriate on TS14 because
  Plaintiffs Disclosed TS14 in a Patent ........................................... 24

DEFENDANTS TRUE WEARABLES, INC.'S AND MARCELO LAMEGO'S REPLY IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT

# TABLE OF AUTHORITIES

Page

*ABBA Rubber Co. v. Seaquist,*
    235 Cal. App. 3d 1 (Cal. Ct. App. 1991) .......................................... 20, 21

*Accent Packaging, Inc. v. Leggett & Platt, Inc.,*
    707 F.3d 1318 (Fed. Cir. 2013) ............................................................ 3

*ACCO Brands, Inc. v. ABA Locks Mfr. Co.,*
    501 F.3d 1307 (Fed. Cir. 2007) ............................................................ 9

*Allvoice Dev. US, LLC v. Microsoft Corp.,*
    612 F. App'x 1009, 1013 (Fed. Cir. 2015) ............................................ 8

*Amtel Corp. v. Info. Storage Devices, Inc.,*
    189 F.R.D. 410, 415-16 (N.D. Cal. 1999) ............................................ 18

*Amtower v. Photon Dynamics, Inc.,*
    71 Cal. Rptr. 3d 361 (Ct. App. 2008) ................................................. 14

*Anticancer, Inc., v. Cambridge Research & Instrumentation., Inc.*
    No. 07CV97 JLS (S.D. Cal. Feb. 13, 2009) ........................................ 8

*Athletic Alternatives, Inc. v. Prince Mfg., Inc,*
    73 F.3d 1573, 1578 (Fed. Cir. 1996) ................................................... 6

*Bladeroom Grp. Ltd. v. Emerson Elec. Co.,*
    No. 5:15-cv-01370-EJD (N.D. Cal. Apr. 16, 2018) ........................... 22

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.,*
    424 F.3d 1293, 1312 (Fed. Cir. 2005) ................................................. 4

███████████████████████████████████

*Exergen Corp. v. Wal–Mart Stores, Inc.,*
    575 F.3d 1312 (Fed. Cir. 2009) .......................................................... 10

*Figa v. Apple Inc.,*
    No. 1:08-cv-10304-NG (D. Mass. Sept. 21, 2009) ............................. 4

*Gutierrez v. Mofid,*
    705 P.2d 886, 897 (Cal. 1985) ........................................................... 12

███████████████████████████████████

**TABLE OF AUTHORITIES (con't)**

Page

*Harris v. City of Santa Monica,*
 294 P.3d 49, 71 (Cal. 2013).................................................................. 22

*Helmsderfer v. Bobrick Washroom Equip., Inc.,*
 527 F.3d 1379, 1383 (Fed. Cir. 2008) .................................................... 7

*High Tech Medical Instrumentation v. New Image Industries,*
 49 F.3d 1551 (Fed. Cir. 1995) ............................................................... 3

*Hilgraeve Corp. v. Symantec Corp.,*
 265 F.3d 1336, 1343 (Fed. Cir. 2001). ................................................... 4

*Hooked Media Grp., Inc. v. Apple Inc.,*
 269 Cal. Rptr. 3d 406, 413-14 (Ct. App. 2020)..................................... 23

*In re Power Integrations, Inc.,*
 884 F.3d 1370, 1376-77 (Fed. Cir. 2018) ............................................... 5

*Jack Guttman, Inc. v. Kopykake Enter,*
 302 F.3d 1352, 1361 (Fed. Cir. 2002) .................................................... 6

*John Bean Techs. Corp. v. Morris & Assocs., Inc,*
 828 F. App'x 707, 714 (Fed. Cir. 2020)................................................. 4

*Jolly v. Eli Lilly & Co.,*
 751 P.2d 923, 928-29 (Cal. 1988) ................................................. 11, 12

*Judd v. Weinstein,*
 967 F.3d 952, 955-56 (9th Cir. 2020)................................................... 21

*Kaken Pharm. Co., Ltd. v. Iancu,*
 952 F.3d 1346, 1352 (Fed. Cir. 2020) .................................................... 5

*KEYnetik, Inc. v. Samsung Elecs. Co., Ltd.,*
 837 F. App'x 786, 792 (Fed. Cir. 2020)................................................. 5

*Magpali v. Farmers Grp., Inc.,*
 55 Cal. Rptr. 2d 225, 232 (Ct. App. 1996) ........................................... 16

*McCoy v. Gustafson,*
 103 Cal. Rptr. 3d 37, 78 (Ct. App. 2009) ............................................. 12

CALL & JENSEN

## TABLE OF AUTHORITIES (con't)

<u>Page</u>

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
  764 F.3d 1392 (Fed. Cir. 2014) ................................................................. 7

*Mirror Worlds, LLC v. Apple Inc.*,
  692 F.3d 1351, 1360-61 (Fed. Cir. 2012) ............................................... 9

*Nelson v. Indevus Pharm., Inc.*,
  48 Cal. Rptr. 3d 668, 672 (Ct. App. 2006) ........................................... 12

*Nelson v. Pima Cmty. College*,
  83 F.3d 1075, 1081-82 (9th Cir. 1996) .................................................. 18

*Nextdoor.Com, Inc. v. Abhyanker*,
  No. C-12-5667 (N.D. Cal. July 29, 2013) ............................................. 24

*Nikon Corp. v. ASM Lithography B.V.*,
  308 F. Supp. 2d 1039 (N.D. Cal. March 11, 2004) .............................. 7

*Piercy v. Sabin*,
  10 Cal. 22, 27 (Cal. 1858) ........................................................................ 22

*Plantronics, Inc. v. Aliph, Inc.*,
  No. C 09-01714 WHA (N.D. Cal. Feb. 26, 2014) ................................ 4

*San Jose Construction, Inc. v. S.B.C.C., Inc.*,
  67 Cal. Rptr. 3d 54 (Cal. Ct. App. 2007) ...................................... 22, 23

*Sanchez v. S. Hoover Hosp.*,
  553 P.2d 1129, 1135 (Cal. 1976) ........................................................... 12

*Silvaco Data Sys. v. Intel Corp.*,
  109 Cal. Rptr. 3d 27 (Ct. App. 2010) .................................................. 16

*Soremekun v. Thrifty Payless, Inc.*,
  509 F.3d 978, 984 (9th Cir. 2007) ......................................................... 18

*SRAM Corp. v. AD-II Eng'g, Inc.*,
  465 F.3d 1351, 1359 (Fed. Cir. 2006) ................................................... 7

*SunPower Corp. v. SolarCity Corp.*,
  No. 12-CV-00694-LHK (N.D. Cal. Dec. 11, 2012) ............................ 16

*Teradyne, Inc. v. Hewlett-Packard Co*,
  No. C-91-0344 MHP (N.D. Cal. June 21, 1994) ................................. 7

DEFENDANTS TRUE WEARABLES, INC.'S AND MARCELO LAMEGO'S REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

CALL & JENSEN

# TABLE OF AUTHORITIES (con't)

<u>Page</u>

*Thomson v. Canyon*,
129 Cal. Rptr. 3d 525, 535 (Ct. App. 2011) .......................................................... 15

*TransAmerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*,
550 F. Supp. 2d 865, 956 (N.D. Iowa Mar. 10, 2008) ........................................... 7

*Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*,
707 F. Supp. 1170, 1177-78 (C.D. Cal. 1989) ...................................................... 23

*Vera v. REL-BC, LLC*,
281 Cal. Rptr. 3d 45, 64-66 (Cal, Ct. App. 2021) ................................................ 16

*Walsh v. W. Valley Mission Cmty. Coll. Dist.*,
66 Cal. App. 4th 1532 (Cal. Ct. App. 1998) .......................................................... 22

*Whyte v. Schlage Lock Co.*,
125 Cal. Rptr. 2d 277, 294 (Ct. App. 2002) ......................................................... 23

DEFENDANTS TRUE WEARABLES, INC.'S AND MARCELO LAMEGO'S REPLY IN SUPPORT OF THEIR
MOTION FOR PARTIAL SUMMARY JUDGMENT

## I.   NONINFRINGEMENT OF THE '271 AND '848 PATENTS

### A.   True Wearables does not Infringe any claim of the '271 Patent Because the Oxxiom's Alleged Cover is not "Designed to Block a Range of Wavelengths of Light Sufficient to Prevent Measurement"

Plaintiffs try to manufacture disputes of fact where none exist. Plaintiffs focus on Dr. Lamego's intent in designing the alleged cover Tab 2. (Dkt. 344 at 4-5.) But Dr. Lamego's intent is not the basis for Defendants' motion. (*See* Dkt. 332-2 at § III(A)(1)-(2).)[1] Rather, it is the functionality of the Oxxiom® System when used as designed, instructed, and intended by True Wearables that warrants granting summary judgment. (*Id.*)[2] In particular, Tab 2 of the Oxxiom® System is not designed to block a range of wavelengths of light sufficient to prevent measurement as required by the '271 Patent.

Plaintiffs have not proved otherwise. Pages D-43, D-44, and D-47 of Mr. Goldberg's report, cited by Plaintiffs, discuss ███████████████████████. (*E.g.*, Ex. G[3] at D-43 ███████████████████████████.) But none of these cited pages mention "measurement" or show that the Oxxiom Device is taking measurements. Rather, Mr. Goldberg merely purports to show ████████████████████████████ (Ex. G at D-43, D-44, D-47.)[4] Plaintiffs' analysis rests on a false premise: that "the claims [of the '271 Patent] do not require taking or blocking a physiological measurement" and instead only "require blocking readings by the photodiode." (Dkt. 344 at 5.) This is wrong: the

---

[1] Throughout this brief, citations to pages in docket entries refer to the footer page numbers.

[2] In the entirety of Defendants' opening brief, Defendants only include two sentences relating to Dr. Lamego's intent, and the information provided therein is merely additional, confirmatory information. (Dkt. 332-2 at 7.)

[3] Throughout this brief, unless otherwise specified, lettered exhibits (*e.g.*, Ex. G) are exhibits to the Declaration of Ryan Fletcher in Support of Defendants' Motion for Partial Summary Judgment, Dkt. 332-1, filed on September 3, 2021.

[4] Mr. Goldberg testified that "active" means "able to do things; awake; alive; powered." (SUF ¶ 106; *see also* Dkt. 344 at 7 (alleging active means "turned on.").)

Court construed "an opaque portion attachable to the sensor and configured to block readings by the sensor"/"an opaque portion attachable to the sensor and configured to block optical readings by the sensor" to mean "a portion attachable to the sensor designed to block a range of wavelengths of light **sufficient to prevent measurements**." (Statement of Uncontroverted Facts Dkt. 332-3 ("SUF") ¶ 61 (emphasis added).) Sensitivity and measurement are not the same and cannot be the same in light of Mr. Goldberg's testimony below. Under the Court's claim construction, True Wearables does not infringe the asserted claims of the '271 Patent because the Oxxiom Device does not "measure" while in standby mode and is not designed to do so.

Plaintiffs concede that Mr. Goldberg admitted that the Oxxiom Device does not take measurements while in standby mode.[5]   (Statement of Genuine Disputed Facts ("SGD") ¶ 101.)[6] As Mr. Goldberg noted, ███████████████████████ ██████████████████████████. Mr. Goldberg made multiple admissions in his report and deposition to the same effect—Plaintiffs' position is contradicted by their own expert and wholly unsupported. (*E.g.*, SUF ¶¶ 96-100; *see also* SGD ¶¶ 96-100 (admitting facts).) Mr. Goldberg's admissions confirm that the Oxxiom's alleged sensor cover is not "designed to . . . prevent measurement."

Contrary to Plaintiffs' contentions, Dr. Lamego did not testify otherwise. (Dkt. 344 at 5) His testimony makes clear that the Oxxiom® System only collects data when there is a Bluetooth connection. (Ex. 2 to Dkt. 344 at 781:9-784:21.) Dr. Lamego's testimony is completely consistent with Mr. Goldberg's testimony on this point.

Plaintiffs also cite Mr. Goldberg's analysis of the Oxxiom® System ██████████

---

[5] Standby mode refers to when the Oxxiom Device is not paired with the iOS App. and the Device's green LED emits a flashing light. (SUF ¶¶ 80-81; *see also* SGD ¶¶ 80-81.)
[6] Mr. Goldberg provided an errata relating to this statement. Defendants' SUF ¶ 101 included that correction in its quotation of Mr. Goldberg's testimony and cited to his errata. However, Defendants' SUF ¶ 101 inadvertently omitted a separate "not" from the statement made by Mr. Goldberg. Plaintiffs' SGD ¶ 101 includes the proper quotation as corrected by Mr. Goldberg.

████████████████████████████████████████. (SUF ¶¶ 92-95, 102-105.) Plaintiffs argue that "True Wearables provides no evidence suggesting that reattaching the cover is contrary to the instructions." (Dkt. 344 at 6.) Plaintiffs play semantic games. True Wearables instructs a user to remove Tab 2, place the Oxxiom Device on the measurement site, and then connect to the iOS App. (SUF ¶¶ 92-95.) This is undisputed. (SGD ¶¶ 92-95.) Nowhere does True Wearables instruct a user ████████████████████████████████. (SUF ¶ 104; *see also* Exs. N, O.) Taking an action that is not instructed is acting contrary to the instructions. Mr. Goldberg conceded that he used the Oxxiom® System differently than instructed. (SUF ¶¶ 104-105.)

Plaintiffs attempt to avoid Defendants' case law, claiming "Goldberg did not alter the Oxxiom or its cover." (Dkt. 344 at 6) But Plaintiffs fail to explain how Mr. Goldberg's actions are not "physical modifications" of the Oxxiom Device. After removal of the alleged cover Tab 2 (following True Wearables' instructions), Mr. Goldberg ████████████████████████████████ (contrary to True Wearables' instructions).

Mr. Goldberg's actions are analogous to those in *Accent Packaging* and *High Tech Medical Instrumentation*. In *Accent Packaging, Inc. v. Leggett & Platt, Inc.,* the patentee argued that because a SafeLatch stop could easily be removed by the user, the device infringed. 707 F.3d 1318, 1327 (Fed. Cir. 2013). The court disagreed, explaining that "[a] device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitation of a patent claim" and finding persuasive that the defendant's manual and marketing materials did not promote or suggest alteration. *Id.* Likewise, in *High Tech Med. Instrumentation, Inc. v New Image Indus., Inc.*, the court rejected the patentee's attempts to show infringement by operating a camera in a manner that was not instructed. 49 F.3d 1551, 1555-56 (Fed. Cir. 1995). Similarly, here, Mr. Goldberg altered the Oxxiom, contrary to True Wearables' instructions that Tab 2 should be removed before pairing. (SUF ¶¶ 92-95; Ex. 3 to Dkt. 344.)

As these cases illustrate, an uninstructed and aberrant use cannot be used to show infringement. Plaintiffs' two cited cases do not hold otherwise. In *John Bean Techs. Corp. v. Morris & Assocs., Inc.*, the defendant sold two identical products with the same part number, only one of which was marketed for the use contemplated by the patent claim. 828 F. App'x 707, 714 (Fed. Cir. 2020). The court viewed this as evidence that both products were reasonably capable of infringing. *Id.* Here, in contrast, Plaintiffs have not—and cannot—identified any instance of True Wearables instructing users to use the Oxxiom's alleged sensor cover in the manner tested by Mr. Goldberg. In *Hilgraeve Corp. v. Symantec Corp.*, the court rejected the type of testing performed by Mr. Goldberg, stating that "tests of an accused device under unusual conditions are not necessarily relevant to an infringement analysis." 265 F.3d 1336, 1343 (Fed. Cir. 2001).

In any event, Plaintiffs' cases do not apply when the claims require more than "mere capability." *Plantronics, Inc. v. Aliph, Inc.*, No. C 09-01714 WHA, 2014 U.S. Dist. LEXIS 24784, at *10 (N.D. Cal. Feb. 26, 2014) (rejecting attempts to show infringement by showing "instances of infringement" in certain "outlier" circumstances); *see also Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1312 (Fed. Cir. 2005) (finding *Hilgraeve* inapplicable where the claim language required more than mere capability); *Figa v. Apple Inc.*, No. 08-10304-NG, 2009 U.S. Dist. LEXIS 145604, at *36 (D. Mass. Sept. 21, 2009) (rejecting infringement theory based on "an unusual operation of the accused product"). Here, the Court construed the '271 Patent's claims to require a cover "designed to block a range of wavelengths of light sufficient to prevent measurements" and held the term "configured to" "requires an element of intentionality." (SUF ¶¶ 61-62.) The Court already rejected Plaintiffs' argument that the claims require mere capability. (Dkt. 55 at 15.) Plaintiffs cannot succeed based on a single *instance of misuse* by their expert.

The videos that Plaintiffs cite do not show otherwise because Plaintiffs mischaracterize video Exhibit 3. (Dkt. 344 (citing Ex. 3 (TRUE004449 at 00:35s)).) At

the cited section, Plaintiffs' quote uses ellipses to blatantly exclude reference to removal of Tab 2. (Dkt. 344 at 6.) Comparing Plaintiffs' quote with the full quote is telling:

| Plaintiffs' Quote | Full Quote (emphasis added) |
|---|---|
| "To connect Oxxiom, pull tag 1. Press the blue button…. Oxxiom will automatically turn on…. It will instantly connect to your mobile device." | "To connect Oxxiom, pull tag 1. Press the blue button *and remove tag 2*. Oxxiom will automatically turn on. Oxxiom can be placed on the finger or temple. It will instantly connect to your mobile device." |

(Ex. 3 to Dkt. 344 (TRUE004449) at 00:59s-01:20s.)

Plaintiffs have presented no evidence to support their infringement position. No *genuine* issues of disputed fact exist. The Court should grant summary judgment on all claims of the '271 Patent.

### B.    The Oxxiom is not "Active" in Standby Mode

Plaintiffs do not dispute the stated purpose of the invention is to reduce or eliminate false readings. (Dkt. 344 at 7-8.) Courts routinely recognize the relevance of the invention's purpose in claim interpretation. *E.g., Kaken Pharm. Co., Ltd. v. Iancu*, 952 F.3d 1346, 1352 (Fed. Cir. 2020) ("A patent's statement of the described invention's purpose informs the proper construction of claim terms[.]"); *In re Power Integrations, Inc.*, 884 F.3d 1370, 1376-77 (Fed. Cir. 2018). In the cases cited by Plaintiffs, the defendants proposed a "wholesale judicial rewriting of the claim" and attempted to limit the claim scope to only "particular embodiments." Here, interpreting "active" consistent with the purpose of the patent is far from a rewriting of the claims.

Plaintiffs' assertion that "active" means "turned on" is inconsistent with the purpose of the invention (SUF ¶¶ 64, 65, 67) and should be rejected. *KEYnetik, Inc. v. Samsung Elecs. Co., Ltd.*, 837 F. App'x 786, 792 (Fed. Cir. 2020) (rejecting claim interpretation that "would eviscerate the stated purpose of the claimed invention"). Plaintiffs offer no evidence from the Patents in Suit to support that the plain and

CALL & JENSEN

ordinary meaning of "active" as used in the Patents in Suit means "turned on." (*See generally* Dkt. 344.) Defendants, on the other hand, put forth evidence to support that the plain and ordinary meaning of "active," as used in the Patents in Suit, means "able to measure." (Dkt. 332-2 (citing SUF ¶¶ 64, 65, 67.) With nothing more than attorney argument to support their position, Plaintiffs' position cannot stand.

"Where, as here, the parties do not dispute any relevant facts regarding the accused product but disagree over [claim interpretation], the question of literal infringement collapses to one of claim construction and is thus amenable to summary judgment." *Athletic Alternatives, Inc. v. Prince Mfg., Inc.,* 73 F.3d 1573, 1578 (Fed. Cir. 1996); *see also Jack Guttman, Inc. v. Kopykake Enter.,* 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms[.]"). The Oxxiom Device is not "active" when Tab 2 is attached, and summary judgment is appropriate on all claims.

### C.   The Oxxiom® Device's "Cover" does the Opposite of "Blocking" Light

Plaintiffs admit that, in standby mode, ████████████████████████████████ ████████████████████████████████. (SGD ¶ 108; Dkt. 344 at 8.) Despite this, Plaintiffs argue that Tab 2 still blocks "a portion of light." (Dkt. 344 at 8.)

Plaintiffs ignore the Court's claim construction for the '271 Patent, which requires the cover be "designed to block a range of wavelengths of light sufficient to prevent measurement" and requires some element of intentionality. (SUF ¶¶ 61-62.) Plaintiffs fail to explain how the requisite element of intentionality can be met when the alleged cover actually causes light from the emitter to scatter back to the detector.

With respect to the '848 Patent, Plaintiffs' reliance on testing relating to ████ ████████ by Mr. Goldberg is a red herring. Each claim of the '848 Patent requires blocking of light *from the one or more emitters from being received by the detector*. (SUF ¶¶ 36, 40-60 (emphasis added).) Whether the cover allegedly ████████████ ████████████████████████████████████████████ is irrelevant to whether

- 6 -

CALL & JENSEN

the cover is blocking a portion of light *from the one or more emitters*.

**D.     True Wearables does not Directly Infringe Claims 1-2 and 7-9 of the '271 Patent and Claims 1-5, 9-15, and 18-26 of the '848 Patent**

**1.     The Claims Require Action**

Plaintiffs contend that claims 1-2 and 7-9 of the '271 Patent and claims 1-5, 9-15, and 18-26 of the '848 Patent do not require operation or use of the Oxxiom® System, alleging that the language is just "functional language describing the invention in terms of what it can accomplish." (Dkt. 344 at 10.) Not so. Plaintiffs cite no case law to support their position that language such as "attaching the sensor cover to the sensor, the sensor cover blocking readings by the sensor" is simply functional language speaking of capability. (*Id.; see also* Dkt. 332-2 at 10-11.)

Moreover, Plaintiffs offer no explanation as to why the binding cases cited by Defendants, which directly address this issue, are wrong. (Dkt. 344 at 10 (failing to address or distinguish *Mformation Techs.* or *Nikon Corp.*).) The clear language of the claims requires action. *See* Dkt. No. 332-2 at 10; *TransAmerica Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 550 F. Supp. 2d 865, 956 (N.D. Iowa Mar. 10, 2008) (construing "monitoring" to mean "[t]he act of observing, checking, or keeping track of"); *Teradyne, Inc. v. Hewlett-Packard Co.*, No. C-91-0344 MHP, 1994 WL 317527, at *6 (N.D. Cal. June 21, 1994) (use of "ing" in claim language "clearly refer[s] to action").

It is not the role of the Court to rewrite Plaintiffs' claims. *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1383 (Fed. Cir. 2008); *SRAM Corp. v. AD-II Eng'g, Inc.*, 465 F.3d 1351, 1359 (Fed. Cir. 2006). If Plaintiffs intended their claims to require mere capability, they could have drafted accordingly. They did not. The Court should reject Plaintiffs' improper attempts to re-write their claims.

**2.     Plaintiffs are Precluded from Asserting Direct Infringement by True Wearables**

In an attempt to save claims 1-2 and 7-9 of the '271 Patent and claims 1-5, 9-15,

and 18-26 of the '848 Patent, Plaintiffs now assert that True Wearables directly infringes by using the Oxxiom® System. (Dkt. 344 at 10-11.) This is a new argument that Plaintiffs should not be permitted to assert at this stage.

New theories of infringement, based on new evidence not disclosed in a party's operative infringement contentions, cannot be relied upon to oppose summary judgment on non-infringement. *Anticancer, Inc., v. Cambridge Research & Instrumentation., Inc.*, No. 07CV97 JLS (RBB), 2009 U.S. Dist. LEXIS 132743, at \*13 (S.D. Cal. Feb. 13, 2009) ("Summary judgment is appropriate against a party who bases its opposition on theories omitted from its infringement contentions."); *see also Allvoice Dev. US, LLC v. Microsoft Corp.*, 612 F. App'x 1009, 1013 (Fed. Cir. 2015) (rejecting patentee's attempt to rely on a previously undisclosed infringement theory). But Plaintiffs now attempt to do just that–rely on new theories of infringement, based on new evidence not disclosed in their Final Infringement Contentions.

Plaintiffs' Final Infringement Contentions only identified the process of using the Oxxiom® System as practicing claim 6 of the '271 Patent. (Ex. I at I(B).)[7] Plaintiffs did not identify True Wearables' use of Oxxiom as directly infringing any other claim. (*Id.*)

Plaintiffs now argue that ███████████████████████████████████ ████████████████████████████████████ (Dkt. 344 at 10.) But nowhere in Plaintiffs final claim charts for claims 1-2 and 7-9 of the '271 Patent and claims 1-5, 9-15, and 18-26 of the '848 Patent do Plaintiffs ever make this allegation. (*See generally* Ex. I at accompanying Ex. A at claims 1-2 and 7-9 and accompanying Ex. B at claims 1-5, 9-15, and 18-26.) As another example, Defendants have asserted that claim element 1(e) requires action and can only possibly be achieved via use of the Oxxiom Device. (Dkt. 332-2 at 11-12.) Despite Plaintiffs' contentions in their brief, Plaintiffs' final

---

[7] N.D. Cal. Patent L.R. 3-1(b) and 3-1(c) require that a patentee identify, separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality and require "[a] chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality. . . ."

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

claim charts directed to this element do not allege that True Wearables operates and uses the Oxxiom Device in support of this claim element 1(e). (Ex. I at accompany Ex. A at claim 1(e).) The same is true for claims 2 and 7-9 of the '271 Patent and claims 1-5, 9-15, and 18-26 of the '848. (*Id.* at accompanying Ex. A at claims 1-2 and 7-9 and accompanying Ex. B at claims 1-5, 9-15, and 18-26.)

Indeed, all of the evidence Plaintiffs now rely on to establish True Wearables' alleged use of the Oxxiom® System—the deposition testimony of Dr. Lamego, Exhibit 4 (TRUE001148), Exhibit 5 (TRUE004863), the deposition testimony of Anthony Allen (Ex. 9), and clinical submissions to the FDA (Ex. 23 at TRUE0025927-68)—is absent from Plaintiffs' Final Infringement Contentions claim charts for these claims. (*Compare* Dkt. 344 at 10-11 *with* Ex. I at accompanying Ex. A at claims 1-2 and 7-9 and accompanying Ex. B at claims 1-5, 9-15, and 18-26.)

Plaintiffs should not now, for the first time in opposition to summary judgment, be allowed to rely on allegations and evidence not included in their Final Infringement Contentions.

**E.     Plaintiffs have not Shown Direct Infringement of '271 Patent Claim 6**

Plaintiffs point to no evidence that True Wearables or a True Wearables customer used the Oxxiom® System in a manner that infringes claim 6. (Dkt. 344 at 9-10.) Instead, Plaintiffs claim that they do not need to identify a direct infringer because the "Oxxiom User Manual provides at least some evidence that a customer would activate the light source when using the device." (*Id.* at 9.) Plaintiffs' argument fails.

Instruction manuals are not evidence of direct infringement if the accused product does not *necessarily* infringe and, instead, can be used in a non-infringing manner. *E.g.*, *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1312-13 (Fed. Cir. 2007); *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1360-61 (Fed. Cir. 2012) ("[E]xcerpts from user manuals as evidence of underlying direct infringement by third parties of products that can be used in a non-infringing manner are by themselves

insufficient[.]").

Here, to prove infringement of the '271 Patent while in operation mode, Plaintiffs rely on a method of use that is, admittedly, outside of the instructed use. (SUF ¶¶ 92-95, 104-105; SGD ¶¶ 92-95, 104-105; Exs. N, O; *see also* Dkt. 332-2 at 6.) Thus, under the law above, True Wearables' manuals are not circumstantial evidence of infringement.

Plaintiffs' brief is unclear as to whether they assert True Wearables directly infringes claim 6. (Dkt. 344). But to the extent they do, that argument fails. The only evidence even arguably identified in Plaintiffs' Final Infringement Contentions to support direct infringement of claim 6 by True Wearables is testimony from Dr. Lamego that the ███████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ███████ (Ex. I at attached Ex. A, claim 6(b); *see also* Ex. 2 to Dkt. 344 at 620:15-621:13.) Although Plaintiffs *argue* that this means True Wearables operates and uses every Oxxiom that True Wearables ships (Dkt. 344 at 10), that is simply not what the testimony says. Moreover, testimony that products are tested does not mean each completed product is used and operated as claimed by the Patents in Suit. Dr. Lamego's vague statement does not establish that each element of claim 6 is practiced. For example, testing could simply refer to testing to ensure the battery is full, testing to ensure the photodiode is operational, or a myriad of other tests. It does not speak to practicing each claim limitation of claim 6.

It is Plaintiffs' burden to establish each element of claim 6 is met. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1320 (Fed. Cir. 2009). Dr. Lamego's testimony is insufficient to establish that each element of claim 6 is met by True Wearables and, because Plaintiffs' alleged additional evidence of direct infringement by True Wearables was not disclosed in support of claim 6, Plaintiffs' claim for infringement of claim 6 should be dismissed.

## II. FIDUCIARY DUTY

Plaintiffs claim that Dr. Lamego ███████████████████████████████████████████████████████████████████. (Dkt. 344 at 15.) While there are factual disputes surrounding the merits of Plaintiffs' claim, there is no factual dispute that if ███████████████████████████████████████████████████████████████, Plaintiffs discovered as much no later than August 2014.

By August 2014, Plaintiffs had discovered the facts supporting their claim and could have brought suit against Dr. Lamego. Instead, Plaintiffs chose to wait until November 2018, after Dr. Lamego founded True Wearables. Plaintiffs' incentive to sue Dr. Lamego may have changed when Dr. Lamego founded True Wearables, but the accrual date for their claim did not. Plaintiffs' claim is time-barred under either a three- or four-year statute of limitations.

### A. Plaintiffs' Theories of Accrual are Inconsistent with the Law

True Wearables has cited evidence from ███████████ ███████████ ███████████, and ███████████████████, all showing that Plaintiffs suspected, investigated, and confirmed no later than August 2014 that ███████████████████ ███████████████████████████████████. (Dkt. 332-2 at 14-17.) Applying California law, no reasonable juror could find that Plaintiffs' breach-of-fiduciary-duty claim accrued any later than August 2014. *Jolly v. Eli Lilly & Co.*, 751 P.2d 923, 928-29 (Cal. 1988) ("While resolution of the statute of limitations issue is normally a question of fact, where the uncontradicted facts established through discovery are susceptible of only one legitimate inference, summary judgment is proper.").

Plaintiffs ask the Court to adopt a standard of accrual that is inconsistent with California law. First, Plaintiffs argue that True Wearables' evidence of accrual before August 2014 is "improper" because ███████████████████████████████████████ ███████████████████████████." This is inconsistent with California law, which holds that a statute of limitations begins to run as soon as a plaintiff has a reasonable

CALL & JENSEN

basis for *commencing* an investigation. *McCoy v. Gustafson*, 103 Cal. Rptr. 3d 37, 78 (Ct. App. 2009). Next, Plaintiffs argue that regardless of when Plaintiffs discovered ██████████████████████████████████████, accrual did not occur until 2016 when Dr. Lamego founded True Wearables and began competing with Plaintiffs. This also contradicts California law, which holds that a claim based on ████████████ ████████████████████ accrues when the plaintiff learns that ████████████ ██████████████████████.

### 1. ████████████████████ does not Delay Accrual

Plaintiffs argue that their claim could not have accrued by August 2014 because ████████████████████████████████████████████████████ ██████████████████ showing that Plaintiffs █████████████████████ ██████████████████████████████." (Dkt. 344 at 13.)

Plaintiffs cite no cases holding that the discovery rule delays accrual until ████ ██████████████████████. Rather, as soon as a plaintiff becomes aware of facts that would make a reasonable person suspicious, the plaintiff is charged with knowledge that would be revealed by further investigation. *Jolly*, 751 P.2d at 927-28.

In other words, when a plaintiff's suspicions cause the plaintiff to conduct an investigation, the statute of limitations begins to run upon the *commencement* of that investigation. *Sanchez v. S. Hoover Hosp.*, 553 P.2d 1129, 1135 (Cal. 1976) (claim accrues when a person becomes "alerted to the necessity for investigation"); *Gutierrez v. Mofid*, 705 P.2d 886, 897 (Cal. 1985) (same); *Nelson v. Indevus Pharm., Inc.*, 48 Cal. Rptr. 3d 668, 672 (Ct. App. 2006) (same); *McCoy*, 103 Cal. Rptr. 3d at 78; 4 Witkin Cal. Proc. Actions § 659 (5). Accrual can occur even before a plaintiff becomes "aware of the specific facts necessary to establish the claim." *Jolly*, 751 P.2d at 927-28.

Here, Plaintiffs ████████████████████████████████████████ ████████████████████████████ as early as January 2014, when ████████. Indeed, ████████████ testified that ████████████████████

1   ████████ (SUF ¶ 128.) As Plaintiffs admit, ███████████████

2   ██████████████████████████████████████████████████ (SGD

3   ¶ 129.) The ████████████████████████████ directly tied Plaintiffs'

4   ███████████████████████ to ████████████████████. (SUF ¶

5   138.) By approximately April/May 2014 and no later than August 2014, Plaintiffs had

6   concluded that ████████████████████████████. (SUF ¶¶

7   136-140.) By August 2014 Plaintiffs were well past ████████████

8   ████████████████ Thus, Plaintiffs claim accrued no later than August 2014,

9   even if they were not aware of the "specific facts necessary to establish a claim."

10      Moreover, ████████████████████████ were not

11  ████████████████████████████████████████████.

12  Instead, ██████████████████████████████████████

13  ██████████████. (SGD at ¶ 140 (██████████████████████).) If

14  anything, ██████████████████████████████████████

15  ███████ indicates ████████ had already ████████████████, which is

16  further evidence that Plaintiffs had discovered the basis for their claim by August 2014.

        2.   **Dr. Lamego's Founding True Wearables is Irrelevant to Accrual**

17      Plaintiffs argue that their claim did not accrue until January 4, 2016, when Dr.

18  Lamego issued a press release announcing his founding of True Wearables and True

19  Wearables' release of Oxxiom® System. (Dkt. 344 at 11-12.) The Court should reject

20  this argument because Dr. Lamego's founding of True Wearables has no relevance to

21  Plaintiffs' breach-of-fiduciary-duty claim and, therefore, has no relevance to the accrual

22  analysis.

23      Plaintiffs assert that before Dr. Lamego's founding of True Wearables in January

24  2016, they had ████████████████████████████████████

25  ██████████████████████████ (Dkt. 344 at 11.) While Plaintiffs

26  have based their claim on allegations that Dr. Lamego ████████████████,

the elements their claim are (i) existence of the duty, (ii) breach, and (iii) damages caused by the breach. *Amtower v. Photon Dynamics, Inc.*, 71 Cal Rptr. 3d 361, 377 (Ct. App. 2008). ███████████████████████████████████████████ ███. Therefore, even accepting that Plaintiffs could not have known that ██████████ ███████████████ until ███████████████████, this has no relevance to when Plaintiffs discovered the elements of their fiduciary duty claim.

When a claim is based on an alleged ██████████████████████, the claim accrues not when the plaintiff learns of ██████████████████ but when the plaintiff first has reason to suspect ███████████████████████.

███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████

In ██████████████████████████████████████████
███████████████████████████████████████████████
███████████████████████████████████████████████
████████████████████████████. The court rejected plaintiffs' attempt to delay accrual until their discovery of ████████████████████████, holding that the claim accrued when the plaintiff discovered ████████████. Here, like ████████████████████, Plaintiffs believe ████████████████████████ ████████████████. Like in ████████ the Court here should hold that Plaintiffs' claim accrued not upon the discovery of ████████████████████ but upon discovery of facts that would lead to suspicion that ███████████████████████. Plaintiffs may view ████████████████████████ as a sign

that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ But
Plaintiffs' claim that Dr. Lamego breached a fiduciary duty ▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiffs' claim
focuses on ▮▮▮▮▮▮▮▮▮▮▮ and Plaintiffs' discovery thereof by
August 2014. Dr. Lamego's actions in 2016 may have increased Plaintiffs' incentive to
sue for breach of fiduciary duty, but those actions did not lead in any way to Plaintiffs'
discovering any element of their claim. Those actions have no bearing on when
Plaintiffs' claim accrued and cannot be used to excuse Plaintiffs' delay.

**B.      The Three-Year Statute Applies Because Plaintiffs Allege Fraud**

Because Plaintiffs' claim accrued in 2014, the claim is time-barred by either a
three- or four-year statute of limitations. Should the Court, however, determine that
Plaintiffs' claim accrued in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮, Plaintiffs claim would be time-barred because a three-year statute applies.

Plaintiffs argue that their claims are not grounded in allegations of fraud, citing
*Thomson v. Canyon*, where the four-year limitations period applied. 129 Cal. Rptr. 3d
525, 535 (Ct. App. 2011). There, the court did not apply the three-year limitations
period because the claim was ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮ *Id*. at 607. Here, in contrast, the crux of
Plaintiffs' claim is that Dr. Lamego ▮▮▮▮▮▮▮▮▮.
Plaintiffs criticize Defendants' citing ▮▮▮▮▮, claiming that it was ▮▮▮
▮▮▮▮▮▮. (Dkt. 344 at 15.) Even so, ▮▮ testified ▮▮▮
▮▮▮▮, making Plaintiffs' position abundantly clear. (*See* Fletcher Reply Decl.,
OO at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮.)

Plaintiffs argue that "Cercacor has not alleged that Lamego defrauded Cercacor."

(Dkt. 344 at 15.) Rather, Plaintiffs submit that their allegation is that Dr. Lamego breached his "duty to fully disclose." (*Id.*) But failure to fully disclose material facts can be treated as an action for fraud when a fiduciary relationship exists. *See Magpali v. Farmers Grp., Inc.*, 55 Cal. Rptr. 2d 225, 232 (Ct. App. 1996) ("[Fa]ilure to disclose material facts is not actionable fraud unless there is some fiduciary relationship giving rise to a duty to disclose."); *Vera v. REL-BC, LLC*, 281 Cal. Rptr. 3d 45, 64-66 (Cal, Ct. App. 2021) (applying three-year SOL for allegations based on failure to disclose).

The three-year statute applies to any claim for which fraud or mistake is the basis of the legal injury, whether or not the claim expressly claims fraud. 4 Witkin Cal. Proc. Actions. § 653.

**C.      Plaintiffs' Allegations that** ███████████████ **are Preempted**

CUTSA preempts all claims based on the wrongful taking of proprietary information, even if that information does not meet the statutory definition of trade secret. *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 U.S. Dist. LEXIS 176284, at *18 (N.D. Cal. Dec. 11, 2012) (citing *Silvaco Data Sys. v. Intel Corp.*, 109 Cal. Rptr. 3d 27 (Ct. App. 2010)).

Throughout this case, Plaintiffs have maintained a theory that Dr. Lamego ███████ ██████████████████████████████████████████████. (*E.g.,* Ex. S at 7.) Plaintiffs' damages expert, Dr. Pinsonneault, offered █████ ████████████████ for Plaintiffs' claim, one of which was based on the theory that ███████████████████████████████████████████████████ █████████████████████████████ (Fletcher Reply Decl., Ex. PP at ¶¶ 143-157.)

If ███████████████████████████████████████████████, that is a claim for the taking of confidential information and, under *Silvaco* and *SunPower*, is preempted by CUTSA. Whether Plaintiffs have brought a CUTSA claim based on this same conduct is irrelevant. Even if it were relevant, ███████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████. (Ex. AA at ███████████.)

Plaintiffs cannot avoid preemption by choosing not to bring a CUTSA claim or ██

████████████████████████████████████. (*See* Dkt. 346.) The Court

should enter summary judgment on Plaintiffs' breach-of-fiduciary-duty allegations

resting on this theory.

## III.   TRADE SECRETS

### A.   Plaintiffs' Allegations of Misappropriation are ███████████ ██████████████ for TS1, TS6, TS9, TS12, and TS14

#### 1.   The Parties Agree regarding TS1, TS12, and TS14

Plaintiffs agree that their allegation regarding misappropriation of TS1 by the

Oxxiom® System is ███████████████████████, that their allegation

regarding misappropriation of TS12 by the Oxxiom® System is ███████████████

██████, and that their allegation regarding misappropriation of TS14 by the Oxxiom®

System is ████████████████████. (Dkt. 344 at 17.)

Accordingly, summary judgment is appropriate that Defendants have not (i)

misappropriated TS1 with respect to ████████████████████████████████

████████, (ii), misappropriated TS12 with respect to any ███████████████

████████████████████, or (iii) misappropriated TS14 with respect to any

████████████████████████████████.

#### 2.   The Alleged Misappropriation of TS6 and TS9 by the Oxxiom® System is ████████████████████

Plaintiffs' Response fails to raise any genuine issue of material fact that precludes

summary judgment that Defendants have not misappropriated TS6 and TS9 with respect

to any ██████████████████████████████████ Plaintiffs attempt

to avoid summary judgment by: (1) asserting allegations, not evidence, and speculating

CALL & JENSEN

about what will be shown at trial; and (2) inappropriately shifting the burden to Defendants. Both are improper and do not create a genuine issue of material fact.

The thrust of Plaintiffs' argument is that McNames considered Defendants' ██████████████ in addition to ████████████████████████ and therefore "Masimo *will show* that the processing McNames pointed to in his analysis is in all Oxxiom source code versions." (Dkt. 344 at 19 (emphasis added).) Notably, Plaintiffs admit that McNames ████████████████████████████████████ — Plaintiffs do not point to any evidence alleging that the "processing McNames pointed to in his analysis" of ████████████████████████████████ ██████. Indeed, McNames's report says ████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████ (SUF ¶ 155.)

McNames's report must disclose "a complete statement of all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). McNames's report and testimony regarding the use of TS6 and TS9 by the Oxxiom® System is ██████████████████████. *Amtel Corp. v. Info. Storage Devices, Inc.*, 189 F.R.D. 410, 415-16 (N.D. Cal. 1999) (excluding expert opinion about trade secrets where opinion was not included in written report). What Plaintiffs *may show* at trial is mere allegation and speculation, which is insufficient to overcome summary judgment. *Nelson v. Pima Cmty. College*, 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment."); *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

Plaintiffs also attempt to avoid summary judgment by asking the Court to improperly reverse the burden of proof, arguing that "Defendants have not ██████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████ (Dkt. 344 at 18.) It is Defendants' burden to demonstrate an absence of a genuine issue of material

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

fact, and Defendants have met their burden by showing McNames' report ██████████ ████████████████████████████ and that he was not offering an opinion on ██████████████████████████. (SUF ¶ 155.) It is Plaintiffs' burden, not Defendants' burden, to present specific evidence that ████████████████████████████████████ ██████. Plaintiffs do not point to any evidence that ties ████████████████ to any ██████████████████████████████. Accordingly, summary judgment that Defendants have not misappropriated TS6 and TS9 with respect to ████████████ ████████████████████████████ is appropriate.

3. **Summary Judgment is Appropriate on TS6 because there is No Evidence that ██████████████████ is Misappropriation of ██████████████████████**

Plaintiffs' TS6 recites ████████████████. Plaintiffs, and McNames himself, admit that the Oxxiom® System ████████████████████████. Rather, Plaintiffs attempt to avoid summary judgment by arguing that: (1) the Oxxiom® System ████ ██████████████ uses ██████████████████████ and is ████████████ ████████████████ because Defendants' alleged ██████████████████████████ ██████████████████████ (TS6). (Dkt. 344 at 19-20.) Plaintiffs' arguments fail to create a genuine issue of material fact because McNames admitted █ ████████████████████████████████████████████████████████ ████████████████████████████.

There is no admissible evidence that the alleged ██████████████████ by the Oxxiom® System is misappropriation of TS6. As Plaintiffs defined it in their own trade secret identification, TS6 is ██████████████████████████████ ████████████████████████████████. McNames admitted that ██████████████ but Plaintiffs now, facing summary judgment, attempt to improperly broaden their trade secret by arguing that ██████████████████ ████████████████████████████████████████

██████████████████████████████. (SUF ¶¶ 162-163.) Plaintiffs' attempt to relax the boundaries of their defined trade secret to show misappropriation is inconsistent with their positions below regarding TS12 and TS14, where Plaintiffs argue for a rigid interpretation of their defined trade secret to avoid a finding of prior public disclosure.

Regardless, McNames admitted he does not have the foundation to reach this conclusion. (SUF ¶¶ 164-165.) Plaintiffs wish to rewrite McNames's testimony to suggest that ███████████████████████████████████████████████████████ ███████████████████████████████████ (SGD ¶¶ 164-165.) But McNames himself dispelled Plaintiffs' argument when he testified that ███████████████████████ ████████████████████████████████████████████████████████████████ and █████████████████████████████████████████████ ████████████████████████████████████████████████████████ █████████████████████████████ (Ex. FF at 145:6-147:4.) In other words, McNames admitted that ██████████████████████████████████████████████████ ████████████████████████. Consequently, there is no admissible evidence that ███ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ Accordingly, Defendants have not misappropriated TS6 and summary judgment entered in favor of Defendants as to TS6 is appropriate.

### 4.   TS12 is Readily Ascertainable

In its attempt to escape summary judgment that Trade Secret 12 is readily ascertainable, Plaintiffs urge an incorrect interpretation of California law and seek to impose an "in fact ascertained" requirement where no such requirement exists in the CUTSA. Plaintiffs' legal argument relies solely on footnote 9 from *ABBA Rubber Co. v. Seaquist*, but *ABBA Rubber* is not a California Supreme Court case. 235 Cal. App. 3d 1 (Ct. App. 1991). In the absence of controlling authority, it is the task of this Court to predict how the California Supreme Court would decide the issue. *See Judd v.*

*Weinstein*, 967 F.3d 952, 955-56 (9th Cir. 2020). Decisions of lower appellate courts are not binding. *Id.* Footnote 9 of *ABBA Rubber* is wrong, and it has been expressly rejected by the Judicial Council of California Jury Instructions. *See* CACI No. 4420 (2009) (distinguishing footnote 9 of *ABBA Rubber*); Judicial Council of Cal. Administrative Office of the Courts, Report, at 6 (2009) ("However, the committee does not consider the footnote [9] to be controlling authority."). (Exs. NN, MM, respectively.) Plaintiffs' other cited cases, which rely on *ABBA Rubber*, are unpersuasive for the same reason. (*E.g.*, Dkt. 344 at 20-21.) The legal approach adopted by the Judicial Council of California Civil Jury Instructions is a better indication of how the California Supreme Court would decide the issue.[8] The California Supreme Court is likely to conclude that the affirmative defense of ready ascertainability does not include any "in fact ascertained" requirement.

As explained in True Wearables' opening brief, imposing an additional requirement that the defendant prove it in fact acquired the alleged trade secret through the identified readily ascertainable means is legally inconsistent with the Legislative Committee comments to the CUTSA, which confirm ready ascertainability is an affirmative defense. *See* Cal. Civ. Code § 3426.1 (1984 Legislative Committee Comments). Plaintiffs' attempt to counter this argument by relying on the absence of the word "affirmative" in the comments describing the "readily ascertainable" defense is misguided. The Legislative Committee comments explain that "***the assertion*** that a matter is readily ascertainable by proper means ***remains available as a defense*** to a

___

[8] According to the California Rules of Court, the Judicial Council of California Jury Instructions "are the official instructions for use in the state of California" and they "provid[e] standardized instructions that accurately state the law." Cal. R. Ct. 2.1050(a). Furthermore, the Judicial Council of California, which is responsible for approving the Jury Instructions, is currently chaired by Justice Tani G. Cantil-Sakauye, the Chief Justice of the California Supreme Court. (Fletcher Reply Decl., Ex. QQ at xv.) Associate Justice Ming W. Chin of the California Supreme Court is also a member of the Council. *Id.*

claim of misappropriation." *Id*. (emphasis added). The party who would make "the assertion" of the "defense" is the defendant. In placing the burden of asserting ready ascertainability on the defendant, the Legislative Committee comments confirm the Committee considered it an affirmative defense to be raised by the defendant, not a traverse to a plaintiff's assertion of misappropriation. *E.g.*, *Piercy v. Sabin*, 10 Cal. 22, 27 (Cal. 1858) ("New matter is that which, under the rules of evidence, the defendant must affirmatively establish. If the onus of proof is thrown upon the defendant, the matter to be proved by him is new matter."); *Walsh v. W. Valley Mission Cmty. Coll. Dist.*, 78 Cal. Rptr. 2d 725, 733 (Ct. App. 1998) (same); *cf. Harris v. City of Santa Monica*, 294 P.3d 49, 71 (Cal. 2013) (citing *Piercy*, 10 Cal. at 27 with approval).

As the California Jury Instructions explain, that a defendant "in fact ascertained" information from public sources is a traverse to the "acquisition by improper means" element of a plaintiff's prima facie case of misappropriation. *See* CACI No. 4420 (2009) ("Such a requirement would not constitute an affirmative defense but rather would be a denial of the improper-means element of the plaintiff's claim. Because the advisory committee believes that this is an affirmative defense, no such requirement has been included in this instruction."); *see also Bladeroom Grp. Ltd. v. Emerson Elec. Co.*, No. 5:15-cv-01370-EJD, 2018 U.S. Dist. LEXIS 64695, at *6 (N.D. Cal. Apr. 16, 2018) (explaining evidence of independent derivation under the CUTSA is a traverse, not an affirmative defense, because the defendant does not bear the burden of proof). Imposing an "in fact ascertained" requirement would improperly collapse the issue of readily ascertainability with that of independent derivation and be inconsistent with the existence of an affirmative defense that the trade secret is "readily ascertainable."

The decision in *San Jose Constr., Inc. v. S.B.C.C., Inc.*, 67 Cal. Rptr. 3d 54 (Ct. App. 2007), is aligned with the California Jury Instructions, and Plaintiffs' attempt to argue otherwise fails. Plaintiffs assert that, because it reversed a grant of summary judgment, the court in *San Jose Construction* "did not have to decide whether the

defendant *actually* recreated the trade secret" (Dkt. 344 at 23), but Plaintiffs ignore the way the court framed the legal standard applicable to the "readily ascertainable" defense. The court framed the question on which there was a triable issue of fact as: "whether the entire proposal for each project was indeed *readily* ascertainable—that is, whether South Bay ***could have replicated*** each offer within the short period it claimed to have needed." *San Jose Construction*, 67 Cal. Rptr. 3d at 66 (second emphasis added). The court in *San Jose Construction* confirmed that there is no requirement that the defendant in fact ascertained the trade secrets from the publicly available sources for the "readily ascertainable" defense to apply. *Id.*

Contrary to Plaintiffs' suggestion, *San Jose Construction* is also not distinguishable on its facts. (Dkt. 344 at 23.) Plaintiffs ***admit*** there is no evidence that Dr. Lamego took any material or documents containing the TSS with him when he left Cercacor. (SUF ¶ 143; SGD ¶ 143.) In fact, the only record evidence shows the opposite—that Dr. Lamego ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (SUF ¶¶ 6-15.) This is expressly permitted under California law. An employee's knowledge "developed as a result of long employment in the particular trade may be carried over and put to use by the new employer." *Universal Analytics, Inc. v. MacNeal-Schwendler Corp.*, 707 F. Supp. 1170, 1177-78 (C.D. Cal. 1989), *aff'd*, 914 F.2d 1256 (9th Cir. 1990); *see also, e.g.*, *Hooked Media Grp., Inc. v. Apple Inc.*, 269 Cal. Rptr. 3d 406, 413-14 (Ct. App. 2020) (same); *Whyte v. Schlage Lock Co.*, 125 Cal. Rptr. 2d 277, 294 (Ct. App. 2002) (same).

Finally, Plaintiffs are wrong in their assertion that there is no evidence showing ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Dr. Goldstein explained that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮. (*See* Fletcher Reply Decl., Ex. UU at 328:5-20.) These ▮▮▮▮ speak for themselves and confirm that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. (Ex. GG at ▮▮▮▮

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

CALL & JENSEN

███████████████████████████████████████ Fletcher

Reply Decl., EX. TT ████████████████████████████████

██████████████████████████.) One such publication explained that

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████ (Reply Decl., EX. TT (██████████████████████

██████████████████████████) There can be no reasonable

dispute that ██████████████████████████. Due to the

disclosure of the ████████████ in ██████████████, and the disclosure

of the █████████████████████████, True Wearables is entitled

to summary judgment on its affirmative defense that Trade Secret 12 is readily

ascertainable.

### 5. Summary Judgment is Appropriate on TS14 because Plaintiffs Disclosed TS14 in a Patent

Plaintiffs' arguments regarding TS14 are inconsistent with their arguments regarding TS6. For TS6, Plaintiffs argue summary judgment is not justified because "misappropriation need not extend to every aspect [of] TS6." (Dkt. 344 at 19.) In contrast, for TS14, Plaintiffs argue summary judgment is not appropriate because ██

████████████████████████. Plaintiffs cannot have it both ways. *Nextdoor.Com, Inc. v. Abhyanker*, No. C-12-5667 EMC, 2013 U.S. Dist. LEXIS 101440, at *23-25 (N.D. Cal. July 29, 2013) (finding the general concept of an alleged trade secret disclosed in patent application even though not "prominently describe[d]"). Regardless, ████████████████████████████.[9]

Plaintiffs admit ██████████ discloses ████████████████████

██████████████ (Dkt. 344 at 25.) Plaintiffs ignore the plain

_____

[9] Defendants did disclose ████████████ in response to contention interrogatories as

██████████████████████████████████████████████████████

language of ███████████, which recognizes that ██████████████████████



████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████ This disclosure ███████████

████████████████████████████████████████████

Plaintiffs suggest that ████████████ does not disclose ████████████

█████████████████████████████████████████████ (Dkt. 344

at 25.) ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████[10]

Accordingly, TS14 does not constitute a trade secret because it was not subject to reasonable efforts to maintain its secrecy, and it is generally known or readily ascertainable. Partial summary judgment should be entered in favor of Defendants with respect to TS14.

---

[10] Plaintiffs assert summary judgment is inappropriate because it is not supported by expert testimony, but expert testimony is not required. *See Wyers v. Master Lock Co.*, 616 F.3d 1231, 1242 (Fed. Cir. 2010) (in the analogous patent context, "expert testimony is not required when the references and the invention are easily understandable").

1    Dated:  September 20, 2021           CALL & JENSEN
2                                          A Professional Corporation
                                           Samuel G. Brooks
3

4                                          By: *Samuel G. Brooks*
5                                              Samuel. G. Brooks
6                                          Attorneys for Defendants True Wearables, Inc.
7                                          and Marcelo Lamego

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT